IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

Case No.

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, a Delaware corporation,

    Defendant.

_____/

**<u>Complaint for Damages and Equitable Relief — Jury Trial Demanded</u>**

**Count I:  Substantive USERRA Violation**

Plaintiff, Rodney Scott Patterson, sues defendant, American Airlines, and says:

**Introduction and Summary**

1.    This is an action brought by Rodney Scott Patterson, a lieutenant colonel in the United States Army Reserve and a first officer for American Airlines ("AA"), whom:

    a.    immediately after Lt. Col. Patterson went on three-days of active duty in September 2015, at a time when the chief pilot complained that he was short of pilots, AA punished by grounding him on the basis of

another chief pilot's asserted — but unfounded — suspicion that he was mentally ill, and

    b. subsequent to his having filed a complaint pursuant to the Uniform Services Employment and Reemployment Rights Act ("USERRA") with the Department of Labor's Veterans' Employment and Training Service ("VETS"), AA has kept grounded — and unpaid — based on a diagnosis by a hand-picked neuro-psychologist whose findings have been debunked by an neurologist and by a nationally recognized neuro-psychologist who specializes in aviation medicine and regularly consults with AA.  Lt. Col. Patterson seeks back pay (including benefits), liquidated damages and equitable relief, i.e., immediate (temporary and permanent) reinstatement, and attorney's fees and litigation expenses.

### Jurisdiction and Venue

  2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) and (4); and 38 U.S.C. § 4323(b)(3).  It has authority to enter temporary and permanent injunctions pursuant to 38 U.S.C. § 4323(e).

  3. This action arose in the Southern District of Florida.  Venue lies in the Fort Lauderdale division of the Southern District of Florida pursuant to 28 U.S.C. §1391 and 38 U.S.C. § 4323(c)(2) because American Airlines maintains a place of business at the Fort Lauderdale/Hollywood International Airport.

**Parties**

4.     Plaintiff, Rodney Scott Patterson, is a citizen of the United States and a resident of Broward County, Florida, who is, and at all times material was:

    a.     a commissioned officer (lieutenant colonel) in the U.S. Army Reserve, assigned to the Pentagon in Washington, D.C.;

    b.     a first officer for AA based at Miami International Airport, and

    c.     a person who "has taken an action to enforce a protection afforded any person under [USERRA]," as envisioned by 38 U.S.C. § 4311(b)(1), who has "participated in an investigation under [USERRA], as envisioned by § 4311(b)(3), or who "has exercised a right provided for in [USERRA]." § 4311(b)(4).

5.     Defendant American Airlines ("AA") is a Delaware corporation operating in Miami-Dade and Broward Counties, Florida, and an employer pursuant to 38 U.S.C. §4303(4)(a).

**Conditions Precedent**

6.     Lt. Col. Patterson on or about January 25, 2016 filed a complaint with the Department of Labor's VETS, which on March 1 notified him that he could pursue his claim individually with private counsel.

7.     All other conditions precedent to the bringing of this action have been satisfied, have been waived or would be futile.

## General Allegations

8.      Lt. Col. Patterson requested military leave from AA's Miami Flight Office at or about 10 a.m. September 21, 2015 to attend to his duties the Pentagon in Washington, D.C., the following day and to represent the Army at a reception for Pope Francis at the White House that morning.

9.      Lt. Col. Patterson's request constituted a "notice" to his employer that he intended to perform military "service in the uniformed services," as those terms are envisioned by, respectively U.S.C. §§ 4303(8) and (13).

10.     James Bonds, the Chief Pilot for AA in Miami, telephoned Lt. Col. Patterson at approximately 5 p.m. that evening, stating — for the first time since Lt. Col. Patterson had gone to work for AA — that he would only permit Lt. Col. Patterson to take military leave if Lt. Col. Patterson produced a set of written orders.

11.     Lt. Col. Patterson then telephoned the System Operations Control Duty Chief at AA's headquarters in Dallas, Texas, to request the time off for military leave, which was granted.

12.     Lt. Col. Patterson then flew to Washington, D.C., September 22 to work at the Pentagon and to attend the reception as a representative of the Army.

13.     Lt. Col. Patterson discovered that afternoon, which checking to ensure that his being on military leave was correctly logged in the AA

computer system as vacation days, discovered that he had been placed on leave-with-pay status.

14. Two days later, following Lt. Col. Patterson's return to Miami, Chief Pilot Bonds informed him that he had been grounded pending an investigation of a "workplace environment" complaint concerning an incident between Lt. Col. Patterson and AA Capt. Glenn L. Whitehouse that:

    a. had occurred in Asuncion, Paraguay on or about October 7, 2014 — but,

    b. had been resolved in October 2014 as a professional-standards issue by the Allied Pilots Association, the union of which both Capt. Whitehouse and Lt. Col. Patterson are members, and

    c. about which Capt. Whitehouse did not make a formal complaint to the AA Human Resources ("HR") Office until September 25, 2015.

