

**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL 33301 • 954.462.1983

**Karen Coolman Amlong**
**William R. Amlong**

Jennifer Daley
Ryan Brenton, of Counsel
Rani Nair Bolen, of Counsel
www.TheAmlongFirm.com

April 6, 2018

Tristan Morales, Esquire
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036

***Via Electronic Delivery***

**Re:** **Patterson v. American Airlines**
Our File Number 2219-00000
Case Number CASE NO.: 1:17-cv-60533-JEM

Dear Mr. Morales:

I address point-by-point your "meet-and-confer" letter by which you exhibit an intention to attempt to thwart plaintiff, Rodney Scott Patterson's, ***right*** to take meaningful depositions of American Airlines, Inc.'s corporate representative(s), testifying as such and binding the corporation by their answers, based on American Airline's assertion that such discovery would be "unduly burdensome and disproportionate to the needs of this case."

This discussion needs be prefaced by the explication of judges in this district about what Rule 30(b)(6) says and means:

> "A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." Sabre v. First Dominion Capital, L.L.C., No. 01 Civ. 2145, 2001 U.S. Dist. LEXIS 20637, at *2 (S.D. N.Y. Dec. 12, 2001) (citing 8A Charles A. Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice Procedure § 2103 (2d ed. 1994)). Moreover, "if the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that

Attachment 16

___

> designee was personally involved." A.I.A. Holdings, S.A v. Lehman Brothers, Inc., No. 97 Civ. 4978, 2002 U.S. Dist. LEXIS 9218, at *15 (S.D.N.Y May 20, 2002) (internal citations omitted).

DHL Express (USA), Inc. v. Express Save Industries, No. 09-60276-Civ-Cohn/Seltzer, at *3-*4 (S.D. Fla. Oct. 19, 2009), quoting Provide Commerce, Inc. v. Preferred Commerce, Inc., No. 07-80185 Civ, 2008 WL 360588, at *3 (S.D. Fla. Feb. 8, 2008) (Ryskamp, J.) (holding that even though a corporate president had testified once in his individual capacity, "the plaintiff was ***entitled*** to take the corporate representative's Rule 30(b)(6) deposition." (Emphasis supplied.)

You first point to the "multiple depositions" taken in this case. We have taken three, in which each deponent denied any overview of the process by which Lt. Col. Patterson was grounded immediately after going on a tour of duty for the United States Army Reserve and has been kept from flying for what has now been two and a half years following his filing of a complaint with the Department of Labor under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA):

- Jeral Ahtone, M.D., the American Airlines corporate medical director who arranged and interpreted the neuropsychological report that declared First Officer Patterson "not fit for duty" two years ago, notwithstanding that Dr. Ahtone conceded that the examining neuro-psychologist articulated no finding of neuropsychological deficit, no finding of psychopathology and no finding of any personality disorder;

- James Bonds, a former Miami Chief Pilot who acknowledged during his deposition that he, ***First***, told First Officer Patterson that he did not want him going on military duty with the Army Reserve September 22; then, ***Second***, requested that FO Patterson show him written military orders before he went, which written orders Lt. Col. Paterson neither had nor needed; ***Third***, put Lt. Col. Patterson on "Paid/Withheld" Septmber 22, as revealed by the Activity/Pay Sheet that was identified as Exhibit 12 to Lt. Col. Patterson's deposition, which status Capt. Bonds, ***Fourth***, formalized at 10:17 p.m. September 24 (announcing it with an internal email, "Subject: Patterson is now on PW"), while Lt. Col. Patterson remained on duty at the Pentagon); ***Fifth,*** took this adverse personnel action one hour and 43 minutes after Capt. Glenn Whitehouse e-mailed to Brian Beach, then another Chief Pilot, what was essentially a replicated package of the written complaints that Capt. Whitehouse had made against Lt. Col. Patterson six months before, and which Capt. Beach had at that point turned them over to Corporate Security for investigation, and, ***Sixth***, persisted so zealously into late October in an investigation of whether Lt. Col. Patterson's Army Reserve pay records were

genuine that his e-mail-documented exuberance prompted Mark Cronin, the Managing Director of Line Operations, to caution that "USERRA issues can get really tangled fast, and we need to make sure his behavior remains the focus and not how we are handling it."

- Brian Beach, the former Director of Flight for Miami International Airport, who disclaimed any knowledge of the actors or rationale in the process that, ***First***, ignored for more than six months the histrionic (and, in the end, unverifiable — because they were untrue) accusations by Capt. Whitehouse that Lt. Col. Patterson had:

    - during a trip to Asuncion, Paragruay, threatened to get everyone on the crew fired and railed about "niggers" and "faggots";

    - unilaterally, as a first officer, effectuated a "very scary divert" in Bolivia, a flight-deck impossibility, and one that Capt. Terry Eisenberg will testify never happened;

    - spoke, during a diversion to Bogota, within earshot of passengers, about how the airplane was "like a bomb and was going to blow up if they did not get on the ground ASAP," which never happened, and

    - was smuggling firearms into Bolivia, concerning which Mr. Beach testified that Corporate Security informed him that there was no basis,

but, ***Second***, was part of a team approach that (two days after Lt. Col. Patterson insisted on going on duty in the Army Reserve, against the wishes of Capt. Bonds) repackaged Capt. Whitehouse's stale allegations into a Human Resources complaint that triggered what Mr. Beach testified was an automatic exile to the non-flying "Paid/Withheld" status; ***Third***, kept Lt. Col. Patterson in that status even after a "Section 21" hearing failed to substantiate any of the allegations, which Mr. Beach and unknown others, ***Fourth***, nonetheless used as grounds to order Lt. Col. Patterson to an irregular "fitness for duty examination" from which he has yet to return to flying status — despite its inconclusive findings.

