Page 1

1         UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
2             FORT LAUDERDALE DIVISION
3     CASE NO:  1:17-cv-60533-MARTINEZ/OTAZO-REYES
4

5   RODNEY SCOTT PATTERSON,
6         Plaintiff,
7   vs.
8   AMERICAN AIRLINES, INC., a
    Delaware  Corporation,
9
          Defendant.
10  _____/
11
12                         SHOOK, HARDY & BACON, L.L.P.
                           201 S. BISCAYNE BOULEVARD
13                         SUITE 3200
                           MIAMI, FL 33131
14                         Tuesday, March 6, 2018
                           10:09 a.m. - 7:42 p.m.
15
16
17
        VIDEOTAPED DEPOSITION OF RODNEY SCOTT PATTERSON
18
19
20       Taken on behalf of the Defendant before
21    Elizabeth Cordoba, RMR, CRR, FPR, Notary Public in
22    and for the State of Florida at Large, pursuant to
23    Defendant's Notice of Taking Deposition in the above
24    cause.
25

```
 1    APPEARANCES:
 2    ATTORNEYS FOR PLAINTIFFS
 3         WILLIAM R. AMLONG, ESQ.
           KAREN COOLMAN AMLONG, ESQ.
 4         AMLONG & AMLONG, P.A.
           500 NORTHEAST 4TH STREET
 5         FORT LAUDERDALE FL 33301
           954-462-1983
 6         Wramlong@theamlongfirm.com
 7
      ATTORNEYS FOR DEFENDANTS:
 8
           TRISTAN MORALES, ESQ.
 9         O'MELVENY & MYERS, LLP
           1625 EYE STREET, NORTHWEST
10         WASHINGTON DC 20006
            202-383-5300
11         Tmorales@omm.com
12         CAMERON CLOAR-ZAVALETA, ESQ.
           AMERICAN AIRLINES
13         4333 AMON CARTER BLVD.
           MD 5675
14         FORT WORTH TX 76155
           817-963-5213
15         Cameron.cloar@aa.com
16
17    ALSO PRESENT
           ALEJANDRO MONTALVO, VIDEOGRAPHER
18
19
20
21
22
23
24
25
```

1  Q. Will Dr. Hastings testify regarding your
2  medical records and medical history?
3  A. Absolutely.
4  MR. MORALES: Okay. I believe this is Exhibit
5  20. Is that right?
6  THE REPORTER: Exhibit 21.
7  MR. MORALES: Exhibit 21. I'm off one
8  document.
9  (Exhibit 21, E-mail, was marked for
10  Identification.)
11  BY MR. MORALES:
12  Q. I'll have you look at this document,
13  Mr. Patterson. Are you familiar with this document,
14  Colonel Patterson?
15  A. Appears to be an e-mail.
16  Q. Okay. So is it -- is it accurate to say there
17  are two e-mails on document Exhibit 21, which is Bates
18  Patterson_00434?
19  Do you see an e-mail from Ed Bercaw --
20  A. I do.
21  Q. -- to A-A-7-3-7-D-R-V-R?
22  A. Yes, I do.
23  Q. Are you A-A-7-3-7- --
24  A. I am.
25  Q. -- D-R-V-R?

1       A.      Yeah.  That's correct.
2       Q.      And the e-mail shows Friday, April 22, 2016; is
3    that correct?
4       A.      That's correct.
5       Q.      And the subject is neuropsych evaluation?
6       A.      It is.
7       Q.      And it starts "Good morning, Mr. Patterson."
8    Do you see that?
9       A.      That's correct.
10      Q.      I'd just like to -- apologies for quoting at
11   length here, but I just want to see if I can jog your
12   memory on this Bercaw report.
13              It says [as read]:  Sorry for the delay on this
14   report.  We did get the medical records this week and
15   wrapped up the report just today.  A PDF is attached.  I
16   will be available to answer any questions you might have
17   after reviewing this.  I received this authorization to
18   send this to your attorney which I can do after you have
19   had a chance to read this.  Ultimately, the recommendation
20   is that this should go to review by the FAA, who has a
21   few, quote, "in-house," unquote, neuropsychologist
22   consultants who render opinions -- render an opinion.
23   They will have the data they need from us but we are
24   willing to do any follow-up or additional testing that may
25   be required later, which is sometimes the case.

