1          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF FLORIDA
2                (Fort Lauderdale Division)
3      RODNEY SCOTT PATTERSON,      )
           Plaintiff,               )
4                                   )
       vs.                          ) Case No.
5                                   ) 17-cv-60533-JEM
       AMERICAN AIRLINES, a         )
6      Delaware corporation,        )
           Defendant.               )
7

8      ********************************************************
9              ORAL AND VIDEOTAPED DEPOSITION OF
10       THE CORPORATE REPRESENTATIVE OF AMERICAN AIRLINES
11                   MICHELLE A. MONTGOMERY
12                        JUNE 6, 2018
13     ********************************************************
14         ORAL AND VIDEOTAPED DEPOSITION OF MICHELLE A.
15     MONTGOMERY, produced as a witness at the instance of the
16     Plaintiff, and duly sworn, was taken in the above-styled
17     and numbered cause on the 6th day of June, 2018, from
18     10:30 a.m. to 4:43 p.m., via telephone, before Julie C.
19     Brandt, RMR, CRR, and CSR in and for the State of Texas,
20     reported by machine shorthand, at Veritext Legal
21     Solutions, 300 Throckmorton Street, Suite 1600, Fort
22     Worth, Texas, pursuant to the Federal Rules of Civil
23     Procedure and the provisions stated on the record or
24     attached hereto.
25

```
 1              A P P E A R A N C E S
 2    FOR THE PLAINTIFF:
 3         William R. Amlong (via telephone)
 4         Noel C. Pace (via telephone)
 5         AMLONG & AMLONG, P.A.
 6         500 Northeast Fourth Street, Second Floor
 7         Fort Lauderdale, Florida 33301-1154
 8         954.462.1983
 9         WRAmlong@TheAmlongFirm.com
10
11    FOR THE DEFENDANT:
12         Michael A. Holt
13         SHOOK, HARDY & BACON L.L.P.
14         201 S. Biscayne Blvd., Suite 3200
15         Miami, Florida 33131-4332
16         305.358.5171
17         Mholt@shb.com
18
19    ALSO PRESENT:
20         David Krieghbaum - AA summer associate
21         Gabrielle Girling - AA summer associate
22         Rodney Scott Patterson (via telephone)
23
24    VIDEOGRAPHER:
25         Megan King - Veritext Legal Solutions
```

```
1                         INDEX
                                          PAGE
2
```

Appearances.............................    2
Proceedings.............................    6
Stipulations............................  119, 123

MICHELLE A. MONTGOMERY
     Examination by MR. AMLONG.................   7
     Examination by MR. HOLT...................  114
     Further Examination by MR. AMLONG........  120
Signature and Changes........................  124
Reporter's Certificate.......................  126

```
DEPOSITION EXHIBITS                      IDENTIFIED
```

Exhibit 1         EthicsPoint printout
                  AA-Patterson-0000039 - 42.......   73
Exhibit 2         9/6/2015 email string...........   33
Exhibit 3         9/24/2015 email.................   35
Exhibit 4         9/24/2015 email string..........   35
Exhibit 5         Sept. 24, 2015 letter
                  AA-Patterson-0000582 - 593......   35

Exhibit 6         Sept. 25, 2015 letter..........   39

Exhibit 7         Confidentiality Statement and
                  other documents
                  AA-Patterson-0000123 - 141......   43

Exhibit 8         Handwritten notes
                  AA-Patterson-000001.............   44
Exhibit 14        Oct. 2015 email string
                  AA-Patterson-0000620 - 621......   45

Exhibit 15        Oct. 2016 email string
                  AA-Patterson-0000536 - 537......   45
Exhibit 17        10/27/2015 email
                  AA-Patterson-0000624 - 625......   49

Exhibit 22        10/29/2015 email
                  AA-Patterson-0000642............   50

 1   Exhibit 23      10/29/2015 email string
                     AA-Patterson-0000643 - 644......   50
 2
     Exhibit 24      10/29/2015 email string
 3                   AA-Patterson-0000645 - 646......   50
 4   Exhibit 25      10/30/2015 email string........   48
 5   Exhibit 30      11/2015 email string
                     AA-Patterson-0000610 - 611......   75
 6
     Exhibit 40      Dec. 7, 2015 email
 7                   AA-Patterson-0000007 - 008......   52
 8   Exhibit 41      Dec. 9, 2015 Memo
                     AA-Patterson-0000238 - 240......   52
 9
     Exhibit 44      Jan. 20, 2016 letter...........   55
10
     Exhibit 45      1/5/2016 email
11                   AA-Patterson-0000749...........   57
12   Exhibit 46      Fitness for Duty Medical
                     Examination Request - Section 20
13                   AA-Patterson-0000750...........   57
14   Exhibit 48      Fitness for Duty Medical
                     Examination Request - Section 20
15                   AA-Patterson-0000752...........   60
16   Exhibit 49      Jan. 14, 2016, Fitness for Duty
                     Medical Examination Request -
17                   Section 20 Patterson_00144......   60
18   Exhibit 57      Sept. 2015 and 2/26/2016 email
                     string.........................   78
19
     Exhibit 58      Feb. 29, 2016 letter to U.S.
20                   Dept. of Labor with Exhibits....   86
21   Exhibit 59      Neuropsychological Aeromedical
                     Assessment by Dr. Knippa
22                   Patterson_Knippa_00004 - 00017..   88
23   Exhibit 61      March 19 & 20, 2015 email string   30
24   Exhibit 68      Dec. 2016 email string.........  104
25   Exhibit 72      Display 4 screenshot...........   42

```
 1   Exhibit 73      Notice of Deposition............  19
 2   Exhibit 74      Feb. - April 2015 email string
                     AA-Patterson-0000718 - 721......  20
 3
     Exhibit 75      Feb. 1, 2016 and Nov. 23, 2015
 4                   email string....................  68
 5   Exhibit 76      Activity/Pay Sheet
                     Activity Sheet Detail...........  68
 6
     Exhibit 77      March 2016 email string
 7                   AA-Patterson-0000770 - 771......  90
 8   Exhibit 78      8/23/2016 email string
                     AA-Patterson-0000854 - 855......  91
 9
     Exhibit 79      Medical reports
10                   AA-Patterson-0000856 - 879......  95
11   Exhibit 80      Section 20 Physical Examinations  96
12   Exhibit 81      Section 11 Leaves of Absence....  96
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                  P R O C E E D I N G S                10:29:51

 2                  THE VIDEOGRAPHER:  We are on the record   10:29:51

 3      at 10:30, June 6, 2018.                          10:29:57

 4           This is the video deposition of Michelle    10:30:00

 5      Montgomery in the matter of Rodney Scott Patterson  10:30:03

 6      versus American Airlines, a Delaware Corporation, filed  10:30:07

 7      in the Southern District of Florida, Ft. Lauderdale  10:30:10

 8      Division.                                         10:30:15

 9           At this time, Counsel, please state your     10:30:15

10      appearances.                                      10:30:16

11                  MR. HOLT:  Did you hear that, Counsel?  10:30:22

12                  MR. AMLONG:  No.  Is she through?    10:30:25

13                  MR. HOLT:  Yeah, she's through.  And she  10:30:28

14      wants our appearances.  So you first.            10:30:30

15                  MR. AMLONG:  Yeah.  This is William   10:30:32

16      Amlong of Amlong & Amlong, PA on behalf of Scott   10:30:35

17      Patterson, the plaintiff.                         10:30:39

18                  MR. HOLT:  Michael Holt on behalf of  10:30:46

19      American Airlines.                                10:30:47

20                  MS. GIRLING:  Gabrielle Girling on behalf  10:30:51

21      of American Airlines.                             10:30:51

22                  MR. PACE:  This is Noel Pace on behalf of  10:30:53

23      the plaintiff.                                    10:30:58

24                  MR. KRIEGHBAUM:  David Krieghbaum on   10:30:59

25      behalf of American.                               10:31:00
```

| | | |
|---|---|---|
| 1 | MICHELLE A. MONTGOMERY, | 10:31:12 |
| 2 | having been first duly sworn, testified as follows: | 10:31:12 |
| 3 | EXAMINATION | 10:31:12 |
| 4 | BY MR. AMLONG: | 10:31:13 |
| 5 | Q.   Good morning, Ms. Montgomery.  Please give us | 10:31:13 |
| 6 | your full name, tell us where you live and what you do | 10:31:20 |
| 7 | for a living. | 10:31:21 |
| 8 | A.   Michelle Agnes Montgomery.  My business | 10:31:22 |
| 9 | address is 4333 Amon Carter Boulevard, Fort Worth, Texas | 10:31:26 |
| 10 | 76155. | 10:31:32 |
| 11 | Q.   And what do you do for a living? | 10:31:34 |
| 12 | A.   I'm a senior manager of labor relations for | 10:31:40 |
| 13 | the flight group for American Airlines. | 10:31:44 |
| 14 | Q.   What's your date of birth? | 10:31:47 |
| 15 | MR. HOLT:  Objection.  It's not relevant. | 10:31:58 |
| 16 | This witness is not going to give her personally | 10:32:01 |
| 17 | identifiable information. | 10:32:04 |
| 18 | Q.   (BY MR. AMLONG)  Just give me the month and | 10:32:08 |
| 19 | year you were born, please. | 10:32:09 |
| 20 | MR. HOLT:  The month and year of birth? | 10:32:12 |
| 21 | A.   July -- | 10:32:15 |
| 22 | MR. AMLONG:  Yes. | 10:32:18 |
| 23 | A.   -- 1969. | 10:32:19 |
| 24 | Q.   (BY MR. AMLONG)  Can you please tell me | 10:32:21 |
| 25 | briefly your educational and professional background? | 10:32:27 |

1      A.   Educational background, I have a bachelor's of        10:32:28

2    science from the University of Southern California and a     10:32:31

3    master's of arts from Southern Methodist University.         10:32:34

4         Professional background, I've been with                10:32:39

5    American Airlines for 11 years.  I've been in the human      10:32:41

6    resources and labor relations profession since 1991.         10:32:45

7      Q.   And where else have you worked and --                 10:32:59

8           (Reporter clarification.)                             10:32:59

9           (Discussion off the record.)                          10:33:07

10     Q.   (BY MR. AMLONG)  Where else have you worked            10:33:27

11   and what did you do there?                                   10:33:29

12     A.   Starting all the way back to 1991?                     10:33:30

13     Q.   Yes, ma'am.                                            10:33:35

14     A.   Okay.  Well, I worked for Robinson's                   10:33:35

15   Department Store as a human resources coordinator.  That     10:33:39

16   was from '91 through '93.                                    10:33:42

17          From that point, I went to work for Bank of           10:33:46

18   America in their human resources department until 1996.      10:33:50

19          In 1996 I moved to Albertsons.  And I was in          10:33:56

20   their employee relations and HR department.                  10:34:02

21          From there I went to Tom Thumb, which is a            10:34:08

22   division owned by Safeway, as their HR manager.  Golly,      10:34:11

23   what year was that?  I don't even remember.  19 --- or       10:34:20

24   actually probably 2002, 2003-ish.                            10:34:26

25          From there I went to be the regional director         10:34:30

1   of human resources for Mariner Healthcare, which then          10:34:32

2   became SAVA Senior Care.                                        10:34:36

3        And then in 2007, I joined American Airlines.             10:34:39

4   And I've worked in various departments at American              10:34:43

5   Airlines.  Do you need me to go through those?                  10:34:47

6        Q.   Please.                                               10:34:50

7        A.   I started off in the AAdvantage Department as         10:34:50

8   a senior representative of employee engagement and              10:34:55

9   organizational development.                                     10:34:59

10       From there I went to the corporate HR                     10:35:00

11  department and worked as an organization development            10:35:02

12  consultant.                                                     10:35:07

13       I then went to the arbitration group, which              10:35:08

14  was part of employee relations -- that was in 2010 --           10:35:12

15  and stayed there until 2014.                                    10:35:18

16       At the time of the merger, I was asked to go              10:35:23

17  to the current department I'm in now, labor relations           10:35:25

18  for the flight group.                                           10:35:28

19            THE WITNESS:  I keep talking to the                   10:35:33

20  phone.                                                          10:35:35

21       Q.   (BY MR. AMLONG)  And what do you do in labor          10:35:35

22  relations for the flight group?                                 10:35:38

23       A.   So I administer the contract.  That's the            10:35:39

24  majority of my function.  And specifically I am                 10:35:43

25  responsible for -- well, I'm responsible for the entire         10:35:49

1    contract, but I am certainly the go-to person for            10:35:52

2    specific sections of the contract, such as section 20,       10:35:57

3    21, 22, 23.  But, again, I work the entire contract.         10:36:00

4        Q.   I know what sections 20 and 21 are.  What's         10:36:08

5    section 23?                                                  10:36:30

6        A.   23 is the system board of adjustment.               10:36:31

7    Section 22 would be the PAC, prearbitration conference       10:36:33

8    section of the contract.                                     10:36:41

9        Q.   And so why are you the -- what do you mean          10:36:41

10   you're the go-to person for sections 20 and 21?             10:36:54

11       A.   So within my department, we have the contract      10:36:59

12   set up with certain people within the department who        10:37:01

13   I'll say specialize in those sections of the contract.      10:37:04

14   And those are my -- the areas that I specialize in.         10:37:09

15       Q.   And what do you do as a specialist in              10:37:11

16   section 20 and 21?                                          10:37:20

17       A.   I give advice and counsel to mainly chief          10:37:22

18   pilots but -- or all members of the flight department in    10:37:26

19   regards to contract compliance and interpretation.         10:37:29

20       Q.   Have you ever testified before as a corporate     10:37:33

21   designee?                                                    10:37:51

22       A.   I'm sorry.  As a what?                             10:37:52

23       Q.   Have you ever testified before as a corporate     10:37:55

24   designee --                                                 10:37:58

25       A.   No.                                                10:37:59

1      Q.    -- under Federal Rule of Procedure 30(b)(6)?    10:38:00

2      A.    No.                                              10:38:03

3      Q.    Please tell me what, if anything, you did to    10:38:10

4  prepare for today's deposition.                            10:38:21

5            MR. HOLT:  Objection to the extent it            10:38:24

6  seeks privileged information.  You can describe meetings    10:38:26

7  with lawyers, the fact of them, but just not the content    10:38:30

8  of meetings with American's legal counsel.                 10:38:36

9      A.    Okay.  I met with Mike Holt, our counsel, to    10:38:39

10 prepare for this.                                          10:38:43

11     Q.    (BY MR. AMLONG)  Anything else besides meeting   10:38:44

12 with Mr. Holt?                                             10:38:52

13     A.    No.                                              10:38:53

14     Q.    Have you seen the deposition notice?             10:38:54

15     A.    Can you show me that document just to make       10:39:46

16 sure I can confirm what you're talking about or tell me    10:39:51

17 which document to look at?                                 10:39:54

18           MR. AMLONG:  Ms. Brandt, do you have a          10:40:00

19 copy of the deposition notice?                             10:40:02

20           THE REPORTER:  Let me see.                      10:40:04

21           MR. HOLT:  Counsel, I have a copy that I        10:40:28

22 would be happy to hand the witness, if you would like.    10:40:30

23           MR. AMLONG:  Please, if we can make it an       10:40:33

24 exhibit to the deposition itself and maybe a copy of it.   10:40:36

25           MR. HOLT:  No problem.  The court               10:40:41

1    reporter can actually mark this copy.                    10:40:42

2            But, Counsel, while we're on the topic of the    10:40:45

3    deposition notice, I do object to the topics 1 through 7  10:40:47

4    in the deposition notice.  The Magistrate already ruled   10:40:54

5    that those weren't going to be a part of this             10:40:57

6    deposition.  You and I --                                 10:40:59

7            MR. AMLONG:  I am not asking about items         10:41:00

8    1 through 7.                                              10:41:02

9            MR. HOLT:  Sure.  Sure.  I just wanted to        10:41:03

10   make sure that the record's clear about that.             10:41:05

11           And also, how would you like for us to address   10:41:07

12   objections that certain testimony might be outside the    10:41:10

13   scope of the 30(b)(6) categories, given that you're also  10:41:12

14   going to be asking Ms. Montgomery some questions about    10:41:17

15   her personal knowledge?  Do you want me to do that on a   10:41:20

16   question by question basis?  I just don't want to fill    10:41:23

17   up the record with an objection to every question if we   10:41:25

18   can maybe do a standing objection.                        10:41:29

19           MR. AMLONG:  Probably on a question by           10:41:30

20   question basis.  And I'll try to direct this to -- I'll   10:41:36

21   try and steer her either as the corporate representative  10:41:43

22   or speaking personally.                                   10:41:48

23           MR. HOLT:  Okay.  Not a problem.                 10:41:50

24           MR. AMLONG:  All right.                          10:41:53

25           MR. HOLT:  If you want to handle that            10:41:54

1  differently as we go through, just let me know.  I just     10:41:56

2  wanted to give you the cleanest record.  I know that's      10:41:58

3  what you're looking for in this deposition today.           10:42:00

4      Q.   (BY MR. AMLONG)  Ms. Montgomery, are you           10:42:05

5  looking at the 30(b)(6) deposition notice?                  10:42:07

6      A.   Yes, sir.                                          10:42:10

7      Q.   And have you seen a copy of that before?           10:42:11

8      A.   Yes.                                               10:42:17

9      Q.   Did you review any documents to prepare to         10:42:29

10  address any of the subjects?                               10:42:32

11      A.   Yes.                                              10:42:33

12      Q.   Okay.  Tell me what documents you reviewed to     10:42:33

13  address item number 8, the corporate security              10:42:40

14  investigation referred to in the 4:15 p.m. March 24,       10:42:44

15  2015 email from Ricardo Garcia to Brian Beach and copied   10:42:49

16  to Fred Ronda.                                             10:42:53

17          MR. HOLT:  Objection to the extent it              10:42:54

18  calls for the witness to reveal privileged information,    10:42:55

19  discussions and selection of documents that were           10:43:01

20  reviewed based on counsel's mental impressions in this     10:43:03

21  case.  The witness can describe generally documents --     10:43:06

22          MR. AMLONG:  Are you instructing her not           10:43:11

23  to answer?                                                 10:43:12

24          MR. HOLT:  If you'll let me finish.  The           10:43:13

25  witness can describe generally the types of documents      10:43:14

1    that were reviewed, but I don't want the specific        10:43:16

2    selection of documents to be identified, based on        10:43:20

3    privilege.        10:43:24

4        Q.    (BY MR. AMLONG)    Tell me which documents you        10:43:39

5    reviewed, Ms. Montgomery, concerning the corporate        10:43:40

6    security investigation.        10:43:43

7        A.    I reviewed one email that I can recall        10:43:45

8    regarding the corporate security investigation.        10:43:50

9        Q.    And when was that email?        10:43:52

10        A.    When was it?        10:43:59

11        Q.    What was the date?        10:44:00

12        A.    I don't recall.        10:44:01

13        Q.    What was the date?        10:44:02

14        A.    I don't recall.        10:44:03

15        Q.    Who was it from and to whom was it addressed?        10:44:03

16        A.    I actually don't recall that.        10:44:16

17        Q.    What, if anything, do you recall about the        10:44:20

18    email?        10:44:25

19        A.    I recall that there was a request to corporate        10:44:25

20    security to investigate a matter in regards to        10:44:30

21    Mr. Patterson.        10:44:36

22        Q.    And who in corporate security conducted that        10:44:38

23    investigation?        10:44:59

24        A.    I believe that was Rick Garcia.        10:44:59

25        Q.    Who else?        10:45:04

```
 1        A.    I don't know anyone else.                 10:45:06

 2        Q.    With whom, if anyone, did Mr. Garcia -- well,  10:45:10

 3   what was the matter that he was investigating?       10:45:15

 4        A.    I don't remember specifics.  But I recall it  10:45:16

 5   had something to do with possibly taking guns into South  10:45:19

 6   America.                                             10:45:25

 7        Q.    What else, if anything, did Mr. Garcia    10:45:25

 8   investigate about Mr. Patterson?                     10:45:54

 9             MR. HOLT:  Do you have a document you      10:46:09

10   want to show the witness on this, Counsel?           10:46:10

11             MR. AMLONG:  Well, right now I'm           10:46:15

12   presuming that she prepared herself as a corporate   10:46:18

13   representative.  I want to know what she knows.      10:46:20

14             MR. HOLT:  Well, she did prepare herself   10:46:22

15   as a corporate representative.  The issue is if you're  10:46:24

16   asking specifics from some document, then I think you  10:46:27

17   need to show the witness the document.  It's         10:46:29

18   unreasonable to --                                   10:46:31

19             MR. AMLONG:  I'm not asking specifics      10:46:33

20   from some document right now.  I just want to know   10:46:34

21   whether or not she knows --                          10:46:36

22             (Cell phone rings.)                        10:46:41

23             MR. AMLONG:  Ms. Brandt, please read my    10:47:01

24   question back.                                       10:47:04

25             THE REPORTER:  Okay.  Hold on.             10:47:05
```

