UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

   Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

   Defendant.
_____/

**Plaintiff's Local Rule 56.1(a) Statement of Material Facts In Support of Motion for Summary Judgment**

     Plaintiff, Rodney Scott Patterson, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, files the following statement of undisputed facts

     1.    Plaintiff, Rodney Scott Patterson, was on September 21, 2015, both a first officer for American Airlines and a lieutenant colonel in the United States Army Reserves. Patterson Depo,[1] at 64:11-19, 119:24-120:3, 211:20-214:13.

     2.    In September 2015, Patterson needed additional days of service before the end of the fiscal year to make that year count towards his retirement, Patterson Depo, at 219:20-221:16, and had been told he could report to the Pentagon for duty September 22 to represent the Army during Pope Francis's visit to the White House September 23. Id. at 171:10-15, 227:4-18.

     3.    Patterson telephoned the Miami Flight Office Monday, September 21, and, unable to be connected with one of the chief pilots, left a message requesting to use accrued leave time to go on duty for four days. Patterson Depo, at 174:8-23, 177:7-178:5, 250:24-251:11.

---

[1]The cover page and relevant testimonial pages of the Deposition of Rodney Scott Patterson are appended to this statement as Attachment 1.



The Amlong Firm • 500 Northeast Fourth Street • Fort Lauderdale, FL 33301 • 954.462.1983

4.      Capt. James Bonds, one of the chief pilots, got the message and left a voice mail on Patterson's phone saying he did not wish Patterson to take the time to go on duty because American was short of pilots and Patterson was scheduled for a flight September 22. Bonds Depo,[2] at 34:13-20 ("I called him back or left a message saying that we are really short of pilots..., and we really needed him to fly. We didn't have the bodies.")

5.      At one point, Capt. Bonds left a message telling Lt. Col. Patterson he would approve his going on duty *if* Lt. Col. Patterson could show him *written* orders. Patterson Depo, at 180:20-23, Bonds Depo, at 117:9-11, 117:24-118:4. The Army Reserve, however, does not issue written orders for reserve officers of Patterson's rank to report to duty. Patterson Depo, at 187:22-188:20 (explaining "individual mobilization augmentee" status granted to officers with the ranks of major and higher).

6.      Unable to contact Capt. Bonds, Lt. Col. Patterson called American's systems operations control duty chief in Dallas and later notified David Tatum that he was reporting for duty the following day in Washington, D.C. Patterson Depo, at 179:13-19, 180:5-23. Patterson confirmed that the duty officer had listed him as "EO," or using vacation time, which is what he had requested from the Miami Flight Office. Patterson Declaration,[3] at ¶ 4.

7.      Bonds notified Patterson by voice mail September 25 he had been placed on "Paid/Withheld" ("PW") status, meaning he was still being paid but was withheld from service as a pilot, i.e., he could not fly. Patterson Depo, at 298:6-301:18. Patterson denies there was any September 24 conversation but, rather, a voice mail left on his phone September 25. Patterson

---

[2] The cover page and relevant testimonial pages of the Deposition of James Bonds are appended to this statement as Attachment 2.

[3] The Declaration of Rodney Scott Patterson is appended as Attachment 3.

Depo, at 299:17-300:2.  He had learned Wednesday, September 23, however, through a program on his cell phone that tracks changes in his status with American's Dispatch Environment Control System, that his EO status had been changed to PW retroactively to Tuesday, September 22.

8.  Bonds identified his signature on a letter dated September 25 informing Patterson that "[a]s discussed on September 24, 2015, this letter confirms that I am withholding you from service with pay pending the outcome of an investigation into the circumstances surrounding a Work Environment complaint that was reported by a coworker."  Bonds Depo, Exhibit 17.[4]

9.  But Bonds testified that he did not remember sending the letter, Bonds Depo, at 96:23-97:5, having the September 24 conversation to which it refers, id. at 97:20-25, or whether he had seen prior to his deposition the 12-page, single-spaced letter from Captain Glenn Whitehouse to Chief Pilot Brian Beach, detailing numerous allegations of bizarre, aberrant behavior by Patterson during an October 2014 trip to Asuncion, Paraguay.  Bonds Depo, at 91:11-92:4.  Nor does Bonds recall that at 10:17 p.m. that evening, he e-mailed Sean Scialfa, the Miami Director of Flight, and fellow Chief Pilots Beach and Kevin Mase[5,6] ("Subject:  Patterson is now on PW"), with a copy to Luis Rojas, the Miami Flight Office's coordinator, that "Jackie, Mark, and Lucretia[7] all have seen the letter and are taking action," and instructed Rojas, "I will get the letter to you soon" and "[w]hen you get it, please FedEx it to [Patterson]."  Bonds Depo,

---

[4]Exhibit 17 to the Bonds Depo is appended as Attachment 4

[5]Bonds Depo, at 93:4-7.

