1

```
 1           IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                 (Fort Lauderdale Division)

 3   RODNEY SCOTT PATTERSON,     )
        Plaintiff,               )
 4                               )
     vs.                         ) Case No.
 5                               ) 17-cv-60533-JEM
     AMERICAN AIRLINES, a        )
 6   Delaware corporation,       )
        Defendant.               )
 7

 8   ********************************************************

 9           ORAL AND VIDEOTAPED DEPOSITION OF

10      THE CORPORATE REPRESENTATIVE OF AMERICAN AIRLINES

11                   MICHELLE A. MONTGOMERY

12                       JUNE 6, 2018

13   ********************************************************

14        ORAL AND VIDEOTAPED DEPOSITION OF MICHELLE A.

15   MONTGOMERY, produced as a witness at the instance of the

16   Plaintiff, and duly sworn, was taken in the above-styled

17   and numbered cause on the 6th day of June, 2018, from

18   10:30 a.m. to 4:43 p.m., via telephone, before Julie C.

19   Brandt, RMR, CRR, and CSR in and for the State of Texas,

20   reported by machine shorthand, at Veritext Legal

21   Solutions, 300 Throckmorton Street, Suite 1600, Fort

22   Worth, Texas, pursuant to the Federal Rules of Civil

23   Procedure and the provisions stated on the record or

24   attached hereto.

25
```

**ATTACHMENT 9**

|  |  | 20 |
|---|---|---|
| 1 | (Exhibit 74 marked.) | 10:57:00 |
| 2 | Q. (BY MR. AMLONG) All right. We are marking | 10:56:43 |
| 3 | the 30(b)(6) notice as Plaintiff's Exhibit 73 and the | 10:56:51 |
| 4 | April 9, 2015, email as Plaintiff's 74. Please take a | 10:56:54 |
| 5 | moment and look at that, Ms. Montgomery. | 10:57:03 |
| 6 | If you want to, we can shut down the video | 10:57:31 |
| 7 | while you read it. | 10:57:34 |
| 8 | A. Sure. | 10:57:35 |
| 9 | MR. HOLT: We'll stay on the record for | 10:57:35 |
| 10 | time purposes, though. Correct, Counsel? | 10:57:38 |
| 11 | A. I presume you want me to read the entire | 10:58:02 |
| 12 | thing? It's pretty lengthy. | 10:58:05 |
| 13 | Q. (BY MR. AMLONG) Yes. | 10:58:07 |
| 14 | A. Okay. | 10:58:08 |
| 15 | MR. AMLONG: And actually, Michael, the | 10:58:14 |
| 16 | seven hour rule doesn't count in 30(b)(6) depositions. | 10:58:18 |
| 17 | MR. HOLT: Yes, it does. | 10:58:19 |
| 18 | MR. AMLONG: You can have one of your | 10:58:19 |
| 19 | interns research that. | 10:58:21 |
| 20 | MR. HOLT: You can research it. You can | 10:58:22 |
| 21 | look at the rule yourself. It applies in every | 10:58:24 |
| 22 | deposition. | 10:58:27 |
| 23 | A. Okay. | 11:03:48 |
| 24 | Q. (BY MR. AMLONG) Ms. Montgomery, who was | 11:03:48 |
| 25 | Rhonda Theuer? | 11:04:00 |

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | A.  Rhonda Theuer is retired.  She used to work in           | 11:04:02 |
| 2  | human resources.                                             | 11:04:06 |
| 3  | Q.  Do you know what she did in HR?                          | 11:04:09 |
| 4  | A.  I think she was a human resources business               | 11:04:12 |
| 5  | partner, if I remember correctly.                            | 11:04:18 |
| 6  | Q.  What was your position at the time of this               | 11:04:19 |
| 7  | email?                                                       | 11:04:31 |
| 8  | A.  I was the labor relations manager for flight.            | 11:04:31 |
| 9  | Q.  Doing the same thing you're doing now?                   | 11:04:33 |
| 10 | A.  Yes.                                                     | 11:04:38 |
| 11 | Q.  What, if any, discussion did you have with               | 11:04:38 |
| 12 | Captain Beach about this email at the time you got it?       | 11:04:56 |
| 13 | MR. HOLT:  Objection.  That exceeds the                      | 11:04:59 |
| 14 | scope of the 30(b)(6) notice.                                | 11:05:02 |
| 15 | A.  I don't recall the specific discussions we had           | 11:05:03 |
| 16 | back in April 2015.                                          | 11:05:09 |
| 17 | Q.  (BY MR. AMLONG)  Do you recall any discussions           | 11:05:10 |
| 18 | about this letter or about this email?                       | 11:05:14 |
| 19 | MR. HOLT:  Same objection.                                   | 11:05:17 |
| 20 | A.  I recall that we had discussions, but I don't            | 11:05:20 |
| 21 | recall what they specifically involved.                      | 11:05:22 |
| 22 | Q.  (BY MR. AMLONG)  Do you recall if Captain                | 11:05:26 |
| 23 | Beach was suggesting any kind of investigation of            | 11:06:05 |
| 24 | Mr. Patterson at this time?                                  | 11:06:14 |
| 25 | MR. HOLT:  Same objection.                                   | 11:06:16 |

