August 22, 2016

First Officer Scott Patterson
MIA/FO/A320/USLOA
1092 NW 139th Terrace
Pembroke Pines, FL  33028-2340

**Sent via Email and Federal Express**

Captain Mark Cronin
Managing Director Line Operations
AA Flight Academy - MD 823
P. O. Box 619617
DFW Airport, Texas 75261-9617

**_RE: Assistance with Return-To-Work (RTW) And Section 20 Irregularities_**

Dear Captain Cronin:

I am writing to respectfully request your assistance with return to active duty (flight status), as I have been left in limbo and unpaid for nearly 4 months, despite the fact that I have continuously held an FAA Airman's Medical Certificate, First Class and was medically qualified to perform my duties as an AA pilot at all times. Additionally, this past year, I was also declared "fit for duty" by the U.S. Army, several medical professionals, and the FAA. I believe I am in this situation as the result of being subjected to a Section 20 process rife with irregularities. To date, I have spent in excess of Fifty Thousand dollars on medical experts to resolve this issue, been placed in a sick status without written notice, forced to exhaust over 100 hours of sick leave, and now have been in an unpaid status. As a result, my family has suffered a severe financial hardship, forcing me to withdraw my children from private education activities and requiring my wife to return to full time employment to help support our family. To date, I have complied with all of my contractual obligations and Chief Pilot orders, and yet despite the fact that I was never sick nor un-fit for duty, I remain unpaid inactive status.

### _Background_

On January 20, 2016, Miami Chief Pilot, Capt. Brian Beach, without providing cause, deemed me not fit for duty, and ordered me to undergo a Section 20 Physical Examination. Specifically, Capt. Beach directed I fly across the country to Los Angeles, and undergo two full days of Neuropsychological testing with the Company appointed psychologist Dr. Knippa. Accordingly, on March 15, 2016 I flew to LAX, and my scheduled arrival forced me to drive two hours in rush hour traffic to lodging in Long Beach. I didn't check in until 8:30 PM PST, and received less than 7 hours of rest prior to commencing mandatory testing at 9:30 AM PST. Needless to say, after crossing three time zones I was not provided adequate time to acclimate, much less be properly rested before being required to undergo what amounted to a potentially "career ending "jeopardy" event. After two days of testing, Dr. Knippa, never provided a specific DSM-5 diagnosis, but simply issued a report stating "Not Fit For Duty" due to cognitive impairment, without any further medical explanation. Thereafter, I informed Nurse Cindy Contreras, of AA Medical that I disagreed with Dr. Knippa's report, and she advised me that I could seek a second opinion from a doctor of my choosing.

To that end, I fully complied with AA Medical's instructions and Section 20, and in April 2016, I sought a second opinion from highly respected aviation psychologist, Dr. Caddy, who formerly served with United Airlines for 15 years. Dr. Caddy, disagreed with Dr. Knippa's report having identified several areas of concern, and after many hours of independent evaluation, he opined that I had no cognitive impairments and was fit for duty as an airline pilot. Dr. Caddy, contacted Dr. Knippa and requested he provide his raw data/ testing information and advised him he was examining the results for his own findings, Dr. Knippa refused to provide the information.

# ATTACHMENT 19

AA-Patterson-0000175

Dr. Caddy and my AME suggested I get a third opinion from the country's foremost aeromedical psychologist, Dr. Gary Kay, creator of the Cog Screen AE (Aeromedical Edition), used to evaluate airline pilots in the FAA HIMS program. Additionally, the Allied Pilots Association Legal Department, also suggested Dr. Kay, as American Airlines considered his opinions with impartial and final. Dr. Knippa gave his approval for Dr. Kay to conduct a follow-on examination and forwarded Dr. Kay all of his raw data information as well as the AA referral questions and notes.

On June 29, 2016, I travelled to Dr. Kay's office in Washington D.C., and underwent an extensive clinical evaluation and cognitive assessment. Dr. Kay concluded that I performed at the 60th percentile on speed and 85th percentile on accuracy. In other words, "normal" and 'fit for duty" as an American Airlines Pilot. Dr Kay was critical of Dr. Knippa's methods, and faulted him for many facets of his "testing": to include performing the vigilance test at the inappropriate time of day, not accounting for circadian rhythm disturbances, improper test instructions, utilizing improper test procedures, and relying on inappropriate and more stringent regional pilot norms (median age 23 years). As a result, Dr. Kay concluded that Dr. Knippa failed to follow standardized Cog Screen procedures, and thus yielded results that were flawed and inaccurate.

Also, on May 23, 2016, on the advice of my AME, Dr Joe Tordella, I travelled to Tulsa, OK to visit Dr. John Hastings, HIMS certified AME and Aeromedical Neurologist, whose opinion is highly regarded by the FAA Federal Air Surgeon. Dr. Hastings performed a comprehensive neurological evaluation, and concluded I was "fit for duty" from a neurological standpoint.

On July 1, 2016, Dr. Joe Tordella, HIMS certified AME, performed a comprehensive review of all of the reports, he concurred with their findings of "fit for duty" and renewed my FAA First Class Medical Certificate, which was later submitted to AA Medical.

### *Summary of Medical Professionals Certifying My "Fitness for Duty" In the Past Year*

| | | |
|---|---|---|
| 10/15/2016 | U.S. Army Reserve Readiness Health: | "Fit for Duty" PULHES 1-1-1-1-1-1 |
| 01/12/2016 | Dr. Martin Dayton, D.O. (Integrative): | "Fit for Duty" as an Airline Pilot |
| 01/31/2016 | Dr. Joe Tordella, D.O, (HIMS),(AME): | "Fit for Duty", FAA |
| 03/29/2016 | Dr. Ibrahim Abi-Rafeh, M.D.,(Psychiatrist): | "Fit for Duty", No Therapy Req. |
| 03/31/2016 | Dr. Glenn R. Caddy, Ph.D.,(Psychologist): | "Fit for Duty", No cognitive impairment |
| 05/23/2016 | Dr. John R. Hastings, M.D, (HIMS),(AME): | "Fit for Duty" Neg. Neurological Issues |
| 06/29/2016 | Dr. Gary G. Kay, Ph.D., (HIMS PysD): | "Fit for Duty" as AA Pilot |
| 07/01/2016 | Dr. Joe Tordella, D.O., (HIMS),(AME): | "Fit for Duty", FAA 1st Class |

### *Conclusion*

Bottom-line, I was very troubled when forced to travel cross-country, without adequate rest or circadian acclimation, and then be subjected to procedurally flawed Cog Screen testing by American Airline's chosen Section 20 psychologist, Dr Knippa, Especially, given that the creator of the Cog Screen, Dr. Kay found criticism with Dr. Knippa's flawed testing procedures and inaccurate findings. Dr. Caddy did further research and found that a judge in a Montana Workman's Comp case, ruled that Dr. Knippa's medical opinions were deemed to be not credible, and in conflict with record medical evidence. Dr Caddy further states, "if any carrier uses this sort of protocol and uses neuropsychology or neuropsychologists in this manner, the entire protocol must be called into question". This raises my immediate concerns. Upon receiving Dr. Kay's positive report and my renewing my FAA First Class medical, I contacted the return to work center to begin a return to work (RTW) clearance. Capt. Beach advised he wasn't sure of the RTW process, but said that he would coordinate for me to return to Dr. Knippa to be retested and cleared for active duty. Needless to say, I was taken back at Capt. Beach's suggestion, that I be subjected to yet another evaluation by Dr Knippa. First, because this is not the procedure defined in Section 20. Second, and even more disconcertingly, Dr. Knippa's testing and findings were completely discredited by Cog Screen creator Dr. Kay, an AA consultant is considered the Gold Standard in Aeromedical Neuropsychological testing. His opinion is highly respected by both the FAA, NTSB and a number of Federal agencies.

I am left with no choice but to seek your assistance in this matter. My present concern lies with the closure of this matter, since this issue has lingered for nearly six months with no end in sight. At substantial expense and time, I have complied with my Chief Pilot's directive, AA Medical's instructions, and Section 20. Ultimately, I have submitted medical evidence from the leading aeromedical experts in the country, concluding that I do not have any cognitive impairments and am "fit for duty" as an airline pilot. Thus, I would sincerely appreciate your assistance in helping me return to active flying status in an expeditious manner, and help end the financial bleeding. I would like to leave it to the professionals to speak about my "Fitness for Duty". They have all stated a willingness to do so. Should you have any questions or require any further documentation, please do not hesitate to contact me. I look forward to the opportunity in the near future to visit with you in person and thank you upon returning to the Flight Academy.

