UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

    Defendant.
_____/

**AMERICAN AIRLINES, INC.'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant American Airlines, Inc. ("American") respectfully submits this response in opposition to Plaintiff Rodney Scott Patterson's ("Plaintiff's") Corrected Rule 56 Motion for Partial Summary Judgment (the "Motion"), ECF No. 68.

## INTRODUCTION

Plaintiff (a pilot for American) claims that American violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA") when it withheld him from duty and sent him for a fitness for duty examination.[1]  In light of the undisputed facts, Plaintiff's motion for summary judgment appears to be nothing more than a misguided attempt to distract from a record

---

[1] The relevant facts are set forth in American's Motion for Summary Judgment, ECF No. 59, and accompanying Statement of Undisputed Material Facts ("American's SMF"), ECF No. 59-1, and in American's attached Response in Opposition to Plaintiff' Statement of Material Facts (American's "RSMF"), which are incorporated by reference.  Given its prior filings, American only provides this brief summary here.

1

that overwhelmingly supports granting summary judgment on behalf of American. The undisputed are that:

- American has never denied Plaintiff military leave during his 15-plus years working at American, nor has Plaintiff previously ever had any issue taking military leave at American. (RSMF at ¶ 27.)

- Besides Plaintiff, in 2015 alone, American granted 122 Miami-based pilots more than 1,500 military leaves of absence. (*Id.* at ¶ 26.)

- The time off for which Plaintiff claims American discriminated/retaliated against him did not even involve active military duty. (*Id.* at ¶ 27.) Rather, Plaintiff requested an "EO"—a category of vacation unrelated to military leave that pilots can request for any reason and is in American's complete discretion to grant or deny—which American in fact granted. (*Id*. at ¶¶ 3–6.)

- On September 24, 2015, a long-term Captain at American filed a formal complaint containing detailed allegations of erratic and concerning behavior by Plaintiff. (*Id.* at ¶ 12.) The Captain stated in his complaint that he was seeking redress for "the work-related harassment" by Plaintiff. (*Id.*)

- "But for" that complaint, American would not have withheld Plaintiff from duty. (*Id.* at ¶ 14.)

- During American's investigation, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" and "multiple employees" stated that their interactions with Plaintiff "led them to question his ability to operate the aircraft safely." (*Id*.)

2

- After receiving the investigation report wherein several employees raised issues regarding Plaintiff's ability safely to perform his job, American referred Plaintiff to an independent neuropsychologist for a fitness for duty examination, in accordance with the governing collective bargaining agreement. (*Id.* at ¶¶ 13.)

- Following a two-day examination, the neuropsychologist found Plaintiff not fit to operate passenger aircraft. (*Id.* at ¶ 17.)

- Since that time, Plaintiff has refused to return to the neuropsychologist (or another comparable doctor approved by American) for reevaluation, and thus remains on leave. (*Id.* at ¶¶ 19, 21.)

Despite this mountain of evidence confirming that American did exactly what any commercial airline should and would do to ensure the safety of the flying public—and that its actions had absolutely nothing to do with Plaintiff's military status—Plaintiff asks this Court to grant him summary judgment and order his immediate reinstatement as a pilot. In arguing his motion, Plaintiff simply ignores that it is his burden to establish a prima facie case under USERRA, and presumes that he has done so. He has not and cannot. Nor can he refute the overwhelming evidence demonstrating that American would have taken the same actions regardless of his military status.

To adopt Plaintiff's theory of the case would mean that American somehow not only compelled the Captain to file a complaint against Plaintiff but also somehow controlled what multiple employees reported in the subsequent investigation regarding their experiences and views of Plaintiff, as well as the independent neuropsychologist's conclusions following a two-day examination. Of course, there is not a shred evidence to that effect because it is absurd. Plaintiff's motion fails at every level.

## **LEGAL STANDARD**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp v. Cartrett*, 477 U.S. 317, 325 (1986). "The party moving for summary judgment must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary." *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980) (citing *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970)).

Under USERRA, the plaintiff has the burden of establishing a prima facie case by showing that he was "denied a benefit of employment" and that his military service or that exercising a right under USERRA was a "motivating factor" in the adverse employment action. *Bengall v. City of Sunrise*, 2011 WL 3715123, at *4 (S.D. Fla. Aug. 24, 2011) (Martinez, J.); *see also Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005). Military status is a "motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman*, 411 F.3d at 1238. Although proximity in time between the employee's military activity and the adverse employment action may be circumstantial evidence of discriminatory motive, it will not suffice on its own. *See id.*; *see also Ayoub v. Bd. of Cty. Comm'rs ex rel. Cty. of Santa Fe*, 964 F. Supp. 2d 1288, 1302 (D.N.M. 2013). If a plaintiff cannot establish a prima facie case, the employer is entitled to summary judgment. *See, e.g.*, *Dees v. Hyundai Motor Mfg. Ala. LLC*, 368 F. App'x 49, 52 (11th Cir. 2010).

