UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiffs,

vs.

AMERICAN AIRLINES, INC., a Delaware Corporation,

    Defendant.

_____/

**AMERICAN AIRLINES, INC.'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant American Airlines, Inc. ("American") submits this statement of material facts in opposition to Plaintiff Rodney Scott Patterson's ("Plaintiff") Corrected Rule 56 Motion for Partial Summary Judgment (the "Motion"), ECF No. 68, and in response to Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment ("Plaintiff's SMF"), ECF No. 61.

1.     *No Dispute.* American does not dispute the assertions in Paragraph 1.[1]

2.     *No Dispute; Not Material.* American does not dispute the assertions in Paragraph 2; but these assertions are not material to the resolution of Plaintiff's Motion.

3.     *Disputed.* Plaintiff did not request military leave; he requested "EO" (or "employee off") time off beginning September 22, 2015, when he was scheduled to fly on an international trip. (Pl. Dep. at 244:19–21; 246:16–251:7, ECF No. 57-1.) An "EO" allows American pilots "to

---

[1] Given the standards applicable to the Motion, American does not dispute certain facts solely for purposes of the Motion, but reserves the right to challenge any such facts at any other proceeding in this matter, such as trial.

1

835060

take . . . future accrued vacation days and apply them to these days off." (*Id.* at 247:8–251:7.) The EO that Plaintiff requested is a category of vacation wholly unrelated to military leave that pilots can request for any reason and is in American's complete discretion to grant or deny. (*Id.*) After Plaintiff called the Miami Flight Office, Captain Bonds left Plaintiff a voicemail response regarding his EO request, but Plaintiff did not return Captain Bonds' voicemail. (Bonds Dep. at 61:23–65:17, ECF No. 57-7.)

4.      ***Disputed in Part.*** Captain Bonds expressly stated in his voicemail that if Plaintiff was seeking time off for military service, "obviously, we are going to give you the time off, if you can produce some uhhm, orders." (Pl. Aff. Bates No. Patterson_Caddy_00025, ECF No. 57-31.)

5.      ***Disputed in Part.*** Captain Bonds' voicemail stating, "obviously we are going to give you the time off if you can produce some uhm, orders," was informed by Captain Bonds' experience (including as a former service member) that written orders were always "easily obtained" by the service member. (Bonds Dep. at 63:17–64:15, ECF No. 57-7.)

6.      ***No Evidence; Not Material.*** The specific assertions in Paragraph 6 stating Plaintiff was unable to contact Captain Bonds are not supported by record evidence. After Plaintiff called the Miami Flight Office, Captain Bonds left Plaintiff a voicemail response regarding his EO request, but Plaintiff did not return Captain Bonds' voicemail. (*Id.* at 61:23–65:17.) Plaintiff instead waited and contacted the after-hours system-wide Duty Chief Pilot in Dallas, who granted Plaintiff's request for EO Time off. (*Id.*; Pl. Dep. at 255:22–256:7, ECF No. 57-1.)

7.      ***No Evidence; Disputed in Part.*** American does not dispute that Captain Bonds contacted Plaintiff by telephone or voicemail to inform Plaintiff that he was being placed on "PW" (or "Paid Withheld") status. (*See* Bonds Dep. Ex. 17, ECF No. 57-10.) This communication took place on the evening of September 24, 2015. (*See id.*) Plaintiff cites no evidence (because there is

2

835060

none) to support his assertion that he learned "through a program on his cell phone . . . that his EO status had been changed to PW" on Wednesday, September 23, 2015. (*See* Pl.'s SMF at ¶ 7.) American's computer systems confirm that American changed his status to "PW" on September 24, 2015. (*See* Ladkin Decl., attached hereto.) All status changes are recorded in the crew history report. (*Id.* at ¶ 3.) The system maintains records of every single status change and records cannot be deleted from the crew history report. There is no record of any status change for Plaintiff on September 22 or 23, 2015. (*Id.* at ¶ 4.) Thus, the absence of any business record showing a change of status on September 23 is conclusive that Plaintiff's unsupported assertion is untrue. Moreover, the "unsworn declaration" upon which Plaintiff relies does not appear to be signed by Plaintiff himself. (*Compare* ECF No. 61-4 at p. 2 *with* ECF Nos. 57-30 & 57-31.)

8.  ***No Dispute.*** American does not dispute the assertions in Paragraph 8. The Miami Flight Office made the decision to withhold Plaintiff from service as of September 24, 2015, because another Pilot submitted a work environment complaint. (Bonds Dep. Ex. 17, ECF No. 57-10; AA Dep. 41:3-10, ECF No. 57-25.)

