IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, a Delaware
corporation,

    Defendant.
_____/

**Plaintiff's _CORRECTED_ Response to Defendant's Local Rule 56.1(a)
Statement of Material Facts In Support of
Motion for Summary Judgment**

Plaintiff, Rodney Scott Patterson, responds as follows to American Airlines, Inc.'s Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment [DE 59-1]:

    1.    Undisputed, but irrelevant to summary judgment.

    2.    Undisputed.

    3.    Undisputed.

    4.    Objection to foundation as to "most pilots." Undisputed that James Bonds was a captain in the United States Air Force and achieved the

rank of major in the Mississipi Air National Guard. Bonds Depo,[1] at 11:4-9.

5. Objection as to foundation and relevance. See Rules 602 and 404(a)(1).

6. Objection as to relevance. See Rule 404(a)(1).

7. Disputed. Patterson did not make a request, but gave American notice under USERRA that he would be on military duty the following four days.

8. Undisputed, but irrelevant to summary judgment.

9. Undisputed, but irrelevant to summary judgment.

10. Undisputed, but irrelevant to summary judgment.

11. Undisputed, but irrelevant to summary judgment.

12. Undisputed, but irrelevant to summary judgment.

13. Undisputed, but irrelevant to summary judgment.

14. Undisputed, but irrelevant to summary judgment.

15. Undisputed, but irrelevant to summary judgment.

16. Undisputed, but irrelevant to summary judgment.

17. Undisputed.

18. Undisputed, but irrelevant to summary judgment.

19. Undisputed that Bonds testified that he was "suspicious," which "suspicion" is irrelevant to summary judgment. See Rule 401. Undisputed

---

[1] The Deposition of James N. Bonds is filed as DE 57-7.

that Bonds requested documentation of plaintiff's September 2015 military service.

20. Undisputed, but irrelevant to summary judgment.

21. Undisputed, but irrelevant to summary judgment.

22. Objection as to Bonds's lack of personal knowledge that "American took no further action with respect to Plaintiff's request for time off."

23. Objection. While a party's Rule 30(b)(6) designee's deposition testimony may be introduced as admissions of a party opponent, the rule does not permit conclusory, exculpatory testimony without any showing of foundantion.[2]

24. Undisputed that on September 24, 2015, Captain Glenn Whitehouse submitted a repackaged version of the same complaints that had in March and April 2015 been submitted to, and disregarded by, Brian Beach, a Miami International Airport chief pilot, Corporate Security investigators, Human Resources and Labor Relations. Montgomery Rule

---

[2]Compare Fernandez v. Winn-Dixie Stores, Inc., Case No. 17-cv-60322-BLOOM/Valle, at *4, n. 4 (S.D. Fla. Jan. 24, 2018), quoting Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc., Case No. 17-20768-CIV, 2017 WL 4898292, at *2 (S.D. Fla. Oct. 27, 2017) ("An affidavit submitted by a corporate representative in support of summary judgment is properly considered when the corporate representative expressly verifies that the matters stated therein are based on his own personal knowledge gained through review of business records.")

30(b)(6) Depo,[3] at 16:19-18:1.

25.     The first and sixth sentences of ¶ 25 are disputed:  Whitehouse denied in his deposition that the September 6 encounter between him and Bonds related in the underlying e-mail—on which American bases its statement that "The Miami flight office was aware by September 6, 2015 that an Employee Complaint might be forthcoming from the Captain, and that a fitness for duty examination might be required as a result of that Complaint"— ever occurred.  Whitehouse Depo, at 103:19-104:21 and Exhibit 12.[4]  DE 57-14, then, not only is hearsay, an e-mail concerning which Bonds has virtually no recollection, see Bonds Depo, at 57:24-59:8 and Exhibit 4,[5] but (based on Whitehouse's testsimony) a total fabrication.  What Whitehouse said to Beach is hearsay (sentences 2 and 4).  Sentence 5 is double hearsay.

26.     Undisputed—but noteworthy because the characterization is of Whitehouse's allegations, **One**, made in February and March 2015, Montgomery 30(b)(6) Depo, at 35:18-36:1, Beach Depo,[6] at 35:16-37:16;

---

[3]Michelle Montgomery's Rule 30(b)(6) Deposition is filed at DE 57-25.

[4]The cover page and relevant testimonial pages of the Deposition of Glenn Whitehouse is appended to this statement as Attachment 1.

