IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

      Plaintiff,

vs.

AMERICAN AIRLINES, a Delaware
corporation,

      Defendant.

_____/

**Plaintiff's Reply to Defendant's Response to Motion to Preclude Dr. John Knippa from Providing any Opinion Testimony and/or to Limit His Testimony**

      Plaintiff, Rodney Scott Patterson, replies as follows to Defendant American Airlines, Inc.'s response to Plaintiff's Motion to Preclude Dr. John Knippa from Providing any Opinion Testimony and/or to Limit His ("Response")[DE 71]:

<u>Reply</u>

      ***First***, defendant's Response does not dispute the central facts referenced in the motion as to why  defendant should not be allowed to use Dr. Knippa as an expert witness and/or why Dr. Knippa's testimony should be limited, i.e, defendant never identified Dr. Knippa as an expert witness on any witness list and defendant failed to provide the expert witness disclosures required by Rule 26(a)(2).  Those disclosures include things — such as "the witness's qualifications, including a list of all publications authored in the previous 10 years," "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition" and "a statement of the compensation to be paid for the study and testimony in the

case" — which are not in the two letters to American Airlines that defendant's references as Dr. Knippa's reports.  So, this is not a case such as the First Circuit case <u>Downey v. Bob's Discount Furniture Holdings</u>, 633 F.3d 1 (1st Cir. 2011) (reversing on the ground that the district court erred in excluding the opinion testimony of the plaintiff's expert based on the 2009 version of Rule 26), cited by defendant, in which the plaintiff made a disclosure by the expert-disclosure deadline of an exterminator that would "be used by [the plaintiffs] to give opinion testimony and otherwise present evidence under F.R.E. 702, 703 and/or 705," and then, at a subsequent conference "represented that they would call Gordinier as an expert witness on the issue of causation." His opinion would be offered to show that the bedbugs probably had been delivered along with the purchased bedroom set. The plaintiffs' lawyer stated that Gordinier based this conclusion on his observation that the bedbugs were harboring in the bed frame and on his specialized knowledge that bedbugs were capable of living dormant and without feeding for many months." <u>Id</u>. at 4.  Also, while the court noted that the <u>Downey</u> witness did not hold himself out as an expert, Dr. Knippa does, and indicated that about 30-60 percent of his practice is devoted to expert witness work. [Knippa Depo., 12:14-21, DE 57-24]  While plaintiff deposed Dr. Knippa, the deposition was as a fact witness because he had not been disclosed an expert with the benefit of such information, and, as discussed further below, had to be limited by a protective order obtained by defendant concerning his deposition.   <u>See</u> Notes of the Advisory Committee on 1993 amendments to Rule 26 ("Revised Rule 37(c)(1) and revised Rule 702 of the Federal Rules of Evidence provide an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed."); <u>see also</u> <u>Mitchell v. Ford Motor Co</u>., 318 Fed. Appx. 821, 824 (11th Cir. 2009) ("Fed.R.Civ.P. 37(c)(1) states that when "a party fails to provide information or identify a witness as required by

[Fed.R.Civ.P.] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

In several of the other cases cited by defendant, the witnesses had been disclosed as experts, e.g., Salgado v. General Motors, 150 F.3d 735, 736 (7th Cir. 1998) ("Salgado specifically asked for time to complete the expert witness reports of Dr. Anthony Sances, Jr. and Mr. John M. Stilson."); Leathers v. Pfizer, Inc., 233 F.R.D. 687, 692 (N.D. Ga. 2006) ("On October 15, 2004, Plaintiff filed an amendment to the initial disclosures required under Federal Rule of Civil Procedure ("FRCP") 26, designating his general internist, Dr. Mark R. Firth as an expert for trial."); Chau v. NCL (Bahamas) Ltd., Case No. 16-21115-Civ-Williams/Simonton (May 3, 2017) (Magistrate Judge Order) ("On December 15, 2016, the Plaintiff submitted her Amended Expert Witness Disclosure which disclosed Dr. Roberta A. Kasman, M.D., Dr. Michael P. O'Reilly, M.D., and Dr. Huynh, M.D., but identified all three as treating physicians, ECF No. [56-1]"); Goins v. Royal Caribbean Cruise, Ltd., No. 16-21368-Civ-Williams/Simonton (S.D. Fla.) (Magistrate Judge's Order), *5 ("In this case the Plaintiff provided a 'Supplemental Treating Physician and Expert Witness Disclosure' of Dr. Leavitt on December 8, 2016, ECF [127-6]. Despite having served the report on the Defendant, the Plaintiff contends that he was not required to do so because Dr. Leavitt is a treating physician, not an expert.").

