UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

### Plaintiff's Reply re: Rule 56 Motion for Partial Summary Judgment

Plaintiff, Rodney Scott Patterson, replies as follows to American Airlines, Inc.'s Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (DE 76):

### Introduction and Summary

American Airlines, Inc. ("American") summary-judgment response (DE 79), **One**, ignores the plain language of USERRA,[1] under which Patterson clearly made a prima facie showing that his going on military duty was a "motivating factor" in the decision to put him on no-fly status no more than

---

[1] Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, et seq.

two days later; **Two**, asserts a newly embraced duty to "protect the flying public," which began to exist in September 2015, after Patterson went on military duty, but apparently had not existed in March and April 2015, during which a Corporate Security investigation found the same allegations to be "unfounded"; **Three**, failed to address the issue that, notwithstanding its blind quotation of anonymous informants as calling Patterson "a habitual liar/story teller" and questioning "his ability to operate the aircraft safely," no one within American—i.e., neither Labor Relations, with which the two former chief pilots testified that the push for a neuropsychological exam originated, nor the two chief pilots, whom Labor Relations insist were the originators—can clearly articulate why it was necessary to subject Patterson to an irregular neuropsychological examination; **Four**, acknowledges that Patterson filed his USERRA complaint with the Department of Labor January 25, 2016, but insists that this predated "any alleged acts by American," and thus, "the complaint could not possibly have caused American to take any alleged adverse action," DE 76-1, at 9, ¶ 22, notwithstanding that the actual grounding did not occur until March, and that it was based on a "not fit for duty" report that American's Corporate Director of Medicine acknowledges contained no objective findings, and, **Five**, insists that American's conditioning Patterson's access to a neutral examining neuropsychologist on his dropping his USERRA claims was merely inadmissible settlement negotiations.

**Point 1**:  **Patterson makes out a prima facie case under USERRA**

No matter how it might have been phrased in the complaint,[2] plaintiff sufficiently pleaded that when he asked for vacation time to report to the Pentagon to go on duty, he was giving "notice," see 38 U.S.C.§ 4303(8), that he was about to use accrued time off, see § 4316(d), to engage in "service in the uniformed services," § 4303(13), to which James Bonds, an American Chief Pilot at Miami International Airport, responded by leaving a voice-mail message stating American was "really short of pilots" and "we really needed him to fly [because] we didn't have the bodies."  Deposition of James Bonds, DE 57-7, at 34:13-20. Bonds recalled that he had called Patterson because "I had heard that he had asked for an EO and I requested that he not do that, our money was tight," id. at 62:25-63:2, and "that I needed him to fly."  Id. at 76:25-77:6.

Whether Bonds placed Patterson on paid/withheld status the following day, September 22,[3] or two days later, September 24, there is still sufficient temporal proximity to infer that Patterson's going on military duty was a "motivating factor" in American's initial decision to place him on no-fly

---

[2]Although plaintiff's counsel, who is not a reservist, used the term "active duty" colloquially in the complaint, that makes no difference. USERRA protects all stripes of duty.  § 4303(13).

[3]See Deposition of Rodney Scott Patterson, DE 57-1 at 232:23-233:12 (identifying Exhibit 12 as an Activity Pay Sheet) and 241:19-242:7 (discussing American document showing "PWd" status September 22).

status.  See Coffman v. Chugach Support Services, Inc., 411 F.3d 1231, 1238-01239 (11th Cir. 2005).

**Point 2:** **Patterson's alleged behavior occurred mostly in 2014. The only two things that changed between March and September 2015 were that, *One*, Corporate Security had investigated in March and found nothing, and, *Two*, Patterson had gone on military duty in September when Bonds wanted him to stay and fly.**

Although there is a strong argument to be made that the allegations made by Glenn Whitehouse should have been investigated by American as part of its duty "to ensure the safety of the flying public," DE 76, at 3:

*First*, the allegations were investigated — in March 2015, by Corporate Security, which Captain Brian Beach, another Miami International Airport Chief Pilot said "wanted … the whole picture of the situation with Scott Patterson."[4]  Michelle Montgomery, a Senior Manager of Labor Relations/Flight and American's Rule 30(b)(6) designee, testified that Beach, also wanted Labor Relations and Human Resources to look into the

