**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

      Defendant.

_____/

**AMERICAN AIRLINES, INC.'S MOTION IN LIMINE**
**TO EXCLUDE EVIDENCE OF SUBSEQUENT MEDICAL REPORTS**

Defendant American Airlines, Inc. ("American") respectfully requests that the Court enter an order pursuant to Federal Rules of Evidence 103(d), 401, 402, and 403 precluding Plaintiff from making any references, allusions, suggestions, inquiries, introducing any evidence (for impeachment or otherwise), and from making any argument at trial or during voir dire regarding medical reports or evaluations obtained by Plaintiff *after* March 24, 2016.  In support of this motion, American states:

**BACKGROUND**

In this USERRA action, Plaintiff claims that a "motivating factor" for American withholding him from duty as a first officer of a 767 aircraft in September 2015, and continuing to withhold him from duty since that time, was a request by Plaintiff for time off to serve in the military.  (Compl. ¶ 29, ECF No. 1.)  Plaintiff, however, now concedes that he actually did not make a request to take active military duty but a request for time off to attend an event with his

wife.  (ECF No. 59 at 11-12.)  Plaintiff also claims that a "motivating factor" for American continuing to withhold him from duty to the present was Plaintiff's filing a USERRA complaint with the Department of Labor ("DOL") on January 25, 2016.  (Compl. ¶ 40.)

As demonstrated in its summary judgment motion, American withheld Plaintiff from duty on September 24, 2015 because another long-time pilot filed a formal workplace harassment complaint on that day that raised serious concerns regarding Plaintiff.  (*See* ECF No. 59-1.)  Even Plaintiff concedes that American withholding him from duty "would not have arisen but for" the complaint by the other pilot, and also concedes that in his prior 15 years at American, he had never had a single issue taking military leave.  (*See* ECF No. 57-28 at 30.)

During American's investigation of the employee complaint against Plaintiff, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" whose conduct led "multiple employees . . . to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'"  (ECF No. 57-26.)  Based on this information, in accordance with Section 20 of the American/Allied Pilots Association Collective Bargaining Agreement (the "CBA") governing Plaintiff's employment, American referred Plaintiff for evaluation by an independent neuropsychologist.

On March 21, 2016, that doctor reported to American that Plaintiff is "NOT FIT FOR DUTY as a [pilot] on the basis of impaired performances on cognitive assessment."  (ECF No. 57-6 at 13.)  Since that time, American has withheld Plaintiff from duty and informed him that it will continue to withhold him until he returns to the same independent neuropsychologist (or a comparable examiner approved by American) for reevaluation in accordance with Section 20 of the CBA—the same as would be required for any pilot found unfit for duty.

Plaintiff contends that after American withheld him from duty on September 24, 2015 and after American determined on March 24, 2016 that Plaintiff was "NOT FIT FOR DUTY" based on the independent neuropsychologist's report, Plaintiff consulted other doctors who disagree with the independent neuropsychologist.  (*See, e.g.*, Compl. ¶¶ 20–21.)  But those doctors' opinions are irrelevant both to American's motivation for withholding Plaintiff from duty as well as its decision to continue to withhold him.  American's earlier decisions to withhold Plaintiff from duty based on the workplace harassment complaint simply could not be impacted by a doctor's opinion obtained later.  And American's decision to continue to withhold Plaintiff from duty on the basis of the independent neuropsychologist's report could not have been impacted by the opinions of Plaintiff's doctors who apparently agreed to "play ball" with Plaintiff after the fact because that is not how the process set forth in Section 20 of the CBA works.[1]

American thus seeks an order *in limine* preventing Plaintiff from introducing this improper evidence concerning medical reports or evaluations from after March 24, 2016 or from making similar arguments or suggestions in the presence of the jury.

## **LEGAL STANDARD**

Federal Rule of Evidence 103(d) specifically requires that, "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any

---

[1] After the close of discovery, Plaintiff disclosed an email between Plaintiff and his testifying expert (Dr. Caddy) that confirm Plaintiff was "doctor shopping."  In that email, Plaintiff, in referring to a doctor who reaches a conclusion that does not support Plaintiff and his testifying expert's position (but actually agrees with the independent neuropsychologist who found Plaintiff not fit for duty), states: "*If Dr. Bercaw will play ball with you, fine. . . . If he won't play ball we will cut bait and go fish elsewhere*."  (ECF No. 79 at 2) (emphasis added). Preventing doctor shopping is one of the primary reasons why, under Section 20 of the CBA, the same doctor or a comparable doctor approved by American must reevaluate the pilot in order for a pilot to return to work after being found unfit for duty.

means." "The purpose of a motion in limine is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury." *United States v. Jim*, No. 14-cv-22441, 2016 WL 7538942, at *1 (S.D. Fla. May 5, 2016) (Altonaga, J.) (citations omitted). Resolving these types of evidentiary issues before trial makes it possible to "avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury." *Id.*

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, it may be inadmissible for other reasons. Fed. R. Evid. 402. For example, relevant evidence is not admissible if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence." Fed. R. Evid. 403.

