**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

      Defendant.

_____/

**AMERICAN AIRLINES, INC.'S MOTION IN LIMINE**
**TO EXCLUDE EVIDENCE OF OR REFERENCES TO**
**CONFIDENTIAL SETTLEMENT NEGOTIATIONS**

      Defendant American Airlines, Inc. ("American") respectfully requests that the Court enter an order pursuant to Federal Rules of Evidence 103(d), 401, 402, 403, and 408 precluding Plaintiff from making any references, allusions, suggestions, inquiries, introducing any evidence (for impeachment or otherwise), and from making any argument at trial or during voir dire regarding confidential settlement negotiations between American and Plaintiff or his union representatives. This specifically includes the December 2016 settlement negotiations between American and the Allied Pilots Association ("APA"), the certified union for American's pilots, which Plaintiff improperly referenced in his summary judgment motion.  In support of this motion, American states:

**BACKGROUND**

      In this USERRA action, Plaintiff claims that American withheld him from duty as a First Officer of a 767 aircraft because Plaintiff took time off to serve in the military.  As set forth in

American's Motion for Summary Judgment, those allegations are demonstrably false.  (*See* ECF Nos. 59 & 87.)   As American has demonstrated in its summary judgment motion, American withheld Plaintiff from duty on September 24, 2015 because another long-time pilot filed a formal workplace harassment complaint on that day that raised serious issues and concerns regarding Plaintiff.  *See id.*  Even Plaintiff concedes that American withholding him from duty "would not have arisen but for" the complaint by the other pilot.  (*See* ECF No. 57-28 at 30.)

During American's investigation of the pilot's complaint regarding Plaintiff, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" whose conduct led "multiple employees . . . to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'"  (ECF No. 57-26.)   Based on this information, American referred Plaintiff for evaluation by an independent neuropsychologist, who determined that Plaintiff was "NOT FIT FOR DUTY as a [pilot] on the basis of impaired performances on cognitive assessment."  (ECF No. 57-6 at 13.)

American reasonably believes Plaintiff will attempt to confuse the issues by interjecting irrelevant, misleading evidence about confidential settlement negotiations between American and Plaintiff or his representatives, including December 2016 settlement negotiations between American and the APA.

In confidential settlement negotiations in December 2016, American offered a proposal to APA that would have resolved: (1) Plaintiff's grievance before a System Board of Adjustment under the American/APA Collective Bargaining Agreement (the "CBA") asserting a breach of the CBA; and (2) all related claims, which includes this litigation.  (ECF No. 61-22 at 2.)   The settlement proposal—which Plaintiff improperly submitted to the Court as an attachment to Plaintiff's Statement of Material Facts (ECF No. 61)—was sent via email to Plaintiff by an attorney

2

for APA on December 5, 2016, with the subject line "Patterson, Scott--Confidential AA Settlement Offer," and the following opening sentences: "Attached is a confidential settlement proposal from the Company.  Importantly, it is confidential and it cannot be distributed beyond Scott, CA Carey, the MIA Reps, Danny, Scott's personal counsel, and APA legal."  (ECF No. 61-22 at 1.)

Plaintiff concedes that the settlement proposal at issue is a "settlement offer to Patterson's union," but Plaintiff nonetheless argues that the offer "is both evidence of retaliation" and "itself retaliation because it conditions Patterson's union receiving relief for the wrongful application of a contractual rule allowing fitness-for-duty exams upon Patterson's giving up his rights under USERRA." (ECF No. 89 at 9.)[1]  Under Federal Rule of Evidence 408, settlement communications are not admissible to prove liability or damages in a disputed claim.  American thus seeks an order *in limine* preventing Plaintiff from introducing this improper evidence or making similar arguments or suggestions in the presence of the jury.

