UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

    Defendant.
_____/

**AMERICAN AIRLINES, INC.'S MOTION IN LIMINE
TO EXCLUDE UNDISCLOSED OPINION TESTIMONY
AND INADMISSIBLE HEARSAY BY DR. CADDY**

Defendant American Airlines, Inc. ("American") respectfully requests that this Court enter an order pursuant to Federal Rules of Evidence 103(d) & 802 and Federal Rules of Civil Procedure 26 and 37 precluding Plaintiff from making any references, allusions, suggestions, inquiries, introducing any evidence (for impeachment or otherwise), and from making any argument at trial or during voir dire regarding previously undisclosed opinions of his testifying expert (Dr. Caddy) or opinions beyond the expertise of Dr. Caddy.  By way of example only, this includes opinions regarding American's systems and processes related to pilot fitness-for-duty evaluations. American also requests that this Court preclude Dr. Caddy from serving as a conduit for

inadmissible hearsay from witnesses American cannot cross-examine.[1]  In support of this motion, American states:

## BACKGROUND

In this USERRA action, Plaintiff claims that American withheld him from duty as a First Officer of a 767 aircraft because Plaintiff took time off to serve in the military.  As set forth in American's Motion for Summary Judgment, those allegations are demonstrably false.  (*See* ECF Nos. 59 & 87.)  As American has demonstrated in its summary judgment motion, American withheld Plaintiff from duty on September 24, 2015 because another long-time pilot filed a formal workplace harassment complaint on that day that raised serious issues.  *See id.*  Even Plaintiff concedes that American withholding him from duty "would not have arisen but for" the complaint by the other pilot.  (*See* ECF No. 57-28 at 30.)

During American's investigation of the pilot's complaint regarding Plaintiff, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" whose conduct led "multiple employees . . . to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'"  (ECF No. 57-26.)  Based on this information, American referred Plaintiff for evaluation by an independent neuropsychologist, who determined

---

[1] After the close of discovery, American obtained a report by Dr. Bercaw—a neuropsychologist selected by Dr. Caddy to examine Plaintiff—that supports American's position and undermines Dr. Caddy's opinions.  Plaintiff's attempt to hide Dr. Bercaw's test results and report prevented American from addressing Dr. Caddy's unscientific methodology (of considering only the data that supports his position while ignoring the contrary evidence) in a *Daubert* motion.  American has sought permission from the Court to conduct additional discovery and file a *Daubert* motion after the deadline. (ECF Nos. 91, 94.)  American has also filed a separate motion *in limine* to exclude irrelevant testimony or evidence of medical examinations or reports completed after an independent neuropsychologist found Plaintiff unfit for duty, which are irrelevant under the Section 20 process set forth in the governing collective bargaining agreement.  (ECF No. 96.)  If that motion is granted, Dr. Caddy's opinions based on subsequent medical evaluations would also be excluded.

that Plaintiff was "NOT FIT FOR DUTY as a [pilot] on the basis of impaired performances on cognitive assessment." (ECF No. 57-6 at 13.)

Plaintiff has retained Dr. Glenn Caddy—a psychologist—to offer expert testimony. In November of 2017, Plaintiff disclosed Dr. Caddy's 96-page report. (*See* ECF No. 57-28.) Plaintiff has never supplemented his expert disclosures. Dr. Caddy apparently has developed or intends to develop additional opinions that he has discussed with Plaintiff's counsel but as of the time of his deposition he still had not "detailed [his new opinions] in full and complete form." (Caddy Dep. at 13:6–9, ECF No. 57-27.)

Dr. Caddy testified:

> Q    As we sit here today, are you aware of any opinions you intend to render in this case that are not reflected in Exhibit 2B [Dr. Caddy's expert report]?
>
> A    Only to the extent that I have information on Rodney Scott Patterson that was developed after this document was prepared.
>
> Q    And what are those opinions or information that was developed after Exhibit 2B was prepared you intend to offer in this case, sir?
>
> A    Essentially, that despite the premise of American Airlines, this man is not fit or airworthy as a pilot, that as you can see, he is currently wearing a captain's uniform and flying for another carrier. And in order to be able to do that, he has to have a first class medical and he has to be considered to be capable of conducting himself in the context of his work. And that sort of makes somewhat of an absurdity American Airlines claim about his inappropriateness or lack of fitness for duty, in my view.
>
> Q    Any other opinions that are not reflected in Exhibit 2B that you intend to offer in this case that you are aware of as we sit here today?
>
> A    Yes. This was a – this document was a little different than what I would call a comprehensive forensic study because it extended beyond the scope of this particular man to take in larger data because it was my view that what we have is a systems issue – and I'm not just talking about a systems issue with respect to the

