1

1       UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF FLORIDA
2          FCRT LAUDERDALE DIVISION

3       Case Number:  1:17-cv-60533-JEM

4   RODNEY SCOTT PATTERSON,

5           Plaintiff,

6   vs.

7   AMERICAN AIRLINES, INC., a
    Delaware Corporation,

8

            Defendant.
9   _____/

10

11                        500 Northeast Fourth Street
                          Fort Lauderdale, Florida
12                        Wednesday, March 21, 2018
                          10:09 a.m. - 2:27 p.m.
13

14

15

                      DEPOSITION
16
                         OF
17
                     BRIAN BEACH
18

19

20

21

22

23              **ATTACHMENT 1**

24

25

48

1   standards, is there any documentation that you have done

2   so?

3       A.   No.   That's kind of a code that the company and

4   the union have together that we handle it through

5   professional standards, who has the ability to make

6   decisions on whether a situation is complete or not.

7       Q.   Was anything done in March of 2015 to investigate

8   any of the allegations made in Exhibit 2C other than

9   that Mr. Patterson may have been illegally taking

10  firearms into Bolivia?

11      A.   I'm sorry, can you repeat that again?

12              MR. AMLONG:   Read it back, please.

13              (Question read back.)

14              THE WITNESS:   Okay, so we're talking about

15  the long e-mail?

16              MR. AMLONG:   Yes.

17              THE WITNESS:   I believe that was the start

18  of the process for professional standards and the

19  disagreement between Patterson and Whitehouse I believe.

20  BY MR. AMLONG:

21      Q.   I mean did American Airlines do anything other

22  than refer this to professional standards?

23      A.   No.

24      Q.   Mr. Garcia in his e-mail to you says, quote,

25  "Please be advised that today Fred Ronda and I discussed

49

1    the below case with Larry McLaughlin, director of AA

2    global investigations.  It was decided that corporate

3    security would look into this matter."  What matter is

4    that?

5         A.   The matter is the gun issue to Bolivia.

6         Q.   Where in -- perhaps I'm missing it, but where in

7    the March 19 e-mail does Mr. Beach mention anything

8    about gun smuggling?

9         A.   I think this was what Fred and Ricardo wanted was

10   the whole picture of the situation with Scott Patterson.

11        Q.   So you're saying that there are additional

12   communications that you had had with Misters Garcia and

13   Ronda?

14        A.   I believe it was -- I had talked to Fred Bates,

15   said hey, look, I think I got a situation down here.  I

16   have no idea, don't even know what to do with it.  So he

17   put me in contact with Ricardo and Fred Ronda, local

18   guys.  They said send me -- tell us what you got and I

19   said I got a long e-mail that I can send you, and they

20   said send me the e-mail.

21        Q.   When did you first hear about the possibility

22   that he was smuggling guns?

23        A.   Very soon after Whitehouse came into my office.

24        Q.   And did you hear that from Whitehouse?

25        A.   Yes, sir.

78

1      Q.   Do you know whether or not corporate security

2    caused Mr. Patterson --

3      A.   I have no idea.

4      Q.   What, if anything, did corporate security report

5    to you about its investigation?

6      A.   There's nothing here.

7      Q.   That's what they said?

8      A.   Yes.

9      Q.   Did they tell you this in writing?

10     A.   No, sir.

11     Q.   Does American Airlines have any work rules about

12   making false allegations against their pilots?

13     A.   I believe there may be.  I'm sure there's some

14   kind of discipline somewhere, but if it's investigated,

15   but I don't know to be honest with you.

16     Q.   Well, based on the -- based on the investigation

17   by corporate security, did you consider Captain

18   Whitehouse to have made a false allegation about

19   Mr. Patterson's taking guns into Bolivia?

20     A.   Mm-hm.

21     Q.   Yes, you did believe him to have made a false

22   statement?

23     A.   No.  I considered the matter was closed out, so

24   it was an issue that was raised.  It was investigated by

25   corporate security.  They determined there was nothing

[3/21/2018] Beach, Brian - 180321

90

1          MR. AMLONG:   It was 42 attached to 40.

2          MR. MORALES:   Right.

3          THE WITNESS:   I do not -- I do not believe

4   so.

5   BY MR. AMLONG:

6     Q.   Forty is 770 and 771, and it says:   Here's the

7   letter to send him and 43 is a letter which is Bates

8   stamped 772.

9     A.   Oh, okay.   I'm sorry, yeah, you're right.   So 42

10  would be attached to 40.   Was it 40?   Yeah, it was 40.

11  That's correct.

12    Q.   Do you recognize Exhibit 43?

13    A.   Yes, sir.

14    Q.   Did Mr. Patterson ever contact you subsequent to

15  August 22?

16    A.   I do not believe so, no, sir.

17    Q.   Do you know what the process is for returning

18  from a Section 20 status?

19    A.   I do not know exactly what it states.

20          (Discussion held off the record.)

21          MR. MORALES:   Are we taking a break?

22          MR. AMLONG:   Yes.

23          (Recess taken.)

24  BY MR. AMLONG:

25    Q.   Mr. Beach, what was your start date with

[3/21/2018] Beach, Brian - 180321

91

1    Amerijet?

2        A.   It was June of 2017.

3        Q.   And when did you go off the payroll at American?

4        A.   I believe I went off in October of 2017.

5        Q.   How could you continue on both payrolls?

6        A.   I had foot surgery.

7        Q.   I'm sorry?

8        A.   I was on medical, sick.

9        Q.   Okay.  So you couldn't walk, but you could sit at

10   a desk?

11       A.   That's correct.

12              MR. AMLONG:  Okay, thank you.

13              MR. MORALES:  The witness will read the

14   transcript pursuant to Rule 30.  Thank you.

15              MR. AMLONG:  We'll take it.

16              COURT REPORTER:  You're ordering?

17              MR. AMLONG:  Yes.

18              COURT REPORTER:  Do you want a copy?

19              MR. MORALES:  Yes, please.

20              (Whereupon, the deposition was adjourned at

21   2:27 p.m.)

22              (Signature not waived.)

23              AND FURTHER DEPONENT SAITH NOT

24              ------------

25

93

```
1                         CERTIFICATE

2    STATE OF FLORIDA )
                      )  SS.
3    COUNTY OF BROWARD)

4            I, HEATHER VIEIRA, do hereby certify that
     pursuant to Notice of Taking Deposition in the
5    above-styled cause, that I was authorized to and did
     stenographically report the foregoing deposition as
6    hereinabove shown, and the testimony of said witness was
     reduced to computer transcription under my personal
7    supervision.
             I further certify I am not a relative,
8    employee, attorney or counsel of any of the parties, nor
     am I a relative or employee of any of the parties'
9    attorneys or counsel connected with this action, nor am
     I financially interested in the action.
10           The certification of this transcript does not
     apply to any reproduction of the same by any means
11   unless under the direct control and/or direction of the
     certifying reporter.
12           Witness my hand and official seal in the City
     of Fort Lauderdale, County of Broward, State of Florida
13   this 16th day of April 2018.

14

15

16           -------------------------------
                    HEATHER VIEIRA
17                  Court Reporter

18

19

20

21

22

23

24

25
```

[3/21/2018]  Beach, Brian - 180321