UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

**Plaintiff's Motion in Limine re: § 20 Letters from Beach, Bond**

Plaintiff, Rodney Scott Patterson, pursuant to Federal Rule of Evidence 402, 402, 602, 701 and 802, moves in limine to exclude from evidence the Section 20 letters went to plaintiff, Lt. Col. Rodney Scott Patterson, stating that "[d]ue to my concerns regarding your ability to safely operate an aircraft, I have arranged for you to participate in a medical evaluation as provided in Section 20 of the [Joint Collective Bargaining Agreement]," copes of which letters are appended as Attachments 1 and 2 to this motion.

**Statement of Facts**

Although Lt. Col. Patterson was sent letters with the opening quoted above over the signatures of then-Chief Pilots James Bonds (January 20,

2016) and Brian Beach (January 26), each denied any personal knowledge supporting such "concerns about your ability to safely operate an aircraft."

Bonds was the Miami Chief Pilot who, when Patterson requested September 21, 2015 to go on duty as a lieutenant colonel in the Army Reserve starting the following day, objected in a voice mail.  Bonds told Lt. Col. Patterson that American was "really short of pilots" and "we really needed him to fly [because] we didn't have the bodies."  Deposition of James Bonds,[1] at 34:13-20. Bonds recalled that he had called Patterson because "I had heard that he had asked for [vacation days] and I requested that he not do that, our money was tight," id. at 62:25-63:2, and "that I needed him to fly."  Id. at 76:25-77:6.

Concerning the Section 20 letter, Bonds testified that:

"I recognize my signature, but this is a form letter right from labor, Michelle Montgomery's office, to us to fill in the blanks.  So I signed it." Bonds Deposition, at 103:23-25.

Bonds admitted to having no personal knowledge that gave rise to such "concerns":

Q.     I want to know what facts and circumstances you are saying gave rise to the concern regarding Mr. Patterson's ability to safely operate an aircraft, you personally?

*        *        *

---

[1]The cover page and relevant testimonial pages of the Deposition of James Bonds is appended as Attachment 3.

A.     My personal are only what I have heard from professional standards and from Brian Beach.  I did not have personal contact with Scott Patterson concerning any of those issues.

Q.     So you have no personal knowledge of any facts or circumstances that would give rise to concerns regarding Mr. Patterson's ability to safely operate an aircraft; correct?

A.     None personally other than being told from Brian Beach and APA professional standard members.

Id. at 105:17-106:9.

Beach testified Labor Relations, of which Ms. Montgomery is a senior manager, Deposition of Michelle Montgomery,[2] at 7:5-12, had nothing to do with the issuance of the Section 20 request.[3]  Montgomery likewise testified that it was Bonds and Beach who wished to subject Patterson to a Rule 20 examination.  Montgomery Deposition, at 53:25-54:24.

Beach testified that he had never personally witnessed any behavior on the part of Patterson that would make him think that Patterson was unfit to fly an airplane.  Deposition of Brian Beach, at 35:12-15.

---

[2]The cover page and relevant testimonial pages of the Depositing of Michelle Montgomery is appended as Attachment 4.

[3]The cover page and relevant testimonial pages of the Depositing of Brian Beach is appended as Attachment 5.

Beach testified he was simply ordered to issue the Section 20 letter by Mark Cronin, the Managing Director of Florida/East,[4] and the Legal Department:

Q.    Did you consult with HR in the issuance of the Section 20?

A.    I did not.

Q.    Did you consult with HR?

A.    I sat in on the interview with Scott, yes.

Q.    Under Section 21?

A.    Yes.

Q.    That's what we're talking about when you say the interview?

A.    Right.

Q.    Other than sitting in on the Section 21 with Mr. Patterson, what involvement did you have in the issuance of Section 20?

A.    None other than just these are the results of the HR investigation, and as per the discussion with whoever it is, it was decided to issue a Section 20.

Q.    That's the conversation you had with Mr. Patterson, or that's the conversation you had with HR?

A.    I didn't have any discussion with HR or anybody about issuing the Section 20 for Scott.

Q.    So it was just you?

A.    I'm sorry?

---

[4]See Deposition of Mark Cronin, the cover page and relevant testimonial pages of which are appended as Attachment 6, at 9:13-10:12.

Q.      That was just you?

A.      As far as?

Q.      Issuing the Section 20?

A.      No.  I was told to, you know, this is what we're going to do and here's the letter.

Q.      Who told you that?

A.      It came from Cronin and legal.

Q.      So the statement this is the result of the HR investigation and pursuant, and we're going to issue a Section 20, that came from HR and Cronin?

A.      That's correct—No, not HR.  Legal.  I believe it was on the recommendation of HR.

Id. at 14:8-15:17.

Cronin denied that, saying the process would have been driven by

Sean Scialfa, the then-director of Flight in Miami.  Cronin Deposition, at

54:1-6.

## Governing Legal Principles

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action."

Federal Rule of Evidence 401.  "Relevant evidence is admissible….

Irrelevant evidence is not admissible."  Rule 402.  Even relevant evidence

may be excluded, however, "if its probative value is substantially outweighed

by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403.

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> > (a) rationally based on the witness's perception;
> >
> > (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> >
> > (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701.

