UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

   Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

   Defendant.

_____/

**Plaintiff's Motion in Limine re: American Airlines, Inc.'s Requirement That Patterson Abandon his USERRA Claim to Return to Flying**

    Plaintiff, Rodney Scott Patterson, pursuant to Federal Rule of Evidence 408, moves in limine to determine that American Airlines's offer to settle his union's grievance concerning his being grounded because of a neuropsychologist's highly irregular report:

    ***One***, is not a "settlement offer" that should be kept out of evidence because of the public policy of encouraging settlement negotiations, but

    ***Two***, is the second retaliatory blow of a one-two-punch combination that began with American's grounding him within (no more than) two days after he exercised his USERRA right to go on duty as a lieutenant colonel in the U.S. Army Reserve.

**Statement of the Facts**

It is undisputed that Lt. Col. Rodney Scott Patterson, who was at the time a First Officer for American Airlines, Inc.:

• notified American Sept. 21, 2015, that he was going on duty at the Pentagon Sept. 22, in connection with the Pope's visit to the White House;

• was grounded no later than Sept. 24, based on the resubmission of allegations by a captain, the core of which involved a trip of Asuncion, Paraguay, in October 2014, and all of which had been submitted in March-April 2015 to one of the Miami International Airport chief pilots, Corporate Security, Human Resources and Labor Relations;

• was again (as in March-April) not subjected to any discipline growing out of the September-November investigations of those allegations;

• sent nonetheless to a Long Beach, California, neuropsychologist, John Knippa, Ph.D., whose examination of him was reported to American in March 2015—a month after one of American's lawyers had sent a letter to the Department of Labor, sharply challenging Lt. Col. Patterson's having filed a DOL claim under USERRA—contained what American's Corporate Medical Director acknowledged were no objective findings of neuropsychological deficits, psychopathology or serious personality disorders;

• was grounded based on that neuropsychologist's "NOT FIT FOR DUTY" report, which report has been sharply criticized by Lt. Col. Patterson's

testifying expert, Glenn R. Caddy, Ph.D., and contradicted by Gary G. Kay, Ph.D., the author of the testing instrument that the Long Beach neuropsychologist improperly administered and a frequent consultant to American on fitness-for-duty issues, but

• was told, through the "settlement offer" made to his union, the Allied Pilots Association, that American would permit the University of Texas Medical Branch ("UTMB") to review the favorable findings of Drs. Caddy and Kay, as well as of an M.D. neurologist, and either agree to reinstate him based on those findings or, if UTMB did not agree, to send him to some outside practitioner chosen by UTMB—who would not be Dr. Knippa—but only if Lt. Col. Patterson would drop any claims arising from the mandated fitness-for-duty examination by Dr. Knippa.

This all occurred prior to Lt. Col. Patterson's having filed the instant action, but during a period when American was aware that he had filed the DOL USERRA complaint that is a condition precedent to filing suit.

**Governing Legal Principles**

Federal Rule of Evidence provides that

Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal

>case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority,

Rule 408(a), but permits a court to "admit this evidence for another purpose...."  Rule 408(b).

Among those other purposes is to prove a second round of retaliation.

USERRA provides at 4311(b) that "An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter...."  Thus, if a USERRA claimant's "action to enforce a protection afforded any person under this chapter" is a "motivating factor" in the employer's decision, the employer must "prove that the action would have been taken in the absence of such person's enforcement action."  § 4311(c)(2).

If an employer truly believes that a USERRA claimant does not have a valid claim, USERRA, then, would not prevent a legitimate offer to settle, based in part on the claimant's abandoning the USERRA claim.  <u>United States v. Nevada</u>, 817 F. Supp. 2d 1230, 1249 (D. Nev. 2011).

>At the same time, however, the plain language of section 4311 prohibits an employer from taking any adverse employment action that the employer would not have taken absent the person's protected conduct. Accordingly, where an employer has made an offer of reemployment not solely as an offer of compromise but at least in part because the employer believes the person is entitled to at least some reemployment benefits under USERRA, it would constitute retaliation for the employer to deny those benefits in response to the person's reservation of rights and pursuit of a claim for greater benefits.

Id. (denying summary judgment on retaliation claim based on USERRA claimant's wishing to pursue statutory rights while taking a lower position to that which he felt entitled).

Thus, and employer who treats an employee with what it should realize is a viable claim can expect to get the same sort of treatment by the courts as would parties which attempt to use such strong-arm tactics in the labor-management arena. See, e.g., See, e.g., Uforma/Shelby Bus. Forms v. NLRB., 111 F.3d 1284, 1294 (6th Cir. 1997) ("Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats." See also Vulcan Hart Corp. (St. Louis Div.) v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983) (Rule 408 did not bar evidence of demand during negotiations to settle grievance that employee resign his union office when General Counsel did not seek to prove validity of grievance)."

**Applying the Law to the Facts in the Case at Bar**

American's see-through pretextual grounding of Lt. Col. Patterson two days after he went on duty at the Pentagon Sept. 24, against the express wishes of Chief Pilot James Bonds—suspending him from flying, based on the same allegations that had been known in March and April to chief pilot, Corporate Security, Human Resources and Labor Relations in March and April, and then finding no behavior on his part warranting discipline—was

enough, upon reflection, for American to realize that Lt. Col. Patterson had a viable claim, and that it had a problem with having grounded him through an irregular neuropsychological examination that even its own Corporate Medical Director admitted revealed no objective evidence of neuropsychological deficit, psychopathology or serious personality disorder.

That makes the offer from American to Lt. Col. Patterson's union—American would permit him to undergo a fair evaluation, but only if he would drop his USERRA claim—not settlement negotiations, but Stage Two retaliation.

American's retaliatory "offer" is not protected by Rule 408(a), because it is being offered into evidence for "another purpose, i.e., to show retaliation.

### Certificate of Conferral

Pursuant to Local Rule 7.1(a)(3), plaintiff's undersigned counsel certifies that he sought to confer with opposing counsel by sending an e-mail to all counsel of record at 10:19 a.m. Monday, July 23 (three hours and 54 minutes earlier than defendant sought to confer with plaintiff on its proposed motions in limine). Defendant's counsel responded at 2:52 p.m., but the parties were unable to agree.

### Conclusion

Based on the facts marshaled, the authorities cited and the arguments presented, plaintiff, Lt. Col. Patterson, respectfully requests the Court to

permit the introduction of the settlement negotiations between his union, the Allied Pilots Association, and American Airlines.

        Respectfully Submitted,

/s/    William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street
El Portal, FL
(305) 710-3713

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

**Attorneys for Plaintiff,**
    **Rodney Scott Patterson**

**Certificate of Service**

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic delivery this   23rd   day of   July  , 2018 on all counsel or parties of record.

        /s/    William R. Amlong
        WILLIAM R. AMLONG

C:\Users\yharris\Desktop\__Client Folders\Patterson\__Limine Motions\180723 MIL re settlement offer\180723 MIL re settlement offer.wpd