UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

   Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

   Defendant.
_____/

**Plaintiff's Emergency Motion Pursuant to 18 USC 4311(b)(3) and the Court's Inherent Powers to Restrain Defendant, American Airlines From Intimidating a Plaintiff's Witness or Retaliating Against an <u>Employee who has Assisted Plaintiff in Preparing for Trial</u>**

Plaintiff, Rodney Scott Patterson, under USERRA's anti-retaliation provision and the Court's inherent powers, seeks on an emergency basis a court order prohibiting American Airlines, Inc. ("American"), until further order, from interrogating (outside discovery) or otherwise threatening the employment of one of his witness—on the eve of trial, within the view of other American employees whom plaintiff has disclosed as witnesses and for the express reason that American suspects the witness, Guy Dalton (Danny) Shellhouse, of assisting Patterson in obtaining service of a subpoena on a witness, Glenn Whitehouse, who had been dodging process servers.  A

Certification of Emergency, executed by plaintiff's counsel, is appended as Attachment 1.

## Statement of the Facts

Glenn Whitehouse is an American captain whose unfounded allegations[1] about Lt. Col. Rodney Scott Patterson were seized upon by American's Miami International Airport chief pilots to put Lt. Col. Patterson into a no-fly status two days (at most) after he disobeyed the express wishes of one of the chief pilots, James Bonds, not to go on duty with the Army Reserve at the Pentagon September 22, 2015.

After attempting unsuccessfully numerous times to serve a deposition subpoena on two residential addresses in Volusia County, Florida,[2] Lt. Col. Patterson, still an active member of the Allied Pilots Association, used the union's computerized access to American's crew schedules to discern when Whitehouse would be at Miami International Airport to depart on a flight.

Lt. Col. Patterson testified at his March 6, 2018 deposition:

> Q. Do you have access to a flight schedule that Captain Whitehouse flies each month for American Airlines?

---

[1] See, e.g., Oral and Videotaped Deposition of the Corporate Representative of American Airlines Michelle A. Montgomery, DE 57-25, at 68:10-17 (Human Resources investigation that flowed from Whitehouse's September 24 letter, known as a Section 21 proceeding, substantiated "nothing that warranted discipline"). For the Court's convenience, the cover page and relevant testimonial page of Ms. Montgomery's deposition is appended as Attachment 2.

[2] See Return to Service Process (sic) appended as Attachment 3.

> A. Flight schedule that Captain Whitehouse flies, and every airline pilot, is published on the APA website.
>
> Q. Is it published to public? Can I look at it?
>
> A. You cannot.
>
> Q. It's publish (sic) to members of the APA?
>
> A. To members of the APA.
>
> Q. Okay. Have you recently attained—obtained flight schedule information for Captain Whitehouse?
>
> A. I have. And I've asked other APA members to do it for me.
>
> Q. What other APA members?
>
> A. Captain Shellhouse.
>
> Q. Okay. Did you ask Captain Shellhouse for the flight schedule information that was used prior to the service of a subpoena on Captain Whitehouse recently?
>
> A. I think I asked Captain Shellhouse to verify that Whitehouse would be in the Miami airport because it appeared that Whitehouse was dodging service of a subpoena.[3]

When Lt. Col. Patterson telephoned Shellhouse that evening, as he and a process served scoured the concourse looking for Capt. Whitehouse, Capt. Shellhouse reminded him that other pilots had said that Capt. Whitehouse had developed a pattern of going into a restaurant on the concourse and remaining there until his first officer scouted the concourse to ensure that an

---

[3]See Deposition of Rodney Scott Patterson, DE 57-1, at 327:10-328:5. For the Court's convenience, the cover page of the deposition and the two relevant pages are appended as Attachment 4.

American agent was at the gate and Whitehouse could scurry from the restaurant to the plane, which he could immediately board.  Shellhouse Declaration, at 3, ¶ 9.[4]knows

Although Shellhouse does not recall whether he actually went onto the computer that evening, he:  **One**, assumes that if he did, he did so knowing that American would know about it, based on his being told at his orientation session June 4, 1986, that American kept track of "every keystroke" entered on the computer, id. at ¶ 8, and, **Two**, knows of no restrictions on the use to which APA members may put the information they learn from checking the crew schedules.  Id.

Nonetheless, American served Captain Shellhouse with a letter, dated July 12 but no signed copy of which was delivered to him until Tuesday, ordering him to a Section 21 hearing Thursday, July 26 into "a report that you allegedly obtained the work schedule of Captain Glenn Whitehouse and provided the schedule to another individual."[5]

Although the hearing to which Capt. Shellhouse has been summoned is described in the Joint Collective Bargaining Agreement as not being a formal disciplinary "step," see Section 21, at ¶ 21.A.1.g, Capt. Shellhouse's

---

[4]The  Unsworn Declaration of Guy Dalton (Danny) Shellhouse, Under Penalty of Perjury, Pursuant to 28 U.S.C. § 1746, with its attachments, is appended as Composite Attachment 5.

[5]A copy of the Section 21 Notice of Hearing is appended as Attachment 6.  A copy of an internal e-mail string showing that Capt. Shellhouse did not receive the signed copy of the letter until Tuesday is appended as Attachment 7.

experience in representing other pilots in Section 21 hearings has taught him "that it is the contractual equivalent to a grand jury—with the major difference being that American does not bother with a subsequent trial phase, but just moves directly into punishment (up to and including termination) based on what it 'learns' during the Section 21 hearing." Shellhouse Declaration, at 4, ¶ 12.

