## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

      Defendant.

_____/

## AMERICAN AIRLINES, INC.'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION

In his supposed "Emergency Motion" (ECF No. 105), Plaintiff Rodney Scott Patterson ("Plaintiff") seeks affirmative injunctive relief to bar Defendant American Airlines, Inc. ("American") from investigating allegations that an American pilot violated American's confidentiality policies and procedures on the grounds that Plaintiff may call this employee as a witness.  American provided notice of a fact-finding hearing to the pilot to determine whether he violated American's policies and procedures by improperly accessing and distributing confidential information from American's computer systems concerning another American pilot. American sent him this hearing notice on July 12, 2018—two weeks before Plaintiff filed his motion—and has since taken the hearing off calendar.  There is thus no emergency and nothing to enjoin.

Plaintiff fails to provide even a shred of evidence for his allegations that American—by simply seeking to gather facts concerning a potential violation of its confidentiality policies and procedures—is "intimidating Plaintiff's Witness or Retaliating Against an Employee who has Assisted Plaintiff in Preparing for Trial" as he claims.  Plaintiff likewise fails to identify any legal theory that would ever plausibly support his extraordinary request for relief.

Plaintiff testified at his deposition in March 2018 that an American pilot Guy Dalton Shellhouse ("Captain Shellhouse") accessed confidential information concerning another American pilot, Glenn Whitehouse ("Captain Whitehouse") and provided that information to Plaintiff in order to allow Plaintiff to serve a subpoena on Captain Whitehouse.  According to Plaintiff, he asked Captain Shellhouse to access and share this confidential information— concerning Captain Whitehouse's flying schedule for American—because "it appeared that Whitehouse was dodging service of a subpoena."  American's pilots—who are required to verify their adherence to American's information security policies—cannot disregard its policies simply

because they decide that confidential information would be useful to them in litigation or otherwise.

Accordingly, on July 12, 2018—pursuant to Section 21 of the collective bargaining agreement governing the employment of all American pilots including Plaintiff (the "CBA")— American issued a notice of hearing "to investigate the circumstances" surrounding the allegation that Captain Shellhouse "obtained the work schedule of Captain Glenn Whitehouse and provided the schedule to another individual." Under Section 21 of the CBA, such a hearing is necessary for American to gather additional facts concerning a potential violation of its rules of conduct. These fact-finding hearings are not themselves disciplinary and they do not necessarily result in disciplinary action.

There is zero evidence that American issued the Section 21 notice based on any improper motivation or any attempt to influence testimony in the present proceedings—rather than in the interests of safeguarding confidential information. American would convene a Section 21 hearing for any pilot it suspected of providing another crew member's schedule to someone for use other than for Company-authorized business because doing so could compromise crew safety. Moreover, there has been no disciplinary action or change to the employment status of Captain Shellhouse in any event.

Accordingly, there is neither an emergency requiring this Court's intervention, nor a legal basis for this Court to take the extraordinary step of barring American from proceeding with a fact-finding hearing that is expressly authorized by the CBA. While there never was an emergency, there certainly is not one in light of this Court's Order yesterday cancelling the current calendar call and trial date for this case and taking it off the calendar call indefinitely. (ECF No. 108). Plaintiff's motion should be summarily denied.

## BACKGROUND

A.   The Present Litigation

In this USERRA action, Plaintiff claims that a "motivating factor" for American withholding him from duty as a First Officer of a 767 aircraft in September 2015, and continuing to withhold him from duty since that time, was a request by Plaintiff for time off to serve in the military.  ("Compl." ¶ 29, ECF No. 1.)  Plaintiff, however, now concedes that he actually did not request active military duty leave, but instead requested time off to attend an event with his wife. (ECF No. 59 at 11-12.)

As demonstrated in its summary judgment motion, American withheld Plaintiff from duty on September 24, 2015 because another long-time pilot, Captain Whitehouse, filed a formal workplace harassment complaint on that day that raised serious concerns regarding Plaintiff. (*See* ECF No. 59-1.)  Even Plaintiff concedes that American withholding him from duty "would not have arisen but for" the complaint by the other pilot, and also concedes that in his prior 15 years at American, he had never had a single issue taking military leave.  (*See* ECF No. 57-28 at 30.)

During American's investigation of the employee complaint against Plaintiff, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" whose conduct led "multiple employees . . . to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'"  (ECF No. 57-26.)  Based on this information, in accordance with the CBA, American referred Plaintiff for evaluation by an independent neuropsychologist.

On March 21, 2016, that doctor reported to American that Plaintiff is "NOT FIT FOR DUTY as a [pilot] on the basis of impaired performances on cognitive assessment."  (ECF No.

