UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

    Defendant.
_____/

## AMERICAN AIRLINES, INC.'S OMNIBUS OPPOSITION
## TO PLAINTIFF'S MOTIONS IN LIMINE

American Airlines, Inc. ("American") respectfully submits this omnibus opposition to the five motions in limine filed by Plaintiff Rodney Scott Patterson ("Plaintiff") regarding: (1) Testimony That Corporate Security's (sic) Only Investigated Gun Running Allegations (ECF No. 100); (2) § 20 Letters from Beach, Bond (sic) (ECF No. 101); (3) Reports of Knippa, Bercaw/Fonseca (ECF No. 102); (4) American Airlines, Inc.'s Requirement That Patterson Abandon his USERRA Claim to Return to Flying (ECF No. 103); and (5) Human Resources Close-out Memo (ECF No. 104) (collectively, "Plaintiff's Motions"). For the reasons detailed below, Plaintiff's Motions are without merit and should be denied.

## BACKGROUND

In this USERRA action, Plaintiff claims that a "motivating factor" for American withholding him from duty as a First Officer of a 767 aircraft in September 2015, and continuing to withhold him from duty since that time, was a request by Plaintiff for time off to serve in the

military. (Compl. ¶ 29, ECF No. 1.) As demonstrated in its summary judgment motion, American withheld Plaintiff from duty on September 24, 2015 because another long-time pilot filed a formal workplace harassment complaint on that day that raised serious concerns regarding Plaintiff. (*See* ECF No. 59-1.) Even Plaintiff concedes that American withholding him from duty "would not have arisen *but for*" the complaint by the other pilot, and also concedes that in his prior 15 years at American, he had never had a single issue taking military leave. (*See* ECF No. 57-28 at 30 (emphasis added).)

Following an investigation of the workplace harassment complaint against Plaintiff, American's HR Department in Miami prepared a written report in December 2015. In that report, American's HR Department concluded that, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" whose conduct led "multiple employees . . . to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'" (ECF No. 57-26.) Based on this information, the Miami flight office formally requested, "a Fitness for Duty Medical Examination, pursuant to Section 20 of the [American/Allied Pilots Association Collective Bargaining Agreement (the "CBA")] . . . based upon this office's concerns about FO Patterson's judgment and specifically, his mental and/or emotional stability. This office has received multiple reports of atypical interactions with coworkers and reports that suggest a pattern of false/self-aggrandizing statements." (ECF 59-1 at ¶ 35.) The Miami flight office then sent notice to Plaintiff that, pursuant to Section 20 of the CBA, American was referring him to a fitness-for-duty examination by an independent neuropsychologist, Dr. John Knippa. (*Id.* at ¶¶ 36–37; ECF No. 76-1 at ¶¶ 13–14.)

On March 21, 2016, following a two-day examination, Dr. Knippa reported to American that Plaintiff is "NOT FIT FOR DUTY as a [pilot] on the basis of impaired performances on

cognitive assessment." (ECF No. 57-6 at 13.) Since that time, American has withheld Plaintiff from duty and informed him that it will continue to withhold him until he returns to the same independent neuropsychologist (or a comparable examiner approved by American) for reevaluation in accordance with Section 20 of the CBA—the same as would be required for any pilot found unfit for duty. (ECF 59-1 at ¶¶ 38–39; ECF No. 76-1 at ¶¶ 13–14.)

## **LEGAL STANDARD**

"The purpose of a motion in limine is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury." *United States v. Jim*, No. 14-cv-22441, 2016 WL 7538942, at *1 (S.D. Fla. May 5, 2016) (Altonaga, J.) (citations omitted). Relevant evidence is admissible unless it is excluded for some other reason. *See* Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

In order to prevail on his claim, Plaintiff must first prove that his military service was "a motivating factor" in American's decision to withhold him from duty on September 24, 2015 or to keep him withheld from duty since that time. 38 U.S.C. § 4311(c)(1); *see also* Pattern Civ. Jury Instr. 11th Cir. 4.18 (2013). A "motivating factor" means something "the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005). Even if military service, or exercising a right protected by USERRA, is a motivating factor, a defendant has not violated USERRA if "the action would have been taken in the absence of such [military service]." 38 U.S.C. § 4311(c)(1). Only if a jury determines that an employer's actions were: (1) motivated by the plaintiff's military service or exercising a right protected by USERRA; and (2) that the

3

employer would not have taken the action in the absence of the plaintiff's military service, may the jury consider damages.  *See* Pattern Civ. Jury Instr. 11th Cir. 4.18 at Special Interrogs.

