UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

**Plaintiff's Response to American Airlines, Inc.'s Motion in Limine to Exclude Evidence of or References to Any Alleged Breach, Misinterpretation, or Misapplication of American's Pilot Collective Bargaining Agreement**

Plaintiff, Rodney Scott Patterson, pursuant to Local Rule 7.1(c), responds as follows to American Airlines, Inc.'s Motion in Limine To Exclude Evidence of or References to Any Alleged Breach, Misinterpretation, or Misapplication of American's Pilot Collective Bargaining Agreement (DE 95):

**Introduction and Summary**

This motion betrays the profoundness of American Airlines, Inc.'s miscomprehension of USERRA,[1] a uniquely broad and powerful statute that

---

[1]The Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, et seq.



**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL 33301 • 954.462.1983

protects the civilian employment of the members of this nation's armed services, and:

**One**, trumps, at 43 U.S.C. § 4302, any contractual provision that may exist between American and the Allied Pilots Association, the union that is Lt. Col. Rodney Scott Patterson's collective bargaining agent;

**Two**, permits a plaintiff to show that his or her military service is a "motivating factor" for disparate treatment by permitting a trial court to "infer discriminatory motivation under the USERRA from a variety of considerations, such as ... inconsistencies between the proffered reason and other actions of the employer," Coffman v. Chugach Support Services, Inc., 411 F.3d 1231, 1238 (11th Cir. 2005) (quoting Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

**Three**, provides for not only an award of back wages and benefits that a USERRA plaintiff suffers because of a violation of its provision, § 4323(d)(1)(B), but liquidated damages under § 4323(d)(1)(C) for a willful violation, which willfulness may be demonstrated through a showing of pretext in the employer's explanation for its actions.

For each of those reasons, evidence that American acted toward Lt. Col. Patterson outside of the normal way in which it deals with its pilots pursuant to the Joint Collective Bargaining Agreement, and the jury's decision of that issue is not precluded by the Railway Labor Act.

## Statement of the Facts

There really are no factual disputes relevant to this motion.

As in responding to American's other motions in limine, Lt. Col. Patterson will not dignify with a response American's mantra that all of his allegations are "demonstrably false, DE 95, at 2; that the entire world agrees that Lt. Col. Patterson is "a habitual liar/story teller" who is "not quite all there" and that an "independent neuropsychologist" found him "NOT FIT FOR DUTY." Id.

The facts are short and simple: American has a Joint Collective Bargaining Agreement ("JCBA") with the Allied Pilots Association, of which Section 20 governs mandated medical examinations and Section 21 governs discipline, including disciplinary investigations, both of which American invoked in this matter.[2]

There is no dispute that the September-November Section 21 investigation was initiated based on charges identical to those brought to the attention of a chief pilot, Corporate Security, Human Resources and Labor Relations in March and April 2015, none of which acted on them at the time, Montgomery Deposition,[3] at 14:7-15:24, 16:19-21, 17:22-18:1,

---

[2] A copy of Section 20 of the JCBA is appended as Attachment 1; a copy of Section 21 is appended as Attachment 2.

[3] The Cover Page and relevant testimonial pages of the deposition of Michelle Montgomery are appended as Attachment 3.

20:2-5, 20:24-21:10, 21:22-24:11, 27:2-28:8, 29:3-30:14, 31:25-32:9, 35:18-36:1 and Exhibits 3 and 25,[4] notwithstanding Section 21's providing that "[i]nvestigations will be conducted expeditiously." Section 21, at 2, ¶ 5. Nor is there any dispute that the September-November investigation two days after Lt. Col. Patterson disobeyed a request by then-Chief Pilot James Bonds to fly as scheduled to South America on September 22 rather than go on duty as a lieutenant colonel in the Army Reserve for the Pope's visit to the White House. Montgomery Deposition, at 31:25-32:5, 53:5-54:3; Bonds Deposition,[5] at 76:25-77:6. Nor is there any dispute that the Section 21 investigation produced no evidence of any behavior for which Lt. Col. Patterson was disciplined. Montgomery Deposition, at 35:18-36:7, 46:1-4.

Nor is it disputed that, subsequent to Lt. Col. Patterson's filing a USERRA complaint with the Department of Labor ("DOL") January 25, 2016, Lucretia Guia, Esquire, an American associate general counsel, responded in writing February 29.[6] Shortly subsequent to Lt. Col. Patterson's USERRA complaint to the DOL and Ms. Guia's response to it, American grounded Lt.

