1

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF FLORIDA
2               (Fort Lauderdale Division)

3    RODNEY SCOTT PATTERSON,      )
        Plaintiff,                )
4                                 )
     vs.                          ) Case No.
5                                 ) 17-cv-60533-JEM
     AMERICAN AIRLINES, a         )
6    Delaware corporation,        )
        Defendant.                )

7

8    ********************************************************

9            ORAL AND VIDEOTAPED DEPOSITION OF

10   THE CORPORATE REPRESENTATIVE OF AMERICAN AIRLINES

11              MICHELLE A. MONTGOMERY

12                  JUNE 6, 2018

13   ********************************************************

14       ORAL AND VIDEOTAPED DEPOSITION OF MICHELLE A.

15   MONTGOMERY, produced as a witness at the instance of the

16   Plaintiff, and duly sworn, was taken in the above-styled

17   and numbered cause on the 6th day of June, 2018, from

18   10:30 a.m. to 4:43 p.m., via telephone, before Julie C.

19   Brandt, RMR, CRR, and CSR in and for the State of Texas,

20   reported by machine shorthand, at Veritext Legal

21   Solutions, 300 Throckmorton Street, Suite 1600, Fort

22   Worth, Texas, pursuant to the Federal Rules of Civil

23   Procedure and the provisions stated on the record or

24   attached hereto.

25

# ATTACHMENT 3

14

```
 1    that were reviewed, but I don't want the specific        10:43:16

 2    selection of documents to be identified, based on        10:43:20

 3    privilege.                                                10:43:24

 4         Q.   (BY MR. AMLONG)   Tell me which documents you   10:43:39

 5    reviewed, Ms. Mcntgomery, concerning the corporate        10:43:40

 6    security investigation.                                   10:43:43

 7         A.   I reviewed one email that I can recall          10:43:45

 8    regarding the ccrporate security investigation.           10:43:50

 9         Q.   And when was that email?                        10:43:52

10         A.   When was it?                                    10:43:59

11         Q.   What was the date?                              10:44:00

12         A.   I don't recall.                                 10:44:01

13         Q.   What was the date?                              10:44:02

14         A.   I don't recall.                                 10:44:03

15         Q.   Who was it from and to whom was it addressed?   10:44:03

16         A.   I actually don't recall that.                   10:44:16

17         Q.   What, if anything, do you recall about the      10:44:20

18    email?                                                    10:44:25

19         A.   I recall that there was a request to corporate  10:44:25

20    security to investigate a matter in regards to            10:44:30

21    Mr. Patterson.                                            10:44:36

22         Q.   And who in corporate security conducted that    10:44:38

23    investigation?                                            10:44:59

24         A.   I believe that was Rick Garcia.                 10:44:59

25         Q.   Who else?                                       10:45:04
```

