Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                 FORT LAUDERDALE DIVISION
                                     §
 3    RODNEY SCOTT PATTERSON,         §
                                     §
 4             Plaintiff,            §    CASE NO.:
                                     §
 5    Vs.                            §    1:17-cv-60533-JEM
                                     §
 6    AMERICAN AIRLINES, INC.,       §
      a Delaware Corporation,         §
 7                                   §
               Defendant.            §
 8
 9
      *****************************************************
10
                        ORAL DEPOSITION OF
11
                       JERAL L. AHTONE, MD
12
                        March 14th, 2018
13
      *****************************************************
14
15           ORAL DEPOSITION OF JERAL L. AHTONE, MD,
16    produced as a witness at the instance of the
17    Plaintiff, and duly sworn, was taken in the
18    above-styled and numbered cause on the 14th of
19    March, 2018, from 9:53 a.m. to 3:05 p.m., before
20    Daniel J. Skur, Notary Public and Certified
21    Shorthand Reporter in and for the State of Texas,
22    reported by stenographic means, at the offices of
23    Veritext Legal Services, 300 Throckmorton Street,
24    Suite 1600, Fort Worth, Texas, pursuant to the
25    Federal Rules of Civil Procedure.
```

Veritext Legal Solutions
800-726-7007    **ATTACHMENT 8**    305-376-8800

```
 1        Q.   Do you know if American Airlines through
 2   someone other than yourself has ever forwarded a
 3   fitness-for-duty report to the Federal Aviation
 4   Administration?
 5        A.   I do not know.
 6        Q.   On page 2, Dr. Knippa says that, First
 7   Officer Patterson exhibited, quote, substandard
 8   performance testing related to skills associated
 9   with flight operations, close quote.  Correct?
10        A.   Are you asking me if that's what the
11   paper says?
12        Q.   Yes.
13        A.   That is what it says.
14        Q.   Do you know what that means?
15        A.   I would refer to his final report.
16        Q.   Okay.  And that's Number 4.
17             MR. AMLONG:  Mr. Reporter, please give
18   Dr. Knippa -- I'm sorry.  Please give Dr. Ahtone
19   Dr. Knippa's report, which is Plaintiff's Exhibit
20   Number 4.
21             (Exhibit 4 introduced.)
22             THE REPORTER:  The witness has the
23   exhibit.
24   BY MR. AMLONG:
25        Q.   Tell me when you've finished reading
```

```
 1   that.
 2        A.    Okay.  I haven't read it in a while.  It
 3   will be a minute or two.
 4        Q.    Okay.
 5              (Witness reviews document.)
 6   BY MR. AMLONG:
 7        Q.    Are you still reading, Doctor?
 8        A.    Yes.
 9        Q.    Okay.
10              (Witness reviews document.)
11        A.    I've completed reading.
12   BY MR. AMLONG:
13        Q.    Did you review this when Dr. Knippa
14   first sent it to you?
15        A.    Yes.
16        Q.    What, if anything, did you do following
17   your initial review of it?
18        A.    The report was sent to the -- to the
19   business partner.
20        Q.    Was it accompanied by any
21   recommendations by you?
22        A.    It was accompanied by a recommendation
23   quoting Dr. Knippa saying that he found him not fit
24   for duty as a first officer at this time.
25        Q.    But was your recommendation that First
```

1  Officer Patterson not be flying based on
2  Dr. Knippa's report?
3      A.   I don't believe I -- I made a
4  recommendation of that regard.  I merely said that
5  Dr. Knippa said he was not fit for duty, and that
6  there were recommendations from Dr. Knippa
7  regarding next steps, which involved, as stated in
8  his full discussion, that he would consider
9  personal counseling and discuss how his
10 interpersonal style may be perceived by others in a
11 manner different than what he perceives or intends.
12     Q.   My question to you is did you adopt
13 those recommendations as your own, or did you
14 simply forward what Dr. Knippa had said?
15     A.   I forwarded what he said.
16     Q.   Did you make any recommendations?
17     A.   The recommendation I made was that
18 should follow Dr. Knippa's recommendation.
19     Q.   In the first paragraph it states that,
20 "No medical records or personnel reporting
21 documents were made available, other than brief
22 correspondence dated 01/14/16, saying the
23 examination request in the context of Section 20
24 action."
25          Look at the second sentence, please.  It

