1

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                 (Fort Lauderdale Division)

 3     RODNEY SCOTT FATTERSON,     )
           Plaintiff,             )
 4                                 )
       vs.                         ) Case No.
 5                                 ) 17-cv-60533-JEM
       AMERICAN AIRLINES, a        )
 6     Delaware corpcration,       )
           Defendant.             )

 7

 8     ********************************************************

 9             ORAL AND VIDEOTAPED DEPOSITION OF

10       THE CORPORATE REPRESENTATIVE OF AMERICAN AIRLINES

11                 MICHELLE A. MONTGOMERY

12                     JUNE 6, 2018

13     ********************************************************

14        ORAL AND VIDEOTAPED DEPOSITION OF MICHELLE A.

15     MONTGOMERY, produced as a witness at the instance of the

16     Plaintiff, and duly sworn, was taken in the above-styled

17     and numbered cause on the 6th day of June, 2018, from

18     10:30 a.m. to 4:43 p.m., via telephone, before Julie C.

19     Brandt, RMR, CRR, and CSR in and for the State of Texas,

20     reported by machine shorthand, at Veritext Legal

21     Solutions, 300 Throckmorton Street, Suite 1600, Fort

22     Worth, Texas, pursuant to the Federal Rules of Civil

23     Procedure and the provisions stated on the record or

24     attached hereto.
```

25

# ATTACHMENT 1

31

```
 1        Q.   Beginning, One more thing I forgot.        11:27:18

 2        A.   Yes.                                       11:27:20

 3        Q.   In or about March of 2015, did you become  11:27:21

 4   aware that Captain Whitehouse was reporting that     11:27:32

 5   Mr. Patterson said within earshot of passengers that the  11:27:42

 6   aircraft they were on was like a bomb and was going to  11:27:46

 7   blow up if they did not get on the ground ASAP?      11:27:50

 8             MR. HOLT:  Objection, outside the scope    11:27:53

 9   of the 30(b)(6).                                     11:27:55

10        A.   You're asking me when did I become aware of  11:28:00

11   this?                                                11:28:02

12        Q.   (BY MR. AMLONG)  No.  I'm asking you whether  11:28:02

13   in March of 2015 you were aware of the allegations   11:28:04

14   contained in the March 19th email?                   11:28:09

15             MR. HOLT:  Same objection.                 11:28:13

16        A.   I don't remember.                          11:28:13

17        Q.   (BY MR. AMLONG)  Have you ever been aware of  11:28:15

18   it prior to today?                                   11:28:20

19        A.   Yes.                                       11:28:22

20        Q.   Do you know if you became aware of it after  11:28:22

21   about the time it was made?                          11:28:33

22             MR. HOLT:  Objection, outside the scope    11:28:35

23   of the 30(b)(6).                                     11:28:36

24        A.   I don't recall.                            11:28:40

25        Q.   (BY MR. AMLONG)   The second (sic) topic   11:28:41
```

                                                                        32

1       listed on the 30(b)(6) deposition notice is, The human        11:29:15

2       resources investigation that grew from the furnishing by      11:29:24

3       Captain Glenn Whitehouse to Captain Brian Beach of the        11:29:27

4       package of information as an attachment to the 8:34:57        11:29:30

5       p.m. September 24, 2015, email.                               11:29:37

6            A.   I see that.                                          11:29:43

7            Q.   Can you tell me what, if anything, you did to       11:29:43

8       prepare to respond as the 30(b)(6) representative on          11:29:53

9       that topic?                                                   11:29:57

10                    MR. HOLT:   The same instructions as            11:29:58

11      earlier.  Without disclosing the substance of                 11:30:00

12      communications with American's lawyers, you can answer        11:30:03

13      the question.                                                 11:30:05

14           A.   I met with Mr. Holt.                                11:30:05

15           Q.   (BY MR. AMLONG)  Did you do anything other          11:30:16

16      than meet with Mr. Holt?                                      11:30:17

17           A.   No.                                                 11:30:21

18           Q.   Have you reviewed any documents?                    11:30:21

19           A.   In part of my meeting with Mr. Holt, I              11:30:28

20      reviewed documents.                                           11:30:30

21           Q.   Going back for a moment to Exhibit 61 -- look       11:30:32

22      at Exhibit 2 --                                               11:31:45

23           A.   Exhibit 2?                                          11:31:47

24           Q.   Yes.                                                11:31:49

25           A.   Okay.  One moment.                                  11:31:49

53

1        Q.   (BY MR. AMLONG)   Is that the report that        12:39:42

2    you're referring to that Mr. -- Ms. Burke-Leon did of     12:39:43

3    her investigation?                                         12:39:49

4        A.   Yes.                                              12:39:49

5        Q.   When was the possibility of a section 20 exam    12:40:06

6    first discussed concerning Mr. Patterson?                  12:40:40

7        A.   I --                                              12:40:44

8             MR. HOLT:   Objection, outside the               12:40:47

9    30(b)(6).  You can answer if you know.                     12:40:49

10       A.   I don't recall the specific date.                12:40:50

11       Q.   (BY MR. AMLONG)   Well, was it in September      12:40:53

12   when he was away and when he was first being put on paid  12:40:59

13   withheld status?                                           12:41:08

14            MR. HOLT:   Objection, form.                     12:41:09

15       A.   I don't recall when the conversation first      12:41:10

16   began.  I can tell you that the chiefs wanted to          12:41:13

17   consider it as part of the investigation.                 12:41:16

18            MR. AMLONG:   I'm sorry.  Read her answer        12:41:29

19   back to me, please.                                        12:41:31

20            (Requested testimony read.)                      12:41:32

21       Q.   (BY MR. AMLONG)   Which chief?                   12:41:44

22            MR. HOLT:   Object to the form.                  12:41:49

23       A.   I don't remember specifically, but it would     12:41:50

24   have been Jim Bonds and/or Brian Beach.                    12:41:52

25       Q.   (BY MR. AMLONG)   The initiation of the         12:42:03

54

