UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, a Delaware
corporation,

    Defendant.
_____/

**Plaintiff's Unopposed Motion to File Out of Time
and/or Enlarge by One Day The Deadline to Respond to Defendant's
Motion in Limine DE 98, <u>and</u> to Extend Until August 14 the Deadline
for the Parties' Replies re: the Motions in Limine**

    Plaintiff, Rodney Scott Patterson, pursuant to Fed. R. Civ. Pro. 6 and Local Rule 7.1 moves for entry of an order, *One*, accepting out of time and/or enlarging by one day the deadline for him to file his response to American Airlines, Inc.'s Motion in Limine to Exclude Evidence of Reference to Confidential Settlement Negotiations [DE 98], and, ***Two,*** extending until August 14 the deadline for the parties' replies to the responses to the pending motions in limine, and states as grounds.

    1.    <u>Nature of the Action</u>. This is an action for military-status discrimination, brought by Rodney Scott Patterson, a lieutenant colonel in the United States Army Reserve and a first officers for American Airlines. He sues pursuant to the Uniform Services Employment and Reemployment Rights Act

("USERRA"), 38 U.S.C. § 4311(b)(1). Pursuant to the Court's July 30, 2018, this case was removed from the August 20, 2018 trial calendar.

2.  <u>Relief sought.</u>  On July 23, 2018, defendant filed five motions in limine [DE 95 - DE 99], including American Airlines, Inc.'s Motion in Limine to Exclude Evidence of Reference to Confidential Settlement Negotiations [DE 98]. Yesterday, the undersigned filed plaintiff's responses to four of the five motions [DE 114-117].  The undersigned responded to four instead of five, because an assistant, miscounted the number of responses due yesterday. The undersigned and the assistant were also involved with preparing and filing several other pleadings in two other cases. Today, while the pleadings e-filed yesterday by the parties were being download, the assistant notified the undersigned that she had miscounted the responses due yesterday. This morning the assistant informed the undersigned that there were five, instead of four motions to which responses were required. The undersigned has prepared the attached response and seeks leave to file it out of time by one day.

3.  Federal Rule of Civil Procedure Rule 6(b) provides that when a motion for extension of time is made after a deadline has expired, the court is permitted to grant an extension, "if the party failed to act because of excusable neglect." <u>Walter v. Blue Cross & Blue Shield United of Wisconsin</u>, 181 F.3d 1198 (11th Cir. 1999); Fed. R. Civ. Proc. 6(b)(1)(B).

4.  Excusable neglect is determined by assessing factors which include: (1) the danger of prejudice to the non-movant, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including

whether it was within the reasonable control of the movant, (4) and whether the movant acted in good faith. Advanced Estimating System, Inc. v. Riney, 130 F.3d 996, 997-98 (11th Cir. 1997) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd P'ship, 507 U.S. 380, 395 (1993)). However, "the absence of prejudice to the nonmoving party" and "the interest of efficient judicial administration" are to be afforded "primary importance." Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (citation omitted). See also Brother v. Rossmore Tampa L.P., Case No. 8:03-cv-1253-T-24MAP, 2004 U.S. Dist. LEXIS 28524, at *2-6 (M.D. Fla. Aug. 19, 2004) (court considered a response in opposition to a motion for summary judgment that was filed three weeks late).

5. Defendant should not be prejudiced by the one-day extension because the issues raised in the motion in limine re: settlement agreement overlaps with those raised in at least one of the other motions (i.e., the motion regarding the collective bargaining agreement, DE 95, referenced in footnote 1 of the motion in limine re: settlement negotiation). Also, defendant has indicated that it does not opposed the requested extension.

6. Certificate of Conferral. Pursuant to Local Rule 7.1, plaintiff has conferred with counsel for defendant about defendant's position on extending until today, the deadline for filing the response to DE 99, and defendant has indicated that it did not object to the requested extension if it is permitted to file its replies to plaintiff's pending motions in limine by August 14. Plaintiff does not oppose to that request and the parties have agreed to submit the

replies to all of the pending motions in limine by August 14, if the Court permits them to do so.

Wherefore, plaintiff moves for entry of an order granting this motion and granting plaintiff such other and further relief as this Court deems appropriate.

### Certificate of Service

I hereby certify that a true and correct copy of this document was filed and served this date via the Southern District of Florida's CM/ECF system on all parties and counsel of record.

