UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

    Defendant.
_____/

**AMERICAN AIRLINES, INC.'S OMNIBUS REPLY IN SUPPORT
OF AMERICAN'S MOTIONS IN LIMINE (ECF NOS. 95, 96, 97, & 99)**

American Airlines, Inc. ("American") respectfully submits this omnibus reply in support of the motions in limine it filed on July 23, 2018 regarding: (1) evidence of or references to any alleged breach, misinterpretation, or misapplication of American's pilot collective bargaining agreement (ECF No. 95); (2) evidence of subsequent medical reports (ECF No. 96); (3) evidence of Plaintiff's alleged emotional damages or of American's financial resources (ECF No. 97): and (4) undisclosed opinion testimony and inadmissible hearsay by Dr. Caddy (ECF No. 99).[1]

In order for Plaintiff to prevail in this action, he must prove that his military service or exercising a right protected by USERRA, was a "motivating factor" in American's decision to withhold him from duty on September 24, 2015, or to keep him withheld from duty since that time.

---

[1] American is separately submitting a reply in support of its motion in limine regarding evidence of or references to confidential settlement negotiations. (ECF No. 98.)

None of the evidence that Plaintiff defends in response to American's motions makes it more likely that he would prevail in satisfying this burden. Thus, as explained in American's motions and below, this Court should grant the motions.

## ARGUMENT

### I. MOTION TO EXCLUDE EVIDENCE OR REFERENCES TO ANY ALLEGED BREACH, MISINTERPRETATION, OR MISAPPLICATION OF AMERICAN'S PILOT COLLECTIVE BARGAINING AGREEMENT

"[A]s a jurisdictional matter, the [Railway Labor Act (the "RLA")] prohibits federal courts from reaching the merits of minor disputes." *Int'l Bhd. of Teamsters v. Amerijet Int'l*, 604 F. App'x 841, 848 (11th Cir. 2015) (citing *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 304 (1989)). Thus, this Court should prohibit Plaintiff from introducing any evidence or making any reference to any alleged breach, misinterpretation, or misapplication by American of the collective bargaining agreement between the APA and American (the "CBA") at trial. (ECF No. 95.)

In his opposition, and directly contrary to the RLA's mandate, Plaintiff expressly confirms that he seeks to have this Court (and the jury) impermissibly interpret the CBA. Plaintiff attaches to his opposition Section 20 of the CBA (which governs the fitness for duty examination process for American's pilots) and Section 21 (which governs "Discipline, Grievances, Hearings, and Appeals"). (ECF Nos. 116-1, 116-2.) Plaintiff argues that the jury should be permitted to "weigh whether American's behavior was . . . discordant with the plain language of the JCBA," and he

asserts that the CBA provisions provide "evidence of how American says it is going to act towards its pilots," compared to "the way it actually did behave towards [Plaintiff.]")  (ECF 116 at 13.)[2]

Any such testimony is on its face impermissible because pursuant to the RLA, the applicable board of adjustment (here, the American/APA System Board) has exclusive jurisdiction to adjudicate whether "American's behavior was . . . discordant with the plain language of the CBA." (*Id.* at 13.)  Indeed, such a claim presents a paradigmatic "minor dispute" under the RLA because it concerns "the meaning of an existing collective bargaining agreement in a particular fact situation." *Stewart v. Spirit Airlines, Inc.*, 503 F. App'x 814, 817–18 (11th Cir. 2013) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994)); *see also Eastern Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 1546, 1555 (11th Cir. 1988) (minor disputes "involve inquiry into 'the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case.'"); *Empresa Ecuatoriana De Aviacion, S.A. v. Dist. Lodge No. 100*, 690 F.2d 838, 844 (11th Cir. 1982) ("A minor dispute must be submitted to compulsory arbitration by an adjustment board . . . which has exclusive jurisdiction to decide minor disputes."); *Geddes v. Am. Airlines, Inc.*, 321 F. 3d 1349, 1356 (11th Cir. 2003) ("minor disputes under the RLA must be sent to arbitration and may not be heard by a court"); *Stewart*, 503 F. App'x at 817–20 ("minor disputes under the RLA . . . are subject to mandatory arbitration by the adjustments boards . . . [and are] not within the jurisdiction of the district court.")

Plaintiff's grievance asserting that American breached Section 20 of the CBA by withholding him from duty is currently pending before the American/APA System Board.  (*See*

---

[2] The "JCBA" (Joint Collective Bargaining Agreement) refers to the American/APA CBA.

