UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

### Plaintiff's Reply re:  Motion in Limine re: Reports of Knippa, Bercaw/Fonseca

Plaintiff, Rodney Scott Patterson, replies as follows to that part of American Airlines, Inc.'s Omnibus Opposition to Plaintiff's Motions in Limine (DE 113) that addresses his motion [DE 102], pursuant to Federal Rule of Evidence 402, 403, 702 and 802, to exclude from evidence the written reports and correspondence of John Knippa, Ph.D., Edwin Bercaw, Ph.D. and Francy Natalie Fonseca, Psy.D.

**Why Dr. John Knippa's reports should not be admitted**

As to Dr. Knippa's report, American's initial argument is that it is not being offered for the truth of the matter that it asserts, i.e., that Lt. Col. Patterson was in March 2016 "NOT FIT FOR DUTY" as a first officer for

American, but only to show that American had a legitimate basis for grounding him—as being "NOT FIT FOR DUTY."

American relies on Moore v. Sears, Roebuck and Co., 683 F.2d 1321, 1322 (11th Cir. 1982), which affirmed a trial court that had admitted in the trial of an age-discrimination case a series of "memos, most of which are designated 'for the file,' contain[ing] observations pertaining to Moore's performance, summaries of reports on his performance made by other Sears employees, and chronological accounts of events such as personnel investigations and meetings," id. at 1322, that were "not tendered to prove the particulars of their contents, but to help establish that Sears was motivated, in good faith, to discharge Moore for reasons other than age." Id. at 1322-23.

Miller and its progeny, however, are inapposite.

For rather than being a routine chronicling of supervisors' observations of an employee, which every-day business records are recognized as having an inherent trustworthiness, Dr. Knippa's report was a paid-for denigration of Lt. Col. Patterson mental health status:

***One***, Jeral Ahtone, M.D., American's Corporate Medical Director, pre-selected Dr. Knippa for his "interest in patients with behavior and/or personality disorders....," Ahtone Deposition, at 29:2-11, which signaled to

Dr. Knippa that American was sending him someone whom American deemed to suffer "behavior and/or personality disorders."[1]

*Two*, Michelle Montgomery, an American Labor Relations manager, then primed the practitioner with his "interest in patients with behavior and/or personality disorders …." by sending him a "Fitness for Duty Medical Examination Request—Section 20," that pre-flavored any testing and clinical interviewing of Lt. Col. Patterson by letting Dr. Knippa know that "[t]he request is based upon this office's concerns about FO Patterson's judgment and, specifically, his mental and/or emotional stability," adding that "[t]his office has received multiple reports of atypical interactions with coworkers and reports that suggest a pattern of false/self-aggrandizing statements." Montgomery Deposition, at 60:1-16, and Exhibit 49.[2]

*Three*, the practitioner with his "interest in patients with behavior and/or personality disorders …." then issued a "NOT FIT FOR DUTY" opinion, notwithstanding what Dr. Ahtone conceded was the absence of any objective neuropsychological and psychological test results evidencing serious psychopathology, neuropsychological deficit or personality disorder.  Ahtone Deposition, at 52:11-22, 54:13-55:1 and 57:7-58:1.

---

[1]The cover page and relevant testimonial pages of the Deposition of Jeral Ahtone, M.D., are appended as Attachment 1.

[2]The cover page and relevant testimonial pages of the Deposition of Michelle Montgomery are appended as Attachment 2.  The request, Exhibit 49 to that deposition, is appended as Attachment 3.

Dr. Ahtone's characterization of Dr. Knippa's report as merely "indicat[ing] that [Dr. Knippa did]n't have a complete answer at [that] time," Ahtone Deposition, at 54:15-55:1, robs the report of any relevance under Rule 401, which makes it inadmissible under Rule 402, and strips from it the reasonable degree of psychological certainty that is required for testimony under Rule 702.

The manner in which Dr. Knippa was recruited, the way in which Ms. Montgomery poisoned the process by letting Dr. Knippa know prior to any clinical interview or testing what American management and co-workers allegedly thought about Lt. Col. Patterson's mental health and the inconclusiveness of the report also deprive it of the trustworthiness required for it to be admissible under Rule 806(3).  Further, because of the sequence of, **First**, the concern over USERRA implications expressed in the October 30, 2015 e-mail string about the Section 21 investigation of Lt. Col. Patterson, see James Bonds Deposition Exhibit 10;[3] **Second**, Ms. Montgomery's expression of optimism that Section 20 might be an option when she realized in November that "we really don't have much of a case" against Lt. Col. Patterson concerning its Section 21 investigation into allegations made by Capt. Glenn Whitehouse,[4] and, **Third**, her intrusion into

---

[3]Exhibit 10 to the Bonds Deposition is appended as Attachment 4.