15. Following an investigation by HR in Miami in October 2015, as well as a hearing November 23, 2015, before a the Chief Pilot, a HR representative and a representative of the Allied Pilots Association, the collective bargaining unit for AA pilots:

    a. No findings of inappropriate behavior were made concerning Lt. Col. Patterson, who had complained in Paraguay and afterwards about Capt. Whitehouse and other members of the crew drinking alcoholic beverages taken from the plane's galley as they rode to their

overnight hotel on a bus, but

      b.    Chief Pilot Bonds on January 20, 2016 ordered Lt. Col. Patterson to undergo a "Fitness for Duty Examination [Mental Health]," (brackets in original), elaborating, in pertinent part, that:

> The request is based upon this office's concerns about FO Patterson's judgment and specifically his mental health and/or emotional stability. This office has received multiple reports of atypical interactions with co-workers and reports that suggest a pattern of false/self-aggrandizing statements[,]

and stated that it was "[b]ased on the information above," that he had "removed First Officer Patterson from active duty and placed him on a paid withheld status on September 24, 2015";

      c.    The investigation was not closed until February 2015, and

      d.    Brian Beech, another Chief Pilot, noted in closing the file that "I have informed him that it is important to maintain good working relationships with his co-workers…."

    16.    The neuro-psychologist chosen by AA was John Knippa, a Long Beach, California, Ph.D., whose March 25, 2016 report on his examination of Lt. Col. Patterson began:

> Mr. Patterson is a 48-year-old, right-handed, Caucasian, married man who is referred by his employer's medical section for a Fitness for Duty examination. No medical records or personnel reporting documents were made avilble, other than brief correspondence dated 01/14/16 citing the examination request in the context of Section 20 action. Unspecified "concerns" are noted regarding his "judgment," appearing clarified as "his mental and/or emotional stability." **The reporting office indicated receipt of "multiple reports of atypical interactions with coworkers" in addition to "reports that**

***suggest a pattern of false/self-aggrandizing statements.["] However, it is understood that there was an internal review, after which witnesses could not be identified who would attest to these complaints being present/accurate.*** It was decided that no other information would be released from Human Resources or supervisors.

(Emphasis supplied.)

17. Dr. Knippa on March 21 declared Lt. Col. Patterson "NOT FIT FOR DUTY as a [First Officer] on the basis of impaired performances on cognitive assessment" — but not based on the psychological concerns that had been the subject of Chief Pilot Bonds's referral, of which testing revealed scant evidence.

18. Dr. Knippa reached his conclusion of impaired cognitive assessment — a condition generally associated with either organic brain impairment or physical injury impacting motor performance, of neither of which he cited any evidence — after he:

    a. administered two days of standardized tests, beginning at 9:30 a.m. March 16 to a subject who had:

        i. flown six hours from one time zone, across another and into a third the day before;

        ii. then driven two hours in rush-hour traffic from Los Angeles International Airport to Long Beach,

        iii. not gotten to sleep until 9:30 p.m. (Long Beach time);

      iv. awakened at 2:30 a.m., and

      v. arrived at Dr. Knippa's office at 9 a.m.;

  b. measured 48-year-old Lt. Col. Patterson against norms developed for regional airline pilots, who are generally younger, rather than the age-based norms that the test, the CogScreen AE (Aeromedical Edition), specifies should be used for major airline pilots, and

  c. pronounced Lt. Col. Patterson as "NOT FIT FOR DUTY" based on test results that differed significantly from those obtained when the psychologist who developed the CogScreen AE later administered the same instrument to a non-jet-lagged Lt. Col. Peterson.

 19. Dr. Knippa's conclusions also were contrary to those reached by the United States Army:

  a. in July 2014 when the Army did a neuropsychological assessment of Lt. Col. Patterson, who was assigned to a deployment-ready unit, to establish a baseline for any traumatic brain injuries he might suffer in combat, and

  b. in October 2015 when it did a physical examination of him.

 20. Dr. Knippa's findings of neurological deficit were contradicted by John D. Hastings, M.D., of Tulsa, Oklahoma, whom Lt. Col. Patterson visited after Jeral Antone, M.D., AA's Regional Medical Director at the time, directed him to see an aeromedical neurologist of his choice:  February 27, 2017 following a neurological examination, an extensive history-taking and a

review of Dr. Knippa's report, Dr. Hastings concluded on May 28, 2016 that Lt. Col. Patterson "poses no risk to aviation safety and that he is fit to fly from a neurological standpoint."