Therefore, given the Three-Wise-Monkeys responses of the deponents to date (i.e., "Hear no Evil, See no Evil, Speak no Evil")[1], Lt. Col. Patterson has been unable to

---

[1]See, e.g., https://en.wikipedia.org/wiki/Three_wise_monkeys, last visitied March 24, 2018.

---

obtain meaningful discovery as to, inter alia, the following issues raised in the 30(b)(6) Deposition Notice:

> 8. The Corporate Security investigation referred to in the 4:15 p.m. March 24, 2015 e-mail from Ricardo Garcia to Brian Beach and copied to Fred Ronda.
>
> 9. The Human Resources investigation that grew from the furnishing by Capt. Glenn Whitehouse to Capt. Brian Beach of the package of information at an attachment to the 8:34:57 p.m. September 24, 2015 e-mail.
>
> 10. The placement of plaintiff on "Paid Withhold" [or "Paid Withheld"] status September 24 or September 25, 2015.
>
> 11. The issuance to plaintiff of the January 20, 2016 Directive to Report for Section 20 Evaluation.
>
> 12. The reclassification of plaintiff's status "Paid Withhold" [or "Paid Withheld"] status to "Sick" and "Unpaid Sick."
>
> 13. American Airlines's not reinstating plaintiff to duty after its receipt of those reports of Gary G. Kay, Ph.D.; John Hastings, M.D., and Glenn R. Caddy, Ph.D., and the First Class Medical Certificate issued July 10, 2016 by Joseph Tordello, D.O.
>
> 14. The selection of John Knippa, Ph.D., to perform the Section 20 evaluation.
>
> 15. Any offer by American Airlines to the Allied Pilots Association (APA) to reinstate plaintiff, if settlement of APA's grievance against American Airlines on behalf of plaintiff on the condition that plaintiff would dismiss his USERRA lawsuit and forego any lost-wages claim.

Your objections to Rule 30(b)(6) Items 1-7 might be well taken if American Airlines had actually produced documents truly responsive to Lt. Col. Patterson's requests. The absence — as an example, but not as a limitation — of any documentation demonstrating, ***One***, how John Knippa, Ph.D., could include in his March 21, 2016 report a mention of how "it is understood that there [had been] an internal review, after which witnesses could not be identified who would attest to ... complaints [concerning Lt. Col. Patterson] being present/ accurate," when Dr. Athune denied during his deposition furnishing Dr. Knippa with any information other than that contained in the request for a Section 20 exam, or, ***Two***, how Capt. Whitehouse,

---

an Ahab who obviously considered Lt. Col. Patterson to be his Moby Dick, serendipitously e-mailed Mr. Beach on the night of September 24 a repackaged version of Capt. Whitehouse's March 2015 complaints (or any testimony from Mr. Beach explaining how this happened two-days into Lt. Col. Patterson's military leave), raises relevant questions concerning whether American Airlines truly produced all of the documents that Lt. Col. Patterson legitimately requested. See, e.g., Plaintiff's First Request for Production, Item 2 ("communications concerning Rodney Scott Patterson that occurred subsequent to September 1, 2005, between any employee or agent of American Airlines and: ... c. Any mental health professional... or, ... e. Glenn Whitehouse"); Defendant American Airlines, Inc.'s Response to Plaintiff's First Request for Production, at 3 ("American will produce non-privileged communications responsive to Request No. 2 insofar as they are relevant to the actions alleged in Paragraphs 29 and 40 of the Complaint and to the extent that American is able to locate such communications following a reasonable and diligent search"). Those two categories, as well as any documents concerning the investigation that Corporate Security began into Lt. Col. Patterson in or about March 2015, would qualify as glaring examples of (quoting your March 20 letter) "specific documents on these topics that [we] believe American should have produced."

You next assert that Items 1-4 in the Schedule of Documents that we have asked to be produced duplicate those that were previously requested, and that to produce them again would be unduly burdensome. However, as I have explained to you verbally, while we are not asking you to produce again documents you have already provided, we cannot discern (other than by guessing) to which of our requests any of the 938 pages American Airlines produced in a two-stage "data dump" respond to which of our requests. This is because, contrary to the requirement of Rule 34(b)(2)(E)(I) that ***"[a] party*** must produce documents as they are kept in the usual course of business or ***must organize and label them to correspond to the categories in the request***," you gave us 938 pages of "Here,-go-figure-out-what-these-are" pieces of paper. If you would categorize the documents as pertaining to the respective requests — ***and*** would produce any other documents that are responsive to this second request — that would be sufficient.

As to the location, or the date, of the deposition, we are flexible to take the deposition(s) on any day(s) that we are not otherwise obligated between now and the end of discovery. My wife/law partner and I start trial Tuesday, April 10, which I think should be concluded by Friday or Monday, April 13 or 16, but over the length of the defense case in which we have no control. We will do so either in person or remotely, and likely by videotape, wherever the deponent is located.

---

We appreciate your early response to our request and trust that your acquiescent response to our clarified requests would obviate, to use your words, "burdening the Court with another discovery dispute."

Very truly yours,

-s- William R. Amlong
WILLIAM R. AMLONG
For the Firm

cc: Via Email to:
Lt. Col. Rodney Scott Patterson
Karen Coolman Amlong, Attorney at Law
Noel C. Pace, Esquire
Mark W. Robertson, Esquire
Michael A. Holt, Esq.