Page 347

1  Does this now jog your memory of an e-mail from
2  Dr. Bercaw?
3     A.   It does.
4     Q.   Does it jog your memory of a report from
5  Dr. Bercaw?
6     A.   I had not seen the report from Dr. Cow --
7  Bercaw.
8     Q.   When you received this e-mail from Dr. Bercaw,
9  did you not receive the PDF that was attached?
10    A.   I did not.
11    Q.   Did you -- did you respond to Dr. Bercaw asking
12 for the PDF report of your medical records that he had
13 just told you he was attaching?
14    A.   I asked Dr. Bercaw to consult with Dr. Caddy.
15 So doc --
16    Q.   Did you -- did you respond to this e-mail from
17 Dr. Bercaw?
18    A.   I did not respond to it.
19    Q.   Did you -- as far as the --
20    A.   I sent it to -- I sent it to Dr. Caddy, from my
21 best recollection.
22    Q.   Did Dr. Caddy or anyone else ask you to provide
23 the report?
24    A.   Dr. Caddy had conversations with Dr. Bercaw.
25    Q.   So have you ever seen a report from Dr. Bercaw?

...

Page 348

1    A.    I have not.
2    Q.    Have you ever discussed with Dr. Caddy a report
3    from Dr. Bercaw?
4    A.    I would have sent it to Dr. Caddy and Dr. Caddy
5    was basically reviewing all of the documentation or
6    anything that came in, and also coordinating with my AME.
7    Q.    Have you ever had a discussion with Dr. Caddy
8    about a report prepared by Dr. Bercaw?
9    A.    I have asked Dr. Caddy to professionally deal
10   with this issue.  And, you know, I can't go back and --
11   and say what's occurred three years ago.
12   Q.    As -- as -- as part -- August -- April 2016 is
13   the date of the e-mail.
14         As part of this -- this litigation, have you
15   search your records for a PDF of the report from
16   Dr. Bercaw?
17   A.    If I had it, I would have produced it for you,
18   sir.
19   Q.    Have you searched your records?
20   A.    I have.
21   Q.    Have you asked Dr. Caddy for the Bercaw report?
22   A.    I was unaware of this e-mail, so, you know,
23   I -- I didn't --
24   Q.    So when you say you were unaware of it, I
25   guess, just to note, you first received it from Dr. Bercaw

Veritext Legal Solutions
800-726-7007                                                    305-376-8800

1  on April 22, 2016?
2      A.   That's correct.
3      Q.   You then forwarded the e-mail to four e-mail
4  addresses, including Dr. Caddy.  And then, presumably, you
5  prepared or presented this document for production in this
6  case; is that all correct?
7      A.   Well, obviously, I gave this to -- obviously,
8  this came from my attorney, so, correct.  Or it came from
9  Dr. Caddy.
10     Q.   Did you ever follow up with Dr. Bercaw about
11 his, quote [as read]:  Recommendation that this should go
12 to review by the FAA, who has a few in-house
13 neuropsychologist consultants who render an opinion?
14     A.   I actually went to Dr. Kay who is the -- who is
15 the FAA's resident expert.  This is who this is referring
16 to.
17     Q.   So did you -- did you consult with Dr. Bercaw
18 about his recommendation?
19     A.   I did not.
20     Q.   I would like to ask:  Obviously, if there's a
21 PDF of this report, either in your records or Dr. Caddy's,
22 that we be provided with that report.  Could we make that
23 request --
24     A.   If it's available, I'll be happy to provide it.
25     Q.   Would you agree to ask Dr. Caddy for that

1    report --
2        A.    We can.
3        Q.    -- without us filing a formal discovery
4    request?
5        A.    Sure.
6        Q.    Okay.  Great.
7              In your view, when American Airlines received
8    the Knippa report, what was the appropriate course of
9    action with res- -- with respect to your employment
10   status?  Let me start again.
11             When American Airlines received the March 25,
12   2016, report that is referenced in Paragraph 16 of your
13   complaint, from Dr. Knippa, in your view, how should
14   American Airlines have moved forward with respect to your
15   employment?
16       A.    In my view, American Airlines should not have
17   sent me to a Section 20 evaluation in retaliation for
18   asserting my rights under USERRA.
19             When I read the complaint, or read Dr. Knippa's
20   report, I noted that Dr. Knippa's report did not list any
21   condition that disqualified me from holding a medical
22   certificate.  I then asked Dr. Tordella, my AME, to
23   provide me a -- a brief -- a brief overview of this.  And
24   Dr. Tordella's statement to me was, is "Look,
25   American Airlines is looking for a medical excuse to