1           (Requested testimony read.)            10:47:07

2           THE WITNESS:  Go ahead and answer?     10:47:32

3      A.   Okay.  I'm sorry.  I thought I was waiting on   10:47:33

4  you.  I don't recall anything else.           10:47:35

5      Q.   (BY MR. AMLONG)  What did Mr. Garcia do to   10:47:44

6  conduct his investigation?                    10:47:54

7      A.   I don't know.                         10:47:56

8      Q.   To whom, if anyone, did Mr. Patterson speak to   10:48:01

9  conduct the investigation?                    10:48:06

10          MR. HOLT:  Objection to form.  You can   10:48:07

11  answer if you know.                           10:48:14

12     A.   I don't know.                         10:48:14

13     Q.   (BY MR. AMLONG)  What, if any, documents did   10:48:15

14  Mr. Patterson -- I'm sorry.                   10:48:25

15          To what, if any --                    10:48:28

16          What, if any, documents did Mr. Garcia review,   10:48:33

17  as far as his investigation?                  10:48:39

18     A.   I don't know.                         10:48:41

19     Q.   What, if any, conclusions did Mr. Garcia reach   10:48:53

20  concerning the investigation?                 10:48:57

21     A.   The allegations were unsubstantiated.  10:49:00

22     Q.   And how do you know that the allegations were   10:49:08

23  unsubstantiated?                              10:49:20

24     A.   I was told that.                      10:49:23

25     Q.   By whom?                              10:49:24

1          A.    I honestly don't remember.                    10:49:32

2          Q.    Did -- did you discuss this investigation with  10:49:36

3     anyone other than Mr. Holt?                              10:49:48

4          A.    Yes.  At the time it would have been one of   10:49:51

5     the chief pilots, but I don't recall which one.          10:50:00

6          Q.    So when were you told that the investigation  10:50:11

7     was unsubstantiated?                                     10:50:13

8                MR. HOLT:  Object to the extent it            10:50:17

9     exceeds the --                                           10:50:20

10         Q.    (BY MR. AMLONG)  During your preparation for  10:50:21

11    today's deposition or at the time of the investigation?  10:50:24

12               MR. HOLT:  Objection, exceeds the scope       10:50:26

13    of the 30(b)(6) deposition notice.                       10:50:27

14               MR. AMLONG:  I'm sorry.  I could not hear     10:50:29

15    the objection.                                           10:50:31

16               MR. HOLT:  It exceeds the scope of the        10:50:32

17    30(b)(6).                                                10:50:33

18         Q.    (BY MR. AMLONG)  You can answer.              10:50:38

19         A.    I'm sorry.  Could you repeat the question?    10:50:38

20               MR. AMLONG:  Read it back, please.            10:50:48

21               (Requested testimony read.)                   10:50:49

22         A.    It would have been at the time of the         10:51:05

23    investigation.                                           10:51:06

24         Q.    (BY MR. AMLONG)  And was the person who told  10:51:06

25    you it was unsubstantiated one of the chief pilots?      10:51:19

1     A.   To the best of my recollection, yes.          10:51:24

2     Q.   Did you at the time of the investigation have  10:51:25

3  any communication with anyone from corporate security?  10:51:40

4            MR. HOLT:  Objection.  That exceeds the       10:51:45

5  scope of the 30(b)(6) notice.  You can answer.          10:51:47

6     Q.   (BY MR. AMLONG)  And unless he instructs you    10:51:57

7  not to answer, please answer.                           10:51:59

8     A.   Okay.  Sorry.  Did I --                         10:52:00

9     Q.   Do you want her to read the question back?      10:52:06

10    A.   No.  You were asking me if I communicated with  10:52:09

11 corporate security.  Right?                             10:52:11

12    Q.   Yes.                                            10:52:13

13    A.   And the answer is no.                           10:52:14

14    Q.   Did you communicate with corporate security in  10:52:16

15 preparation for today's deposition?                     10:52:19

16    A.   Yes.                                            10:52:21

17    Q.   With whom in corporate security did you         10:52:26

18 communicate in connection with today's deposition?      10:52:30

19    A.   With Larry McLaughlin, the director of global   10:52:32

20 investigations.                                         10:52:39

21    Q.   And what, if anything, did Mr. McLaughlin tell  10:52:40

22 you about the investigation?                            10:52:50

23    A.   He told me that because Mr. Garcia has passed   10:52:51

24 away, we don't have any records of that investigation in 10:52:59

25 detail.  And he had no knowledge of anything more than   10:53:05

1    what I already knew.                                10:53:08

2        Q.   Do you know if it is the routine practice of   10:53:19

3    global investigations to keep written reports on their   10:53:38

4    investigations?                                     10:53:43

5              MR. HOLT:  Objection, exceeds the scope   10:53:43

6    of the 30(b)(6) and it violates the Court's order.  You   10:53:45

7    can answer.                                         10:53:48

8        A.   I don't know.                              10:53:49

9              MR. AMLONG:  Ms. Brandt, my office sent   10:54:52

10   out a four-page email shortly before this deposition   10:54:55

11   from Brian Beach dated April 9, 2015.  Do you have a   10:55:04

12   copy of that?                                       10:55:11

13             THE REPORTER:  Yes.                       10:55:12

14             MR. AMLONG:  Let's make the -- make the   10:55:19

15   deposition notice Plaintiff's Exhibit No. 1.  And let's   10:55:21

16   make this email Plaintiff's Exhibit No. 2.          10:55:26

17             THE REPORTER:  I need to speak off the   10:55:39

18   record, if we can go off.                           10:55:40

19             MR. HOLT:  Sure.                          10:55:41

20             THE VIDEOGRAPHER:  We're off the record   10:55:44

21   at 10:56.                                           10:55:46

22             (Break from 10:56 a.m. to 10:56 a.m.)     10:55:48

23             THE VIDEOGRAPHER:  We're back on the      10:56:40

24   record at 10:56.                                    10:56:41

25             (Exhibit 73 marked.)                      10:56:46

                    (Exhibit 74 marked.)                    10:57:00

1    Q.  (BY MR. AMLONG)  All right.  We are marking      10:56:43

2  the 30(b)(6) notice as Plaintiff's Exhibit 73 and the    10:56:51

3  April 9, 2015, email as Plaintiff's 74.  Please take a   10:56:54

4  moment and look at that, Ms. Montgomery.                 10:57:03

5          If you want to, we can shut down the video       10:57:31

6  while you read it.                                       10:57:34

7    A.   Sure.                                             10:57:35

8          MR. HOLT:  We'll stay on the record for         10:57:35

9  time purposes, though.  Correct, Counsel?                10:57:38

10   A.   I presume you want me to read the entire          10:58:02

11 thing?  It's pretty lengthy.                             10:58:05

12   Q.  (BY MR. AMLONG)  Yes.                              10:58:07

13   A.   Okay.                                             10:58:08

14         MR. AMLONG:  And actually, Michael, the          10:58:14

15 seven hour rule doesn't count in 30(b)(6) depositions.   10:58:18

16         MR. HOLT:  Yes, it does.                         10:58:19

17         MR. AMLONG:  You can have one of your            10:58:19

18 interns research that.                                   10:58:21

19         MR. HOLT:  You can research it.  You can         10:58:22

20 look at the rule yourself.  It applies in every          10:58:24

21 deposition.                                              10:58:27

22   A.   Okay.                                             11:03:48

23   Q.  (BY MR. AMLONG)  Ms. Montgomery, who was           11:03:48

24 Rhonda Theuer?                                           11:04:00

1      A.    Rhonda Theuer is retired.  She used to work in    11:04:02

2  human resources.                                            11:04:06

3      Q.    Do you know what she did in HR?                    11:04:09

4      A.    I think she was a human resources business         11:04:12

5  partner, if I remember correctly.                           11:04:18

6      Q.    What was your position at the time of this         11:04:19

7  email?                                                      11:04:31

8      A.    I was the labor relations manager for flight.     11:04:31

9      Q.    Doing the same thing you're doing now?            11:04:33

10     A.    Yes.                                              11:04:38

11     Q.    What, if any, discussion did you have with        11:04:38

12  Captain Beach about this email at the time you got it?     11:04:56

13              MR. HOLT:  Objection.  That exceeds the        11:04:59

14  scope of the 30(b)(6) notice.                              11:05:02

15     A.    I don't recall the specific discussions we had    11:05:03

16  back in April 2015.                                         11:05:09

17     Q.    (BY MR. AMLONG)  Do you recall any discussions    11:05:10

18  about this letter or about this email?                      11:05:14

19              MR. HOLT:  Same objection.                      11:05:17

20     A.    I recall that we had discussions, but I don't     11:05:20

21  recall what they specifically involved.                     11:05:22

22     Q.    (BY MR. AMLONG)  Do you recall if Captain         11:05:26

23  Beach was suggesting any kind of investigation of          11:06:05

24  Mr. Patterson at this time?                                 11:06:14

25              MR. HOLT:  Same objection.                      11:06:16

1    A.   I believe he did want us to look into the      11:06:17

2  allegations, as, you know, on paper they're very      11:06:23

3  concerning.                                           11:06:30

4    Q.   (BY MR. AMLONG)  What was concerning -- what   11:06:30

5  allegations are you classifying as very concerning?   11:06:50

6           MR. HOLT:  Objection, exceeds the scope      11:06:54

7  of the 30(b)(6) notice.                               11:06:55

8    A.   You want me to go through the whole document   11:06:56

9  and tell you what's concerning?                       11:07:02

10   Q.   (BY MR. AMLONG)  Yes.                           11:07:04

11   A.   Okay.  So it starts out with his concern about 11:07:05

12 going through VVI Customs and feels like he was        11:07:16

13 targeted, you know, in relationship to Mr. Patterson   11:07:21

14 allegedly smuggling firearms.                          11:07:29

15          Then he goes on to talk about the behavior in 11:07:33

16 ASU from Mr. Patterson.  Some of it was behavior in    11:07:38

17 regards to being a nonrev and whether the behavior is  11:07:50

18 appropriate, such as taking pillows from First Class for 11:07:55

19 his family.                                            11:07:58

20          Certainly sitting in the jump seat and prior  11:07:59

21 to taxi moving switches, since he was not the pilot    11:08:02

22 flying or pilot monitoring, for that matter.  So moving 11:08:06

23 the switches and flaps from a jump seat.               11:08:11

24          Then going on, some nonrev behavior from his  11:08:24

25 family members, which we will at times investigate,    11:08:28

1  wanting to ride in the crew van, which, to my knowledge,    11:08:37

2  is not a normal request for him and his family when he's    11:08:42

3  not -- or his family is not part of the crew.    11:08:47

4          You know, there's some discussion about being    11:09:00

5  robbed on the street, which wouldn't necessarily be    11:09:03

6  something that we would investigate on its own.  But    11:09:07

7  when you look at the big picture, there's a lot of    11:09:09

8  allegations going on here.    11:09:12

9          Threatening him, saying his mother is    11:09:15

10  corporate counsel at US Airways and threatening to get    11:09:18

11  the crew fired.    11:09:21

12          There were some allegations of whether or not    11:09:35

13  he had arranged to have a ghost rider observe the crew.    11:09:37

14          He made allegations that I guess Whitehouse    11:09:47

15  allegedly told another Captain, Mondrich that he had the    11:10:00

16  purser sit next to him and have sexual relations in the    11:10:10

17  crew rest seat or in the rest seat during his break.    11:10:14

18          Alleging that -- talking about flight    11:10:23

19  attendant Caesar and calling him either a, quote, faggot    11:10:27

20  or the N word, which are unacceptable.    11:10:33

21          There's basically -- if you look through this,    11:10:38

22  there's just a lot of information which was certainly    11:10:53

23  concerning to a captain enough to inform the chief pilot    11:11:03

24  that we have to weed through and determine if we should    11:11:11

25  at least talk to the person who the allegations are    11:11:17

1  against to determine if there's any truth to the          11:11:21

2  allegations.                                               11:11:27

3       Q.   So did you make any effort to speak with         11:11:34

4  Mr. Patterson at the time to determine whether or not      11:11:58

5  these allegations were true?                               11:12:00

6                 MR. HOLT:  Objection, exceeds the scope     11:12:01

7  of the 30(b)(6) notice.                                    11:12:02

8       A.   At this date and time, I don't recall exactly    11:12:08

9  what we were doing.  I know at some point we did assign     11:12:15

10  an HR investigator to investigate allegations against     11:12:19

11  Mr. Patterson.                                            11:12:25

12      Q.   (BY MR. AMLONG)  Who was Fred Bates?             11:12:26

13      A.   He is in corporate security.  He's one of the   11:12:37

14  managers in corporate security in Miami.                  11:12:40

15      Q.   Is Mr. Bates still there?                        11:12:43

16      A.   Yes.                                             11:12:46

17      Q.   Did you --                                       11:12:47

18      A.   And actually, I say he's in Miami.  I don't      11:12:55

19  actually think he's in Miami.  I'm sorry.  What?          11:12:55

20      Q.   I'm sorry?                                       11:13:02

21      A.   I said, I said he was in Miami.  I actually --   11:13:02

22  I don't believe he is based in Miami.                     11:13:05

23      Q.   Did you speak with Mr. Bates in preparation      11:13:08

24  for this deposition?                                      11:13:11

25      A.   I did briefly speak to Mr. Bates -- or Captain   11:13:11

1    Bates.                                                    11:13:17

2         Q.   So Mr. Bates is an aircraft pilot?            11:13:22

3         A.   Yes.                                           11:13:27

4         Q.   And when did you speak to him?                11:13:27

5         A.   I spoke to him yesterday.                     11:13:33

6         Q.   And what did Mr. Bates have to share with you? 11:13:35

7         A.   He said he had no information regarding the   11:13:41

8    corporate security investigation and referred me to    11:13:44

9    Larry McLaughlin.                                        11:13:47

10        Q.   Do you know whether this entire letter was    11:13:51

11   looked at by corporate security back in April of 2015?  11:14:04

12        A.   I don't know.                                  11:14:13

13        Q.   Captain Beach's email to you and Mr. -- states 11:14:37

14   in part, As I stated -- quote, As I stated, Fred Bates  11:14:47

15   has this for action and would be a good source of       11:14:55

16   information as to where they are, closed quote.          11:14:57

17             Did you at the time interface with Mr. Bates?  11:15:02

18        A.   I don't recall doing that.                    11:15:08

19        Q.   To whom else, if anyone, other than --        11:15:08

20             (Reporter clarification.)                      11:15:59

21        Q.   (BY MR. AMLONG)  To whom else, if anyone,     11:16:00

22   other than Fred Bates and Larry McLaughlin, did you     11:16:02

23   speak to in preparation for this 30(b)(6) deposition    11:16:09

24   concerning the corporate security investigation of      11:16:13

25   Mr. Patterson in 2015?                                   11:16:18

1     A.    Those are the only two people in security that     11:16:19

2     I would have talked to or did talk to yesterday.     11:16:23

3     Q.    Other than Mr. Holt, did you speak to anybody     11:16:33

4     else who was not in corporate security concerning the     11:16:37

5     corporate security investigation of Mr. Patterson in     11:16:43

6     2015?     11:16:48

7     A.    No.     11:16:48

8     Q.    Is it your routine practice to keep some sort     11:16:49

9     of file -- I mean, when I say "file," I mean either on     11:17:11

10    paper, on a computer, however you might do it,     11:17:19

11    concerning such complaints as this one about     11:17:26

12    Mr. Patterson?     11:17:30

13          MR. HOLT:  Object to the form.  Also,     11:17:32

14    object to the extent it exceeds the 30(b)(6) notice.     11:17:34

15    A.    So a specific file, no, I don't recall doing     11:17:41

16    that.  It would have been in my email.     11:17:47

17    Q.    (BY MR. AMLONG)  Okay.  Do you -- when you get     11:17:59

18    an email about -- you described yourself as having been     11:18:03

19    concerned about this email.  When you would see an email     11:18:08

20    that concerns you, do you store it some place?     11:18:15

21    A.    No.     11:18:21

22    Q.    What would you do with it?     11:18:24

23          MR. HOLT:  Object to the form.  It     11:18:26

24    exceeds the 30(b)(6) deposition topics.     11:18:27

25    A.    It would depend.  I would not necessarily     11:18:31

1    print it out and store it anywhere.                    11:18:34

2        Q.   (BY MR. AMLONG)  Did you do anything to follow  11:18:37

3    up on this email?                                      11:18:41

4        A.   I believe I already said I would have spoken   11:18:44

5    to Brian Beach or one of the chiefs about it.          11:18:47

6        Q.   Do you recall -- when you said that you would  11:18:53

7    have, that's subjective.  What did you do?             11:19:02

8              MR. HOLT:  Objection to the form.            11:19:06

9        A.   I can't recall specifically the conversations, 11:19:09

10   but it would have been normal for me to pick up the    11:19:15

11   phone and call him -- Brian.                           11:19:18

12       Q.   (BY MR. AMLONG)  Do you know if there was any  11:19:20

13   section 21 investigation begun of Mr. Patterson at this 11:19:42

14   point concerning these allegations?                    11:19:46

15             MR. HOLT:  Objection to the form.            11:19:49

16   Outside the 30(b)(6) deposition topics.                11:19:50

17       A.   I don't believe at that point the section 21  11:19:54

18   had begun.                                             11:19:58

19       Q.   (BY MR. AMLONG)  You said Ms. Theuer was a     11:20:03

20   human resources business partner.  Did you work closely 11:20:12

21   with Ms. Theuer?                                       11:20:17

22       A.   I did when she --                             11:20:20

23             MR. HOLT:  Objection to the form.  You        11:20:21

24   can answer.                                            11:20:23

25             THE WITNESS:  Sorry.                         11:20:24

1      A.   I did when she worked for the company.        11:20:25

2      Q.   (BY MR. AMLONG)  Do you know whether she began  11:20:26

3  any investigation of what you've described as the     11:20:32

4  concerning allegations in this email?                 11:20:37

5           MR. HOLT:  Objection to the form.  And       11:20:39

6  object to the extent it exceeds the 30(b)(6) deposition 11:20:41

7  notice topics.                                         11:20:45

8      A.   I don't know.                                 11:20:46

9      Q.   (BY MR. AMLONG)  As the go-to person, as      11:20:47

10  you've described yourself, for section 20 and 21 of the 11:21:18

11  Joint Collective Bargaining Agreement, is there any    11:21:23

12  reason not to have begun a section 21 investigation    11:21:30

13  concerning the allegations in this letter?             11:21:43

14           MR. HOLT:  Objection to the form and         11:21:45

15  objection to the extent it exceeds the scope of the    11:21:46

16  30(b)(6) deposition topics.                            11:21:50

17      A.   I can't think of any specific reason.         11:21:52

18      Q.   (BY MR. AMLONG)  Do the allegations in the    11:21:53

19  emails from Captain Whitehouse that Captain Beach was   11:22:12

20  forwarding to you --                                   11:22:19

21      A.   Which email?  I'm sorry.                      11:22:21

22      Q.   -- give you any reason to question the        11:22:23

23  psychological state or stability of Mr. Patterson at    11:22:25

24  this time?                                             11:22:32

25      A.   Does the email from Captain Whitehouse to     11:22:32

1    Captain Beach give me reason to -- I'm sorry.  What was    11:22:36

2    that question?    11:22:42

3         Q.   Did the emails that Captain Beach forwarded to    11:22:46

4    you from Captain Whitehouse raise any concern with you    11:22:48

5    about the mental or psychological stability of First    11:22:55

6    Officer Patterson in April 2015?    11:23:01

7              MR. HOLT:  Objection, exceeds the scope    11:23:05

8    of the 30(b)(6) deposition notice topics.    11:23:06

9         A.   I don't believe there's enough information to    11:23:13

10   make that determination.    11:23:15

11        Q.   (BY MR. AMLONG)  So you thought in April 2015    11:23:16

12   that Captain Whitehouse's allegations were insufficient    11:23:32

13   to justify a section 20 examination.  Right?    11:23:36

14             MR. HOLT:  Objection, misstates    11:23:39

15   testimony.    11:23:42

16        A.   So that would not be our normal process, to    11:23:42

17   immediately go from receiving an email to jumping to a    11:23:45

18   section 20.  We -- there's more information that we like    11:23:50

19   to receive before we take the action to send somebody    11:24:00

20   for a section 20 physical examination.    11:24:03

21        Q.   (BY MR. AMLONG)  What additional information    11:24:06

22   do you want before you would send somebody for a    11:24:18

23   section 20 examination?    11:24:24

24             MR. HOLT:  Objection, exceeds the scope    11:24:25

25   of the 30(b)(6) deposition notice topics.    11:24:27

1    A.   I can't give you specifics, as each case is        11:24:30

2  different.  We generally would like to go ahead and have   11:24:34

3  Mr. Patterson explain his side of the story, so to         11:24:39

4  speak.                                                     11:24:44

5    Q.   (BY MR. AMLONG)  Well, what, if any, efforts        11:24:49

6  were made in April 2015 to have Mr. Patterson, quote,      11:24:52

7  explain his side of the story, closed quote?               11:24:59

8           MR. HOLT:  Objection.  It exceeds the             11:25:02

9  scope of the 30(b)(6) deposition notice topics.            11:25:03

10   A.   At that point we did not set up a section 21        11:25:09

11 for Mr. Patterson.                                         11:25:14

12   Q.   (BY MR. AMLONG)  Why not?                           11:25:19

13           MR. HOLT:  Same objection.                       11:25:21

14   A.   I don't recall.                                     11:25:22

15   Q.   (BY MR. AMLONG)  Look, please, at Exhibit 61.       11:25:23

16           (Exhibit 61 marked.)                             11:26:50

17           MR. HOLT:  Set those over here out of the        11:26:50

18 way.                                                       11:26:52

19        May I see a copy of this?  Okay.                    11:26:54

20   A.   I --                                                11:27:01

21   Q.   (BY MR. AMLONG)  And --                             11:27:03

22   A.   Oh, go ahead.                                       11:27:03

23   Q.   -- look at the second page, the email -- the        11:27:04

24 March 19, 2015, email from Whitehouse to Beach.            11:27:08

25   A.   I see it.                                           11:27:17

1      Q.    Beginning, One more thing I forgot.          11:27:18

2      A.    Yes.                                         11:27:20

3      Q.    In or about March of 2015, did you become    11:27:21

4   aware that Captain Whitehouse was reporting that     11:27:32

5   Mr. Patterson said within earshot of passengers that the  11:27:42

6   aircraft they were on was like a bomb and was going to  11:27:46

7   blow up if they did not get on the ground ASAP?      11:27:50

8              MR. HOLT:  Objection, outside the scope    11:27:53

9   of the 30(b)(6).                                     11:27:55

10     A.    You're asking me when did I become aware of  11:28:00

11   this?                                                11:28:02

12     Q.    (BY MR. AMLONG)  No.  I'm asking you whether 11:28:02

13   in March of 2015 you were aware of the allegations  11:28:04

14   contained in the March 19th email?                  11:28:09

15             MR. HOLT:  Same objection.                 11:28:13

16     A.    I don't remember.                            11:28:13

17     Q.    (BY MR. AMLONG)  Have you ever been aware of 11:28:15

18   it prior to today?                                   11:28:20

19     A.    Yes.                                         11:28:22

20     Q.    Do you know if you became aware of it after  11:28:22

21   about the time it was made?                         11:28:33

22             MR. HOLT:  Objection, outside the scope    11:28:35

23   of the 30(b)(6).                                     11:28:36

24     A.    I don't recall.                              11:28:40

25     Q.    (BY MR. AMLONG)   The second (sic) topic     11:28:41

| | | |
|---|---|---|
| 1 | listed on the 30(b)(6) deposition notice is, The human | 11:29:15 |
| 2 | resources investigation that grew from the furnishing by | 11:29:24 |
| 3 | Captain Glenn Whitehouse to Captain Brian Beach of the | 11:29:27 |
| 4 | package of information as an attachment to the 8:34:57 | 11:29:30 |
| 5 | p.m. September 24, 2015, email. | 11:29:37 |
| 6 | A.   I see that. | 11:29:43 |
| 7 | Q.   Can you tell me what, if anything, you did to | 11:29:43 |
| 8 | prepare to respond as the 30(b)(6) representative on | 11:29:53 |
| 9 | that topic? | 11:29:57 |
| 10 | MR. HOLT:  The same instructions as | 11:29:58 |
| 11 | earlier.  Without disclosing the substance of | 11:30:00 |
| 12 | communications with American's lawyers, you can answer | 11:30:03 |
| 13 | the question. | 11:30:05 |
| 14 | A.   I met with Mr. Holt. | 11:30:05 |
| 15 | Q.   (BY MR. AMLONG)  Did you do anything other | 11:30:16 |
| 16 | than meet with Mr. Holt? | 11:30:17 |
| 17 | A.   No. | 11:30:21 |
| 18 | Q.   Have you reviewed any documents? | 11:30:21 |
| 19 | A.   In part of my meeting with Mr. Holt, I | 11:30:28 |
| 20 | reviewed documents. | 11:30:30 |
| 21 | Q.   Going back for a moment to Exhibit 61 -- look | 11:30:32 |
| 22 | at Exhibit 2 -- | 11:31:45 |
| 23 | A.   Exhibit 2? | 11:31:47 |
| 24 | Q.   Yes. | 11:31:49 |
| 25 | A.   Okay.  One moment. | 11:31:49 |