[6]Bonds, Beach anmd Mase all are "Chief Pilots."

[7]Respectively, Jackie Rios, the Managing Director of Human Resources; Mark Cronin, the Managing Director of Flight, and Lucretia Guia, an American lawyer.  Id. at 93:21-94:4.

at 93:13-94:9 and Exhibit 16.[8]  Bonds also does not know whether his "Patterson in now on PW" email had anything to do with the letter from Whitehouse to Beach that Whitehouse described in a cover e-mail, Bonds Depo, Exhibit 14, as "a letter for you to turn over to the AA human resources...."  Bonds insists, however, that he has a vivid memory that "I can tell you I did—as far as I know and as far as I had anything to do with, he was not on pay withhold status for the military question of providing orders for his absence.  He never was put on pay withhold for that."  Bonds Depo, at 90:2-6.

10.     The same Glenn Whitehouse who wrote the September 24 letter, had made essentially the same complaints in March 2015 in several lengthy e-mails to Capt. Beach.  Bonds Depo, at 118:5-21 and Exhibits 1,[9] 14[10] and 15; Montgomery Depo,[11] at 35:21-36:1.  Michelle Montgomery, a senior director in Labor Relations for the Flight Department—and American's Rule 30(b)(6) designee concerning "The Corporate Security investigation referred to in the 4:15 p.m. March 24, 2015 e-mail from Ricardo Garcia to Brian Beach and copied to Fred Ronda"—characterized Whitehouse's March allegations as "very concerning."  Montgomery

---

[8] Exhibit 16 to the Bonds Depo is appended as Attachment 5.

[9] Exhibit 1 to the Bonds Depo, which is appended as Attachment 6, an e-mail from Ricardo Garcia to Brian Beach, responding to an e-mail by which Beach had forwarded to Garcia a three-and-a-half page, single-spaced e-mail from Glenn Whitehouse concerning Patterson, and informing Beach that Larry McLaughlin, Director of American's Corporate Security, had determined that "Corporate Security would look into this matter."

[10] Exhibits 14 and 15 to the Bonds Depo, which are appended respectively as Attachments 7 and 8, are a cover letter from Whitehouse to Beach, time-stamped at 8:34:57 p.m. September 24, and a 12-page "letter for you to turn over to human resources" that repackages the complaints turned over to Corporate Security in March.

[11] The cover page and relevant testimonial page of the Deposition of Michelle Montgomery are appended to this statement as Attachment 9.

Depo, at 21:22-22:3; Exhibit 72 (Rule 30(b)(6) deposition notice, at 3, Item 8).[12]

11.     Beach attempted during his deposition to characterize the Corporate Security investigation as focusing on only an allegation by Whitehouse that Patterson was smuggling firearms into Bolivia. Beach Depo,[13] at 48:24-49:5. He acknowledged however that "what [Corporate Security] wanted was the whole picture of the situation with Scott Patterson." Id. at 49:49:6-10. Beach forwarded some of Whitehouse's allegations Senior Director of Labor Relations for Flight Montgomery and a human-resources business partner, Rhonda Theuer, stating April 9, 2015 that "Fred Bates[14] has this for action and would be a good source of information as to where they are. For us we are on standby waiting to see what they want from us. But now you have the information and background." Montgomery Depo, at 20:2-24:11 and Exhibit 74.[15] Montgomery, the Rule 30(b)(6) designee, called the allegations in the e-mail "very concerning," said they were serious enough that Patterson should at least have been questioned about them, but did not recall doing anything. Id. She further testified that the investigator had passed away and there are no records of the investigation. Because Beach's testimony about what the investigators told him about the scope of the investigation is hearsay, the only evidence of the scope of the March investigation is the materials Beach forwarded to the investigators from Whitehouse and an investigator's statement to Beach at the end, "There's nothing there," Beach Depo, at 78:4-10.

---

[12] Exhibit 72 to the Montgomery Deposition is appended as Attachment 10.

[13] The cover page and relevant testimonial page of the Deposition of Brian Beach are appended to this statement as Attachment 11

[14] Bates is a manager in Corporate Security in Miami. Montgomery Depo, at 24:12-16.