| | | |
|---|---|---|
| 1 | A. I believe he did want us to look into the | 11:06:17 |
| 2 | allegations, as, you know, on paper they're very | 11:06:23 |
| 3 | concerning. | 11:06:30 |
| 4 | Q. (BY MR. AMLONG) What was concerning -- what | 11:06:30 |
| 5 | allegations are you classifying as very concerning? | 11:06:50 |
| 6 | MR. HOLT: Objection, exceeds the scope | 11:06:54 |
| 7 | of the 30(b)(6) notice. | 11:06:55 |
| 8 | A. You want me to go through the whole document | 11:06:56 |
| 9 | and tell you what's concerning? | 11:07:02 |
| 10 | Q. (BY MR. AMLONG) Yes. | 11:07:04 |
| 11 | A. Okay. So it starts out with his concern about | 11:07:05 |
| 12 | going through VVI Customs and feels like he was | 11:07:16 |
| 13 | targeted, you know, in relationship to Mr. Patterson | 11:07:21 |
| 14 | allegedly smuggling firearms. | 11:07:29 |
| 15 | Then he goes on to talk about the behavior in | 11:07:33 |
| 16 | ASU from Mr. Patterson. Some of it was behavior in | 11:07:38 |
| 17 | regards to being a nonrev and whether the behavior is | 11:07:50 |
| 18 | appropriate, such as taking pillows from First Class for | 11:07:55 |
| 19 | his family. | 11:07:58 |
| 20 | Certainly sitting in the jump seat and prior | 11:07:59 |
| 21 | to taxi moving switches, since he was not the pilot | 11:08:02 |
| 22 | flying or pilot monitoring, for that matter. So moving | 11:08:06 |
| 23 | the switches and flaps from a jump seat. | 11:08:11 |
| 24 | Then going on, some nonrev behavior from his | 11:08:24 |
| 25 | family members, which we will at times investigate, | 11:08:28 |