Warmest Regards,

Scott Patterson,
First Officer, American Airlines
AA# 576006

cc: Dan Carey, APA Pres.,

Encl: Tabs 1-17

TABLE OF CONTENTS

| | |
|---|---|
| TAB 1 | MILITARY PHYSICAL EXAM |
| TAB 2 | PERSONAL PHYSICIAN |
| TAB 3 | AIRMAN MEDICAL FIRST CLASS 01/2016 |
| TAB 4 | REPORT OF DR. GARY G. KAY, Ph.D |
| TAB 5 | REPORT OF DR. JOHN D. HASTINGS, M.D. |
| TAB 6 | REPORT OF DR. GLENN R. CADDY, Ph.D |
| TAB 7 | AIRMAN MEDICAL FIRST CLASS 07/2016 |
| TAB 8 | LETTER CAPTAIN DAVID BRIDGES |
| TAB 9 | LETTER PATRICK CASMIR |
| TAB 10 | LETTER MISSION TO HAITI |
| TAB 11 | LETTER CAPTAIN MICHAEL DESOUSA |
| TAB 12 | LETTER F/A ROBERT "BOBBY" BURGESS |
| TAB 13 | LETTER CAPTAIN TERRI EISENBERG |
| TAB 14 | LETTER CAPTAIN ROBERT GAYLORD |
| TAB 15 | LETTER CAPTAIN MARK REDELSHEIMER |
| TAB 16 | RECOGNITION PLAQUE OBAP |
| TAB 17 | AWARD CERTIFICATE U.S. MILITARY |

AA-Patterson-0000178

# TAB 1  MILITARY PHYSICAL EXAM DOCUMENTATION
### 10/15/2015

AA-Patterson-0000179

Patterson, Rodney S.  LTC                                    xxx-xx-9922

USAR                                                          ARMY HQ, PENTAGON

---

Your next Physical Exam is due by 1/15/2017. Your current PULHES code, which impacts your medical readiness, is: 111111.

---

Medical Information On File:

| | |
|---|---|
| Physical Exam Date: | 10/15/2015 |
| PHA Next Due Date: | 1/15/2017 |

Requirement:

Soldiers will be considered deficient for this category if there is no evidence of a current physical examination as defined in AR 40-501, Paragraphs 8-19, 10-8, and 10-10.

P"- "Physical capacity or stamina" and includes criteria about an individual's fitness for their heart, respiratory system, gastrointestinal system, genitourinary system, and nervous systems as well as allergic, endocrine, metabolic and nutritional diseases, diseases of the blood and blood forming tissues, dental conditions, diseases of the breast, and other organic defects and diseases that do not fall under other specific factors of the system.

1.    Good muscular development with ability to perform maximum effort for indefinite periods.

"U"- stands for "Upper extremities" - concerning the hands, arms, shoulder girdle, and upper spine (cervical, thoracic, and upper lumbar) in regard to strength, range of motion, and general efficiency.

1.    No loss of digits or limitation of motion; no demonstrable abnormality; able to do hand to hand fighting.

"L- "Lower extremities" - concerning the feet, legs, pelvic girdle, lower back musculature, and lower spine (lower lumbar and sacral) in regard to strength, range of motion, and general efficiency.

1.    No loss of digits or limitation of motion; no demonstrable abnormality; able to perform long marches, stand over long periods. run.

"H" - "Hearing and ears" - concerning auditory acuity and disease and defects of the ear.

1.    Audiometer average level for each ear not more than 25 dB at 500, 1000, 2000 Hz with no individual level greater than 30 dB. Not over 45 dB at 4000 Hz.

"E" -"Eyes" - concerning visual acuity and diseases and defects of the eye.

1.    Uncorrected visual acuity 20/200 correctable to 20/ 20, in each eye.

S" - "Psychiatric" - concerning personality, emotional stability, and psychiatric diseases.

1.    No psychiatric pathology.

AA-Patterson-0000180

# TAB 2 PERSONAL PHYSICIAN DOCUMENTATION
## JAN 12, 2016

AA-Patterson-0000181

**Martin Dayton D.O.**

**18600 Collins Avenue**

**Sunny Isles Beach, Fl 33160**

**t. 305931 8484   f. 305 936 1849**

January 12, 2016

RE: Rodney Scott Patterson

Mr. Patterson has continued in my care since April 2015.  He has made regular visits for follow up care.

An MRI 25 SEP 2015 reveals no malignant processes in the area of his FEB, 2015 surgery.

I have examined him today, In my opinion he is capable of safely flying as a commercial airline pilot.  His medical treatment should in no way affect his mental or cognitive abilities. He appears to be in complete clinical remission.

Respectfully,

Martin Dayton D.O.

AA-Patterson-0000182

# TAB 3 AIRMAN MEDICAL FIRST CLASS

## 01/29/2016  DR. JOSEPH TORDELLA, D.O.

AA-Patterson-0000183

## CONDITIONS OF ISSUE

The holder of this certificate must:

- Have it in his or her personal possession at all times while exercising privileges of an airman certificate. (14CFR § 61.3)
- Understand that the issuance of a medical certificate by an Aviation Medical Examiner may be reversed by the FAA within 60 days. (14CFR § 67.407)
- Comply with validity standards specified for first-, second-, and third-class medical certificates. (14CFR § 61.23)
- Comply with any statement of functional, operational, and/or time limitation issued as a condition of certification. (14CFR § 67.401)
- Comply with the standards relating to prohibitions on operation during medical deficiency. (14CFR §§ 61.53, 63.19, and 65.49)

For International Operations Only: Some holders may be affected by certain international medical standards. Consult the U.S. Aeronautical Information Publication for U.S. differences with ICAO Annex 1 medical standards.

Fold Here

UNITED STATES OF AMERICA
Department of Transportation
Federal Aviation Administration

## MEDICAL CERTIFICATE FIRST CLASS

This certifies that *(Full name and address):*
RODNEY Scott PATTERSON
1092 NW 139th Terrace
PEMBROKE PINES FL 33028 USA

| Date of Birth | Height | Weight | Hair | Eyes | Sex |
|---|---|---|---|---|---|
| 11/08/1967 | 72 | 202 | BLOND | BLUE | M |

has met the medical standards prescribed in part 67, Federal Aviation Regulations, for this class of Medical Certificate.

**Limitations**
Not valid for any class after 5/31/2017.

| | |
|---|---|
| Date of Examination 01/29/2016 | Examiner's Designation No. 0Q0012719 |
| Signature | |
| Typed Name JOSEPH R TORDELLA DO | |
| AIRMAN'S SIGNATURE | |

Applicant ID: 1995161311   (3-12) Supersedes Previous Edition   Control No. 2000071196655

FAA Form 8500-9   NSN: 0052-00-670-7002

AA-Patterson-0000184

# TAB 4 REPORT OF NEUROPSYCHOLOGICAL ASSESSMENT

## 06/29/2106 DR. GARY G. KAY, Ph.D

AA-Patterson-0000185

**WASHINGTON NEUROPSYCHOLOGICAL INSTITUTE, LLC**
**4900 MASSACHUSETTS AVE, NW   SUITE 240**
**WASHINGTON, DC 20016**
PH. 202-686-7520   FAX 202-686-8802

Gary G. Kay, Ph.D., ABN
Clinical Neuropsychologist

## REPORT OF NEUROPSYCHOLOGICAL ASSESSMENT

**NAME:**       **PATTERSON**, Rodney "Scott"
**TEST DATE:**  June 29, 2016
**AGE:**        48

Scott Patterson is a 48 year old, right handed, married Caucasian male, American Airlines A319 First Officer referred by Dr. Joe Tordella for neuropsychological assessment.

## RELEVANT HISTORY:

Mr. Patterson is an American Airlines A319 First Officer with 12,000 logged flight hours. He holds a Class 1 FAA Airman Medical Certificate.

According to Mr. Patterson, his problems with his employer began during a trip to Paraguay in October 2014. Mr. Patterson was traveling with his family on vacation. As they were boarding the aircraft, Mr. Patterson helped his wife find a space (above the crew space) for a backpack that a flight attendant had said needed to be checked. This apparently created a conflict between the flight attendant and Mr. Patterson. When they landed, Mr. Patterson was informed that his family wasn't welcome to ride the shuttle to the hotel.

The flight attendant later made a formal complaint to the airline. Mr. Patterson was told to meet with Professional Standards upon his return. When Mr. Patterson met with Professional Standards he discovered that he had been accused by the Captain who had flown the trip of pointing out people for extra screening in customs. Mr. Patterson strongly denies the allegation. He decided to place Captain Glen Whitehouse, the Captain, on a list of pilots that he didn't want to fly with on future flights.