If the employee establishes a prima facie case, only then does the burden shift to the employer to demonstrate that "legitimate reasons, standing alone, would have induced the

employer to take the same adverse action." *Bengall*, 2011 WL 3715123 at *9. If an employer demonstrates that legitimate reasons, standing alone would have induced the employer to take the same action, then the employer is not liable. *Id.*; *see also Gannon v. Nat'l R.R. Passenger Corp.*, 422 F. Supp. 2d 504, 508 (E.D. Pa. 2006). Where the record shows that an employer would have taken the same action regardless of the plaintiff's military status, a defendant is entitled to summary judgment. *Gannon*, 422 F. Supp. 2d at 509.

## ARGUMENT

Plaintiff asks this Court to (1) ignore the complete lack of any evidence of a discriminatory motive, (2) ignore the uncontroverted evidence that American would have taken the same action regardless of Plaintiff's military status, and (3) nevertheless to hold American liable. Of course, that is not the law. Based on the undisputed evidence, Plaintiff cannot even satisfy his burden to establish a prima facie case. And even assuming for the sake of argument that he could somehow do so, Plaintiff still could not rebut the evidence that American would have taken the same actions for legitimate reasons regardless of his military status. Accordingly, Plaintiff's motion for summary judgment should be denied and American's motion for summary judgment granted.

### I. **Plaintiff Has Failed to Establish Even a Prima Facie Claim in Count I.**

In Count I, Plaintiff alleges that his "going on active duty so that he could represent the U.S. Army at the White House reception for the Pope was a motivating factor" for placing him on leave with pay. (Compl. at ¶ 29, ECF No. 1.) Plaintiff, however, now admits that he never actually went on "active duty" during the relevant time. (RSMF at ¶ 28.) Thus, his "active duty" status could not have motivated anything. This alone is fatal to Count I. *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (a complaint may be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). And, of

course, American granted Plaintiff's request for personal time off to attend the Pope's visit in Washington D.C.

Moreover, even if Plaintiff had actually been on active duty for this time off (which he indisputably was not), he still could not satisfy his burden to establish a prima facie case because there is zero evidence that American took any action based on an anti-military motive. Plaintiff argues that this Court should infer intent based on the "proximity in time between the employee's military activity and the adverse employment action." (Mot. at 11.) Specifically, Plaintiff claims—with no evidentiary support—that American withheld him from duty the day after he requested time off (September 22, 2015), rather than on September 24, 2015, the date that American received the workplace harassment complaint regarding Plaintiff. (*See* Mot. at 11; Pl.'s SMF at ¶ 7.) Plaintiff provides absolutely no evidence to support this allegation, and it is demonstrably false. American's business records confirm exactly what the witnesses testified: American placed Plaintiff on "Paid Withheld" status only after American received the formal complaint against Plaintiff on September 24, 2015. (RSMF at ¶ 7.) As detailed in the Declaration of Michelle Ladkin, all pilot status changes are recorded in American's flight operating systems ("FOS") database. (RSMF at ¶ 7; Ladkin Decl. at ¶ 3.) American's computer systems record all updates to a crew member's schedule in a history report. (*Id.*) American cannot delete records from the crew history report. (*Id.*) The crew history report for Plaintiff shows no changes to Plaintiff's employment status on September 22, 2015 or September 23, 2015, and shows that on September 24, 2015, Plaintiff's status changed to "Paid Withheld." (RSMF at ¶ 7; Ladkin Decl. at ¶ 4.)[2] Plaintiff's unsupported assertion that American changed his status on September 22, 2015,

---

[2] Because Plaintiff had originally been scheduled to fly a trip from September 22–24, 2015, however, the change of his employment status on September 24, 2015, to "paid withheld" caused

before it received the complaint (which, based on the documentary evidence, is demonstrably false) does not create a genuine issue of fact. *See, e.g.*, *City of Fort Lauderdale v. Scott*, 888 F. Supp. 2d 1279, 1284 n.2 (S.D. Fla. 2012) (demonstrably false affidavits submitted by plaintiffs in an attempt to avoid summary judgment do not provide evidence to counter defendant's summary judgment motion).[3]

Plaintiff also argues with no support that American's proffered reason for withholding him from duty is inconsistent with its other actions—specifically that American did not act sooner regarding similar allegations raised by the same Captain who filed the formal complaint. (Mot. at 11.) This argument fails on its face because Plaintiff admits (and Plaintiff's own expert report confirms) that American would not have withheld Plaintiff "but for" the formal complaint. (RSMF at ¶ 14.) Even absent that admission (which alone is fatal to Plaintiff's claim), the other undisputed evidence confirms that American did not take disciplinary action earlier in March 2015 because the union's Professional Standards group was attempting to resolve the matter—as is standard

---

his pay status for this entire trip (retroactive to September 22) to be categorized as "paid withheld." (*Id.* at ¶¶ 4–5.)