9.  ***No Dispute; Not Material to Disposition of Motion.*** American does not dispute that on September 24, 2015, Bonds sent an email at 5:17PM Central Daylight Time/10:17PM Coordinated Universal Time confirming to the American officials identified in Paragraph 9 that the Miami Flight Office had carried out its decision to place Plaintiff on Paid Withheld status.[2] American states that whether a particular individual can recall sending or receiving a particular

---

[2] Coordinated Universal Time ("UTC") has been the uniform time zone setting for American's document productions in this case. As confirmation that the 10:17PM time referenced in Paragraph 11 of the Plaintiff's SMF reflects UTC, American has also prepared for production, and attached hereto, a copy of this email that is in Central Daylight Time ("CDT") (where American's headquarters is located). For uniformity, American has also produced in CDT, a select number of other documents from September 24–25, 2015 that American previously produced in UTC.

3

835060

email is not relevant to the issues presented in the Motion.

10. ***No Dispute: Not Material.*** American does not dispute that the other Captain "had made essentially the same complaints in March 2015" regarding events that commenced in October 2014. As Captain Beach—and every other witness—has testified, Captain Beach initially referred these complaints to the Allied Pilots Association's Professional Standards committee in March 2015, which is a union group that attempts to assist its members in resolving complaints among pilots. (Beach Dep. 22:2–13, 23:15–24:6, ECF No. 57-13; *see also* Bonds Dep. at 26:22–27:5, ECF No. 57-7; AA Dep. 36:2–37:1, ECF No. 57-25). American also does not dispute that several of these allegations were stale in terms of the timing of the underlying events and thus more difficult to investigate when they were formally submitted to American in September 2015, but that did not in any way lessen American's duty to investigate these serious allegations once it received a formal complaint.

11. ***Disputed in Part; Not Material.*** American disputes the argumentative characterizations in Paragraph 11, including Plaintiff's mischaracterization of testimony. (*See* AA Dep. 21:22–24:2, ECF No. 57-25.) But whether American's corporate security office conducted an investigation around March 2015 regarding the alleged criminal behavior of Plaintiff is not relevant to show any improper motive by American (there was no such motive) nor is it relevant to American's defense that it would have taken the same action regardless of Plaintiff's military status. Moreover, Captain Beach's testimony about the scope of the corporate security investigation is not hearsay because American is not offering it for the truth of the matter asserted.

12. ***No Evidence; Disputed in Part.*** American disputes the argumentative characterizations in Paragraph 12, including Plaintiff's mischaracterizations of testimony. Captain Bonds did ask for confirmation of Plaintiff's military service because of the suspicious

4

835060

circumstances surrounding Plaintiff's request for vacation time off. *See* ¶¶ 28–29, below. Once Plaintiff provided a "copy of a copy" of his Leave and Earnings Statement, even though there was a "lot of information redacted," Captain Bonds considered the matter closed and American took no further action with respect to the request for time off. (Bonds Dep. at 69:20–71:11, 82:2–10, 86:13–88:20 ECF No. 57-7; Bonds Dep. Ex. 7, ECF No. 57-8; Bonds Dep. Ex. 13, ECF No. 57-9.) American does not dispute that it began an investigation regarding the allegations in the Employee Complaint after receiving the Employee Complaint on September 24, 2015, which contained detailed allegations of erratic and concerning behavior by Plaintiff and sought redress for "the work-related harassment" by Plaintiff. (*See* AA Dep. Ex. 41, ECF No. 57-26; Beach Dep. Ex. 7, ECF No. 57-17.) Plaintiff cites no evidence (because none exists) that the investigation involved any allegations other than those in the Employee Complaint and every witness has testified that the investigation did not relate in any way to Plaintiff's military service. (AA Dep. 118:16–119:16, ECF No. 57-25; Bonds Dep. 88:24–89:7, ECF No. 57-7; Beach Dep. 32:23–33:2, ECF No. 57-13.)

13. ***Disputed in Part.*** American disputes the argumentative characterizations in Paragraph 13. American does not dispute that the human resources "Section 21" investigation "flowed from [the reporting Captain's] September 24 letter." Nor does American dispute that upon the conclusion of the investigation, American determined that no discipline against Plaintiff was warranted. But, as the evidence shows, the investigation did cause the Chief Pilots in Miami as well as other American officials to have concerns about Plaintiff's fitness to operate a passenger aircraft. (*See* AA Dep. Ex. 41, ECF No. 57-26.) ("During our interviews, multiple employees expressed their concern with Patterson's behavior. . . . They believed that Patterson's misrepresentations not only caused negativity amongst the crew but also led them to question his

5

ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'") Accordingly, American scheduled Plaintiff for a fitness for duty evaluation by an independent neuropsychologist—Dr. John Knippa—pursuant to the applicable collective bargaining agreement. (*Id.* at 51:1–13; Beach Dep. Exs. 25 & 26, ECF Nos. 57-20 & 57-21.)