[5]The Deposition of James N. Bonds is filed at DE 57-7. Exhibit 4 to that deposition, and Exhibit 12 to the Whitehouse Depo, is the same document as DE 57-14.

[6]The Deposition of Brian Beach is filed at DE 57-13.

***Two***, were passed on to Corporate Security, whose investigation revealed that the allegations were "unsubstantiated," Montgomery 30(b)(6) Depo, at id. at 14:4-16:21, and, ***Three***, were shared by Beach in March with Human Resources and Labor Relations, Montgomery 30(b)(6) Depo, at 20:2-7, 20:24-24:2 and Exhibit 74 (February-April 2015 e-mail string)—six to seven months prior to Patterson's being put on "paid/withheld" status immediately after going on military duty against Bonds's wishes.

27.  Undisputed that this paragraph accurately quotes the language of Patterson's complaint to the Allied Pilots Association against Whitehouse for having maliciously filed "a false hostile environment complaint." DE 57:1, at 318-15-320:12).

28.  Undisputed, but irrelevant to summary judgment—other than to raise a question of material fact about why the allegations were not considered serious enough to put Patteson on "paid/withheld" status in March, but only so serious after he had gone on military duty in September.

29.  Undisputed that Patterson was placed on "paid/withheld" status, but disputed, ***One***, that it was ***after*** American received Whitehouse's re-packaged allegations, see, e.g., Patterson Depo,[7] Exhibit 12 (Activity Pay Sheet showing "paid/withheld" status as of September 22), and, ***Two***, that Exhibits 17 or 18 to the Beach deposition support the allegations of ¶ 29.

---

[7]The Deposition of Rodney Scott Patterson is filed at DE 57-1.  Exhibit 12, an Activity Pay Sheet, is appended to this Statement as Attachment 2.

30. Disputed. The transcript citation, DE 57-7, at 98:1-9 does not support the allegation. Bonds recognized the letter, Exhibit 17 to his deposition, DE 57-10, but recalled neither signing it nor speaking to Patterson. DE 57-7 at 96:23-98:25.

31. Undisputed that the Section 21 investigation was conducted by Human Resources, which produced no evidence of any conduct on the part of Patterson warranting discpline. Montgomery Rule 30(b)(6) Deposition, at 46:1-4, 68:10-17.

32. Objection. Multiple levels of inadmissible hearsay.

33. Objection. Multiple levels of inadmissible hearsay.

34. Objection. There is no record evidence of who made the decision to refer Patterson for a fitness-for-duty examination or why. See DE 61 ("Plaintiff's Local Rule 56.1(a) Statement of Material Facts In Support of Motion for Summary Judgment"), at 6-7, ¶¶ 13-14.

35. It is undisputed that American has correctly quoted the letter that it gave to Patterson, but the truth and the source of the assertions it contains are disputed. See ¶ 34, citing to DE 61 at 6-7 and ¶¶ 13 and 14. See also Ahtone Depo, at 5:7-14, 19:23-20:5, 22:21-24:4.[8]

36. It is undisputed that Jeral Ahtone, M.D., American's Corporate Medical Director, selected John Knippa, Ph.D., but Dr. Ahtone's statements

---

[8]The Deposition of Jeral L. Ahtone, M.D., is filed as DE 57-3.

about Dr. Knippa's background is hearsay from an unidentified source. Ahtone Depo, at 24:9-29:11.

37. It is undisputed that American correctly quoted Dr. Knippa's report, but more importantly, Dr. Ahtone conceded that Dr. Knippa's report contains no indications of any neuropsychological deficits, psychopathology or personality disorders. Ahtone Depo, at 55:5-61:5.

38. Although American's policy may be to send a pilot who has been found unfit for duty by one practitioner back to that same practitioner, it offered to the Allied Pilots Association, Patterson's union, in December 2016 to permit the University of Texas Medical Branch ("UTMB") to review the fit-for-duty reports furnished by Patterson in August 2016 from, among others, John Hastings, M.D., an FAA-qualified neurologist; Gary Kay, Ph.D., the Georgetown University neuropsychologist who designed the testing instrument, COGscreen AeroMedical Edition, used by Knippa to disqualify Patterson and whom American frequently uses for fitness-for-duty examinations, and Glenn R. Caddy, Ph.D., a clinical psychologist, who is Patterson's testifying expert, and the military physician who cleared Patterson as being fit for combat deployment.[9] The offer, which was made after American became aware that Patterson had filed a USERRA complaint

---

[9]The August 16, 2016 cover letter and the reports are appended to Plaintiff's Local Rule 56.1(a) Statement of Material Facts In Support of Motion for Summary Judgment as DE 61-19.

with the Department of Labor, but before this action was filed, was conditioned on Patterson's dropping any claim arising out of his neuropsychological grounding.