**Second**, Dr. Knippa himself refutes any contention by defendant that he treated Mr. Patterson or should be considered a treating physician, which plaintiff brought to defendant's attention before the Motion to Preclude was filed. See 06/11/18 conferral e-mails, appended as Attachment 1.  Dr. Knippa informed Mr. Patterson that "[t]here is no intent to solicit, nor is there any implication given by Dr. Knippa, of a 'doctor-patient' relationship. This means that usual

duties that would apply to your own doctor do not apply. ***For example, the doctor will not***

***provide any treatment***, ***nor will he counsel you regarding examination results***. . . . "

Disclosure & Consent for Mental Health Assessment form, Appended as Attachment 2.   So, this

case is distinguishable from Bryan v. Whitfield, Case No. 3:14-cv-341/MCR/EMT (M.D. Fla.

July 15, 2015) (order denying defendants' Rule 60(b) motion on defendants' motion in limine),

in which the Middle District Court denied the defendants' motion to limit prognosis testimony as

"falling within the scope of each physician's care and treatment of Bryan"  where the  plaintiff

"identified three of his physicians as 'non-retained' experts" Id. at 1-2. In this case, Dr. Knippa

clearly did not treat Mr. Patterson and was never identified as an expert. However, even as to

treating physicians, Bryan made clear that the testimony of the treating physicians, who were not

disclosed as experts in compliance with the rules, "will likely not be permitted to testify

regarding matters pertaining to causation, as the Eleventh Circuit has found that causation

opinions typically fall outside the scope of a treating physician's care and treatment and thus

cross the line from lay to expert testimony."  In reaching that decision, Bryan acknowledged

another treating physician case cited by defendant Baratta v. City of Largo, No. 8:01-CV-1894,

2003 WL 25686843, at *3 (M.D. Fla. 2003), in which "the relevant question [was] whether the

treating physician acquired his opinions as to the cause of injuries directly through ***treatment***."

(emphasis). The Chau case cited by defendant also involved treating physicians.

        ***Third***, even if, by way of argument only, Dr. Knippa were a treating physician, defendant

is incorrect that it is inappropriate to apply the Daubert v. Merrell Dow Pharmaceuticals, Inc.,

509 U.S. 579 (1993) factors to his testimony, especially in a case such as this one where his

testimony is unrelated to any treatment.  See Leathers v. Pfizer, Inc., 233 F.R.D. 687, 693 (N.D.

Ga. 2006) ("Dr. Firth's status as Plaintiffs treating physician does not immunize his testimony

from <u>Daubert</u>. The subject of this motion to exclude is Dr. Firth's opinions regarding causation. These opinions clearly fall within FRE 702's scope of 'scientific knowledge.' Therefore, Dr. Firth's opinion is an expert opinion and must satisfy <u>Daubert</u> and Rule 702"); <u>see also</u> <u>Wilson v. Taser Int'l</u>, 303 Fed.Appx. 708, 712 (11th Cir. 2008) ("Although we agree that a treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, once the treating physician expresses an opinion unrelated to treatment which is 'based on scientific, technical, or other specialized knowledge,' that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by <u>Daubert</u>. <u>See</u> <u>United States v. Henderson</u>, 409 F.3d 1293, 1300 (11th Cir. 2005); <u>Leathers v. Pfizer, Inc.</u>, 233 F.R.D. 687, 688 (N.D.Ga. 2006).").

***Fourth***, as noted in the Motion to Preclude (at 6), despite failing to properly disclose Dr. Knippa as required by the Court's order and Rule 26(a), defendant seeks to call Dr. Knippa at trial to provide opinion testimony about alleged psychological disorders, psychological testing and concerns related to a patient he never treated—Mr. Patterson, something that American should have known when this action filed.  Defendant seeks to offer such testimony notwithstanding that its own corporate medical director, Dr. Ahtone, conceded that Dr. Knippa's report contained no indications of any neuropsychological deficits, psychopathology or personality disorders. <u>See</u> Plaintiff Response to Defendant's Statement of Facts, ¶ 7, [DE 73, at 7] citing Ahtone Depo, at 55:5-61:5 [DE 57-3].[1] <u>See</u> <u>Warren v. Delvista Towers Condo. Ass'n,</u>

---

[1]Examples of his testimony include:

      Q.    Yes or no?

      A.    He does—he did not confirm one way or the other.  That is why he said he thought additional evaluation would be in order.