---

[4]Deposition of Brian Beach, DE 57-13, 45:18-46:14, 49:1-20, and Exhibit 2C (a copy of which is appended as Attachment 1 to this Reply) discussing his having turned over to Corporate Security Whitehouse's

allegations at the time because "on paper they're very concerning,"[5] but that the allegations were determined by Corporate Security to be "unfounded."[6]

**Second**, the September 24 letter from Whitehouse to Beach was "substantially similar to the allegations contained in Captain Whitehouse's March emails to Captain Beach and forwarded to corporate security."[7]

**Third**, although Human Resources investigated Whitehouse's allegations, at the end of the investigation "we didn't have anything other than a statement from Captain Whitehouse."[8]

**Point 3:** How is American going to *prove* that it would have taken the same action—i.e., sending Patterson for a neuropsychological examination, and then grounding him as a result of its non-findings—when the two alleged decision-makers cannot agree on who made the decision or articulate any specific rationale for it?

Within the substantially more employer-friendly jurisprudence of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, an employer must "the defendant's explanation of its legitimate reasons must be clear and reasonably specific." Texas Dept. of Community Affairs v.

---

[5]Oral and Videotaped Deposition of the Corporate Representative of American Airlines Michelle A. Montgomery, DE 57-25, at 21:22-24:2, and Exhibit 74 Exhibit 2C (a copy of which is appended as Attachment 2 to this Reply).

[6]Id. at 16:19-21.

[7]Id. at 35:21-36:1.

[8]Id. at 75:19-76:1.

Burdine, 450 U.S. 248, 258 (1981). Under USERRA, American Airlines has the burden of proof as to its claim that it would have sent Patterson for the neuropsychological examination by John Knippa, Ph.D. How is it going to do that when: **First**, such decisions are made based on a system in which American's Rule 30(b)(6) designee testified that the Chief Pilots are the sole decision makers, DE 66, at 3, ¶ 13, but yet, **Second**, each of the two chief pilots who signed the letters ordering Patterson to the neuropsychological examinations, and giving specific reasons for doing so, testified that they no reason to believe anything in the letters, and Beach testified that he was simply told to sign it. DE 61, at 7, ¶ 14. Such a "legitimate, non-discriminatory reason" for an employment action would not even suffice under Title VII, under which the articulated reason also must be what actually motivated the employment decision, as opposed to a hypothetical, after-the-fact concoction.[9]

---

[9]"An employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." Turnes v. Amsouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994) (rejecting banks attempted use of a poor credit report as a reason for its failure to hire a black job applicant because the credit report was not pulled until after the plaintiff had filed a charge of discrimination with the EEOC). Accord EEOC v. Alton Packaging Corp., 901 F.2d 920, 925 (11th Cir. 1990) (plant management could not use white job applicant's better qualifications as legitimate, non-discriminatory reason for passing over black internal candidates because managers made that decision before white candidate applied); Hill v. Seaboard C. L. R. Co., 767 F.2d 771, 774 (11th Cir. 1985) ("failure to promote a plaintiff because the person actually promoted was more qualified is a nondiscriminatory reason, but the
(continued...)

American has not demonstrated that it possessed at the time that it ordered Patterson to undergo a neuropsychological fitness-for-duty examination that it had any admissible evidence based on which a reasonable jury could find that this was a legitimate action as opposed to one more step upon the continuum of retaliation that began immediately after Patterson disobeyed Bonds's request not to go on duty September 22.

**Point 4:** **American did not change Patterson's status from 'paid/withheld' to 'sick' until March 24, 2016 — after its lawyer had written the Department of Labor challenging Patterson's USERRA complaint and based upon a 'not-fit-for-duty' report that its Corporate Medical Director acknowledges found nothing wrong with Patterson.**

American was aware shortly after Bonds initially put Patterson on no-fly status that there were USERRA issues at play. For example, as Bonds was e-mailing his colleagues and bosses about how American Patterson might "hang himself" through the manner in which he was reporting his on-duty time during September, Mark Cronin, the Managing Director of Flight/East at the time was warning those in the e-mail chain about how USERRA issues "can get really tangled fast. DE 61-14.