In order to prevail on his claim, Plaintiff must first prove that his military service was "a motivating factor" in American's decision to withhold him from duty on September 24, 2015 or to keep him withheld from duty since that time. 38 U.S.C. § 4311(c)(1); *see also* Pattern Civ. Jury Instr. 11th Cir. 4.18 (2013). A "motivating factor" means something "the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005). Even if military service, or exercising a right protected by USERRA, is a motivating factor, a defendant has not violated USERRA if "the action would have been taken in the absence of such [military service]." 38 U.S.C. § 4311(c)(1). Only if a jury determines that an employer's actions were: (1) motivated by the plaintiff's military service or exercising a right protected by USERRA; and (2) that the

employer would not have taken the action in the absence of the plaintiff's military service, may the jury consider damages.  *See* Pattern Civ. Jury Instr. 11th Cir. 4.18 at Special Interrogs.

**ARGUMENT**

Any testimony, argument, or evidence concerning medical reports from Plaintiff's doctors *after* March 24, 2016 is irrelevant and will needlessly prolong the trial.

### I.    Medical Reports from After March 24, 2016 Are Irrelevant.

Any testimony or evidence offered in an attempt to refute the independent neuropsychologist's report concluding that Plaintiff is "NOT FIT FOR DUTY" were necessarily created <u>after</u> American withheld Plaintiff from duty and <u>after</u> American required Plaintiff to attend a fitness for duty evaluation.  By definition, American could not have relied on or taken into account this information at the relevant times—September 24, 2015 and March 24, 2016—because it did not exist.  Therefore, any testimony regarding medical reports obtained after March 24, 2016 is irrelevant and should be excluded.

Plaintiff asserts that his military service and/or USERRA complaint with the DOL were a "motivating factor" for American "refusing to restore him to flight status upon receipt from a neurologist and a neuro-psychologist of reports declaring him for duty."  (Compl. ¶¶ 29.f, 40.f.) Once American determined on March 24, 2016 that Plaintiff was "NOT FIT FOR DUTY" on the basis of the independent neuropsychologist's report, however, Plaintiff could return to duty only if he returned to the same independent neuropsychologist (or a comparable examiner approved by American to re-evaluate Plaintiff) in accordance with Section 20 of the CBA—which he has refused to do.  *See e.g.*, Beach Dep., Ex. 44 [August 22, 2016 Email from Brian Beach to Plaintiff]: ("If you believe that you are ready to return to work, we will schedule an appointment with Dr. Knippa to conclude the Section 20 process.") (Attached as Ex. 1.)  It is thus irrelevant that Plaintiff

*thereafter* submitted a report from a hand-selected "neurologist and a neuropsychologist" purporting to certify his fitness for duty.

The only possible way that subsequent doctors' opinions could be relevant would be, if under Section 20 of the CBA, American did accept opinions of doctors who a pilot unilaterally selects—something that it indisputably does not do. (*See* ECF No. 59 at 9.) As explained in American's summary judgment motion, to permit a pilot to return to work based on an evaluation by a doctor of his choosing would be contrary not only to the terms of Section 20 of the CBA, but American's obligation to ensure the safety of its passengers. (*See* ECF No. 59 at 9, 13; *see also, e.g., Witter v. Delta Airlines, Inc.*, 966 F. Supp. 1193, 1201 (N.D. Ga. 1997) (noting "public obligation to ensure that Plaintiff was fit to fly."))