## **LEGAL STANDARD**

Federal Rule of Evidence 103(d) specifically requires that, "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." "The purpose of a motion in limine is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury." *United States v. Jim*, No. 14-cv-22441, 2016 WL 7538942, at *1 (S.D. Fla. May 5, 2016) (Altonaga, J.) (citations

---

[1]  There is, of course, nothing whatsoever nefarious about the fact that a settlement would require Plaintiff to dismiss his claims against American—that is inherent in any settlement.  Plaintiff's allegation that American breached the CBA by withholding Plaintiff from duty as a pilot, or in any manner related to the fitness-for-duty examination process, is both without merit and subject to the mandatory and exclusive jurisdiction of a system board of adjustment under the Railway Labor Act.  For the reasons set forth in American's Motion in Limine regarding the CBA (ECF No. 95), this Court should also preclude any assertion or testimony by Plaintiff that American has breached the CBA at trial.

3

omitted).  Resolving these types of evidentiary issues before trial makes it possible to "avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury."  *Id.*

**ARGUMENT**

Plaintiff should be precluded from making arguments or introducing evidence regarding confidential settlement negotiations between American and Plaintiff or his union representatives, including December 2016 settlement negotiations between American and the APA.

**I.    Evidence Regarding Settlement Offers and Negotiations is Prohibited by Federal Rule of Evidence 408.**

Rule 408 expressly prohibits the use of settlement negotiations between American and APA "to prove or disprove the validity or amount of a disputed claim" in this case.  *See* Fed. R. Evid.  408(a)(1)–(2) (barring evidence of "furnishing, promising, or offering … valuable consideration in compromising or attempting to compromise" and "conduct or a statement made during compromise negotiations"); *see also Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, No. 8:06-cv-421-T-33EAJ, 2008 WL 4080205, at *1–2 (M.D. Fla. Aug. 28, 2008) (explaining that courts have "uniformly exclude[d] evidence created for the purpose of facilitating settlement negotiations").  "The policy behind Rule 408 encourages settlement, which would be discouraged if such evidence were admissible."  *Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, No. 07-22326-CIV, 2008 WL 11333315, at *2 (S.D. Fla. Mar. 6, 2008) (Rosenbaum, Mag. J.). "If a party had to worry that its settlement statements could be used against it in an opponent's trial case, parties could be expected to refrain from partaking in full and frank discussions of the issues relating to settlement, and settlement would occur less frequently, thus, unnecessarily expending parties' and courts' resources."  *Id.*

Here, Plaintiff concedes that the settlement proposal he relies on in an effort to prove the validity of his USERRA retaliation claim is "American's settlement offer to Patterson's union."

(ECF No. 89 at 9.)  Indeed, the December 2016 settlement proposal that Plaintiff has submitted to this Court is expressly labeled, "Confidential AA Settlement Offer."  *See Hernandez-Sabillon v. Naturally Delicious, Inc.,* No. 15-cv-80812, 2015 WL 10550934, at *2 (S.D. Fla. Dec. 23, 2015) citing *Specialized Transp.*, 2008 WL 4080205, at *2 ("[M]arking [a] document as a 'Confidential Offer to Compromise' helps courts decide whether a document is 'intended to be a part of the negotiations toward compromise.'")

Plaintiff asserts that the December 2016 settlement proposal at issue "occurred prior to this case's ever being filed, so it is not a settlement offer within this litigation," and thus not barred by Rule 408.  (ECF No. 89 at 9.)  This assertion is self-defeating and nonsensical.  According to Plaintiff, he "filed his USERRA complaint with the Department of Labor [on] January 25, 2016." (*Id.* at 2.)  The very reason Plaintiff asserts (wrongly) that American's subsequent December 2016 settlement proposal is "evidence of retaliation" is because it required Plaintiff to "abandon his USERRA claim."  (*Id.*)  There is absolutely no basis to allow evidence of a settlement offer that would have resolved the present USERRA claim simply because the settlement offer at issue would have *also* resolved other related claims, including a grievance under the CBA.