3

>company, but a systems issue with respect to his adversary [the reporting pilot] in terms of some of the actions and conduct of that man in his efforts to malign and destroy the career of Captain Patterson.
>
>And although I make that point in here to some degree, the fact is that this was done in 2016, this work, and we still don't have a resolution to the problems of Captain Patterson's return to work with American Airlines. So there seems to be sort of a chronically unresolved recognition that American really screwed up on this one. . . .
>
>The other comment that I'm going to make is that – there are two fundamental ones. The first one is I don't go into the issues about why this gentleman was sent for a neuropsychological examination, though I think that it was inappropriate, given all of the data. He may have been sent for psychological examination, but if he was going to be, then so should have the captain who is accusing him of all of this craziness. . . .
>
>And yet, for whatever reason, from a systems point of view, American hasn't resolved that, and that seems, to me, to be, you know, unfortunate that they'll hang on to a construct and run with it and not recognize they've screwed up, or if they do, continue to fight as if they didn't. . . . But the larger issue is that if a comprehensive forensic examination had have been done that looked at the constellation of events that were taking place, that would have been a sensible thing to do because it would have allowed the company to obtain a level of data that had they had that available, they would have had to take a quite different position in regard to this case than they have done.

(Caddy Dep. 9:9–12:13, ECF No. 57-27) (emphasis added).

Based on Dr. Caddy's deposition testimony, American reasonably believes that he will attempt to offer opinion testimony at trial that he never previously disclosed. Indeed, Dr. Caddy admits that some of his opinions are still works in progress.

>So yes, what you haven't heard from me before is – and although I've talked to Counsel about it, I certainly haven't detailed it in full and complete form, and I'm happy to do so if you wish me to.

(*Id.* at 13:6–9) (emphasis added).

4

American further believes that Dr. Caddy's undisclosed (and still unfinished) opinions will be well beyond Dr. Caddy's expertise. Dr. Caddy admits he has no expertise in the governing collective bargaining agreement between American and the union representing its pilots (the "CBA") and has no formal legal education or expertise in systems analysis. (*See id.* at 13:21–23, 18:20–19:3, 24:18–25:7.) Despite his lack of expertise, based on his deposition testimony, it appears that Dr. Caddy may attempt to present his opinions regarding the appropriate interpretation of the CBA, as well as his opinions regarding American's general systems and processes for fitness-for-duty evaluations, which are governed by the CBA. Further, it appears that Dr. Caddy intends to testify that American should be held liable and to offer rank hearsay from individuals he interviewed—including one of Plaintiff's trial lawyers, Noel Pace. American requests that the Court enter an order *in limine* precluding Dr. Caddy from offering these inadmissible and undisclosed opinions at trial.

## **LEGAL STANDARD**

Federal Rule of Evidence 103(d) specifically requires that, "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." "The purpose of a motion in limine is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury." *United States v. Jim*, No. 14-cv-22441, 2016 WL 7538942, at *1 (S.D. Fla. May 5, 2016) (Altonaga, J.) (citations omitted). Resolving these types of evidentiary issues before trial makes it possible to "avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury." *Id.*

**ARGUMENT**

**I. <u>Dr. Caddy May Not Offer Undisclosed Opinion Testimony.</u>**

Dr. Caddy may not testify regarding opinions that were not included in his report. Witnesses retained or specially employed to provide expert testimony must provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). A party that fails to disclose an expert's opinion may not introduce or rely on the undisclosed opinions at trial. *See* Fed. R. Civ. P. 37(c)(1); *see also Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (expert opinions not offered in expert's report are properly excluded at trial).

Dr. Caddy admits that he has developed (or intends to develop) new opinions that have never been disclosed in his report. He further admits that his new opinions are works in progress that he has discussed with Plaintiff's counsel but that he has yet to "detail [his new opinions] in full and complete form." (Caddy Dep. at 13:6–9.) Any such opinions are inadmissible at trial. *See, e.g.*, *Great Am. Ins. Co. of N.Y. v. Summit Exterior Works, LLC*, No. 3:10-cv-1669, 2012 WL 459885, at *7–8 (D. Conn. Feb. 13, 2012); *Thompson v. Wal-Mart Stores, Inc.*, 60 So. 3d 440, 442–44 (Fla. 3d DCA 2011).