> "Hearsay" means a statement that:
>
> > (1) the declarant does not make while testifying at the current trial or hearing; and
> >
> > (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Rule 801(c). "Statement" includes "a person's ... written assertion." Rule 801(a). See Richardson v. Perales, 402 U.S. 389, 402 (1971) (holding hearsay reports admissible in Social Security disability hearings).[5]

---

[5]The Richardson court stated:

> We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may
>
> (continued...)

"Hearsay is not admissible" unless is admissibility is authorized by a federal statute, the Rules of Evidence or other rules prescribed by the Supreme Court.  Rule 802.  To be admitted under the "business record" exception to the hearsay rule, a document must have been "made at or near the time by—or from information transmitted by—someone with knowledge," Rule 803(6)(A), and neither "the source of information" nor the "method or circumstances of preparation [may] indicate a lack of trustworthiness."

### Applying the Law to the Facts in the Case at Bar

To admit either or both the January 20 or 26 letters stating that either Bonds or Beach had "concerns regarding [Lt. Col. Patterson's] ability to safely operate an aircraft," would be, essentially, allowing one or both of them to testify through those letters.

The subject of that testimony would be a lay opinion, concerning which each has stated that he had no personal knowledge, as required by Rule 602, thereby precluding him from basing that opinion on his personal perception, as required by Rule 701.

---

[5](...continued)
constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

Id.

The opinion is being used as a justification for the fitness-for-duty exam to which Lt. Col. Patterson was subjected after he went on duty with the Army reserve—contrary to the express desire of Bonds.

The letters are obvious hearsay—out-of-court, unsworn statements offered to show a jury a legitimate motivation, written in black-and-white on American stationery, for subjecting Lt. Col. Patterson to the fitness-for-duty neuropsychological examination.  As such, they are inadmissible.

Neither letter can come in as a business record, since not only is there no evidence that the fact that the letter recites, i.e., that, **One**, either or both Bonds or Beach had "concerns regarding [Lt. Col. Patterson's] ability to safely operate an aircraft," was made by anyone with knowledge of such concerns, **or, Two**, it was those "concerns" that motivated either Bonds or Beach to order a fitness-for-duty exam.  Indeed, there is no evidence—other than the letters drafted by Montgomery, perhaps at the orders of Cronin or the Legal Department—that either Bonds or Beach had any such concerns, and actually made the fitness-for-duty decision based on those concerns —which each denies doing.

Although Montgomery said the Section 20 process was initiated by Bonds or Beach:

• Bonds, who admits to having no personal knowledge of Patterson, said he just signed a form letter prepared by Montgomery;

- Beach says he was simply ordered to issue the letter by the Legal Department and Cronin, the managing director, but

- Cronin said it would have been Sean Scialfa, the former director of flight for Miami, would have driven the process.

Since American's witnesses cannot even agree on **who** made the decision, how can they offer, through the letters, a trustworthy rationale for having done so?

Not only are the letters inadmissible hearsay, but they have no tendency to make any material fact more or less probable, Rules 401 and 402, and any tendency they might have to do that is substantially outweighed by the likelihood that they would be under Rule 402 unduly prejudicial by injecting passenger safety into the argument, would confuse and would mislead the jury.  Additionally, the letters would be cumulative, since if either Beach or Bonds actually ordered Lt. Col. Patterson to go for the fitness-for-duty exam, either one of them could testify having done so for that reason.

## Certificate of Conferral

Pursuant to Local Rule 7.1(a)(3), plaintiff's undersigned counsel certifies that he sought to confer with opposing counsel by sending an e-mail to all counsel of record at 10:19 a.m. Monday, July 23 (three hours and 54 minutes earlier than defendant sought to confer with plaintiff on its proposed

motions in limine).  Defendant's counsel responded at 2:52 p.m., but the parties were unable to agree.

### Conclusion

Based on the facts marshaled, the authorities cited and the arguments presented, plaintiff, Lt. Col. Patterson, respectfully requests the Court to exclude from evidence the January 20 and January 26 letters from James Bonds and Brian Beach.

Respectfully Submitted,

/s/    William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street
El Portal, FL
(305) 710-3713


AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

***Attorneys for Plaintiff,***
***Rodney Scott Patterson***

### Certificate of Service

        **I HEREBY CERTIFY** that a true and correct copy of the foregoing has

been furnished by electronic delivery this _____ day of _____,

2018 on all counsel or parties of record on the Service List below.

                                        */s/    William R. Amlong*
                                        WILLIAM R. AMLONG

## Service List

WILLIAM R. AMLONG
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
KAmlong@TheAmlongfirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008


NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street
El Portal, FL
(305) 710-3713


***Attorneys for Plaintiff,
        Rodney Scott Patterson***

MICHAEL A. HOLT
mholt@shb.com
SHOOK, HARDY & BACON LLP
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

MARK W. ROBERTSON
mrobertson@omm.com
*(Pro hac vice)*
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

TRISTAN MORALES
tmorales@omm.com
*(Pro hac vice)*
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, District of Columbia 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

***Attorneys for Defendant,
        American Airlines, Inc.***

C:\Users\yharris\Desktop\__Client Folders\Patterson\__Limine Motions\180723 MIL re Bonds and Beach's Section

20 letters\180723 MIL re Bonds and Beach's Section 20 letters.wpd