Not only did Capt. Shellhouse assist Lt. Col. Patterson in getting service on Capt. Whitehouse by telling him to check out the restaurants on the concourse, and perhaps (only American's "keystroke" records would tell for sure) by logging in and accessing Capt. Whitehouse's schedule, but he also has been identified by Lt. Col. Patterson as a witness in his USERRA trial.  Shellhouse Declaration, at 1, ¶¶ 3(a)-(c).

And, since Lt. Col. Patterson has contended from the moment he was put on Paid/Withheld status during his being on duty at the Pentagon in September 2015 that his USERRA rights were being violated, Capt. Shellhouse, as his APA representative, has fought back against the Section 21 hearing, and the subsequent neuropsychological grounding of Lt. Col. Patterson.  Shellhouse Declaration, at 3, ¶¶ 4-6.

Capt. Shellhouse believes American is attempting to intimidate him —a 32-year American pilot, with 53 months go to until retirement, the paychecks for which 53 months would amount to $1,809,328.63, Shellhouse Declaration, at 3, ¶10—by bringing up his involvement in locating Capt. Whitehouse for service of a subpoena so close to the scheduled beginning of

a trial in which he is expected to be a witness, notwithstanding that American has known since March.

Capt. Shellhouse also fears that because of his seniority and his high profile within the APA, disciplining him on the eve of trial could send a powerful message to the other American pilots whom Lt. Col. Patterson has listed on his witness lists—which make him a high-value target.  Id. at 3-4, ¶¶ 10-11.

## Governing Principles of Law

USERRA[6] provides at 38 U.S.C. § 4311(b) that

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

The prohibition for such behavior is effective once a victim of it shows that his protected activity "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right."  § 4311(c)(2).

---

[6]Uniformed Services Employment and Reemployment Rights Act of 1994.

Additionally, this Court has the inherent authority "under appropriate circumstances, to issue a protective order … to protect the government's witnesses and agents from threats or intimidation." U.S. v. Carmichael, 326 F. Supp.2d 1267, 1277 (M.D. Ala. 2004) (declining, on various constitutional grounds, to issue order shutting down criminal defendant's website).

### Applying the Law to the Facts in the Case at Bar

Capt. Shellhouse is accused of possibly accessing Capt. Whitehouse's flight schedule through the data base he has access to as a member of the Allied Pilots Association to assist Lt. Col. Patterson in serving a deposition subpoena on a witness whom a process server could not serve despite numerous attempts at serving him at his residence.

Not only is the behavior of which Capt. Shellhouse is accused "tak[ing] an action to enforce a protection afforded any person under this chapter," i.e., assisting an USERRA plaintiff in getting service on a recalcitrant witness, but the Section 21 Notice of Hearing he was delivered on Tuesday makes clear that it was his alleged delivery of that information to Lt. Col. Patterson that is the motivating factor for summoning him to the disciplinary hearing.

Additionally, Capt. Shellhouse has been named three times—in an interrogatory answer, on a witness list and in Lt. Col. Patterson's deposition testimony—as a witness in Lt. Col. Patterson's USERRA case.  The face that American has known about the allegation that Capt. Shellhouse provided the information to Lt. Col. Patterson since March 6, but waited until just before

the scheduled trial to send him the Section 21 notice gives rise to an inference that his status as a witness is an additional motivating factor.

Although Capt. Shellhouse is not currently an USERRA plaintiff, he needs the assistant of this Court, through its inherent power to protect witnesses, to ensure that he is protected from American's efforts to retaliate against him for assisting Lt. Col. Patterson in his USERRA suit. Lt. Col. Patterson, meanwhile, needs this Court's help, through its inherent powers, to prevent American from intimidating his other witnesses by making an example of Capt. Shellhouse.

### Certificate of Conferral

Pursuant to Local Rule 7.1(a)(3) and 7.1(d), e-mailed opposing counsel at 9:39 a.m. today, to which defendant responded by saying that it would agree not to proceed against Capt. Shellhouse until after the trial. Plaintiff replied that this was insufficient, since it still held the specter of termination over Capt. Shellhouse's head during trial. Plaintiff offered to wait until 4 p.m. and would not file this motion if American agreed that it would drop its Section 21 proceedings against Capt. Shellhouse.

### Conclusion

Based on the facts marshaled, the authority cited and the arguments presented, plaintiff, Lt. Col. Rodney Scott Patterson, respectfully requests this Court to order defendant, American Airlines, Inc., to cease any further action against Capt. Shellhouse until further order of this Court, to order an

expedited briefing schedule, to grant the parties and hearing on this motion and to grant such other and further relief as is just.

        Respectfully Submitted,

        */s/ William R. Amlong*
        WILLIAM R. AMLONG
        Florida Bar No.: 470228
        WRAmlong@TheAmlongFirm.com
        KAREN COOLMAN AMLONG
        Florida Bar No.: 275565
        KAmlong@TheAmlongFirm.com

        NOEL C. PACE
        noel.c.pace.esq@gmail.com
        *Admitted Pro Hac Vice*
        206 NW 91st Street
        El Portal, FL
        (305) 710-3713

        AMLONG & AMLONG, P.A.
        500 Northeast Fourth Street
        Second Floor
        Fort Lauderdale, Florida 33301
        Telephone: (954) 462-1983
        Facsimile: (954) 463-5008

        **Attorneys for Plaintiff,**
        **Rodney Scott Patterson**

## Certificate of Service

**I HEREBY CERTIFY** that this motion has been filed using the ECF system of the Southern District of Florida this and thereby served on all counsel or parties of record.

        */s/    William R. Amlong*
        WILLIAM R. AMLONG

P:\Shellhouse Declaration\180727 Plaintiffs Emergency Motion.wpd