3

57-6 at 13.)  Since that time, American has withheld Plaintiff from duty and informed him that it will continue to withhold him until he returns to the same independent neuropsychologist (or a comparable examiner approved by American) for reevaluation in accordance with the CBA—the same as would be required for any pilot found unfit for duty.

B.  Americanʼs Confidential Information Policies and Procedures

American maintains policies and procedures to safeguard its confidential information, including information concerning Americanʼs customers, employees, and operations. (Declaration of Todd F. Jewett (ʺJewett Decl.ʺ) at ¶ 3, attached as Exhibit 1.)  All pilots employed by American are required to complete ʺdistance learningʺ exercises on a regular basis to verify that they are familiar with various policies and procedures at American.  (*Id.*) Information security, including confidential information, is a subject of these mandatory exercises. (*Id.*)

C.  Section 21 of the CBA

In Section 21 of the CBA, American and the pilotsʼ union agreed on a framework for American to investigate potential violations of Americanʼs rules of conduct by a pilot.  (*Id.* at ¶ 4.)  Under the CBA, notice of a Section 21 hearing is not a disciplinary action and a Section 21 hearing does not necessarily result in disciplinary action against a pilot.  (*Id.*)  Rather, under the CBA, one of the only ways that the Company can speak to a pilot about a matter that could lead to discipline is to convene a Section 21 proceeding.  (*Id.*)

D.  Captain Whitehouse is Served With a Deposition Notice in the Miami Airport

On February 17, 2018, Captain Whitehouse reported to American that, on February 16, 2018, while approaching a gate at Miami International Airport to board an international flight that he was scheduled to operate for American, a process server served him with a subpoena to

appear for a deposition in this matter. (*Id.* at ¶ 5.) Captain Whitehouse asked American who looked up his information, how Patterson's process server was allowed into the secure side of the terminal, and what action American intended to take as a result. (*Id.*)

E. The Apparent Unauthorized Access of Confidential Information

As a result, American questioned Plaintiff about this at his March 6, 2018 deposition. Plaintiff testified he had asked Captain Shellhouse to access the confidential flight schedule information for Captain Whitehouse, another American pilot, and to provide that information to Plaintiff. (Pl's. Mot. at 2-3.) Plaintiff also conceded that Captain Whitehouse's flight schedule is non-public information on American's computer systems. (*Id.*) Flight schedule information is available to American's pilots exclusively to allow pilots to review information relevant to their own flight schedules and to American's flying operations. (Jewett Decl. at ¶ 6.) American's pilots are not authorized to access the flight schedule information of other pilots, or to distribute such information, without express approval from American or in some circumstances the pilots' union. (*Id.*)

According to Plaintiff, the purpose of accessing and distributing this confidential information concerning Captain Whitehouse was "to certify that Whitehouse would be in the Miami airport because it appeared that Whitehouse was dodging service of a subpoena." (Pl's. Mot. at 3.) Of course, American's policies and procedures concerning confidential information do not include any exception that permits American's pilots to disregard their terms at the pilot's discretion for another pilot's purposes. (Jewett Decl. at ¶ 7.) American would convene a Section 21 hearing for any pilot it suspected of providing another crew member's schedule to someone for use other than for Company-authorized business because doing so could compromise crew safety.

F.  American Issues a Section 21 Notice to Shellhouse

Following Plaintiff's deposition, on June 14, 2018, Captain Whitehouse again contacted American inquiring how a process server got through to the secure side of the Miami airport to serve a subpoena on him.  (*Id.* at ¶ 8.)  American determined that additional fact-finding was necessary in order to determine whether, in connection with this apparent unauthorized access, Captain Shellhouse violated American's policies and procedures concerning confidential information.  (*Id.*)  Thus, pursuant to its contractual authority under Section 21 of the CBA, on July 12, 2018, American issued a "Section 21 Notice of Hearing" to Captain Shellhouse.  (*Id.* at ¶ 8; ECF 105-6.)[1]  Captain Jeff Price, the Director of Flight at American's Miami hub, issued the notice, which states:

> I received a report that you allegedly obtained the work schedule of Captain Glenn Whitehouse and provided the schedule to another individual.
>
> I am scheduling a hearing on 26 July 2018, at 11:00am to investigate the circumstances surrounding the issue described above.  In preparation for that hearing, I recommend that you familiarize yourself with Section 21 of the Collective Bargaining Agreement and contact APA to arrange for representation.