## ARGUMENT

If Plaintiff's Motions were granted, the trial of this case would turn from a fact-finding mission to a charade.  Two of Plaintiff's motions seek to exclude contemporaneous evidence of American's motive.  Specifically, in these motions Plaintiff seeks to exclude: (1) the "close-out" memo that American's HR Department prepared in December 2015 following its investigation of the employee complaint filed against Plaintiff (which is what led to American sending Plaintiff for a fitness-for-duty examination); and (2) the fitness-for-duty examination notices that American sent to Plaintiff in January 2016.  While American's motive is an issue Plaintiff himself is required to prove, he seeks to prohibit American from introducing contemporaneous evidence demonstrating that its motive had absolutely nothing to do with Plaintiff's military status.  The HR "close-out" memo is a business record that shows the at-the-time motivation for American's decision to refer Plaintiff for a fitness-for-duty evaluation.  Plaintiff wants to keep that out simply because it completely undermines his later-concocted story.  The Section 20 letters similarly show the actions taken by American and explain American's bona fide motivation for its actions at the time.

In his next two motions, Plaintiff similarly seeks to provide the jury only half the story. Specifically, Plaintiff seeks to exclude, (1) the fitness-for-duty examination reports from Dr. Knippa and Dr. Bercaw; and (2) selectively chosen testimony concerning an investigation of Plaintiff by American's corporate security department.  Plaintiff has himself alleged in his Complaint that American's actions were based on the report from Dr. Knippa, who found him not fit for duty. (Compl. at ¶¶ 15–18.)  Plaintiff's own statement to this Court in a prior filing that,

4

"Dr. Knippa's fitness-for-duty examination of Mr. Patterson and results thereto are central to this litigation" similarly belies the position he now takes. (ECF No. 26, at 3.) Having relied on Dr. Knippa's report when doing so suited his own purposes, Plaintiff now seeks to hide it from the jury because he recognizes its overwhelming relevance in demonstrating that American continued to withhold Plaintiff from duty for legitimate reasons. In fact, Dr. Knippa's report explaining why Plaintiff was not fit for duty (whether accurate or not) is the medical evidence that American actually considered when deciding whether to allow Plaintiff to return to duty—unlike the cherry-picked opinions of subsequent doctors who agreed to "play ball" and provide reports favorable to Plaintiff for use in this lawsuit.[1]

Dr. Caddy is an example of one of Plaintiff's hired-gun doctors. Plaintiff asks the Court to allow Dr. Caddy to testify, but in the same breath asks the Court to insulate Dr. Caddy from cross-examination based on Dr. Bercaw's report—a report that directly undermines Dr. Caddy's unscientific opinions and which Plaintiff fought at every step of the way to hide from American and this Court. If Dr. Caddy is permitted to cherry-pick only the data that support his ill-founded conclusion, American is entitled to show the jury precisely how flimsy that opinion is. Similarly, if Plaintiff opens the door on the corporate security investigation of Plaintiff by American in 2015,

---

[1] After the close of discovery, Plaintiff disclosed an email between Plaintiff and his testifying expert (Dr. Caddy) that confirms Plaintiff was "doctor shopping." In that email, Plaintiff, in referring to Dr. Bercaw, who reaches a conclusion that does not support Plaintiff and his testifying expert's position (but actually agrees with Dr. Knippa who found Plaintiff not fit for duty), states: "*If Dr. Bercaw will play ball with you, fine. . . . If he won't play ball we will cut bait and go fish elsewhere.*" (ECF No. 79 at 2) (emphasis added). Preventing doctor shopping is one of the primary reasons why, under Section 20 of the CBA, the same doctor or a comparable doctor approved by American must reevaluate the pilot in order for a pilot to return to work after being found unfit for duty.

5

he cannot prevent the jury from learning what American understood the scope of that investigation to entail.

Plaintiff's final motion is his most frivolous of all. He seeks an affirmative order from the court allowing him to use settlement communications in an attempt to prove liability in this case. The legal standard on that motion is so clear it has been reduced to a rule of evidence—408.

For these reasons and as detailed below, American requests that the Court deny Plaintiff's Motions.