---

[4]Montgomery Deposition Exhibit 3 is appended as Attachment 4; Exhibit 25 is appended as Attachment 5.

[5]The cover page and relevant testimonial pages of the Deposition of James Bonds are appended as Attachment 6.

[6]A copy of Ms. Guia's letter, accompanied by a package of exhibits that included the allegations by Captain Whitehouse that Ms. Guia had acknowledged in her letter had "not [led] to discipline," is appended as Attachment 7.

Col. Patterson March 24, based on a "NOT-FIT-FOR-DUTY" report from John Knippa, Ph.D., that Jeral Ahtone, M.D., American's corporate Medical Director, acknowledged contained no objective findings of psychopathology, neuropsychological deficit or personality disorder—nor even any definitive diagnosis. Ahtone Deposition,[7] at 42:17-44:18, 52:11-22, 54:13-55:1 and 57:15-58:1 and Exhibit 4.

The APA filed a grievance concerning Patterson's Section 20 grounding that remains pending. American offered to the Allied Pilots Association, Lt. Col. Patterson's union, in December 2015 to permit the University of Texas Medical Branch ("UTMB") to review the reports and either clear him for a return to duty based on the reports, or refer him out for evaluation by some other practitioner(s) other than Dr. Knippa—conditioned on Lt. Col. Patterson's abandoning any claim (which would include the claim that American knew was then pending before the Department of Labor for a USERRA violation) having to do with Section 20 issue. See Montgomery Deposition Exhibit 68, which is appended as Attachment 10.

The only other relevant fact to this discussion is that American has made clear in its American Airlines, Inc.'s Motion in Limine To Exclude Evidence of Subsequent Medical Reports (DE 96) that its trial strategy

---

[7] The cover page and the relevant testimonial pages of the Deposition of Jeral Ahtone, M.D. is appended as Attachment 8. The Ahtone Deposition Exhibit 4 is appended as Attachment 9.

includes wrapping itself in the flag of "American's obligation to ensure the safety of its passengers," see DE 96, at 6—which would permit it to present evidence about how it was merely proceeding routinely along the lines of the collective bargaining agreement's Sections 20 and 21 but, were this motion to be granted, prohibit Lt. Col. Patterson to challenge whether it was doing so irregularly.

## Governing Legal Principles

- **The substantive law**

USERRA, pursuant to which Lt. Col. Patterson brought this action, "supersedes any ... contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."  38 U.S.C. § 4302(b).

As this Court noted in Bagnall v. City of Sunrise, Florida, Case No. 10-61299-cv-Martinez/McAliley (S.D. Fla. 2011), "[i]n order to establish a prima facie case of discrimination under 38 U.S.C. § 4311(a), Plaintiffs must show with regard to Mr. Bagnall that he was denied a benefit of employment and that his protected status was a 'motivating factor' in the denial." Id. at 18-19, citing Coffman, 411 F.3d at 1238.

An USERRA plaintiff may make that showing by demonstrating, inter alia, that:

**One**, the adverse employment action occurred proximately in time to the military activity or the filing of a USERRA complaint, or

**Two**, the reason given for it was inconsistent with other actions by the employer, e.g., the manner in which other Section 20 and Section 21 matters are processed.  Coffman, 411 F.3d at 1238, quoting Sheehan, 240 F.3d at 1014.

Once such a showing is made, the USERRA plaintiff prevails "unless the employer can prove that the action would have been taken in the absence of such ... service...."  § 4311(c)(1).

Damages, i.e., back wages and lost benefits, may be liquidated upon a showing that the violation was willful, § 4323(d)(1)(C).  Among the ways of demonstrating willfulness is for a plaintiff to show that a defendant was aware of its USERRA obligations and that its proffered reasons for not fulfilling them was pretextual.  See, e.g., Kane v. Town of Sandwich, 123 F. Supp. 3d 147, 157 (D. Mass. 2015), citing Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 658 F.3d 85, 92 (1st Cir. 2011) and "affirming jury's finding that defendant's actions were willful because the defendant 'knew of its obligations' under USERRA and 'ample evidence' showed that defendant's reason was pretextual."