15

| | | |
|---|---|---|
| 1 | A.   I don't know anyone else. | 10:45:06 |
| 2 | Q.   With whom, if anyone, did Mr. Garcia -- well, | 10:45:10 |
| 3 | what was the matter that he was investigating? | 10:45:15 |
| 4 | A.   I don't remember specifics.  But I recall it | 10:45:16 |
| 5 | had something tc do with possibly taking guns into South | 10:45:19 |
| 6 | America. | 10:45:25 |
| 7 | Q.   What else, if anything, did Mr. Garcia | 10:45:25 |
| 8 | investigate about Mr. Patterson? | 10:45:54 |
| 9 | MR. HOLT:  Do you have a document you | 10:46:09 |
| 10 | want to show the witness on this, Counsel? | 10:46:10 |
| 11 | MR. AMLONG:  Well, right now I'm | 10:46:15 |
| 12 | presuming that she prepared herself as a corporate | 10:46:18 |
| 13 | representative.  I want to know what she knows. | 10:46:20 |
| 14 | MR. HOLT:  Well, she did prepare herself | 10:46:22 |
| 15 | as a corporate representative.  The issue is if you're | 10:46:24 |
| 16 | asking specifics from some document, then I think you | 10:46:27 |
| 17 | need to show the witness the document.  It's | 10:46:29 |
| 18 | unreasonable to -- | 10:46:31 |
| 19 | MR. AMLONG:  I'm not asking specifics | 10:46:33 |
| 20 | from some document right now.  I just want to know | 10:46:34 |
| 21 | whether or not she knows -- | 10:46:36 |
| 22 | (Cell phone rings.) | 10:46:41 |
| 23 | MR. AMLONG:  Ms. Brandt, please read my | 10:47:01 |
| 24 | question back. | 10:47:04 |
| 25 | THE REPORTER:  Okay.  Hold on. | 10:47:05 |

```
                                                                16
1                  (Requested testimony read.)           10:47:07

2              THE WITNESS:  Go ahead and answer?         10:47:32

3      A.    Okay.  I'm sorry.  I thought I was waiting on 10:47:33

4  you.  I don't recall anything else.                    10:47:35

5      Q.    (BY MR. AMLONG)  What did Mr. Garcia do to    10:47:44

6  conduct his investigation?                             10:47:54

7      A.    I don't know.                                 10:47:56

8      Q.    To whom, if anyone, did Mr. Patterson speak to 10:48:01

9  conduct the investigation?                             10:48:06

10             MR. HOLT:  Objection to form.  You can      10:48:07

11  answer if you know.                                    10:48:14

12     A.    I don't know.                                 10:48:14

13     Q.    (BY MR. AMLONG)  What, if any, documents did  10:48:15

14  Mr. Patterson -- I'm sorry.                            10:48:25

15             To what, if any --                          10:48:28

16             What, if any, documents did Mr. Garcia review, 10:48:33

17  as far as his investigation?                           10:48:39

18     A.    I don't know.                                 10:48:41

19     Q.    What, if any, conclusions did Mr. Garcia reach 10:48:53

20  concerning the investigation?                          10:48:57

21     A.    The allegations were unsubstantiated.        10:49:00

22     Q.    And how do you know that the allegations were 10:49:08

23  unsubstantiated?                                       10:49:20

24     A.    I was told that.                              10:49:23

25     Q.    By whom?                                      10:49:24
```

```
                                                         17

 1        A.   I honestly don't remember.              10:49:32

 2        Q.   Did -- did you discuss this investigation with  10:49:36

 3    anyone other than Mr. Holt?                       10:49:48

 4        A.   Yes.  At the time it would have been one of  10:49:51

 5    the chief pilots, but I don't recall which one.  10:50:00

 6        Q.   So when were you told that the investigation  10:50:11

 7    was unsubstantiated?                             10:50:13

 8             MR. HOLT:  Object to the extent it        10:50:17

 9    exceeds the --                                   10:50:20

10        Q.   (BY MR. AMLONG)  During your preparation for  10:50:21

11    today's deposition or at the time of the investigation?  10:50:24

12             MR. HOLT:  Objection, exceeds the scope  10:50:26

13    of the 30(b)(6) deposition notice.               10:50:27

14             MR. AMLONG:  I'm sorry.  I could not hear  10:50:29

15    the objection.                                   10:50:31

16             MR. HOLT:  It exceeds the scope of the   10:50:32

17    30(b)(6).                                        10:50:33

18        Q.   (BY MR. AMLONG)  You can answer.         10:50:38

19        A.   I'm sorry.  Could you repeat the question?  10:50:38

20             MR. AMLONG:  Read it back, please.       10:50:48

21             (Requested testimony read.)             10:50:49

22        A.   It would have been at the time of the    10:51:05

23    investigation.                                   10:51:06

24        Q.   (BY MR. AMLONG)  And was the person who told  10:51:06

25    you it was unsubstantiated one of the chief pilots?  10:51:19
```