```
 1    of the fact that many of the regional airlines have
 2    much younger pilots than some of the commercial
 3    pilots, and they score differently on some of the
 4    manual tests, manual dexterity tests, either
 5    because they're younger or they're more familiar
 6    with playing computer games than some of the older
 7    pilots.  So I know that as a class, younger pilots
 8    score differently than older pilots on some of the
 9    tests, but they're not different standards for the
10    two.
11         Q.    Well, did First Officer Patterson,
12    quote, fail, close quote, the tests that Dr. Knippa
13    gave him?
14         A.    Would you ask that question again?  I
15    didn't understand it.
16              MR. AMLONG:  Read it back, please.
17              (Record read.)
18         A.    No, he didn't fail.
19    BY MR. AMLONG:
20         Q.    Did the test results indicate any
21    neuropsychological deficits?
22         A.    No.
23         Q.    Is there anything in this report that
24    points to any psychopathology on the part of First
25    Officer Patterson?
```

54

1    Dr. Knippa on page 14, first paragraph.
2       Q.    Which reads, quote, To emphasize, the
3    primary concerns are: Whether or not Mr. Patterson
4    has some medical cause for cognitive concerns,
5    (e.g., cancer care, residual effects evidenced in
6    attentional and executive changes) versus whether
7    or not these are chronic or from some alternative
8    cause that may require further consideration.
9    Pursuing these determinations are beyond the
10    referral scope of this examination.
11       Did I read that correctly?
12       A.    Yes, you did.
13       Q.    And can you tell me how that indicates
14    the presence of any psychopathology?
15       A.    That indicates that he doesn't have a
16    complete answer at this time. There are
17    suggestions that that may be the -- maybe what's
18    going on, but that in a short evaluation like this,
19    it -- he did not come to -- down to that
20    conclusively.
21       In his next paragraph he says that, you
22    know, personal counseling may help further clarify
23    that issue. That's his recommendation, and
24    that's -- that was the end of it. I mean, that's
25    where it ended -- that's where it, yeah, ended his

[3/14/2018 9:30 AM] Ahtone, Dr. Jeral - 180314

1  report.
2      Q.   Is there anything -- did he send you all
3  of the underlying documents and test results?
4      A.   No.
5      Q.   Did he send you anything beyond Exhibits
6  2, 3, and 4?
7      A.   Not that I recall.
8      Q.   Is there anything in this report that
9  indicated that First Officer Patterson exhibited
10 any personality disorder?
11     A.   Only the paragraph which you quoted.  He
12 doesn't actually say "personality disorder."  What
13 he says is he would like a little more time for
14 someone -- or someone needs a little more time to
15 do additional evaluation.  It's...
16     Q.   Well, if there is -- I believe that you
17 told me that there is nothing here that points to
18 any neuropsychological deficit, correct?
19     A.   I did not say that.
20          MR. CLOAR-ZAVALETA:  Object to the form.
21 BY MR. ALONG:
22     Q.   Is there anything --
23     A.   You said that.
24     Q.   Is there anything in this report that
25 points to any neuropsychological deficit?

```
 1          Q.    But he's pointing to no
 2    neuropsychological deficit that he found, correct?
 3                MR. CLOAR-ZAVALETA:   Object to the form.
 4          A.    I'm going to refer you back to page
 5    14 --
 6    BY MR. AMLONG:
 7          Q.    Yes cr no, sir, and then you can
 8    explain.
 9                Did he point to any neurological -- did
10    Dr. Knippa point to any neuropsychological deficit,
11    yes or no?
12                MR. CLOAR-ZAVALETA:   Object to the form.
13          A.    I don't know.
14    BY MR. AMLONG:
15          Q.    Did Dr. Knippa point to any
16    psychopathology?
17                MR. CLOAR-ZAVALETA:   Object to the form.
18    BY MR. AMLONG:
19          Q.    Yes cr no?
20          A.    He does -- he did not confirm one way or
21    the other.  That is why he said he thought
22    additional evaluation would be in order.
23          Q.    Did Dr. Knippa in his report point to
24    any recognized personality disorder, yes or no?
25                MR. CLOAR-ZAVALETA:   Object to the form.
```

```
                                                                    58
 1         A.   I did not see anything.  No.
 2   BY MR. AMLONG:
 3         Q.   In that case, what basis did you see in
 4   his report for declaring First Officer Patterson
 5   not fit for duty?
 6              MR. CLOAR-ZAVALETA:  Object to the form.
 7         A.   Exhibit 3.  "From a neuropsychological
 8   perspective, he is not fit for duty as a First
 9   Officer at this time."
10   BY MR. AMLONG:
11         Q.   That's simply a statement.  On -- what's
12   the basis of that statement?
13              MR. CLOAR-ZAVALETA:  Object to the form.
14         A.   I would -- I'm -- it was his evaluation.
15   BY MR. AMLONG:
16         Q.   What, if anything, did you do to explore
17   whether or not First Officer Patterson had either a
18   neuropsychological deficit, any discernible --
19   strike that.
20              What, if anything, did you do to further
21   pursue an answer of -- to the question of whether
22   First Officer Patterson had a neuropsychological
23   deficit?
24              MR. CLOAR-ZAVALETA:  Object to the form.
25         A.   I personally did not do anything other
```