```
 1    section 20 discussion began with either Bonds or Beach?    12:42:05

 2              MR. HOLT:  Objection to form.                    12:42:11

 3        A.   To my recollection, yes.                          12:42:12

 4        Q.   (BY MR. AMLONG)  Is that what you're saying?      12:42:13

 5        A.   To my recollection, yes.                          12:42:14

 6        Q.   And after -- when a chief pilot proposes a        12:42:15

 7    section 20 examination, who, if anyone, needs to approve   12:43:10

 8    that?                                                      12:43:17

 9        A.   I don't -- no one has to actually approve it.     12:43:19

10    In general, there would be a discussion between flight,    12:43:27

11    labor and legal representatives to make that               12:43:32

12    determination.                                             12:43:36

13        Q.   Tell me what discussion you recall about the      12:43:40

14    proposal to send Mr. Patterson for a section 20            12:43:43

15    examination.                                               12:43:50

16              MR. HOLT:  Outside the 30(b)(6).  You can        12:43:51

17    answer.                                                    12:43:53

18        A.   I recall that the chiefs wanted to send him       12:43:53

19    for a section 20 examination.  I recall there was --       12:43:56

20        Q.   (BY MR. AMLONG)  Are you saying the chiefs        12:44:02

21    with an "S" on the end?                                    12:44:04

22        A.   Yes.                                              12:44:05

23        Q.   Okay.  Referring to Bonds and Beach?              12:44:05

24        A.   Yes.                                              12:44:10

25        Q.   Okay.                                             12:44:12
```

14

```
 1    that were reviewed, but I don't want the specific        10:43:16

 2    selection of documents to be identified, based on        10:43:20

 3    privilege.                                               10:43:24

 4        Q.   (BY MR. AMLONG)  Tell me which documents you    10:43:39

 5    reviewed, Ms. Mcntgomery, concerning the corporate       10:43:40

 6    security investigation.                                  10:43:43

 7        A.   I reviewed one email that I can recall          10:43:45

 8    regarding the ccrporate security investigation.         10:43:50

 9        Q.   And when was that email?                        10:43:52

10        A.   When was it?                                    10:43:59

11        Q.   What was the date?                              10:44:00

12        A.   I don't recall.                                 10:44:01

13        Q.   What was the date?                              10:44:02

14        A.   I don't recall.                                 10:44:03

15        Q.   Who was it from and to whom was it addressed?   10:44:03

16        A.   I actually don't recall that.                   10:44:16

17        Q.   What, if anything, do you recall about the      10:44:20

18    email?                                                   10:44:25

19        A.   I recall that there was a request to corporate  10:44:25

20    security to investigate a matter in regards to           10:44:30

21    Mr. Patterson.                                           10:44:36

22        Q.   And who in corporate security conducted that    10:44:38

23    investigation?                                           10:44:59

24        A.   I believe that was Rick Garcia.                 10:44:59

25        Q.   Who else?                                       10:45:04
```

15

```
 1        A.    I don't know anyone else.                    10:45:06

 2        Q.    With whom, if anyone, did Mr. Garcia -- well,  10:45:10

 3   what was the matter that he was investigating?          10:45:15

 4        A.    I don't remember specifics.  But I recall it  10:45:16

 5   had something tc do with possibly taking guns into South 10:45:19

 6   America.                                                 10:45:25

 7        Q.    What else, if anything, did Mr. Garcia        10:45:25

 8   investigate about Mr. Patterson?                         10:45:54

 9              MR. HOLT:  Do you have a document you          10:46:09

10   want to show the witness on this, Counsel?               10:46:10

11              MR. AMLONG:  Well, right now I'm               10:46:15

12   presuming that she prepared herself as a corporate       10:46:18

13   representative.  I want to know what she knows.          10:46:20

14              MR. HOLT:  Well, she did prepare herself      10:46:22

15   as a corporate representative.  The issue is if you're   10:46:24

16   asking specifics from some document, then I think you    10:46:27

17   need to show the witness the document.  It's             10:46:29

18   unreasonable to --                                       10:46:31

19              MR. AMLONG:  I'm not asking specifics         10:46:33

20   from some document right now.  I just want to know       10:46:34

21   whether or not she knows --                              10:46:36

22              (Cell phone rings.)                           10:46:41

23              MR. AMLONG:  Ms. Brandt, please read my       10:47:01

24   question back.                                           10:47:04

25              THE REPORTER:  Okay.  Hold on.                10:47:05
```

```
                                                              16
 1              (Requested testimony read.)          10:47:07