Respectfully submitted,

s/ *Jennifer Daley*
WILLIAM R. AMLONG
WRAmlong@TheAmlongFirm.com
Florida Bar Number 470228
KAREN COOLMAN AMLONG
KAmlong@TheAmlongFirm.com
Florida Bar Number 275565
JENNIFER DALEY
Florida Bar Number 856436
JDaley@TheAmlongFirm.com
AMLONG & AMLONG, P.A.
500 Northeast Fourth Street, Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983

NOEL C. PACE
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
(305) 710-3713

*Attorneys for the Plaintiff,
    Rodney Scott Patterson*

\\amlong3\cpshare\CPWin\HISTORY\180724_0001\1538.1D6

Service List

WILLIAM R. AMLONG
WRAmlong@TheAmlongFirm.com
Florida Bar Number 470228
KAREN COOLMAN AMLONG
KAmlong@TheAmlongFirm.com
Florida Bar Number 275565
AMLONG & AMLONG, P.A.
500 Northeast Fourth Street,
Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983

NOEL C. PACE
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
(305) 710-3713

*Attorneys for the Plaintiff,*
   *Rodney Scott Patterson*

MICHAEL A. HOLT
mholt@shb.com
SHOOK, HARDY & BACON L.L.P.
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
(305) 358-5171

MARK W. ROBERTSON
mrobertson@omm.com
O'MELVENY & MYERS LLP
Times Square Tower

7 Times Square
New York, New York 10036
(212) 326-2000

TRISTAN MORALES
tmorales@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, Northwest
Washington, District of Columbia
20006
(202) 383-5300 / 383-5414 Fax

Cameron Cloar-Zavaleta (*Pro hac vice*)
Cameron.R.Cloar@aa.com
AMERICAN AIRLINES, INC.
4333 Amon Carter Boulevard
Ft. Worth, Texas 76155
Telephone: (817) 963-1234

*Attorneys for the Defendant,*
   *American Airlines, Inc.*

\\amlong3\cpshare\CPWin\HISTORY\180724_0001\1538.1D6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

   Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

   Defendant.
_____/

**Plaintiff's Response to American Airlines, Inc.'s
Motion in Limine to Exclude Evidence of or
References to Confidential Settlement Negotiations**

Plaintiff, Rodney Scott Patterson, pursuant to Local Rule 7.1(c), responds as follows to American Airlines, Inc.'s Motion in Limine To Exclude Evidence of or References to Confidential Settlement Negotiations (DE 98):

**Introduction and Summary**

This motion betrays again American Airlines, Inc.'s miscomprehension of and hostility toward USERRA,[1] a uniquely broad and powerful statute through which Congress intended not only to protect aggressively the civilian employment of the members of this nation's armed services, but

---

[1] The Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, et seq.



**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

also to forbid any attempt by an employer to put a price tag on a USERRA plaintiff's efforts to claim each and every right that Congress sought to guarantee.

Thus, the "confidential settlement negotiations" that American's motion seeks to keep out of evidence is not, under USERRA, a settlement offer that Federal Rule of Evidence 408 would keep out of evidence, but rather an attempt to bully a lieutenant colonel in the Army Reserve, who was also a First Officer for American, to drop his USERRA claim as the price for being restored to flight status.

The strength of Lt. Col. Patterson's claim for discrimination based on his military service makes it more likely than not that he would prevail and, in so prevailing, would be entitled to greater rights than simply getting his job back with no compensation for lost wages or benefits. That is why the "confidential settlement offer" that would have required him to abandon his underlying claims, with no compensation, is both illegal and admissible.

## Controlling Legal Principles

Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

> (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 401. "Relevant evidence is admissible.... Irrelevant evidence is not admissible." Rule 402.

Rule 408(a) prohibits the admission of settlement negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," but Rule 408(b) allows a court to "admit this evidence for another purpose...."

"Another purpose" includes the use of a "settlement negotiations" to threaten an opposing party who is engaging in a protected activity. See, e.g., Uforma/Shelby Bus. Forms v. NLRB, 111 F.3d 1284, 1294 (6th Cir. 1997); Vulcan Hart Corp. (St. Louis Div.) v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983).

USERRA provides at 4311(b) that "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter...."

> Accordingly, where an employer has made an offer of reemployment not solely as an offer of compromise but at least in part because the employer believes the person is entitled to at least some reemployment benefits under USERRA, it would constitute retaliation for the employer to deny those benefits in response to the person's reservation of rights and pursuit of a claim for greater benefits.

United States v. Nevada, 817 F. Supp. 2d 1230, 1249 (D. Nev. 2011).

As this Court noted in Bagnall v. City of Sunrise, Florida, Case No. 10-61299-cv-Martinez/McAliley (S.D. Fla. 2011), "[i]n order to establish a prima facie case of discrimination under 38 U.S.C. § 4311(a), Plaintiffs must show with regard to Mr. Bagnall that he was denied a benefit of

employment and that his protected status was a 'motivating factor' in the denial." Id. at 18-19, citing Coffman, 411 F.3d at 1238.