ECF No. 116 at 5.)  Plaintiff's assertion that American in any manner breached the CBA is without merit, and American intends to present evidence to the System Board rebutting Plaintiff's assertion.  The adjudication of such evidence is fundamental to the role of system boards of adjustment under the RLA.  *Eastern Air*, 861 F.2d at 1555.  The Eleventh Circuit described the mandatory and exclusive role of the system board as follows:

> Evidence before the [System Board of Adjustment] will include the contract language and the parties' testimony.  The SBA will be charged with determining the contours of the disputed provisions; it may be that the parties were actually closer to a mutual understanding of certain terms than the terse language suggests.  Fortunately, the construction of vague and ambiguous contract terms is routine fare for labor lawyers and arbitrators. *See Brotherhood of Locomotive Firemen and Enginemen v. Southern Pacific Co.*, 447 F.2d 1127, 1136 (5th Cir. 1971). Additionally, we note that a board of adjustment has a special competence not shared by a federal court that will enable the board wisely to construe language that may appear too vague to even the most intrepid of generalist judges.

*Id.*

Here, any evidence Plaintiff presents in support of its claim that American's behavior was "discordant with the CBA" would plainly place the jury in the adjudicatory role that the RLA reserves to the American/APA System Board.  *See Gaskins v. CSX Transp., Inc.*, No. 1:04-cv-2952, 2006 WL 6864633, at *8 (N.D. Ga. Sept. 5, 2006) ("Introducing evidence about the disciplinary procedures, submits Defendant, would permit a jury to review the specifics of the CBA and such review is specifically prohibited by the [RLA] because the propriety of a disciplinary action under the CBA rests exclusively with the RLA processes . . . . [T]he Court … agrees with Defendant that such evidence is preempted by the RLA."); *Gilmore v. Union Pac. R.R., Co.*, 857 F. Supp. 2d 985, 990–91 (E.D. Cal. 2012) ("[Defendant] argues that plaintiffs cannot, consistent with the [RLA] preemption cases, attack the fairness of the hearing process. . . .

4

To the extent plaintiffs seek to present evidence of [Defendant's] failure to make the sort of investigation they deem proper . . . its presentation is preempted.")[3]

This adjudicatory role for the jury would directly contravene the RLA. *See Geddes*, 321 F. 3d at 1354 ("This comprehensive framework establishes a system of adjustment boards with exclusive and mandatory jurisdiction to handle minor disputes . . . thus keeping them out of courts altogether.") (citing *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) ("Congress considered it essential to keep these so-called 'minor disputes' within the Adjustment Board and out of the courts.")); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir. 1996) ("Congress intended that these 'minor disputes' be resolved through the grievance procedures of the RLA rather than in federal court."). Accordingly, for these reasons, this Court lacks jurisdiction to entertain evidence asserting that American breached the CBA in withholding Plaintiff from duty, either with respect to the fitness for duty procedures governed by Section 20 or otherwise.

---

[3] "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement" rather than 'frivolous' or 'obviously insubstantial.'" *Bhd. of Maint. of Way Emps. v. CSX*, 143 F. App'x 155, 160 (11th Cir. 2005) (citing *Conrail*, 491 U.S. at 307). Here, American's decision to withhold Plaintiff once it received the employee complaint against Plaintiff and to keep him withheld following an independent neuropsychologist's determination that Plaintiff was "NOT FIT FOR DUTY" is plainly "arguably justified" by the CBA, including Sections 20 and 21. Indeed, the "low" bar for the arguably justified standard is satisfied here merely by American's inherent management right to protect passenger safety. *See Sw. Airlines, Inc. v. TWU Local 555*, 2013 A.A.A.D. 91, at 35 (Oct. 5, 2012) (Hill, Arb.) ("Clearly, any time management has a *bona fide* question whether an employee is medically or psychologically fit to work, a company may engage in its inherent management right to take reasonable steps to insure that its employees are medically fit to do their job. To hold otherwise would require suspending all common sense, especially in a safety-driven industry like the airlines.") Section 20 of the CBA further spells out American's rights in this regard by, *inter alia*, providing that "Physical examination procedures shall be determined by the Company." (ECF No. 116-1.)