[4]The 6:28 p.m. November 5-1:41 p.m. November 6 e-mail string,
(continued...)

Dr. Knippa and Lt. Col. Patterson's relationship by sending the Fitness for Duty Medical Examination Request—Section 20, one could reasonably infer that Dr. Knippa's fitness-for-duty report was done in anticipation of litigation, which would also make it inadmissible as a business record.  See, e.g., Noble v. Alabama Dept. of Envtl. Management, 872 F.2d 361, 366 (11th Cir. 1989) (trial court erred in admitting letter when foundation "testimony was not adequate to establish that the letter was compiled as a matter of regular practice, as opposed to one prepared in anticipation of litigation").

While the Moore court affirmed the admission of routine business records as a means of "introduc[ing] more specific evidence of Sears' assessment of Moore's performance in order to strengthen the credibility of those who testified that Moore had been terminated for bona fide reasons," 683 F.2d at 1323, those records carried with them an indicia of trustworthiness that Dr. Knippa's report does not have.

If American wants the jury to hear from Dr. Knippa (assuming that he survives the motion that is currently pending, DE 58, to preclude or limit his testimony because of his failure to file a Rule 26 expert report), the jury needs to do so in person so that Dr. Knippa can be cross examined and the

---

[4](…continued)
amongst then-Capt. Brian Beach, Capt. Mark Cronin, and Ms. Montgomery , Bates Nos. AA-Patterson—0000638-639, is appended as Attachment 5.

jurors can gauge his credibility.  His written records, written in the dense terms common to discussions of standardized psychological testing, would be not only cumulative to his testimony, but also confusing to lay jurors, violating two prongs of Rule 403.

**Why the report and correspondence of Edwin Bercaw, Ph.D., and Francy Nathaly Fonseca, Psy.D., should not be admitted**

The problem with "Dr. Bercaw's report [as] impeachment evidence that directly contradicts Dr. Caddy's opinions," [DE 113, at 15] is simply that it is not Dr. Bercaw's report.

Glenn R. Caddy, Ph.D., plaintiff's testifying expert, testified at his deposition that he did not in any way use any of the information sent to him by Dr. Bercaw because all of that information originated from psychological testing done not by Dr. Bercaw, who is an authorized CogScreen Provider and is HIMS[5] trained, but rather by Francy Nathaly Fonseca, Psy.D., a resident in Dr. Bercaw's practice who only became licensed January 11, 2016[6]—70 days prior to administering the tests.

Lt. Col. Patterson wrote Caddy an e-mail May 3, 2016, in which he stated, in pertinent part, that

---

[5]Human Intervention Motivation Study, a substance abused program designed for airline pilots.  See http://www.himsprogram.com/Home/About, last visited Monday, July 15, 2018,

[6]A PDF of Dr. Fonseca's licensure information, obtained from the Florida Department of Health's web site, is appended as Attachment 2.  It shows her initially being licensed as a psychologist January 11, 2016.

> [I] want to be clear with Dr. Bercaw moving forward, his testing was not what I paid for.  I spoke with Dr. Kantor and was referred to Dr. Bercaw.  I showed up in the morning and the receptionist promptly asked me for the funds to undergo testing.  Dr. Bercaw was not available and I asked to speak to him.
>
> When I went into Dr. Bercaw's office to meet him I was introduced to Dr. Fonseca.  He asked me if I minded her observing the testing.  She also showed up in his office with a copy of Dr. Gary Kay's book Aviation Psychology. I did not realize until after leaving that his tests would not be accepted by the FAA.  She administered the tests and although she is a post doctoral graduate student, I didn't pay for that....

DE 79, at 4.  Dr. Caddy telephoned Dr. Bercaw and confirmed what Lt. Col. Patterson had informed him.  See Deposition of Glenn R. Caddy, Ph.D., DE 57-27, at 35:5-36:5, 38:19-39:19.