21. Gary G. Kay, Ph.D., a psychologist and the developer of the CogScreen AE — which the website www.cogscreen.com describes as "meet[ing] the [Federal Aviation Administration]'s requirement for a sensitive and specific neuro-cognitive test battery for use in the medical re certification evaluation of pilots with known or suspected neurological and/or psychiatric conditions" — examined Lt. Col. Patterson for a full day June 29, 2016, after Lt. Col. Patterson had flown to Washington, D.C., the day before and gotten a full night's rest.

22. Dr. Kay stated in his report that:

> Based upon my review of the records, including evaluations by Dr. [Glenn R.] Caddy and Dr. Knippa, along with results from testing conducted on 6/29/16, and a clinical interview, Mr. Patterson appears to be psychologically and neuropsychologically fit-for-duty as an American Airlines Pilot.
>
> There is no evidence of aeromedically significant neurocognitive deficits. Follow-up testing with CogScreen AE and measures of attention [including vigilance] reveal normal functioning. A mild weakness was seen on one [isolated] measure of vigilance. Performance was normal on all other measures of sustained attention. I agree with Dr. Caddy that poor performance on vigilance testing when evaluated by Dr. Knippa was likely due to jet-lag related fatigue.

(Brackets in original.)

23. Both Dr. Hastings's and Dr. Kay's reports, as well as the Army findings, were furnished to AA August 22, 2016.

24. Capt. Mark Cronin, AA's Chief Pilot, had advised AA Capt. Dan Carey, the president of the Allied Pilots Association, Lt. Col. Patteson's union, that AA would put him back to work if he successfully completed an assessment by Dr. Kay.

25. Chief Pilot Cronin later stated that he did not recall telling Capt. Carey, the union president, that he would put Lt. Col. Patterson back to work if he were cleared by Dr. Kay — a frequent fitness-for-duty consultant to AA to whom Chief Pilot Cronin also referred another pilot for similar testing in a similar situation.

26. AA subsequently informed Lt. Col. Patterson that it would restore him to paid, but non-flying status, and would send he medical and psychological data to the University of Texas Medical Branch, to which AA has outsourced its medical exams, to evaluate whether he should be allowed to fly — but only if he would drop all union grievances and agree not to sue AA.

27. The Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA"), provides, in relevant part that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

28. USERRA further provides, in relevant part, that:

> An employer shall be considered to have engaged in actions prohibited … under subsection (a), if the person's … service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such … service, application for service, or obligation for service.

38 U.S.C. § 4311(c)(1).

29. Lt. Col. Patterson's going on active duty so that he could represent the U.S. Army at the White House reception for the Pope was a motivating factor for AA's:

    a. placing him on leave-with-pay status, and then taking him off flight status, September 22, as he was on duty at the Pentagon;

    b. grounding him pending an investigation into a nearly year-old incident, previously resolved within the pilot's union through an informal process, and a formal complaint about which was not even filed until three days after the initial grounding;

    c. refusing to allow him to return to flight status following the determination by a union-management panel in November 2015 that he had engaged in no misconduct in connection with the on-the-ground conflict between him and the AA captain in Asuncion, Paraguay in October 2014;

    d. using the unfounded allegations as a basis to refer him to a fitness-for-duty psychological examination in Long Beach, California;

    e. keeping him grounded based on a "not-fit-for-duty" finding

made by a California psychologist after a highly irregular examination;

   f. refusing to restore him to flight status upon receipt from a neurologist and a neuro-psychologist of reports declaring him fit for duty, and

   g. conditioning his return to flight status on his abandoning any union grievance or USERRA claim against AA.

  30. As a direct, natural and proximate result of AA's actions, as more particularly alleged above, Lt. Col. Patterson has suffered loss of wages and benefits, and continues to do so.

  31. AA cannot prove that it would have taken the same actions against Lt. Col. Patterson in the absence of his service, application for service or obligation for service on active duty in September 2015, as required by 28 U.S.C. § 4311(c)(1).

  32. AA's denial to Lt. Col. Patterson employment and the benefits of employment, beginning immediately after he went on active duty in September 2015 and continuing into the present, has been willful so as to warrant an imposition of liquidated damages as provided by 38 U.S.C. §4323(d)(1)(C).

  33. AA's adverse actions against Lt. Col. Patterson, which were motivated by his going on active duty in September 2015, have been willful so as to warrant an imposition of liquidated damages as provided by 38 U.S.C. §4323(d)(1)(C).

34. AA's actions in economically burdening Lt. Col. Patterson's statutorily-protected federal right to serve in the uniformed services of the United States imposes an irreparable harm for which there is no adequate remedy at law, as is recognized by 38 U.S.C. § 4323(e).

35. If not enjoined by this Court, AA will continue to interfere with Lt. Col. Patterson's right to participate in the uniformed services of the United States.