1    (Exhibit 2 marked.)                                 11:32:01

2            MR. HOLT:  Thank you.                        11:32:01

3    A.   Okay.  I have Exhibit 2.                        11:32:13

4    Q.   (BY MR. AMLONG)  Do you recognize Captain       11:32:18

5    Whitehouse's allegation in Exhibit 2, which appears to  11:32:21

6    have been made verbally to Mr. Bonds, as being      11:32:29

7    substantially the same allegation as was contained in  11:32:36

8    the March 19th email to Captain Beach?              11:32:40

9            MR. HOLT:  Objection to the form.  Also,     11:32:45

10   outside the 30(b)(6).  But you can answer if you know.  11:32:47

11   A.   I'm sorry.  Could you repeat the question?      11:32:51

12   I'm not sure what you're asking me.                 11:32:53

13           MR. AMLONG:  Can you read it back,           11:32:57

14   please?                                             11:32:59

15           And, Mr. Holt, I'm happy to give you a       11:33:00

16   standing objection, but you're going to make this   11:33:02

17   deposition three times longer than it needs to be by  11:33:05

18   going through that same presentation after each and  11:33:08

19   every question.                                     11:33:13

20           MR. HOLT:  That's precisely what I told      11:33:15

21   you earlier on.  So if you want to agree on a standing  11:33:17

22   objection, I'm perfectly fine with that.  Like I said, I  11:33:20

23   don't want to -- I don't want you to have an unclear  11:33:22

24   record, and I just don't want my objection to be waived.  11:33:25

25   So I'm happy to do it however you prefer.           11:33:28

1    MR. AMLONG:  Why don't you just say          11:33:41

2  outside 30(b)(6), and that will be sufficient.   11:33:43

3    MR. HOLT:  I'll try my best to say just      11:33:47

4  that.  But old habits die hard, I'm sure you know.  So   11:33:49

5  I'll try to keep it as brief as I can.          11:33:55

6    MR. AMLONG:  Okay.                           11:33:58

7    Q.  (BY MR. AMLONG)  Ms. Montgomery, do you   11:34:00

8  recognize the objection in Exhibit 2 as being   11:34:01

9  substantially similar to the -- I'm sorry.     11:34:05

10    Ms. Montgomery, do you recognize the         11:34:09

11  allegation in Exhibit 2 as being essentially the same   11:34:14

12  allegation that Mr. Whitehouse made to Captain Beach in   11:34:21

13  Exhibit 61 on March 19, 2015?                  11:34:26

14    MR. HOLT:  Objection to form and outside     11:34:31

15  the 30(b)(6).                                  11:34:32

16    A.  I can't say for sure.  They're two different   11:34:34

17  cases.                                         11:34:43

18    Q.  Mark Cronin emailed you and Ms. Guia     11:34:49

19  concerning this allegation.  What, if anything, did you   11:35:02

20  do in response to the email from Mr. Cronin forwarding   11:35:07

21  the email from Mr. Bonds quoting the allegations by   11:35:14

22  Mr. Whitehouse?                                11:35:21

23    MR. HOLT:  Outside the 30(b)(6).             11:35:21

24    A.  I can't say.  I don't recall exactly what I   11:35:24

25  did on -- as soon as I received the email from Captain   11:35:26

1    Cronin.                                                    11:35:30

2        Q.   (BY MR. AMLONG)  Do you recall if you did          11:35:34

3    anything?                                                  11:35:35

4        A.   I don't recall one way or the other.  Is there    11:35:36

5    a document you want me to look at?                         11:35:42

6        Q.   No.                                               11:35:49

7             Look at Exhibits 3, 4 and 5, please.              11:36:08

8                  (Exhibit 3 marked.)                          11:36:08

9                  (Exhibit 4 marked.)                          11:36:08

10                 (Exhibit 5 marked.)                          11:36:39

11       A.   Okay.  I have the Exhibits 3, 4 and 5.            11:36:39

12       Q.   (BY MR. AMLONG)  Did you review any of those      11:36:44

13   exhibits in preparation for today's deposition?           11:36:47

14              MR. HOLT:  Objection.  The witness is not        11:36:50

15   going to answer questions about specific documents that    11:36:52

16   were reviewed at the instruction of counsel in            11:36:54

17   preparation for the deposition.                           11:36:56

18       Q.   (BY MR. AMLONG)  Have you reviewed -- have you    11:36:58

19   reviewed the September 24, 2015, letter?                  11:37:00

20       A.   Yes, I believe so.                               11:37:05

21       Q.   Do you consider the September 24, 2015, letter   11:37:07

22   to be substantially similar to the allegations contained 11:37:21

23   in Captain Whitehouse's March emails to Captain Beach     11:37:32

24   and forwarded to corporate security?                      11:37:44

25              MR. HOLT:  Objection to the form.               11:37:47

1    A.   Yes.                                          11:37:48

2    Q.   (BY MR. AMLONG)   The Exhibit 3 is an email   11:37:51

3    from Brian Beach to -- I am sorry.  Exhibit 3 is an  11:38:15

4    email from Glenn Whitehouse to Brian Beach at 8:34:57  11:38:24

5    p.m. on September 24th.  Do you know how Captain    11:38:33

6    Whitehouse came to be sending a repeat of his March  11:38:41

7    allegations to Captain Beach in September 2015?     11:38:51

8              MR. HOLT:  Objection to the form, calls  11:39:00

9    for speculation.                                    11:39:01

10             THE WITNESS:  Do you want me to answer    11:39:06

11   it?                                                 11:39:08

12             MR. HOLT:  Yeah.                          11:39:09

13             THE WITNESS:  Okay.                       11:39:10

14   A.   So now that I'm thinking about this for a      11:39:10

15   second, when we originally received Captain Whitehouse's  11:39:12

16   concerns, he --                                     11:39:19

17   Q.   (BY MR. AMLONG)  Are you talking about March?  11:39:25

18   A.   Yes.  To my recollection, he wanted to handle  11:39:26

19   that through APA pro standards.                     11:39:28

20   Q.   Who wanted to handle that through APA pro      11:39:31

21   standards?                                          11:39:36

22   A.   Captain Whitehouse, I believe.  And so it got  11:39:36

23   to the point to where he tried to work through APA pro  11:39:48

24   standards and was not getting any satisfaction.  And so  11:39:51

25   he wanted to make a formal complaint to the company  11:39:58

1    regarding Mr. Patterson.                        11:40:03

2        Q.   Do you know how it happened to come on  11:40:05

3    September 24th?                                  11:40:21

4             MR. HOLT:  Objection to the form.  Calls  11:40:22

5    for speculation.                                11:40:24

6        A.   I don't know.                          11:40:24

7        Q.   (BY MR. AMLONG)  Do you know if Captain Beach  11:40:25

8    asked him to provide them the complaint?        11:40:31

9        A.   I don't know.                          11:40:36

10       Q.   Was Exhibit 5 attached to Exhibit 3?   11:40:36

11            MR. HOLT:  One second, Counsel.  Can I  11:40:52

12   take a look at these, because I don't have a copy here?  11:40:54

13   I just want to make sure we're looking at the same  11:40:57

14   documents.  Okay.  Exhibit 3, for the record, has no  11:41:00

15   Bates number.  Exhibit 5 has a Bates number.  So it  11:41:03

16   looks like they might have come from different  11:41:07

17   productions.                                     11:41:10

18       Q.   (BY MR. AMLONG)  Do you know, Ms. Montgomery,  11:41:16

19   if the September 24th letter from Captain Beach was  11:41:18

20   attached to an email sent by Glenn Whitehouse at  11:41:22

21   8:34 p.m., September 24th?                       11:41:35

22            MR. HOLT:  Objection, form.            11:41:39

23       A.   I can't say for sure which email it was  11:41:40

24   specifically attached to.                        11:41:44

25       Q.   (BY MR. AMLONG)  Did you receive a copy of it  11:41:51

1    that evening?                                        11:41:54

2         A.   I'm not 100 percent sure it was that evening.  11:41:55

3    But I did ultimately receive a copy of this email in   11:42:01

4    Exhibit 5, or this document, but I don't know the date  11:42:08

5    and time that I received it.                          11:42:12

6         Q.   Do you know from whom you received it?      11:42:20

7         A.   I believe I received that from Mark Cronin.  11:42:23

8         Q.   Look at Exhibit 4.                          11:42:32

9         A.   Okay.                                       11:42:37

10        Q.   An email from James Bonds to Sean Scialfa,   11:42:39

11   Brian Beach and Kevin Mase.  Those are the other chief  11:42:44

12   pilots in Miami.  Correct?                            11:42:49

13        A.   Yes.                                        11:42:51

14        Q.   And it says, quote, Jackie, Mark, and Lucretia  11:42:51

15   all have seen the letter and are taking action.  Who is  11:42:59

16   Jackie?                                               11:43:03

17        A.   Jackie Rios was the former director of human  11:43:03

18   resources for the air ops group.                     11:43:07

19        Q.   Where is she now?                          11:43:15

20        A.   She's a director of human resources for the  11:43:17

21   international groups.                                 11:43:19

22        Q.   And Lucretia is Lucretia Guia?              11:43:24

23        A.   Correct.                                    11:43:29

24        Q.   And Mark is Mark Cronin?                    11:43:30

25        A.   I would presume so.                        11:43:32

1      Q.   Do you know what action anybody was taking on      11:43:33

2   the evening of September 24th concerning Captain      11:43:45

3   Whitehouse's letter?      11:43:50

4      A.   I believe he was placed on PW or paid      11:43:52

5   withhold.      11:43:55

6      Q.   Look at Exhibit 6.      11:44:04

7           MR. HOLT:   When we're done with these      11:44:10

8   exhibits, Counsel, can we set them aside?      11:44:12

9           (Exhibit 6 marked.)      11:44:15

10     A.   Exhibit 6, yes.      11:44:15

11     Q.   (BY MR. AMLONG)   Is that the letter placing      11:44:17

12   Mr. Patterson on paid withhold status?      11:44:28

13     A.   Yes.      11:44:35

14     Q.   Do you know who drafted that letter?      11:44:37

15     A.   I drafted the letter.      11:44:52

16     Q.   And when and why did you do that?      11:44:54

17     A.   Contractually we are required to provide a      11:45:07

18   letter when you're withheld -- when a pilot is withheld      11:45:13

19   from service.  So I normally draft letters, not all the      11:45:16

20   time, but I normally do it and provide it to the chief.      11:45:23

21     Q.   Had you drafted this letter in advance?      11:45:28

22     A.   No.      11:45:41

23           MR. HOLT:   Objection to the form.      11:45:41

24     A.   No, I did not.      11:45:43

25     Q.   (BY MR. AMLONG)   Do you know why the -- do you      11:45:44

1  know why the letter is dated March 25th (sic) but says,    11:46:00

2  As discussed on September 24, 2015, this letter confirms    11:46:17

3  that I am withholding you from service with pay pending     11:46:21

4  the outcome of an investigation into the circumstances     11:46:24

5  surrounding a work environment complaint that was          11:46:27

6  reported by a coworker?                                    11:46:31

7          MR. HOLT:  Objection to form.                      11:46:32

8      A.   The letter is not dated March 25th.  It's         11:46:33

9  dated September 25th.                                      11:46:37

10     Q.   (BY MR. AMLONG)  Let me rephrase that then so     11:46:40

11 my record will be clear.                                   11:46:43

12         Do you know why the letter is dated                11:46:45

13 September 25th, but states, As discussed on                11:46:47

14 September 24th, this letter confirms I am withholding      11:46:52

15 you from service with pay pending the outcome of an        11:46:56

16 investigation into the circumstances surrounding a work    11:46:59

17 environment complaint that was reported by a coworker?     11:47:01

18     A.   The letter would have been dated the date it      11:47:06

19 was sent out.  I presume they sent it out on               11:47:08

20 September 25th.                                            11:47:12

21     Q.   What conversation occurred with Mr. Patterson     11:47:12

22 on September 24th?                                          11:47:20

23     A.   I don't know.  I didn't have any conversations    11:47:21

24 with him.                                                  11:47:23

25     Q.   Had you been anticipating receiving the           11:47:24

1   complaint from Captain Whitehouse?                    11:47:58

2              MR. HOLT:  Object to the form.             11:48:02

3       A.   No.                                          11:48:03

4       Q.   (BY MR. AMLONG)  Who decided to put          11:48:03

5   Mr. Patterson on paid withheld status?               11:48:39

6       A.   I believe that was Jim Bonds, the chief pilot.  11:48:43

7       Q.   Did Mr. Bonds explain to you his reasoning for  11:48:48

8   putting Mr. Patterson on paid withheld status?       11:49:11

9       A.   It was in regards to the work environment    11:49:17

10  complaint from Captain Whitehouse.                   11:49:20

11      Q.   Do you recall how Mr. Bonds communicated this  11:49:39

12  to you?                                              11:49:53

13      A.   How he communicated that he wanted to put    11:49:54

14  Mr. Patterson on paid withhold?  Is that the question?  11:50:01

15      Q.   Yes.                                         11:50:04

16      A.   I don't recall exactly.  I do recall we talked  11:50:05

17  on the phone, but I don't -- I don't recall the      11:50:11

18  specifics.                                           11:50:15

19      Q.   Did you keep any notes about this process?   11:50:16

20      A.   No.                                          11:50:39

21              MR. HOLT:  Objection, outside the         11:50:41

22  30(b)(6).  Go ahead.                                 11:50:46

23      A.   No, not that I recall.                       11:50:47

24      Q.   (BY MR. AMLONG)  Topic 10 of the 30(b)(6)    11:50:49

25  deposition notice says, quote, The placement of      11:51:20

1    plaintiff on, quote, paid withhold [or paid withheld]    11:51:22

2    status September 24 or September 25, 2015.    11:51:29

3            What, if anything, did you do to research just    11:51:37

4    how Mr. Patterson got put onto paid withheld status?    11:51:40

5            MR. HOLT:  Same instruction.  The witness    11:51:49

6    will not reveal the contents of confidential and    11:51:51

7    privileged communications with counsel.  But you can    11:51:53

8    answer generally.    11:51:55

9        A.    I met with Mr. Holt.    11:51:56

10       Q.    (BY MR. AMLONG)  Did you review any documents?    11:51:58

11       A.    I reviewed documents with Mr. Holt.    11:52:04

12       Q.    Look at Exhibit 72.    11:52:06

13            (Exhibit 72 marked.)    11:52:25

14       A.    72.  Okay.  I have it.    11:52:25

15       Q.    (BY MR. AMLONG)  Did you review that document?    11:52:28

16            MR. HOLT:  Objection.  The witness is not    11:52:29

17   going to testify regarding the specific documents that    11:52:31

18   were reviewed at the instruction of counsel.  If you    11:52:35

19   want to ask the witness if she's seen this document    11:52:37

20   before, that's perfectly acceptable.  She can answer    11:52:40

21   that.    11:52:44

22       Q.    (BY MR. AMLONG)  Ms. Montgomery, have you seen    11:52:45

23   this document before?    11:52:46

24       A.    Yes.    11:52:47

25       Q.    And can you please tell the ladies and    11:52:48

1    gentlemen of the jury what this document is?                11:53:00

2         A.   It's a display 4.                                 11:53:03

3         Q.   I'm sorry?                                        11:53:09

4         A.   It's a display 4.                                 11:53:10

5         Q.   Does that mean a screen print of --               11:53:18

6         A.   It's a screen --                                  11:53:27

7         Q.   -- American Airlines -- you're saying screen      11:53:28

8    4, F-O-U-R?                                                 11:53:32

9         A.   It's a screenshot -- it's a screenshot of a       11:53:33

10   display 4 for Mr. Patterson.                                11:53:36

11        Q.   And when does this show that Mr. Patterson was    11:53:42

12   put on paid withheld status?                                11:53:50

13        A.   24 September 2015.                                11:53:58

14        Q.   Do you know, Ms. Montgomery, whether Captain      11:53:59

15   Bonds actually put Mr. Patterson on paid withheld status    11:55:21

16   effective September 22nd?                                   11:55:27

17        A.   He did not.                                       11:55:28

18        Q.   We'll come back to that.  Please look at No.      11:55:49

19   7.                                                          11:56:09

20              (Exhibit 7 marked.)                              11:56:26

21        A.   Okay.  I have it.                                 11:56:26

22        Q.   (BY MR. AMLONG)  Can you tell us what it is?      11:56:29

23        A.   The first page is a confidentiality statement     11:56:32

24   that Glenn Whitehouse signed.  The next one, two, three,    11:56:36

25   four, five, six pages appear to be Ana Burke-Leon's         11:57:05

1   notes from the section 21 hearing on October 6th.      11:57:14

2       Q.   So Ms. Burke-Leon would have attended the     11:57:25

3   section 21 hearing?                                     11:57:28

4       A.   She would have asked the questions.  She's the  11:57:29

5   HR person.                                              11:57:31

6            The rest of the document is a variety of       11:57:59

7   things.  The next seven pages looks like Captain        11:58:01

8   Whitehouse's September 24th letter.  Well, maybe there  11:58:14

9   are more than that.  So the rest of the pages are just  11:58:23

10  emails, it looks like, from Captain Whitehouse, and     11:58:40

11  Whitehouse's NAP for October 2015.                      11:58:47

12      Q.   His what for October 2015?                     11:59:07

13      A.   NAP.                                           11:59:07

14      Q.   What's that mean?                              11:59:07

15      A.   It's basically his activity -- activity sheet  11:59:09

16  or I guess schedule.                                    11:59:18

17      Q.   I see.  Look at Exhibit No. 8 and tell me if   11:59:25

18  you recognize whose handwriting that is.                12:00:20

19           (Exhibit 8 marked.)                            12:00:23

20      A.   I believe that's Ana Burke-Leon's handwriting. 12:00:32

21      Q.   (BY MR. AMLONG)  Do you know who she's         12:00:39

22  interviewing?                                           12:00:41

23      A.   Do I know who she's interviewing?  Is that     12:00:42

24  your question?                                          12:00:46

25      Q.   Yes.                                           12:00:47

1      A.   No, I don't.  No.                        12:00:48

2      Q.   Look at Exhibit 14, please.             12:00:55

3           (Exhibit 14 marked.)                    12:02:27

4      A.   Okay.  I have it.                        12:02:43

5      Q.   (BY MR. AMLONG)  You were copied on it.  And   12:02:46

6  it's saying there's going to be a meeting with   12:02:48

7  Mr. Patterson on Monday, November 2nd.  Did you attend   12:02:51

8  that meeting?                                     12:02:54

9      A.   No.                                      12:02:55

10     Q.   Did you attend by phone?                 12:02:55

11     A.   No.                                      12:03:04

12     Q.   Let me ask you to look at Exhibit 15.    12:03:05

13          (Exhibit 15 marked.)                     12:04:03

14     A.   I have it.                               12:04:21

15     Q.   (BY MR. AMLONG)  Have you seen -- have you   12:04:24

16  previously seen either Guy Shellhouse's email to Mark   12:04:26

17  Cronin and Dan Carey or Mark Cronin's email to Brian   12:04:35

18  Beach?                                           12:04:41

19          MR. HOLT:  Objection to the form.        12:04:41

20  Outside the 30(b)(6).                            12:04:42

21     A.   Okay.  I'm sorry.  Are you asking if I'm   12:04:45

22  familiar with --                                 12:04:52

23     Q.   (BY MR. AMLONG)  Have you previously seen   12:04:53

24  either of those two emails?                      12:04:56

25     A.   I don't recall.                          12:04:57

1    Q.   Did the section 21 investigation into          12:04:58

2  Mr. Patterson produce any material that would describe  12:06:03

3  disciplining him or terminating him?                    12:06:10

4    A.   No.  He was not disciplined or terminated.      12:06:13

5    Q.   Did it produce any evidence that he had done    12:06:21

6  anything wrong?                                         12:06:26

7              MR. HOLT:  Objection, form.                 12:06:27

8    A.   I'm not sure the section 21 is actually         12:06:28

9  concluded at this time.                                 12:06:42

10    Q.   (BY MR. AMLONG)  Do you mean presently?         12:06:43

11    A.   Yes.                                            12:06:50

12    Q.   Were you not copied on -- well, what's a PEH?   12:06:51

13    A.   Personnel employment history.                  12:07:16

14    Q.   Were you copied on the PEH that Captain Beach   12:07:18

15  sent to Mr. Patterson subsequent to the section 21     12:07:22

16  meetings?                                              12:07:31

17              MR. HOLT:  Objection.                      12:07:32

18    A.   Do you have -- do you have the PEH for me to    12:07:36

19  look at?                                               12:07:39

20    Q.   (BY MR. AMLONG)  Let me get it for you.         12:07:55

21         Does the contract specify a time limit on the   12:09:27

22  section 21 investigation?                              12:09:32

23    A.   No.                                             12:09:33

24              MR. HOLT:  Objection, outside the          12:09:33

25  30(b)(6).                                              12:09:36

1      A.    The answer is no.                              12:09:36

2      Q.    (BY MR. AMLONG)  Did HR policies provide a      12:09:37

3   time limit on them?                                     12:09:44

4            MR. HOLT:  Same objection.                      12:09:45

5      A.    No.                                            12:09:46

6      Q.    (BY MR. AMLONG)  So do you consider the         12:09:47

7   section 21 investigation of Mr. Patterson to still be   12:09:56

8   open and ongoing?                                       12:10:00

9            MR. HOLT:  Same objection and misstates         12:10:01

10  testimony.                                              12:10:03

11     A.    I actually have not given Mr. Patterson a       12:10:05

12  thought in any recent time, other than prepping for this 12:10:08

13  hearing.  If you have a PEH you want me to look at, I am  12:10:12

14  happy to look at it.                                    12:10:23

15     Q.    (BY MR. AMLONG)  I am getting it to you.        12:10:24

16     A.    Okay.                                          12:10:25

17     Q.    In preparing for the section 120 hearing in    12:10:44

18  November, was American aware that there was a USERRA     12:10:49

19  issue that Mr. Patterson had raised?                    12:10:57

20           MR. HOLT:  Objection to form, outside the      12:11:02

21  30(b)(6).                                               12:11:04

22     A.    I actually don't recall if there was a         12:11:10

23  specific USERRA objection made at that point.  I know    12:11:13

24  that the section 21 that was held in November had        12:11:17

25  nothing to do with his military leave.                   12:11:20