[15] Exhibit 74 to the Montgomery Depo is appended as Attachment 12.

12. Subsequent to receiving the September 24 Whitehouse letter—two days after Patterson had gone on duty—American began investigating Patterson on several fronts. Bonds demanded Patterson provide him with a Leave and Earnings Statement ("LES") documenting he was actually on duty during the September 22-25 period, and after Patterson supplied an LES with information other than about those dates redacted, Bonds Depo, Exhibit 7,[16] Bonds e-mailed the other Chief Pilots and Cronin,

> Guys, I am suspicious of this LES. He has blocked out important information. His Rank, and the amount for 2 Drill periods is waaaayyy high. For his rank it should be about $800 not $4000
>
> I smell a rat but need to look and compare to my last LES and others that are active.
>
> Maybe he hangs himself on providing false information,

to which Scialfa, the Miami director of flight, noted he "would prefer to pursue this avenue than Sec. 20 for now," referring to the contractual provision that permits American to mandate pilots for psychological examinations, and Cronin to observe that it was "[really important to keep Legal (Vince Carter) in the loop on this stuff [since] USERRA issues can get really tangled fast, and we need to make sure his behavior remains the focus and not how we are handling it." Montgomery Depo, Exhibit 25.[17]

13. The Human Resources investigation that flowed from Whitehouse's September 24 letter, known as a Section 21 proceeding, substantiated "nothing that warranted discipline." Montgomery Depo, at 68:10-17. Based on a system in which the Chief Pilots are the sole decision makers, with no input from anyone with a medical, psychological or

---

[16] Exhibit 7 to the Bonds Depo is appended as Attachment 14.

[17] The E-mail chain is appended as Attachment 14.

neuropsychological background, and with what Montgomery were no written guidelines for the process, Beach and Bonds each signed letter drafted by Montgomery, Montgomery Depo, at 55:23-55:5, 72:10-24, 75:4-14, dated respectively January 14, and January 20, Montgomery Depo Exhibit 44,[18] stating that "[d]ue to my concerns regarding your ability to safely operate an aircraft, I have arranged for you to participate in a medical evaluaton as provided in Section 20 of the [Joint Collective Bargaining Agreement]...."

14. Bonds, however, testified he had no personal kowledge of any facts or circumstances that would cause concerns about Patterson's ability to safely operate an aircraft. Bonds Depo, at 105:17-106:9. Beach—who testified that he has never personally witnessed any behavior by Patterson that would make him think that he was unfit to fly an airplane, and that he was not part of the decision to request that Patterson undergo a Section 20 examination—testified that "I was told to, you know, this is what we're going to do and here's the letter." Beach Depo, at 14:18-15:12, 35:12-15 and 85:8-14.

15. American sent Patterson to John Knippa, Ph.D., a Long Beach, California, neuropsychologist, who tested Patterson, including on his ability to respond mentally and physically to various stimuli during the afternoon following his arrival the night before from Miami — three time-zones to the east. He did the same thing to Michael Dale, an American pilot from North Carolina — whom he also declared "NOT FIT FOR DUTY." See Dale Declaration.[19]

16. Jeral Ahtone, M.D., American Airline's Corporate Medical Director, chose

---

[18]Beach's letter is appended as Attachment 15 and Bonds letter is appended as Attachment 16.

[19]The Unsworn Declaration of Michael Dale, Pursuant to 28 U.S.C. § 1746, is appended as Attachment 17.

Knippa based on the recommendation of a consultant whose name he forgot. Ahtune Depo, at 24:9-18. The only information that American furnished Knippa was a "Fitness for Duty Medical Examination Request — Section 20," signed by Beach, which stated:

> Flight requests that a Fitness for Duty Medical Evaluation, pursuant to Section 20 of the AA-APA labor agreement be scheduled and conducted for First Officer Rodney "Scott" Patterson. The request is based on this office's concerns about FO Patterson's judgment and, specifically, his mental and/or emotional stability. This office has received multiple reports of atypical interactions with coworkers and reports that suggest a pattern of false/self-aggrandizing statements.

17. Even though Knippa characterized Patterson as "NOT FIT FOR DUTY," Ahtone acknowledged Patterson did not "fail" any of Knippa's tests, that the results indicated no neuropsychological deficits, that nothing in the report points to any psychopathology, and that Knippa's report contained no indication that Patterson suffered any neuropsychological deficit, psychopathology or personality disorder. Ahtone Depo, at 52:11-61:5.[20]

18. Based on Knippa's report, Patterson status was changed from "Paid/Withheld" to "Sick" and Patterson has not flown for American since. Patterson Declaration, at ¶ 9.