|   |   |   |
|---|---|---|
| 1 | wanting to ride in the crew van, which, to my knowledge, | 11:08:37 |
| 2 | is not a normal request for him and his family when he's | 11:08:42 |
| 3 | not -- or his family is not part of the crew. | 11:08:47 |
| 4 | You know, there's some discussion about being | 11:09:00 |
| 5 | robbed on the street, which wouldn't necessarily be | 11:09:03 |
| 6 | something that we would investigate on its own. But | 11:09:07 |
| 7 | when you look at the big picture, there's a lot of | 11:09:09 |
| 8 | allegations going on here. | 11:09:12 |
| 9 | Threatening him, saying his mother is | 11:09:15 |
| 10 | corporate counsel at US Airways and threatening to get | 11:09:18 |
| 11 | the crew fired. | 11:09:21 |
| 12 | There were some allegations of whether or not | 11:09:35 |
| 13 | he had arranged to have a ghost rider observe the crew. | 11:09:37 |
| 14 | He made allegations that I guess Whitehouse | 11:09:47 |
| 15 | allegedly told another Captain, Mondrich that he had the | 11:10:00 |
| 16 | purser sit next to him and have sexual relations in the | 11:10:10 |
| 17 | crew rest seat or in the rest seat during his break. | 11:10:14 |
| 18 | Alleging that -- talking about flight | 11:10:23 |
| 19 | attendant Caesar and calling him either a, quote, faggot | 11:10:27 |
| 20 | or the N word, which are unacceptable. | 11:10:33 |
| 21 | There's basically -- if you look through this, | 11:10:38 |
| 22 | there's just a lot of information which was certainly | 11:10:53 |
| 23 | concerning to a captain enough to inform the chief pilot | 11:11:03 |
| 24 | that we have to weed through and determine if we should | 11:11:11 |
| 25 | at least talk to the person who the allegations are | 11:11:17 |

```
                                                                    24
 1    against to determine if there's any truth to the        11:11:21
 2    allegations.                                            11:11:27
 3         Q.   So did you make any effort to speak with      11:11:34
 4    Mr. Patterson at the time to determine whether or not   11:11:58
 5    these allegations were true?                            11:12:00
 6              MR. HOLT:  Objection, exceeds the scope       11:12:01
 7    of the 30(b)(6) notice.                                 11:12:02
 8         A.   At this date and time, I don't recall exactly 11:12:08
 9    what we were doing.  I know at some point we did assign 11:12:15
10    an HR investigator to investigate allegations against   11:12:19
11    Mr. Patterson.                                          11:12:25
12         Q.   (BY MR. AMLONG)  Who was Fred Bates?          11:12:26
13         A.   He is in corporate security.  He's one of the 11:12:37
14    managers in corporate security in Miami.                11:12:40
15         Q.   Is Mr. Bates still there?                     11:12:43
16         A.   Yes.                                          11:12:46
17         Q.   Did you --                                    11:12:47
18         A.   And actually, I say he's in Miami.  I don't   11:12:55
19    actually think he's in Miami.  I'm sorry.  What?        11:12:55
20         Q.   I'm sorry?                                    11:13:02
21         A.   I said, I said he was in Miami.  I actually --11:13:02
22    I don't believe he is based in Miami.                   11:13:05
23         Q.   Did you speak with Mr. Bates in preparation   11:13:08
24    for this deposition?                                    11:13:11
25         A.   I did briefly speak to Mr. Bates -- or Captain 11:13:11
```

```
 1   Cronin.                                                    11:35:30
 2       Q.   (BY MR. AMLONG)  Do you recall if you did         11:35:34
 3   anything?                                                  11:35:35
 4       A.   I don't recall one way or the other.  Is there    11:35:36
 5   a document you want me to look at?                         11:35:42
 6       Q.   No.                                               11:35:49
 7            Look at Exhibits 3, 4 and 5, please.              11:36:08
 8                 (Exhibit 3 marked.)                          11:36:08
 9                 (Exhibit 4 marked.)                          11:36:08
10                 (Exhibit 5 marked.)                          11:36:39
11       A.   Okay.  I have the Exhibits 3, 4 and 5.            11:36:39
12       Q.   (BY MR. AMLONG)  Did you review any of those      11:36:44
13   exhibits in preparation for today's deposition?            11:36:47
14            MR. HOLT:  Objection.  The witness is not         11:36:50
15   going to answer questions about specific documents that    11:36:52
16   were reviewed at the instruction of counsel in             11:36:54
17   preparation for the deposition.                            11:36:56
18       Q.   (BY MR. AMLONG)  Have you reviewed -- have you    11:36:58
19   reviewed the September 24, 2015, letter?                   11:37:00
20       A.   Yes, I believe so.                                11:37:05
21       Q.   Do you consider the September 24, 2015, letter    11:37:07
22   to be substantially similar to the allegations contained   11:37:21
23   in Captain Whitehouse's March emails to Captain Beach      11:37:32
24   and forwarded to corporate security?                       11:37:44
25            MR. HOLT:  Objection to the form.                 11:37:47
```

| | | |
|---|---|---|
| 1 | A.   Yes. | 11:37:48 |
| 2 | Q.   (BY MR. AMLONG)  The Exhibit 3 is an email | 11:37:51 |
| 3 | from Brian Beach to -- I am sorry.  Exhibit 3 is an | 11:38:15 |
| 4 | email from Glenn Whitehouse to Brian Beach at 8:34:57 | 11:38:24 |
| 5 | p.m. on September 24th.  Do you know how Captain | 11:38:33 |
| 6 | Whitehouse came to be sending a repeat of his March | 11:38:41 |
| 7 | allegations to Captain Beach in September 2015? | 11:38:51 |
| 8 | MR. HOLT:  Objection to the form, calls | 11:39:00 |
| 9 | for speculation. | 11:39:01 |
| 10 | THE WITNESS:  Do you want me to answer | 11:39:06 |
| 11 | it? | 11:39:08 |
| 12 | MR. HOLT:  Yeah. | 11:39:09 |
| 13 | THE WITNESS:  Okay. | 11:39:10 |
| 14 | A.   So now that I'm thinking about this for a | 11:39:10 |
| 15 | second, when we originally received Captain Whitehouse's | 11:39:12 |
| 16 | concerns, he -- | 11:39:19 |
| 17 | Q.   (BY MR. AMLONG)  Are you talking about March? | 11:39:25 |
| 18 | A.   Yes.  To my recollection, he wanted to handle | 11:39:26 |
| 19 | that through APA pro standards. | 11:39:28 |
| 20 | Q.   Who wanted to handle that through APA pro | 11:39:31 |
| 21 | standards? | 11:39:36 |
| 22 | A.   Captain Whitehouse, I believe.  And so it got | 11:39:36 |
| 23 | to the point to where he tried to work through APA pro | 11:39:48 |
| 24 | standards and was not getting any satisfaction.  And so | 11:39:51 |
| 25 | he wanted to make a formal complaint to the company | 11:39:58 |