Later that month, Mr. Patterson suffered a hairline fracture of his foot on a trip to Bolivia. He remained off work until January 7th. He returned to the line and flew a few trips before finding out in February 2015 that he had a tumor (spindle cell sarcoma). He received treatment and was out of work from February through May 2015. He returned to the line in June of that year. Late in June, as he was departing on a trip, he was asked to undergo additional Customs screening in the jet bridge. Mr. Patterson believed that this was a retaliatory act. The next month he avoided taking a flight where Captain Whitehouse was in the jump seat. He received a call from Professional Standards asking if he was harassing the Captain. He was also asked if he was "smuggling guns to Bolivia." Mr. Patterson denied the allegations and informed the Captain in Professional Standards that the situation was out of control. On a subsequent flight, Mr. Patterson was again stopped, prior to a flight to Bolivia, and searched. The pilot that he was flying with was involved with Professional Standards.

Mr. Patterson continued to fly the line from June through September 15, 2015. He received an assignment to work at the White House during the Pope's visit. After not being able to reach his Chief Pilot, Mr. Patterson called the Duty Chief to request permission to take the assignment. He later discovered that the EO wasn't granted and that he was suspended by the Chief Pilot for missing his flight.

AA-Patterson-0000186

PATTERSON, Scott
Page 2

A hearing took place in November 2015 to review the incident in 2014 and the complaint made in September 2015. The hearing found no cause for discipline. Captain Whitehouse had complained that Mr. Patterson had turned him into customs for extra screening when they returned from South America in October 2014.

Mr. Patterson successfully completed transition training to the A319. In January 2016 he was informed that his case was still being investigated. In March he was sent for a fitness-for-duty evaluation to Dr. John Knippa.

Background history reveals that Mr. Patterson's parents divorced when he was 2 years of age. He subsequently lived with his grandmother. His father, an electrical engineer, remarried. He continued to maintain contact with his father who died of mesothelioma in 2004. His mother remarried when he was 9 years of age. He referred to his step-father, a chemical engineer, as "Dad". His step-father's work required frequent moves. Mr. Patterson indicated that he stayed with his grandparents and spent summers between his mother and father. He denied feeling abandoned.

Mr. Patterson attended a private high school in Camden, South Carolina. He stated that he was not sent to the school for disciplinary reasoning. He felt that the school was an excellent fit for him. He ran cross country and learned to fly. He joined the school's ROTC program when he was in junior high. Following high school Mr. Patterson enrolled in Central Piedmont Community College for 1 year. He subsequently enrolled in Appalachian State where he completed his Bachelor's degree in 1990. He continued with ROTC while in college and was commissioned in the US Army Reserves in 1989.

Mr. Patterson was called up to active duty during Desert Storm. He served as a field artillery officer for 18 months at Fort Sill. He completed his private pilot's license in the Wichita Falls area in 1991. He returned to Mecklenburg County where he joined the police department and served 3 years as a patrol officer. During his time as a police officer he was never found guilty of use of excessive force and was never required to undergo a fitness-for-duty examination. While serving in the police department he bought a share of a Cessna 172. He completed his IFR rating and took a job with an advertising design company. He entered a flight school in Macon, Georgia where he completed his commercial, CFI and CFII ratings. In 1993 he began a job with an FBO in North Carolina.

Mr. Patterson was hired by Mesa Airlines in 1997. He was promoted to Captain in 1998. He was flying a Beech 1900. He was hired by American Airlines in 2000 as a B727 Flight Engineer and was based out of Miami. After 18 months he transitioned to the B737 as a First Officer. He was furloughed from October 2004 to 2007. When he came off furlough he returned to Miami as a B737 First Officer. In 2012 Mr. Patterson transitioned to the B757 as a First Officer.

While furloughed, Mr. Patterson returned to the military, where he received an active duty reservist position with Southern Command, working as a counter-drug resource manager. In 2010 he was deployed to Haiti.

Prior to this work-related incident Mr. Patterson was never evaluated or treated by a mental health professional. He has no history of anxiety, depression, substance abuse, or anxiety-related disorders. He has been married for 25 years. He lives with his wife and two children; ages 10 and 12, in Pembroke Pines, Florida. He is a religious individual who is very active in his church. He completed and passed the screening to become a Federal Flight Deck Officer. He continues to

PATTERSON, Scott
Page 3

serve in the Reserves and has attained the rank of Lieutenant Colonel. He reported that he is in good health.

## RECORDS REVIEWED:

*Forensic Investigation Report, Dr. Glenn Ross Caddy, 7/20/16*
Dr. Caddy was hired as a "forensic behavioral science analyst and a monitor of Mr. Patterson's functioning."

Dr. Caddy stated that Dr. Knippa's conclusion that Mr. Patterson was unfit for duty was based on the "neuropsychological" components of the overall assessment. He indicates that Mr. Patterson was not found to be unfit based upon the "general psychological component of the evaluation." The history obtained by Dr. Caddy is generally consistent with the history obtained in my clinical interview of Mr. Patterson. Dr. Caddy asserts that the deficiencies reported by Dr. Knippa likely reflected; (1) Mr. Patterson's fatigue secondary to jet lag, or (2) variability in his actual level of performance. In the event that true weaknesses were found these were considered to have likely pre-existed and to have been well-compensated for by skill and experience.

Dr. Caddy interviewed a psychiatrist, Dr. Ibrahim Abi-Rafeh, who had known Mr. Patterson for over 10 years in the context of Civil Air Patrol work. Dr. Caddy states that Dr. Abi-Rafeh conducted an examination of Mr. Patterson and concluded that he was suffering a "reactive stress state [an Adjustment matter] caused by what was really a great deal of stress precipitated by the attacks" on his character. They had discussed the use of a mild tranquilizer, but Mr. Patterson chose to take nutritional agents to facilitate a calm mood and to help with his sleep.

In his evaluation of Mr. Patterson, Dr. Caddy found that the airman was "experiencing inordinate stress both initially in , and later beyond, the workplace...The stress began once Scott realized he was being targeted for allegedly having psychological or emotional or other related "problems" in the workplace." Dr. Caddy conducted a psychological assessment which included a number of self-report instruments, extensive interviewing, records review, and interviewing of collateral sources.

Dr. Caddy's DSM-5 diagnosis for Mr. Patterson is: Other Problems Related to Employment V62.29.

*Neurological Examination, John Hastings, MD, 5/28/16*
Based upon his neurological examination and review of Dr. Knippa's report, Dr. Hastings concluded that Mr. Patterson has no neurological disorder and felt that there was no need for further neurological testing. He indicated that in his opinion, Mr. Patterson is "fit to fly from a neurological standpoint."

*Neuropsychological Fitness-For-Duty Examination, John Knippa, Ph.D., 3/17/16*
The evaluation was apparently prompted by concerns regarding Mr. Patterson's judgment. Dr. Knippa was asked to assess the airman's mental and/or emotional stability. Mr. Patterson was reported to have had multiple atypical interactions with coworkers and a pattern of false/self-aggrandizing statements." No other information was provided to Dr. Knippa regarding these allegations.

Mr. Patterson was described as being on a paid leave status since 9/24/15. Dr. Knippa described Mr. Patterson as lacking some of the social distance and failing to maintain social boundaries typical of pilot interactions. In his opinion, Mr. Patterson's behavior might be interpreted by others as elitist or erudite. However, he felt that Mr. Patterson was well-meaning with a pleasant mood and showed a courteous demeanor at all times.

PATTERSON, Scott
Page 4

Dr. Knippa compared Mr. Patterson to Regional Pilot norms on CogScreen rather than to the age-group norms for Major Airline Pilots. As Dr. Knippa noted, Mr. Patterson appears to have focused on accuracy rather than speed. The LRPV score was in the Normal range. Mr. Patterson appeared to have difficulty with deductive reasoning under time pressure and also performed below average on a measure of learning and memory. Performance on conventional neuropsychological tests showed mild difficulty with a measure of perceptual reasoning and a measure of visuospatial constructional ability. Performance was normal on measures of working memory, and processing speed.

On a test of sustained attention, the TOVA, Mr. Patterson's performance deteriorated over time (i.e., after about 5 minutes). Performance was also weak on a test of verbal learning and memory. Performance on measures of executive functioning were described as below expectation.

Mr. Patterson was described as being defensive in completing the MMPI-2. Similar results were found on the PAI. The profile was described as being entirely within normal limits.