[3] Even if this assertion were not demonstrably false, however, proximity in time, without more, is not sufficient to establish an anti-military motive required for Plaintiff to establish a prima facie USERRA claim. *See Ayoub v. Bd. of Cty. Comm'rs ex rel. Cty. of Santa Fe*, 964 F. Supp. 2d 1288, 1302 (D.N.M. 2013). Rather, proximity in time "must be considered within the context of Plaintiff's [multi-year] employment with [the defendant], during which Plaintiff regularly requested and received [time off for military service]." *Hickle v. Am. Multi-Cinema, Inc.*, 296 F. Supp. 3d 879, 887 (S.D. Ohio 2017). Here, Plaintiff concedes that during his more than 15 years at American, he has never experienced a problem in regards to military leave and has regularly taken it. (RSMF at ¶ 27.) *See Rademacher v. HBE Corp.*, 645 F.3d 1005, 1011 (8th Cir. 2011) (even an employer's frustration by requests for military leave is insufficient to establish a motivating factor where time-off requests were honored over a multi-year period). There is also no dispute that Plaintiff was actually granted time off when he requested it on September 21, 2015. (Pl.'s SMF at ¶ 6; RSMF at ¶¶ 3, 6.)

7

practice for disputes between pilots. (*See* RSMF at ¶ 10.)[4] Ultimately, when that process did not resolve the issue and new issues continued to emerge, the Captain presented American with a formal written complaint seeking review and action by American's HR department. (RSMF at ¶ 12.) As a result, American took formal action. (*See id.* at ¶¶ 12–14.) Thus, there is simply nothing inconsistent at all about American's actions.

Plaintiff also argues that the fact that American did not ultimately discipline him based on its investigation somehow supports his position. (Mot. at 9.) To the contrary, this only serves to undermine Plaintiff's position. For example, in *Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1215 (D. Colo. 2008), an airline conducted a formal investigation regarding the Pilot's sworn testimony in a USERRA case, which "raised questions about [the pilot's] 'flying background', 'employment history,' and 'integrity.'" The pilot argued that the court could infer retaliatory intent because the investigation resulted in "no discipline whatsoever." *Id.* In rejecting this argument, the court explained that the "*absence* of remedial action resulting from the investigation hardly supports an inference of retaliatory intent—and, indeed, may well stand as a vindication of the high standard of proof and overall fairness of the investigation." *Id.* (emphasis in original). Similarly, here, if American's investigation were the product of improper motivations, the expectation would be a finding of wrongdoing and some disciplinary action, which like in *Quick*, did not occur. *See id.*

Plaintiff next speculates that Captain Bonds was "fixat[ed]" with some unspoken desire to take action against Plaintiff for "disobey[ing] Bond's [sic] request that he forego Army Reserve duty that week." (Mot. at 8.) Initially, this constitutes pure speculation, which is insufficient to

---

[4] American, however, did investigate the allegations of criminal conduct. (*See* Pl.'s Statement of Material Facts at ¶ 11, ECF No. 61; RSMF at ¶ 11.)

8

create a dispute of fact. *See Ayoub*, 964 F. Supp. 2d at 1302 (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1242 (10th Cir. 2004) ("Plaintiff's claim of discriminatory motive is, by his own statements, mere assumption on his part, and conjecture of assumption alone is insufficient for a claim of retaliation."). Plaintiff's unsupported assertion also lacks credibility because Captain Bonds is himself a longstanding service member. *See id.* at 1299–1300 (giving weight to the fact that supervisors were all former military members and concluding that Plaintiff had not established a prima facie showing that his military service was a motivating factor for adverse employment action).

In any event, it is undisputed that Captain Bonds never requested that Plaintiff forego military duty in response to Plaintiff's request for time off. Plaintiff's own affidavit confirms that when Plaintiff requested to use an EO (rather than take a military leave of absence) to attend the Pope's visit, Captain Bonds stated, "obviously we are going to give you the time off" if it is for military service. (*See* RSMF at ¶ 4; Pl.'s Aff., ECF No. 57-31.) Captain Bonds merely requested confirmation that Plaintiff was seeking time off for military service because he found the request unusual for several reasons.[5] (*See* RSMF at ¶¶ 4, 29.)