14. *Not Material.* Whether Captain Bonds personally observed Plaintiff's erratic behavior is not relevant. During the investigation, "the majority of the employees interviewed described Plaintiff as a habitual liar/story teller." (AA Dep. Ex. 41, ECF No. 57-26.) And "multiple employees expressed their concern with [Plaintiff's] behavior. . . . [that] led them to question his ability to operate the aircraft safely." (*Id.*) Based on these accounts, American reasonably determined that Plaintiff should be scheduled for a fitness for duty evaluation. Plaintiff's retained expert witness, Dr. Glenn Caddy, testified that, based on the Employee Complaint alone, Plaintiff should have been required to submit to a fitness for duty examination. (Caddy Dep. 59:8–61:12, ECF No. 57-27.) Dr. Caddy, explains in his report that "that this issue would not have arisen but for the fact that the [Employee] submission created an environment of mistrust about his integrity." (Caddy Dep. Ex. 2.B at 30, ECF No. 57-28.) Moreover, the results of the evaluation further confirm the reasonableness of American's concerns because an independent neuropsychologist found Plaintiff "**NOT FIT FOR DUTY** as a FO, on the basis of impaired performances on cognitive assessment." (Ahtone Dep. Ex. 4 at 13, ECF No. 57-6) (emphasis in original).

15. *Disputed in Part; Not Material to Disposition of Motion.* American does not dispute that independent neuropsychologist Dr. Knippa conducted an evaluation of Plaintiff. American disputes Plaintiff's characterizations of the examinations performed by Dr. Knippa to the extent they are contradicted by Dr. Knippa's contemporaneous report. (*See id.*) American

6

835060

disputes Plaintiff's unsupported assertion that Dr. Knippa's testing of Plaintiff occurred "during the afternoon," as Dr. Knippa testified that certain testing, including the cog screen and T.O.V.A testing, was done in the morning. (Knippa Dep. at 47:3–49:14, ECF No. 57-24.) Dr. Knippa's findings with respect to another American employee who is not a party to this action and with whom Plaintiff is not similarly situated are immaterial.

16.     *Not Disputed; Not Material.* American does not dispute the assertions in Paragraph 16, although whether a witness could remember a specific individual's name during his testimony is not material to resolution of the Motion. (*Id.* at 19:8–20:2, 26:19–30:19.)

17.     ***Disputed in Part.*** American disputes the argumentative characterizations in Paragraph 17 of Plaintiff's SMF, including the mischaracterization of Dr. Ahtone's testimony regarding Dr. Knippa's report. Dr. Ahtone repeatedly testified that Dr. Knippa's report did, in fact, indicate that Plaintiff was not fit for duty, that additional evaluation would be needed to determine the "cause of the cognitive concerns" that Dr. Knippa observed. (*See* Ahtone Dep. at 52:20–58:14, ECF No. 57-3.) Specifically, Dr. Knippa explained:

> Data are consistent with an attention deficit disorder together with mild impaired range performance on multiple measures of complex speeded problem solving with novel information (i.e., aspects of executive skills). . . . Through the course of testing, there were multiple examples of impulsive-appearing or over-confident behavior that can compromise performance. The overall profile of neuropsychological assessment was discrepant from that expected for Major Airline pilots of similar age.
> 
> \*     \*     \*
> 
> In short, some diagnostic questions remain unanswered, given limited information (e.g., below), but performance abnormalities significant to flying status remain nonetheless.

(Knippa Report at 12–13, ECF No. 57-6.) Dr. Knippa then set forth his recommendation:

> Work Status. Mr. Patterson is opined to be identified by the current assessment as **NOT FIT FOR DUTY** as a FO, on the basis of impaired performances on cognitive assessment.

7

835060

(*Id.* at 13) (emphasis in original).

18.  *Not Disputed.* American does not dispute the assertions in Paragraph 18.

19.  *Not Material.* Plaintiff's assertion that he has submitted reports from other doctors to American long after being withheld from duty and being deemed unfit for duty is not relevant. This information could not have been known to American at the time Plaintiff was withheld from duty (with pay) pending the investigation into the serious allegations in the Employee Complaint. Nor was this information available to American when Plaintiff was scheduled for a fitness for duty evaluation in January of 2016 based on concerns for his ability to safelyoperate an aircraft. Plaintiff has refused to return to Dr. Knippa (or another comparable doctor approved by American) for reevaluation as is required before he can return to duty, and thus Plaintiff remains on leave.