    39.    It is undisputed that Patterson has refused to return to Knippa, whose findings concerning Patterson have been contradicted by the four practitioners listed in ¶ 38 and whose administration of the tests to Patterson the day after Patterson arrived in California, three time zones away from his home, has been criticized as unsound by Caddy. Caddy is a clinical psychologist and former professor of psychology who has taught psychometrics, or psychological testing, at the undergraduate and graduate levels. Caddy Depo, DE 57-27, at 57:4-15, 69:9-20. Caddy also characterized Knippa's overall approach as being in which

> at every level, if you really understand what he was doing, he kept on trying to find something wrong and he'd make comments about something wrong, but then he'd fall off and say, well, it's not enough to offer a legitimate assertion of that, after he made assertions about it.

Id. at 68:20-69:1.

    40.    Undisputed, but not relevant to summary judgment. It also is inadmissible as speculation by Patterson about Bonds's state of mind.

    41.    Objection. The collective bargaining agreement, **One**, speaks for itself, and, **Two**, says nothing about "American's responsibility for pubic safety."

**Plaintiff's Additional Facts**

42.     Plaintiff adopts, as if fully set forth, the statements, attachments and authorities contained in his Plaintiff's Local Rule 56.1(a) Statement of Material Facts In Support of Motion for Summary Judgment, DE 61.

43.     Additionally, Brian Vitale, another American captain, was told by both Bonds and Beach on or about September 28, 2015, that Patterson had been put on no-fly status because he, as a first officer, had taken it upon himself to divert a South American flight to land in Bogota—which Vitale told that Patterson could not have done, because only a captain, and not a co-pilot, can divert a flight.  Vitale accused them at the time of violating USERRA.  See notarized Statement of Brian Vitale, which is appended as Attachment 3.

Respectfully submitted,

*s/ William R. Amlong*
WILLIAM R. AMLONG
WRAmlong@TheAmlongFirm.com
Florida Bar Number 470228
KAREN COOLMAN AMLONG
KAmlong@TheAmlongFirm.com
Florida Bar Number 275565
JENNIFER DALEY
Florida Bar Number 856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983

NOEL C. PACE
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
(305) 710-3713

***Attorneys for the Plaintiff,***
 ***Rodney Scott Patterson***

### Certificate of Service

I hereby certify that a true and correct copy of the this Statement was served this date via the Southern District of Florida's CM/ECF system on all parties and counsel of record.

*s/ William R. Amlong*

```
                                                                  1
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2              FORT LAUDERDALE DIVISION

 3              CASE NO:  1:17-cv-60533-JEM

 4
     RODNEY SCOTT PATTERSON,
 5
          Plaintiff,
 6

 7   -VS-

 8
     AMERICAN AIRLINES, INC.,
 9   a Delaware Corporation

10        Defendant.

11

     _____/
12

13
                       VIDEO DEPOSITION
14
                             OF
15
                 CAPTAIN GLENN WHITEHOUSE
16

17

18
     DATE:   May 14, 2018
19
     TIME:   10:21 a.m. - 4:30 p.m.
20
     PLACE:  BRICKELL, GOMBERG & ASSOCIATES, INC
21           621 Northwest 53rd Street, Suite 240
             Boca Raton, Florida 33847
22

23

24
25
```

# ATTACHMENT 1

1       A.      Yes.

2       Q.      And when did that happen?

3       A.      I'm guessing sometime latter part of July of
4   2015.

5       Q.      And what, if anything, did Mr. McGinn share
6   with you about his flying with Mr. Patterson?

7       A.      He sent an e-mail stated that they had a
8   talk and told him to knock it off, that we both need
9   to act like adults.  And he said if Mr. Patterson
10  didn't knock it off it was going to get ugly from
11  there and it's going to be out of the union's hands.

12      Q.      Did Mr. Patterson do anything subsequent to
13  that?

14      A.      Yes.  That's when he had a conversation with
15  First Officer John Bullock and made threats against
16  me.