<u>Inc</u>., Case No. 13-23074-civ-Martinez/Goodman, *5-6 (S.D. Fla. Jul. 30, 2014) (Order granting

motion to strike expert) (granting motion to strike untimely disclosed expert on the issue of the

dog's breed noting defendants "were certainly aware that the dog's breed might come up" and,

"[a]s it stands, Defendants do not have sufficient justification for untimely disclosing Dr. Stone,

and the prejudice it would cause cannot be cured or ameliorated."). As <u>Bryan</u>, one of the cases

defendant cites, makes clear, even a treating physician not disclosed as an expert cannot provide

testimony that would "fall outside the scope of a treating physician's care and treatment and thus

cross the line from lay to expert testimony." <u>Bryan</u>, at 1-2.

---

[1](...continued)
        Q.      Did Dr. Knippa in his report point to any recognized personality disorder,
yes or no?

MR. CLOAR-ZAVALETA:  Object to the form.

        A.      I did not see anything.  No.

Depo of Jeral Ahtone, M.D.,  at 57:19-68:1.

                                    *         *         *

        Q.      And you do not consider the behavior that is outlined in Exhibit 1 to be
descriptive of overt acts—

MR. CLOAR-ZAVALETA:  Object to the form.

BY MR. AMLONG:

        Q.      —indicative of a personality disorder, correct?

MR. CLOAR-ZAVALETA:  Object to the form.

        A.      No, I'm unable to determine that.  That's not enough information to give
someone a career-ending diagnosis.

<u>Id</u>. at 60:20-61:5. [DE 57-3, at 60-61]

Further, Dr. Knippa evaluated Mr. Patterson March 16 and 17 *after* defendant knew he had litigation in mind and it did as well, because:

*One,* the December 7, 2015 e-mail from defendant's HR Manager Veronica Blakely[2] indicated that HR had learned during its investigation that Mr. Patterson said "he was going to hire a lawyer and that his mother was Corporate Counsel for US Airways" — which e-mail predated the Section 20 order to Mr. Patterson to undergo the evaluation by Dr. Knippa and the January 14, 2016 correspondence referenced in Dr. Knippa's report, DE 58-5, at 1;

*Two*, American responded to Patterson's pending Department of Labor USERRA complaint February 29, 2016 (Exhibit 24 to Deposition of James Bonds, at 2, appended as Attachment 4 (without exhibits), noting that Mr. Patterson's fitness for duty was "in question.".

*Three*, Dr. Knippa's March 21, 2016 report indicated that

> Mr. Patterson was asked whether there is any grievance or lawsuit at the current time. He was understood to indicate he has an attorney, has filed a complaint with the US DOL. "I have an open issue with USERRA." He was understood to indicate he hopes to help the employer understand this matter which he sees as serious. He provided paperwork that he explained documents employer obligations regarding reservists' being called for active duty. . . .

DE 58-5, at 2.

Defendant's argument that Dr. Knippa's testimony would be based on his "personal knowledge" is refuted by, among other things, portions of his report indicating that he is relying on third party information, e.g., from his staff ("Staff commented that, though the sign on the window to the reception area states that individual should not open the window, but should ring the bell, he opened the window. Staff also commented that Mr. Patterson freely walked in/out between the lobby and professional suites without stopping to check in. While this is clearly atypical and unexpected, staff are asked to allow him this option,") DE 58-5, at 6; American

---

[2]The  12/07/15 E-mail is  appended as Attachment 3.

Airlines employees  (e.g., "complaints noted in correspondence 01/14/16," DE 58-5, at 2) and

"work allegations,"  DE 58-5, at 2, he discussed with Mr. Patterson; and information from

American Airlines regarding "concerns" regarding Mr. Patterson's "mental  judgment," "atypical

interactions with coworkers" and "reports that suggested a pattern of false aggrandizing

statements," (some of which Dr. Knippa noted were also mentioned in a "01/16/16 letter by

Captain Beach")  DE 58-5, at 1, 2; 58-5, at 11.