And during the examination, Knippa had questioned Patterson about his USERRA complaint, as well as any other grievances he might have

---

[9](…continued)
articulation of that reason must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the time the decision was made").

against American, which he included in his report to American.  See Knippa Report, DE 58-5, at 2.

Beach sent Patterson a letter notifying him that, based on the fitness-for-duty examination that he had, he would no longer be allowed to fly for American, effective March 25, 2016.  He did so based on a report from Knippa that Ahtone characterized as saying essentially nothing:

> That indicates that he doesn't have a complete answer at this time.  There are suggestions that that may be the—maybe what's going on, but that in a short evaluation like this, it—he did not come to—down to that conclusively.
>
> In his next paragraph he says that, you know, personal counseling may help further clarify that issue.  That's his recommendation, and that's—that was the end of it.  I mean, that's where it ended—that's where it, yeah, ended his report.[10]

The decision was effective two months following Patterson's filing his USERRA complaint, and less than a month after Lucretia Guia, an American lawyer, wrote the DOL, falsely stating that Patterson had told Bonds not that he wanted to go on military duty, but rather that he wanted to avoid flying with a pilot who was a member of his union's Professional Standards Committee.[11]

---

[10]Ahtone Depo, DE 57-3, 54:15-55:1.

[11]See February 29, 2016 letter from Lucretia D. Guia to Oscar G. Fuentes, which is appended, without exhibits, as Attachment 4, at 1-2; compare Bonds Deposition, DE 57-7, at 68:11-69:5.

That sequence of events tracks the classic prima facie case for engaging in protected activity, e.g., protected activity (filing the complaint), knowledge by the employer of the protected activity (shown by Guia's letter to the DOL and Knippa's report to American), followed by an adverse action (being grounded) that is closely temporally proximate to the protected activity.  See, e.g., Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) (Title VII).

**Point 6:** American's offer to Patterson's union, i.e., to allow Patterson to have a fair review of his neuropsychological and psychological functioning—but only if he would abandon his USERRA claim—is both evidence of retaliation, and further retaliation.

American's settlement offer to Patterson's union, the Allied Pilots Association, occurred prior to this case's ever being filed, so it is not a settlement offer within this litigation.  Rather, the offer is itself retaliation because it conditions Patterson's union's receiving relief for the wrongful application of a contractual rule allowing fitness-for-duty exams upon Patterson's giving up his rights under USERRA—which rights are themselves protected against being burdened by an employer.  See, e.g., Uforma/ Shelby Bus. Forms v. NLRB., 111 F.3d 1284, 1294 (6th Cir. 1997) ("Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats."  See also Vulcan Hart Corp. (St.

Louis Div.) v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983) (Rule 408 did not bar evidence of demand during negotiations to settle grievance that employee resign his union office when General Counsel did not seek to prove validity of grievance)."

Based on the authorities cited and the arguments presented, plaintiff, Rodney Scott Patterson, respectfully requests this Court to:

- grant summary judgment on both counts for him, and against defendant, American Airlines;
- deem the violations to be willful;
- order his immediate reinstatement as a pilot, with the same seniority he would have enjoyed had he never been grounded;
- set a jury trial on damages, and
- grant such other and further relief as is just.

Respectfully Submitted,

/s/ William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com
JENNIFER DALEY
Florida Bar No.: 856436
JDaley@TheAmlongFirm.com

NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street

        El Portal, FL
        (305) 710-3713


        AMLONG & AMLONG, P.A.
        500 Northeast Fourth Street
        Second Floor
        Fort Lauderdale, Florida 33301
        Telephone: (954) 462-1983
        Facsimile: (954) 463-5008

        ***Attorneys for Plaintiff,***
         ***Rodney Scott Patterson***

## Certificate of Service

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished filed using the ECF System of the Southern District of Florida, 2018 on all counsel or parties of record.

        <u>/s/ William R. Amlong </u>
        WILLIAM R. AMLONG