Further, any claim by Plaintiff that Section 20 of the CBA should be interpreted or applied to require American to return him to work based on the opinion of a doctor of his choosing is not within this Court's jurisdiction because any such dispute constitutes a "minor dispute" under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (the "RLA"). Under the RLA, a dispute that involves the interpretation or application of a CBA is a "minor dispute." *See, e.g., Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 722–23 (1945); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1049 –50 (11th Cir. 1996) ("The distinguishing feature of a . . . "minor dispute" is that the dispute may be conclusively resolved by interpreting the existing collective bargaining agreement.") (internal quotations and punctuation omitted). Courts do not have jurisdiction to decide the merits of minor disputes. *See, e.g., Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 36–38 (1963). Rather, arbitration tribunals, generally referred to as "boards of adjustment," have "mandatory, exclusive and comprehensive" jurisdiction to adjudicate minor disputes. *Id.* at 38. Thus, as detailed in American's Motion in Limine (ECF No. 95), the RLA requires that any dispute

between the parties regarding the application or interpretation of Section 20 (or any other provision in the CBA) be subject to the exclusive jurisdiction of the applicable board of adjustment. *See, e.g.*, *Stewart v. Spirit Airlines, Inc.*, 503 F. App'x 814, 819 (11th Cir. 2013) (affirming dismissal of pilot retaliation claims against air carrier as "'minor disputes' under the RLA, subject to mandatory arbitration and divesting the district court of jurisdiction.").[2]

## II.   Testimony Regarding Medical Reports from After March 24, 2016 Would Needlessly Prolong the Trial and is Likely to Confuse the Jury.

Because any testimony regarding medical reports obtained after March 24, 2016 is irrelevant, it would needlessly extend or prolong the trial and is likely to confuse the jury. Plaintiff has identified four hand-selected doctors that he intends to call to testify regarding such medical reports. (Plaintiff's Notice of Expert Disclosure: Glenn R. Caddy, Ph.D, John D. Hastings, M.D., Gary G. Kay, Ph.D., Ibrahim Abi-Rafeh, M.D., November 1, 2017) (attached as Exs. 2 through 5, respectively). Plaintiff seeks improperly to use the testimony of his hired expert (Caddy) and three other doctors to suggest that the independent neuropsychologist was wrong in his conclusion that Plaintiff is unfit for duty.

Instead of assisting the jury in determining liability (which turns on whether American was motivated by Plaintiff's military service in withholding him from duty and not permitting him to

---

[2] If the parties have a dispute regarding the interpretation or application of Section 20 of the CBA, this matter would have to be stayed to permit the parties' time to obtain a decision from the applicable board of adjustment. *See, e.g., Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) ("[The] suit must be stayed until the dispute over the agreement is resolved by the only body authorized to resolve such disputes, namely an arbitral panel."); *Air Line Pilots Ass'n v. Northwest Airlines, Inc.*, 627 F.2d 272, 278 (D.C. Cir. 1980) ("[T]he appropriate procedure is for the court to suspend its own proceedings until the end of the arbitral process or until it is clear that arbitration cannot be obtained."); *Miller v. Am. Airlines, Inc.*, 03 C 7756, 2004 WL 2203425, at *4 (N.D. Ill. Sept. 29, 2004) ("[M]andatory arbitration provision of the RLA strips this Court of subject matter jurisdiction and 'precludes' plaintiffs from proceeding" in federal court until after resolution of the arbitration.").

return until cleared for duty pursuant to the terms of the CBA), this evidence will spawn an irrelevant trial-within-a-trial because the jury will never be asked whether the independent neuropsychologist's findings were correct. As such, any reference to any medical reports or evaluations after March 24, 2016 should not be permitted.[3]

## CONCLUSION

For these reasons, American respectfully requests that this Court enter an order prohibiting Plaintiff from offering any evidence or making any reference regarding medical reports obtained by Plaintiff *after* March 24, 2016.

## COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(3), Counsel for American has conferred with counsel for Plaintiff in a good faith effort to resolve the matters raised in this motion, but the parties have not been able to reach a resolution.

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

---

[3] Evidence from these other doctors could only conceivably be relevant to Plaintiff's failure to mitigate damages.  If indeed Plaintiff's neuropsychological condition has improved, he should have requested a re-evaluation by the independent neuropsychologist so he could return to work and mitigate his own damages.  *Cf. Hacker v. United Airlines, Inc.*, No. 16-C-9708, 2018 WL 3427911, at *7 (N.D. Ill. July 16, 2018) (airline employer may expect an employee to comply with established reasonable procedures and requests for medical information about condition and treatment plan before employee will be allowed to return to work).

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

9

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 23rd day of July, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: <u>/s/ Michael A. Holt</u>

MICHAEL A. HOLT

<u>**SERVICE LIST**</u>

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*

10