American's December 2016 settlement offer was proposed more than one year after American withheld Plaintiff from duty on September 24, 2015 and well after an independent neuropsychologist reported to American in March 2016 that Plaintiff was "NOT FIT FOR DUTY" following a fitness-for-duty examination.  As such, the two out-of-circuit cases that Plaintiff has previously cited in an effort to avoid Rule 408 are inapplicable because this is not a case where Plaintiff has filed suit "seeking to vindicate *wrongs committed during settlement discussions*."  (*Cf.* ECF No. 89 at 9-10 citing *Uforma/Shelby Bus. Forms v. NLRB*, 111 F.3d 1284, 1294 (6th Cir. 1997) (emphasis added); *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th Cir. 1983).)  Here,

evidence concerning the December 2016 settlement proposal is offered merely in an effort to support "the validity" of Plaintiff's claims that American violated USERRA by withholding Plaintiff from duty beginning in September 2015.

Plaintiff cannot offer a legitimate reason to present evidence or argument concerning confidential settlement negotiations between American and APA (on behalf of Plaintiff) and thus should be precluded from doing so. *See, e.g., Reyes v. Aqua Life Corp.*, No. 10-23548-CIV, 2012 WL 12892213, at *1 (S.D. Fla. July 9, 2012) ("Plaintiff's Motion in *Limine* No. 3 to exclude settlement demand letter is GRANTED pursuant to Rule 408 of the Federal Rules of Evidence because it constitutes a settlement offer.")

## II.   <u>Evidence Regarding Settlement Offers and Negotiations is Irrelevant and Unfairly Prejudicial.</u>

Evidence of settlement offers and negotiations is also irrelevant under Federal Rules of Evidence 401 and 402. Settlement-related evidence has no tendency to make a fact at issue in this litigation more or less probable than it would be without such evidence. *See* Fed. R. Evid. 401 (defining relevance as evidence that has a "tendency to make a fact more probable or less probable than it would be without the evidence[,] and . . . the fact is of consequence in determining the action"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *see also* Fed. R. Evid. 408 advisory committee's notes (noting irrelevance as one ground for Rule 408 since settlement "may be motivated by a desire for peace rather than from any concession of weakness of position").

To succeed on his claims, Plaintiff must show that his protected status as a member of the armed forces was "a motivating factor" for American's decision to withhold him from duty on September 24, 2015 or to keep him withheld from duty after an independent neuropsychologist reported to American in March 2016 that Plaintiff was "NOT FIT FOR DUTY" as a pilot. American's confidential settlement proposal in December 2016— which reflected a standard offer

6

of consideration in exchange for an agreement by Plaintiff to, among other things, drop or waive all claims against American related to his being withheld from duty since September 2015—in no way helps the jury answer those questions.

Furthermore, evidence of settlement offers and negotiation would be unfairly prejudicial to American and should be excluded under Federal Rule of Evidence 403.  Any probative value that such evidence might have is "substantially outweighed" by the danger of prejudice.  Fed. R. Evid. 403.  For example, evidence of settlement negotiations between American and Plaintiff or APA, especially offers by American could improperly lead the jury to believe that American previously admitted liability—precisely the kind of inference that Rule 408 seeks to avoid. Therefore, such evidence should be excluded under Federal Rules of Evidence 401, 402, 403, and 408.  *See Lehman Bros. Holdings, Inc. v. Hirota*, No. 8:06-cv-2030-T-24-MSS, 2007 WL 6881841, at *1–2 (M.D. Fla. Nov. 28, 2007) (excluding evidence of settlement agreements with former parties as inadmissible under Rule 408, as well as Rules 402 and 403).

## CONCLUSION

For these reasons, American respectfully requests that this Court enter an order prohibiting Plaintiff from offering any evidence or making any reference to confidential settlement negotiations between American and Plaintiff or his union representatives, including December 2016 settlement negotiations between American and APA.

## COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(3), Counsel for American has conferred with counsel for Plaintiff in a good faith effort to resolve the matters raised in this motion, but the parties have not been able to reach a resolution.

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of July, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*

9