If Dr. Caddy were permitted to offer his yet-to-be-articulated opinions at trial, American would be subject to undue prejudice and trial by ambush. The governing rules of evidence and civil procedure do not permit such tactics. *See Romain v. Governor's Office of Homeland Sec. & Emergency Preparedness*, No. CV 14-660-SDD-RLB, 2017 WL 2438844, at *7 (M.D. La. June 6, 2017) (explaining that "[l]itigation is not a game of blind man's bluff" and granting motion in limine to exclude evidence not timely disclosed in discovery).

Moreover, it is particularly important that the Court not permit Dr. Caddy to offer any undisclosed opinions regarding the CBA or American's systems/processes related to fitness-for-

6

duty-examination for pilots because Dr. Caddy has admitted that he is not an expert on the CBA or American's systems/processes. (Caddy Dep. at 13:21–23, 24:18–25:7.) Furthermore, Dr. Caddy also should not be permitted to offer any opinion about the meaning of the CBA because the interpretation of the CBA is not at issue in this case and is subject to the exclusive jurisdiction of the applicable board of adjustment. (*See* American's Motion in Limine, ECF No. 95.).[2]

Accordingly, for these reasons, this Court should preclude Dr. Caddy from offering any opinion testimony that he did not disclose in his expert report.

## II. Dr. Caddy May Not Act as a Conduit for Inadmissible Hearsay.

Dr. Caddy's report contains multiple pages of inadmissible hearsay accounts from individuals such as other pilots and even one of Plaintiff's trial lawyers in this case. Even if Dr. Caddy may consider this information, he cannot act as a conduit for inadmissible hearsay at trial to prevent American from cross-examining witnesses on these alleged facts.

Hearsay—event if relevant—is not admissible unless it falls within a recognized exception. *See* Fed. R. Evid. 802. A "party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Mamani v. Berzain*, No. 07-cv-22459, 2018 WL 1010582, at *3 n.6 (S.D. Fla. Feb. 22, 2018) (quoting

---

[2] As also explained in that motion in limine (ECF No. 95), if the parties have a dispute regarding the interpretation or application of the CBA, this matter would have to be stayed to permit the parties' time to obtain a decision from the applicable board of adjustment regarding any such dispute. *See, e.g., Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) ("[The] suit must be stayed until the dispute over the agreement is resolved by the only body authorized to resolve such disputes, namely an arbitral panel."); *Air Line Pilots Ass'n v. Nw. Airlines, Inc.*, 627 F.2d 272, 278 (D.C. Cir. 1980) ("[T]he appropriate procedure is for the court to suspend its own proceedings until the end of the arbitral process or until it is clear that arbitration cannot be obtained."); *Miller v. Am. Airlines, Inc.*, 03 C 7756, 2004 WL 2203425, at *4 (N.D. Ill. Sept. 29, 2004) ("[M]andatory arbitration provision of the RLA strips this Court of subject matter jurisdiction and 'precludes' plaintiffs from proceeding" in federal court until after resolution of the arbitration.").

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)).  Recitations of historical facts the expert learned from other sources are not expert analyses, "they are hearsay accounts of specific events."  *Id.* at *3.  This type of hearsay is inadmissible even through an expert because it would "impermissibly permit[] the testifying experts to bolster their opinions and create[] the danger that the testifying expert will in fact serve as conduits for the opinions of others who are not subject to cross examination."  *Royale Green Condo. Ass'n, Inc. v. Apsen Specialty Ins. Co.*, No. 07-cv-21404, 2009 WL 2208166, at *2 (S.D. Fla. July 24, 2009).  Plaintiff should not be permitted to use Dr. Caddy to avoid the hearsay rule and offer testimony from witnesses—such as his own lawyer—that American will not have the opportunity to cross-examine.  "The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events."  *Mamani*, 2018 WL 1010582, at *3.

## **CONCLUSION**

For these reasons, American respectfully requests that this Court enter an order prohibiting Plaintiff from offering any previously undisclosed opinion testimony of Dr. Caddy, any testimony beyond Dr. Caddy's purported expertise, or any hearsay from witnesses American will not have an opportunity to cross-examine during this trial.

## **COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(3), Counsel for American has conferred with counsel for Plaintiff in a good faith effort to resolve the matters raised in this motion, but the parties have not been able to reach a resolution.

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of July, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*