(*Id.*)  On July 25, 2018, Captain Shellhouse responded to Captain Price by email, "requesting that this hearing be moved to not earlier [than] August 1, 2018' and seeking "in accordance with [Section] 21.B.4, all relevant documentation including the specific charges."  (Jewett Decl. at ¶ 9.)  That same day, Captain Price responded by email as follows:  "We will take the hearing for tomorrow off of the calendar for now and consider your request.  Please know that the focus of

---

[1] American emailed this notice to the pilots' union (the APA) and sent the notice to Captain Shellhouse via Federal Express on July 12, 2018.  (Jewett Decl. at ¶ 8.)

the Section 21 is the integrity of AA's confidential information, including information regarding crew schedules." (*Id.*)

On July 27, 2018, Plaintiff's counsel contacted American's counsel, asking if American would concur in Plaintiff's present "Emergency Motion" regarding Captain Shellhouse, or the relief requested therein. (Ex. 2 at 3-4.) Counsel for American explained its position that it had done absolutely nothing wrong, but offered to postpone the Section 21 hearing until after Patterson's trial in order to avoid this needless dispute—provided Captain Shellhouse would commit that he would not use American's confidential information for any improper purpose during such time. (*Id.* at 2.)

Plaintiff did not agree to American's proposal, and stated that he would only withdraw the motion "if American agrees to completely withdraw any Section 21 proceeding against Capt. [Shellhouse] concerning his possibly having supplied Lt. Col. Patterson with information about Capt. Whtehouse's (sic) schedule so that Lt. Col. Patterson could effect service on Capt. Whitehouse in a USERRA action." (*Id*. at 1.) Plaintiff asks this Court "to order [American] to cease any further action against Capt. Shellhouse until further order of this Court." (Pl.'s Mot. at 8.) The sole conduct by American that Plaintiff has identified for such affirmative injunctive relief is the Section 21 Notice issued to Captain Shellhouse on July 12, 2018, issued pursuant to Section 21 of the CBA.

## LEGAL STANDARD

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegal v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000). A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four factors. *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1988). *Adamson-James v. Fla. Dep't of Corr.*, No. 6:11-CV-628-Orl-35TBS, 2013 WL 1703541, at *1 (M.D. Fla. Mar. 22, 2013).

When an injunction is sought to force another party to act, "rather than simply to maintain the status quo, it becomes a 'mandatory or affirmative injunction' and the burden on the moving party is **heightened**. A mandatory injunction 'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *Berber v. Wells Fargo Bank, N.A.,* No. 16-24918-CIV, 2017 WL 2417960, at *3 (S.D. Fla. June 2, 2017) (emphasis in original) (internal citations omitted). Here, Plaintiff seeks an affirmative injunction that would require American to withdraw the Section 21 notice issued to Captain Shellhouse, as opposed to simply maintaining the status quo by postponing the Section 21 proceeding, which American offered to do in an attempt to avoid this dispute.

## **ARGUMENT**

For the reasons set forth above, Plaintiff's motion fails because there is zero factual support for his allegations. As detailed below, there is also zero legal basis for his position because Plaintiff lacks standing to bring this motion and Plaintiff (as well as Captain Shellhouse) has failed to state a claim for violation of USERRA under these facts in any event.

### I.   PLAINTIFF LACKS STANDING TO BRING THE PRESENT MOTION

"'[A] party has standing to seek injunctive relief only if the party alleges ... a real and immediate-as opposed to a merely conjectural or hypothetical threat of future injury.'" *Adamson-James*, 2013 WL 1703541 at *2.  Plaintiff, however, has not identified a "real and immediate" injury.  A Section 21 hearing provides the contractual mechanism for American to gather facts to determine whether Captain Shellhouse has violated American's policies and procedures.  (*See* Jewett Decl. at ¶ 4.)  Neither the hearing notice nor the hearing are themselves disciplinary action, and discipline does not necessarily follow the hearing.  (*See Id.*)  Further, American has not even convened the hearing and agreed to Captain Shellhouse's request to delay the hearing date.  (*Id.* at ¶ 9.)  As such, Plaintiff has not and cannot identify any objection to the conduct of the Section 21 proceedings or the outcome of such proceedings.  Therefore, at this stage, any alleged injury related to the Section 21 hearing is "a merely conjectural or hypothetical threat of future injury."  *Id.*

Plaintiff also does not have standing to assert that American is "intimidating" or "retaliating against" another employee.  *See, e.g., Adamson-James*, 2013 WL 1703541 at *2 ("Plaintiff has also failed to demonstrate standing to bring this motion to protect non-party witnesses.")  "If there was evidence that Defendants were intimidating witnesses then those witnesses would have to seek the protection of the Court." *Id.* citing *Refoule v. Ellis*, 74 F. Supp. 336, 343 (N.D. Ga. 1947) ("[T]he prayers of plaintiff relative to alleged intimidation of witnesses and their coercion by defendants to give false testimony against him must be denied.  If their

civil rights have been violated, they may institute proper proceedings to protect themselves, but such rights are not personal to plaintiff.").[2]