## I.   HUMAN RESOURCES CLOSE-OUT MEMO

Plaintiff seeks to "exclude from evidence the Human Resources close-out memo concerning the Section 21 of investigation" of Plaintiff. (ECF No. 104.) There is no basis to do so, and Plaintiff's motion should be denied.

American's HR Department in Miami prepared its "close-out memo" in December 2015 following its investigation of the employee complaint filed against Plaintiff on September 24, 2015. (ECF No. 59-1 at ¶¶ 24, 29–33.) In the final section of the Report, the HR Department concludes: "During our interviews, multiple employees expressed their concern with Patterson's behavior . . . . They believed that Patterson's misrepresentations not only caused negativity amongst the crew but also led them to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'" (*Id.* at ¶ 33.) This written report reflects the precise basis for American's decision to send Plaintiff to a fitness-for-duty evaluation. Based on the HR investigation, including the written report, American concluded that Plaintiff must undergo a fitness-for-duty examination before allowing him to operate passenger aircraft. (*Id.* at ¶ 34.) The

written report is, therefore, probative evidence of American's motivation for referring Plaintiff to a fitness-for-duty examination, which is a central issue that Plaintiff must prove in this case.

Contrary to Plaintiff's arguments, the written report is "not hearsay because [it is] not offered for the truth of the matter asserted; instead, [it is] offered only to establish that [American] had legitimate, non-discriminatory reasons" for referring Plaintiff to the fitness for duty examination. *See Jefferson v. Burger King Corp.*, 505 F. App'x 830, 836 (11th Cir. 2013). In *Moore v. Sears, Roebuck & Co.*, an employer introduced memos containing "observations pertaining to [an employee's] performance, summaries of reports on his performance made by other . . . employees, and chronological accounts of events such as personnel investigations and meetings." 683 F.2d 1321, 1322 (11th Cir. 1982.) The Eleventh Circuit held that the memos "did not constitute hearsay" because they "were not tendered to prove the particulars of their contents, but to help establish that Sears was motivated, in good faith, to discharge Moore for reasons other than age." *Id.* at 1322–23; *see also LaCentra v. Fla. Dep't of Health*, No. 12-cv-21320, 2013 WL 12091094, at *7 (S.D. Fla. Feb. 28, 2013) ("[Hearsay] objection to the admissibility of the Employee Profile Sheets is misplaced because the [defendant] offers them to establish a non-discriminatory reason for terminating Plaintiff.") (citing *Moore*).

The *Moore* Court also rejected the argument "that it was unnecessary for Sears to introduce, in detail, the contents of the memoranda as evidence of proper intent, that it would have been sufficient for Sears to have established the existence and nature of the memoranda." *Id.* at 1323. According to the Eleventh Circuit, the employer was permitted to introduce the memos as "more specific evidence of Sears' assessment of Moore's performance in order to strengthen the credibility of those who testified that Moore had been terminated for bona fide reasons" and that its "stated reasons for termination were not a pretext." *Id*. Here, the December 2015 written report

7

by American's HR department is contemporaneous evidence of American's bona fide reasons for investigating the September 24, 2015 employee complaint against Plaintiff and thereafter referring Plaintiff to a fitness for duty examination, in accordance with Section 20 of the CBA.

Even if the written report were hearsay, it would be admissible as a business record. Federal Rule of Evidence 803(6) permits the introduction of documents "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the [documents], all as shown by the testimony of the custodian or other qualified witness." *Arch Specialty Ins. Co. v. Balzebre*, No. 10-cv-23775, 2013 WL 12065533, at *2 (S.D. Fla. Jan. 16, 2013). Here, the written report was prepared by American's HR department at the conclusion of its investigation, in accordance with the regular practice of the department, and American relied on that report in referring Plaintiff to a fitness-for-duty examination. The author of the report, Ana Burke-Leon, has been identified by American as a trial witness and is available to testify regarding the trustworthiness of the written report, if necessary. *See, e.g., Arch Specialty*, 2013 WL 12065533, at *3 ("Defendants present no evidence or argument to support their contention that Mr. Kaplan is an improper witness to lay the foundation for its admission into evidence."); *Celler Law Org. v. Sony Pictures Television, Inc.*, No. 16-cv-61678, 2014 WL 12580516, at *3 (S.D. Fla. Apr. 12, 2014) ("Based upon Sony's representations that its witnesses will properly authenticate documents relating to other shows and tours through their testimony, the Court will defer ruling on this motion in limine, and will address objections to the authenticity of Sony's evidence as they arise at trial.")