- **The evidentiary rules**

    Evidence is relevant if:

>   (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
>   (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 401.  "Relevant evidence is admissible.... Irrelevant evidence is not admissible."  Rule 402.

Although even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Rule 403, the prejudice must be undue.  For as the former Fifth Circuit pithily observed in dealing with a Rule 403 issue, "'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial or it isn't material.  The prejudice must be 'unfair.'" Dollar v. Long Mfg., N. C., Inc., 561 F.2d 613, 618 (5th Cir. 1977)[8] (reversible error to disallow use of letter from design engineer, the defendant's expert witness, "warning [dealers] about the death dealing propensities of the Long backhoe when used in the fashion employed here," to impeach his testimony that "that the backhoe was safe to operate while affixed to a rollbar-equipped tractor").

---

[8]In Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

- **The non-issue of preemption by the Railway Labor Act**

Of the three cases upon which defendant relies for its argument that any suggestion by Lt. Col. Patterson that there has been a breach of the Joint Collective Bargaining Agreement should occasion a stay of these proceedings so that a Railway Labor Act board of adjustment could decide whether the JCBA had been breached,[9] none arise under USERRA.

As two the cases on which American relies recognized, "[w]hen an employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract), and a statutory right to be free from discrimination, 'both rights have legally independent origins and are equally available to the aggrieved employee.'" Tice v. American Airlines, Inc., 288 F.3d 313, 317 (7th Cir. 2002), quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974). "The Railway Labor Act's arbitral provisions do not demand that such pure statutory, noncontractual claims be sent to arbitration; they can go directly to court. " Air Line Pilots Ass'n v. Northwest Airlines, 627 F.2d 272, 277 (D.C. Cir. 1980).

In two of the three cases relied on by American, the viability of the underlying lawsuit depended on an interpretation of the contract. In Tice,

---

[9] See Tice v. Am. Airlines, Inc., 288 F.3d 313 (7th Cir. 2002) (Age Discrimination in Employment Act, 29 U.S.C. 621, et seq. (ADEA));Air Line Pilots Ass'n v. Northwest Airlines, 627 F.2d 272 (D.C. Cir. 1980) (Employees Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. (ERISA)), and Miller v. American Airlines, Inc., Case No. No. 03 C 7756. (N.D. Ill. Sep. 28, 2004) (ADEA).

the issue was whether the contract envisioned permitting 60-year-old-plus captains, FAA-disqualified from continuing as an airline pilot, from downgrading to flight officers, a non-piloting, apprentice-like role in the cockpit: American argued that the contract did not require that, but 14 60-plus plaintiffs argued that it did. As the Tice court observed

> This is a disagreement over the meaning of the collective bargaining agreement. The plaintiffs claim certain rights under it and the airline denies they have those rights. It is true as the plaintiffs point out that the agreement nowhere states in so many words that a permanently disqualified captain cannot bump a flight officer. But contracts, including collective bargaining agreements, frequently contain implied terms....

Tice, 288 F.3d at 316.  Miller v. American Airlines, Inc., Case No. 03 C 7756., 7 (N.D. Ill. 2004), likewise, was focused on a Tripartite Agreement amongst the Allied Pilots Association, the Flight Engineers International Association and American "required American to pay the plaintiffs [two phased out flight engineers who remained on the payroll as 'staff assistants'] a comparable salary to the one they received before their FE jobs were eliminated."

The third case, ALPA, held that certain fiduciary portions of ERISA were independent statutory claims that could be brought in federal court, but stayed action on them pending the arbitral resolution of claims involving the negotiated terms of a pension plan, which was the central issue.  The court noted that

> It is wise to await the completion of the arbitration process because **the primary focus of the complaint** — though it does present independent statutory claims — **is on the alleged violation of the pension plan**, and arbitration, if had, may either resolve the entire controversy or at least aid in the solution by the court of the statutory contentions.

627 F.2d at 278.

### Applying the Law to the Facts in the Case at Bar

**Point 1:** Whether American's Practice is to follow the provisions of Sections 20 and 21 of the Joint Collective Bargaining Agreement is relevant to the issue of whether American acted towards Lt. Col. Patterson in a manner inconsistent with the way that it acted toward other pilots not covered by USERRA or seeking to protect rights guaranteed by USERRA.

This is not a case about whether American violated the JCBA. It is a about whether American violated USERRA.