18

```
 1        A.   To the best of my recollection, yes.         10:51:24

 2        Q.   Did you at the time of the investigation have  10:51:25

 3   any communication with anyone from corporate security?  10:51:40

 4             MR. HOLT:  Objection.  That exceeds the        10:51:45

 5   scope of the 30(b)(6) notice.  You can answer.          10:51:47

 6        Q.   (BY MR. AMLONG)  And unless he instructs you   10:51:57

 7   not to answer, please answer.                           10:51:59

 8        A.   Okay.  Sorry.  Did I --                        10:52:00

 9        Q.   Do you want her to read the question back?     10:52:06

10        A.   No.  You were asking me if I communicated with 10:52:09

11   corporate security.  Right?                             10:52:11

12        Q.   Yes.                                           10:52:13

13        A.   And the answer is no.                          10:52:14

14        Q.   Did you communicate with corporate security in 10:52:16

15   preparation for today's deposition?                     10:52:19

16        A.   Yes.                                           10:52:21

17        Q.   With whom in corporate security did you        10:52:26

18   communicate in connection with today's deposition?      10:52:30

19        A.   With Larry McLaughlin, the director of global  10:52:32

20   investigations.                                         10:52:39

21        Q.   And what, if anything, did Mr. McLaughlin tell 10:52:40

22   you about the investigation?                            10:52:50

23        A.   He told me that because Mr. Garcia has passed  10:52:51

24   away, we don't have any records of that investigation in 10:52:59

25   detail.  And he had no knowledge of anything more than   10:53:05
```

```
                                                                  20
 1              (Exhibit 74 marked.)                    10:57:00

 2       Q.   (BY MR. AMLONG)  All right.  We are marking    10:56:43

 3   the 30(b)(6) notice as Plaintiff's Exhibit 73 and the   10:56:51

 4   April 9, 2015, email as Plaintiff's 74.  Please take a  10:56:54

 5   moment and look at that, Ms. Montgomery.            10:57:03

 6            If you want to, we can shut down the video    10:57:31

 7   while you read it.                                  10:57:34

 8       A.   Sure.                                      10:57:35

 9            MR. HOLT:  We'll stay on the record for    10:57:35

10   time purposes, though.  Correct, Counsel?           10:57:38

11       A.   I presume you want me to read the entire   10:58:02

12   thing?  It's pretty lengthy.                        10:58:05

13       Q.   (BY MR. AMLONG)  Yes.                      10:58:07

14       A.   Okay.                                      10:58:08

15            MR. AMLONG:  And actually, Michael, the    10:58:14

16   seven hour rule doesn't count in 30(b)(6) depositions.  10:58:18

17            MR. HOLT:  Yes, it does.                   10:58:19

18            MR. AMLONG:  You can have one of your      10:58:19

19   interns research that.                              10:58:21

20            MR. HOLT:  You can research it.  You can   10:58:22

21   look at the rule yourself.  It applies in every     10:58:24

22   deposition.                                         10:58:27

23       A.   Okay.                                      11:03:48

24       Q.   (BY MR. AMLONG)  Ms. Montgomery, who was   11:03:48

25   Rhonda Theuer?                                      11:04:00
```

21

```
 1        A.    Rhonda Theuer is retired.  She used to work in   11:04:02

 2   human resources.                                            11:04:06

 3        Q.    Do you know what she did in HR?                   11:04:09

 4        A.    I think she was a human resources business       11:04:12

 5   partner, if I remember correctly.                           11:04:18

 6        Q.    What was your position at the time of this       11:04:19

 7   email?                                                      11:04:31

 8        A.    I was the labor relations manager for flight.    11:04:31

 9        Q.    Doing the same thing you're doing now?           11:04:33

10        A.    Yes.                                             11:04:38

11        Q.    What, if any, discussion did you have with       11:04:38

12   Captain Beach about this email at the time you got it?      11:04:56

13              MR. HOLT:  Objection.  That exceeds the          11:04:59

14   scope of the 30(b)(6) notice.                               11:05:02

15        A.    I don't recall the specific discussions we had   11:05:03

16   back in April 2015.                                         11:05:09

17        Q.    (BY MR. AMLONG)  Do you recall any discussions   11:05:10

18   about this letter or about this email?                      11:05:14

19              MR. HOLT:  Same objection.                       11:05:17

20        A.    I recall that we had discussions, but I don't    11:05:20

21   recall what they specifically involved.                     11:05:22

22        Q.    (BY MR. AMLONG)  Do you recall if Captain        11:05:26

23   Beach was suggesting any kind of investigation of           11:06:05

24   Mr. Patterson at this time?                                 11:06:14

25              MR. HOLT:  Same objection.                       11:06:16
```