 2              THE WITNESS:  Go ahead and answer?   10:47:32

 3       A.   Okay.  I'm sorry.  I thought I was waiting on   10:47:33

 4    you.  I don't recall anything else.            10:47:35

 5       Q.   (BY MR. AMLONG)  What did Mr. Garcia do to   10:47:44

 6    conduct his investigation?                     10:47:54

 7       A.   I don't know.                          10:47:56

 8       Q.   To whom, if anyone, did Mr. Patterson speak to   10:48:01

 9    conduct the investigation?                     10:48:06

10              MR. HOLT:  Objection to form.  You can   10:48:07

11    answer if you know.                            10:48:14

12       A.   I don't know.                          10:48:14

13       Q.   (BY MR. AMLONG)  What, if any, documents did   10:48:15

14    Mr. Patterson -- I'm sorry.                    10:48:25

15              To what, if any --                   10:48:28

16              What, if any, documents did Mr. Garcia review,   10:48:33

17    as far as his investigation?                   10:48:39

18       A.   I don't know.                          10:48:41

19       Q.   What, if any, conclusions did Mr. Garcia reach   10:48:53

20    concerning the investigation?                  10:48:57

21       A.   The allegations were unsubstantiated.  10:49:00

22       Q.   And how do you know that the allegations were   10:49:08

23    unsubstantiated?                               10:49:20

24       A.   I was told that.                       10:49:23

25       Q.   By whom?                              10:49:24
```

```
                                                              17

 1        A.   I honestly don't remember.              10:49:32

 2        Q.   Did -- did you discuss this investigation with   10:49:36

 3   anyone other than Mr. Holt?                       10:49:48

 4        A.   Yes.  At the time it would have been one of   10:49:51

 5   the chief pilots, but I don't recall which one.   10:50:00

 6        Q.   So when were you told that the investigation   10:50:11

 7   was unsubstantiated?                              10:50:13

 8             MR. HOLT:  Object to the extent it      10:50:17

 9   exceeds the --                                    10:50:20

10        Q.   (BY MR. AMLONG)  During your preparation for   10:50:21

11   today's deposition or at the time of the investigation?   10:50:24

12             MR. HOLT:  Objection, exceeds the scope   10:50:26

13   of the 30(b)(6) deposition notice.                10:50:27

14             MR. AMLONG:  I'm sorry.  I could not hear   10:50:29

15   the objection.                                    10:50:31

16             MR. HOLT:  It exceeds the scope of the   10:50:32

17   30(b)(6).                                         10:50:33

18        Q.   (BY MR. AMLONG)  You can answer.        10:50:38

19        A.   I'm sorry.  Could you repeat the question?   10:50:38

20             MR. AMLONG:  Read it back, please.      10:50:48

21             (Requested testimony read.)             10:50:49

22        A.   It would have been at the time of the   10:51:05

23   investigation.                                    10:51:06

24        Q.   (BY MR. AMLONG)  And was the person who told   10:51:06

25   you it was unsubstantiated one of the chief pilots?   10:51:19
```

18

```
 1        A.   To the best of my recollection, yes.        10:51:24

 2        Q.   Did you at the time of the investigation have   10:51:25

 3   any communication with anyone from corporate security?   10:51:40

 4            MR. HOLT:  Objection.  That exceeds the     10:51:45

 5   scope of the 30(b)(6) notice.  You can answer.      10:51:47

 6        Q.   (BY MR. AMLONG)  And unless he instructs you   10:51:57

 7   not to answer, please answer.                      10:51:59

 8        A.   Okay.  Sorry.  Did I --                   10:52:00

 9        Q.   Do you want her to read the question back?  10:52:06

10        A.   No.  You were asking me if I communicated with   10:52:09

11   corporate security.  Right?                         10:52:11

12        Q.   Yes.                                      10:52:13

13        A.   And the answer is no.                     10:52:14

14        Q.   Did you communicate with corporate security in   10:52:16

15   preparation for today's deposition?                 10:52:19

16        A.   Yes.                                      10:52:21

17        Q.   With whom in corporate security did you   10:52:26

18   communicate in connection with today's deposition?  10:52:30

19        A.   With Larry McLaughlin, the director of global   10:52:32

20   investigations.                                     10:52:39

21        Q.   And what, if anything, did Mr. McLaughlin tell   10:52:40

22   you about the investigation?                        10:52:50

23        A.   He told me that because Mr. Garcia has passed   10:52:51

24   away, we don't have any records of that investigation in   10:52:59

25   detail.  And he had no knowledge of anything more than   10:53:05
```

20

| | | |
|---|---|---|
| 1 | (Exhibit 74 marked.) | 10:57:00 |
| 2 | Q.   (BY MR. AMLONG)  All right.  We are marking | 10:56:43 |
| 3 | the 30(b)(6) notice as Plaintiff's Exhibit 73 and the | 10:56:51 |
| 4 | April 9, 2015, email as Plaintiff's 74.  Please take a | 10:56:54 |
| 5 | moment and look at that, Ms. Montgomery. | 10:57:03 |
| 6 | If you want to, we can shut down the video | 10:57:31 |
| 7 | while you read it. | 10:57:34 |
| 8 | A.   Sure. | 10:57:35 |
| 9 | MR. HOLT:  We'll stay on the record for | 10:57:35 |
| 10 | time purposes, though.  Correct, Counsel? | 10:57:38 |
| 11 | A.   I presume you want me to read the entire | 10:58:02 |
| 12 | thing?  It's pretty lengthy. | 10:58:05 |
| 13 | Q.   (BY MR. AMLONG)  Yes. | 10:58:07 |
| 14 | A.   Okay. | 10:58:08 |
| 15 | MR. AMLONG:  And actually, Michael, the | 10:58:14 |
| 16 | seven hour rule doesn't count in 30(b)(6) depositions. | 10:58:18 |
| 17 | MR. HOLT:  Yes, it does. | 10:58:19 |
| 18 | MR. AMLONG:  You can have one of your | 10:58:19 |
| 19 | interns research that. | 10:58:21 |
| 20 | MR. HOLT:  You can research it.  You can | 10:58:22 |
| 21 | look at the rule yourself.  It applies in every | 10:58:24 |
| 22 | deposition. | 10:58:27 |
| 23 | A.   Okay. | 11:03:48 |
| 24 | Q.   (BY MR. AMLONG)  Ms. Montgomery, who was | 11:03:48 |
| 25 | Rhonda Theuer? | 11:04:00 |

21

| | | |
|---|---|---|
| 1 | A.   Rhonda Theuer is retired.  She used to work in | 11:04:02 |
| 2 | human resources. | 11:04:06 |
| 3 | Q.   Do you know what she did in HR? | 11:04:09 |
| 4 | A.   I think she was a human resources business | 11:04:12 |
| 5 | partner, if I remember correctly. | 11:04:18 |
| 6 | Q.   What was your position at the time of this | 11:04:19 |
| 7 | email? | 11:04:31 |
| 8 | A.   I was the labor relations manager for flight. | 11:04:31 |
| 9 | Q.   Doing the same thing you're doing now? | 11:04:33 |
| 10 | A.   Yes. | 11:04:38 |
| 11 | Q.   What, if any, discussion did you have with | 11:04:38 |
| 12 | Captain Beach about this email at the time you got it? | 11:04:56 |
| 13 | MR. HOLT:  Objection.  That exceeds the | 11:04:59 |
| 14 | scope of the 30(b)(6) notice. | 11:05:02 |
| 15 | A.   I don't recall the specific discussions we had | 11:05:03 |
| 16 | back in April 2015. | 11:05:09 |
| 17 | Q.   (BY MR. AMLONG)  Do you recall any discussions | 11:05:10 |
| 18 | about this letter or about this email? | 11:05:14 |
| 19 | MR. HOLT:  Same objection. | 11:05:17 |
| 20 | A.   I recall that we had discussions, but I don't | 11:05:20 |
| 21 | recall what they specifically involved. | 11:05:22 |
| 22 | Q.   (BY MR. AMLONG)  Do you recall if Captain | 11:05:26 |
| 23 | Beach was suggesting any kind of investigation of | 11:06:05 |
| 24 | Mr. Patterson at this time? | 11:06:14 |
| 25 | MR. HOLT:  Same objection. | 11:06:16 |

22

| | | |
|---|---|---|
| 1 | A.    I believe he did want us to look into the | 11:06:17 |