An USERRA plaintiff may make that showing by demonstrating, inter alia, that:

**One**, the adverse employment action occurred proximately in time to the military activity or the filing of a USERRA complaint, or

**Two**, the reason given for it was inconsistent with other actions by the employer. Coffman, 411 F.3d at 1238, quoting Sheehan, 240 F.3d at 1014.

Once such a showing is made, the USERRA plaintiff prevails "unless the employer can prove that the action would have been taken in the absence of such ... service...." § 4311(c)(1).

A USERRA plaintiff makes a prima facie case of retaliation by showing that his or her engagement in behavior protected by § 4311(b)(1) "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action...." § 4311(c)(2)(A). Such a showing can be made by demonstrating "a pattern of antagonism" towards the USERRA plaintiff. Brown v. Houser, 129 F. Supp. 3d 1357, 1379 (N.D. Ga. 2015), citing Ward v. United Parcel Serv., 580 Fed.Appx. 735, 739 (11th Cir. 2014), which cited Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Such a prima facie case shifts the burden to a defendant to "prove that the action would have been taken in the absence of such person's enforcement action...." § 4211(c)(2).

Although "USERRA's retaliation provision should not be read to preclude bona fide attempts to settle genuine disputes over the applicability of USERRA's reemployment protections," that logic only comes into play "[i]f an employer believes that no reemployment is required by USERRA and makes an offer of reemployment solely to settle a returning service member's claim..." Nevada, 817 F.Supp.2d at 1249.  In such a case, "the employer's subsequent refusal to reemploy the person based on his rejection of the settlement and continued pursuit of a USERRA claim would not be grounds for a retaliation claim," because "[i]n section 4311(c) terms, ... the employer would have denied reemployment anyway and made the offer solely to settle the person's disputed claim to even greater benefits..." Id.  In such a case, "the employer's denial of reemployment following rejection of the settlement offer cannot be attributed to the protected conduct."

However, "[w]hile the scope of section 4311 and its applicability to offers of settlement are questions of law, what kind of offer has been made and the employer's motivations in making it are, of course, questions of fact." Id.

**Statement of the Facts**

There is strong evidence of a pattern of antagonism toward Lt. Col. Rodney Scott Patterson that began as soon as he disobeyed a chief pilot's request that he fly as scheduled as a First Officer on a flight to South America September 22, 2015,[2] and instead reported for duty at the Pentagon that day as a lieutenant colonel in the Army Reserve.

- Two days later, American put Lt. Col. Patterson on no-fly status and began a disciplinary investigation into allegations that had been brought to the attention of a chief pilot, Corporate Security, Human Resources and Labor Relations in March and April 2015.[3]

- In an October 30 e-mail string, which began with Capt. Bonds forwarding a e-mail in which Lt. Col. Patterson reminded him that his September 22-25 time on duty was covered by USERRA, Capt. Bonds expressed a hope that "maybe [Lt. Col. Patterson] hangs himself on providing false information" about his military pay; Sean Scialfa, the Director of Flight for Miami, stated that he "would prefer to pursue this avenue rather than Sec. 20[, a mandated psychological examination] for now, and Mark Cronin, the Managing Director Line Operations—East,

---

[2] See Deposition of James Bonds, the cover page and relevant testimonial pages of which, are appended as Attachment 1, at 76:25-77:6.

[3] See Deposition of Michelle Montgomery, the cover page and relevant testimonial pages of which, are appended as Attachment 2, at 14:7-15:24, 16:19-21, 17:22-18:1, 20:2-5, 20:24-21:10, 21:22-24:11, 27:2-28:8, 29:3-30:14, 31:25-32:9, 35:18-36:1, and Montgomery Deposition Exhibits 3 and 4, which are appended as Attachments 3 and 4.

expressed concern that "USERRA issues can get really tangled fast, and we need to make sure [Lt. Col. Patterson's] behavior remains the focus and not how we are handling it."[4]

- In a 6:28 p.m. November 5-1:41 p.m. November 6 e-mail string, Captains Beach and Cronin discuss how they have no evidence against Lt. Col. Patterson other than the statements of Capt. Whitehouse, since other statements they had obtained "were on strict confidentiality," and Ms. Montgomery opined that "[w]ithout those other statements, we really don't have much of a case," but added "[t]hose statements also may better support a section 20, too."[5]

- After the investigation produced no evidence of anything for which American could discipline Lt. Col. Patterson,[6] Capts. Bonds and Beach each signed letters in January 2016 ordering Lt. Col. Patterson to submit to a mandatory neuropsychological examination "[d]ue to my concerns regarding your ability to safely operate an aircraft,"[7] each denied any

---

[4]See Montgomery Deposition Exhibit 25, which is appended as Attachment 6.