Contrary to Plaintiff's assertion, American does not argue that Plaintiff's "claim to discrimination and retaliation under USERRA should be referred to a board of adjustment." (ECF No. 116 at 14.) American noted in its initial motion (ECF No. 95) that the RLA does not preempt Plaintiff's present claims to the extent Plaintiff seeks to "enforce rights that are independent of the collective bargaining agreement, including statutory rights." *See Stewart*, 503 F. App'x at 818. But, if Plaintiff wishes to present evidence that American breached, misinterpreted, or misapplied the CBA, this action would have to be stayed to permit the parties' to obtain a decision from the American/APA System Board resolving this dispute regarding the CBA. The rationale for this rule is explained by analogy to the doctrine of primary jurisdiction: when "a potentially dispositive issue arises that is within the exclusive jurisdiction of an administrative agency, the suit must be stayed while the parties resort to the agency for that resolution," and "only the arbitral boards convened under the aegis of the [RLA] have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry." *Tice v. Am. Airlines*, 288 F.3d 313, at 317–18 (7th Cir. 2002).

Allowing Plaintiff to present evidence regarding an alleged CBA breach to the jury before the American/APA System Board rules on Plaintiff's pending grievance would subject American to undue prejudice because it could not present evidence of a system board ruling to the jury at trial. As a practical matter, if this Court permits Plaintiff to present evidence that American breached the CBA before the American/APA System Board proceeding occurs, it risks having the system board later set forth a definitive holding to the contrary. *See Geddes,* 321 F. 3d at 1356 ("RLA system boards of adjustment provide the substantive, uniform interpretations of these labor agreements.").

While Plaintiff suggests that USERRA "trumps . . . any contractual provision that may exist" between American and APA, the only supposed authority he cites in support of this proposition is an excerpt from the statute addressing preemption of a contract. (ECF No. 116 at 14.) The "mandatory and exclusive" jurisdiction of system boards, however, is not a mere matter of private contract. Instead, as the Eleventh Circuit has recognized, "the compulsory character of arbitration under the RLA *stems not from any contractual undertaking between the parties but from the Act itself.*" *Eastern*, 861 F.2d at 1555 (quoting *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 323 (1972)) (emphasis added). Thus, regardless of his pending USERRA action, the American/APA System Board retains exclusive jurisdiction to interpret or apply the terms of the CBA. American's motion should thus be granted.

## II.    MOTION TO EXCLUDE EVIDENCE OF SUBSEQUENT MEDICAL REPORTS

Plaintiff should also be prohibited from offering any evidence or making any reference regarding medical reports obtained by Plaintiff after March 24, 2016. (ECF No. 96.)

Plaintiff intends to call four hand-selected doctors—each of whom apparently agreed to "play ball" with Plaintiff—to testify about medical reports obtained *after* March 24, 2016, when American determined on the basis of the independent neuropsychologist's report that Plaintiff was "NOT FIT FOR DUTY" as a pilot.[4] This evidence will spawn a trial-within-a-trial from medical

---

[4] After the close of discovery, Plaintiff disclosed an email between Plaintiff and his testifying expert (Dr. Caddy) that confirm Plaintiff was "doctor shopping." In that email, Plaintiff, in referring to a doctor who reaches a conclusion that does not support Plaintiff and his testifying expert's position (but actually agrees with the independent neuropsychologist who found Plaintiff not fit for duty), states: "*If Dr. Bercaw will play ball with you, fine. . . . If he won't play ball we will cut bait and go fish elsewhere.*" (ECF No. 79 at 2) (emphasis added). Preventing doctor shopping is one of the primary reasons why, under Section 20 of the CBA, the same doctor or a comparable doctor approved by American must reevaluate the pilot in order for a pilot to return to work after being found unfit for duty.

officials despite the fact that it does not help the jury determine whether American was motivated by Plaintiff's military service in withholding him from duty in September 24, 2015 and keeping him withheld until he is cleared for duty pursuant to the terms of the CBA.

Plaintiff does not dispute that the testimony of these hired experts regarding their medical reports will prolong the trial. Plaintiff also concedes that the subsequent medical reports do not assist the jury in resolving "the only non-damages issue on which [Plaintiff] has the burden of proof"—that is the claim that Plaintiff's military service or USERRA claim was a "motivating factor" in American withholding him from duty or keeping him withheld. (ECF No. 117 at 12–13.) According to Plaintiff, the subsequent medical reports are *only* relevant to the question of "whether American would have behaved the same way toward [Plaintiff]" in the absence of his alleged protected activities under USERRA. (*Id.* at 13.) But, the burden only shifts to American *if* Plaintiff satisfies his initial burden of proof. Plaintiff has presented no evidence that establishes that Plaintiff's military service or subsequent USERRA claim was a "motivating factor" for American's actions. Allowing a trial-within-a-trial about medical reports that are—even in Plaintiff's most optimistic scenario—relevant only if the burden shifts back to American would needlessly prolong the trial and confuse the jury.