While Dr. Bercaw's not actually having done the tests can be explored further subsequent to his deposition later this week, the most important thing for the reply memorandum to point out is that American is quoting the report as "describ[ing] Plaintiff as having 'mildly-to-moderately impaired deductive reasoning in comparison to aviators' that raises concerns Dr. Bercaw characterized as 'potentially critical to flight performance, particularly in non-routine situations.'" DE 113, at 15, when what the report actually stated, without reaching any conclusion was:

> With respect to his airman medical certification, there are several positive cognitive and psychological attributes identified by the testing, as indicated above. His overall performance on the CogScreen was within normal limits, which is favorable; however, his scores evidenced mildly-to-moderately impaired deductive reasoning in comparison to aviators.  The deductive reasoning finding was later replicated with the WCST, a similar task.  These findings raise concern about how

adaptable or flexible he is to feedback about his performance.  This quality is potentially critical to flight performance, particularly in non-routine situations.  Therefore, further review of these data by an FAA neuropsychologist is recommended to determine the aeromedical significance to piloting skills.  A comparison of these results with his previous fitness-for-duty neuropsychological evaluation may also be helpful, as this was not available to us.

DE 87-1, at 7.  However, Gary G. Kay, Ph.D., the author of the CogScreen

Aeromedical Edition, whose report was furnished to defendant both as a Rule

26 disclosure and later as an attachment to Lt. Col. Patterson's summary

judgment response, see DE 61-20, at 11-17, summarized his June 29, 2016

examination of Lt. Col. Patterson as follows:

> Based upon my review of records, including evaluations by Dr. Caddy and Dr. Knippa, along with results from testing conducted on 6/29/16, and a clinical interview, Mr. Lt. Col. Patterson appears to be psychologically and neuropsychologically fit-for-duty as an American Airlines pilot.  There is no evidence of aeromedically significant neurocognitive deficits.  Follow-up testing with CogScreenAE and measures of attention (including vigilance) reveal normal functioning. A mild weakness was seen on one (isolated) measure of vigilance. Performance was normal on all other measures of sustained attention. I agree with Dr. Caddy that poor performance on vigilance testing when evaluated by Dr. Knippa was likely due to jet-lag related fatigue. ***When previously evaluated by Dr. Knippa, Mr. Lt. Col. Patterson had also performed poorly on a measure of deductive reasoning under time pressure.  On follow-up testing he performed well on this measure.***

DE 61-20, at 17 (emphasis supplied).

American's response, meanwhile, fails to address any of the

evidentiary concerns raised in Lt. Col. Patterson's motion:

*One*, the Bercaw/Fonseca report and correspondence, since they only raise questions rather than provide any conclusions, do not tend to make any material fact more or less probable, as required by Rules 401 and 402;

*Two*, because the report and correspondence would come to the jury on the stationary of "doctors," regardless of the fact that they really say nothing, there is a danger that the written reports would confuse the issues or mislead the jury, as proscribed by Rule 403;

*Three*, since Drs. Bercaw and Fonseca could testify to their findings under oath and subject to cross-examination (assuming the Court finds that the experts otherwise satisfy Rule 702), the Bercaw/Fonseca report would be cumulative, as also proscribed by Rule 403;

*Four*, since the Bercaw/Fonseca opinions are not clear, the reports are unlikely to "help the trier of fact to understand the evidence or to determine a fact in issue," as required by Rule 702.

Both sets of documents should be kept out of evidence.  If any evidence is allowed from Drs. Knippa, Bercaw or Fonseca, it should be only through live testimony.

Respectfully Submitted,

/s/    William R. Amlong
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

NOEL C. PACE
noel.c.pace.esq@gmail.com
*Admitted Pro Hac Vice*
206 NW 91st Street
El Portal, FL
(305) 710-3713

**Attorneys for Plaintiff,
Rodney Scott Patterson**

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed using the ECF function of United States District Court for the Southern District of Florida and thereby has been distributed to all of the parties and counsel of record in this matter.

/s/    William R. Amlong
WILLIAM R. AMLONG

K:\CLIENT DOCUMENTS\Patterson\180814 __Replies re Motion in Limine\180814 DRAFT Plaintiff's Reply re  MIL re Reports of Knippa - Bercaw - Fowseca\180814 DRAFT Plaintiff's Reply re  MIL re expert reports (Patterson).wpd