36. Lt. Col. Patterson is entitled to recover his reasonable attorney fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h).

WHEREFORE, the plaintiff, Lt. Col. Rodney Scott Patterson, prays that this Court enter judgment in his favor on this Count I and requests the following relief against the defendant, American Airlines:

*One*, immediate reinstatement to flight status;

*Two*, back wages and benefits;

*Three*, liquidated damages;

*Four*, his reasonable attorney fees, expert witness fees, and other litigation expenses, and

*Five*, such other and further relief as is just.

## Count II:  USERRA Retaliaton

37. Plaintiff, Lt. Col. Patterson, realleges and adopts as if fully set forth in Count II the allegations of ¶¶ 1-26.

38. USERRA further provides, in relevant part, that:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, … (3) has … participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter….

38 U.S.C. § 4311(b).

39. Lt. Col. Patterson is protected by:

    a. §§ 4311(b)(1) and (3) because he filed a USERRA complaint with the DOL's VETS function, thereby initiating an investigtion, and

    b. §§ 4311(b)(4) because he exercised his right in September 2015 to go onto active duty when given the opportunity to represent the U.S. Army at a White House reception for the Pope Francis.

40. Lt. Col. Patterson's filing a USERRA complaint with the DOL, his initiating an investigation into AA's adverse treatment of him and his exercising of his federally protected right to go onto active duty as an officer in the U.S. Army Reserve was a motivating factor for AA's:

    a. placing him on leave-with-pay status, and then taking him off flight status, September 22, as he was on duty at the Pentagon;

    b. grounding him pending an investigation into a nearly year-old incident, a formal complaint about which was not even filed until three days after the initial grounding;

  c. refusing to allow him to return to flight status following the determination by a union-management panel in November 2015 that he had engaged in no misconduct in connection with the on-the-ground conflict between him and the AA captain in Asuncion, Paraguay in October 2014;

  d. using the unfounded allegations as a basis to refer him to a fitness-for-duty psychological examination in Long Beach, California;

  e. keeping him grounded based on a "not-fit-for-duty" finding made by a California psychologist after a highly irregular examination;

  f. refusing to restore him to flight status upon receipt from a neurologist and a neuro-psychologist of reports declaring him fit for duty, and

  g. conditioning his return to flight status on his abandoning any union grievance or USERRA claim against AA.

 41. As a direct, natural and proximate result of AA's actions, as more particularly alleged above, Lt. Col. Patterson has suffered loss of wages and benefits, and continues to do so.

 42. AA cannot prove that it would have taken the same actions against Lt. Col. Patteson in the absence of his seeking enforcement of USERRA, filing a USERRA complaint or insisting at work that AA permit him to render service on active duty in September 2015, as required by 28 U.S.C. § 4311(c)(2).

 43. AA's denial to Lt. Col. Patterson employment and the benefits of

employment, beginning immediately after he insisted on going on active duty in September 2015 and continuing subsequent to his filing her USERRA complaint, has been willful so as to warrant an imposition of liquidated damages as provided by 38 U.S.C. §4323(d)(1)(C).

44. AA's adverse actions against Lt. Col. Patterson, which were motivated by his insisting on going on active duty in September 2015 and by his filing her USERRA complaint, have been willful so as to warrant an imposition of liquidated damages as provided by 38 U.S.C. §4323(d)(1)(C).

45. AA's actions in economically burdening Lt. Col. Patterson's statutorily-protected federal right to seek to enforce USERRA, to make a complaint pursuant to USERRA or to insist that his employer permit him to serve in the uniformed services of the United States imposes an irreparable harm for which there is no adequate remedy at law, as is recognized by 38 U.S.C. § 4323(e).

46. If not enjoined by this Court, AA will continue to take reprisal against Lt. Col. Patteson.

47. Lt. Col. Patterson is entitled to recover his reasonable attorney fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h).

WHEREFORE, the plaintiff, Lt. Col. Rodney Scott Patterson, prays that this Court enter judgment in his favor on this Count II and requests the following relief against the defendant, American Airlines:

*One*, immediate reinstatement to flight status;

*Two*, back wages and benefits;

*Three*, liquidated damages;

*Four*, his reasonable attorney fees, expert witness fees, and other litigation expenses, and

*Five*, such other and further relief as is just.

## Jury Trial Demand

Plaintiff, Lt. Col. Rodney Scott Patterson demands trial by jury on all issues so triable.

Respectfully Submitted,

*/s/   William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com
ISHA KOCHAR
Florida Bar No.: 105294
IKochhar@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida 33301-1154
(954) 462-1983
(954) 523-3192 (fax)

*Attorneys for Plaintiff,*
     *Lt. Col. Rodney Scott Patterson*