1      Q.   (BY MR. AMLONG)   Take a look at Exhibit 25,        12:11:39

2   please.                                                    12:11:42

3              (Exhibit 25 marked.)                            12:11:53

4      A.   Okay.  I have it.                                  12:11:59

5      Q.   (BY MR. AMLONG)   Take a moment and read it.       12:12:03

6      A.   Okay.                                              12:12:25

7      Q.   So does this refresh your memory as to whether     12:12:25

8   American Airlines was aware that there were USERRA         12:12:36

9   issues at play in October --                              12:12:40

10             MR. HOLT:  Objection to the form.               12:12:44

11     Q.   (BY MR. AMLONG)  -- 2015?                          12:12:46

12     A.   So I guess -- I guess when I'm -- when I hear      12:12:48

13   you say USERRA issues, I'm thinking of a formal           12:13:03

14   complaint from the government regarding a USERRA          12:13:09

15   violation.  But from the email, I see that Mr. Patterson  12:13:12

16   raised some concerns to Captain Bonds.                    12:13:19

17     Q.   What, if anything, in October of 2015 was         12:13:47

18   giving rise to concerns about a section 20 procedure for  12:13:58

19   Mr. Patterson?                                            12:14:06

20     A.   The section 20 I guess decision was based on      12:14:10

21   really Captain Whitehouse's allegations, and not just     12:14:28

22   Captain Whitehouse, because I know Ana had interviewed    12:14:31

23   other pilots.  So it was really the big picture as a      12:14:36

24   whole, everything put together.  We just wanted to be     12:14:42

25   sure that Mr. Patterson was fit for duty to fly for       12:14:47

1    American Airlines.                                    12:14:53

2         Q.   And the interviews with other pilots -- look    12:14:55

3    at page 17.                                           12:15:31

4         A.   Exhibit 17?                                 12:15:35

5         Q.   Yes.                                        12:15:37

6              (Exhibit 17 marked.)                        12:15:48

7         A.   Okay.  I have 17.                           12:15:56

8         Q.   (BY MR. AMLONG)  Is that one of the interviews    12:15:59

9    that you're referring to?                             12:16:03

10        A.   I believe Ana did talk to Captain Snelling.    12:16:04

11        Q.   Was that one of the interviews that you say    12:16:20

12   gave rise to the desire to have a section 20          12:16:23

13   examination?                                          12:16:29

14             MR. HOLT:  Objection, form.                 12:16:30

15        A.   Yes.                                        12:16:31

16             THE WITNESS:  Any chance we can take a      12:16:51

17   bio break?                                            12:16:54

18        Q.   (BY MR. AMLONG)  Look at exhibit --         12:16:55

19             MR. AMLONG:  I'm sorry?                     12:16:56

20             THE WITNESS:  I'm asking if we could take    12:16:57

21   a bio break for a few minutes.                        12:16:58

22             MR. AMLONG:  Sure.                          12:17:00

23             THE WITNESS:  Okay.                         12:17:03

24             THE VIDEOGRAPHER:  We're off the record     12:17:03

25   at 12:17.                                             12:17:06

1          (Break from 12:17 p.m. to 12:32 p.m.)          12:17:07

2          THE VIDEOGRAPHER:  We're back on the          12:32:20

3    record at 12:32.                                    12:32:26

4      Q.   (BY MR. AMLONG)  Ms. Montgomery, please take a   12:32:28

5    look at Exhibits 22, 23 and 24.                      12:32:48

6          (Exhibit 22 marked.)                           12:33:10

7          (Exhibit 23 marked.)                           12:33:11

8          (Exhibit 24 marked.)                           12:33:12

9      A.   Okay.  I have got 22, 23 and 24.              12:33:19

10     Q.   (BY MR. AMLONG)  Okay.  Do you recognize those   12:33:22

11   as being the input that Ms. Burke-Leon got from First   12:33:28

12   Officer Bullock about Mr. Patterson?                 12:33:37

13         MR. HOLT:  Objection to form.                  12:33:40

14     Q.   (BY MR. AMLONG)  Have you ever seen those     12:33:53

15   documents before?                                    12:34:03

16     A.   I don't recall actually seeing them.  I am    12:33:55

17   just looking at them right now.  But, yes, it looks like   12:33:59

18   an email from Bullock to Brian Beach that was forwarded   12:34:04

19   to Ana.                                              12:34:10

20     Q.   Was there anyone else, other than First       12:34:11

21   Officer Bullock and Captain Snelling, who spoke to   12:34:31

22   Ms. Burke-Leon about Mr. Patterson?                  12:34:42

23     A.   I believe there was.                          12:34:46

24     Q.   Do you know who it was?                       12:34:48

25     A.   Not off the top of my head.                   12:34:52

1    Q.   You're listed as the 30(b)(6) representative    12:34:54

2    concerning the human resources investigation that grew    12:35:13

3    from the furnishing by Captain Glenn Whitehouse to    12:35:13

4    Captain Brian Beach of the package of information as an    12:35:21

5    attachment to the 8:34:57 p.m., September 24, 2015,    12:35:22

6    email.  And that's the investigation you're talking    12:35:27

7    about here.  Correct?    12:35:29

8              MR. HOLT:  Objection to the form.    12:35:30

9    A.   Yes.    12:35:31

10   Q.   (BY MR. AMLONG)  That's the investigation that    12:35:35

11   you're saying gave rise to the section 20 concerns?    12:35:36

12             MR. HOLT:  Objection, form.    12:35:39

13   A.   Yes.    12:35:40

14   Q.   (BY MR. AMLONG)  And what files, if any, did    12:35:40

15   you review concerning that investigation to prepare for    12:35:53

16   today's deposition?    12:35:56

17             MR. HOLT:  Same instruction as earlier.    12:35:57

18   You can answer to the extent it doesn't reveal the    12:36:00

19   substance --    12:36:03

20   Q.   (BY MR. AMLONG)  I don't care who gave them to    12:36:05

21   you.  I don't care if Mr. Holt gave them to you.  I    12:36:07

22   don't care if Santa Claus gave them to you.  I just want    12:36:13

23   to know which files, if any, you reviewed to prepare for    12:36:14

24   today's deposition.    12:36:16

25             MR. HOLT:  Counsel, I think we can all    12:36:16

1    agree Santa Claus didn't give her anything.  Second, I    12:36:18

2    am just clarifying for the record that I don't want the    12:36:21

3    witness answering with respect to privileged    12:36:24

4    information.  If you want to carve that out from your    12:36:24

5    question, you're free to do so.    12:36:27

6         Q.   (BY MR. AMLONG)  Without saying who gave them    12:36:30

7    to you, I would like to know what, if any, files you    12:36:32

8    reviewed to prepare yourself to testify about the human    12:36:36

9    resources investigation that grew from the Glenn    12:36:42

10   Whitehouse letter.    12:36:48

11        A.   There were several documents, but one in    12:36:48

12   particular is Ana's report on the hearing.  I just don't    12:36:50

13   know the names off the top of my head to tell you    12:36:59

14   exactly who she interviewed.    12:37:03

15        Q.   Look at Exhibit 40.    12:37:04

16        A.   Four zero?    12:38:39

17             (Exhibit 40 marked.)    12:39:05

18        A.   Okay.  I have --    12:39:07

19        Q.   (BY MR. AMLONG)  Is that the -- is this the    12:39:09

20   report that you were talking about that Ms. Burke-Leon    12:39:10

21   did on her investigation?    12:39:18

22        A.   No.    12:39:19

23        Q.   Look at Exhibit 41.    12:39:19

24             (Exhibit 41 marked.)    12:39:35

25        A.   41.  Okay.  I have it.  This is the report.    12:39:37

1    Q.   (BY MR. AMLONG)  Is that the report that          12:39:42

2    you're referring to that Mr. -- Ms. Burke-Leon did of   12:39:43

3    her investigation?                                       12:39:49

4    A.   Yes.                                                12:39:49

5    Q.   When was the possibility of a section 20 exam       12:40:06

6    first discussed concerning Mr. Patterson?                12:40:40

7    A.   I --                                                12:40:44

8            MR. HOLT:  Objection, outside the                12:40:47

9    30(b)(6).  You can answer if you know.                   12:40:49

10   A.   I don't recall the specific date.                   12:40:50

11   Q.   (BY MR. AMLONG)  Well, was it in September          12:40:53

12   when he was away and when he was first being put on paid 12:40:59

13   withheld status?                                         12:41:08

14           MR. HOLT:  Objection, form.                      12:41:09

15   A.   I don't recall when the conversation first          12:41:10

16   began.  I can tell you that the chiefs wanted to         12:41:13

17   consider it as part of the investigation.                12:41:16

18           MR. AMLONG:  I'm sorry.  Read her answer         12:41:29

19   back to me, please.                                      12:41:31

20           (Requested testimony read.)                      12:41:32

21   Q.   (BY MR. AMLONG)  Which chief?                       12:41:44

22           MR. HOLT:  Object to the form.                   12:41:49

23   A.   I don't remember specifically, but it would         12:41:50

24   have been Jim Bonds and/or Brian Beach.                  12:41:52

25   Q.   (BY MR. AMLONG)  The initiation of the              12:42:03

1     section 20 discussion began with either Bonds or Beach?    12:42:05

2                    MR. HOLT:  Objection to form.               12:42:11

3          A.    To my recollection, yes.                        12:42:12

4          Q.    (BY MR. AMLONG)  Is that what you're saying?    12:42:13

5          A.    To my recollection, yes.                        12:42:14

6          Q.    And after -- when a chief pilot proposes a      12:42:15

7     section 20 examination, who, if anyone, needs to approve   12:43:10

8     that?                                                      12:43:17

9          A.    I don't -- no one has to actually approve it.   12:43:19

10    In general, there would be a discussion between flight,    12:43:27

11    labor and legal representatives to make that               12:43:32

12    determination.                                             12:43:36

13         Q.    Tell me what discussion you recall about the    12:43:40

14    proposal to send Mr. Patterson for a section 20            12:43:43

15    examination.                                               12:43:50

16                    MR. HOLT:  Outside the 30(b)(6).  You can   12:43:51

17    answer.                                                    12:43:53

18         A.    I recall that the chiefs wanted to send him     12:43:53

19    for a section 20 examination.  I recall there was --       12:43:56

20         Q.    (BY MR. AMLONG)  Are you saying the chiefs      12:44:02

21    with an "S" on the end?                                    12:44:04

22         A.    Yes.                                            12:44:05

23         Q.    Okay.  Referring to Bonds and Beach?            12:44:05

24         A.    Yes.                                            12:44:10

25         Q.    Okay.                                           12:44:12

1          MR. HOLT:  You can finish your answer.        12:44:14

2      A.   So I -- there was conversations with them    12:44:15

3  regarding the feasibility of sending him for a        12:44:20

4  section 20 examination and what information would lead 12:44:27

5  us to send him for a section 20 examination.  And     12:44:35

6  overall it was several things that really came out of  12:44:40

7  his section 21 investigation.  And enough people were  12:44:52

8  telling us that he -- about just some very strange     12:44:56

9  behavior or nonnormal behavior, statements that he made. 12:45:05

10  And we just wanted to make sure, as we have the        12:45:14

11  contractual right to do -- to ensure that he was, in   12:45:18

12  fact, fit for duty as an American Airlines pilot.      12:45:22

13      Q.   (BY MR. AMLONG)  Look at Exhibit 17.  The     12:45:33

14  assertions that Captain Snelling was making concerned  12:46:49

15  events that took place in 2004.  Correct?              12:46:53

16      A.   Let me get 17 out again.  Allegations in 2004? 12:46:54

17  Oh, I see.  Okay.  Regarding Florida Highway Patrol    12:47:09

18  Academy, yes.                                          12:47:13

19      Q.   And what were the allegations by First Officer 12:47:20

20  Bullock?                                               12:47:24

21      A.   By First Officer Bullock?  I'm sorry.  I'm    12:47:26

22  looking at -- Snelling's letter is in 17.              12:47:29

23      Q.   Look at Exhibit 44.                           12:48:48

24      A.   44.                                           12:48:53

25          (Exhibit 44 marked.)                           12:49:08

1      A.    Okay.  I have 44.                      12:49:17

2      Q.    (BY MR. AMLONG)  Did Captain Bonds write that   12:49:19

3   letter?                                          12:49:25

4      A.    No.  Well, I don't know what he wrote.  I   12:49:25

5   drafted it.  I can tell you that.                12:49:31

6      Q.    Okay.  And this is referring -- this is   12:49:35

7   referring Mr. Patterson for an exam by -- for a   12:49:46

8   neuropsychiatric examination with Dr. John Knippa.  What   12:50:04

9   evidence of any neuropsychological deficits did you come   12:50:12

10  up with in the section 21 investigation or the human   12:50:19

11  resources investigation?                          12:50:26

12            MR. HOLT:  Objection to the form and    12:50:27

13  outside the scope.                                12:50:28

14     A.    So to be clear, the section 21 --        12:50:29

15     Q.    (BY MR. AMLONG)  What evidence of         12:50:36

16  neuropsychological deficits did you come up with in the   12:50:37

17  section 21 investigation?                         12:50:43

18            MR. HOLT:  Objection, form.             12:50:45

19     A.    We don't -- we don't make that determination.   12:50:46

20     Q.    (BY MR. AMLONG)  Who determined there would be   12:50:53

21  a neuropsychological exam, as opposed to simply a   12:50:56

22  psychological exam?                               12:51:00

23     A.    Dr. Ahtone determines who the appropriate   12:51:01

24  doctor is to send -- that we sent Mr. Patterson to.   12:51:05

25     Q.    Does Dr. -- what did tell Dr. Ahtone?  Was it   12:51:13

1    you that communicated with Dr. Ahtone?                    12:51:20

2         A.   I do communicate with him.  I probably did in   12:51:24

3    this instance.                                            12:51:37

4         Q.   What, if anything, did you relay to Dr. Ahtone  12:51:37

5    about any neuropsychological deficits from which          12:51:42

6    Mr. Patterson possibly suffered that would justify a      12:51:49

7    neuropsychological examination?                           12:51:58

8              MR. HOLT:  Objection to form, outside the        12:51:58

9    30(b)(6).                                                 12:52:01

10        A.   I don't communicate anything with Dr. Ahtone    12:52:01

11   regarding neuropsychological deficits.  That's not       12:52:03

12   something I'm trained to evaluate.                        12:52:08

13        Q.   (BY MR. AMLONG)  Let me ask you to look at      12:52:38

14   Exhibit 45.                                               12:52:53

15              (Exhibit 45 marked.)                           12:52:58

16        A.   Okay.                                           12:53:09

17        Q.   (BY MR. AMLONG)  It's from you to Brian Beach   12:53:09

18   dated January 5th.  So may we assume from that that you   12:53:17

19   had decided prior to January 5th that Mr. Patterson       12:53:26

20   would be going for a fitness for duty examination?        12:53:32

21              MR. HOLT:  Objection to the form.              12:53:35

22        A.   Yes.                                            12:53:37

23        Q.   (BY MR. AMLONG)  Let me ask you to look at      12:53:37

24   Exhibit 46.                                               12:54:16

25              (Exhibit 46 marked.)                           12:54:17

```
1       A.   I have it.                              12:54:29
2       Q.   (BY MR. AMLONG)  Can you tell me who wrote  12:54:37
3    that?                                           12:54:38
4       A.   I drafted it, and there would have been input  12:54:40
5    from our legal department as well.              12:54:46
6       Q.   Would that have been Ms. Guia?          12:54:48
7       A.   Likely, yes.                            12:55:21
8       Q.   And what's the purpose of this document?  To  12:55:22
9    whom is this sent?                              12:55:32
10      A.   So keep in mind, this document was never  12:55:33
11   actually sent to anyone, other than it was purely a  12:55:36
12   draft.  But the purpose -- well, it wasn't actually  12:55:39
13   sent.                                           12:55:48
14      Q.   Well, was a similar document sent?      12:55:53
15      A.   There was a fitness for duty exam request  12:55:55
16   sent, but it is not this document.              12:55:59
17           MR. AMLONG:  Mr. Holt, has that been    12:56:10
18   produced?                                       12:56:12
19           MR. HOLT:  Yes, it has.                 12:56:13
20           MR. AMLONG:  Can you tell me the Bates  12:56:15
21   number?                                         12:56:16
22           MR. HOLT:  I don't have the Bates number  12:56:17
23   right in front of me.  If you give me a second, I  12:56:18
24   probably can.  I'll bet it's in the stack of documents  12:56:21
25   in front of the court reporter.                 12:56:25
```

1     Q.   (BY MR. AMLONG)  Look at 48.                12:56:36

2             MR. HOLT:  Before we go on to No. 48, are  12:56:41

3   you looking for the fitness for duty exam letter that  12:56:43

4   would have been sent to Mr. Patterson or to Dr. Knippa?  12:56:46

5             MR. AMLONG:  To Dr. Ahtone --            12:56:53

6             MR. HOLT:  I'm sorry?                     12:56:53

7     Q.   (BY MR. AMLONG)  Is this letter sent to Dr. --  12:56:55

8   is the fitness for duty request directed to Dr. Ahtone?  12:56:58

9     A.   No.                                          12:57:04

10    Q.   To whom is it requested -- to whom is it     12:57:05

11  directed?                                            12:57:09

12    A.   It would have been sent to Dr. Knippa.       12:57:09

13    Q.   Is Dr. Ahtone involved in the decision of    12:57:23

14  whether to send someone for a fitness for duty        12:57:32

15  examination?                                          12:57:34

16    A.   No.                                          12:57:35

17    Q.   Is that all between flight, labor relations  12:57:40

18  and legal?                                            12:57:49

19    A.   Yes.                                          12:57:51

20    Q.   Who makes the final decision?                12:58:02

21    A.   Flight.                                       12:58:04

22    Q.   So in this case that would have been Captain  12:58:10

23  Beach or Bonds?                                       12:58:18

24            MR. HOLT:  Objection, form.               12:58:20

25    A.   Yes.                                          12:58:22

1    Q.   (BY MR. AMLONG)  So I see a draft of a fitness    12:58:22

2    for duty examination at Exhibit 48 and a -- drafted for    12:58:49

3    Brian Beach's signature and an executed fitness for duty    12:58:57

4    request at Exhibit 49.    12:59:06

5    A.   Do you want me to look at those documents?    12:59:15

6    Q.   Are these the two final products that emerged    12:59:19

7    from Exhibit 46?    12:59:21

8    A.   All right.  I am going to need -- I need the    12:59:27

9    exhibits.    12:59:30

10                 (Exhibit 48 marked.)    12:59:13

11                 (Exhibit 49 marked.)    12:59:13

12    A.   48 and 49?    12:59:30

13    Q.   (BY MR. AMLONG)  Yeah.  48 and 49, are these    12:59:31

14    the two final ones that emerged from 46?    12:59:37

15    A.   Yes.  This is what would have been sent to    12:59:46

16    Dr. Knippa.    12:59:56

17    Q.   What else, if anything, was sent to    01:00:06

18    Dr. Knippa?    01:00:09

19    A.   Nothing that I know of.    01:00:10

20    Q.   Did you have any communications with    01:00:16

21    Dr. Knippa?    01:00:19

22    A.   I did not.    01:00:20

23    Q.   I see a fax indication at the top of the    01:01:05

24    somewhat slanted page, which is Exhibit 49.  Was this    01:01:11

25    faxed to Dr. Knippa?    01:01:20

1   A.   I didn't fax anything, so I'm not 100 percent          01:01:23

2   sure.                                                        01:01:26

3   Q.   Is that the way you would have typically done           01:01:30

4   so?                                                          01:01:33

5   A.   I don't -- I don't contact the doctor, so I            01:01:33

6   don't know if they normally fax or email or -- it's         01:01:37

7   highly likely that it was faxed, or at least possible.      01:01:42

8   Q.   Do you have any knowledge of how Dr. Knippa            01:01:46

9   was chosen?                                                  01:02:33

10   A.   Dr. Ahtone selected Dr. Knippa.                        01:02:34

11   Q.   That's not my question.                                01:02:41

12   A.   Okay.                                                  01:02:43

13   Q.   Do you have any idea how he did so?                    01:02:43

14   A.   No.                                                    01:02:45

15   Q.   One of the 30(b)(6) topics is the selection of        01:02:46

16   Dr. John Knippa, Ph.D. to perform the section 20            01:03:15

17   evaluation.  Did you do anything to attempt to find out    01:03:20

18   how Dr. Knippa was chosen by Dr. Ahtone?                    01:03:23

19           MR. HOLT:  Objection to the form.  This             01:03:28

20   has been asked and answered by Dr. Ahtone, whom we've      01:03:29

21   offered to adopt his testimony as binding on American      01:03:35

22   Airlines.                                                   01:03:40

23           MR. AMLONG:  And he doesn't know.                   01:03:41

24           MR. HOLT:  Well --                                  01:03:42

25   Q.   (BY MR. AMLONG)  Did you do anything                   01:03:42

```
 1   whatsoever to find out how and why Dr. Ahtone selected    01:03:44

 2   Dr. Knippa?                                               01:03:53

 3              MR. HOLT:  I am going to object to your        01:03:54

 4   commentary, move to strike it, and note that this        01:03:56

 5   question has been asked and answered.                    01:03:59

 6        Q.   (BY MR. AMLONG)  You may answer.                01:04:02

 7        A.   No.                                             01:04:04

 8        Q.   What information was given to Dr. Ahtone?       01:04:41

 9        A.   Dr. Ahtone and I would have discussed the      01:04:50

10   outcome of the section 21 investigation.                 01:04:54

11        Q.   So what information, if any, did -- would       01:05:00

12   Captain Beach or Captain Bonds have spoken to Dr. Ahtone 01:05:07

13   as well?                                                 01:05:13

14        A.   No.                                             01:05:13

15        Q.   Would Ms. Guia have spoken to Dr. Ahtone?      01:05:13

16              MR. HOLT:  Objection to the form, calls        01:05:21

17   for speculation.                                         01:05:23

18        A.   I don't know.                                  01:05:23

19        Q.   (BY MR. AMLONG)  Well, in the routine practice 01:05:24

20   of the way American Airlines operates, does Ms. Guia     01:05:30

21   communicate with Dr. Ahtone about section 20             01:05:33

22   examinations, or is that your job?                       01:05:36

23              MR. HOLT:  Objection to form, outside the      01:05:37

24   30(b)(6).  Also, to the extent this seeks any            01:05:39

25   information you might have about attorney/client         01:05:43
```