19. Under cover of an August 22, 2016 letter, Patterson submitted to American reports certifying his fitness for duty from, among others, John Hastings, M.D., an FAA-qualified neurologist; Gary Kay, Ph.D., the Georgetown University neuropsychologist who designed the testing instrument, COGscreen AeroMedical Edition, used by Knippa to disqualify Patterson and whom American frequently uses for fitness-for-duty examinations, and Glenn R. Caddy, Ph.D., a clinical psychologist, who is Patterson's testifying expert, and the military physician who cleared Patterson as being fit for combat deployment.[21]

---

[20] Excepts from the Deposition Jeral Ahtone are appended as Attachment 18.

[21] The letter and attached reports are appended as Composite Attachment 19.

20. Patterson has maintained his FAA First Class Medical certification without interruption and is now flying as a captain for 21 Air, a cargo operation. Patterson Depo, at 10:9-24, 51:20-55:20.

21. American, however, insists that Patterson's only way of returning to flight status is to be re-examined by Knippa. See, e.g., Montgomery Deposition, at 95:9-20.

22. Patterson on January 25, 2016 filed a complaint with the Department of Labor, asserting that his being placed on Paid/Withheld status was in retaliation for his having gone on duty with the Army Reserve September 22, 2015. Patterson Depo, at 276:13-20. American's awareness of the complaint is evidenced by the February 9, 2016 letter to the DOL from American lawyer, Lucretia Guia.[22]

23. Dale, the North Carolina pilot, also furnished American with exam results from other providers. Dale Declaration, at 2, ¶¶ 10-11. Although American initially requested that he return to Knippa, Knippa refused, saying that Dale might have "learned the test." American then sent him to another psychologist, who cleared him and returned him to duty.

24. In a settlement offer in Patterson's union grievance, American lawyer Guia communicated on behalf of Managing Director of Flight Cronin that American would permit Patterson to be cleared by the University of Texas Medical Branch ("UTMB") and, if they disagreed with his other doctor's assessment, by a neuropsychologist from outside of UTMB — not including Knippa.[23] The settlement agreement was keyed, however, on Patterson's abandoning any claim concerning Section 20, which would mean walking away from a

---

[22] A copy of the letter, without the attachments, is appended as Attachment 20.

[23] A copy of the settlement e-mail between American and the Allied Pilots Association is appended as Attachment 21.

USERRA action that had not at that point been filed.

                                          Respectfully Submitted,

*/s/ William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

NOEL C. PACE
noel.c.pace.esq@gmail.com
Admitted Pro Hac Vice
206 NW 91st Street
El Portal, FL
(305) 710-3713


AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

Attorneys for Plaintiff,
      Rodney Scott Patterson

Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic delivery this  day on all counsel or parties of record on the Service List below.

/*s/ William R. Amlong*
WILLIAM R. AMLONG

**Service List**

| | |
|---|---|
| WILLIAM R. AMLONG<br>WRAmlong@TheAmlongFirm.com<br>KAREN COOLMAN AMLONG<br>KAmlong@TheAmlongfirm.com<br><br>AMLONG & AMLONG, P.A.<br>500 Northeast Fourth Street<br>Second Floor<br>Fort Lauderdale, Florida 33301<br>Telephone: (954) 462-1983<br>Facsimile: (954) 463-5008<br><br><br>NOEL C. PACE<br>noel.c.pace.esq@gmail.com<br>Admitted Pro Hac Vice<br>206 NW 91st Street<br>El Portal, FL<br>(305) 710-3713<br><br><br>Attorneys for Plaintiff,<br>    Rodney Scott Patterson | MICHAEL A. HOLT<br>mholt@shb.com<br>SHOOK, HARDY & BACON LLP<br>Miami Center, Suite 3200<br>201 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: (305) 358-5171<br>Facsimile: (305) 358-7470<br><br>MARK W. ROBERTSON<br>mrobertson@omm.com<br>(Pro hac vice)<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br><br>TRISTAN MORALES<br>tmorales@omm.com<br>(Pro hac vice)<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, Northwest<br>Washington, District of Columbia 20006<br>Telephone: (202) 383-5300<br>Facsimile: (202) 383-5414<br><br>Attorneys for Defendant,<br>    American Airlines, Inc. |

\\amlong3\cpshare\CPWin\HISTORY\180601_0001\1538.13C