55

| | | |
|---|---|---|
| 1 | MR. HOLT: You can finish your answer. | 12:44:14 |
| 2 | A. So I -- there was conversations with them | 12:44:15 |
| 3 | regarding the feasibility of sending him for a | 12:44:20 |
| 4 | section 20 examination and what information would lead | 12:44:27 |
| 5 | us to send him for a section 20 examination. And | 12:44:35 |
| 6 | overall it was several things that really came out of | 12:44:40 |
| 7 | his section 21 investigation. And enough people were | 12:44:52 |
| 8 | telling us that he -- about just some very strange | 12:44:56 |
| 9 | behavior or nonnormal behavior, statements that he made. | 12:45:05 |
| 10 | And we just wanted to make sure, as we have the | 12:45:14 |
| 11 | contractual right to do -- to ensure that he was, in | 12:45:18 |
| 12 | fact, fit for duty as an American Airlines pilot. | 12:45:22 |
| 13 | Q. (BY MR. AMLONG) Look at Exhibit 17. The | 12:45:33 |
| 14 | assertions that Captain Snelling was making concerned | 12:46:49 |
| 15 | events that took place in 2004. Correct? | 12:46:53 |
| 16 | A. Let me get 17 out again. Allegations in 2004? | 12:46:54 |
| 17 | Oh, I see. Okay. Regarding Florida Highway Patrol | 12:47:09 |
| 18 | Academy, yes. | 12:47:13 |
| 19 | Q. And what were the allegations by First Officer | 12:47:20 |
| 20 | Bullock? | 12:47:24 |
| 21 | A. By First Officer Bullock? I'm sorry. I'm | 12:47:26 |
| 22 | looking at -- Snelling's letter is in 17. | 12:47:29 |
| 23 | Q. Look at Exhibit 44. | 12:48:48 |
| 24 | A. 44. | 12:48:53 |
| 25 | (Exhibit 44 marked.) | 12:49:08 |

68

| | | |
|---|---|---|
| 1 | hearing. | 01:16:35 |
| 2 |     MR. AMLONG: It was sent to you an hour | 01:16:46 |
| 3 | or so ago. | 01:16:48 |
| 4 |     THE WITNESS: We're looking. | 01:16:49 |
| 5 |     MR. HOLT: Off the record one second. | 01:16:58 |
| 6 |     MR. AMLONG: Sure. | 01:17:00 |
| 7 |     (Discussion off the record.) | 01:17:01 |
| 8 |     (Exhibit 75 marked.) | 01:18:10 |
| 9 |     (Exhibit 76 marked.) | 01:18:11 |
| 10 | Q. (BY MR. AMLONG) Look at 75 and tell me if | 01:18:14 |
| 11 | that refreshes your memory. It's an email from Brian | 01:18:16 |
| 12 | Beach to Mr. Patterson. Subject: PEH entry for HR | 01:18:21 |
| 13 | hearing. Does that refresh your memory as to whether or | 01:18:26 |
| 14 | not the section 21 hearing has concluded? | 01:18:30 |
| 15 | A. Yes. | 01:18:37 |
| 16 | Q. And is there any finding of wrongdoing there? | 01:18:42 |
| 17 | A. Nothing that warranted discipline. | 01:18:47 |
| 18 | Q. Look at 76. | 01:18:55 |
| 19 | A. Okay. | 01:18:59 |
| 20 | Q. Do you recognize that? | 01:18:59 |
| 21 | A. I do. | 01:19:03 |
| 22 | Q. And can you please tell us what it is? | 01:19:04 |
| 23 | A. It's an activity sheet for September 2015. | 01:19:11 |
| 24 | Q. And look in the second column. | 01:19:15 |
| 25 | A. Okay. | 01:19:33 |