Based upon observations during the evaluation, Dr. Knippa indicated that Mr. Patterson is likely to be perceived or interpreted by others "at times as self-aggrandizing" and has having some limits in social judgment. However, he saw no evidence consistent with an aeromedically disqualifying personality disorder or other psychiatric condition. He raised the possibility of a personality disorder with narcissistic and immature features; however as he indicated this is not consistent with Mr. Patterson's occupational or social history.

Dr. Knippa interpreted the cognitive test data as consistent with an attention disorder and mild impairment of novel problem solving. He considered these abnormalities to be aeromedically significant. He concluded that Mr. Patterson was not fit for duty.

## TESTS ADMINISTERED:

CogScreen-Aeromedical Edition
Conners' Continuous Performance Test-II
Trail Making Test

## MENTAL STATUS EXAMINATION/TEST BEHAVIOR:

Mr. Patterson arrived promptly for his scheduled appointment. He was appropriately groomed and dressed. He was fully alert, oriented and cooperative. Mr. Patterson readily established good rapport with the examiner. He did not appear to be particularly anxious or depressed. He made an effort to present himself in a very favorable manner. He was proud of his accomplishments and takes credit for his efforts. There were no clinical signs of problems with attention or concentration. He was very friendly, if not a little bit overly friendly, considering the context. He readily engaged in conversation. His speech was normal in volume, rate and prosody. He had no difficulty following task instructions. He appeared to be motivated to perform at the best of his ability. The following results are considered to accurately reflect his current level of functioning.

## TEST FINDINGS:

*CogScreen-AE:*

| SPEED: | | | |
|--------|---|---------------------------------------------|------------------|
| | 1 | Score at or below the 5th percentile | 42.5 percentile |
| | 2 | Scores at or below the 15th percentile | 60th percentile |

Mr. Patterson had 1 score that was at or below the 5th percentile compared to major airline pilots his age on measures of response speed. Both his low scores were on measures of visual scanning and tracking speed (sequencing numbers - 12.5 percentile; sequencing letters - 2.5 percentile). In

AA-Patterson-0000189

PATTERSON, Scott
Page 5

contrast, on another measure of scanning and tracking speed, a version which involves following an alternating sequence of numbers and letters, he scored at the 25th percentile. His overall response speed places him at the 60th percentile compared to US Major Airline Pilot norms (ages 45-49).

| ACCURACY: | 0 | Scores at or below the 5th percentile | >45th percentile |
| | 0 | Scores at or below the 15th percentile | >85th percentile |

Mr. Patterson had no scores at or below the 15th percentile on measures of response accuracy. Overall, his response accuracy is above the 85th percentile compared to US Major Airline Pilots his age.

PROCESS MEASURES:

Mr. Patterson's only difficulty on this group of measures was on a task involving response inhibition (12.5 percentile). This was only evident under multitasking conditions. He performed well on measures of tracking, psychomotor coordination, and deductive reasoning under time pressure.

ADDITIONAL FINDINGS:

On factor analytically derived summary scores predictive of flight performance Mr. Patterson's scores are all within the expected range. This includes measures of psychomotor coordination, processing speed, working memory, deductive reasoning, memory and tracking.

Mr. Patterson's LRPV score of 0.008 is in the Normal range and suggests against the likelihood of acquired cerebral dysfunction.

*Conners' Continuous Performance Test-II*
All scores, with the exception of one were in the expected range on this measure of visual sustained attention. The one weakness was on a measure reflecting increased reaction time variability over the 15 minute duration of the task. This can reflect a mild difficulty maintaining optimal level of alertness. Mr. Patterson demonstrated good reaction time, sensitivity to target stimuli, and ability to inhibit responses to non-targets. The increased variability over time indicates that Mr. Patterson became less consistent (relative to the norm) as the test progressed. There was no other evidence of a deficiency in vigilance or attention.

*Trail Making Test:*
Mr. Patterson completed Part A of the test, sequencing numbers, in 21 seconds (with no errors). This score falls in the expected range for pilots.

On Part B of the test, following an sequence of numbers and letters, he required 31 seconds. This is an excellent level of performance on this measure of visual scanning and tracking and application of a novel sequencing rule.

On an all letter form of the Trail Making Test (Part C, a mirror image of Part A), Mr. Patterson completed the task in 21 seconds. The lack of difference in time between Part A and Trails C indicates normal (visual) processing of letters.

PATTERSON, Scott
Page 6

## SUMMARY AND RECOMMENDATIONS:

Based upon my review of records, including evaluations by Dr. Caddy and Dr. Knippa, along with
results from testing conducted on 6/29/16, and a clinical interview, Mr. Patterson appears to be
psychologically and neuropsychologically fit-for-duty as an American Airlines pilot. There is no
evidence of aeromedically significant neurocognitive deficits. Follow-up testing with CogScreen-
AE and measures of attention (including vigilance) reveal normal functioning. A mild weakness
was seen on one (isolated) measure of vigilance. Performance was normal on all other measures
of sustained attention. I agree with Dr. Caddy that poor performance on vigilance testing when
evaluated by Dr. Knippa was likely due to jet-lag related fatigue. When previously evaluated by
Dr. Knippa, Mr. Patterson had also performed poorly on a measure of deductive reasoning under
time pressure. On follow-up testing he performed well on this measure.

Dr. Caddy reported that the vigilance test administered to Mr. Patterson by Dr. Knippa was
administered in the afternoon. If this is correct, it may have contributed to the airman's poor
performance on this measure of sustained attention. Mr. Patterson's description of Dr. Knippa's
CogScreen administration, if correct, also raises concerns. Failures to follow standard
administration procedures may have contributed to the airman's weak performance. Mr.
Patterson stated that the instructions he received when tested by Dr. Knippa differed from those
he received at this evaluation.

Based upon my review of records and my own interactions with Mr. Patterson, it appears likely
that he may have some interpersonal characteristics which at times may be problematic. These are
undoubtedly longstanding personality traits which have not caused significant social or
occupational problems prior to the incidents reported above. I see no evidence in the prior
personality testing conducted by Dr. Caddy and Dr. Knippa of a mental health condition that
would cause Mr. Patterson to be unfit for duty, or which would be disqualifying for an airman
medical certificate.

Thank you for referring Mr. Patterson for neuropsychological assessment. If you have any further
questions please don't hesitate to contact me.

Gary G. Kay, Ph.D.
Clinical Neuropsychologist

AA-Patterson-0000191

# TAB 5 INDEPENDENT AEROMEDICAL NEUROLOGICAL EVAL

## 05/28/2016  DR. JOHN D. HASTINGS, M.D.

AA-Patterson-0000192

# Aerospace Neurology, LLC

### John D. Hastings, M.D.
5563 S. Lewis Avenue, Suite 100
Tulsa, Oklahoma 74105
Phone (918) 742-4100
Fax: 918-512-4846

Board Certified: Neurology
Board Certified: Aerospace Medicine

Neurological Consulting
Aerospace Medicine Consulting

May 28, 2016

Re:
Patterson Scott
D.O.B.: Nov.18.1967

### Independent Aeromedical Neurological Evaluation

I performed an office aeromedical neurological evaluation on Mr. Scott Patterson on
May.24.2015. This report is based upon the history provided by Mr. Patterson and review of
records, which include neuropsychological assessment by Dr. John Knippa. Mr. Patterson
stated that a neurological evaluation was requested by his airline employer for assessment of
his fitness to fly from a neurological perspective.

Mr. Patterson is a 48-year-old airline pilot who has served in the military for 28 years and
nearing mandatory military retirement at 29 years at the rank of Lieutenant Colonel He has
flown with American Airlines for 16 years. He reports excellent general health. He has no
history of diabetes, hypertension or heart disease. His wisdom teeth were removed in the Army
28 years ago. He has not had an appendectomy or tonsillectomy. His only other surgical history
is for removal of spindle cell sarcoma of the left chest wall, which will be discussed later in this
report. He takes no prescription medication, only supplements. He has managed cholesterol
successfully with dietary management. He has maintained first class FAA medical certification
at six month intervals.