Moreover, even if Captain Bonds' request for confirmation could somehow be construed as a comment reflecting an anti-military animus (which would require ignoring the facts demonstrating why Captain Bonds found the request unusual as well as Bonds' own long-time service in the military), stray comments do not establish a prima facie claim under USERRA. *See,*

---

[5] Captain Bonds found the request unusual because Plaintiff made the request shortly after Bonds learned Plaintiff was assigned to fly with a member of the union's Professional Standards group that recently investigated allegations regarding Plaintiff. Captain Bonds also found it unusual that Plaintiff requested to use EO vacation time rather than military leave and that he had no orders to provide to substantiate his request for time off—when in Captain Bonds' military experience, orders were typically available. (*See* RSMF at ¶¶ 28–29.)

*e.g.*, *Hickle v. Am. Multi-Cinema, Inc.*, 296 F. Supp. 3d 879, 888 (S.D. Ohio 2017) (where plaintiff's supervisor made "a number of comments over the years regarding her frustration with Plaintiff's need for time off" for military service, those "stray comments" lacked "a sufficient nexus" to the alleged adverse action to "raise an inference that Plaintiff's military status was a motivating factor in that decision"). Here, there is no nexus between Plaintiff's request for time off and American's action in removing Plaintiff from duty to investigate a formal workplace harassment complaint filed by another pilot. Indeed, Plaintiff's own expert stated that American would not have withheld Plaintiff from duty "but for" the complaint. (RSMF at ¶ 14.)[6]

Finally, Plaintiff argues that American allowed another pilot (Michael Dale) to return to work after Dr. Knippa found him not fit for duty, and this somehow supports his position. (Mot. at 12.) Plaintiff speculates that this occurred because Plaintiff filed a USERRA claim, and Mr. Dale (himself a member of the military according to Plaintiff) did not. As expressly confirmed in Mr. Dale's own affidavit, however, the reason that American allowed Mr. Dale to return to flying is that a doctor who American approved conducted a reevaluation of Mr. Dale and cleared him to

---

[6] Plaintiff's argument regarding emails in which Captain Bonds expressed doubt about the veracity of Plaintiff's Leave and Earning Statement is a red herring. (*See* Mot. at 9.) Those emails came after American placed Plaintiff on paid withheld status and referred the entire investigation to the HR investigator. (RSMF at ¶ 12.) There is no suggestion that the HR investigator harbored any anti-military animus of any type and thus Captain Bonds' stray remarks cannot result in liability without a showing that they were the direct cause of the adverse action. *See, e.g.*, *Dees v. Hyundai Motor Mfg. Ala., LLC*, 368 F. App'x 49, 52 (11th Cir. 2010) (explaining that "cats paw" liability is inapplicable in a case where an independent investigation is conducted and "no supervisor's discriminatory recommendation was the direct cause of [the plaintiff's] termination"). In fact, the emails confirm that American did not take any action based on Plaintiff's Leave and Earning Statement. (RSMF at ¶ 12.) Instead, Captain Bonds wrote to Plaintiff explaining that he considered the matter closed. (*Id.*)

return to flying. (Dale Decl. at ¶ 13, ECF No. 61-18.) Plaintiff, however, has refused to return to Dr. Knippa or a comparable doctor approved by American for reevaluation. (RSMF at ¶ 21.)[7]

In sum, Plaintiff has not produced evidence to establish even a prima facie Count I claim.

## II. **Plaintiff Has Failed to Establish Even a Prima Facie Claim in Count II.**

In Count II, Plaintiff asserts the same bases as in Count I and merely adds an allegation that Plaintiff filed a USERRA complaint with the DOL. (Compl. at ¶ 39.) Plaintiff fails to state a prima facie case in Count II for all the same reasons that he has failed to do so in Count I. Plaintiff also fails to state a prima facie claim in Count II because these alleged adverse actions (placing him on leave, investigating the complaint, sending him to a fitness for duty exam) all took place before Plaintiff filed his USERRA complaint with the DOL. (Compl. at ¶ 40.) It is thus impossible that an unfiled DOL complaint motivated American to take these actions. *Cf. Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1208 (D. Colo. 2008) (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) ("In determining whether an employer retaliated against a reservist for [asserting] his rights under USERRA, [courts] must first decide whether the employee [asserted] such rights, thereby coming within the class of persons protected by the statute.") (brackets in original).