20.  *Not Material.* Whether Plaintiff has obtained a medical certificate or is flying for another airline is not relevant to American's motivations in investigating the serious allegations in the Employee Complaint and scheduling Plaintiff for a fitness for duty evaluation based on concerns for his ability safely to operate an aircraft. Plaintiff conceded in his testimony that the medical history information he provided to the FAA was, at best, incomplete. (Pl. Dep. at 65:13–82:11, ECF No. 57-1.) Further, as Dr. Ahtone explained, a doctor who is unaware of the reasons a pilot has been found not fit to fly may mistakenly issue a medical certificate based on that lack of information—which is one reason American requires pilots to return to the physician who found them not fit or another comparable physician approved by American. (*See* Ahtone Dep. at 71:3–21, ECF No. 57-3.)

21.  *Disputed in Part.* Because Plaintiff has never asked to be re-evaluated by Dr. Knippa (or any comparable doctor approved by American), American has not been asked to consider such a referral. (AA Dep. at 115:15–18, ECF No. 57-25.) American does not dispute that

8

as a general matter, "the doctor who makes a determination that [a pilot is] not fit for duty . . . is the doctor who has to reevaluate [the pilot] and make a determination if [the pilot is] now fit for duty." (*Id.* at 93:4–10; *see also id.* at 94:11–17.)

22. ***Not Material.*** American does not dispute that Plaintiff filed a complaint with the Department of Labor ("DOL") on January 25, 2016. However, because Plaintiff's complaint to the DOL was <u>after</u> any alleged acts by American, the complaint could not possibly have caused American to take any alleged adverse action.

23. ***Not Material.*** The assertions in Paragraph 23, which relate only to another American employee who is not a party to this action and with whom Plaintiff is not similarly situation, are immaterial.

24. ***Inadmissible; Not Material.*** The settlement proposal described in Paragraph 24 is inadmissible as evidence of liability or the amount of a disputed claim. Fed. R. Evid. 408. Regardless, whether American would consider—in the context of settlement of a disputed claim—a review of Plaintiff's medical records by an independent medical provider is not probative of any fact in dispute in this case.

## Additional Material Facts

25. Captain Bonds served in the United States Air Force and the Air National Guard. (Bonds Dep. at 9:11–11:9, ECF No. 57-7.) Captain Beach also served in the United States Marine Corps and then in the Marine Corps Reserve. (Beach Dep. 32:7–11, ECF No. 57-13.)

26. In 2015, American granted 122 American pilots based in Miami approximately 1,579 military leaves of absence by American. (Rojas Decl. ¶ 3, ECF No. 57-29.)

27. Plaintiff participated in military duty at various times during 2015. (Pl. Dep. at 148:22–149:8, ECF No. 57-1) ("I've done a lot of military duty in 2015 . . . .") During these

periods of service, Plaintiff requested and received military leaves of absence from American. (*See id.*; *see also* Pl. Dep. Ex. 11, ECF No. 57-2.) Before September 21, 2015, in his 15-plus years at American, Plaintiff has "never been denied military leave with American." (Pl. Dep. at 135:17–136:3, ECF No. 57-1.) Despite his contrary allegations, (*see* Compl. at ¶¶ 29, 40), Plaintiff now admits that he was not on "active duty" during his September 2015 visit to the White House. (Pl. Dep. at 203:20–204:23, ECF No. 57-1.)

28. Captain Bonds considered Plaintiff's September 21, 2015 EO request suspicious because earlier that same day, Captain Bonds learned that Plaintiff was scheduled to fly with a pilot who served as part of the APA Professional Standards group, which had recently investigated allegations made against Plaintiff. (*See* Bonds Dep. at 34:1–20, 63:10–22, 69:6–17, 74:14–76:18, ECF No. 57-7.) Captain Bonds thus inferred, although was not certain, that Plaintiff was seeking an EO "to find any way to get out of that trip." (*Id.* at 63:10–22, 74:14–76:18.) Captain Bonds also found it "quite odd why [Plaintiff] would ask for an EO instead of taking military [leave]." (*Id.* at 63:10–22.)

29. Because of the suspicious circumstances of Plaintiff's last-minute request Captain Bonds sought verification of Plaintiff's military orders to confirm the reason for Plaintiff's absence from work. (*See* Pl. Dep. at 260:12–262:14, ECF No. 57-1; Bonds Dep. at 67:5-68:15, 117:9–118:4, ECF No. 57-7.) On October 7, 2015, After Plaintiff provided the copy of his Leave and Earnings Statement for September of 2015, on October 28, 2015, Captain Bonds considered the matter closed and American took no further action with respect to Plaintiff's request for time off. (Bonds Dep. at 87:11–88:20, ECF No. 57-7; Bonds Dep. Ex. 13, ECF No. 57-9.)

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
**Miami Center, Suite 3200**
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

835060

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of June, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.** 500
Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice)*
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq. mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*

835060