17      Q.      Exhibit Number 12.

18      A.      Uh-huh.

19      Q.      Does Exhibit 12 -- you weren't copied on
20  here, but does Exhibit 12 refresh your memory as to
21  whether or not you ever told Captain Bonds about --

22      A.      No, because I -- I've only met Jim Bonds
23  once in my life, so the only person that I ever
24  talked about that situation was Captain Beach.

25      Q.      So Mr. Bonds is incorrect then when he

```
 1      writes, "Guys, Glen Whitehouse chased me down in the
 2      terminal today and told me yet another story about
 3      Patterson when he actually in public was saying the
 4      airplane was a time bomb and could explode at any
 5      moment.  This was for passengers and crew to hear.  I
 6      think we all need to confer and then convince labor
 7      that this dude needs a Section 20 ASAP.  I'm sure --
 8      it the seems like a John Thomas scenario.  We all
 9      have been approached by different crew members saying
10      they are concerned for their own safety and the
11      mental stability of Patterson."
12          Are you telling me that conversation never took
13      place?
14          A.   Never took place, because I never met Jim
15      Bonds until after my HR hearing, so...
16          Q.   So have you -- did you tell anybody other
17      than Brian Beach about the time bomb?
18          A.   No.  I just spoke with --
19          Q.   Conversation?
20          A.   -- Jim Bonds -- I mean, Brian Beach about
21      that, so...
22          Q.   Look at Exhibit 13.  Tell me if you
23      recognize that.
24          A.   Okay.
25          Q.   How did you happen to send this on December
```

| | |
|---|---|
| From: | Cronin, Mark |
| To: | Montgomery, Michelle; Guia, Lucretia |
| CC: | Stone, Kimball |
| Sent: | 9/6/2015 8:20:03 PM |
| Subject: | Fwd: Patterson |

# Redacted

Sent from my iPhone

Begin forwarded message:

**From:** "Cronin, Mark" <Mark.Cronin@aa.com>
**Date:** September 6, 2015 at 4:19:30 PM EDT
**To:** "Bonds, James" <James.Bonds@aa.com>
**Cc:** "Scialfa, Sean" <Sean.Scialfa@aa.com>, "Mase, Kevin" <Kevin.Mase@aa.com>, "Beach, Brian" <Brian.Beach@aa.com>
**Subject: Re: Patterson**

Jim,
We need to know where he said it and if passengers heard it, then employees heard it as well. If Whitehouse witnessed it then he can submit a complaint/statement and we can move forward.

Mark

Sent from my iPhone

On Sep 6, 2015, at 4:08 PM, Bonds, James <James.Bonds@aa.com> wrote:

Guys, Glenn Whitehouse chased me down in the terminal today and told me yet another story about Patterson where he actually in public was saying the airplane was a timebomb and could explode at any moment. This was for passengers and crew to hear.
I think we all need to confer and then convince labor that this dude needs a Sec 20 ASAP.
It sure seems like a John Thomas scenario.
We all have been approached by different crew members saying they are concerned for their own safety and the mental stability of Patterson

Captain Jim Bonds
Chief Pilot-MIA
James.Bonds@aa.com
305-526-1282 office
786-473-1968 cell