*Fifth and finally,* defendant's failure to properly disclose Dr. Knippa as an expert also is

prejudicial and of a concern for several other reasons including:

*One,* the discovery deadline passed June 6 [DE 49] and the parties have filed their

motions for summary judgment and responses to those motions DE 59, 62, 68, 73, 74, 76];

*Two,* defendants objected during deposition to plaintiff's discovery of certain

information from Dr. Knippa based on a discovery order it obtained to limit testimony from him,

see, e.g., Knippa Depo., 15:1-7,[3] 15:25 - 16:7 [DE 57-24]; and,

---

[3]For example:

    MR. MORALES [American Airlines Counsel]:  This is Tristan.  I'm just gonna take this opportunity to note as it may be relevant to a line of questioning that follows this that there's a magistrate order on the subject of questioning Dr. Knippa on materials related to other pilots at American, specifically that's the February order from the magistrate.

Deposition of John Knippa, Ph.D., at 15:1-7 [DE 57-24]

          *    *    *

    MR. MORALES:  Objection.  And I'll note that there was a stipulation made to the magistrate.  There was a motion to compel additional information from American about American pilots examined by Dr. Knippa of any—and the court rejected plaintiff's request for further information in light of American's objection regarding the privacy and confidentiality interests of those other pilots so we object to the question

Id. at 15:25 - 16:7

(continued...)

*Three*, Dr. Knippa is a non-disclosed witness, through whom defendant seeks to funnel expert psychological opinion despite failing to properly disclose him as one (as noted in plaintiff's summary judgment responsive filings, DE 75, at 8); whose findings concerning Mr. Patterson have been contradicted by the four practitioners listed in ¶ 38 of Plaintiff's Facts, DE 73, at 7; and whose administration of the tests to Mr. Patterson the day after Mr. Patterson arrived in California, three time zones away from his home, has been criticized as unsound by Dr. Caddy, a clinical psychologist and former professor of psychology who has taught psychometrics, or psychological testing, at the undergraduate and graduate levels. Caddy Depo, DE 57-27, at 57:4-15, 69:9-20, 68:20-69:1; and DE 73, at 7.

Further, contrary to defendant's argument, expert testimony can be struck or limited even when "central to the case."  See Warren, at 3 ("Courts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense."), citing Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este, 456 F.3d 272, 277-78 (1st Cir. 2006) (affirming preclusion even though the result was to exclude evidence critical to plaintiff's claim); and Bearint v. Dorell Juvenile Grp., Inc., 389 F.3d 1339, 1348-49 (11th Cir. 2004) (excluding untimely expert report).

Wherefore, plaintiff respectfully request that the Court enter an order granting the motion to preclude, and granting plaintiff such other and further relief as the Court deems appropriate.

## Certificate of Service

I hereby certify that a true and correct copy of the above was served via the Southern District of Florida's CM/ECF system on this  day to the individuals listed below.

---

[3](...continued)

Respectfully submitted,

July 2, 2018

*s/ Jennifer Daley*
WILLIAM R. AMLONG
WRAmlong@TheAmlongFirm.com
Florida Bar Number 470228
KAREN COOLMAN AMLONG
KAmlong@TheAmlongFirm.com
Florida Bar Number 275565
JENNIFER DALEY
Florida Bar Number 856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street,
Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983

NOEL C. PACE *(pro hac vice)*
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
(305) 710-3713
***Attorneys for the Plaintiff,***
***Rodney Scott Patterson***

<u>Service List</u>

WILLIAM R. AMLONG
WRAmlong@TheAmlongFirm.com
Florida Bar Number 470228
KAREN COOLMAN AMLONG
KAmlong@TheAmlongFirm.com
Florida Bar Number 275565
AMLONG & AMLONG, P.A.
500 Northeast Fourth Street,
Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983

NOEL C. PACE
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
(305) 710-3713

***Attorneys for the Plaintiff,***
***Rodney Scott Patterson***

MICHAEL A. HOLT
mholt@shb.com
SHOOK, HARDY & BACON L.L.P.
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
(305) 358-5171

MARK W. ROBERTSON
mrobertson@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
(212) 326-2000

TRISTAN MORALES
tmorales@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, Northwest
Washington, District of Columbia 20006
(202) 383-5300 / 383-5414 Fax

Cameron Cloar-Zavaleta (*Pro hac vice*)
Cameron.R.Cloar@aa.com
AMERICAN AIRLINES, INC.
4333 Amon Carter Boulevard
Ft. Worth, Texas 76155
Telephone: (817) 963-1234

***Attorneys for the Defendant,***
***American Airlines, Inc.***

\\amlong3\cpshare\CPWin\HISTORY\180601_0001\1538 17D