## II.   PLAINTIFF'S PURPORTED USERRA ANTI-RETALIATION CLAIM FAILS ON ITS FACE

Plaintiff asserts that USERRA's anti-retaliation provisions require this "emergency" exercise of "the Court's inherent powers."  Plaintiff, however, cannot possibly state a claim *on behalf of another employee* under USERRA, nor could Plaintiff or Captain Shellhouse satisfy the elements of such a claim under the facts here in any event.

Neither Plaintiff nor Captain Shellhouse can state a prima facie case of retaliation under USERRA with respect to the Section 21 Notice for multiple reasons.  To establish a prima facie case, an employee must show that he was "denied a benefit of employment and that his protected status was a 'motivating factor' in the denial" and/or that his action to enforce a protection or exercise a right under USERRA was "a motiving factor in an adverse employment action." *Bagnall v. City of Sunrise*, No. 10-cv-61299, 2011 WL 3715123, at *9 (S.D. Fla. Aug. 24, 2011) (Martinez, J.) (citing *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005)).

Here, there is no evidence that American issued the Section 21 notice based on any improper motivation or any attempt to influence testimony in the present proceedings—rather

---

[2] To the extent that Plaintiff or Captain Shellhouse seeks to challenge procedures related to Captain Shellhouse's Section 21 hearing, including with respect to scheduling the hearing or information requests under Section 21, these issues would constitute a "minor dispute" under the Railway Labor Act, involving interpretation of the CBA over which a system board of adjustment has exclusive, final, and binding jurisdiction.  *See, e.g., U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 303-04 (E.D.N.Y. 2012); *see generally* ECF 95.

than in the interests of safeguarding confidential information. *See, e.g., Householder v. Armstrong Cty. Mem'l Hosp.*, No. CIV. A. 07-0372, 2008 WL 3050403, at *2 (W.D. Pa. Aug. 5, 2008) (["W]ith respect to her suspension without pay, [the plaintiff] does not dispute that she accessed patient files. Rather, she contends that she accessed non-confidential information and was unjustly punished for breaching ACMH's confidentiality policy. Quite simply, this is a distinction without a difference. . . . There is simply no evidence to support plaintiff's theory that she did not violate the policy or to the extent that she did, she was wrongfully punished.") American would convene a Section 21 hearing for any pilot it suspected of providing another crew member's schedule to someone for use other than for Company-authorized business because doing so could compromise crew safety.

There has also been no adverse employment action against Shellhouse—not any disciplinary action nor change to his employment status. *See, e.g., Philson v. Hosp. Auth. of Houston Cty., Ga.*, No. CIV.A. 5:08-CV-155HL, 2009 WL 2477255, at *10 (M.D. Ga. Aug. 10, 2009) ("The Court finds that the written warning was not an adverse employment action for purposes of a Title VII claim. Philson has not shown that the warning resulted in a loss of pay, position, or benefits. Under this circuit's law, 'the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.'")

Further, even if Captain Shellhouse could establish a prima facie case (and he cannot), American had a legitimate, non-retaliatory reason for issuing the Section 21 notice to Shellhouse—investigating the apparent breach of its policies and procedures regarding confidential information—and Plaintiff cannot show that this legitimate reason was a pretext for retaliation. American's July 12, 2018 Notice of Section 21 Hearing to Captain Shellhouse reflects a legitimate, non-discriminatory exercise of American's collective-bargained authority to

11

investigate a potential breach of American's policies and procedures concerning confidential information. Any possible USERRA anti-retaliation claim would fail for this reason as well. *See, e.g.*, *Householder*, 2008 WL 3050403 at *6 ("[E]ven if [the plaintiff] could establish a prima facie case of retaliation based on her suspension, she has failed to present evidence sufficient to raise a genuine issue of material fact that ACMH's legitimate, non-discriminatory reason for the suspension, i.e., violating its policy of accessing patient files, was a pretext for retaliation."); *Philson*, 2009 WL 2477255, at *14 ("Philson has presented no evidence to create a genuine issue of fact as to whether HHC honestly believed her to have violated HIPAA and the confidentiality policy at the time of her dismissal.")

## CONCLUSION

For these reasons, American respectfully requests that this Court deny Plaintiff's motion.

Respectfully submitted,
By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com

12

**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of July, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
MICHAEL A. HOLT

## <u>SERVICE LIST</u>

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*

14