There is no basis to exclude the HR final report.

## II.  SECTION 20 LETTERS FROM BEACH AND BONDS

Plaintiff also seeks to "exclude from evidence the Section 20 letters sent to plaintiff, Lt. Col. Rodney Scott Patterson, stating that '[d]ue to my concerns regarding your ability to safely operate an aircraft, I have arranged for you to participate in a medical evaluation as provided in Section 20 of the [Joint Collective Bargaining Agreement].'" (ECF No. 104.)  The Miami flight office sent these letters to Plaintiff on January 20 and January 26, 2016, informing Plaintiff that it was referring him to a fitness-for-duty examination in accordance with Section 20 of the CBA, and setting forth the details regarding the date and location of his examination.[2]  Plaintiff's motion should be denied.

Plaintiff asserts that the Section 20 letters should be excluded because the signatories to the letters, Captain Brian Beach and Captain James Bonds, respectively, "had no personal knowledge" of their contents.  This is plainly false and not relevant in any event.  On January 14, 2016, the Miami flight office—at that time led by chief pilots Beach, Bonds, and Sean Scialfa—formally referred Plaintiff to "a Fitness for Duty Medical Examination, pursuant to Section 20" of the CBA, "based upon this office's concerns about FO Patterson's judgment and specifically, his mental and/or emotional stability."  (ECF 59-1 at ¶ 35.)  Following the HR department's investigation, the Miami flight office had concerns about whether Plaintiff "was, in fact, fit for duty as an American Airlines pilot."  (Montgomery Dep. 55:2–12, ECF No. 57-25.)  These

---

[2] After the Miami flight office sent the original notice on January 20, 2016—signed by Captain Bonds—Plaintiff requested that the examination be moved to a different date and American agreed to Plaintiff's request.  The January 26, 2016 notice from the Miami flight office—signed by Captain Bonds—included a new date for the examination but was otherwise unchanged. (Bonds Dep. Ex. 23, ECF No. 101-1; Beach Dep. Ex. 36.)

concerns were shared by "labor and legal and the [system-wide] flight office with Mark Cronin all the way down to . . . the [Miami] flight office." (Bonds Dep. 105:5–12, ECF No. 57-7.) Based on a "collective process through labor, legal, and the flight office," American determined that a fitness for duty examination of Plaintiff, in accordance with Section 20 of the CBA, was required. (Bonds Dep. 104:14–19, 60:20–25; Montgomery Dep. 55:2–12.) American's Corporate Medical Director selected the independent neuropsychologist, Dr. John Knippa, for the examination because he had been recommended for his experience with "behavioral and/or personality problems." (ECF 59-1 at ¶ 36.) Those details were then set forth in the notices sent to Plaintiff by the Miami flight office on January 20 and January 26, 2016. (Bonds Dep. Ex. 23; Beach Dep. Ex. 36.)

Like the HR report, the Section 20 letters are not hearsay because they are not offered to show that Plaintiff was, in fact, unable "to safely operate an aircraft" at the time—instead, they are probative evidence of American's motivation in referring Plaintiff to the fitness for duty examination. *See Moore*, 683 F.2d at 1322-23; *Jefferson*, 505 F. App'x at 836. The fact that these letters echo the findings of the HR investigation—that "multiple employees" questioned Plaintiff's "behavior" and "ability to operate the aircraft safely"—for example, provides probative evidence rebutting Plaintiff's utterly fanciful theory that he was withheld from duty only because Captain Bonds, himself a former longtime military service member, was either "jealous" of Plaintiff's military accolades or resentful because Plaintiff served in the Army while Captain Bonds served in the Air Force. (*See* Pl. Dep. at 288:8–89:25, 324:4–12, ECF 57-1.) *See also Richards v. Wells Real Estate Funds, Inc.*, No. 07-12292, 2007 WL 3002071, at *1 (11th Cir. Oct. 16, 2007) (per curiam) ("[W]e have upheld the admission of out-of-court written statement prepared by supervisors pertaining to an employee's performance when offered to show the employer's non-discriminatory purpose for taking an employment action.")