However, among the things that makes it more or less probable that American was motivated by reasons forbidden by USERRA when it, **First**, placed Lt. Col. Patterson on a no-fly status September 24, 2015, two days after he went on duty with the Army Reserve; **Second**, when it grounded him as neuropsychologically and psychologically "not-fit-for-duty" March 24, 2016, less than two months after he had filed an USERRA charge with the Department of Labor, or, **Third**, in when it refused to even permit him to be reevaluated by practitioners at the University of Texas Medical Branch in December 2016 unless he would agree to abandon his USERRA claims are:

***One***, that American did not begin the investigation of the allegations against Lt. Col. Patterson by Capt. Glenn Whitehouse until nearly six months after they had come to the attention of a chief pilot and Corporate Security, and five months after the chief pilot made Human Resources and Labor Relations aware of them, notwithstanding that Section 21 of its JCBA provides that "[i]nvestigations will be conducted expeditiously," and

***Two***, that American grounded Lt. Col. Patterson as psychologically and neuropsychologically unfit-for-duty based on an examination report that its corporate medical director conceded reflected no neuropsychological deficit, psychopathology or personality disorder, not withstanding that:

- the plain language of Section 20 of the JCBA sets as the "[p]hysical standards for company physical examinations ... those standards set forth by the [Federal Aviation Administration] Regulations as being required to maintain a First Class FAA Medical Certificate with Statements of Demonstrated Ability (waiver) for Air Line Pilots....," and

- Lt. Col. Patterson had at the time he was grounded, and has had ever since then, a valid First Class FAA Medical Certificate.

Jurors do not have to decide whether the contract was breached by American's placing Lt. Col. Patterson on no-fly status while American opens an investigation into months-old allegations (concerning which there was no conduct found that warranted discipline), or grounding as unfit-for-duty a pilot who held a First Class FAA Medical Certificate, based on an

examination report that American's corporate medical director characterized as "indicat[ing] that [Dr. Knippa did]n't have a complete answer at [that] time." They merely have to weigh whether American's behavior was so discordant with the plain language of the JCBA, as well as with its routine practice towards other pilots, as to make it more probable than not that American was motivated to put Lt. Col. Paterson on no-fly status and to later ground him as un-fit for duty (and to keep him grounded) by his, respectively, having initially gone on duty for the Army Reserve in September 2015, subsequently filing a USERRA complaint with the DOL and later refusing to drop it.

Sections 20 and 21 are evidence of how American says it is going to act towards its pilots. That is inconsistent with the way it acted toward Lt. Col. Patterson, which is probative of inconsistency, which is probative of USERRA-forbidden motivation.

While the stark contrast between how the JCBA's plain language suggests that American should behave toward its pilots, and the way it actually did behave towards Lt. Col. Patterson is prejudicial to American, it is no more *unfairly* prejudicial than tape recordings of conspiracy phone calls, fingerprints or DNA evidence.

In short, the evidence is highly relevant, which relevance is not outweighed by its being unfairly prejudicial.

**Point 2:    The Railway Labor Act has nothing to do with this case.**

American's attempt to suggest that Lt. Col. Patterson's claim to discrimination and retaliation under USERRA should be referred to a board of adjustment pursuant to the Railway Labor Act makes no sense. Nor does any case support that argument.[10]

Indeed, because USERRA preempts "***any... contract***," there is no contract, a board of adjustment's interpretation of which would be make any material fact in this case more or less probable.

What the Court is dealing with here is a major statutory right of a member of the nation's uniformed services—not a "minor dispute."

## Conclusion

Based on the evidence marshaled, the authorities cited and the arguments presented, Plaintiff respectfully requests the Court to deny American Airlines, Inc.'s Motion in Limine To Exclude Evidence of or References to Any Alleged Breach, Misinterpretation, or Misapplication of American's Pilot Collective Bargaining Agreement (DE 95), and to grant such other and further relief as is just.

---

[10]None of the four cases cited by American, see DE 95, at 4-6, pertain to USERRA.

Respectfully Submitted,

/s/    William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street
El Portal, FL
(305) 710-3713

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

***Attorneys for Plaintiff,***
  ***Rodney Scott Patterson***

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed using the Southern District of Florida's ECF system and thereby has been served on all counsel or parties of record.

/s/    William R. Amlong
WILLIAM R. AMLONG

\\amlong3\cpshare\CPWin\HISTORY\180724_0001\1538.1CC