                                                                22

1          A.   I believe he did want us to look into the        11:06:17

2    allegations, as, you know, on paper they're very           11:06:23

3    concerning.                                                 11:06:30

4          Q.   (BY MR. AMLONG)  What was concerning -- what     11:06:30

5    allegations are you classifying as very concerning?         11:06:50

6               MR. HOLT:  Objection, exceeds the scope          11:06:54

7    of the 30(b)(6) notice.                                     11:06:55

8          A.   You want me to go through the whole document     11:06:56

9    and tell you what's concerning?                             11:07:02

10         Q.   (BY MR. AMLONG)  Yes.                            11:07:04

11         A.   Okay.  So it starts out with his concern about   11:07:05

12   going through VVI Customs and feels like he was            11:07:16

13   targeted, you know, in relationship to Mr. Patterson        11:07:21

14   allegedly smuggling firearms.                               11:07:29

15              Then he goes on to talk about the behavior in    11:07:33

16   ASU from Mr. Patterson.  Some of it was behavior in        11:07:38

17   regards to being a nonrev and whether the behavior is       11:07:50

18   appropriate, such as taking pillows from First Class for    11:07:55

19   his family.                                                 11:07:58

20              Certainly sitting in the jump seat and prior     11:07:59

21   to taxi moving switches, since he was not the pilot         11:08:02

22   flying or pilot monitoring, for that matter.  So moving     11:08:06

23   the switches and flaps from a jump seat.                    11:08:11

24              Then going on, some nonrev behavior from his     11:08:24

25   family members, which we will at times investigate,         11:08:28

23

| | | |
|---|---|---|
| 1 | wanting to ride in the crew van, which, to my knowledge, | 11:08:37 |
| 2 | is not a normal request for him and his family when he's | 11:08:42 |
| 3 | not -- or his family is not part of the crew. | 11:08:47 |
| 4 | You know, there's some discussion about being | 11:09:00 |
| 5 | robbed on the street, which wouldn't necessarily be | 11:09:03 |
| 6 | something that we would investigate on its own.  But | 11:09:07 |
| 7 | when you look at the big picture, there's a lot of | 11:09:09 |
| 8 | allegations going on here. | 11:09:12 |
| 9 | Threatening him, saying his mother is | 11:09:15 |
| 10 | corporate counsel at US Airways and threatening to get | 11:09:18 |
| 11 | the crew fired. | 11:09:21 |
| 12 | There were some allegations of whether or not | 11:09:35 |
| 13 | he had arranged to have a ghost rider observe the crew. | 11:09:37 |
| 14 | He made allegations that I guess Whitehouse | 11:09:47 |
| 15 | allegedly told another Captain, Mondrich that he had the | 11:10:00 |
| 16 | purser sit next to him and have sexual relations in the | 11:10:10 |
| 17 | crew rest seat or in the rest seat during his break. | 11:10:14 |
| 18 | Alleging that -- talking about flight | 11:10:23 |
| 19 | attendant Caesar and calling him either a, quote, faggot | 11:10:27 |
| 20 | or the N word, which are unacceptable. | 11:10:33 |
| 21 | There's basically -- if you look through this, | 11:10:38 |
| 22 | there's just a lot of information which was certainly | 11:10:53 |
| 23 | concerning to a captain enough to inform the chief pilot | 11:11:03 |
| 24 | that we have to weed through and determine if we should | 11:11:11 |
| 25 | at least talk to the person who the allegations are | 11:11:17 |

24

| | | |
|---|---|---|
| 1 | against to determine if there's any truth to the | 11:11:21 |
| 2 | allegations. | 11:11:27 |
| 3 | Q.   So did you make any effort to speak with | 11:11:34 |
| 4 | Mr. Patterson at the time to determine whether or not | 11:11:58 |
| 5 | these allegations were true? | 11:12:00 |
| 6 | MR. HOLT:   Objection, exceeds the scope | 11:12:01 |
| 7 | of the 30(b)(6) notice. | 11:12:02 |
| 8 | A.   At this date and time, I don't recall exactly | 11:12:08 |
| 9 | what we were doing.  I know at some point we did assign | 11:12:15 |
| 10 | an HR investigator to investigate allegations against | 11:12:19 |
| 11 | Mr. Patterson. | 11:12:25 |
| 12 | Q.   (BY MR. AMLONG)  Who was Fred Bates? | 11:12:26 |
| 13 | A.   He is in corporate security.  He's one of the | 11:12:37 |
| 14 | managers in corporate security in Miami. | 11:12:40 |
| 15 | Q.   Is Mr. Bates still there? | 11:12:43 |
| 16 | A.   Yes. | 11:12:46 |
| 17 | Q.   Did you -- | 11:12:47 |
| 18 | A.   And actually, I say he's in Miami.  I don't | 11:12:55 |
| 19 | actually think he's in Miami.  I'm sorry.  What? | 11:12:55 |
| 20 | Q.   I'm sorry? | 11:13:02 |
| 21 | A.   I said, I said he was in Miami.  I actually -- | 11:13:02 |
| 22 | I don't believe he is based in Miami. | 11:13:05 |
| 23 | Q.   Did you speak with Mr. Bates in preparation | 11:13:08 |
| 24 | for this deposition? | 11:13:11 |
| 25 | A.   I did briefly speak to Mr. Bates -- or Captain | 11:13:11 |