| 2 | allegations, as, you know, on paper they're very | 11:06:23 |
| 3 | concerning. | 11:06:30 |
| 4 | Q.    (BY MR. AMLONG)  What was concerning -- what | 11:06:30 |
| 5 | allegations are you classifying as very concerning? | 11:06:50 |
| 6 | MR. HOLT:  Objection, exceeds the scope | 11:06:54 |
| 7 | of the 30(b)(6) notice. | 11:06:55 |
| 8 | A.    You want me to go through the whole document | 11:06:56 |
| 9 | and tell you what's concerning? | 11:07:02 |
| 10 | Q.    (BY MR. AMLONG)  Yes. | 11:07:04 |
| 11 | A.    Okay.  So it starts out with his concern about | 11:07:05 |
| 12 | going through VVI Customs and feels like he was | 11:07:16 |
| 13 | targeted, you know, in relationship to Mr. Patterson | 11:07:21 |
| 14 | allegedly smuggling firearms. | 11:07:29 |
| 15 | Then he goes on to talk about the behavior in | 11:07:33 |
| 16 | ASU from Mr. Patterson.  Some of it was behavior in | 11:07:38 |
| 17 | regards to being a nonrev and whether the behavior is | 11:07:50 |
| 18 | appropriate, such as taking pillows from First Class for | 11:07:55 |
| 19 | his family. | 11:07:58 |
| 20 | Certainly sitting in the jump seat and prior | 11:07:59 |
| 21 | to taxi moving switches, since he was not the pilot | 11:08:02 |
| 22 | flying or pilot monitoring, for that matter.  So moving | 11:08:06 |
| 23 | the switches and flaps from a jump seat. | 11:08:11 |
| 24 | Then going on, some nonrev behavior from his | 11:08:24 |
| 25 | family members, which we will at times investigate, | 11:08:28 |

23

| | | |
|---|---|---|
| 1 | wanting to ride in the crew van, which, to my knowledge, | 11:08:37 |
| 2 | is not a normal request for him and his family when he's | 11:08:42 |
| 3 | not -- or his family is not part of the crew. | 11:08:47 |
| 4 | You know, there's some discussion about being | 11:09:00 |
| 5 | robbed on the street, which wouldn't necessarily be | 11:09:03 |
| 6 | something that we would investigate on its own.  But | 11:09:07 |
| 7 | when you look at the big picture, there's a lot of | 11:09:09 |
| 8 | allegations going on here. | 11:09:12 |
| 9 | Threatening him, saying his mother is | 11:09:15 |
| 10 | corporate counsel at US Airways and threatening to get | 11:09:18 |
| 11 | the crew fired. | 11:09:21 |
| 12 | There were some allegations of whether or not | 11:09:35 |
| 13 | he had arranged to have a ghost rider observe the crew. | 11:09:37 |
| 14 | He made allegations that I guess Whitehouse | 11:09:47 |
| 15 | allegedly told another Captain, Mondrich that he had the | 11:10:00 |
| 16 | purser sit next to him and have sexual relations in the | 11:10:10 |
| 17 | crew rest seat or in the rest seat during his break. | 11:10:14 |
| 18 | Alleging that -- talking about flight | 11:10:23 |
| 19 | attendant Caesar and calling him either a, quote, faggot | 11:10:27 |
| 20 | or the N word, which are unacceptable. | 11:10:33 |
| 21 | There's basically -- if you look through this, | 11:10:38 |
| 22 | there's just a lot of information which was certainly | 11:10:53 |
| 23 | concerning to a captain enough to inform the chief pilot | 11:11:03 |
| 24 | that we have to weed through and determine if we should | 11:11:11 |
| 25 | at least talk to the person who the allegations are | 11:11:17 |

24

| | | |
|---|---|---|
| 1 | against to determine if there's any truth to the | 11:11:21 |
| 2 | allegations. | 11:11:27 |
| 3 | Q.   So did you make any effort to speak with | 11:11:34 |
| 4 | Mr. Patterson at the time to determine whether or not | 11:11:58 |
| 5 | these allegations were true? | 11:12:00 |
| 6 | MR. HOLT:   Objection, exceeds the scope | 11:12:01 |
| 7 | of the 30(b)(6) notice. | 11:12:02 |
| 8 | A.   At this date and time, I don't recall exactly | 11:12:08 |
| 9 | what we were doing.  I know at some point we did assign | 11:12:15 |
| 10 | an HR investigator to investigate allegations against | 11:12:19 |
| 11 | Mr. Patterson. | 11:12:25 |
| 12 | Q.   (BY MR. AMLONG)  Who was Fred Bates? | 11:12:26 |
| 13 | A.   He is in corporate security.  He's one of the | 11:12:37 |
| 14 | managers in corporate security in Miami. | 11:12:40 |
| 15 | Q.   Is Mr. Bates still there? | 11:12:43 |
| 16 | A.   Yes. | 11:12:46 |
| 17 | Q.   Did you -- | 11:12:47 |
| 18 | A.   And actually, I say he's in Miami.  I don't | 11:12:55 |
| 19 | actually think he's in Miami.  I'm sorry.  What? | 11:12:55 |
| 20 | Q.   I'm sorry? | 11:13:02 |
| 21 | A.   I said, I said he was in Miami.  I actually -- | 11:13:02 |
| 22 | I don't believe he is based in Miami. | 11:13:05 |
| 23 | Q.   Did you speak with Mr. Bates in preparation | 11:13:08 |
| 24 | for this deposition? | 11:13:11 |
| 25 | A.   I did briefly speak to Mr. Bates -- or Captain | 11:13:11 |

27

| | | |
|---|---|---|
| 1 | print it out and store it anywhere. | 11:18:34 |
| 2 | Q.   (BY MR. AMLONG)  Did you do anything to follow | 11:18:37 |
| 3 | up on this email? | 11:18:41 |
| 4 | A.   I believe I already said I would have spoken | 11:18:44 |
| 5 | to Brian Beach cr one of the chiefs about it. | 11:18:47 |
| 6 | Q.   Do you recall -- when you said that you would | 11:18:53 |
| 7 | have, that's subjective.  What did you do? | 11:19:02 |
| 8 | MR. HOLT:  Objection to the form. | 11:19:06 |
| 9 | A.   I can't recall specifically the conversations, | 11:19:09 |
| 10 | but it would have been normal for me to pick up the | 11:19:15 |
| 11 | phone and call him -- Brian. | 11:19:18 |
| 12 | Q.   (BY MR. AMLONG)  Do you know if there was any | 11:19:20 |
| 13 | section 21 investigation begun of Mr. Patterson at this | 11:19:42 |
| 14 | point concerning these allegations? | 11:19:46 |
| 15 | MR. HOLT:  Objection to the form. | 11:19:49 |
| 16 | Outside the 30(b)(6) deposition topics. | 11:19:50 |
| 17 | A.   I don't believe at that point the section 21 | 11:19:54 |
| 18 | had begun. | 11:19:58 |
| 19 | Q.   (BY MR. AMLONG)  You said Ms. Theuer was a | 11:20:03 |
| 20 | human resources business partner.  Did you work closely | 11:20:12 |
| 21 | with Ms. Theuer? | 11:20:17 |
| 22 | A.   I did when she -- | 11:20:20 |
| 23 | MR. HOLT:  Objection to the form.  You | 11:20:21 |
| 24 | can answer. | 11:20:23 |
| 25 | THE WITNESS:  Sorry. | 11:20:24 |

28

1      A.    I did when she worked for the company.        11:20:25

2      Q.    (BY MR. AMLONG)  Do you know whether she began   11:20:26

3    any investigation of what you've described as the        11:20:32

4    concerning allegations in this email?                    11:20:37

5              MR. HOLT:  Objection to the form.  And        11:20:39

6    object to the extent it exceeds the 30(b)(6) deposition   11:20:41

7    notice topics.                                           11:20:45

8      A.    I don't know.                                   11:20:46

9      Q.    (BY MR. AMLONG)  As the go-to person, as       11:20:47

10   you've described yourself, for section 20 and 21 of the  11:21:18

11   Joint Collective Bargaining Agreement, is there any       11:21:23

12   reason not to have begun a section 21 investigation       11:21:30

13   concerning the allegations in this letter?               11:21:43

14             MR. HOLT:  Objection to the form and         11:21:45

15   objection to the extent it exceeds the scope of the       11:21:46

16   30(b)(6) deposition topics.                              11:21:50

17     A.    I can't think of any specific reason.          11:21:52

18     Q.    (BY MR. AMLONG)  Do the allegations in the     11:21:53

19   emails from Captain Whitehouse that Captain Beach was     11:22:12

20   forwarding to you --                                     11:22:19

21     A.    Which email?  I'm sorry.                        11:22:21

22     Q.    -- give you any reason to question the         11:22:23

23   psychological state or stability of Mr. Patterson at      11:22:25

24   this time?                                               11:22:32

25     A.    Does the email from Captain Whitehouse to      11:22:32

29