[5]The e-mail strong, Bates Nos. AA-Patterson—0000638-639, is appended as Attachment 7.

[6]Attachment 2 (Montgomery Deposition), at 46:1-4.

[7]See, e.g., Exhibit 23 to Bonds Deposition, which exhibit is appended as Attachment 8.

personal knowledge supporting such "concerns."[8] Said Capt. Beach: "I was told to, you know, this is what we're going to do and here's the letter."[9]

- Following Lt. Col. Patterson's filing a USERRA complaint January 25 with the Department of Labor, Lucretia Guia, an associate general counsel of American, on February 29 weaponized the Section 20 process by stating in a letter to the DOL that:

> During the course of the investigation, which did not lead to discipline, the Company discovered information which placed in question FO Patterson's fitness for duty. And, consistent with its duty to ensure the safety of its employees and passengers, the Company initiated a fitness for duty examination, which is pending.[10]

- Lest there be any doubt as to what American was looking for from Dr. Knippa, Ms. Montgomery forwarded to him a copy of a "Fitness for Duty Medical Examination Request—Section 20," that stated in pertinent part that "[t]he request is based upon this office's concerns about FO Patterson's judgment and, specifically, his mental and/or emotional stability. This office has received multiple reports of atypical interactions

---

[8] See Bonds Deposition, Attachment 1, at 105:17-106:9.

[9] Deposition of Brian Beach, the cover page and relevant testimonial pages of which are happened as Attachment 9, at 15:9-10.

[10] A copy of Ms. Guia's letter, accompanied by a package of exhibits that included the allegations by Capt. Whitehouse that Ms. Guia had acknowledged in her letter had "not [led] to discipline," is appended as Attachment 10.

with coworkers and reports that suggest a pattern of false/self-aggrandizing statements."[11]

- Even though Dr. Knippa's report contained no findings of any neuropsychological deficit, psychopathology or personality disorder, and American's corporate medical director, Jeral Ahtone, M.D., characterized it as merely "indicat[ing] that [Dr. Knippa did]n't have a complete answer at [that] time," American seized upon its "not-fit-for-duty" conclusion to ground Lt. Col. Patterson.[12]

After Lt. Col. Patterson submitted medical reports from, among others, a neurologist, a clinical psychologist and Gary Kay, Ph.D., a neuropsychologist that American has engaged before as a consultant,[13] American made an "offer" to his union: it would permit practitioners from the University of Texas Medical Branch to review those reports and to either declare Lt. Col. Patterson fit to return to work, based on those reports, or refer him out to some other practitioner than Dr. Knippa for a reevaluation—but only if he would give up all of his claims, including the one under USERRA.

---

[11] See Attachment 2 (Montgomery Deposition), at 60:1-16. The request, Exhibit 49 to that deposition, is appended as Attachment 11.

[12] See Deposition of Jeral Ahtone, M.D., the cover page and relevant testimonial pages of which are appended as Attachment 12, at 42:17-44:18, 52:11-22, 54:13-55:1 and 57:15-58:1. Exhibit 4 to the Deposition of Dr. Ahtune is appended as Attachment 13.

[13] See Attachment 2 (Montgomery Deposition), at 109:11-110:1.

## Applying the Law to the Facts in the Case at Bar

USERRA forbids a guilty defendant to make a take-it-or-leave-it chump-change offer to a United States serviceman or woman who has a legitimate claim under that statute.

Lt. Col. Patterson has not only temporal proximity in his case for discrimination based on his having gone on military duty in September 2015—he has temporal overlap: American did not even let him return from duty at the Pentagon before it put him on the no-fly status of "Paid-Withheld."

Its excuse for doing so was to investigate allegations Capt. Glenn Whitehouse—allegations that had been presented in March and April of 2015 to one of Miami's chief pilots, who passed them on to Corporate Security, Human Resources and Labor Relations, none of which had done nothing in response.

Such an inconsistent approach—Capt. Whitehouse's allegations are brushed aside in the Spring, but in the Fall, when Lt. Col. Patterson insists on going on duty against Capt. Bonds's desires, they are grounds to stop him from flying, to mandate a neuropsychological examination and to ground him as neuropsychologically and psychologically unfit-for-duty—is evidence of anti-military motivation.

Why had American done nothing concerning Capt. Whitehouse's allegations in the Spring?  Likely for the same reason that it did nothing

following the September-November investigation:  there was no evidence of wrongdoing.