Moreover, even if Plaintiff were to satisfy his initial burden and the burden did shift to American, the subsequent medical reports would not provide relevant evidence. Once American determined on March 24, 2016 that Plaintiff was "NOT FIT FOR DUTY" on the basis of the independent neuropsychologist's report, Plaintiff could return to duty only if he returned to the same independent neuropsychologist (or a comparable examiner approved by American to re-evaluate Plaintiff) in accordance with Section 20 of the CBA—which he has refused to do. (*See, e.g.*, Beach Dep., Ex. 44, ECF No. 96-1.) The only possible way that subsequent doctors' opinions

8

could be relevant would be, if under Section 20 of the CBA, American did accept opinions of doctors who a pilot unilaterally selects—something that it indisputably does not do and simply would not do, in light of its obligation to ensure the safety of its passengers. (*See* ECF No. 59 at 9, 13.) As detailed in American's Motion, if Plaintiff has a dispute regarding the interpretation or application of Section 20 of the CBA, this matter would have to be stayed to permit the parties' time to obtain a decision from the American/APA System Boad. (ECF No. 96 at 7, n.2) [5]

### III. MOTION TO EXCLUDE EVIDENCE OF PLAINTIFF'S ALLEGED EMOTIONAL DAMAGES OR OF AMERICAN'S FINANCIAL RESOURCES

Plaintiff should be prohibited from offering evidence or making reference to any purported "psychological injury" or other forms of emotional or mental pain and suffering and any reference to American's financial resources, profits, or revenues at trial or during voir dire. (ECF No. 97.)

Plaintiff has represented to the Court that he is not seeking damages for emotional suffering and is not seeking punitive damages. Thus, he should be precluded from offering evidence of emotional pain or suffering or references to American's financial resources. This motion has not

---

[5] American does not "suggest that [Plaintiff's] claim to discrimination and retaliation under USERRA should be referred to a board of adjustment pursuant to the [RLA]." (ECF No. 117 at 16.) Rather, as American has made clear, its position is that if Plaintiff wishes to present evidence that American breached, misinterpreted, or misapplied the CBA, this action would have to be stayed to permit the parties' to obtain a decision from the American/APA System Board resolving this dispute. (ECF No. 95.) For the reasons set forth above, Plaintiff's suggestion that USERRA simply overrides the RLA is misguided and without merit. Plaintiff's out-of-circuit district court case is not to the contrary—at most, it suggests that there is no exhaustion requirement before pursuing purely *statutory remedies* under USERRA. *Cf. Duffer v. United Continental Holdings, Inc.*, 173 F. Supp. 3d 689, 712 (N.D. Ill. 2016). That issue is not presented to this Court—instead, American argues only that the American/APA System Board has exclusive and mandatory jurisdiction under the RLA to determine whether American's actions were "discordant with the CBA." That proposition is supported by overwhelming authority in the Eleventh Circuit, as set forth above.

been mooted by Plaintiff's response because Plaintiff agrees only that he will not seek improper damages. He never agrees to refrain from offering improper evidence. The Court should thus grant the motion.

### IV. MOTION TO EXCLUDE UNDISCLOSED OPINION TESTIMONY AND INADMISSIBLE HEARSAY BY DR. CADDY

Plaintiff should be prohibited from offering any previously undisclosed opinion testimony of Dr. Caddy, any testimony beyond Dr. Caddy's purported expertise, or any hearsay from witnesses American will not have an opportunity to cross-examine during this trial. (ECF No. 99.)

In his opposition, Plaintiff suggests that his counsel will attempt to control Dr. Caddy's testimony through questioning. (ECF No. 114 at 1). But putting "the fox in charge of the hen house" does nothing to address the issues raised by American's motion, particularly when considered in light of Dr. Caddy's behavior in this litigation. For example, Dr. Caddy has admitted that he routinely deletes materials he has reviewed if he decides not to rely on them—a blatant violation of the requirements under Rule 26. (ECF Nos. 91, 94.) He has also been involved in Plaintiff's attempts to doctor-shop to find a doctor who will "play ball" and provide favorable reports for Plaintiff. Thus, absent an order of this Court, American reasonably anticipates that Dr. Caddy will attempt to offer evidence that even Plaintiff concedes is inadmissible.

### CONCLUSION

For these reasons, American respectfully requests that this Court grant American's motions in limine (ECF Nos. 95, 96, 97, and 99).

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq. (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of August, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
    MICHAEL A. HOLT

**SERVICE LIST**

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*