1    privileged communications, I'll instruct you not to          01:05:45

2    answer.                                                      01:05:47

3         Q.   (BY MR. AMLONG)   You may answer.                 01:05:49

4              MR. HOLT:  Except with respect to                 01:05:52

5    attorney/client confidential information.                   01:05:54

6         A.   So there are occasions where Ms. Guia may         01:05:58

7    speak to Dr. Ahtone, but I can't say that she had a         01:06:01

8    conversation with Dr. Ahtone regarding Mr. Patterson.       01:06:04

9         Q.   (BY MR. AMLONG)   What, if anything, did you      01:06:12

10   communicate to Dr. Ahtone that would be indicative of a     01:06:15

11   neuropsychological deficit?                                 01:06:26

12             MR. HOLT:  Objection to the form.  Asked          01:06:27

13   and answered about three times in this deposition.          01:06:29

14        A.   And I have no idea what would be considered a     01:06:32

15   neuropsychological deficit.                                 01:06:39

16        Q.   (BY MR. AMLONG)   Did you communicate to          01:06:40

17   Dr. Ahtone beyond the information contained in              01:06:52

18   Exhibit 29, which was also sent to Dr. Knippa?              01:07:01

19        A.   29?                                               01:07:08

20        Q.   I'm sorry.  49.                                   01:07:11

21        A.   Yes, I would have --                              01:07:18

22        Q.   Did you communicate -- I'm sorry.  Go ahead.      01:07:19

23             MR. HOLT:  You can finish your answer.            01:07:22

24        A.   I would have discussed these results of the      01:07:23

25   section 21 investigation.                                   01:07:26

1      Q.   (BY MR. AMLONG)  And what did you tell          01:07:33

2    Dr. Ahtone about the results of the section 21          01:07:35

3    investigation?                                          01:07:40

4              MR. HOLT:  Objection, outside the scope       01:07:41

5    of the 30(b)(6).  But you can answer.                   01:07:43

6      A.   I don't specifically remember the exact          01:07:46

7    conversation, but I would have discussed the conclusions 01:07:48

8    that Ana made in her investigation.                     01:07:50

9      Q.   (BY MR. AMLONG)  Being what you described as     01:07:56

10   the go-to person for section 20 issues, are you familiar 01:08:18

11   with how often American Airlines sends its pilots for    01:08:25

12   neuropsychological evaluations as opposed to simply      01:08:33

13   clinical psychological evaluations?                      01:08:38

14             MR. HOLT:  Objection to scope, outside         01:08:42

15   the 30(b)(6).                                            01:08:45

16     A.   I don't know that information.                    01:08:47

17     Q.   (BY MR. AMLONG)  Do you always send pilots for    01:08:48

18   neuropsychological evaluations?                          01:08:51

19             MR. HOLT:  Objection to form.                  01:08:53

20     A.   No.                                               01:08:54

21     Q.   (BY MR. AMLONG)  I believe that you told me       01:08:59

22   that you've been director of labor relations for flight  01:10:03

23   since 2014.  Correct?                                    01:10:12

24             MR. HOLT:  Objection, form.                    01:10:14

25     A.   Yeah, not exactly that title, but I've been in    01:10:15

1    the labor relations group for the flight contract since        01:10:18
2    2014.                                                          01:10:23
3        Q.   (BY MR. AMLONG)  For how long -- and you're           01:10:23
4    the top person there.  Correct?                                01:10:28
5                MR. HOLT:  Objection, form.                        01:10:30
6        A.   No.                                                   01:10:32
7        Q.   (BY MR. AMLONG)  Who is above you?                    01:10:33
8        A.   Todd Jewett, the managing director of labor          01:10:35
9    relations/flight.                                              01:10:39
10       Q.   Bob Hewitt?                                           01:10:47
11       A.   Todd Jewett.                                          01:10:49
12       Q.   Oh, Todd.  H-E-W-I-T-T?                               01:10:50
13       A.   Todd, T-O-D-D, Jewett, J-E-W-E-T-T.  And by          01:10:54
14   the way, he was not in that role at this time.                 01:11:05
15       Q.   Who was?                                              01:11:07
16       A.   Beth Holdren.                                         01:11:10
17       Q.   H-O-L-D-R-E-N?                                        01:11:13
18       A.   Yes.                                                  01:11:29
19       Q.   And you're the direct report of the managing         01:11:29
20   director of flight?                                            01:11:40
21       A.   Yes.                                                  01:11:41
22                MR. HOLT:  Could you read that question           01:11:48
23   back one more time for me, madam court reporter?  I            01:11:49
24   don't think I heard it quite properly.                         01:11:53
25                (Requested testimony read.)                       01:11:55

1    A.   Managing director of labor relations/flight.    01:12:02

2  Sorry.                                                  01:12:04

3    Q.   (BY MR. AMLONG)  Okay.  And are you the only     01:12:07

4  person within labor relations/flight that deals with    01:12:20

5  section 20 issues?                                       01:12:27

6    A.   Yes.                                              01:12:28

7          MR. HOLT:  Outside the 30(b)(6).                 01:12:29

8    A.   Yes.                                              01:12:31

9    Q.   (BY MR. AMLONG)  During the time that you have    01:12:31

10 been in labor relations/flight, how many pilots have you 01:12:49

11 sent for section 20 examinations?                        01:12:58

12         MR. HOLT:  Objection, outside the scope,         01:13:01

13 also not relevant.                                       01:13:04

14   A.   And I have no idea.                               01:13:07

15   Q.   (BY MR. AMLONG)  More than ten?                   01:13:13

16         MR. HOLT:  Objection to the form.  Calls         01:13:14

17 for speculation.  She testified she has no idea.         01:13:16

18         THE WITNESS:  Answer?                            01:13:21

19         MR. HOLT:  If you know.                          01:13:22

20   A.   Yes, it would be more than ten.                   01:13:23

21   Q.   (BY MR. AMLONG)  More than 20?                    01:13:24

22         MR. HOLT:  Objection.  Same objection.           01:13:28

23   A.   Yeah, I'll be honest, I don't know.  And it --    01:13:32

24 I don't know.                                            01:13:37

25   Q.   (BY MR. AMLONG)  How many of them have            01:13:37

1    returned to fly?                                          01:13:42

2              MR. HOLT:  Objection, outside the scope,        01:13:44

3    irrelevant.  Frankly, harassing.  But you can answer if   01:13:46

4    you know.                                                 01:13:50

5         A.   I don't know the number.  Several have.  I      01:13:50

6    don't know the number.                                    01:13:52

7              MR. AMLONG:  Ms. Reporter, we sent you          01:15:20

8    two more exhibits.  One is a February 23, 2016, email     01:15:23

9    from Brian Beach to Rodney Patterson.  Do you have that?  01:15:32

10             MR. HOLT:  Counsel, if you're changing          01:15:39

11   lines of inquiry right now, would this be an okay time    01:15:41

12   for a lunch break?  I wanted to let you finish up the     01:15:45

13   line of questioning you were on, but I think we're        01:15:49

14   getting hungry here.  If you want to do a little more,    01:15:51

15   we can go a little more.  I just figured I would raise    01:15:58

16   that up for you because I think people here are going to  01:16:00

17   start a coup if we don't let them get lunch pretty soon.  01:16:06

18             MR. AMLONG:  All right.  Just a couple          01:16:11

19   more questions.                                           01:16:13

20             MR. HOLT:  Sure.                                01:16:13

21        Q.   (BY MR. AMLONG)  On the section 21 hearing, do  01:16:15

22   you have that email?                                      01:16:19

23        A.   I'm sorry.  Which email?  Oh.                   01:16:21

24        Q.   It's a February 23, 2016, email from Brian      01:16:24

25   Beach to Rodney Patterson.  Subject:  PEH entry for HR    01:16:29

```
 1   hearing.                                              01:16:35

 2              MR. AMLONG:  It was sent to you an hour    01:16:46

 3   or so ago.                                            01:16:48

 4              THE WITNESS:  We're looking.               01:16:49

 5              MR. HOLT:  Off the record one second.      01:16:58

 6              MR. AMLONG:  Sure.                          01:17:00

 7              (Discussion off the record.)               01:17:01

 8              (Exhibit 75 marked.)                       01:18:10

 9              (Exhibit 76 marked.)                       01:18:11

10   Q.   (BY MR. AMLONG)  Look at 75 and tell me if       01:18:14

11   that refreshes your memory.  It's an email from Brian 01:18:16

12   Beach to Mr. Patterson.  Subject:  PEH entry for HR   01:18:21

13   hearing.  Does that refresh your memory as to whether or 01:18:26

14   not the section 21 hearing has concluded?             01:18:30

15   A.   Yes.                                             01:18:37

16   Q.   And is there any finding of wrongdoing there?    01:18:42

17   A.   Nothing that warranted discipline.              01:18:47

18   Q.   Look at 76.                                      01:18:55

19   A.   Okay.                                            01:18:59

20   Q.   Do you recognize that?                           01:18:59

21   A.   I do.                                            01:19:03

22   Q.   And can you please tell us what it is?           01:19:04

23   A.   It's an activity sheet for September 2015.       01:19:11

24   Q.   And look in the second column.                   01:19:15

25   A.   Okay.                                            01:19:33
```