72

| | | |
|---|---|---|
| 1 | medical doctor, and I don't think he has a psychological | 02:30:06 |
| 2 | background, but he would have to speak to that. | 02:30:09 |
| 3 | Q.   (BY MR. AMLONG)   Well, Dr. Ahtone did not | 02:30:11 |
| 4 | select Mr. Patterson.  Dr. Ahtone merely selected | 02:30:17 |
| 5 | Dr. Knippa.  Correct? | 02:30:21 |
| 6 | A.   That's my point, because you keep asking who | 02:30:23 |
| 7 | selected him to go to a section 20, to Dr. Knippa.  So | 02:30:28 |
| 8 | it's two separate subjects, in my opinion.  And that's | 02:30:33 |
| 9 | why I'm trying to be clear. | 02:30:37 |
| 10 | Q.   Let's back up, and I'll reask the question. | 02:30:38 |
| 11 | Did anybody with a medical background select Scott | 02:30:40 |
| 12 | Patterson for a section 20 exam? | 02:30:49 |
| 13 | MR. HOLT:  Object to form. | 02:30:51 |
| 14 | A.   No. | 02:30:52 |
| 15 | Q.   (BY MR. AMLONG)   Did anybody with a | 02:30:52 |
| 16 | psychological background select Scott Patterson for a | 02:30:53 |
| 17 | section 20 exam? | 02:31:00 |
| 18 | MR. HOLT:  Object to the form. | 02:31:00 |
| 19 | A.   No. | 02:31:01 |
| 20 | Q.   (BY MR. AMLONG)   Did anybody with a | 02:31:02 |
| 21 | neuropsychological background select Scott Patterson for | 02:31:08 |
| 22 | a section 20 exam? | 02:31:11 |
| 23 | MR. HOLT:  Object to the form. | 02:31:13 |
| 24 | A.   No. | 02:31:14 |
| 25 | Q.   (BY MR. AMLONG)   So the two decisionmakers | 02:31:14 |

```
                                                                    74
 1    mean?                                                    02:35:19
 2         Q.    Yes.                                          02:35:24
 3         A.    I can't say.                                  02:35:26
 4              MR. HOLT:  Outside the 30(b)(6).               02:35:27
 5         Q.    (BY MR. AMLONG)  And the participants listed, 02:35:49
 6    these are all the people that Ms. Burke-Leon spoke to?   02:35:57
 7              MR. HOLT:  Object to the form.                 02:36:03
 8         A.    I would have to compare it to her report.     02:36:03
 9         Q.    (BY MR. AMLONG)  So the closing summary was   02:36:10
10    done December 14, 2015, and provided to you.  Is that    02:36:52
11    the document we saw earlier that was stamped             02:37:00
12    confidential across the front?                           02:37:02
13         A.    I would have to look at it.  I don't know.    02:37:08
14         Q.    Exhibit 41.                                   02:37:10
15         A.    41?  I would say yes, that it is.  I can't say 02:37:15
16    for sure, but it's what I received.  Actually, I take    02:37:32
17    that back.  Hang on.  I take that back.  I just want to  02:38:00
18    confirm.  Yes.  I am looking at Exhibit 40.  This is     02:38:07
19    what I would consider a summary.  You know, the honest   02:38:21
20    truth is I can't say what she means by closing summary.  02:38:30
21         Q.    And this is the type of record that American  02:39:19
22    Airlines maintains on all the human resources            02:40:06
23    investigations?                                          02:40:08
24              MR. HOLT:  Object to the form, outside         02:40:09
25    the scope, violates the Court's order.                   02:40:10
```

```
                                                                        75
 1        A.   I can't say for certainty all, but I can say       02:40:15
 2   that this is our system that we use to keep track of         02:40:19
 3   complaints.                                                  02:40:26
 4        Q.   (BY MR. AMLONG)  Are there any written             02:40:40
 5   guidelines concerning subjecting someone to a section 20     02:43:31
 6   examination?                                                 02:43:31
 7             (Reporter clarification.)                          02:43:40
 8        Q.   (BY MR. AMLONG)  Does American Airlines have       02:43:42
 9   any written guidelines for subjecting somebody to a          02:43:47
10   section 20 examination?                                      02:43:54
11             MR. HOLT:  Outside the scope.                      02:43:54
12        A.   Nothing outside of the actual section 20 of        02:44:00
13   the JCBA.                                                    02:44:03
14        Q.   (BY MR. AMLONG)  Look at Exhibit 30, please.       02:44:05
15        A.   30?                                                02:45:08
16        Q.   Yes.                                               02:45:09
17             (Exhibit 30 marked.)                               02:45:21
18        A.   Okay.  I have it.                                  02:45:29
19        Q.   (BY MR. AMLONG)  Do you know why,                  02:45:37
20   notwithstanding all of the statements that                   02:45:42
21   Ms. Burke-Leon took, Mr. Cronin is saying, quote, The        02:45:45
22   only thing we can use are statements are the ones from       02:45:56
23   Whitehouse, closed quote?                                    02:46:02
24             MR. HOLT:  Object to the form.                     02:46:04
25        A.   So we didn't have anything other than a            02:46:05
```

```
                                                                    95
 1              Let's go off the record for one second, if    03:35:36
 2     that's okay.                                           03:35:39
 3                     (Discussion off the record.)           03:36:47
 4                     (Exhibit 79 marked.)                   03:36:09
 5         A.   Okay.  I have it.                             03:36:49
 6         Q.   (BY MR. AMLONG)  Okay.  Have you seen this    03:36:51
 7     document before?                                       03:36:52
 8         A.   Not that I recall.                            03:36:52
 9         Q.   Whose decision was it to require Mr. Patterson 03:37:50
10     to return to Dr. Knippa if he were going to be cleared 03:37:57
11     to fly again?                                          03:38:04
12         A.   Whose decision would it be to send him back to 03:38:05
13     Dr. Knippa?                                            03:38:09
14         Q.   Right.                                        03:38:12
15         A.   There's not a decision.  Mr. Patterson just   03:38:12
16     needs to tell us he's ready, and we will get that set up 03:38:19
17     for him.                                               03:38:22
18         Q.   But what about if he doesn't want to go back  03:38:24
19     to Dr. Knippa?                                         03:38:27
20         A.   He doesn't have a choice.                     03:38:28
21         Q.   Where does it say that in the contract?       03:38:30
22              MR. HOLT:  Object to the form, outside        03:38:42
23     the scope.                                             03:38:44
24         A.   It doesn't say that in the contract.          03:38:46
25         Q.   (BY MR. AMLONG)  Does the contract address the 03:39:59
```