On Dec.06.2014 Mr. Patterson was bathing his usually timid cat when he was deeply clawed in
the left pectoral area, causing significant bleeding. He cleansed the area and thought it was
healing satisfactorily. On Dec.26.2014 his wife noted a small lump in the area of the cat claw.
He saw his primary care physician on Dec.31.2014 and had serologic studies for cat scratch
fever, which were unrevealing. He discussed the lump further with a friend, a cardiovascular
surgeon from University of Miami. This led to referral and a punch biopsy that "looked like
fat." However, permanent pathology sections indicated spindle cell sarcoma, and the lesion
was treated with wide excision. Surgical margins were clear. MRI and PET studies were
unrevealing with the exception of the PET scan showing uptake at the lesion site. No radiation
or chemotherapy was felt indicated and none was instituted. The FAA Aerospace Medical
Certification Division was informed, and Mr. Patterson received special issuance medical
certification. He returned to work on May.31.2016. Mr. Patterson is followed at intervals of
several months by his physician, Dr. Dayton.

In September 2015 Mr. Patterson stated he was called upon for military duty associated with
the visit of Pope Francis to the United States. He called for permission to be relieved of airline
duties related to military duty. He reported some communication difficulties in accomplishing

AA-Patterson-0000193

this, but stated he did receive approval. He states he was later notified of an issue related to problems with a flight attendant in October 2014 on a flight with his family to Paraguay. Eventually this involved a "Section 20" procedure. Mr. Patterson was referred for neuropsychological assessment to Dr. John Knippa in Long Beach, California. Dr. Knippa's report was sent to the airline, and Mr. Patterson was reported not fit for duty. Mr. Patterson stated that he was later directed to undergo repeat neuropsychological assessment, oncology evaluation and neurological evaluation. Though I do not have specific records requesting neurological evaluation, it appears that performance on neuropsychological assessment led to a recommendation for neurologic evaluation.

Mr. Patterson has no history of seizures, febrile or otherwise and there is no family history of seizures. He has no history of remote neurological insult such as significant head injury, skull fracture or traumatic brain injury. There is no history to suggest neurologic difficulty in perinatal period, infancy, childhood, adolescence or in adult life. Mr. Patterson denied any neurological symptoms on full neurologic inventory. Specifically, he denied a history of headache, nausea, vomiting, double vision, blurred vision, loss of vision, hearing loss, tinnitus, facial numbness, change in sense of smell or taste, problems with speech or swallowing, neck pain, difficulty with balance, coordination, or walking, numbness or tingling of the extremities, weakness of the extremities, or bladder or bowel symptoms. There is no history of difficulty with memory, thinking, or concentration.

Neurological examination revealed normal gait and station. Heel and toe walking, balance on either foot, and hop on either foot were normal. Alternate motion rate in the feet was normal. Arm swing was normal. Rhomberg was normal and there was no drift or pronation. Tandem walking was normal.

Cranial nerve examination revealed intact visual fields. Ocular movements were normal. The pupils were equal and reactive, and the fundi were normal. Hearing was intact and facial symmetry preserved. Uvula and tongue were midline and speech was normal. Neck motions were normal and there were no bruits.

Coordination and alternate motion rate was normal in all four extremities. The deep tendon reflexes were equal and symmetrical with no pathologic reflexes being elicited. Muscle strength was normal without atrophy or fasciculation. Sensory examination including two-point discrimination, position sense, and vibratory sensation was within normal limits.

A Montreal Cognitive Assessment (MoCA) test was performed. This includes assessment of visuospatial, executive, naming, memory, attention, language, abstraction, and delayed recall and orientation functions. Mr. Patterson scored a normal 29/30 points (normal $\geq$ 26-30 points). He recalled the word "daisy" with cued recall, with all other responses being correct.

I reviewed the Dr. Knippa's report of neuropsychological assessment, which included the FAA Core Test Battery items. CogScreen Aeromedical Edition and traditional pencil and paper assessment instruments were performed. Dr. Knippa opined that Mr. Patterson was not fit for duty. Dr. Knippa opined that some scores on test instruments were not commensurate with typical pilot normative data. I carefully reviewed Dr. Knippa's report, in which I do not find evidence to suggest neurologically based impairment in neuropsychological function including personality, behavior intellect or memory.

Based upon the history, neurologic examination and review of Dr. Knippa's report, my professional medical opinions are as follows:

- By history and neurological examination, there is no neurological disorder evident. I find him neurologically intact and whole.

2

AA-Patterson-0000194

- There is no indication by history, examination and review of medical records indicating a need for further neurological testing. There is no sound medical indication for studies such as brain imaging studies, electroencephalogram or other neurologic studies.
- It is my professional medical opinion that Mr. Patterson poses no risk to aviation safety and that he is fit to fly from a neurological standpoint.

I am prepared to answer any questions or discuss any aspect of Mr. Patterson's neurologic status and fitness to fly.

Sincerely,

John D. Hastings, M.D.

3

# TAB 6 EXECUTIVE SUMMARY OF FINDINGS AND ASSESSMENT

## 08/17/2016 DR. GLENN R. CADDY, Ph.D

AA-Patterson-0000196

**GLENN ROSS CADDY, Ph.D., P.A.**

·Clinical Psychology·Forensic Psychology·Neuropsychology·Behavioral Medicine·Corporate Coaching·

Fellow Academy of Clinical Psychology
Diplomate in Clinical Psychology, American Board of Professional Psychology
Diplomate and Fellow, American Board of Forensic Examiners in Psychology
Fellow, Professional Academy of Custody Examinations

Fellow American Psychological Association
Diplomate and Fellow, American Academy of Behavioral Psychology
Diplomate American Board of Sexology
Certified Parenting Coordinator

August 17, 2017

### Re: FO Rodney Scott Patterson, 576006, Executive Summary of Findings and Assessment

In March 2016, by referral, I accepted this case to forensically exam the issues leading up to and including the report issued by Dr. John Knippa, Ph.D. the so-called Independent Medical Examiner for American Airlines, Inc.  Further I was tasked with monitoring Mr. Patterson's status and as such a developed a report of findings.

As a result of my extensive work, I find myself in fundamental disagreement with the impressions and findings of Dr. Knippa. After more than ninety hours of review of all the record data in this case, a very comprehensive forensic level of examination and investigation of FO Patterson, including collateral investigations of a number of people who know Scott particularly well [including both friends, American Airlines senior Captains, several of Scott's Military colleagues [at significant rank] and his family and several friends I investigated many of the claims inferred from what I came to view as the unsupportable and inaccurate assertions of the various hearsay opinions seen in the document developed by an AA Captain, that was directed against FO Patterson. I also noted critical flaws in the interpretations and methodology, and therefore, inevitably, the findings of Dr. John Knippa. [Without going into detail on the multiple issues of failure here, let me just make the point that Dr. Knippa unwisely undertook a comprehensive neuropsychological examination of Scott Patterson when the examinee had not had any time to acclimatize [rebalance his circadian rhythm] after flying across three time zones to California to then undergo two strenuous days of testing, including neuropsychological testing. But the errors did not stop there for Dr. Knippa thereafter employed inappropriate norms in reaching his opinion of Scott Patterson being "Not Fit for Duty".

After consultation with FO Patterson's AME, I referred Scott to the extremely experienced and widely known Neuropsychologist, Gary G. Kay, Ph.D., for a third opinion regarding Scott Patterson. Dr. Kay was responsible for the development of the CogScreen-AE, the single most valid neuropsychological measure of neuropsychological impairment in the assessment of pilots. Dr. Kay has performed a vast number of AA Section 20 Medical Evaluations. He examined FO Patterson, within Scott's own time zone and concluded: "Based upon a review of the records, including evaluations by Dr. Caddy and Dr. Knippa, along with results from testing conducted on 6/29/2016 and a clinical interview. ***Mr. Patterson appears to be psychologically and neuropsychologically, <u>FIT FOR DUTY,</u> as an American Airlines Pilot.***

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

1

AA-Patterson-0000197

FO Patterson was re-issued his **First Class Medical Certificate** by Dr. Joe Tordella, D.O. AME on July 1, 2016. Seven [7] medical professionals have opined affirmatively about Scott's medical present health and mental status. He does not have nor has he ever had any condition, medical, psychological or neuropsychological, which would preclude him from serving as an American Airlines pilot using the standard of a first class medical.

I served for more than fifteen years as the Consulting Psychologist for United Airlines at their crew base in Miami. I have more than 35 years' experience as an expert in the addictive behavioral and multiple other specialty fields. FO Patterson clearly has no substance abuse or addictive behaviors whatsoever. In fact, he simply does not use alcohol and has not done so for many years as he just does not enjoy doing so.