---

[7] In support of this argument, Plaintiff also refers to settlement negotiations—but settlement communications are not admissible to prove liability or damages in a disputed claim. *See* Fed. R. Evid. 408. In any event, American has never suggested—in settlement negotiations or elsewhere—that Plaintiff would ever be permitted to return to work without first being cleared for duty by Dr. Knippa or another comparable medical provider approved by American. (RSMF at ¶ 21; *see also* ECF No. 61-22.) There is, of course, also nothing whatsoever nefarious about the fact that a settlement would require Plaintiff to dismiss his litigation—that is inherent in any settlement.

### III. Even if Plaintiff Could Somehow Establish a Prima Facie Claim, the Undisputed Evidence Shows American Would Have Taken the Same Actions Based Solely on Legitimate Reasons.

It is indisputable that American had legitimate reasons, standing alone, to withhold Plaintiff from operating passenger aircraft. The detailed formal Employee Complaint that the Captain filed against Plaintiff on September 24, 2015 demanded American open a formal investigation, and raised concerns that without question warranted Plaintiff's removal from flying. (RSMF at ¶ 12.) Indeed, Plaintiff's own expert agrees that the allegations contained in the formal Employee Complaint against Plaintiff (even absent the statement obtained by other employees during the investigation), warranted American referring Plaintiff to a fitness for duty evaluation. (*Id.* at ¶ 14.) Further, in the expert report submitted by Plaintiff (which Plaintiff testified he agrees with), Plaintiff's expert states that withholding Plaintiff from duty and referring him for medical evaluation "would not have arisen *but for* the fact that the [Employee Complaint] created an environment of mistrust about his integrity." (*Id.*) (emphasis added.) Based on these admissions, Plaintiff cannot now reasonably argue that American taking such actions based on the Employee Complaint was pre-textual.

Further, the HR Department handled the subsequent investigation, and Plaintiff does not allege that the investigator had an anti-military bias. Moreover, during the investigation, multiple employees stated that Plaintiff was "a habitual liar/story teller" who other crews worried could not "operate the aircraft safely." (*See* RSMF at ¶ 14; Report, ECF No. 57-26.) Finally, the independent neuropsychologist (who is former military himself), following a two-day examination, concluded Plaintiff is "**NOT FIT FOR DUTY** as a [first officer], on the basis of

impaired performances on cognitive assessment" and thus was not fit to operate passenger aircraft. (RSMF at ¶ 17) (emphasis in original).[8]

For Plaintiff to rebut American's legitimate reasons, Plaintiff would have to produce evidence that:

- American somehow compelled the Captain to fabricate a complaint;

- American somehow controlled the investigation behind the scenes;

- American somehow compelled multiple employees to make false statements against Plaintiff;

- American somehow caused the independent neuropsychologist to falsify his report; and

- American somehow compelled Plaintiff's own expert to provide a false report and false deposition testimony.

There is, of course, zero evidence to support any of this, highlighting the absurdity of Plaintiff's claim under the facts of this case.

Thus, even if Plaintiff were to establish a prima facie USERRA claim (which he has not), his claims still fail as a matter of law and American is entitled to summary judgment. *See Coffman*,

---

[8] Dr. Knippa summarized the results of two days of testing as follows: "Data are consistent with an attention deficit disorder together with mild impaired range performance on multiple measures of complex speeded problem solving with novel information (i.e., aspects of executive skills). While reliably low performances were not observed on simple tasks, those requiring speeded performance in the context of working memory demands and visual input were significantly below expectation for working commercial pilots. As a simple example, on 2 of several measures of shifting attention and efficient problem- solving, performance was in the borderline to low average range even as compared to general aviation pilots between ages 71–86. . . . Through the course of testing, there were multiple examples of impulsive-appearing or over-confident behavior that can compromise performance. The overall profile of neuropsychological assessment was discrepant from that expected for Major Airline pilots of similar age." (RSMF at ¶ 17.)

411 F.3d at 1238–39; *Bagnall*, 2011 WL 3715123, at *11; *Vega-Colón v. Wyeth Pharm.*, 625 F.3d 22, 29 (1st Cir. 2010) (granting summary judgment because employer "sufficiently established that it would have taken such action regardless of [plaintiff's] military membership"); *Gannon v. Nat'l R.R. Passenger Corp.*, 422 F. Supp. 2d 504, 509 (E.D. Pa. 2006) (same).

## CONCLUSION

For these reasons, this Court should deny Plaintiff's motion for summary judgment and grant American's motion for summary judgment.

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of June, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*

15

835060