PLAINTIFF'S EXHIBIT 12

## Activity Sheet Detail

Print | Close Window

```
PP004        MIA  576006  CREWMEMBER PRE/POST ACTIVITY REPORT   MONTH STARTING 31AUG15 AND ENDING 30SEP15  PROCESS DATE    10/08/15
PATTERSON RS         07021 576006 MIA  1327-FB 76RP          PATTERSON RS         07022 576006 MIA  1327-FB 76RP              INT
                        MMAX   100.00                                                MMAX   100.00
H 9544990873          B 7042310909                           H 9544990873          B 7042310909
PROJ 74.45  GTD 0.00  PPROJ 74.45  SPROJ 74.45 CPA 0.00 FTCPA PROJ 71.17 GTD 71.17 PPROJ 71.17 SPROJ 71.17 CPA 0.00  FTCPA 0.00
ORIG GUAR    0.00 ADJ GUAR   0.00 ADJ GUAR PENDING NO        ORIG GUAR   0.00 ADJ GUAR   0.00 ADJ GUAR PENDING NO
D EXP 0.00   W2 0.00    I EXP 0.00 W2 0.00                   D EXP 0.00   W2 0.00    I EXP 85.55 W2 0.00
MISC EXP 0.00 W2 0.00 TTL 0.00                               MISC EXP 0.00 W2 0.00 TTL 85.55
 FLT TIME 672 HOURS/ 44.15 365 DAY/ 306.30                    FLT TIME 672 HOURS/ 7.52 365 DAY/ 234.21
FLT DUTY PERIOD TIME  168 HOURS/  0.00  672 HOURS/ 68.27     FLT DUTY PERIOD TIME  168 HOURS/  0.00  672 HOURS/ 10.04
CPA BORROWED TIME 0.00 BCPFU N  CPA PAYOUT TIME 0.00         CPA BORROWED TIME 0.00 BCPFU N  CPA PAYOUT TIME 0.00
AVBL SK 73.06    YTD SK ACRL 20.00     SK USED MTD 0.00      AVBL SK 73.06    YTD SK ACRL 30.00     SK USED MTD 0.00
    DD ST RMV ADD SEQ    FLT     FLT    SKED  STTL   ACT  GRTR  GTTL  DD ST RMV ADD SEQ    FLT     FLT    SKED  STTL   ACT  GRTR   GTTL
    31 54         DO                                                  31 54         DO
    01 54         DO                                                  01 54         DO
    02 54         24          0000    2400                            02 54         24          0000    2400
    03 54         24          0000    2400                            03 54         24          0000    2400
    04 54         921   -922  -922    7.58                            04 54         921   -922  -922    7.58         7.31  7.58
    06 54               D922          6.59 14.57                      06 54               D922          6.59 14.57  0.00  6.59 14.57 43.07
          921 EXP TAFB  43.12 VVI  5                                        921 EXP TAFB  43.07 VVI  5
MIDSEQ 24 - SEE LEG DETAIL                                  MIDSEQ 24 - SEE LEG DETAIL
    07 54         24          0000    2400                   RCD GATE HOLD - SEE LEG DETAIL
    08 54         24          0000    2400                    06 54              INTOVRDE                      7.58  0.00
    09 54         DO                                          07 54         24          0000    2400
    10 54         922   -922  -922    7.59                    08 54         24          0000    2400
    12 54               D922          6.58 14.57              09 54         24          0000    2400
          922 EXP TAFB  43.09 VVI  5                          10 54         24          0000    2400
MIDSEQ 24 - SEE LEG DETAIL                                    10 54 OT      922   -922  -922    7.59
    13 54         24          0000    2400                    12 54 OT            D922          6.58 14.57        0.00
    14 54         24          0000    2400                 MIDSEQ 24 - SEE LEG DETAIL
    15 54         DO                                          13 54         24          0000    2400
    16 54         922   -922  -922    7.59                    14 54         24          0000    2400
    18 54               D922          6.58 14.57              15 54         DO
          922 EXP TAFB  43.09 VVI  5                          16 54         922   -922  -922    7.59         7.52  7.59
MIDSEQ 24 - SEE LEG DETAIL                                    18 54               D922          6.58 14.57  0.00  6.58 14.57 42.48
    19 54         24          0000    2400                          922 EXP TAFB  42.48 VVI  5
    20 54         24          0000    2400                 MIDSEQ 24 - SEE LEG DETAIL
    21 54         DO                                          18 54              INTOVRDE                      7.59  0.00
    22 54         922   -922  -922    7.59                    19 54         24          0000    2400
    24 54               D922          6.58 14.57              20 54         24          0000    2400
          922 EXP TAFB  43.09 VVI  5                          21 54         DO
MIDSEQ 24 - SEE LEG DETAIL                                    22 54 PW      922   -922  -922    7.59
    25 54         24          0000    2400                    24 54 PW            D922          6.58 14.57       14.57  0.00
    26 54         24          0000    2400                 MIDSEQ 24 - SEE LEG DETAIL
    27 54         DO                                          25 54 PW   OT 820    F/O   -917    5.39
    28 54         922   -922  -922    7.59                    26 54 PW   OT              -918           5.50 11.29   11.29  0.00
    30 54               D922          6.58 14.57              27 54 PW      DO
          922 EXP TAFB  43.09 VVI  5                          28 54 PW      922   -922  -922    7.59
MIDSEQ 24 - SEE LEG DETAIL                                    30 54 PW            D922          6.58 14.57       14.57  0.00
END OF ACTIVITY                                           MIDSEQ 24 - SEE LEG DETAIL
                                                              29 54 PW
                                                              29 54 PW      D LEARN                           1.10  0.00
                                                          END OF ACTIVITY
                                                          END OF COMMENTS
```

# ATTACHMENT 2



Δ π EXHIBIT ___
Deponent_____
Date_____ Rptr_____
WWW.DEPOBOOK.COM

STATEMENT



To Whom It May Concern,

    I, the undersigned, am a Captain with American Airlines on the Boeing 767, based in Miami, FL. I currently have over 25 years of service with American and have served as a Captain on four aircraft types for well over 12 years. I am familiar with operations in Europe, Hawaii, South America and the continental US.