10

Also like the HR report, the letters are separately admissible as business records. American referred Plaintiff to a fitness-for-duty examination in accordance with procedures collectively bargained by American and the union representative for American's pilots, in Section 20 of the CBA. The letters providing Plaintiff notice of the examination reflect a structure of regular communication between the Miami flight office and its pilots. Company witnesses Beach, Bonds, and Michelle Montgomery (Senior Manager of Labor Relations for the Flight group at American) have each testified to the foundation of these letters. (Bonds Dep. at 103–106; Beach Dep. at 89; Montgomery Dep. at 55–60.) Each witness has also been identified by American as a trial witness and is available to testify regarding the trustworthiness of the letters, if necessary. *See, e.g., Arch Specialty*, 2013 WL 12065533, at *3; *Celler Law Org.*, 2014 WL 12580516, at *3.

Plaintiff's assertion that the Section 20 letters are cumulative is also without merit. The letters reflect "more specific evidence" of American's motivation at the time that Plaintiff was referred to the fitness-for-duty examination, and therefore they "strengthen the credibility" of those who will testify that American had a bona fide motivation—including passenger safety—for referring Plaintiff to a Section 20 fitness for duty examination. *See Moore*, 683 F.2d at 1323; *see also Rakip v. Paradise Awnings Corp.*, No. 10-cv-20004, 2010 WL 11469123, at *2 (S.D. Fla, Nov. 8, 2010) ("[T]he managerial exception is one of the main defenses asserted in this case, and it is critical that the Defendants be permitted to present their full case on this issue. As it is presented, it does not appear that the use of the multiple documents is unnecessarily cumulative.")[3]

---

[3] Plaintiff argues that the Section 20 letters will "inject[] passenger safety into the argument." (ECF No. 104 at 9.) The fact that Plaintiff does not seek to exclude this January 14, 2016 letter from the Miami flight office, however, demonstrates that the Section 20 letters will not uniquely "inject[] passenger safety into the argument." In any event, and more importantly, passenger safety is an appropriate part of American's case because it was a significant factor in American's decision

11

Plaintiff is free to argue to the jury about whether these letters prove that American had this bona fide motivation (they do), "but it would be disingenuous to forbid" the introduction of letters that are central to the motivating factor analysis in this case. *See Rakip*, 2010 WL 11469123, at *2.

### III. REPORTS OF KNIPPA AND BERCAW/FONSECA

Plaintiff seeks to "exclude from evidence the written reports and correspondence of John Knippa, Ph. D., Edwin Bercaw, Ph. D., and Francy Natalie Fonseca, Psy.D." (ECF No. 102.) Plaintiff's motion should be denied.

#### A. Dr. Knippa

Plaintiff's present motion is the second motion in limine Plaintiff has filed in an attempt to limit or exclude testimony from Dr. Knippa, an independent neuropsychologist, who conducted Plaintiff's March 2016 fitness-for-duty examination. Plaintiff's June 11, 2018 "Motion in Limine to Preclude Dr. John Knippa from Providing any Opinion Testimony and/or to Limit His Testimony by Rodney Scott Patterson" (ECF No. 58) is currently pending with this Court. For the reasons set forth in American's Opposition to Plaintiff's June 11 Motion, that motion should be denied. The present motion to limit Dr. Knippa's testimony is similarly without merit.

More than a year before Plaintiff filed this lawsuit and in response to serious allegations by multiple employees questioning Plaintiff's fitness for duty as a commercial pilot, American referred Plaintiff to Dr. Knippa for a fitness for duty examination. Following a two-day examination, Dr. Knippa concluded that Plaintiff is "NOT FIT FOR DUTY as a [First Officer]."

---

to withhold Plaintiff from flying, as well as its decision to continue to withhold him until and unless he is cleared for duty following a reevaluation by Dr. Knippa or a comparable doctor approved by American.

Based on that report, and Plaintiff's subsequent refusal to return to Dr. Knippa or another doctor approved by American for reevaluation, American has continued to withhold Plaintiff from duty.

Dr. Knippa's written examination report is not hearsay because it is "not offered for the truth of the matter asserted; instead [it is] offered only to establish that [American] had legitimate, non-discriminatory reasons" for continuing to withhold Plaintiff from duty following his fitness for duty examination. *See Jefferson*, 505 F. App'x at 836. The report that Dr. Knippa issued to American in March 2016 provides probative evidence regarding American's motivation in thereafter withholding Plaintiff from duty. *See Rakip*, 2010 WL 11469123, at *2 ("As to the Plaintiffs' hearsay argument, the Defendants are correct that this evidence is not hearsay because it is not being offered to prove the truth of the matter asserted, but instead is being offered to establish the effect on the listener."); *see also Goode v. Wild Wing Café*, 588 F. App'x 870, 874–875 (11th Cir. 2014) citing *Moore*, 683 F.2d at 1323, n. 4 ("It is well settled in employment discrimination cases such as this that for an employer to prevail the [fact finder] need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory and that the asserted reason for the discharge is therefore not a mere pretext for discrimination.")