27

| | | |
|---|---|---|
| 1 | print it out and store it anywhere. | 11:18:34 |
| 2 | Q.   (BY MR. AMLONG)  Did you do anything to follow | 11:18:37 |
| 3 | up on this email? | 11:18:41 |
| 4 | A.   I believe I already said I would have spoken | 11:18:44 |
| 5 | to Brian Beach or one of the chiefs about it. | 11:18:47 |
| 6 | Q.   Do you recall -- when you said that you would | 11:18:53 |
| 7 | have, that's subjective.  What did you do? | 11:19:02 |
| 8 | MR. HOLT:  Objection to the form. | 11:19:06 |
| 9 | A.   I can't recall specifically the conversations, | 11:19:09 |
| 10 | but it would have been normal for me to pick up the | 11:19:15 |
| 11 | phone and call him -- Brian. | 11:19:18 |
| 12 | Q.   (BY MR. AMLONG)  Do you know if there was any | 11:19:20 |
| 13 | section 21 investigation begun of Mr. Patterson at this | 11:19:42 |
| 14 | point concerning these allegations? | 11:19:46 |
| 15 | MR. HOLT:  Objection to the form. | 11:19:49 |
| 16 | Outside the 30(b)(6) deposition topics. | 11:19:50 |
| 17 | A.   I don't believe at that point the section 21 | 11:19:54 |
| 18 | had begun. | 11:19:58 |
| 19 | Q.   (BY MR. AMLONG)  You said Ms. Theuer was a | 11:20:03 |
| 20 | human resources business partner.  Did you work closely | 11:20:12 |
| 21 | with Ms. Theuer? | 11:20:17 |
| 22 | A.   I did when she -- | 11:20:20 |
| 23 | MR. HOLT:  Objection to the form.  You | 11:20:21 |
| 24 | can answer. | 11:20:23 |
| 25 | THE WITNESS:  Sorry. | 11:20:24 |

28

| | | |
|---|---|---|
| 1 | A.   I did when she worked for the company. | 11:20:25 |
| 2 | Q.   (BY MR. AMLONG)  Do you know whether she began | 11:20:26 |
| 3 | any investigation of what you've described as the | 11:20:32 |
| 4 | concerning allegations in this email? | 11:20:37 |
| 5 | MR. HOLT:  Objection to the form.  And | 11:20:39 |
| 6 | object to the extent it exceeds the 30(b)(6) deposition | 11:20:41 |
| 7 | notice topics. | 11:20:45 |
| 8 | A.   I don't know. | 11:20:46 |
| 9 | Q.   (BY MR. AMLONG)  As the go-to person, as | 11:20:47 |
| 10 | you've described yourself, for section 20 and 21 of the | 11:21:18 |
| 11 | Joint Collective Bargaining Agreement, is there any | 11:21:23 |
| 12 | reason not to have begun a section 21 investigation | 11:21:30 |
| 13 | concerning the allegations in this letter? | 11:21:43 |
| 14 | MR. HOLT:  Objection to the form and | 11:21:45 |
| 15 | objection to the extent it exceeds the scope of the | 11:21:46 |
| 16 | 30(b)(6) deposition topics. | 11:21:50 |
| 17 | A.   I can't think of any specific reason. | 11:21:52 |
| 18 | Q.   (BY MR. AMLONG)  Do the allegations in the | 11:21:53 |
| 19 | emails from Captain Whitehouse that Captain Beach was | 11:22:12 |
| 20 | forwarding to you -- | 11:22:19 |
| 21 | A.   Which email?  I'm sorry. | 11:22:21 |
| 22 | Q.   -- give you any reason to question the | 11:22:23 |
| 23 | psychological state or stability of Mr. Patterson at | 11:22:25 |
| 24 | this time? | 11:22:32 |
| 25 | A.   Does the email from Captain Whitehouse to | 11:22:32 |

29

| | | |
|---|---|---|
| 1 | Captain Beach give me reason to -- I'm sorry.  What was | 11:22:36 |
| 2 | that question? | 11:22:42 |
| 3 | Q.   Did the emails that Captain Beach forwarded to | 11:22:46 |
| 4 | you from Captain Whitehouse raise any concern with you | 11:22:48 |
| 5 | about the mental or psychological stability of First | 11:22:55 |
| 6 | Officer Patterson in April 2015? | 11:23:01 |
| 7 | MR. HOLT:  Objection, exceeds the scope | 11:23:05 |
| 8 | of the 30(b)(6) deposition notice topics. | 11:23:06 |
| 9 | A.   I don't believe there's enough information to | 11:23:13 |
| 10 | make that determination. | 11:23:15 |
| 11 | Q.   (BY MR. AMLONG)  So you thought in April 2015 | 11:23:16 |
| 12 | that Captain Whitehouse's allegations were insufficient | 11:23:32 |
| 13 | to justify a section 20 examination.  Right? | 11:23:36 |
| 14 | MR. HOLT:  Objection, misstates | 11:23:39 |
| 15 | testimony. | 11:23:42 |
| 16 | A.   So that would not be our normal process, to | 11:23:42 |
| 17 | immediately go from receiving an email to jumping to a | 11:23:45 |
| 18 | section 20.  We -- there's more information that we like | 11:23:50 |
| 19 | to receive before we take the action to send somebody | 11:24:00 |
| 20 | for a section 20 physical examination. | 11:24:03 |
| 21 | Q.   (BY MR. AMLONG)  What additional information | 11:24:06 |
| 22 | do you want before you would send somebody for a | 11:24:18 |
| 23 | section 20 examination? | 11:24:24 |
| 24 | MR. HOLT:  Objection, exceeds the scope | 11:24:25 |
| 25 | of the 30(b)(6) deposition notice topics. | 11:24:27 |