```
1    Captain Beach give me reason to -- I'm sorry.  What was    11:22:36

2    that question?                                             11:22:42

3        Q.   Did the emails that Captain Beach forwarded to    11:22:46

4    you from Captain Whitehouse raise any concern with you     11:22:48

5    about the mental or psychological stability of First       11:22:55

6    Officer Patterson in April 2015?                           11:23:01

7                MR. HOLT:  Objection, exceeds the scope         11:23:05

8    of the 30(b)(6) deposition notice topics.                  11:23:06

9        A.   I don't believe there's enough information to     11:23:13

10   make that determination.                                   11:23:15

11       Q.   (BY MR. AMLONG)  So you thought in April 2015     11:23:16

12   that Captain Whitehouse's allegations were insufficient    11:23:32

13   to justify a section 20 examination.  Right?               11:23:36

14               MR. HOLT:  Objection, misstates               11:23:39

15   testimony.                                                 11:23:42

16       A.   So that would not be our normal process, to       11:23:42

17   immediately go from receiving an email to jumping to a     11:23:45

18   section 20.  We -- there's more information that we like   11:23:50

19   to receive before we take the action to send somebody      11:24:00

20   for a section 20 physical examination.                     11:24:03

21       Q.   (BY MR. AMLONG)  What additional information      11:24:06

22   do you want before you would send somebody for a           11:24:18

23   section 20 examination?                                    11:24:24

24               MR. HOLT:  Objection, exceeds the scope        11:24:25

25   of the 30(b)(6) deposition notice topics.                  11:24:27
```

30

| | | |
|---|---|---|
| 1 | A.   I can't give you specifics, as each case is | 11:24:30 |
| 2 | different.  We generally would like to go ahead and have | 11:24:34 |
| 3 | Mr. Patterson explain his side of the story, so to | 11:24:39 |
| 4 | speak. | 11:24:44 |
| 5 | Q.   (BY MR. AMLONG)  Well, what, if any, efforts | 11:24:49 |
| 6 | were made in April 2015 to have Mr. Patterson, quote, | 11:24:52 |
| 7 | explain his side of the story, closed quote? | 11:24:59 |
| 8 | MR. HOLT:  Objection.  It exceeds the | 11:25:02 |
| 9 | scope of the 30(b)(6) deposition notice topics. | 11:25:03 |
| 10 | A.   At that point we did not set up a section 21 | 11:25:09 |
| 11 | for Mr. Patterson. | 11:25:14 |
| 12 | Q.   (BY MR. AMLONG)  Why not? | 11:25:19 |
| 13 | MR. HOLT:  Same objection. | 11:25:21 |
| 14 | A.   I don't recall. | 11:25:22 |
| 15 | Q.   (BY MR. AMLONG)  Look, please, at Exhibit 61. | 11:25:23 |
| 16 | (Exhibit 61 marked.) | 11:26:50 |
| 17 | MR. HOLT:  Set those over here out of the | 11:26:50 |
| 18 | way. | 11:26:52 |
| 19 | May I see a copy of this?  Okay. | 11:26:54 |
| 20 | A.   I -- | 11:27:01 |
| 21 | Q.   (BY MR. AMLONG)  And -- | 11:27:03 |
| 22 | A.   Oh, go ahead. | 11:27:03 |
| 23 | Q.   -- look at the second page, the email -- the | 11:27:04 |
| 24 | March 19, 2015, email from Whitehouse to Beach. | 11:27:08 |
| 25 | A.   I see it. | 11:27:17 |

31

| | | |
|---|---|---|
| 1 | Q.   Beginning, One more thing I forgot. | 11:27:18 |
| 2 | A.   Yes. | 11:27:20 |
| 3 | Q.   In or about March of 2015, did you become | 11:27:21 |
| 4 | aware that Captain Whitehouse was reporting that | 11:27:32 |
| 5 | Mr. Patterson said within earshot of passengers that the | 11:27:42 |
| 6 | aircraft they were on was like a bomb and was going to | 11:27:46 |
| 7 | blow up if they did not get on the ground ASAP? | 11:27:50 |
| 8 | MR. HOLT:  Objection, outside the scope | 11:27:53 |
| 9 | of the 30(b)(6). | 11:27:55 |
| 10 | A.   You're asking me when did I become aware of | 11:28:00 |
| 11 | this? | 11:28:02 |
| 12 | Q.   (BY MR. AMLONG)  No.  I'm asking you whether | 11:28:02 |
| 13 | in March of 2015 you were aware of the allegations | 11:28:04 |
| 14 | contained in the March 19th email? | 11:28:09 |
| 15 | MR. HOLT:  Same objection. | 11:28:13 |
| 16 | A.   I don't remember. | 11:28:13 |
| 17 | Q.   (BY MR. AMLONG)  Have you ever been aware of | 11:28:15 |
| 18 | it prior to today? | 11:28:20 |
| 19 | A.   Yes. | 11:28:22 |
| 20 | Q.   Do you know if you became aware of it after | 11:28:22 |
| 21 | about the time it was made? | 11:28:33 |
| 22 | MR. HOLT:  Objection, outside the scope | 11:28:35 |
| 23 | of the 30(b)(6). | 11:28:36 |
| 24 | A.   I don't recall. | 11:28:40 |
| 25 | Q.   (BY MR. AMLONG)   The second (sic) topic | 11:28:41 |

32

| | | |
|---|---|---|
| 1 | listed on the 30(b)(6) deposition notice is, The human | 11:29:15 |
| 2 | resources investigation that grew from the furnishing by | 11:29:24 |
| 3 | Captain Glenn Whitehouse to Captain Brian Beach of the | 11:29:27 |
| 4 | package of information as an attachment to the 8:34:57 | 11:29:30 |
| 5 | p.m. September 24, 2015, email. | 11:29:37 |
| 6 | A.   I see that. | 11:29:43 |
| 7 | Q.   Can you tell me what, if anything, you did to | 11:29:43 |
| 8 | prepare to respond as the 30(b)(6) representative on | 11:29:53 |
| 9 | that topic? | 11:29:57 |
| 10 | MR. HOLT:  The same instructions as | 11:29:58 |
| 11 | earlier.  Without disclosing the substance of | 11:30:00 |
| 12 | communications with American's lawyers, you can answer | 11:30:03 |
| 13 | the question. | 11:30:05 |
| 14 | A.   I met with Mr. Holt. | 11:30:05 |
| 15 | Q.   (BY MR. AMLONG)  Did you do anything other | 11:30:16 |
| 16 | than meet with Mr. Holt? | 11:30:17 |
| 17 | A.   No. | 11:30:21 |
| 18 | Q.   Have you reviewed any documents? | 11:30:21 |
| 19 | A.   In part of my meeting with Mr. Holt, I | 11:30:28 |
| 20 | reviewed documents. | 11:30:30 |
| 21 | Q.   Going back for a moment to Exhibit 61 -- look | 11:30:32 |
| 22 | at Exhibit 2 -- | 11:31:45 |
| 23 | A.   Exhibit 2? | 11:31:47 |
| 24 | Q.   Yes. | 11:31:49 |
| 25 | A.   Okay.  One moment. | 11:31:49 |

35