A mere lack of evidence did not, however, dampen anyone's ardor. Capt. James Bonds is the chief pilot who had left a voice mail message for Lt. Col. Patterson Monday, September 21, asking him to fly to South America the following day, as scheduled, rather than go on duty at the Pentagon.  In looking at Lt. Col. Patterson's military pay records—which Lt. Col. Patterson had provided Capt. Bonds under cover of an e-mail that reminded him that the time was "covered by USERRA"—Capt. Bonds "smell[ed] a rat" and e-mailed his managerial colleagues that "[m]aybe he hangs himself on providing false information."  See Attachment 6.  Capt. Sean Scialfa, the Miami Director of Flight, thought that would be better than mandating a psychological exam under Section 20 of the Joint Collective Bargaining Agreement.  Id.  Capt. Mark Cronin, the Managing Director Line Operations—East, expressed concern about how "USERRA issues can get really tangled fast."  Id.  Michelle Montgomery, a Labor Relations manager, however, was not so squeamish:  she suggested when it became clear that "we really don't have much of a case" without the testimony of employees who would not testify, that those persons' statements still could "support a section 20."  See Attachment 7.

And so American sent Lt. Col. Patterson to John Knippa, Ph.D., a neuropsychologist in Long Beach, California.  It did so via letters signed by,

at different times, Capt. Bonds and Capt. Brian Beach, each of whom, *One*, signed a letter stating that he was ordering the examination "[due to concerns regarding your ability to safely operate an aircraft," but, *Two*, denied any personal knowledge supporting such "concerns." Capt. Beach acknowledged that he was simply given a letter and told to sign it. To ensure that Dr. Knippa knew what American wanted, Ms. Montgomery sent him a copy of a "Fitness for Duty Medical Examination Request—Section 20," that discussed "this office's concerns about FO Patterson's judgment and, specifically, his mental and/or emotional stability" and reported that American had "received multiple reports of atypical interactions with coworkers and reports that suggest a pattern of false/self-aggrandizing statements." Attachment 11.

Although Dr. Knippa came through in March with a "NOT-FIT-FOR-DUTY" report, he did so without documenting neuropsychological deficits, psychopathology or any personality disorder. The report, acknowledged Jeral Ahtone, M.D., American's Corporate Medical Director, merely "indicat[ed] that [Dr. Knippa did]n't have a complete answer at [that] time." That was enough for American, however. It seized on the recommendation and grounded Lt. Col. Patterson.

American—aware that Lt. Col. Patterson had complained to the Department of Labor in January about his USERRA rights having been violated, in response to which an associate general counsel told the DOL in

February that American had sent him for a mental health exam—then got from Lt. Col. Patterson a package of reports, including one from Gary Kay, a neuropsychologist that it has used in the past, declaring him fit for duty.

That put American on notice that it had gotten itself into, borrowing from Capt. Cronin's phraseology in the October 20, 2015 e-mail, a USERRA "tangle"—and one that it could well lose.  So it offered Lt. Col. Patterson's union, the Allied Pilots Association, a deal in settlement of a union grievance about the Section 20 procedure that it thought would be too painful for him to refuse:  his doctors' reports could be reviewed by the University of Texas Medical Branch, which would either clear him for a return to duty or refer him out to someone other than Dr. Knippa for a reevaluation—but he would have to drop all claims, including his USERRA claim for backpay and benefits.  Otherwise, he would remain—as he has remained—unable to fly for American.

The issue of material fact that the "confidential settlement documents"  has a tendency to make more or less probable is that American, in December 2016, willfully conditioned giving Lt. Col. Patterson a neutral reevaluation of his psychological and neuropsychological health on his surrendering his rights under USERRA to recover back pay and benefits.

Associate General Counsel Lucretia Guia's December 2016 e-mail is not a "confidential settlement offer" protected by Rule 408.  It is documentary evidence of retaliation outlawed by § 4311(b)(1).

## Conclusion

Based on the evidence marshaled, the authorities cited and the arguments presented, Plaintiff respectfully requests the Court to deny American Airlines, Inc.'s Motion in Limine To Exclude Evidence of or Reference to Confidential Settlement Negotiations (DE 98), and to grant such other and further relief as is just.

Respectfully Submitted,

/s/    William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street
El Portal, FL
(305) 710-3713

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

***Attorneys for Plaintiff,
    Rodney Scott Patterson***

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has

been filed using the Southern District of Florida's ECF system and thereby has been served on all counsel or parties of record.

*/s/ William R. Amlong*
WILLIAM R. AMLONG

\\amlong3\cpshare\CPWin\HISTORY\180724_0001\1538.1DC