1    Q.   Look to September 22nd.  And what is          01:19:34

2    Mr. Patterson's status as of September 22nd?        01:19:48

3    A.   His status as far as an employee?  I am not    01:19:51

4    sure what you mean.                                 01:20:02

5    Q.   Is he not on paid withheld status as of        01:20:05

6    September 22nd?                                      01:20:10

7              MR. HOLT:  Objection to the form.         01:20:13

8    A.   Actually I testified earlier in the display 4  01:20:14

9    that I believe his PW started on the 24th.          01:20:20

10   Q.   (BY MR. AMLONG)  But on this activity/pay      01:20:23

11   sheet, does it not show him being paid withheld on the  01:20:29

12   22nd?                                               01:20:33

13   A.   No.  There's a removal code there, but that's  01:20:34

14   not -- that's not the date that he was pay withheld.  01:20:42

15   Q.   Well, then how did this get into the computer?  01:20:52

16   A.   I can't answer that.  No idea.                 01:20:55

17   Q.   When you say there's a removal code, what do   01:20:59

18   you mean by that?                                   01:21:14

19   A.   If you look at the third column where all the  01:21:14

20   OTs and the PWs are, that is a removal column for code.  01:21:17

21   Q.   And what's OT mean?  On the second column, it  01:21:37

22   starts with PW on the 22nd, correct, and goes through  01:21:50

23   the rest of the month?                              01:21:55

24   A.   It says --                                     01:21:56

25             MR. HOLT:  Objection, form.               01:21:56

1    A.   It says that, but that's not actually the PW          01:21:57

2  date, because the display 4 is what indicates all of the    01:22:01

3  employment statuses, which started on the 24th.  So I        01:22:06

4  don't know why that -- I can't say why that PW is there.     01:22:11

5    Q.   (BY MR. AMLONG)  Do you put somebody on PW            01:22:17

6  status or could Captain Bonds put somebody on PW status?     01:22:26

7    A.   I never do it, so it would have to be someone         01:22:32

8  from the flight department.                                  01:22:35

9    Q.   And what has to be done to achieve that?              01:22:36

10    A.   I have no idea.  I don't know what the actual         01:22:41

11  entry is.                                                    01:22:43

12           MR. AMLONG:  If you're getting hungry --            01:22:51

13  and I can see where you might be -- do you want to take      01:22:53

14  a lunch break now?                                           01:22:55

15           MR. HOLT:  Sure.                                    01:22:57

16           THE WITNESS:  Sure.                                 01:22:58

17           MR. HOLT:  Go off the record.                       01:23:00

18           THE VIDEOGRAPHER:  We're off the record            01:23:01

19  at 1:23.                                                     01:23:03

20           (Break from 1:23 p.m. to 2:27 p.m.)                01:23:04

21           THE VIDEOGRAPHER:  We're back on the               02:27:31

22  record at 2:27.                                              02:27:32

23           MR. HOLT:  I think we're ready whenever            02:28:03

24  you are.                                                     02:28:06

25           MR. AMLONG:  Okay.  Thank you.                      02:28:06

1    Q.   (BY MR. AMLONG)  Ms. Mitchell (sic), just so        02:28:10

2    we can be clear about this, did anyone within the        02:28:16

3    medical, psychological or neuropsychological expertise   02:28:28

4    participate in the selection of Mr. Patterson for the    02:28:35

5    section 20 examination by Dr. Knippa?                    02:28:42

6              MR. HOLT:  Object to form.                     02:28:47

7    A.   So that question seems to combine a lot of          02:28:49

8    things.  Are you asking --                               02:28:51

9    Q.   (BY MR. AMLONG)  We'll break it down.  Did          02:28:55

10   anybody with any medical expertise participate in the    02:28:57

11   selection of Mr. Patterson for a section 20              02:29:02

12   neuropsychological exam by Dr. Knippa?                   02:29:07

13             MR. HOLT:  Object to the form.                 02:29:10

14   A.   Okay.  I'll break it down, because I think          02:29:11

15   that's asking two different things.  So, one, no one     02:29:16

16   with a medical background selected Mr. Patterson to go   02:29:20

17   through a section 20 examination.  Dr. Knippa was        02:29:24

18   selected by Dr. Ahtone, who, of course, does have a      02:29:30

19   medical background.                                      02:29:35

20   Q.   (BY MR. AMLONG)  Did any -- did anyone with a       02:29:36

21   psychological background select Mr. Patterson for a      02:29:41

22   neuropsychological exam by Dr. Knippa?                   02:29:49

23             MR. HOLT:  Object to the form.                 02:29:52

24   A.   I'll say no only because I'm not 100 percent        02:29:53

25   sure what Dr. Ahtone's background is.  I know he's a     02:30:02

1    medical doctor, and I don't think he has a psychological    02:30:06

2    background, but he would have to speak to that.    02:30:09

3         Q.   (BY MR. AMLONG)   Well, Dr. Ahtone did not    02:30:11

4    select Mr. Patterson.  Dr. Ahtone merely selected    02:30:17

5    Dr. Knippa.  Correct?    02:30:21

6         A.   That's my point, because you keep asking who    02:30:23

7    selected him to go to a section 20, to Dr. Knippa.  So    02:30:28

8    it's two separate subjects, in my opinion.  And that's    02:30:33

9    why I'm trying to be clear.    02:30:37

10        Q.   Let's back up, and I'll reask the question.    02:30:38

11   Did anybody with a medical background select Scott    02:30:40

12   Patterson for a section 20 exam?    02:30:49

13             MR. HOLT:  Object to form.    02:30:51

14        A.   No.    02:30:52

15        Q.   (BY MR. AMLONG)   Did anybody with a    02:30:52

16   psychological background select Scott Patterson for a    02:30:53

17   section 20 exam?    02:31:00

18             MR. HOLT:  Object to the form.    02:31:00

19        A.   No.    02:31:01

20        Q.   (BY MR. AMLONG)   Did anybody with a    02:31:02

21   neuropsychological background select Scott Patterson for    02:31:08

22   a section 20 exam?    02:31:11

23             MR. HOLT:  Object to the form.    02:31:13

24        A.   No.    02:31:14

25        Q.   (BY MR. AMLONG)   So the two decisionmakers    02:31:14

1   were -- or the decisionmakers were either Captain          02:31:25

2   Bonds -- Captain Bonds and Captain Beach or at least one    02:31:32

3   of them?                                                    02:31:39

4                   MR. HOLT:  Object to the form.             02:31:39

5        A.   Yes.                                             02:31:41

6        Q.   (BY MR. AMLONG)  Look at Exhibit 1, please,      02:31:42

7   and tell me what that is.                                  02:31:46

8                   (Exhibit 1 marked.)                        02:31:47

9        A.   This is a printout from the EthicsPoint          02:32:30

10  program that our work environment claims are recorded in   02:32:34

11  or housed in.                                              02:32:41

12       Q.   (BY MR. AMLONG)  And who input this              02:32:47

13  information?                                               02:34:05

14       A.   Ana Burke-Leon would have input the             02:34:06

15  information.                                               02:34:09

16       Q.   Who was included in the -- what does            02:34:09

17  restricted access mean, and what does the case access      02:34:50

18  list mean?                                                 02:34:53

19                  MR. HOLT:  Object to the form.             02:34:54

20       A.   Okay.  I am looking for it.  Hang on.            02:34:55

21       Q.   (BY MR. AMLONG)  It's on the second page.        02:35:01

22  It's the first full box.                                   02:35:04

23       A.   So where it says, Assignments & Access?          02:35:07

24       Q.   Yes.                                             02:35:11

25       A.   You're asking what does Assignments & Access     02:35:12

1    mean?                                                    02:35:19

2       Q.   Yes.                                             02:35:24

3       A.   I can't say.                                     02:35:26

4            MR. HOLT:  Outside the 30(b)(6).                 02:35:27

5       Q.   (BY MR. AMLONG)  And the participants listed,    02:35:49

6    these are all the people that Ms. Burke-Leon spoke to?   02:35:57

7            MR. HOLT:  Object to the form.                   02:36:03

8       A.   I would have to compare it to her report.        02:36:03

9       Q.   (BY MR. AMLONG)  So the closing summary was      02:36:10

10   done December 14, 2015, and provided to you.  Is that    02:36:52

11   the document we saw earlier that was stamped             02:37:00

12   confidential across the front?                           02:37:02

13      A.   I would have to look at it.  I don't know.       02:37:08

14      Q.   Exhibit 41.                                      02:37:10

15      A.   41?  I would say yes, that it is.  I can't say   02:37:15

16   for sure, but it's what I received.  Actually, I take    02:37:32

17   that back.  Hang on.  I take that back.  I just want to  02:38:00

18   confirm.  Yes.  I am looking at Exhibit 40.  This is     02:38:07

19   what I would consider a summary.  You know, the honest   02:38:21

20   truth is I can't say what she means by closing summary.  02:38:30

21      Q.   And this is the type of record that American     02:39:19

22   Airlines maintains on all the human resources            02:40:06

23   investigations?                                          02:40:08

24            MR. HOLT:  Object to the form, outside          02:40:09

25   the scope, violates the Court's order.                   02:40:10

1    A.   I can't say for certainty all, but I can say    02:40:15

2  that this is our system that we use to keep track of    02:40:19

3  complaints.                                             02:40:26

4    Q.   (BY MR. AMLONG)  Are there any written          02:40:40

5  guidelines concerning subjecting someone to a section 20  02:43:31

6  examination?                                            02:43:31

7             (Reporter clarification.)                   02:43:40

8    Q.   (BY MR. AMLONG)  Does American Airlines have    02:43:42

9  any written guidelines for subjecting somebody to a    02:43:47

10  section 20 examination?                                02:43:54

11             MR. HOLT:  Outside the scope.               02:43:54

12    A.   Nothing outside of the actual section 20 of    02:44:00

13  the JCBA.                                               02:44:03

14    Q.   (BY MR. AMLONG)  Look at Exhibit 30, please.   02:44:05

15    A.   30?                                             02:45:08

16    Q.   Yes.                                            02:45:09

17             (Exhibit 30 marked.)                        02:45:21

18    A.   Okay.  I have it.                               02:45:29

19    Q.   (BY MR. AMLONG)  Do you know why,               02:45:37

20  notwithstanding all of the statements that             02:45:42

21  Ms. Burke-Leon took, Mr. Cronin is saying, quote, The  02:45:45

22  only thing we can use are statements are the ones from  02:45:56

23  Whitehouse, closed quote?                              02:46:02

24             MR. HOLT:  Object to the form.              02:46:04

25    A.   So we didn't have anything other than a        02:46:05

1   statement from Captain Whitehouse.                      02:46:29

2       Q.   (BY MR. AMLONG)  Well, by this time you had    02:46:36

3   the statements from Bullock and Snelling and these other 02:46:38

4   people that were listed in Ms. Burke-Leon's chart.       02:46:47

5   Correct?                                                 02:46:51

6       A.   I'd have to look at the date.  Hang on.  So I   02:46:51

7   don't think so --                                        02:47:29

8            Hang on.  I don't know the exact dates we got   02:47:29

9   each item.  Oh, okay.  Yeah, I don't know what he means  02:47:35

10  by that.                                                 02:47:52

11      Q.   Were the witnesses -- were the witnesses        02:47:54

12  unwilling to put their names on anything?                02:48:04

13      A.   So initially that was exactly the matter.  You  02:48:09

14  know, essentially they did not want to tattle on a       02:48:14

15  fellow pilot, and they were concerned enough to tell us  02:48:24

16  about their concerns, but they were reluctant to make an 02:48:31

17  official complaint, I guess, if you will.  But, you      02:48:37

18  know, in the end, we had the information, and so that is  02:48:49

19  why Ana interviewed them.                                02:48:59

20      Q.   Look at 75 again, please.                       02:50:06

21      A.   Which one?                                       02:53:06

22      Q.   75.                                             02:53:07

23      A.   75.                                             02:53:07

24      Q.   The PEH memo from Brian Beach.                  02:53:08

25      A.   Yes.                                            02:53:15

1    Q.   If you found no reason for discipline during    02:53:15

2    the section 21 investigation, why do you have to -- why    02:53:23

3    do you say anything critical about Mr. Patterson's    02:53:31

4    ability if you're saying we didn't find anything?    02:53:38

5         MR. HOLT:   Object to the form.    02:53:39

6    A.   A PEH is a record of discussion.    02:53:42

7    Q.   (BY MR. AMLONG)  Did you actually have a    02:53:45

8    discussion with -- did anybody have a discussion with    02:54:00

9    Mr. Patterson about Captain Whitehouse's allegation,    02:54:03

10   other than Ms. Burke-Leon?    02:54:10

11   A.   According to the PEH, Brian Beach had a    02:54:13

12   conversation with him.    02:54:15

13   Q.   Do you have any personal knowledge of whether    02:54:16

14   or not Mr. Beach had a conversation with Mr. Patterson?    02:54:24

15        MR. HOLT:   Outside the scope.    02:54:27

16   A.   I do not.    02:54:30

17   Q.   (BY MR. AMLONG)  What's a CR1?    02:54:30

18   A.   A CR1 is a record of discussion that is used    02:54:46

19   in other work groups, but not pilots.    02:54:50

20   Q.   What part, if any, did human resources have in    02:54:59

21   the section 20 examination?    02:55:32

22   A.   No part.    02:55:35

23   Q.   Was it part of this investigation?    02:55:37

24   A.   No.    02:55:48

25   Q.   Look at Exhibit 57, please.    02:55:49

1    A.   57?                                          02:57:32

2    Q.   Yes.                                         02:57:47

3              (Exhibit 57 marked.)                    02:57:48

4    A.   I have it.                                   02:57:57

5    Q.   (BY MR. AMLONG)  Why are you forwarding on   02:58:03

6  February 26th an email concerning the September 22nd 02:58:05

7  military leave?                                      02:58:16

8              MR. HOLT:  Outside the scope.            02:58:18

9    A.   I don't recall.                               02:58:19

10    Q.   (BY MR. AMLONG)  Were you aware by that time 02:58:27

11  that there had been a USERRA complaint filed?       02:58:29

12              MR. HOLT:  Outside the scope.            02:58:33

13    A.   I don't recall specifically.                 02:58:35

14    Q.   (BY MR. AMLONG)  Were you part of the        02:59:18

15  conversation between David Tatum and James Bonds on 02:59:19

16  September 22nd?                                      02:59:32

17              MR. HOLT:  Object to the form.           02:59:33

18    A.   No.                                          02:59:34

19    Q.   (BY MR. AMLONG)  Did anybody explain to you  02:59:35

20  why Mr. Tatum should feel like he had been, quote,  02:59:44

21  played, closed quote, by Mr. Patterson?             02:59:52

22              MR. HOLT:  Outside the scope.            02:59:55

23    A.    There was a discussion where Jim Bonds      02:59:57

24  informed me of the call, that David Tatum, who was a 03:00:14

25  duty pilot at that time, received a call from        03:00:19

1    Mr. Patterson regarding wanting time off.          03:00:24

2        Q.    (BY MR. AMLONG)  And what did Mr. Bonds say   03:00:41

3    about that phone call?                             03:00:44

4        A.    Just that it seemed that Mr. Patterson was   03:00:47

5    giving David Tatum a different story than what     03:00:54

6    Mr. Patterson had originally asked for in regards to the   03:00:58

7    time off.                                          03:01:04

8        Q.    What had Mr. Patterson said to begin with?   03:01:05

9        A.    You know, I've got to be honest, I can't    03:01:15

10   exactly remember what he said to Jim Bonds originally.   03:01:33

11   It was in relation to wanting the time off at the last   03:01:38

12   minute for military duty.  You know, I'd have to look   03:01:44

13   at -- I don't know.  I don't even know where it would   03:01:52

14   be.  I don't exactly remember at this moment.      03:01:57

15       Q.    Did Mr. Bonds make you aware that he had left   03:02:00

16   a voicemail on Mr. Patterson's answering machine saying   03:02:27

17   that he would give him the time off if Mr. Patterson   03:02:32

18   would provide him with written orders?             03:02:35

19              MR. HOLT:  Outside the scope.           03:02:41

20       A.    I don't remember that conversation.      03:02:42

21       Q.    (BY MR. AMLONG)  Did Mr. Bonds indicate that   03:02:48

22   he did not wish Mr. Patterson to go on military leave   03:02:54

23   during that period?                                03:03:00

24              MR. HOLT:  Object to the form and outside   03:03:02

25   the scope.                                         03:03:04

1    A.   I don't recall exactly what the conversation    03:03:04

2    was.                                                  03:03:16

3    Q.   (BY MR. AMLONG)  Why was there being any         03:03:33

4    conversation about a lieutenant colonel in the reserves  03:03:39

5    going on duty?                                        03:03:42

6         MR. HOLT:  Object to the form, outside           03:03:43

7    the scope.                                            03:03:44

8    A.   I don't know.                                    03:03:45

9    Q.   (BY MR. AMLONG)  Why were you involved with      03:03:50

10   the issue of a lieutenant colonel in the reserves going  03:03:56

11   on duty?                                              03:04:01

12        MR. HOLT:  Outside the scope.                    03:04:01

13   A.   If I remember correctly, it was after the fact   03:04:02

14   where there was one story that was given to Jim Bonds, 03:04:11

15   and after the chief pilot office closed, so to speak,  03:04:15

16   then Mr. Patterson contacted the duty pilot and gave a  03:04:20

17   completely different reason for wanting off from his   03:04:25

18   trip.  And that was concerning to Jim Bonds at the time,  03:04:31

19   so that's why he would have contacted me.             03:04:38

20   Q.   (BY MR. AMLONG)  If Mr. Patterson -- was         03:04:47

21   Mr. Bonds representing that Mr. Patterson did not wish  03:04:55

22   to fly with a particular captain that he was assigned to  03:04:57

23   fly with that week?                                   03:05:00

24   A.   Yes.  That's right.  I remember now.             03:05:01

25   Q.   And what's a do not pair request?               03:05:04

1    A.   That's when an FO can put a particular captain       03:05:16

2    on a do not pair request list.  And that's a request      03:05:19

3    that, for whatever reason, they don't want to fly with     03:05:23

4    that person.  It's not an absolute.                        03:05:26

5    Q.   And once that's done, the first officer is not        03:05:30

6    assigned to fly with that captain.  Correct?               03:05:34

7    A.   It's not an absolute.                                 03:05:37

8    Q.   Was this -- was this captain on a do not pair         03:05:41

9    list for Mr. Patterson?                                    03:05:49

10   A.   I have no idea.                                       03:05:52

11   Q.   What sort of training do your chief pilots            03:06:01

12   have concerning USERRA?                                    03:06:16

13            MR. HOLT:  Outside the scope.  You can            03:06:20

14   answer if you know.                                        03:06:21

15   A.   I don't know.                                         03:06:22

16   Q.   (BY MR. AMLONG)  What sort of training have           03:06:23

17   you had concerning USERRA?                                 03:06:28

18            MR. HOLT:  Outside the scope.                     03:06:29

19   A.   I have not had specific training.                     03:06:30

20   Q.   (BY MR. AMLONG)  What's your understanding of         03:06:34

21   USERRA?                                                    03:06:38

22            MR. HOLT:  Object to the form.  Outside           03:06:39

23   the scope.  Calls for legal conclusions.  You can answer   03:06:41

24   to the extent you understand.                              03:06:45

25   A.   I really don't.  If there's anything that             03:06:46

1    involves military leave, I go through our legal counsel     03:06:50

2    on that.                                                    03:06:54

3        Q.   (BY MR. AMLONG)  Would Mr. Patterson's            03:06:54

4    motivation for going on duty have any impact on his         03:07:10

5    rights under USERRA, as you understand it?                  03:07:15

6              MR. HOLT:  Object to the form, outside            03:07:18

7    the scope.                                                  03:07:21

8        A.   I'm sorry, I really don't understand the          03:07:22

9    question.  Would his request to go on military leave be     03:07:26

10   covered under USERRA?  Is that what you're asking?          03:07:31

11       Q.   (BY MR. AMLONG)  I'm saying if a reservist         03:07:33

12   wants to go on military leave, does his motivation for      03:07:38

13   wanting to go on military leave make any difference?        03:07:43

14       A.   No.                                                03:07:47

15             MR. HOLT:  Object to the form, outside            03:07:47

16   the scope.                                                  03:07:48

17       A.   No.                                                03:07:50

18       Q.   (BY MR. AMLONG)  I'm sorry.  I couldn't hear       03:07:51

19   the answer.                                                 03:07:54

20       A.   No.                                                03:07:55

21       Q.   So why was this -- why was this inquiry being      03:08:04

22   conducted once Mr. Patterson said, I need time off, I am    03:08:07

23   going on duty as a lieutenant colonel in the United         03:08:15

24   States Army Reserve tomorrow?                               03:08:23

25             MR. HOLT:  Object to the form, outside            03:08:23

1    the scope.                                               03:08:24

2         A.   So it's concerning when you get a pilot who    03:08:25

3    wants to take time off -- who wants to be removed from a  03:08:28

4    trip because he does not want to fly with a particular    03:08:32

5    captain and he's told, no, he won't be removed from the   03:08:41

6    trip for that purpose, and then after the chief pilot     03:08:44

7    office is closed, then calls the after-hours duty pilot    03:08:48

8    and gives a completely different story and says that he    03:08:52

9    now has a military event involving the Pope's visit in     03:09:01

10   Washington.  It -- it doesn't add up.  So that's why he    03:09:08

11   was asked to provide his LES.  And he did that.  And       03:09:19

12   that was the end of the inquiry.                           03:09:30

13        Q.   (BY MR. AMLONG)  The LES was after the fact.     03:09:32

14   Correct?                                                   03:09:40

15        A.   Yes.                                             03:09:40

16        Q.   Did American Airlines doubt that Mr. Patterson   03:09:41

17   was actually on duty?                                      03:09:52

18             MR. HOLT:  Object to the form, outside           03:09:54

19   the scope.  You can answer.                                03:09:57

20        A.   Yes.                                             03:09:58

21        Q.   (BY MR. AMLONG)  Who doubted that he was on      03:09:59

22   duty?                                                      03:10:03

23             MR. HOLT:  Object to the form, outside           03:10:03

24   the scope.  You can answer if you know.                    03:10:05

25        A.   Jim Bonds.                                       03:10:06

1    Q.   (BY MR. AMLONG)  Did not Mr. Rojas -- Luis      03:10:08

2   Rojas, who is he?                                     03:10:15

3    A.   He's an administrative specialist in the       03:10:17

4   flight office.                                        03:10:20

5    Q.   Did he not telephone Mr. Patterson at the       03:10:24

6   Pentagon on the 22nd?                                 03:10:29

7    A.   I have no --                                    03:10:32

8         MR. HOLT:  Object to form, outside the          03:10:33

9   scope.  You can answer if you know.                   03:10:35

10    A.   I have no knowledge of that.                    03:10:37

11    Q.   (BY MR. AMLONG)  So you're telling me that on   03:10:38

12   September 22nd, you were basically operating on the   03:10:48

13   premise that Mr. Patterson was playing hooky as opposed 03:10:53

14   to being on military duty?                            03:10:58

15         MR. HOLT:  Object to the form, misstates        03:11:00

16   the testimony, outside the scope.                     03:11:02

17    A.   I didn't say what you're alleging.              03:11:03

18    Q.   (BY MR. AMLONG)  Well, but you're saying --     03:11:05

19   you're saying that there was a suspicion that he was not 03:11:10

20   on duty.  Correct?                                    03:11:14

21         MR. HOLT:  Object to the form, outside          03:11:15

22   the scope, argumentative.  But you can answer.        03:11:16

23    A.   There was a suspicion, yes.                     03:11:21

24    Q.   (BY MR. AMLONG)  By Mr. Bonds?                  03:11:23

25    A.   Yes.                                            03:11:23

1          MR. HOLT:  Same objections.          03:11:24

2     A.   Yes.          03:11:25

3     Q.   (BY MR. AMLONG)  Do you know if that suspicion          03:11:25

4 was shared by anybody else?          03:11:30

5          MR. HOLT:  Same objections, also          03:11:32

6 speculative.          03:11:33

7     A.   I don't know.          03:11:34

8     Q.   (BY MR. AMLONG)  Did you share that suspicion?          03:11:41

9     A.   It sounded odd to me, yes.          03:11:43

10     Q.   Do you know when Mr. Patterson initially          03:11:46

11 requested military leave?          03:12:08

12          MR. HOLT:  Outside the scope.  You can          03:12:12

13 answer.          03:12:13

14     A.   On what date?  For the 22nd?          03:12:13

15     Q.   (BY MR. AMLONG)  Requested for the 22nd.  Do          03:12:20

16 you know -- do you know when he -- Mr. Patterson          03:12:23

17 initially called the Miami flight office?          03:12:27

18     A.   To request military leave for September 22nd?          03:12:32

19     Q.   Yes.          03:12:36

20     A.   I don't know that.  To my knowledge, his          03:12:36

21 request came to David Tatum at 6:00 p.m. Central Time on          03:12:42

22 the 22nd.          03:12:49

23     Q.   Do you know when -- do you know when Captain          03:12:50

24 Bonds responded to Mr. Patterson's first request?          03:13:11

25          MR. HOLT:  Outside the scope.  You can          03:13:15

1    answer if you know.                              03:13:17

2        A.   I don't know what -- the first request you're    03:13:18

3    talking about.                                   03:13:20

4        Q.   (BY MR. AMLONG)  Do you know whether    03:13:24

5    Mr. Patterson telephoned the flight office on     03:13:26

6    September 21st to say that he would be going on duty    03:13:29

7    September 22nd?                                  03:13:35

8             MR. HOLT:  Outside the scope.  But you    03:13:36

9    can answer if you know.                          03:13:37

10       A.   You mean going on military duty or flight    03:13:38

11   duty?                                            03:13:41

12       Q.   (BY MR. AMLONG)  Going on military duty.    03:13:42

13       A.   I don't know anything about that conversation.    03:13:43

14       Q.   Do you know anything about the voicemail    03:13:45

15   message that Mr. Bonds left him on September 21st?    03:13:58

16            MR. HOLT:  Outside the scope.  But you    03:14:04

17   can answer if you know.                          03:14:06

18       A.   I don't know.                           03:14:07

19       Q.   (BY MR. AMLONG)  Look at Exhibit 29 -- I'm    03:14:07

20   sorry -- 58.                                     03:14:17

21       A.   58?                                     03:14:19

22       Q.   Yes.                                    03:14:21

23            (Exhibit 58 marked.)                    03:14:22

24            MR. HOLT:  Counsel, what is the         03:14:49

25   highlighting from on Exhibit 58?  Is that something you    03:14:50

1    added?                                          03:14:53

2              MR. AMLONG:  Yes.                      03:14:54

3              MR. HOLT:  Okay.  Thank you.           03:14:55

4         A.   Okay.  I have it.                      03:15:03

5         Q.   (BY MR. AMLONG)  Have you seen this document   03:15:11

6    before?                                          03:15:12

7         A.   No.                                    03:15:13

8         Q.   Were you aware by the 29th that there was a    03:15:15

9    USERRA complaint pending with the Department of Labor?   03:15:26

10             MR. HOLT:  Outside the scope.          03:15:30

11        A.   Yes, I believe so.  I don't know on which   03:15:31

12   date, but I do remember there was a complaint.   03:15:34

13        Q.   (BY MR. AMLONG)  How did you become -- how did   03:15:38

14   you become advised of that complaint?            03:15:40

15             MR. HOLT:  Outside the scope.          03:15:41

16        A.   It would have come from Lucretia Guia.   03:15:43

17        Q.   (BY MR. AMLONG)  In the letter Ms. Guia is   03:16:14

18   writing that he -- meaning Mr. Patterson -- told Captain   03:16:19

19   Bonds that he wanted the EO -- and that's just a day   03:16:22

20   off.  Right?                                     03:16:26

21        A.   Yes.                                   03:16:27

22        Q.   So a vacation day.  Mr. Patterson, quote, told   03:16:27

23   Captain Bonds that he wanted the EO because the captain   03:16:35

24   on his trip the following day was a representative from   03:16:37

25   APA's Professional Standards and that he and the captain   03:16:40

1    did not get along.  Did Mr. Bonds tell you that?        03:16:44

2         A.    Yes.                                          03:16:56

3         Q.    So Mr. Bonds said that he actually spoke with 03:16:56

4    Mr. Patterson on the 21st?                               03:17:07

5         A.    I don't recall that he said a specific date.  03:17:10

6         Q.    Take a look at Exhibit 59, please.            03:17:14

7               (Exhibit 59 marked.)                          03:18:21

8         A.    59.                                           03:18:21

9         Q.    (BY MR. AMLONG)  Have you ever seen that       03:18:27

10   document before?                                         03:18:29

11              MR. HOLT:  Can you give us the Bates           03:18:44

12   numbers for that document just so I make sure we're      03:18:45

13   looking at the right thing?  Because it looks like there 03:18:48

14   are two documents.                                       03:18:50

15              MR. AMLONG:  4 through 17.  March 21st.        03:18:51

16              MR. HOLT:  Okay.  4 through 17.  Got it.       03:19:00

17   Because then there was -- it looked like after that      03:19:02

18   there was some other things attached to it that were     03:19:05

19   like AA-Patterson --                                     03:19:08

20              MR. AMLONG:  I'm not sure how that --          03:19:11

21              MR. HOLT:  Okay.  I just wanted to             03:19:11

22   confirm --                                               03:19:11

23              MR. AMLONG:  We're only concerned -- I'm       03:19:11

24   only concerned with Knippa 4 through --                  03:19:14

25              MR. HOLT:  Can you verify that those are       03:19:17

1    the Bates numbers and we can ask the court reporter          03:19:18

2    perhaps to perhaps staple them so that exhibit stays         03:19:20

3    together.                                                    03:19:20

4                    THE WITNESS:  It starts with 00004 and       03:19:22

5    goes through 00017.                                          03:19:26

6                    MR. AMLONG:  Yeah.                           03:19:31

7                    THE WITNESS:  Okay.                          03:19:31

8        Q.   (BY MR. AMLONG)  Have you seen that document        03:19:40

9    before, Ms. Montgomery?                                      03:19:42

10       A.   Yes.                                                03:19:43

11       Q.   Did you read it?                                    03:19:44

12       A.   I did.                                              03:19:45

13       Q.   Did you discuss it with Dr. Ahtone?                 03:19:53

14       A.   No.                                                 03:19:56

15       Q.   Other than the recommendation that                 03:19:57

16   Mr. Patterson was, quote, not fit for duty, closed          03:20:10

17   quote, did you see anything in the report that indicated    03:20:15

18   any neuropsychological deficits?                             03:20:26

19                   MR. HOLT:  Outside the scope.                03:20:29

20       A.   I'm not the right person, the expert to make       03:20:32

21   that determination.  The only thing I would be concerned    03:20:36

22   with is whether or not he was fit for duty.                 03:20:38

23       Q.   (BY MR. AMLONG)  And so you simply took this       03:20:43

24   at face value?                                              03:20:44

25       A.   Yes.                                               03:20:47

1              (Cell phone rings.)                    03:22:19

2         Q.   (BY MR. AMLONG)  So I would like to find that  03:23:02

3    document Bates stamped Patterson 40770 and 40771, and  03:23:05

4    we'll call that --                                 03:23:15

5         A.   I'm sorry.  Which exhibit are you referencing?  03:23:15

6         Q.   Right behind that -- for some reason, there is  03:23:19

7    no tab there, but it said Plaintiff's Exhibit 5, and  03:23:22

8    that will really be Plaintiff's Exhibit 77.        03:23:27

9              Do you recognize that --               03:23:57

10              THE REPORTER:  Hold on.                03:23:58

11              (Exhibit 77 marked.)                   03:23:59

12         A.   Okay.  Exhibit 77.                      03:24:13

13         Q.   (BY MR. AMLONG)  Yes.  Do you recognize that  03:24:16

14    as the letter that you -- or the email that you sent  03:24:23

15    to -- do you see the long email to Brian Beach?  Was  03:24:27

16    that Michelle Magee who is sending the email to Brian  03:24:42

17    Beach?                                            03:24:46

18              MR. HOLT:  Objection to form.          03:24:49

19         A.   Okay.  The very bottom of the email is from  03:24:50

20    Michelle Magee to Brian, Mark, Jim, Kevin and me.  And  03:24:53

21    that is the notification that Rodney Patterson has been  03:25:02

22    found unfit for duty or unable to perform the essential  03:25:07

23    functions of a pilot.  I forwarded that to Brian,  03:25:13

24    copying Jim, Kevin, Cindy Contreras and Michelle Magee.  03:25:18

25    And there would have been an attachment, which is titled  03:25:25

1   Patterson Section 20 Results.doc.  And that would have   03:25:30

2   been the letter for Brian to send to Mr. Patterson.   03:25:38

3        Q.   (BY MR. AMLONG)  Okay.  Do you know when   03:25:45

4   somebody has been declared not fit for duty, is there   03:25:48

5   any timeline between when the declaration is made and   03:25:52

6   when that pilot can get back in the air?   03:25:54

7        A.   No.   03:25:56

8        Q.   Look at the documents behind that, which are   03:26:11

9   Patterson 000854 and 000855.  And we'll make that 78.   03:26:13

10                   (Exhibit 78 marked.)   03:26:19

11        A.   Okay.  I have 78.   03:26:56

12        Q.   (BY MR. AMLONG)  And this appears to be a   03:26:57

13   letter forwarding MEDICAL examination results from Scott   03:27:13

14   Patterson to Marsha Reekie, and she is the with Airline   03:27:23

15   Pilots Association.  Is she with the APA?   03:27:37

16        A.   She is.   03:27:39

17        Q.   All right.  And then she forwards it to   03:27:39

18   Michelle Magee.  Who is Michelle Magee?   03:27:59

19        A.   She is a -- she works in the absence and   03:28:04

20   returns center.  And she is the coordinator for   03:28:08

21   section 20 exams.  Or at least she was.  She's moved on   03:28:13

22   to a different job now.   03:28:17

23        Q.   And then why is she sending it to both   03:28:18

24   Ms. Guia and to you?   03:28:36

25                   MR. HOLT:  Object to the form.   03:28:39

1      A.   Because she is a coordinator.  She doesn't --    03:28:40

2   she doesn't do anything other than communicate with the    03:28:43

3   parties.                                                   03:28:46

4      Q.   (BY MR. AMLONG)  Okay.  So what is your role      03:28:53

5   when this package of information came to you?              03:28:56

6                MR. HOLT:  Object to the form.               03:28:58

7      A.   So we would look at what the APA is sending to    03:28:59

8   us and figure out what the purpose is and how it fits      03:29:03

9   contractually.                                             03:29:08

10     Q.   (BY MR. AMLONG)  Well, how did -- what did you    03:29:09

11  perceive the purpose of this letter and the enclosures     03:29:14

12  to be?                                                     03:29:18

13     A.   That he had gone to another doctor and they       03:29:18

14  reviewed his findings.  And they were providing that       03:29:27

15  information to us.  That's it.                             03:29:32

16     Q.   And so what's the next step under the             03:29:42

17  contract?                                                  03:29:44

18     A.   The next step in relation to this particular      03:29:44

19  document that he's sending or the next step in returning   03:29:50

20  to work through a section 20?  Because that's two          03:29:55

21  different things.                                          03:29:58

22     Q.   Well, what's the next step in returning to        03:30:01

23  work under section 20?                                     03:30:06

24     A.   So all he -- all Mr. Patterson would have had     03:30:08

25  to do is told us that he is ready to be reevaluated by     03:30:13

1    Mr. Knippa.  We would have set up that appointment and    03:30:18

2    let Dr. Knippa make the evaluation and determine if he    03:30:21

3    is fit for duty or not.    03:30:25

4        Q.    So Dr. Knippa is the only person who could    03:30:27

5    reexamine him?    03:30:38

6            MR. HOLT:  Object to the form.    03:30:39

7        A.    The doctor who makes a determination that you    03:30:40

8    are not fit for duty through a section 20 exam is the    03:30:43

9    doctor who has to reevaluate you and make a    03:30:47

10   determination if you are now fit for duty.    03:30:52

11       Q.    (BY MR. AMLONG)  You did not require Michael    03:30:55

12   Dale to go back to Dr. Knippa after Dr. Knippa declared    03:31:11

13   him unfit for duty, though.  Correct?    03:31:17

14           MR. HOLT:  Objection.  And I'll instruct    03:31:19

15   the witness not to provide confidential information    03:31:21

16   pertaining to other pilots.  And so to the extent he's    03:31:24

17   going to ask about specifics of other pilots who are not    03:31:29

18   parties to this litigation, we're going to preserve    03:31:32

19   their privacy rights.    03:31:35

20       Q.    (BY MR. AMLONG)  Okay.  Have you -- have you    03:31:38

21   ever put another pilot back in the air after Dr. Knippa    03:31:46

22   had declared him not fit for duty without that pilot    03:31:51

23   going back to Dr. Knippa?    03:31:55

24           MR. HOLT:  Outside the scope.  But you    03:32:04

25   can answer if you know.    03:32:06

1    A.   I actually don't know.  We have so many          03:32:07

2    different situations.  I don't remember each and every  03:32:09

3    one of them.                                            03:32:12

4    Q.   (BY MR. AMLONG)  Does the time track say that    03:32:12

5    a pilot who's been declared as not fit for duty has to  03:32:29

6    go back to the physician who declared him not fit for   03:32:35

7    duty?                                                   03:32:38

8         MR. HOLT:  Object to the form, outside           03:32:38

9    the scope.  You can answer if you know.                 03:32:39

10   A.   Not in those particular words, no.               03:32:42

11   Q.   (BY MR. AMLONG)  Is there a written policy       03:32:45

12   that a pilot who's been declared not fit for duty has to 03:32:51

13   return to the same physician or psychologist --        03:32:57

14        MR. HOLT:  Same objection.                        03:33:01

15   Q.   (BY MR. AMLONG)  -- for him to be cleared?       03:33:04

16   A.   There is not a written policy.  It is a          03:33:06

17   long-standing practice.                                 03:33:09

18   Q.   Look at the package of information at            03:34:11

19   Patterson 000921 through Patterson 000 -- I'm sorry.    03:34:18

20   Look at the information three pages back from -- it     03:34:55

21   starts Patterson 856 through Patterson 879.  And I      03:34:59

22   believe that will be 79.  Have you seen those documents 03:35:16

23   before?                                                 03:35:33

24        MR. HOLT:  Can we give the court reporter        03:35:33

25   just one second, Counsel?                               03:35:35

```
1          Let's go off the record for one second, if      03:35:36
2    that's okay.                                           03:35:39
3               (Discussion off the record.)                03:36:47
4               (Exhibit 79 marked.)                        03:36:09
5       A.    Okay.  I have it.                              03:36:49
6       Q.    (BY MR. AMLONG)  Okay.  Have you seen this     03:36:51
7    document before?                                       03:36:52
8       A.    Not that I recall.                             03:36:52
9       Q.    Whose decision was it to require Mr. Patterson 03:37:50
10   to return to Dr. Knippa if he were going to be cleared  03:37:57
11   to fly again?                                           03:38:04
12      A.    Whose decision would it be to send him back to 03:38:05
13   Dr. Knippa?                                             03:38:09
14      Q.    Right.                                          03:38:12
15      A.    There's not a decision.  Mr. Patterson just    03:38:12
16   needs to tell us he's ready, and we will get that set up 03:38:19
17   for him.                                                03:38:22
18      Q.    But what about if he doesn't want to go back   03:38:24
19   to Dr. Knippa?                                          03:38:27
20      A.    He doesn't have a choice.                       03:38:28
21      Q.    Where does it say that in the contract?        03:38:30
22               MR. HOLT:  Object to the form, outside      03:38:42
23   the scope.                                              03:38:44
24      A.    It doesn't say that in the contract.           03:38:46
25      Q.    (BY MR. AMLONG)  Does the contract address the 03:39:59
```