124

1          CHANGES AND SIGNATURE

2    WITNESS NAME:  MICHELLE A. MONTGOMERY

3    DATE OF DEPOSITION:  JUNE 6, 2018

4    PAGE     LINE       CHANGE           REASON

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

```
 1            I, MICHELLE A. MONTGOMERY, have read the
 2   foregoing deposition and hereby affix my signature that
 3   same is true and correct, except as noted above.
 4
 5                   _____
 6                        MICHELLE A. MONTGOMERY
 7
 8   THE STATE OF _____)
 9   COUNTY OF _____)
10            Before me, _____, on
11   this day personally appeared MICHELLE A. MONTGOMERY,
12   known to me (or proved to me under oath or through
13   _____) (description of identity
14   card or other document) to be the person whose name is
15   subscribed to the foregoing instrument and acknowledged
16   to me that they executed the same for the purposes and
17   consideration therein expressed.
18            Given under my hand and seal of office this
19   _____ day of _____, _____.
20
21
22                   _____
23                        NOTARY PUBLIC IN AND FOR
24                        THE STATE OF _____
25                        COMMISSION EXPIRES: _____
```

1                REPORTER'S CERTIFICATE

2        The undersigned Certified Shorthand Reporter

3   licensed in the State of Texas does hereby certify:

4        I am authorized to administer oaths or

5   affirmations, and prior to being examined, the witness

6   was duly administered an oath by me.

7        I am not a relative or employee or attorney or

8   counsel of any of the parties, nor am I a relative or

9   employee of such attorney or counsel, nor am I

10  financially interested in the outcome of this action.

11       I am the deposition officer who

12  stenographically recorded the testimony in the foregoing

13  deposition, and the foregoing transcript is a true

14  record of the testimony given by the witness.

15       Before completion of the deposition, review of

16  the transcript [X] was [ ] was not requested.  If

17  requested, any changes made by the deponent (and

18  provided to the reporter) during the period allowed are

19  appended hereto.

20       In witness whereof, I have subscribed my name

21  this 8th day of June, 2018.

22

23

24              <%Signature%>
                Julie C. Brandt, CSR, RMR, CRR
25              TX CSR No. 4018, Exp. 12/31/18