My research and work span many hours of contact with Patterson and with substantial additional time with collateral source reviews allowed me to get this issue right and establish a forensic level of proof thereto. I am in disagreement with Dr. Knippa for several reasons to include: AA flew Patterson 2,500 miles to a Neuropsychological exam in California and 3 hours out of sync with his circadian rhythm. Within 14 hours of him landing in California and with less than seven [7] hours sleep, Dr. Knippa performed some 16 hours of intensive testing on him. I have spoken with a number of AA pilots and have learned that AA places a great deal of emphasis on fatigue risk mitigation.  In fact according to the Joint Collective Bargaining Agreement, pilots are limited to 4 hours of simulator training per day due to the intense cognitive environment. In this case the procedure appears foolishly loaded against FO Patterson from the outset. And yet the errors did not stop there.

Further when a mental health evaluation of an airman is requested, the quality of the report must be of the highest caliber; it must be accurate and meet standards that would be defensible in a court of law. A Montana judicial official ruled that Dr. Knippa's work was deficient in a Workman's Compensation case, since Knippa relied on hearsay and his opinion differed from all of the other medical professionals involved in the case. In the case of Scott, Knippa appears to have followed through with error and innuendo resulting in a faulty compromised determination.

Dr. Knippa was fully aware of the time, distance and travel involved with going to California to undergo Neuropsychological testing. He should not have permitted himself to be a party to such an arrangement, contrary to practice and even his ethical principles. The work of Dr. Knippa ends up with innuendo of maybe something wrong functionally [i.e. some possible inference of a personality matter] but with no clear indication, and yet persistent innuendo. Not good practice, in fact, blatantly inappropriate. Then the innuendo in Dr. Knippa's report moves to a possible ADHD inference but again Dr. Knippa cannot clearly establish a basis for this inference either, but he never gives up on it [he does not reject the inference]. Already here, the willingness to persist in this land of weak and invalid inference compromises Dr. Knippa substantially. He also does nothing to bring this inference to some conclusion and he cannot for he does no collateral review.

With this professional compromise not cleanly done away with Dr. Knippa then turns the neuropsychological realm and finally, he develops some very weak and very compromised data

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

2

AA-Patterson-0000198

[creating a rationale] for a recommendation to terminate FO Patterson. This is not right ethically, and in my opinion, it was more than just very poor science, it was sadly professionally compromising. In fact Dr. Knippa administered the test of sustained attention at a time of day [given Scott's circadian status] that appears to have been entirely inappropriate for such testing. Much later, Dr. Gary Kay advised FO Patterson during his testing session, that Dr. Knippa's examination appears not to have followed Dr. Kay's protocols for the CogScreen-AE and thus we have the faulty reporting by Dr. Knippa with compromised results.

In fact if any carrier uses this sort of protocol and uses neuropsychology or neuropsychologists in this manner, the entire protocol must be called into question and that too would be wrong. I do not mean that neuropsychology offers nothing here, of course it does. But neither the testing nor the terms of its application should be compromised to produce the sort of compromise and inferential chaos in the work life of a very experienced pilot with never a failure or the inference thereof in any aspect of his flight skills. This matter was all about an eleven-month vendetta by a Captain to damage FO Patterson. It involved no neuropsychological implications until someone in A.A. had the idea of sending Scott Patterson to do that two- day Aeromedical Psychological Assessment. Dr. Kay followed strict correct protocols during his testing which revealed quite different results than did the work of Dr. Knippa.

It is my opinion that a number of parties did a poor job in handling this entire matter. It appears there was essentially a non-existent [extremely superficial] investigation and then a Section 21 hearing and that did not result in anything beyond a slap on the wrist for FO Patterson, and somewhat of a rebuke for the Captain. Yet the Captain's submission, unscientific and toxic and damaging to FO Patterson's reputation as it was, persisted.

In reality what happened was nothing more initially than a minor conflict between these two men, but in an ineffective environment it became an uncontrolled "warlock hunt" by the Captain, that was apparently found tolerable and at some level even taken it up. This matter, had it been handled properly, could have been dealt with by the Wingman Program or APA Professional Standards. In fact, Captain Shellhouse advised me that the Miami flight office, intended to pull the issue back into the flight office and then have the matter dealt with by competent professional standards personnel. Apparently the outcome of the section 21 hearing was not enough, so they chose to send Patterson to a mental health exam. The Wingman Program and Professional Standards would very likely have produced a far different and more cost effective and rational result than the referral to a California neuropsychologist produced. In fact, I believe the real perpetrator here was the Captain, whose handling of the matter smacks of arrogance, or at least incredibly poor judgment, in that he set out to systematically collect rumor, innuendo, misinformation [even to the point of the absurd], and the occasional legitimate fact, against a co-worker, for reasons no doubt he understands, but his actions seem to have a strong payback component [for Scott Patterson bluntly telling him that he did not wish to fly with him again]. This entire matter would seem to be much more compromising to the Captain than it should have been to Scott Patterson, but perhaps politics being what they are at A.A., it did not.

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

3

AA-Patterson-0000199

Soon after Scott Patterson received the notice of him not being Fit For Duty status, Patterson contacted Ibrahim Abi-Rafeh M.D., a psychiatrist in Hollywood, Florida. Dr. Abi-Rafeh, a commercially rated pilot, saw Patterson for over five [5] hours, examined him, and reviewed the Dr. Knippa report.  Dr. Abi-Rafeh has known Patterson for well over 10 years in the context of the Civil Air Patrol work they both do.  I interviewed Dr. Abi-Rafeh and he told me that his professional opinion regarding Scott was that, "He was experiencing stress induced adjustment issues but that he was a very well adjusted and mentally strong person and that he *really did not need any therapeutic support or medication*".

Dr. Martin Dayton, D.O., Scott's physician has also examined him on a number of occasions prior to and subsequent to Dr. Knippa's evaluation. According to Dr. Dayton, Patterson was never prescribed any psychotropic medication nor is he currently undergoing any treatment that would impact his psychological or mental capability. *Patterson is fully capable of serving as a commercial airline pilot.*

In October 2015, Lt. Colonel Patterson was directed to undergo a complete pre-deployment physical for the US Army. He was found by the physician upon examination, fully capable and was classified as a PULHES of 1-1-1-1-1-1. The physical profile factor "1" [the picket fence of "1" is perfect health and he was seen as "*Fit for Deployment*".

May 23, 2016, based on my recommendation [and that of Dr. Tordella], Scott flew to Tulsa, OK and saw Dr. John Hastings, an aviation neurologist. Hastings has been in practice for 37 years and the FAA recognizes him as a leader in Aviation Neurology. Hastings examined Scott and determined that *he was fully intact from a neurological viewpoint and that no further testing or studies were medically indicated or required. Scott poses no risk to aviation safety and is fit to fly from a neurological standpoint.*

Dr. Gary G. Kay is the leading aviation neuropsychologist and expert in his field. Scott saw him in a clinical setting on 6/29/2016. I believed the work of Knippa was inaccurate and sadly it was compromised. Hence, it was sensible for Scott to undergo an evaluation with the well-known Neuropsychologist Kay.

In the course of Dr. Kay's examination of FO Patterson he noted that Dr. Knippa had compared Scott on the CogScreen AE to Regional Airline Pilot norms rather than to the age-group norms available for pilots of the Major Airlines. In other words, Dr. Knippa erred, intentionally or otherwise, but the net effect was that the data was skewed and this produced a result [or interpretation] that was scientifically compromised.  In the light of the previous assertions

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

4

AA-Patterson-0000200

regarding fatigue, and then the seemingly endless effort to find Scott Patterson to be somehow impaired, this appears to be one more cog in the wheel of developing a rationale to terminate Patterson, but all based on faulty psychological interpretations of the data examined. Clearly this error has further compromised Dr. Knippa's findings and the opinions related thereto. It is also asserted that during Dr. Kay's examination of Scott that Knippa appears to have further failed to properly administer the Cog Screen AE to Patterson according to standardized procedures which raises serious concerns.

Dr. Kay noted FO Patterson to be, as Dr. Knippa has presented him, and surely too as I saw him: he was prompt for his appointments, well-groomed and dressed, oriented and co-operative. He readily established good rapport, he was neither anxious nor depressed, and he sought to present himself in a favorable light. There were no signs of inattention or lack of concentration. His speech was normal in volume, rate and prosody.

On the CogScreen AE, Dr. Kay found Scott to be in the 60th percentile on measures of speed and at the 85th percentile on accuracy. *All the measures on this instrument were within the normal range for people in his field and age range*.

On a test of sustained attention, Scott was noted to show good reaction time, sensitivity to target stimuli and adaptability to inhibit responses to non-target. *There was no other evidence on this test of a deficiency in vigilance or attention*. Thus many of the meanderings of Knippa's report are further discarded as simply wrong.

Likewise, Scott's performance on the Trail Making Test A, B, C showed good performance and *was well within the range expected of pilots his age*.