    I have personally known First Officer Rodney Scott Patterson for well over 12 years both in the context of the cockpit and with his service to the Allied Pilots Association.

    In September, 2015, FO Patterson contacted me for advice on how to be relieved for a military assignment from his AA duties. He had contacted the flight office the same day and not received a clearance. I instructed him to call the Chief Pilot on duty since it was after duty hours. A few minutes later he called me back to inform me that he had been released by the after hour Duty Chief Pilot. While he was away on military duty, he called me to inform me that MIA Chief Pilot Captain Jim Bonds had suspended him from work with pay (PW) while FO Patterson was performing military duty. I advised him I would speak to the flight office on his behalf when I returned the following week to work.

    On or about 28 September, 2015, I approached MIA Chief Pilot CA Jim Bonds and MIA Director of Flight CA Brian Beach in the Miami Flight Office. I advised both of them that the PW was inappropriate and a violation of Federal Law on several counts. Both replied that it wasn't military, even though the suspension occurred on 22 September (and we learned the complaint from CA Whitehouse was filed on 24 SEP). CA Beach's first response was Scott diverted an aircraft into Bolivia. I then asked him, where was the Captain when the plane landed? CA Beach responded in his seat. I replied in that case, "did Scott have a gun to his head?" CA Beach replied to me no. Then I advised CA Beach the co-pilots were just deviating and only a captain can divert the airplane. I advised both Chiefs we are all captains and you both know that co-pilots cannot divert an aircraft. At that point CA Beach informed me that it was multiple captains and multiple departments were involved. I stated that I hardly believe that FO Patterson would be involved with multiple departments when that is captain's responsibility.

    I stated to both chiefs that their actions were a violation of federal law, changing an employee's employment status while performing military duty. I believe that both chiefs resurrected a stale incident from almost a year prior that involved CA Whitehouse complaint about FO Patterson. The issue was resolved through professional standards and now is being used to divert attention for their violation of federal law.

    I have flown with FO Scott Patterson on a number of occasions both inside AA and outside. FO Patterson strikes me as a consummate professional pilot who will one day make a great captain for American. I have entrusted him with the lives of my family and never once doubted the successful outcome of the flight. On one such flight to South America, I observed FO Patterson to exercise good judgement in conducting the flight, when one of the other crew members was unable to return to the cockpit and presumed ill. Never did I feel threatened or over powered by FO Patterson who was acting in a professional manner. Patterson remained calm and composed the entire time and the aircraft landed safely without incident.

# ATTACHMENT 3

In closing, I am appalled at the behavior of a CA Whitehouse who has gone to great lengths to destroy the career and livelihood of FO Patterson. I believe that CA Whitehouse contacted the Miami Flight Office to assist them with covering up their violation of Federal Law, contacted US Customs with false allegations of smuggling contraband to a foreign country without one shred of proof to the contrary. This Captain's actions caused several delays for our customers and inconvenienced crewmembers being searched prior to boarding their flights. APA pilots are now labeled as smugglers over this. I am deeply disturbed to learn that he has allegedly contacted other pilots to generate false rumor and innuendo to support his erroneous actions against another APA member.

Does the Allied Pilots Association condone this course of action by a pilot?
Article 7 is the appropriate venue to address this matter.

Captain Brian Vitale
MIA/767/CA/I
Former MIA Base Administrator

STATE OF FLORIDA
COUNTY OF __Lee__

Sworn to (or affirmed) and subscribed before me this __16th__ day of __June__, 20__17__, by __Brian Nicholas Vitale__

Signature of Notary, Title

☑ Personally Known    OR Produced Identification ____ Type of Identification
Produced ____

JACQUES ANDRE GONZALEZ
Notary Public - State of Florida
My Comm. Expires Nov 14, 2018
Commission # FF 168347