Dr. Knippa's examination report is also admissible as a business record. "[M]edical diagnoses . . . are frequently admitted into evidence through Rule 803(6) business records." *Celler Law Org.*, 2014 WL 12580516, at *4. These records are "at their core expressions of opinion based upon the scientific or medical expertise of the observer." *Id.* Here, American referred Plaintiff to Dr. Knippa in accordance with Section 20 of CBA; Dr. Knippa then examined Plaintiff as an independent neuropsychologist in the regular course of his business; and once Dr. Knippa issued his report to American finding Plaintiff "NOT FIT FOR DUTY," well before this litigation

13

commenced, American relied on that report and withheld Plaintiff from duty.  Under these facts, the requirements of Rule 803(6) are satisfied with respect to Dr. Knippa's report.  *See id.* (citing *Condus v. Howard Sav. Bank*, 986 F. Supp. 914, 917–20 (D.N.J. 1997) (admitting business records where "the opinions were prepared in the regular course of business of an independent financial consultant, the consultant had no reason to falsify the opinions, the business retaining the consultant did not seek the consultant's opinion for litigation purposes, and the business trusted and relied upon the work of the consultant.").

Dr. Knippa's report is not cumulative, as it will provide "specific evidence" to "strengthen the credibility" of those who testify that Dr. Knippa's report motivated American to withhold Plaintiff from duty.  *See Moore*, 683 F.2d at 1323.  Moreover, Plaintiff has repeatedly mischaracterized the testimony of Dr. Ahtone, American's corporate medical director, to wrongly suggest that Dr. Knippa's report did not provide a rationale for Dr. Knippa's opinion that Plaintiff is not fit for duty.  (ECF 74 at 12-13; ECF 89 at 8; ECF 102 at 2.)  But the falsity of this argument is demonstrated by Dr. Knippa's report itself.  While Plaintiff may wish to paint a different picture for the jury, American considered Dr. Knippa's report and the jury should know what that report says when deciding American's motive.  Plaintiff can argue (wrongly) to the jury that Dr. Knippa's written report "really say[s] nothing," but it cannot exclude this report simply because it provides powerful evidence to the jury.  As Plaintiff stated in a prior filing with this Court: "Dr. Knippa's fitness-for-duty examination of Mr. Patterson and results thereto are central to this litigation." (ECF No. 26, at 3.)

14

## B. Dr. Bercaw/Fonseca

This Court should also deny Plaintiff's attempt to "exclude the written materials from Drs. . . . Bercaw and Fonseca." (ECF No. 102 at 6.) As this Court noted in its July 30, 2018 Order Revising Scheduling Order, Magistrate Judge Otazo-Reyes found on June 27, 2018 "that Plaintiff violated Fed. R. Civ. P. 26(a)(2)(B)(ii) when Dr. Caddy failed to include in his expert report all facts or data he considered in rendering his opinion—Dr. Bercaw's report [ECF 80]." (ECF No. 108.) Magistrate Judge Otazo-Reyes ordered Plaintiff to produce "Dr. Bercaw's report regarding Plaintiff" as well as accompanying communications from Dr. Bercaw to Dr. Caddy. (ECF No. 80.) In light of this ruling, this Court recently granted American's request for leave to take additional discovery "to explore Dr. Bercaw's report and Dr. Caddy's methodology" and "to file a *Daubert* motion in light of the newly-discovered evidence related to Dr. Caddy's methodology." (ECF 108 at 2.) American now has 21 days from the date of the July 30, 2018 order "to take follow-up depositions regarding Dr. Bercaw's newly-disclosed report. (*Id.* at 3–4.) Plaintiff's request to limit or exclude Dr. Bercaw's report, or testimony regarding that report, is premature in light of these developments.