30

```
 1        A.   I can't give you specifics, as each case is    11:24:30

 2   different.  We generally would like to go ahead and have  11:24:34

 3   Mr. Patterson explain his side of the story, so to        11:24:39

 4   speak.                                                    11:24:44

 5        Q.   (BY MR. AMLONG)  Well, what, if any, efforts    11:24:49

 6   were made in April 2015 to have Mr. Patterson, quote,     11:24:52

 7   explain his side of the story, closed quote?              11:24:59

 8             MR. HOLT:  Objection.  It exceeds the           11:25:02

 9   scope of the 30(b)(6) deposition notice topics.           11:25:03

10        A.   At that point we did not set up a section 21    11:25:09

11   for Mr. Patterson.                                        11:25:14

12        Q.   (BY MR. AMLONG)  Why not?                       11:25:19

13             MR. HOLT:  Same objection.                      11:25:21

14        A.   I don't recall.                                 11:25:22

15        Q.   (BY MR. AMLONG)  Look, please, at Exhibit 61.   11:25:23

16             (Exhibit 61 marked.)                            11:26:50

17             MR. HOLT:  Set those over here out of the       11:26:50

18   way.                                                      11:26:52

19             May I see a copy of this?  Okay.                11:26:54

20        A.   I --                                            11:27:01

21        Q.   (BY MR. AMLONG)  And --                         11:27:03

22        A.   Oh, go ahead.                                   11:27:03

23        Q.   -- look at the second page, the email -- the    11:27:04

24   March 19, 2015, email from Whitehouse to Beach.           11:27:08

25        A.   I see it.                                       11:27:17
```

31

| | | |
|---|---|---|
| 1 | Q.   Beginning, One more thing I forgot. | 11:27:18 |
| 2 | A.   Yes. | 11:27:20 |
| 3 | Q.   In or about March of 2015, did you become | 11:27:21 |
| 4 | aware that Captain Whitehouse was reporting that | 11:27:32 |
| 5 | Mr. Patterson said within earshot of passengers that the | 11:27:42 |
| 6 | aircraft they were on was like a bomb and was going to | 11:27:46 |
| 7 | blow up if they did not get on the ground ASAP? | 11:27:50 |
| 8 | MR. HOLT:  Objection, outside the scope | 11:27:53 |
| 9 | of the 30(b)(6). | 11:27:55 |
| 10 | A.   You're asking me when did I become aware of | 11:28:00 |
| 11 | this? | 11:28:02 |
| 12 | Q.   (BY MR. AMLONG)  No.  I'm asking you whether | 11:28:02 |
| 13 | in March of 2015 you were aware of the allegations | 11:28:04 |
| 14 | contained in the March 19th email? | 11:28:09 |
| 15 | MR. HOLT:  Same objection. | 11:28:13 |
| 16 | A.   I don't remember. | 11:28:13 |
| 17 | Q.   (BY MR. AMLONG)  Have you ever been aware of | 11:28:15 |
| 18 | it prior to today? | 11:28:20 |
| 19 | A.   Yes. | 11:28:22 |
| 20 | Q.   Do you know if you became aware of it after | 11:28:22 |
| 21 | about the time it was made? | 11:28:33 |
| 22 | MR. HOLT:  Objection, outside the scope | 11:28:35 |
| 23 | of the 30(b)(6). | 11:28:36 |
| 24 | A.   I don't recall. | 11:28:40 |
| 25 | Q.   (BY MR. AMLONG)  The second (sic) topic | 11:28:41 |