```
 1   Cronin.                                              11:35:30

 2        Q.   (BY MR. AMLONG)  Do you recall if you did   11:35:34

 3   anything?                                            11:35:35

 4        A.   I don't recall one way or the other.  Is there   11:35:36

 5   a document you want me to look at?                   11:35:42

 6        Q.   No.                                        11:35:49

 7             Look at Exhibits 3, 4 and 5, please.       11:36:08

 8             (Exhibit 3 marked.)                        11:36:08

 9             (Exhibit 4 marked.)                        11:36:08

10             (Exhibit 5 marked.)                        11:36:39

11        A.   Okay.  I have the Exhibits 3, 4 and 5.     11:36:39

12        Q.   (BY MR. AMLONG)  Did you review any of those   11:36:44

13   exhibits in preparation for today's deposition?     11:36:47

14             MR. HOLT:  Objection.  The witness is not   11:36:50

15   going to answer questions about specific documents that   11:36:52

16   were reviewed at the instruction of counsel in      11:36:54

17   preparation for the deposition.                     11:36:56

18        Q.   (BY MR. AMLONG)  Have you reviewed -- have you   11:36:58

19   reviewed the September 24, 2015, letter?            11:37:00

20        A.   Yes, I believe so.                         11:37:05

21        Q.   Do you consider the September 24, 2015, letter   11:37:07

22   to be substantially similar to the allegations contained   11:37:21

23   in Captain Whitehouse's March emails to Captain Beach   11:37:32

24   and forwarded to corporate security?                11:37:44

25             MR. HOLT:  Objection to the form.          11:37:47
```

                                                                    36

1        A.   Yes.                                        11:37:48

2        Q.   (BY MR. AMLONG)  The Exhibit 3 is an email  11:37:51

3   from Brian Beach to -- I am sorry.  Exhibit 3 is an   11:38:15

4   email from Glenn Whitehouse to Brian Beach at 8:34:57 11:38:24

5   p.m. on September 24th.  Do you know how Captain       11:38:33

6   Whitehouse came to be sending a repeat of his March    11:38:41

7   allegations to Captain Beach in September 2015?        11:38:51

8             MR. HOLT:  Objection to the form, calls      11:39:00

9   for speculation.                                       11:39:01

10            THE WITNESS:  Do you want me to answer       11:39:06

11  it?                                                    11:39:08

12            MR. HOLT:  Yeah.                             11:39:09

13            THE WITNESS:  Okay.                          11:39:10

14       A.   So now that I'm thinking about this for a    11:39:10

15  second, when we originally received Captain Whitehouse's 11:39:12

16  concerns, he --                                        11:39:19

17       Q.   (BY MR. AMLONG)  Are you talking about March? 11:39:25

18       A.   Yes.  To my recollection, he wanted to handle 11:39:26

19  that through APA pro standards.                        11:39:28

20       Q.   Who wanted to handle that through APA pro    11:39:31

21  standards?                                             11:39:36

22       A.   Captain Whitehouse, I believe.  And so it got 11:39:36

23  to the point to where he tried to work through APA pro 11:39:48

24  standards and was not getting any satisfaction.  And so 11:39:51

25  he wanted to make a formal complaint to the company    11:39:58

```
 1        Q.   (BY MR. AMLONG)   Look at 48.              12:56:36

 2             MR. HOLT:   Before we go on to No. 48, are  12:56:41

 3   you looking for the fitness for duty exam letter that 12:56:43

 4   would have been sent to Mr. Patterson or to Dr. Knippa? 12:56:46

 5             MR. AMLONG:   To Dr. Ahtone --             12:56:53

 6             MR. HOLT:   I'm sorry?                     12:56:53

 7        Q.   (BY MR. AMLONG)   Is this letter sent to Dr. -- 12:56:55

 8   is the fitness for duty request directed to Dr. Ahtone? 12:56:58

 9        A.   No.                                        12:57:04

10        Q.   To whom is it requested -- to whom is it   12:57:05

11   directed?                                            12:57:09

12        A.   It would have been sent to Dr. Knippa.     12:57:09

13        Q.   Is Dr. Ahtone involved in the decision of  12:57:23

14   whether to send someone for a fitness for duty       12:57:32

15   examination?                                         12:57:34

16        A.   No.                                        12:57:35

17        Q.   Is that all between flight, labor relations 12:57:40

18   and legal?                                           12:57:49

19        A.   Yes.                                       12:57:51

20        Q.   Who makes the final decision?             12:58:02

21        A.   Flight.                                    12:58:04

22        Q.   So in this case that would have been Captain 12:58:10

23   Beach or Bonds?                                      12:58:18

24             MR. HOLT:   Objection, form.              12:58:20

25        A.   Yes.                                       12:58:22
```

72

| | | |
|---|---|---|
| 1 | medical doctor, and I don't think he has a psychological | 02:30:06 |
| 2 | background, but he would have to speak to that. | 02:30:09 |
| 3 | Q.   (BY MR. AMLONG)  Well, Dr. Ahtone did not | 02:30:11 |
| 4 | select Mr. Patterson.  Dr. Ahtone merely selected | 02:30:17 |
| 5 | Dr. Knippa.  Correct? | 02:30:21 |
| 6 | A.   That's my point, because you keep asking who | 02:30:23 |
| 7 | selected him to go to a section 20, to Dr. Knippa.  So | 02:30:28 |
| 8 | it's two separate subjects, in my opinion.  And that's | 02:30:33 |
| 9 | why I'm trying to be clear. | 02:30:37 |
| 10 | Q.   Let's back up, and I'll reask the question. | 02:30:38 |
| 11 | Did anybody with a medical background select Scott | 02:30:40 |
| 12 | Patterson for a section 20 exam? | 02:30:49 |
| 13 | MR. HOLT:  Object to form. | 02:30:51 |
| 14 | A.   No. | 02:30:52 |
| 15 | Q.   (BY MR. AMLONG)  Did anybody with a | 02:30:52 |
| 16 | psychological background select Scott Patterson for a | 02:30:53 |
| 17 | section 20 exam? | 02:31:00 |
| 18 | MR. HOLT:  Object to the form. | 02:31:00 |
| 19 | A.   No. | 02:31:01 |
| 20 | Q.   (BY MR. AMLONG)  Did anybody with a | 02:31:02 |
| 21 | neuropsychological background select Scott Patterson for | 02:31:08 |
| 22 | a section 20 exam? | 02:31:11 |
| 23 | MR. HOLT:  Object to the form. | 02:31:13 |
| 24 | A.   No. | 02:31:14 |
| 25 | Q.   (BY MR. AMLONG)  So the two decisionmakers | 02:31:14 |

75