| | | |
|---|---|---|
| 1 | procedure for the pilot obtaining his own medical | 03:40:04 |
| 2 | examiner and then submitting the findings to American? | 03:40:19 |
| 3 | MR. HOLT:  Outside the scope. | 03:40:23 |
| 4 | A.   In relation to a section 20 exam? | 03:40:24 |
| 5 | Q.   (BY MR. AMLONG)  Yes. | 03:40:30 |
| 6 | A.   No. | 03:40:30 |
| 7 | MR. AMLONG:  Let me send you this one | 03:40:44 |
| 8 | page.  We'll be right back. | 03:40:46 |
| 9 | MR. HOLT:  Is now an okay time to take, | 03:40:51 |
| 10 | let's say, a five-minute break? | 03:40:53 |
| 11 | MR. AMLONG:  Sure, but we're getting very | 03:40:57 |
| 12 | near the end. | 03:41:00 |
| 13 | MR. HOLT:  Okay.  Then we'll power | 03:41:01 |
| 14 | through. | 03:41:02 |
| 15 | MR. AMLONG:  A five-minute break is fine. | 03:41:04 |
| 16 | MR. HOLT:  Well, it will take you five | 03:41:06 |
| 17 | minutes before that document shows up anyhow.  So let's | 03:41:08 |
| 18 | go off the record.  We'll take a five-minute break. | 03:41:12 |
| 19 | MR. AMLONG:  Sure. | 03:41:15 |
| 20 | THE VIDEOGRAPHER:  We're off the record | 03:41:16 |
| 21 | at 3:41. | 03:41:17 |
| 22 | (Break from 3:41 p.m. to 3:55 p.m.) | 03:41:18 |
| 23 | THE VIDEOGRAPHER:  We're back on the | 03:54:43 |
| 24 | record at 3:55. | 03:54:44 |
| 25 | (Exhibit 80 marked.) | 03:54:47 |

1          (Exhibit 81 marked.)                    03:54:52

2          MR. AMLONG:  Are you ready, Michael?    03:55:49

3          MR. HOLT:  I am just taking a look at    03:55:51

4   these documents because they're just now being provided    03:55:53

5   to me, so --                                  03:55:56

6          The witness has Exhibit 80 right now.  I am    03:56:03

7   just taking a quick glance at 81.  But you can -- you    03:56:05

8   can start if you want.                        03:56:10

9          MR. AMLONG:  On 81 I am only interested    03:56:14

10  in paragraph G on the fourth page.            03:56:17

11         MR. HOLT:  Okay.                        03:56:22

12     Q.   (BY MR. AMLONG)  All right.  Ms. Montgomery,    03:56:24

13  section 20 provides for a pilot who has been found not    03:56:31

14  fit to fly to be examined by his own physician.    03:56:43

15  Correct?                                      03:56:46

16         MR. HOLT:  Outside the scope.  But you    03:56:48

17  can answer.                                   03:56:50

18     A.   Are you referencing a particular part of the    03:56:51

19  contract?                                     03:56:52

20     Q.   (BY MR. AMLONG)  Yes, section 20D.    03:56:55

21     A.   D as in David?                        03:56:58

22     Q.   Yes.                                  03:57:01

23     A.   That is only for a pilot who's been required    03:57:01

24  to submit to physical examinations in excess of two in    03:57:03

25  any 12 month period.                          03:57:08

1    Q.   Well, it says, A pilot shall not be required    03:57:37

2    to submit to any company physical examination in excess    03:57:40

3    of two in any 12 month period without the pilot's    03:57:44

4    consent, unless it is the company's opinion that his    03:57:49

5    health or physical condition is appreciably impaired, in    03:57:51

6    which case the following procedure shall apply.    03:57:58

7        Is that not the reason -- is that not the    03:58:00

8    mechanism by which you sent Mr. Patterson to see    03:58:04

9    Dr. Knippa?    03:58:08

10        MR. HOLT:  Object to the form.  You can    03:58:09

11    answer.    03:58:13

12    A.   It is not.  It is that a pilot shall not be    03:58:13

13    required to submit to any company physical examination    03:58:17

14    in excess of two in any 12 month period without the    03:58:19

15    pilot's consent, unless it is the company's opinion that    03:58:23

16    his health or physical condition is appreciably    03:58:27

17    impaired.  That means that if a pilot has been sent    03:58:31

18    twice, then 1, 2 a through e would apply because we    03:58:35

19    would feel that it would be necessary for the pilot to    03:58:45

20    go a third time.    03:58:48

21    Q.   (BY MR. AMLONG)  So you're saying that the    03:58:49

22    opinion of an outside medical examiner only comes into    03:58:54

23    play when there is -- when there has been a third    03:58:58

24    examination within one year?    03:59:03

25        MR. HOLT:  Object to the form.  But you    03:59:05

1    can answer.                                            03:59:06

2         A.    Correct.                                    03:59:07

3         Q.    (BY MR. AMLONG)  So a pilot can -- the pilot    03:59:07

4    would have to be examined three times in a year before    03:59:31

5    he can avail himself of section 20D, 1 through e?       03:59:36

6              MR. HOLT:  Object to the form.               03:59:43

7         Q.    (BY MR. AMLONG)  Is that your contention?     03:59:44

8         A.    Yes.  And 20D does not apply --            03:59:45

9         Q.    Has that --                                 03:59:54

10             MR. HOLT:  I'm sorry.  You can finish        03:59:54

11   your answer.                                           03:59:54

12        A.    20D does not apply to Mr. Patterson.        03:59:55

13        Q.    (BY MR. AMLONG)  Does 20D apply to anybody in    04:00:01

14   a section 20 mandatory examination?                    04:00:06

15        A.    The third one or after.                     04:00:12

16        Q.    Has that interpretation ever been upheld by an    04:00:23

17   arbitrator?                                            04:00:28

18             MR. HOLT:  Outside the scope.  You can       04:00:30

19   answer if you know.                                    04:00:31

20        A.    No, it's not been tested in front of an     04:00:32

21   arbitrator.                                            04:00:36

22        Q.    (BY MR. AMLONG)  Look at section -- at Exhibit    04:00:37

23   81, Section 11 --                                      04:00:53

24        A.    Oh, Section 11.  I'm sorry.                 04:00:58

25        Q.    Section 11, G for George.                   04:01:00

1    A.    Yes.  And just one thing on that section 20 in    04:01:02

2    front of an arbitrator, I will say that that's not been    04:01:05

3    grieved to go in front of an arbitrator.  So I'm sorry.    04:01:08

4    81.    04:01:13

5    Q.    So no pilot has ever asked to be examined by    04:01:13

6    somebody other than the examiner who said he wasn't fit    04:01:17

7    for duty?    04:01:25

8    A.    That's not what I testified to.    04:01:25

9    Q.    Has any pilot, other than Mr. Patterson, ever    04:01:28

10   requested to be examined by a physician or psychologist    04:01:35

11   other than the one who declared him not fit for duty?    04:01:43

12         MR. HOLT:  Outside the scope.  You can    04:01:49

13   answer if you know.    04:01:50

14   A.    I don't actually know because Mr. Patterson    04:01:51

15   didn't ask to go to another doctor.  He just went on his    04:01:57

16   own.    04:02:00

17   Q.    (BY MR. AMLONG)  Ms. Montgomery, in the    04:02:01

18   roughly four years that you've been in your current job,    04:02:11

19   has any pilot ever asked to be reexamined after being    04:02:14

20   declared not fit for duty by someone other than the    04:02:18

21   physician or psychologist who declared him not fit for    04:02:23

22   duty?  Yes or no?    04:02:27

23         MR. HOLT:  Outside the scope.  You can    04:02:29

24   answer if you know.    04:02:30

25   A.    Asked, yes.    04:02:31

1    Q.   (BY MR. AMLONG)  Has that request been granted        04:02:40

2    to any other pilot?                                        04:02:45

3              MR. HOLT:  Same objection.  But you can          04:02:46

4    answer if you know.                                        04:02:48

5    A.    Not -- not unless there were settlement              04:02:50

6    discussions.                                               04:02:56

7    Q.   (BY MR. AMLONG)  I'm sorry.  What do                  04:02:56

8    settlement discussions have to do with asking to be       04:03:04

9    examined by another physician or psychologist?            04:03:07

10             MR. HOLT:  Objection to the form, outside        04:03:12

11   the scope.  You can answer if you know.                    04:03:17

12   A.    If there were particular settlement                 04:03:21

13   discussions, then someone may ask at that time.  It       04:03:23

14   doesn't mean it's going to be granted.                     04:03:29

15   Q.   (BY MR. AMLONG)  During the four years that           04:03:32

16   you have been the senior manager in labor                  04:03:35

17   relations/flight, has any pilot ever been granted a        04:03:44

18   reexamination following a failed fit for duty              04:03:47

19   examination by someone other than a psychologist or        04:03:51

20   physician who declared him unfit for duty?                 04:03:55

21             MR. HOLT:  Outside the scope.  But you           04:04:00

22   can answer if you know.                                    04:04:01

23   A.    Only through settlement discussions.                04:04:02

24   Q.   (BY MR. AMLONG)  And how many have been               04:04:07

25   granted that through settlement discussions?              04:04:09

1          MR. HOLT:  Same objection.       04:04:12

2     A.   I believe one.       04:04:13

3     Q.   (BY MR. AMLONG)  And was he required to drop a  04:04:16

4  claim he had for back wages?       04:04:24

5          MR. HOLT:  Before you answer, I need to  04:04:30

6  confer about whether any settlement discussions might  04:04:33

7  have been confidential and what that settlement  04:04:37

8  agreement would be.  We would have to go off the record  04:04:41

9  if you want her to answer this question.  I am going to  04:04:43

10  have to confer with her.       04:04:46

11          MR. AMLONG:  Okay.      04:04:47

12          MR. HOLT:  All right.  Give us one second  04:04:48

13  to confer.       04:04:49

14          THE VIDEOGRAPHER:  We're off the record  04:04:51

15  at 4:05.       04:04:52

16        (Break from 4:04 p.m. to 4:07 p.m.)  04:04:54

17          THE VIDEOGRAPHER:  We're back on record  04:07:09

18  at 4:07.       04:07:14

19          MR. HOLT:  Because the details of other  04:07:18

20  pilots --       04:07:21

21          MR. AMLONG:  Speak up, please, Michael.  04:07:24

22          MR. HOLT:  Because the details of other  04:07:27

23  pilots' or other employees' particular grievances and/or  04:07:28

24  claims and/or lawsuits and/or settlements against the  04:07:34

25  company, if any, are confidential, private to them, are  04:07:38

1    frequently governed by 408 and other privileges from    04:07:43

2    discovery and use at trial -- they're also irrelevant --    04:07:48

3    I am instructing the witness not to answer questions    04:07:52

4    regarding the particulars of any settlement that was    04:07:55

5    made in any other case.    04:07:58

6        Q.    (BY MR. AMLONG)    Well, without identifying any    04:08:07

7    other pilot, has any other pilot been granted an    04:08:10

8    examination by another physician than the one who    04:08:14

9    disqualified him without agreeing to drop any claim he    04:08:19

10   has against American?    04:08:22

11            MR. HOLT:    We're not going to discuss    04:08:23

12   whether claims were dropped in conjunction with other    04:08:25

13   settlement agreements.    It's not proper.    It's not    04:08:28

14   relevant.    It's not even relevant when you ask about it    04:08:31

15   with your own client in this case.    And so I will    04:08:36

16   instruct the witness not to disclose any details    04:08:39

17   pertaining to any other confidential settlement    04:08:41

18   agreements with other employees or pilots.    04:08:46

19       Q.    (BY MR. AMLONG)    Section 11G provides that any    04:08:57

20   dispute under this section concerning physical fitness    04:09:02

21   of any pilot shall be settled in accordance with the    04:09:07

22   provisions of section 20 of this agreement.    Do you see    04:09:11

23   that?    04:09:13

24            MR. HOLT:    Outside the scope.    But you    04:09:14

25   can answer.    04:09:16

1    A.   I see that.                                    04:09:16

2    Q.   (BY MR. AMLONG)  So why does -- why does not   04:09:18

3    that make the remedies of section 20D available to  04:09:20

4    Mr. Patterson?                                       04:09:28

5            MR. HOLT:  Outside the scope.  Also,         04:09:29

6    object to the form.                                  04:09:33

7    A.   Section 20D does not apply to Mr. Patterson.    04:09:35

8    He has not been the subject of a section 20 more than 04:09:43

9    two times in a 12 month period of time.              04:09:46

10           MR. AMLONG:  All right.  Ms. Brandt, my      04:10:28

11   assistant actually labeled 68 and 70 as separate     04:10:29

12   exhibits when they're really pages 1 and 2 of the same 04:10:37

13   exhibit.  It should go 68 to 70.  So mark that 68,    04:10:41

14   scratch out the 70, and give that to Ms. Montgomery,  04:10:48

15   please.                                              04:10:54

16           THE REPORTER:  Okay.                         04:10:56

17           (Exhibit 68 marked.)                         04:11:27

18   A.   Okay.  I am looking at 68 and scratched out     04:11:38

19   70.  So two pages.                                   04:11:44

20   Q.   (BY MR. AMLONG)  Okay.                          04:11:47

21           MR. HOLT:  Counsel, rather than --           04:11:48

22   Q.   (BY MR. AMLONG)  Have you seen that document    04:11:49

23   before?                                              04:11:50

24           MR. HOLT:  Counsel, rather than me           04:11:53

25   objecting kind of question by question on this, can I 04:11:55

1  just state that while I don't object to you asking this  04:11:58

2  witness questions about this document here for the  04:12:01

3  purposes of deposition, I would object to it being used  04:12:04

4  at trial.  04:12:07

5  MR. AMLONG:  We can fight that out in  04:12:10

6  front of Judge Martinez.  04:12:12

7  MR. HOLT:  Of course.  I just don't -- I  04:12:15

8  don't want there to be any question that I've stated my  04:12:17

9  objection on the record.  And you and I have discussed  04:12:20

10  this before.  But I will allow the witness to answer  04:12:23

11  questions, again, like I said, for the purpose of this  04:12:26

12  deposition regarding this document.  04:12:28

13  Q.  (BY MR. AMLONG)  Ms. Montgomery, have you seen  04:12:33

14  this document before?  04:12:35

15  A.  Yes.  04:12:35

16  Q.  And under what circumstances did you see it?  04:12:36

17  A.  Prepping -- prepping for this deposition.  04:12:43

18  Q.  Had you seen it before you began preparing for  04:12:50

19  this deposition?  04:12:54

20  A.  I don't believe so.  I don't recall seeing it  04:12:54

21  before.  04:13:00

22  Q.  Do you know why Mr. Patterson is being  04:13:00

23  required to agree to drop any claims about his being  04:13:12

24  grounded under section 20 if he wants to have his case  04:13:21

25  reviewed by anybody other than Dr. Knippa?  04:13:31

1          MR. HOLT:  Objection to the form.          04:13:34

2     A.   Are you -- are you referencing a specific   04:13:37

3   piece of this document?                            04:13:42

4     Q.   (BY MR. AMLONG)  Yes.  It says on the --     04:13:45

5     A.   Oh, I see.                                   04:13:49

6     Q.   -- second page -- it offers to settle his   04:13:50

7   union grievance, not this action, but settle the union   04:13:59

8   grievance if he drops any claims related to the section   04:14:03

9   20 process, which would include his USERRA claims.  It   04:14:12

10  says AA will submit his files to UTMB for a file review.  04:14:18

11  The submission it will include Dr. Knippa's report and    04:14:27

12  the reports which FO Patterson has presented to the       04:14:31

13  company (as well as any other documents that FO           04:14:35

14  Patterson wishes to submit).                              04:14:37

15          If UTMB concludes that a file review is           04:14:41

16  sufficient and opines that he is fit for duty, the        04:14:45

17  company will return him to duty.                          04:14:46

18          If UTMB concludes that a file review will not     04:14:49

19  sufficiently enable it to render an opinion regarding FO  04:14:55

20  Patterson's fitness to fly, UTMB shall determine a        04:14:58

21  physician (or physicians) to whom FO Patterson would be   04:15:00

22  referred for that determination.                          04:15:07

23          The company would agree that Dr. Knippa will      04:15:07

24  not be among the physicians to whom FO Patterson shall    04:15:10

25  be referred.                                              04:15:14

1       In the event that FO Patterson is referred by   04:15:16

2   UTMB for further examination, the company will consider   04:15:21

3   FO Patterson's concerns regarding -- well -- travel --   04:15:23

4       That requires him to withdraw his grievance   04:15:31

5   and provide a release of all claims relating to the   04:15:37

6   section 20 process.   04:15:37

7       Why is -- if he is determined to not be   04:15:39

8   mentally ill, why is he being kept out of the air unless   04:15:47

9   he gives up his -- unless he gives up all claims against   04:15:55

10   American Airlines?   04:16:00

11       MR. HOLT:  Object to the form.  It   04:16:02

12   assumes untrue facts.  But go ahead, you can answer if   04:16:03

13   you understand that question at all.   04:16:08

14   A.   Yeah, I think it's a little bit of apples and   04:16:09

15   oranges.  These are -- as Trish says in her cover   04:16:11

16   letters, these are -- it's a confidential settlement   04:16:15

17   proposal.  So it was a settlement opportunity for   04:16:18

18   Mr. Patterson to have UTMB review his file and make a   04:16:23

19   determination if he's fit for duty.  This is settlement.   04:16:28

20   It's not -- it's not saying that he's either fit or not   04:16:33

21   fit.  There is an opportunity for him to have a file   04:16:43

22   review.  But as part of all settlement discussions, it's   04:16:46

23   normal for us to ask if, you know, a grievant is willing   04:16:51

24   to withdraw his grievance and provide a release.   04:17:02

25   Q.   (BY MR. AMLONG)  Have his files been sent to   04:17:09

1    UTMB?                                                    04:17:13

2        A.   No.                                            04:17:15

3        Q.   If he is fit for duty, is there any reason     04:17:17

4    that he is not flying again for American, other than    04:17:24

5    that he is maintaining his USERRA suit against the      04:17:34

6    company?                                                04:17:40

7              MR. HOLT:  Objection to the form.  He is      04:17:40

8    not fit for duty.  This has been discussed time and     04:17:42

9    again.  But answer if you understand.                   04:17:44

10       A.   That's exactly what I was going to say.  He is 04:17:45

11   not fit for duty.                                       04:17:48

12       Q.   (BY MR. AMLONG)  How do you know he is not fit  04:17:49

13   for duty?                                               04:17:53

14       A.   Because he has not been found fit for duty.    04:17:53

15       Q.   And you won't send him to doctors who could    04:18:01

16   find him fit for duty unless he drops his USERRA suit.  04:18:04

17   Correct?                                                04:18:09

18             MR. HOLT:  Objection to form.  Misstates      04:18:09

19   the testimony and the document.                         04:18:11

20       A.   Yeah, that's actually not true.  If            04:18:12

21   Mr. Patterson wants to be reevaluated, he can tell us,  04:18:14

22   of course, outside of this deposition, but he can tell  04:18:19

23   us that he's ready to be reexamined by Dr. Knippa.  If  04:18:22

24   he is found fit for duty, he will be returned to work.  04:18:26

25   It's actually quite simple.                             04:18:30

1    Q.   (BY MR. AMLONG)  What, if anything, do you      04:18:32

2    understand about Dr. Knippa's qualifications?         04:18:34

3              MR. HOLT:  Outside the scope.  But you      04:18:38

4    can answer.                                           04:18:40

5    A.   I don't know that information.                   04:18:40

6    Q.   (BY MR. AMLONG)  What, if anything, do you       04:18:41

7    understand about Dr. Knippa's methodology for testing 04:18:46

8    people who fly in from the other coast?               04:18:51

9              MR. HOLT:  Same objection.                  04:18:53

10   A.   I don't know anything about that.                04:18:54

11   Q.   (BY MR. AMLONG)  You are familiar with           04:19:01

12   Dr. Kay, are you not, Gary Kay?                        04:19:03

13   A.   I've heard the --                                04:19:06

14             THE WITNESS:  I'm sorry.                     04:19:07

15             MR. HOLT:  The same objection.  Go ahead.   04:19:07

16   A.   I've heard the name.  I've never met him.        04:19:09

17   Q.   (BY MR. AMLONG)  Have you participated in        04:19:12

18   referring pilots to him for psychological or          04:19:14

19   neuropsychological examinations?                      04:19:20

20             MR. HOLT:  Same objection.                  04:19:22

21   A.   I believe we have used Dr. Kay in the past.      04:19:23

22   Q.   (BY MR. AMLONG)  Often.  Correct?                04:19:26

23             MR. HOLT:  The same objection.  And         04:19:28

24   object to the form.                                   04:19:30

25   A.   I don't -- I can't speak to often or not.        04:19:32

1    He's been used.                                    04:19:34

2         Q.   (BY MR. AMLONG)  And Dr. Kay found       04:19:36

3    Mr. Patterson fit for duty, did he not?            04:19:45

4              MR. HOLT:  Object to the form.           04:19:47

5         A.   Not in relation to a section 20 examination.  04:19:48

6         Q.   (BY MR. AMLONG)  What inquiries have you made  04:21:10

7    concerning item 13, American Airlines's not reinstating  04:21:15

8    plaintiff to duty after its receipt of those reports of  04:21:22

9    Gary G. Kay, Ph.D.; John Hastings, M.D., and Glenn R.  04:21:25

10   Caddy, Ph.D., and the First Class Medical Certificate  04:21:29

11   issued July 10, 2016, by Joseph Tordello, D.O.?    04:21:32

12        A.   Okay.  I'm sorry.                         04:21:38

13        Q.   What, if any --                           04:21:38

14        A.   You're referencing document 13?          04:21:39

15        Q.   What, if any --                           04:21:44

16             MR. HOLT:  You're referencing the notice,  04:21:44

17   correct, Counsel?  Do you want me to hand that back to  04:21:47

18   her?                                               04:21:49

19             MR. AMLONG:  Yes.                         04:21:50

20        A.   Okay.  So you're looking at number 13?   04:21:51

21        Q.   (BY MR. AMLONG)  On item 13, yes, please tell  04:21:54

22   me what, if any, inquiries you have made concerning that  04:21:56

23   deposition topic.                                  04:22:00

24             MR. HOLT:  Same instruction as earlier.  04:22:01

25   Just don't disclose communication substance with   04:22:03

```
 1   lawyers.                                             04:22:07
 2        A.   What inquiries have I made?                04:22:07
 3        Q.   (BY MR. AMLONG)  Yes.                       04:22:18
 4        A.   I have not made any inquiries.  I have talked  04:22:19
 5   to --                                                04:22:24
 6        Q.   I mean, that's not your decision.  Correct?  04:22:24
 7        A.   It's not my decision for what?             04:22:27
 8        Q.   Whether or not to reinstate Mr. Patterson.  04:22:31
 9             MR. HOLT:  Objection to the form.          04:22:40
10        A.   There's no decision to be made.  He's not fit  04:22:41
11   for duty, so there would be never a discussion about  04:22:45
12   returning him to work.                               04:22:49
13        Q.   (BY MR. AMLONG)  Have you -- have you asked  04:22:51
14   anyone else -- have you spoken with anyone else at   04:22:56
15   American Airlines about why he is not being returned to  04:23:00
16   work despite all of these other physicians saying he's  04:23:03
17   fit for duty?                                        04:23:06
18             MR. HOLT:  Objection to the form.          04:23:07
19        Q.   (BY MR. AMLONG)  Yes or no?                 04:23:09
20        A.   No.  There's no reason to.                 04:23:10
21        Q.   Have you reviewed any documents concerning  04:23:12
22   that issue?                                          04:23:17
23             MR. HOLT:  Objection to the form.          04:23:17
24        A.   Concerning what issue?                     04:23:18
25        Q.   (BY MR. AMLONG)  The failure to reinstate him  04:23:29
```