With countless hours of contact, evaluation and testing of FO Patterson and seeking out multiple collateral contacts, including A.A. Captains who routinely fly with and know Scott Patterson well, and also military colleagues, I and a total of six other medical professionals have determined that Scott has no condition which would limit or impair his ability to act as a pilot under 14CFR Part 67. He does not require any further counseling or treatment to assist him with re-integrating back into the flight deck. It would be meaningless and abusively inappropriate to study or examine his background or anything else any further.

American has sent many pilots for Section 20 evaluations to Dr. Kay who is seen as an impartial and professional evaluator. Having spoken to a number of people who know Scott inside AA and outside the company, he is a well-respected person with good morals and values. A typical military officer, Scott would not have progressed through the military and at a significant rank while hiding some underlying personality or learning disorder. *Based on my professional opinion and those of other medical professionals, Patterson is fully capable of safely flying a commercial aircraft and he poses no risk to the flying public. Dr. Kay, Dr Tordella, Dr Hastings, Dr. Dayton and I fully agree, Mr. Patterson has no condition which would disqualify him from holding a First Class Medical. Had Dr. Knippa conducted his examination in accordance with stricter controls and adherence to established procedures, his results would have put Scott far more in line with all of the other pilots his age.*

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

5

AA-Patterson-0000201

There is no logical, scientific, medical or psychological reason to further withhold him from flight status or to penalize/discipline him based on the IME's faulty assertions or the innuendo of the Captain. FO Patterson should be returned to flight status immediately. I have recommended several takeaways and am in agreement with Dr. Kay. Namely, Scott should be trained in another aircraft to remove the potential of him possibly being in contact with the Captain or his cohorts.

Mr. Patterson has continuously held a First Class Medical Certificate and was re-issued on 1 July, 2016. I am of the firm belief that he does not require any further treatment. He does not wish to have contact with the Captain or his Cohorts and has remained faithfully diligent to return to work.

I am available and will gladly answer any questions you have regarding this matter and Mr. Patterson's fitness to fly as a pilot for American Airlines.

Respectfully submitted,

Glenn Ross Caddy, Ph.D., A.B.P.P., F.A.A.C.P., F.I.A.B.M., F.A.P.A.
Board Certified in Clinical and Forensic Psychology and Behavioral Medicine

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

6

AA-Patterson-0000202

TAB 7 AIRMAN MEDICAL FIRST CLASS

07/01/2016  DR. JOSEPH TORDELLA, D.O.

AA-Patterson-0000203

## CONDITIONS OF ISSUE

The holder of this certificate must:

- Have it in his or her personal possession at all times while exercising privileges of an airman certificate. (14CFR § 61.3)
- Understand that the issuance of a medical certificate by an Aviation Medical Examiner may be reversed by the FAA within 60 days. (14CFR § 67.407)
- Comply with validity standards specified for first-, second-, and third-class medical certificates. (14CFR § 61.23)
- Comply with any statement of functional, operational, and/or time limitation issued as a condition of certification. (14CFR § 67.401)
- Comply with the standards relating to prohibitions on operation during medical deficiency. (14CFR §§ 61.53, 63.19, and 65.49)

For International Operations Only: Some holders may be affected by certain international medical standards. Consult the U.S. Aeronautical Information Publication for U.S. differences with ICAO Annex 1 medical standards.

Fold Here

---

UNITED STATES OF AMERICA
**Department of Transportation**
Federal Aviation Administration

## MEDICAL CERTIFICATE FIRST CLASS

This certifies that *(Full name and address)*:

RODNEY Scott PATTERSON
1092 NW 139th Terrace
PEMBROKE PINES NC 33028 USA

| Date of Birth | Height | Weight | Hair | Eyes | Sex |
|---|---|---|---|---|---|
| 11/08/1967 | 72 | 205 | BLOND | BLUE | M |

has met the medical standards prescribed in part 67, Federal Aviation Regulations, for this class of Medical Certificate.

Not valid for any class after 1/31/2017.

**Limitations**

| | |
|---|---|
| **Examiner** | Date of Examination 07/01/2016 | Examiner's Designation No. 0000012719 |

Signature

Typed Name JOSEPH PORDELLA, DO

AIRMAN'S SIGNATURE *Rodney-Scott Patton*

Applicant ID: 1995161311    Control No.: 20000740D105    NSN: 0052-00-670-7002

FAA Form 8500-9 (8-12) Supersedes Previous Edition

AA-Patterson-0000204

# TAB 8 LETTER OF REFERENCE CAPTAIN DAVID BRIDGES

### 12/03/2015

AA-Patterson-0000205

From: David L. Bridges <daveyblloyd@yahoo.com>
To: GdShellhouse <GdShellhouse@gmail.com>

Subject: Letter for Scott Patterson.
Date: Thu, Dec 3, 2015 2:04 pm

Captain David Bridges
8380 Southwest 74th Place
Gainesville, FL 32608

30 November, 2015

Captain Shellhouse:

I met Scott Patterson in 1999, who was a Captain for Air Midwest Airlines. He was also the Director of Pilot Recruitment in Parkersburg, WV. His position was an important one in that he was determining the course of our airline for years to come by hiring quality pilots to be captains.

My situation was a bit unique. I had just resigned from Great Lakes Airlines after being an FO for 11 months. A particular check pilot who felt as though it was okay to have black pilots in the right seat but not in the left seat was responsible for me not getting my type rating and a captain's bid at Great Lakes. I felt being a minority played a key role in how a check-ride was administered and the level of scrutiny.

I met Patterson through the Professional Pilot Development Program of the Organization of Black Airline Pilots, (Now Organization of Black Aerospace Professionals). He invited me to Parkersburg and even sent me an airline ticket on US Airways so I could get to the interview. I met him at the airport following the flight in and he invited me out for dinner. Little did I suspect I was actually being interviewed for a job at Air Midwest. Following dinner he asked me if I would like to take a written test. I passed with flying colors.

Following the test administration he informed me I was successful and Air Midwest would be tendering me an offer of employment. After being stigmatized by a check airman, Patterson really brought my faith up in the industry and people in general. Had it not been for his concern and willingness to listen I probably would have had difficulties finding work as an airline pilot.

Once I finished training with Air Midwest, I had a number of opportunities to interact with him on a professional level as well as socially outside of work. He was genuinely concerned for his fellow man and always mentored the junior first officers who would later become captains. Six months later I upgraded to captain on the 1900. Patterson saw the value I brought to the company and based on his diversity efforts we were able to bring many OBAP members to Air Midwest.

I am grateful to have known Scott Patterson these many years. He is an esteemed colleague and a genuine person. I place complete confidence in his piloting skills and abilities. I would have no issues knowing he was

AA-Patterson-0000206

flying an airplane my family was on.

Please feel free to contact me should you have any questions.  (814) 591 8129

Sincerely,

David Bridges,
Captain B747-400 Kalitta Air

Sent from my iPhone

12/15/2015 12:12 PM

AA-Patterson-0000207

## TAB 9 LETTER OF REFERENCE PATRICK CASMIR

11/25/2015

AA-Patterson-0000208



**by Google**

Danny Shellhouse <gdshellhouse@g...

## Fwd: Re: Lettter

Wed, Nov 25, 2015 at 9:53 PM

To: gdshellhouse@gmail.com

-------- Original message --------
From: Patrick Casimir <patrickcasimir@msn.com>
Date: 11/25/2015 7:07 PM (GMT-05:00)

Subject: Re: Lettter

Good evening Mr. Shellhouse,

My name is Patrick Casimir, Operational Supervisor in MIA. Please accept this letter of reference for First Officer Scott Patterson. I have known him since after the earthquake in Haiti. I work many of our Port Au Prince flights and have had him as a crew member and pass traveler to Haiti. I always find him to be positive, respectful and joyous when he interacts with me, and others.

Scott, is always willing to help to the passengers to find their way to the gate to ensure they get to the right place and don't miss their flight.

The Haiti flights are always challenging to get out on time. It is a pleasure to work with pilots such as Scott who know what we go through and need to make it happen.

Scott can be rushing to his next gate, or anywhere in the airport, he will always stop to say hello. I don't think I have ever seen anything but a smile on Scott's face. I truly like his love of life, helping others, and positive attitude.

One day he came to non rev with his daughter to Haiti. I was so impressed how he was talking so nice about Haiti and the people of the country to her. She even learned some words in Kreyol.