In any event, Dr. Bercaw's report is impeachment evidence that directly contradicts Dr. Caddy's opinions. Before Dr. Bercaw's report was produced, Dr. Caddy testified that Dr. Bercaw's findings concerning Plaintiff were "generally positive." (Caddy Dep. 46:16–47:19, ECF No. 57-27). Dr. Bercaw's actual report, however, describes Plaintiff as having "mildly-to-moderately impaired deductive reasoning in comparison to aviators" that raises concerns Dr. Bercaw characterized as "potentially critical to flight performance, particularly in non-routine situations." (Bercaw Report at 7, ECF No. 87-1.) And based on an email that Plaintiff improperly withheld until recently, Plaintiff tells Dr. Caddy, "If Dr. Bercaw won't play ball with you, fine. . . .

15

If he won't play ball we will cut bait and go fish elsewhere"—suggesting that both Plaintiff and Dr. Caddy knew Dr. Bercaw's finding did not support their position. (ECF No. 79 at 2.) Dr. Caddy's selective reliance only on materials that support his paid-for conclusion is decidedly unscientific and renders his entire methodology unreliable. *See, e.g., Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1066 n.60 (E.D. Cal. 2011) ("A scientist might well pick data from many different sources to serve as circumstantial evidence for a particular hypothesis, but a reliable expert would not ignore contrary data, misstate the findings of others, make sweeping statements without support, and cite papers that do not provide the support asserted.") (quotations omitted). Thus, if Plaintiff does not wish for evidence concerning the Bercaw Report to be admitted, he should not open the door to it by calling Dr. Caddy to testify.

## IV. CORPORATE SECURITY INVESTIGATION

The Court should also deny Plaintiff's motion concerning a "Corporate Security investigation of [Plaintiff] in March and April 2015" (ECF No. 100) because it "lacks the necessary specificity with respect to the evidence to be excluded." *Arch Specialty Ins. Co.*, 2013 WL 12065533, at *3.

Whether and to what extent Plaintiff seeks to include or exclude evidence concerning the Corporate Security investigation of Plaintiff is not clear from Plaintiff's motion. Plaintiff states that testimony from American witness Brian Beach "that the [Corporate Security] investigators wanted 'the whole picture of the situation with Scott Patterson' is admissible as lay opinion," but then asks the Court "to exclude from evidence any testimony by Brian Beach about the scope" of the corporate security investigation. (ECF No. 100 at 4–5.)

Plaintiff elsewhere in his motion suggests that the Court should instead exclude any testimony that the corporate security investigation "was limited to allegations that [Plaintiff] was involved in gun running." (*Id.* at 1.) In his motion, however, Plaintiff concedes that American witness Michelle Montgomery can provide "admissible testimony about the scope of the investigation," and that Montgomery's testimony confirmed that the corporate security investigation was limited to allegations that Plaintiff was involved in gun running to South America. *See* ECF No. 100 at 2–3 ("Montgomery . . . recalled it had something to do with taking guns into South America.").[4]

"The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded." *Arch Specialty Ins. Co.*, 2013 WL 12065533, at *3. The Court should deny Plaintiff's motion on this basis. Alternatively, at a minimum, the Court should defer ruling on this motion in limine until the time, if and when, Plaintiff identifies with the necessary specificity the evidence he seeks to exclude and American has an opportunity to respond. And, if Plaintiff opens the door by attempting to introduce any evidence regarding the corporate security investigation, he cannot complain when American offers evidence to paint a complete and accurate picture of the scope of that investigation.

---

[4] Any testimony that American offers from Captain Beach on this subject would not be hearsay because it would not offered for the truth of the matter asserted, but instead would concern American's knowledge and motivation in light of the corporate security investigation. *See Rakip*, 2010 WL 11469123, at *2.

### V.   CONFIDENTIAL SETTLEMENT NEGOTIATIONS

Finally, Plaintiff seeks to "permit the introduction of the settlement negotiations between his union, the Allied Pilots Association, and American Airlines." (ECF No. 103.) This motion is frivolous. Federal Rule of Evidence 408 expressly forbids evidence of settlement discussions from being used to prove liability or damages in a disputed claim—the use Plaintiff admits he seeks in this motion. Fed. R. Evid. 408.

For the reasons set forth in American's cross-filed Motion in Limine to Exclude Evidence of or References to Confidential Settlement Negotiations (ECF No. 98), Plaintiff should be precluded from offering any evidence or making any reference to confidential settlement negotiations between American and Plaintiff or his union representatives, including December 2016 settlement negotiations between American and the union representing Plaintiff.

### CONCLUSION

For these reasons, American respectfully requests that this Court deny the Motions (ECF Nos. 100–104).

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**

18

Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of August, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
     MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*