32

```
 1    listed on the 30(b)(6) deposition notice is, The human    11:29:15

 2    resources investigation that grew from the furnishing by   11:29:24

 3    Captain Glenn Whitehouse to Captain Brian Beach of the     11:29:27

 4    package of information as an attachment to the 8:34:57      11:29:30

 5    p.m. September 24, 2015, email.                             11:29:37

 6         A.   I see that.                                       11:29:43

 7         Q.   Can you tell me what, if anything, you did to     11:29:43

 8    prepare to respond as the 30(b)(6) representative on        11:29:53

 9    that topic?                                                 11:29:57

10              MR. HOLT:   The same instructions as              11:29:58

11    earlier.  Without disclosing the substance of              11:30:00

12    communications with American's lawyers, you can answer      11:30:03

13    the question.                                               11:30:05

14         A.   I met with Mr. Holt.                              11:30:05

15         Q.   (BY MR. AMLONG)  Did you do anything other        11:30:16

16    than meet with Mr. Holt?                                    11:30:17

17         A.   No.                                               11:30:21

18         Q.   Have you reviewed any documents?                  11:30:21

19         A.   In part of my meeting with Mr. Holt, I            11:30:28

20    reviewed documents.                                         11:30:30

21         Q.   Going back for a moment to Exhibit 61 -- look     11:30:32

22    at Exhibit 2 --                                             11:31:45

23         A.   Exhibit 2?                                        11:31:47

24         Q.   Yes.                                              11:31:49

25         A.   Okay.  One moment.                                11:31:49
```

35

| | | |
|---|---|---|
| 1 | Cronin. | 11:35:30 |
| 2 | Q.  (BY MR. AMLONG)  Do you recall if you did | 11:35:34 |
| 3 | anything? | 11:35:35 |
| 4 | A.  I don't recall one way or the other.  Is there | 11:35:36 |
| 5 | a document you want me to look at? | 11:35:42 |
| 6 | Q.  No. | 11:35:49 |
| 7 | Look at Exhibits 3, 4 and 5, please. | 11:36:08 |
| 8 | (Exhibit 3 marked.) | 11:36:08 |
| 9 | (Exhibit 4 marked.) | 11:36:08 |
| 10 | (Exhibit 5 marked.) | 11:36:39 |
| 11 | A.  Okay.  I have the Exhibits 3, 4 and 5. | 11:36:39 |
| 12 | Q.  (BY MR. AMLONG)  Did you review any of those | 11:36:44 |
| 13 | exhibits in preparation for today's deposition? | 11:36:47 |
| 14 | MR. HOLT:  Objection.  The witness is not | 11:36:50 |
| 15 | going to answer questions about specific documents that | 11:36:52 |
| 16 | were reviewed at the instruction of counsel in | 11:36:54 |
| 17 | preparation for the deposition. | 11:36:56 |
| 18 | Q.  (BY MR. AMLONG)  Have you reviewed -- have you | 11:36:58 |
| 19 | reviewed the September 24, 2015, letter? | 11:37:00 |
| 20 | A.  Yes, I believe so. | 11:37:05 |
| 21 | Q.  Do you consider the September 24, 2015, letter | 11:37:07 |
| 22 | to be substantially similar to the allegations contained | 11:37:21 |
| 23 | in Captain Whitehouse's March emails to Captain Beach | 11:37:32 |
| 24 | and forwarded tc corporate security? | 11:37:44 |
| 25 | MR. HOLT:  Objection to the form. | 11:37:47 |

36

| | | |
|---|---|---|
| 1 | A.   Yes. | 11:37:48 |
| 2 | Q.   (BY MR. AMLONG)  The Exhibit 3 is an email | 11:37:51 |
| 3 | from Brian Beach to -- I am sorry.  Exhibit 3 is an | 11:38:15 |
| 4 | email from Glenn Whitehouse to Brian Beach at 8:34:57 | 11:38:24 |
| 5 | p.m. on September 24th.  Do you know how Captain | 11:38:33 |
| 6 | Whitehouse came to be sending a repeat of his March | 11:38:41 |
| 7 | allegations to Captain Beach in September 2015? | 11:38:51 |
| 8 | MR. HOLT:  Objection to the form, calls | 11:39:00 |
| 9 | for speculation. | 11:39:01 |
| 10 | THE WITNESS:  Do you want me to answer | 11:39:06 |
| 11 | it? | 11:39:08 |
| 12 | MR. HOLT:  Yeah. | 11:39:09 |
| 13 | THE WITNESS:  Okay. | 11:39:10 |
| 14 | A.   So now that I'm thinking about this for a | 11:39:10 |
| 15 | second, when we originally received Captain Whitehouse's | 11:39:12 |
| 16 | concerns, he -- | 11:39:19 |
| 17 | Q.   (BY MR. AMLONG)  Are you talking about March? | 11:39:25 |
| 18 | A.   Yes.  To my recollection, he wanted to handle | 11:39:26 |
| 19 | that through APA pro standards. | 11:39:28 |
| 20 | Q.   Who wanted to handle that through APA pro | 11:39:31 |
| 21 | standards? | 11:39:36 |
| 22 | A.   Captain Whitehouse, I believe.  And so it got | 11:39:36 |
| 23 | to the point to where he tried to work through APA pro | 11:39:48 |
| 24 | standards and was not getting any satisfaction.  And so | 11:39:51 |
| 25 | he wanted to make a formal complaint to the company | 11:39:58 |