```
 1        A.   I can't say for certainty all, but I can say    02:40:15

 2   that this is our system that we use to keep track of      02:40:19

 3   complaints.                                               02:40:26

 4        Q.   (BY MR. AMLONG)  Are there any written          02:40:40

 5   guidelines concerning subjecting someone to a section 20  02:43:31

 6   examination?                                              02:43:31

 7             (Reporter clarification.)                       02:43:40

 8        Q.   (BY MR. AMLONG)  Does American Airlines have     02:43:42

 9   any written guidelines for subjecting somebody to a       02:43:47

10   section 20 examination?                                   02:43:54

11             MR. HOLT:  Outside the scope.                   02:43:54

12        A.   Nothing outside of the actual section 20 of     02:44:00

13   the JCBA.                                                 02:44:03

14        Q.   (BY MR. AMLONG)  Look at Exhibit 30, please.   02:44:05

15        A.   30?                                             02:45:08

16        Q.   Yes.                                            02:45:09

17             (Exhibit 30 marked.)                           02:45:21

18        A.   Okay.  I have it.                               02:45:29

19        Q.   (BY MR. AMLONG)  Do you know why,               02:45:37

20   notwithstanding all of the statements that               02:45:42

21   Ms. Burke-Leon took, Mr. Cronin is saying, quote, The    02:45:45

22   only thing we can use are statements are the ones from   02:45:56

23   Whitehouse, closed quote?                                02:46:02

24             MR. HOLT:  Object to the form.                 02:46:04

25        A.   So we didn't have anything other than a        02:46:05
```

59

| | | |
|---|---|---|
| 1 | Q.   (BY MR. AMLONG)   Look at 48. | 12:56:36 |
| 2 | MR. HOLT:   Before we go on to No. 48, are | 12:56:41 |
| 3 | you looking for the fitness for duty exam letter that | 12:56:43 |
| 4 | would have been sent to Mr. Patterson or to Dr. Knippa? | 12:56:46 |
| 5 | MR. AMLONG:   To Dr. Ahtone -- | 12:56:53 |
| 6 | MR. HOLT:   I'm sorry? | 12:56:53 |
| 7 | Q.   (BY MR. AMLONG)   Is this letter sent to Dr. -- | 12:56:55 |
| 8 | is the fitness for duty request directed to Dr. Ahtone? | 12:56:58 |
| 9 | A.   No. | 12:57:04 |
| 10 | Q.   To whom is it requested -- to whom is it | 12:57:05 |
| 11 | directed? | 12:57:09 |
| 12 | A.   It would have been sent to Dr. Knippa. | 12:57:09 |
| 13 | Q.   Is Dr. Ahtone involved in the decision of | 12:57:23 |
| 14 | whether to send someone for a fitness for duty | 12:57:32 |
| 15 | examination? | 12:57:34 |
| 16 | A.   No. | 12:57:35 |
| 17 | Q.   Is that all between flight, labor relations | 12:57:40 |
| 18 | and legal? | 12:57:49 |
| 19 | A.   Yes. | 12:57:51 |
| 20 | Q.   Who makes the final decision? | 12:58:02 |
| 21 | A.   Flight. | 12:58:04 |
| 22 | Q.   So in this case that would have been Captain | 12:58:10 |
| 23 | Beach or Bonds? | 12:58:18 |
| 24 | MR. HOLT:   Objection, form. | 12:58:20 |
| 25 | A.   Yes. | 12:58:22 |

72

| | | |
|---|---|---|
| 1 | medical doctor, and I don't think he has a psychological | 02:30:06 |
| 2 | background, but he would have to speak to that. | 02:30:09 |
| 3 | Q.   (BY MR. AMLONG)  Well, Dr. Ahtone did not | 02:30:11 |
| 4 | select Mr. Patterson.  Dr. Ahtone merely selected | 02:30:17 |
| 5 | Dr. Knippa.  Correct? | 02:30:21 |
| 6 | A.   That's my point, because you keep asking who | 02:30:23 |
| 7 | selected him to go to a section 20, to Dr. Knippa.  So | 02:30:28 |
| 8 | it's two separate subjects, in my opinion.  And that's | 02:30:33 |
| 9 | why I'm trying to be clear. | 02:30:37 |
| 10 | Q.   Let's back up, and I'll reask the question. | 02:30:38 |
| 11 | Did anybody with a medical background select Scott | 02:30:40 |
| 12 | Patterson for a section 20 exam? | 02:30:49 |
| 13 | MR. HOLT:  Object to form. | 02:30:51 |
| 14 | A.   No. | 02:30:52 |
| 15 | Q.   (BY MR. AMLONG)  Did anybody with a | 02:30:52 |
| 16 | psychological background select Scott Patterson for a | 02:30:53 |
| 17 | section 20 exam? | 02:31:00 |
| 18 | MR. HOLT:  Object to the form. | 02:31:00 |
| 19 | A.   No. | 02:31:01 |
| 20 | Q.   (BY MR. AMLONG)  Did anybody with a | 02:31:02 |
| 21 | neuropsychological background select Scott Patterson for | 02:31:08 |
| 22 | a section 20 exam? | 02:31:11 |
| 23 | MR. HOLT:  Object to the form. | 02:31:13 |
| 24 | A.   No. | 02:31:14 |
| 25 | Q.   (BY MR. AMLONG)  So the two decisionmakers | 02:31:14 |

75

| | | |
|---|---|---|
| 1 | A.   I can't say for certainty all, but I can say | 02:40:15 |
| 2 | that this is our system that we use to keep track of | 02:40:19 |
| 3 | complaints. | 02:40:26 |
| 4 | Q.   (BY MR. AMLONG)  Are there any written | 02:40:40 |
| 5 | guidelines concerning subjecting someone to a section 20 | 02:43:31 |
| 6 | examination? | 02:43:31 |
| 7 | (Reporter clarification.) | 02:43:40 |
| 8 | Q.   (BY MR. AMLONG)  Does American Airlines have | 02:43:42 |
| 9 | any written guidelines for subjecting somebody to a | 02:43:47 |
| 10 | section 20 examination? | 02:43:54 |
| 11 | MR. HOLT:  Outside the scope. | 02:43:54 |
| 12 | A.   Nothing outside of the actual section 20 of | 02:44:00 |
| 13 | the JCBA. | 02:44:03 |
| 14 | Q.   (BY MR. AMLONG)  Look at Exhibit 30, please. | 02:44:05 |
| 15 | A.   30? | 02:45:08 |
| 16 | Q.   Yes. | 02:45:09 |
| 17 | (Exhibit 30 marked.) | 02:45:21 |
| 18 | A.   Okay.  I have it. | 02:45:29 |
| 19 | Q.   (BY MR. AMLONG)  Do you know why, | 02:45:37 |
| 20 | notwithstanding all of the statements that | 02:45:42 |
| 21 | Ms. Burke-Leon took, Mr. Cronin is saying, quote, The | 02:45:45 |
| 22 | only thing we can use are statements are the ones from | 02:45:56 |
| 23 | Whitehouse, closed quote? | 02:46:02 |
| 24 | MR. HOLT:  Object to the form. | 02:46:04 |
| 25 | A.   So we didn't have anything other than a | 02:46:05 |

46