1   notwithstanding all of these medical reports that he        04:23:33

2   submitted?                                                   04:23:35

3           MR. HOLT:  Objection to the form.                    04:23:35

4       A.   No, there's no documents to have been              04:23:36

5   reviewed.                                                    04:23:38

6       Q.   (BY MR. AMLONG)  What -- with whom, other than     04:23:38

7   Mr. Holt, have you discussed item 15, the offer to have     04:23:49

8   him reviewed by UTMB if he drops his claims?                04:23:56

9       A.   I have only discussed it with legal counsel.       04:24:09

10      Q.   Mr. Holt --                                         04:24:14

11      A.   Yes, I discussed it --                              04:24:15

12      Q.   -- or someone else?                                 04:24:17

13      A.   I discussed it with Mr. Holt.  I discussed it      04:24:19

14   with Lucretia Guia.                                          04:24:22

15      Q.   Have you discussed it with any of the              04:24:27

16   executives?                                                  04:24:31

17           MR. HOLT:  Objection to form.  And this            04:24:33

18   is beyond the 30(b)(6) --                                   04:24:35

19      Q.   (BY MR. AMLONG)  Have you discussed it with        04:24:37

20   the managing director of flight?                            04:24:40

21           MR. HOLT:  Who?                                     04:24:42

22      A.   Managing director of flight?                        04:24:44

23      Q.   (BY MR. AMLONG)  Yes.                               04:24:46

24           MR. HOLT:  I am sorry.  I didn't hear              04:24:47

25   quite what Mr. Patterson said in the background.  Oh,       04:24:49

1  okay.                                                   04:24:54

2      A.   When you reference a managing director of      04:24:56

3  flight, exactly whom are you referencing?               04:24:59

4      Q.   (BY MR. AMLONG)  Well, whose decision would it  04:25:05

5  be to put Mr. Patterson back in the air?  The offer that 04:25:09

6  was contained in Ms. Guia's email was made on behalf of  04:25:13

7  Mark Cronin.  So who is Mark Cronin's successor?         04:25:19

8      A.   Chip Long.                                      04:25:25

9      Q.   Chip Long?                                      04:25:29

10     A.   Correct.                                        04:25:31

11     Q.   Have you discussed it with Mr. Long?            04:25:34

12     A.   No.                                             04:25:36

13     Q.   Who is the current director of flight for       04:25:37

14  Miami International Airport?                             04:25:47

15          MR. HOLT:  Objection to form.                   04:25:50

16     A.   Jeff Price.                                     04:25:50

17     Q.   (BY MR. AMLONG)  Have you discussed it with     04:25:54

18  Mr. Price?                                              04:25:55

19     A.    No.  And there's nothing to discuss because    04:26:01

20  he's not -- Mr. Patterson has not gone back to see      04:26:07

21  Dr. Knippa.                                             04:26:09

22          MR. AMLONG:  Give me just a moment.             04:26:17

23       Thank you very much.                               04:28:24

24          MR. HOLT:  I will have a few questions.         04:28:25

25  Give me just one second.                                04:28:27

```
 1                    EXAMINATION                    04:29:24

 2   BY MR. HOLT:                                     04:29:27

 3        Q.   I am going to show you the document that was   04:29:27

 4   previously marked as Exhibit 68 to your deposition.  Do   04:29:29

 5   you remember being asked questions about this document,   04:29:32

 6   ma'am?                                          04:29:34

 7        A.   Yes.                                   04:29:35

 8              MR. AMLONG:  Exhibit what, Michael?   04:29:36

 9              MR. HOLT:  68.                        04:29:39

10              MR. AMLONG:  What number?            04:29:40

11              MR. HOLT:  Six eight.                 04:29:42

12              MR. AMLONG:  Okay.                    04:29:42

13              MR. HOLT:  It's the Trish Kennedy email.   04:29:43

14        Q.   (BY MR. HOLT)  Let me ask that again just so   04:29:49

15   we have a clear record.  Do you remember being asked   04:29:50

16   questions about Exhibit 68 to your deposition?   04:29:52

17        A.   Yes.                                   04:29:54

18        Q.   To your knowledge, did Mr. Patterson ever   04:29:55

19   accept the offer that was set forth in Exhibit 68?   04:29:58

20        A.   He did not.                            04:30:01

21        Q.   Thank you.                             04:30:01

22              I'm going to show you Exhibit 6 to your   04:30:02

23   deposition.                                     04:30:10

24        A.   Yes.                                   04:30:10

25        Q.   Do you remember being asked questions about   04:30:11
```

1    this document?                                            04:30:12

2         A.    Yes.                                           04:30:13

3         Q.    Do you remember being asked questions earlier  04:30:13

4    today about whether a discussion occurred on              04:30:16

5    September 24th between American Airlines and              04:30:24

6    Mr. Patterson?                                            04:30:27

7         A.    Yes.                                           04:30:27

8         Q.    Does this refresh your recollection as to      04:30:27

9    whether a discussion occurred on September 24, 2015,      04:30:30

10   between American Airlines and Mr. Patterson regarding     04:30:33

11   his status as a pilot?                                    04:30:35

12        A.    According to Jim Bonds's letter, he discussed  04:30:37

13   it on September 24th with Mr. Patterson.                  04:30:40

14        Q.    Thank you.                                     04:30:42

15              Did Mr. Patterson ever ask AA to consider      04:30:44

16   sending him to any other doctor, other than Dr. Knippa,   04:30:57

17   for reevaluation in order to be reinstated for duty?      04:31:01

18        A.    No.                                            04:31:04

19        Q.    I am going to show you Exhibits 72 and 76 to   04:31:04

20   your deposition.  Do you recall being asked questions     04:31:22

21   about these documents earlier today?                      04:31:24

22        A.    Yes.                                           04:31:26

23        Q.    Can you explain to the jury what Exhibit 72    04:31:26

24   is?                                                       04:31:31

25        A.    That is the display 4.  So that's the record   04:31:32

1    of his -- Patterson's absences.                      04:31:36

2          Q.    A display 4 is what, ma'am?              04:31:40

3          A.    It's a record of his absences and --     04:31:43

4          Q.    Where would that record be kept?         04:31:47

5          A.    That's in DEX or in FOS, the flight operations  04:31:50

6    system.                                              04:31:54

7          Q.    I'm sorry, ma'am.  You're going to have to  04:31:55

8    help us out here.  Sometimes I know airline folks have a  04:31:58

9    loft abbreviations that we don't all know.  So it's   04:32:01

10   flight what?                                         04:32:04

11         A.    Flight operations system.                04:32:04

12         Q.    Flight operations system?                04:32:06

13         A.    FOS or DEX.                              04:32:08

14         Q.    And the FOS system, that would contain his --  04:32:11

15   I'm sorry.  You said his?                            04:32:15

16         A.    Display 4.                               04:32:16

17         Q.    His display 4, which is absence records.  04:32:18

18   Correct?                                             04:32:21

19         A.    Yes.                                     04:32:21

20         Q.    Okay.  Would the display 4 that's shown here  04:32:22

21   in Exhibit 72 accurately reflect the date of         04:32:27

22   Mr. Patterson's change of status to PW?              04:32:31

23         A.    Yes.                                     04:32:33

24         Q.    And so when you look at Exhibit --       04:32:35

25                MR. AMLONG:  Objection, foundation.     04:32:38

1          MR. HOLT:  Well, there's no question          04:32:39

2     pending, but --                                   04:32:41

3          Q.   (BY MR. HOLT)  When you look at 76 -- you were   04:32:42

4     asked questions about this document earlier.  Do you   04:32:46

5     recall that?                                      04:32:49

6          A.   Yes.                                    04:32:49

7          Q.   And specifically, you were asked about why it   04:32:49

8     shows a PW status for the 22nd of September.  Do you   04:32:55

9     remember that question?                           04:33:01

10         A.   Yes.                                     04:33:02

11         Q.   Does this reflect Mr. Patterson's employment   04:33:02

12    status or his pay status on the 22nd of September?   04:33:08

13         A.   It would be his pay status.              04:33:14

14         Q.   And just to be clear, you said -- I'm sorry.   04:33:15

15    Did 72 accurately reflect his employment status?   04:33:19

16         A.   Yes.                                     04:33:22

17         Q.   Thank you.                               04:33:23

18              I am going to show you Exhibit --        04:33:32

19              MR. AMLONG:  Objection, foundation, to   04:33:34

20    that.                                             04:33:36

21              MR. HOLT:  Okay.  No question pending.   04:33:37

22         Q.   (BY MR. HOLT)  I am going to show you    04:33:38

23    Exhibit 7 and Exhibit 8.  Do you remember being asked   04:33:39

24    questions about these documents earlier?          04:33:42

25         A.   Yes.                                     04:33:44

1    Q.   If you look at page -- I apologize.  If you        04:33:44

2    look at the page Bates marked AA-Patterson ending in    04:33:57

3    125, do you see that page, ma'am?                        04:34:02

4    A.   Yes.                                                04:34:03

5    Q.   Are there questions and answers on that page?       04:34:04

6    A.   Yes.                                                04:34:06

7    Q.   Do those questions also appear on Exhibit 8 to      04:34:07

8    your deposition today?                                   04:34:12

9    A.   Yes.                                                04:34:13

10   Q.   Do you have any understanding of what               04:34:36

11   Exhibit 8 represents?                                    04:34:38

12   A.   So those, I believe, are Ana's notes on -- a        04:34:39

13   reminder to her of what to ask in Patterson's            04:34:44

14   section 21.                                              04:34:52

15   Q.   Thank you.                                          04:34:52

16        Did Mr. Patterson's request for military leave      04:34:53

17   play any role whatsoever in American's decision to refer 04:35:00

18   him for a section 20 evaluation?                         04:35:03

19   A.   No.                                                 04:35:05

20   Q.   Did Mr. Patterson's taking of military leave        04:35:05

21   play any role whatsoever in AA's decision to refer       04:35:08

22   Mr. Patterson for a section 20 evaluation?               04:35:12

23   A.   No.                                                 04:35:15

24   Q.   Did Mr. Patterson's --                              04:35:15

25        MR. AMLONG:  Object to foundation.                  04:35:18

1          MR. HOLT:  I'm sorry?                    04:35:20

2          MR. AMLONG:  Objection to foundation.    04:35:22

3     She is not the decisionmaker.                 04:35:25

4          MR. HOLT:  Okay.                          04:35:26

5      Q.   (BY MR. HOLT)  Did Mr. Patterson's taking of  04:35:27

6     military leave play any role whatsoever in AA's decision  04:35:32

7     to send him to a section 21 hearing?          04:35:37

8      A.   No.                                      04:35:41

9          MR. AMLONG:  Objection, foundation.       04:35:42

10     Q.   (BY MR. HOLT)  Did Mr. --                04:35:42

11         MR. AMLONG:  She is not the               04:35:45

12    decisionmaker.                                 04:35:47

13     Q.   (BY MR. HOLT)  Did Mr. Patterson's request for  04:35:47

14    military leave play any role whatsoever in American's  04:35:50

15    decision to refer Mr. -- I'm sorry -- to send  04:35:54

16    Mr. Patterson to a section 21 hearing?         04:35:55

17     A.   No.                                      04:35:59

18         MR. HOLT:  Nothing --                     04:36:00

19         MR. AMLONG:  Objection, foundation.  It's  04:36:00

20    asking her the state of mind of Brian Bonds -- Brian  04:36:06

21    Beach.                                         04:36:07

22         MR. HOLT:  Nothing further.               04:36:09

23         We'll read.                               04:36:12

24         MR. AMLONG:  I will redirect.             04:36:15

25         THE VIDEOGRAPHER:  We are off the record  04:36:19

```
 1    at 4:36, and that concludes today's testimony.        04:36:23

 2                (Break from 4:36 p.m. to 4:37 p.m.)        04:36:26

 3                THE VIDEOGRAPHER:  We're back on the       04:37:02

 4    record at 4:37.                                        04:37:03

 5                MR. AMLONG:  Are we back on the record?    04:37:59

 6                MR. HOLT:  Yes.                            04:38:01

 7                   FURTHER EXAMINATION                     04:38:02

 8    BY MR. AMLONG:                                         04:38:03

 9        Q.   Ms. Mitchell, you -- Ms. Montgomery, you      04:38:03

10    testified that Exhibit 6 was correct about Captain Bonds  04:38:08

11    having spoken to Mr. Patterson on the 24th because     04:38:19

12    that's what the letter says.  Do you recall that?      04:38:25

13        A.   Yes.                                          04:38:27

14        Q.   And your only source of knowledge there is    04:38:33

15    what Captain Bonds told you?                           04:38:36

16                MR. HOLT:  Objection, form.                04:38:43

17        A.   Yes.                                          04:38:44

18        Q.   (BY MR. AMLONG)  You have no personal         04:38:46

19    knowledge of any conversation that took place.  Correct?  04:38:47

20                MR. HOLT:  Objection, form.  This is a     04:38:50

21    30(b)(6) depo.  The witness doesn't have to have       04:38:51

22    personal knowledge.                                    04:38:54

23        Q.   (BY MR. AMLONG)  Do you have any personal     04:39:02

24    knowledge?                                             04:39:03

25                MR. HOLT:  You can answer.                 04:39:05
```

1      A.   No.                                              04:39:06

2      Q.   (BY MR. AMLONG)  And you didn't speak to         04:39:06

3  Captain Bonds in preparation for this deposition, did    04:39:11

4  you?                                                      04:39:13

5      A.   I did not.                                       04:39:13

6      Q.   Are you aware that Mr. Patterson had asked       04:39:22

7  Mr. Cronin to send him to another doctor and put him     04:39:35

8  back flying?                                              04:39:47

9           MR. HOLT:  Objection to form.                    04:39:47

10     A.   I don't recall that.                             04:39:48

11     Q.   (BY MR. AMLONG)  Were you at the October 2016    04:39:51

12 hearing on his grievance at which the opinion was        04:39:55

13 expressed that Dr. Knippa was inappropriate?             04:40:02

14          MR. HOLT:  Objection, form.                      04:40:06

15     A.   Yes.                                             04:40:07

16     Q.   (BY MR. AMLONG)  And who expressed that          04:40:08

17 opinion?                                                  04:40:12

18     A.   It would have been whoever presented it.  I     04:40:12

19 don't remember exactly.                                  04:40:19

20     Q.   You said that you had a bachelor's degree from  04:40:19

21 Southern Cal and a master's of art from Southern         04:40:29

22 Methodist University?                                     04:40:36

23          MR. HOLT:  Objection.  It exceeds the            04:40:36

24 scope of the cross.  Go ahead.                            04:40:38

25     A.   Correct.                                         04:40:40

1      Q.   (BY MR. AMLONG)  Are either of those degrees    04:40:40

2  in computer science?                                     04:40:44

3                 MR. HOLT:  Same objection.                04:40:45

4      A.   No.                                             04:40:46

5      Q.   (BY MR. AMLONG)  What do you know about the     04:40:47

6  workings of the computer systems that record duty status 04:40:51

7  and pay status?                                          04:40:59

8                 MR. HOLT:  Objection to form.  You can    04:41:00

9  answer if you understand that question.                  04:41:02

10     A.   I don't really know what you're asking.         04:41:03

11     Q.   (BY MR. AMLONG)  Well, you were talking about   04:41:08

12  the -- we were talking about what the -- what was stored 04:41:11

13  on Exhibit 72 or what Exhibit 72 captured and then what  04:41:18

14  Exhibit 76 captured.  How do you know what these two     04:41:26

15  different computer systems capture and store?            04:41:34

16                 MR. HOLT:  Objection to the form.  You   04:41:37

17  can answer if you understand.                            04:41:39

18     A.   I don't know how the storage works.             04:41:40

19     Q.   (BY MR. AMLONG)  How is information entered      04:41:45

20  into either the computer system that produces 72 or the  04:41:51

21  computer system that produces 76?                        04:41:59

22                 MR. HOLT:  Objection to the form.  Also  04:42:02

23  exceeds the scope of the cross.  But go ahead.           04:42:04

24     A.   I don't know the entries.                        04:42:06

25     Q.   (BY MR. AMLONG)  I'm sorry?                      04:42:10

1      A.   I don't know the entries.                    04:42:11

2      Q.   Do you know who does it?                      04:42:14

3           MR. HOLT:  Objection to form.                 04:42:16

4      A.   It depends on the absence reason.  There can  04:42:19

5  be a variety of people that would enter the information. 04:42:24

6      Q.   (BY MR. AMLONG)  Can Captain Bonds or could   04:42:26

7  Captain Bonds, when he was a chief pilot, enter it?      04:42:32

8      A.   Yes, he could have.                           04:42:35

9      Q.   Could he do that remotely by computer or by   04:42:37

10 telephone?                                              04:42:40

11          MR. HOLT:  Objection to the form.  But        04:42:42

12 you can answer if you know.                             04:42:44

13     A.   I don't know if you can do it by telephone,   04:42:45

14 but I know you can do it by computer.                   04:42:48

15          MR. AMLONG:  Have a great evening, and        04:43:01

16 thank you.                                              04:43:03

17          THE WITNESS:  You as well.                    04:43:03

18          MR. HOLT:  Thank you.  And, again, we         04:43:05

19 will read.                                              04:43:06

20          THE VIDEOGRAPHER:  We're off the record.      04:43:06

21          MR. AMLONG:  We'll take it.  I want the       04:43:10

22 ascii only, no word index.  I do not want the video for 04:43:13

23 the moment.                                             04:43:16

24          (Proceedings ended at 4:43 p.m.)              04:43:21

25

1                    CHANGES AND SIGNATURE

2    WITNESS NAME:  MICHELLE A. MONTGOMERY

3    DATE OF DEPOSITION:  JUNE 6, 2018

4    PAGE     LINE       CHANGE         REASON

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

1    I, MICHELLE A. MONTGOMERY, have read the

2  foregoing deposition and hereby affix my signature that

3  same is true and correct, except as noted above.

4

5    _____

6              MICHELLE A. MONTGOMERY

7

8  THE STATE OF _____)

9  COUNTY OF _____)

10    Before me, _____, on

11  this day personally appeared MICHELLE A. MONTGOMERY,

12  known to me (or proved to me under oath or through

13  _____) (description of identity

14  card or other document) to be the person whose name is

15  subscribed to the foregoing instrument and acknowledged

16  to me that they executed the same for the purposes and

17  consideration therein expressed.

18    Given under my hand and seal of office this

19  _____ day of _____, _____.

20

21

22    _____

23  NOTARY PUBLIC IN AND FOR

24  THE STATE OF _____

25  COMMISSION EXPIRES: _____

1                    REPORTER'S CERTIFICATE

2            The undersigned Certified Shorthand Reporter

3    licensed in the State of Texas does hereby certify:

4            I am authorized to administer oaths or

5    affirmations, and prior to being examined, the witness

6    was duly administered an oath by me.

7            I am not a relative or employee or attorney or

8    counsel of any of the parties, nor am I a relative or

9    employee of such attorney or counsel, nor am I

10   financially interested in the outcome of this action.

11           I am the deposition officer who

12   stenographically recorded the testimony in the foregoing

13   deposition, and the foregoing transcript is a true

14   record of the testimony given by the witness.

15           Before completion of the deposition, review of

16   the transcript [X] was [ ] was not requested.  If

17   requested, any changes made by the deponent (and

18   provided to the reporter) during the period allowed are

19   appended hereto.

20           In witness whereof, I have subscribed my name

21   this 8th day of June, 2018.

22

23

24                   

                     Julie C. Brandt, CSR, RMR, CRR

25                   TX CSR No. 4018, Exp. 12/31/18