If there is anything further I can do, please feel free to contact me,

AA-Patterson-0000209

TAB 10 LETTER OF REFERENCE MISSION TO HAITI

11/18/2015

AA-Patterson-0000210



# Mission to Haiti

*"Where there is no vision, the people perish ..." Proverbs 29:18*

November 18, 2015

**Board of Directors**

William J. Nealey, Jr.
Executive Director
Miami, Florida

William J. Nealey, Sr.
Associate Director
Hialeah, Florida

Ruth Justus
Secretary
Middletown, Virginia

Daniel Mallory
Treasurer
Hong Kong, China

Robert Andrews, PhD
Miami, Florida

John Bollinger
Fayetteville, Arkansas

Carlos Corrales
Miami, Florida

Dale Gupton
Springdale, Arkansas

Bryan Den Hartog, MD
Des Moines, Iowa

Jason Hartzell
Plantation, Florida

Georgina Hopper
Plano, Texas

James Howard
Whittier, North Carolina

Gary Johnson, PhD
Miami, Florida

Christopher Webb
Miramar, Florida

To Whom It May Concern:
Scott Patterson

After the great earthquake struck Haiti in 2010, one of the first persons to arrive on the scene to help evacuate our mission team was Lt. Colonel Scott Patterson.

The mission team who came to help the poor people of Haiti had arrived just a few hours before the earthquake struck. Fortunately, about half of the team of 48 people was medical personnel.

Once all the medical supplies were exhausted, it was necessary to evacuate the stranded team to the United States. Colonel Patterson was called up by U. S. Southern Command to help organize relief in the devastated country. One of his first acts was to make arrangements to fly the team back to the United States.

Colonel Patterson has continued to return multiple times to help rebuild the devastated country. He has our utmost respect for the help he has extended to the poor people of Haiti.

Scott and his wife Roxana sponsor a Haitian child allowing him to attend school and receive an education.

Most Respectfully,

William J. Nealey, Sr.
Associate Director
Mission To Haiti

*Established 1981*

PO Box 523157 Miami, Florida 33152-3157 • (305) 823-7516 • info@missiontohaiti.org
www.missiontohaiti.org

# TAB 11 LETTER OF REFERENCE CAPTAIN MICHAEL DESOUSA

## 11/20/2015

AA-Patterson-0000212

Michael Desousa
Captain, A320 MIA INTL

20 November, 2015

To Whom It May Concern:

I have had the great pleasure of flying with First Officer Patterson on my crews as both FO and FB. We have operated into very demanding situations such as La Paz, Bolivia and also into Lima, Peru where the weather was challenging.

Patterson is a professional to say the least. I have observed him operate both in and out of the flight deck. He has earned the respect of his colleagues and peers. On my flights he is always backing the captain up and offering help when required.

With our customers and agents he has been very polite and courteous. Patterson is an officer in the military so he is accustomed to being a dignified person.

I look forward to the day when we can fly together as his conversations were delightful and encouraging.

I am available for comments or questions should they arise.

v/r

Michael Desousa
Captain, A320

AA-Patterson-0000213

# TAB 12 LETTER OF REFERENCE F/A ROBERT "BOBBY" BURGESS
## 11/19/2015

AA-Patterson-0000214

Robert Burgess
IMA INTL

11-19-2015

To Whom It May Concern:

I am pleased to provide this letter of reference for First Officer Scott Patterson.  I have known him since 2000 when he came to American as a flight engineer.

Scott has always impressed me as a stand-up kind of person you could talk to and really cared about other people.  Having flown with him a number of times, he exhibits a professionalism and demeanor I wish a lot more people would emulate.  He is on the homeowner's board in our neighborhood and I often seek out his advice when dealing with the management company which can be on the strict side.

Working flights, he is an absolute pleasure to be around, He puts others first before himself and I have seen him operate as a true gentleman with the flight attendants I worked with.

I would be happy to convey more since a letter of this magnitude cannot really provide enough words to give a clear picture of him.

Please call me should have more questions

V/r

Robert "Bobby" Burgess

AA-Patterson-0000215

TAB 13 LETTER OF REFERENCE CAPTAIN TERRI EISENBERG

11/20/2015 (VIA EMAIL)

AA-Patterson-0000216

I was the Pilot in Command of flight 922 from Miami to La Paz, Bolivia on or about 01/24/2014.

FO Scott Patterson, 576006, was the FO of record during the flight. I took the last break and left standard instructions for the conduct of the flight in my absence. I did brief there was a great deal of weather along our route of flight and to remain alert for the weather.

When I returned from break, FO Patterson informed me that they had deviated to the east due to a report of severe weather along our route of flight reported by the dispatcher.

Upon careful consideration of our alternatives, I determined we should divert the aircraft to Santa Cruz in lieu of attempting to press on through bad weather to La Paz. I instructed Patterson to send a message via ACARS to the dispatcher. He complied and we received clearance to divert.

In my opinion, FO Patterson acted in a manner which was consistent with American Airlines policies and procedures and kept the aircraft safe during my absence. We conducted a flawless approach and landing to minimums in Santa Cruz. At no time did I ever consider my two FO's acted outside of the scope of responsibility required of them.

Due to the extensive wait for favorable weather and time involved with flying from Santa Cruz to La Paz, the entire crew was too fatigued to safely conduct the flight and informed the crew tracker of such. At the layover hotel, I procured a photo the weather on radar. It would have been ill advised for FO Patterson to have attempted to penetrate that weather on the flight plan route.

Terri Eisenberg, Captain 767, International

# TAB 14 LETTER OF REFERENCE CAPTAIN ROBERT GAYLORD

11/20/2015

AA-Patterson-0000218

To Whom It May Concern,

I, Captain Robert Gaylord, Employee number 052678, have flown with First Officer Scott Patterson and found him to be a competent, professional airline pilot and would gladly fly with him in the future and would have no problem with him flying any of my family members to any destination.

Robert C. Gaylord
Captain, 767 Miami

AA-Patterson-0000219

## TAB 15 LETTER OF REFERENCE CAPTAIN MARK REDELSHEIMER

11/17/2015

AA-Patterson-0000220

November 17, 2015

To Whom It May Concern:

My name is Captain Mark Redelsheimer and I am a Boeing 767 International Captain with American based in Miami. It is with great pleasure that I write this letter of recommendation for First Officer R. Scott Patterson.

I have flown with First Officer Patterson on a number of occasions. Namely in October, 2014 I was on a sequence with him to Santa Cruz, Bolivia. While on the layover a vehicle ran a stop light and almost struck him. He telephoned me and asked for my assistance. Although he appeared in much pain and was seen by a physician. Patterson's resolve was to not inconvenience the passengers and crew since we did not have a FB on the flights at that time.

As the captain I felt it proper to take him to a proper medical facility and to have him treated before flying to Miami. He complied with my wishes and we later determined he would not be going to Miami on that flight.

During my time with Scott, I have noted that he is both proficient and a dedicated professional American Airlines pilot. He follows standard American procedures to the letter. Fellow crewmembers on both sides of the cockpit door respect him and he is an enhancement to the crews.

I have no doubt in my mind that he possesses the skills and abilities necessary to lead a safe and effective flight when it is his turn. He has always had kind words for the agents, mechanics and ground crew alike. I have never seen him place his needs above those of the other crew.

It was a real pleasure flying with him and he was missed on a recent flight to Chile after he returned to active flying in June 2015. I look forward to flying with him again in the near future.

Sincerely,

Captain Mark Redelsheimer

B767 INTL, MIA

AA-Patterson-0000221



# RAISING HORIZONS™

## RODNEY PATTERSON

### CAPTAIN
### AIR MIDWEST
### DECEMBER 1998

AA-Patterson-0000222

# TAB 17  DEFENSE MERITORIOUS SERVICE MEDAL

01/16/2009

AA-Patterson-0000223



# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

THIS IS TO CERTIFY THAT
THE SECRETARY OF DEFENSE
HAS AUTHORIZED THE AWARD OF THE

# DEFENSE MERITORIOUS SERVICE MEDAL

TO

LIEUTENANT COLONEL RODNEY S. PATTERSON, UNITED STATES ARMY

FOR

EXCEPTIONALLY MERITORIOUS SERVICE
FOR THE ARMED FORCES OF THE UNITED STATES

GIVEN UNDER MY HAND THIS   16TH   DAY OF   JANUARY   2009



DAVID J. GARZA
Brigadier General, U. S. Marine Corps
Chief of Staff, U. S. Southern Command

SECRETARY OF DEFENSE

UNITED STATES SOUTHERN COMMAND
COMMAND OR OFFICE

DD FORM 2412, MAY 1999

AA-Patterson-0000224