46

| | | |
|---|---|---|
| 1 | Q.   Did the section 21 investigation into | 12:04:58 |
| 2 | Mr. Patterson produce any material that would describe | 12:06:03 |
| 3 | disciplining him or terminating him? | 12:06:10 |
| 4 | A.   No.  He was not disciplined or terminated. | 12:06:13 |
| 5 | Q.   Did it produce any evidence that he had done | 12:06:21 |
| 6 | anything wrong? | 12:06:26 |
| 7 | MR. HOLT:  Objection, form. | 12:06:27 |
| 8 | A.   I'm not sure the section 21 is actually | 12:06:28 |
| 9 | concluded at this time. | 12:06:42 |
| 10 | Q.   (BY MR. AMLONG)  Do you mean presently? | 12:06:43 |
| 11 | A.   Yes. | 12:06:50 |
| 12 | Q.   Were you not copied on -- well, what's a PEH? | 12:06:51 |
| 13 | A.   Personnel employment history. | 12:07:16 |
| 14 | Q.   Were you copied on the PEH that Captain Beach | 12:07:18 |
| 15 | sent to Mr. Patterson subsequent to the section 21 | 12:07:22 |
| 16 | meetings? | 12:07:31 |
| 17 | MR. HOLT:  Objection. | 12:07:32 |
| 18 | A.   Do you have -- do you have the PEH for me to | 12:07:36 |
| 19 | look at? | 12:07:39 |
| 20 | Q.   (BY MR. AMLONG)  Let me get it for you. | 12:07:55 |
| 21 | Does the contract specify a time limit on the | 12:09:27 |
| 22 | section 21 investigation? | 12:09:32 |
| 23 | A.   No. | 12:09:33 |
| 24 | MR. HOLT:  Objection, outside the | 12:09:33 |
| 25 | 30(b)(6). | 12:09:36 |

53

| | | |
|---|---|---|
| 1 | Q.    (BY MR. AMLONG)   Is that the report that | 12:39:42 |
| 2 | you're referring to that Mr. -- Ms. Burke-Leon did of | 12:39:43 |
| 3 | her investigation? | 12:39:49 |
| 4 | A.    Yes. | 12:39:49 |
| 5 | Q.    When was the possibility of a section 20 exam | 12:40:06 |
| 6 | first discussed concerning Mr. Patterson? | 12:40:40 |
| 7 | A.    I -- | 12:40:44 |
| 8 | MR. HOLT:   Objection, outside the | 12:40:47 |
| 9 | 30(b)(6).  You can answer if you know. | 12:40:49 |
| 10 | A.    I don't recall the specific date. | 12:40:50 |
| 11 | Q.    (BY MR. AMLONG)   Well, was it in September | 12:40:53 |
| 12 | when he was away and when he was first being put on paid | 12:40:59 |
| 13 | withheld status? | 12:41:08 |
| 14 | MR. HOLT:   Objection, form. | 12:41:09 |
| 15 | A.    I don't recall when the conversation first | 12:41:10 |
| 16 | began.  I can tell you that the chiefs wanted to | 12:41:13 |
| 17 | consider it as part of the investigation. | 12:41:16 |
| 18 | MR. AMLONG:   I'm sorry.  Read her answer | 12:41:29 |
| 19 | back to me, please. | 12:41:31 |
| 20 | (Requested testimony read.) | 12:41:32 |
| 21 | Q.    (BY MR. AMLONG)   Which chief? | 12:41:44 |
| 22 | MR. HOLT:   Object to the form. | 12:41:49 |
| 23 | A.    I don't remember specifically, but it would | 12:41:50 |
| 24 | have been Jim Bonds and/or Brian Beach. | 12:41:52 |
| 25 | Q.    (BY MR. AMLONG)   The initiation of the | 12:42:03 |