```
 1        Q.   Did the section 21 investigation into      12:04:58

 2   Mr. Patterson produce any material that would describe  12:06:03

 3   disciplining him or terminating him?                  12:06:10

 4        A.   No.  He was not disciplined or terminated.  12:06:13

 5        Q.   Did it produce any evidence that he had done  12:06:21

 6   anything wrong?                                        12:06:26

 7             MR. HOLT:  Objection, form.                 12:06:27

 8        A.   I'm not sure the section 21 is actually     12:06:28

 9   concluded at this time.                               12:06:42

10        Q.   (BY MR. AMLONG)  Do you mean presently?     12:06:43

11        A.   Yes.                                        12:06:50

12        Q.   Were you not copied on -- well, what's a PEH?  12:06:51

13        A.   Personnel employment history.              12:07:16

14        Q.   Were you copied on the PEH that Captain Beach  12:07:18

15   sent to Mr. Patterson subsequent to the section 21    12:07:22

16   meetings?                                             12:07:31

17             MR. HOLT:  Objection.                       12:07:32

18        A.   Do you have -- do you have the PEH for me to  12:07:36

19   look at?                                              12:07:39

20        Q.   (BY MR. AMLONG)  Let me get it for you.     12:07:55

21             Does the contract specify a time limit on the  12:09:27

22   section 21 investigation?                             12:09:32

23        A.   No.                                         12:09:33

24             MR. HOLT:  Objection, outside the           12:09:33

25   30(b)(6).                                             12:09:36
```

48

| | | |
|---|---|---|
| 1 | Q.   (BY MR. AMLONG)  Take a look at Exhibit 25, | 12:11:39 |
| 2 | please. | 12:11:42 |
| 3 | (Exhibit 25 marked.) | 12:11:53 |
| 4 | A.   Okay.  I have it. | 12:11:59 |
| 5 | Q.   (BY MR. AMLONG)  Take a moment and read it. | 12:12:03 |
| 6 | A.   Okay. | 12:12:25 |
| 7 | Q.   So does this refresh your memory as to whether | 12:12:25 |
| 8 | American Airlines was aware that there were USERRA | 12:12:36 |
| 9 | issues at play in October -- | 12:12:40 |
| 10 | MR. HOLT:  Objection to the form. | 12:12:44 |
| 11 | Q.   (BY MR. AMLONG)  -- 2015? | 12:12:46 |
| 12 | A.   So I guess -- I guess when I'm -- when I hear | 12:12:48 |
| 13 | you say USERRA issues, I'm thinking of a formal | 12:13:03 |
| 14 | complaint from the government regarding a USERRA | 12:13:09 |
| 15 | violation.  But from the email, I see that Mr. Patterson | 12:13:12 |
| 16 | raised some concerns to Captain Bonds. | 12:13:19 |
| 17 | Q.   What, if anything, in October of 2015 was | 12:13:47 |
| 18 | giving rise to concerns about a section 20 procedure for | 12:13:58 |
| 19 | Mr. Patterson? | 12:14:06 |
| 20 | A.   The section 20 I guess decision was based on | 12:14:10 |
| 21 | really Captain Whitehouse's allegations, and not just | 12:14:28 |
| 22 | Captain Whitehouse, because I know Ana had interviewed | 12:14:31 |
| 23 | other pilots.  So it was really the big picture as a | 12:14:36 |
| 24 | whole, everything put together.  We just wanted to be | 12:14:42 |
| 25 | sure that Mr. Patterson was fit for duty to fly for | 12:14:47 |

46

| | | |
|---|---|---|
| 1 | Q.   Did the section 21 investigation into | 12:04:58 |
| 2 | Mr. Patterson produce any material that would describe | 12:06:03 |
| 3 | disciplining him or terminating him? | 12:06:10 |
| 4 | A.   No.  He was not disciplined or terminated. | 12:06:13 |
| 5 | Q.   Did it produce any evidence that he had done | 12:06:21 |
| 6 | anything wrong? | 12:06:26 |
| 7 | MR. HOLT:  Objection, form. | 12:06:27 |
| 8 | A.   I'm not sure the section 21 is actually | 12:06:28 |
| 9 | concluded at this time. | 12:06:42 |
| 10 | Q.   (BY MR. AMLONG)  Do you mean presently? | 12:06:43 |
| 11 | A.   Yes. | 12:06:50 |
| 12 | Q.   Were you not copied on -- well, what's a PEH? | 12:06:51 |
| 13 | A.   Personnel employment history. | 12:07:16 |
| 14 | Q.   Were you copied on the PEH that Captain Beach | 12:07:18 |
| 15 | sent to Mr. Patterson subsequent to the section 21 | 12:07:22 |
| 16 | meetings? | 12:07:31 |
| 17 | MR. HOLT:  Objection. | 12:07:32 |
| 18 | A.   Do you have -- do you have the PEH for me to | 12:07:36 |
| 19 | look at? | 12:07:39 |
| 20 | Q.   (BY MR. AMLONG)  Let me get it for you. | 12:07:55 |
| 21 | Does the contract specify a time limit on the | 12:09:27 |
| 22 | section 21 investigation? | 12:09:32 |
| 23 | A.   No. | 12:09:33 |
| 24 | MR. HOLT:  Objection, outside the | 12:09:33 |
| 25 | 30(b)(6). | 12:09:36 |

48

| | | |
|---|---|---|
| 1 | Q.   (BY MR. AMLONG)  Take a look at Exhibit 25, | 12:11:39 |
| 2 | please. | 12:11:42 |
| 3 | (Exhibit 25 marked.) | 12:11:53 |
| 4 | A.   Okay.  I have it. | 12:11:59 |
| 5 | Q.   (BY MR. AMLONG)  Take a moment and read it. | 12:12:03 |
| 6 | A.   Okay. | 12:12:25 |
| 7 | Q.   So does this refresh your memory as to whether | 12:12:25 |
| 8 | American Airlines was aware that there were USERRA | 12:12:36 |
| 9 | issues at play in October -- | 12:12:40 |
| 10 | MR. HOLT:  Objection to the form. | 12:12:44 |
| 11 | Q.   (BY MR. AMLONG)  -- 2015? | 12:12:46 |
| 12 | A.   So I guess -- I guess when I'm -- when I hear | 12:12:48 |
| 13 | you say USERRA issues, I'm thinking of a formal | 12:13:03 |
| 14 | complaint from the government regarding a USERRA | 12:13:09 |
| 15 | violation.  But from the email, I see that Mr. Patterson | 12:13:12 |
| 16 | raised some concerns to Captain Bonds. | 12:13:19 |
| 17 | Q.   What, if anything, in October of 2015 was | 12:13:47 |
| 18 | giving rise to concerns about a section 20 procedure for | 12:13:58 |
| 19 | Mr. Patterson? | 12:14:06 |
| 20 | A.   The section 20 I guess decision was based on | 12:14:10 |
| 21 | really Captain Whitehouse's allegations, and not just | 12:14:28 |
| 22 | Captain Whitehouse, because I know Ana had interviewed | 12:14:31 |
| 23 | other pilots.  So it was really the big picture as a | 12:14:36 |
| 24 | whole, everything put together.  We just wanted to be | 12:14:42 |
| 25 | sure that Mr. Patterson was fit for duty to fly for | 12:14:47 |

109

```
 1        Q.   (BY MR. AMLONG)  What, if anything, do you    04:18:32

 2   understand about Dr. Knippa's qualifications?           04:18:34

 3                MR. HOLT:  Outside the scope.  But you     04:18:38

 4   can answer.                                             04:18:40

 5        A.   I don't know that information.                04:18:40

 6        Q.   (BY MR. AMLONG)  What, if anything, do you    04:18:41

 7   understand about Dr. Knippa's methodology for testing   04:18:46

 8   people who fly in from the other coast?                 04:18:51

 9                MR. HOLT:  Same objection.                 04:18:53

10        A.   I don't know anything about that.             04:18:54

11        Q.   (BY MR. AMLONG)  You are familiar with        04:19:01

12   Dr. Kay, are you not, Gary Kay?                         04:19:03

13        A.   I've heard the --                             04:19:06

14                THE WITNESS:  I'm sorry.                   04:19:07

15                MR. HOLT:  The same objection.  Go ahead.  04:19:07

16        A.   I've heard the name.  I've never met him.     04:19:09

17        Q.   (BY MR. AMLONG)  Have you participated in     04:19:12

18   referring pilots to him for psychological or            04:19:14

19   neuropsychological examinations?                        04:19:20

20                MR. HOLT:  Same objection.                 04:19:22

21        A.   I believe we have used Dr. Kay in the past.   04:19:23

22        Q.   (BY MR. AMLONG)  Often.  Correct?             04:19:26

23                MR. HOLT:  The same objection.  And        04:19:28

24   object to the form.                                     04:19:30

25        A.   I don't -- I can't speak to often or not.     04:19:32
```