1            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
2
              17-60533-CIV-MARTINEZ/OTAZO-REYES
3

4

RODNEY SCOTT PATTERSON,          )
5                                )
                 PLAINTIFF,      )
6                                )
          VS.                    )
7                                )
AMERICAN AIRLINES, A DELAWARE    )
8  CORPORATION,                  )
                                 )
9                DEFENDANT.      )
   _____)
10
                (TRANSCRIPT BY DIGITAL RECORDING)
11

12         TRANSCRIPT OF EMERGENCY MOTION HAD BEFORE THE

13  HONORABLE ALICIA M. OTAZO-REYES, IN MIAMI, MIAMI-DADE COUNTY,

14  FLORIDA, ON JULY 31, 2018, IN THE ABOVE-STYLED MATTER.

15

16
    APPEARANCES:
17
    FOR THE PLAINTIFF:  WILLIAM R. AMLONG, ESQ.
18                      AMLONG & AMLONG
                        500 NE 4TH STREET, 2ND FLOOR
19                      FORT LAUDERDALE, FL 33301 - 954 462-1983

20                      NOEL C. PACE, ESQ.
                        206 NW 91ST STREET
21                      EL PORTAL, FL
                        305 710-3713
22

23            CARL SCHANZLEH, RPR - CM
              CERTIFIED COURT REPORTER
24              9960 SW 4TH STREET
              PLANTATION, FLORIDA 33324
25                954 424-6723

```
 1  APPEARANCES CONTINUED:

 2  FOR THE DEFENDANT:  MICHAEL A. HOLT, ESQ.
                       SHOOK, HARDY & BACON, LLP
 3                     201 SOUTH BISCAYNE BOULEVARD, SUITE 3200
                       MIAMI, FL 33131 - 305 358-5171
 4

 5

 6                          TABLE OF CONTENTS

 7  WITNESSES:                     DIRECT  CROSS REDIRECT RECROSS

 8  CAPTAIN GUY DOLTON  .............. 9      23
    SHELLHOUSE
 9

10                          INDEX TO EXHIBITS

11  EXHIBITS                    MARKED FOR        RECEIVED
                                IDENTIFICATION   IN EVIDENCE
12
    DESCRIPTION                  PAGE     LINE    PAGE    LINE
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1 | (MIAMI, MIAMI-DADE COUNTY, FLORIDA;  JULY 31, 2018, IN OPEN
2 | COURT.)
3 |         THE COURT:  GOOD MORNING, EVERYONE.
4 |         PLEASE BE SEATED.
5 |         THE CLERK:  CASE NUMBER 17-60533-CIVIL-MARTINEZ,
6 | RODNEY SCOTT PATTERSON VERSUS AMERICAN AIRLINES.
7 |         COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.
8 |         MR. AMLONG:  WILLIAM AMLONG AND NOEL PACE FOR THE
9 | PLAINTIFF AND MR. PATTERSON WHO IS HERE WITH US.
10 |         MR. HOLT:  GOOD MORNING, YOUR HONOR.  MICHAEL HOLT ON
11 | BEHALF OF AMERICAN AIRLINES.
12 |         THE COURT:  GOOD MORNING.  THANK YOU VERY MUCH.
13 |         ALL RIGHT.  I SET THIS MATTER WHEN IT WAS REFERRED ON
14 | PLAINTIFF'S EMERGENCY MOTION PURSUANT TO 18, USC, 4311(B)(3)
15 | AND THE COURT'S INHERENT POWERS TO RESTRAIN DEFENDANT, AMERICAN
16 | AIRLINES, FROM INTIMIDATING A PLAINTIFF'S WITNESS OR
17 | RETALIATING AGAINST AN EMPLOYEE WHO HAS ASSISTED PLAINTIFF IN
18 | PREPARING FOR TRIAL.  THAT'S DOCKET ENTRY 105.
19 |         I RECEIVED THIS MORNING AMERICAN AIRLINES OPPOSITION
20 | TO PLAINTIFF'S EMERGENCY MOTION.  THE RESPONSE FROM AMERICAN
21 | STATES THAT THEY OFFERED TO POSTPONE THE SECTION 21 HEARING
22 | WITH REGARD TO CAPTAIN SHELLHOUSE UNTIL AFTER PATTERSON'S TRIAL
23 | PROVIDED THAT CAPTAIN SHELLHOUSE WOULD COMMIT THAT HE WOULD NOT
24 | USE AMERICAN'S CONFIDENTIAL INFORMATION FOR ANY IMPROPER
25 | PURPOSE DURING SUCH TIME.

1        IT APPEARS FROM SOME E-MAILS THAT WERE ATTACHED TO

2  SOME SUBMISSIONS OF -- HERE WE GO -- THAT PLAINTIFF SAID

3  THANKS, BUT NO THANKS.  THAT'S ME EDITORIALIZING.  AND THE

4  BASIS IS THAT THE SECTION 21 HEARING NOTICE RETAINS ITS

5  (INAUDIBLE) BY HANGING OVER CAPTAIN SHELLHOUSE'S HEAD UNTIL

6  AFTER THE TRIAL.

7        AND THEN IT SAYS, THE EMERGENCY REMAINS WITH TRIAL

8  LOOMING ON AUGUST 2OTH.  AS WE ALL KNOW THE TRIAL HAS NOW BEEN

9  INDEFINITELY POSTPONED BY THE COURT PENDING RESOLUTION OF THE

10  SUMMARY JUDGMENT MOTIONS.  THAT'S DOCKET ENTRY 108.

11        SO I'VE REVIEWED ALL THE PAPERS.  I DON'T KNOW,

12  MR. AMLONG, HONESTLY WHAT THE BASIS OF YOUR MOTION IS IN TERMS

13  OF REQUIRING AMERICAN NOT TO COMPLY WITH ITS OWN PROCEDURES OF

14  ENFORCING THE CONFIDENTIALITY OF CERTAIN INFORMATION.  I DON'T

15  KNOW WHAT INHERENT POWER THE COURT HAS TO DO THAT.

16        MR. AMLONG:  YOUR HONOR, THE COURT HAS THE INHERENT

17  POWER TO KEEP A PARTY FROM INTIMIDATING THE WITNESSES OF THE

18  OTHER PEOPLE.  I HAVE CAPTAIN SHELLHOUSE HERE.  WE'VE FLOWN HIM

19  BACK FROM DALLAS LAST NIGHT TO TESTIFY.

20        IF I MAY PROFFER HIS TESTIMONY OR YOU CAN HEAR IT.

21        THE COURT:  WELL, LET ME ASK YOU THIS.

22        HOW IS HOLDING SOMETHING THAT IS CALLED FOR UNDER

23  PROCEDURAL RULES OF THE COMPANY AND THEIR COLLECTIVE BARGAINING

24  AGREEMENT INTIMIDATION?  HOW IS -- YOU KNOW, I KNOW

25  INTIMIDATION OF WITNESSES IS, YOU KNOW, IF YOU TESTIFY I'M

 1 GOING TO, YOU KNOW, HURT YOU, YOUR FAMILY, THINGS LIKE THAT.

 2 OBVIOUSLY THAT IS CLEAR INTIMIDATION, WITNESS TAMPERING, THOSE

 3 KIND OF THINGS.  BUT IT APPEARS THAT AMERICAN IS SIMPLY

 4 FOLLOWING PROTOCOL AND IT'S EVEN OFFERING TO POSTPONE THIS

 5 MATTER UNTIL AFTER THE HEARING.

 6         CAPTAIN SHELLHOUSE OBVIOUSLY WENT INTO THIS

 7 CONFIDENTIAL DATABASE.  I CAN'T AT THIS POINT IN TIME DECIDE

 8 WHETHER HE DID IT PROPERLY, DIDN'T DO IT PROPERLY, THAT'S WHAT

 9 THE HEARING IS ALL ABOUT.  BUT I JUST -- I DON'T SEE AMERICAN

10 FOLLOWING THROUGH ON PROCEDURE BEING THE SAME AS INTIMIDATION.

11         MR. AMLONG:  CAPTAIN SHELLHOUSE --

12         THE COURT:  IF YOU CAN SHOW ME THAT THEN WE'LL

13 PROCEED.  OTHERWISE I'LL DENY YOUR MOTION OUTRIGHT.

14         MR. AMLONG:  CAPTAIN SHELLHOUSE WHO HAS FOR YEARS BEEN

15 THE CHAIR OF THE MIAMI CONTRACT AND COMPLIANCE COMMITTEE FOR

16 THE ALLIED PILOTS ASSOCIATION IS GOING TO TESTIFY THAT AMERICAN

17 USES THE SECTION 21 HEARINGS TO MOVE FROM INQUIRY IMMEDIATELY

18 TO PUNISHMENT.  AND ONCE THEY DECIDE TO PUNISH YOU THEN IT

19 MOVES INTO ARBITRATION AND YOU'RE FIRED AND YOU'RE OUT OF WORK

20 UNTIL THE ARBITRATION IS CONCLUDED.

21         MR. PATTERSON WAS (UNINTELLIGIBLE) TO SECTION 21

22 HEARING WAS FOUND NOT GUILTY AT THE HEARING BUT HE HASN'T FLOWN

23 SINCE THEN.  CAPTAIN SHELLHOUSE IS ALSO GOING TO -- WELL, THE

24 AMERICAN LEARNED OF THIS IN MARCH AT MR. PATTERSON'S

25 DEPOSITION.

 1            THE COURT:  IS THERE A TIME LIMITATION OF WHEN THEY

 2  CAN FILE THIS NOTICE?

 3            MR. AMLONG:  WELL, THEY THOUGHT THE TRIAL WAS GOING TO

 4  START --

 5            THE COURT:  NO.  NO.  YOU DIDN'T ANSWER MY QUESTION.

 6            MR. AMLONG:  NO.

 7            THE COURT:  IS THERE A TIME --

 8            MR. AMLONG:  NO.

 9            THE COURT:  -- LIMITATION?

10            MR. AMLONG:  NO.  THERE IS NOT.

11            THE COURT:  ALL RIGHT.

12            MR. AMLONG:  BUT THEY CHOSE TO DO IT -- AND THAT'S

13  ANOTHER GOOD POINT.

14            THEY LEARN ABOUT IT IN MARCH.  THEY DIDN'T DO IT UNTIL

15  RIGHT BEFORE WHEN THEY THOUGHT THE TRIAL WAS GOING TO START.

16  THEY DIDN'T HAVE TO DO IT BEFORE THE TRIAL STARTED.

17            CAPTAIN SHELLHOUSE WAS -- AS I SAY, HE WAS THE

18  CONTRACTING COMPLIANCE CHAIR OF THE UNION IN MIAMI.  HE IS --

19  HE'S NOW BEEN ELECTED TO THE NEGOTIATION COMMITTEE.  ALLOWING

20  THEM TO DRAG HIM IN FOR ONE OF THESE HEARINGS SENDS A VERY LOUD

21  MESSAGE TO THE OTHER WITNESSES, IF YOU DON'T DO WHAT AMERICAN

22  WANTS YOU TO DO WE'RE GOING TO COME AFTER YOU.

23            CAPTAIN SHELLHOUSE IS GOING TO TESTIFY THAT HE --

24  HE -- HE'S NOT GOING TO SAY, I ABSOLUTELY DID NOT DO THIS.  HE

25  DOESN'T THINK HE DID AND IF HE DID THEY DON'T NEED A HEARING.

1  THEY HAVE THE -- IF HE DID DO THIS, THEY HAVE THE EVIDENCE

2  BECAUSE --

3       THE COURT:  NONE OF THAT IS BEFORE ME.  NONE OF THAT

4  IS BEFORE ME.

5       MR. AMLONG:  WELL --

6       THE COURT:  I HAVE --

7       MR. AMLONG:  -- IT IS -- WHAT'S BEFORE HIM --

8       (BOTH TALKING AT THE SAME TIME)

9       THE COURT:  ONE MOMENT.  LET ME FINISH.

10      THIS COURT HAS NO BUSINESS INTERPOSING ITSELF INTO

11  SOMETHING THAT PERTAINS TO THE COLLECTIVE BARGAINING AGREEMENT.

12  I CANNOT MAKE ANY FINDINGS ON WHAT YOU'RE SUGGESTING.

13      MR. AMLONG:  UNDER 38, USC, SECTION 4302, USERRA, AND

14  4311(B), THE ANTI-RETALIATION PROVISIONS OF USERRA TRUMP ANY

15  CONTRACT, STATUTE, LOCAL LAW, AGREEMENT, OR POLICY.

16      CAPTAIN SHELLHOUSE IS HERE PREPARED TO TESTIFY THAT HE

17  IS FEELING INTIMIDATED BY THIS, THAT BECAUSE HE IS NOW A MEMBER

18  OF THE NEGOTIATING COMMITTEE THAT HE FEELS IT'S GOING TO

19  INTIMIDATE OTHER EMPLOYEE WITNESSES, THAT HE DOES NOT BELIEVE

20  THAT HE DID THIS.  HE WAS -- HE WAS USING THE DATABASE BECAUSE

21  HE IS A UNION OFFICIAL WHO WAS ASSIGNED TO REPRESENT THIS --

22      THE COURT:  I'M SORRY, MR. AMLONG.  YOU DON'T SEEM TO

23  GET -- TO BE GETTING THE POINT I'M MAKING.

24      I AM NOT HERE TO DECIDE WHETHER CAPTAIN SHELLHOUSE

25  DID, DID NOT ACCESS THE DATABASE, USED IT PROPERLY, IMPROPERLY.

1  NONE OF THAT IS BEFORE ME.  I AM NOT ADDRESSING ANY OF THOSE

2  ISSUES.  THOSE ISSUES ARE PROPERLY IN A BARGAINING AGREEMENT

3  RESOLUTION PROCESS.  OKAY.

4        MR. AMLONG:  SO, YOUR HONOR --

5        THE COURT:  ALL THAT -- YOU ARE ASKING ME TO UTILIZE

6  THE COURT'S INHERENT POWERS TO RESTRAIN DEFENDANT FROM DOING

7  SOMETHING.  SO STICK TO THAT.

8        MR. AMLONG:  I'M ASKING YOU TO NOT ALLOW THEM TO

9  TERMINATE MY WITNESS AND TO SEND A MESSAGE TO THE OTHER

10 WITNESSES.

11        THE COURT:  OKAY.  ALL RIGHT.  HANG ON JUST A SECOND.

12        CAPTAIN SHELLHOUSE, THAT'S YOU BACK THERE?

13        CAPTAIN SHELLHOUSE:  YES, MA'AM.

14        THE COURT:  COME ON UP, SIR.

15        CAPTAIN SHELLHOUSE:  YES, MA'AM.

16        THE COURT:  TAKE THE WITNESS STAND.

17        CAPTAIN SHELLHOUSE:  HOW DO I GET IN THERE?

18        THE COURT:  THERE IS A HIDDEN DOOR.

19        THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

20        CAPTAIN SHELLHOUSE:  YES, MA'AM.

21        (CAPTAIN SHELLHOUSE SWORN)

22        CAPTAIN SHELLHOUSE:  YES, MA'AM.  SO HELP ME GOD.

23        THE CLERK:  PLEASE TAKE A SEAT.

24        THE COURT:  ALL RIGHT.

25        YOU MAY QUESTION THE CAPTAIN STRICTLY IN SUPPORT OF

1  YOUR MOTION FOR ME TO USE THE COURT'S INHERENT POWERS TO

2  RESTRAIN DEFENDANT -- I DON'T KNOW WHAT YOU'RE COMING FROM

3  INTIMIDATING OR WHATEVER.  BUT FROM DOING WHATEVER IT IS THAT

4  YOU DON'T WANT AMERICAN TO DO GIVEN THAT AMERICAN ALREADY MADE

5  THE CONCESSION THAT THEY WILL NOT HOLD THIS SECTION 21 HEARING

6  UNTIL AFTER TRIAL.

7         GIVEN THAT CONCESSION THEN WHAT IS IT THAT YOU WANT ME

8  TO RESTRAIN AMERICAN FOR DOING?  AND STICK TO THAT ON YOUR

9  QUESTIONING OF THE CAPTAIN.

10                  CAPTAIN GUY DOLTON SHELLHOUSE,

11  BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

12                        DIRECT EXAMINATION

13  BY MR. AMLONG:

14  Q.  CAPTAIN SHELLHOUSE, WHAT IS YOUR POSITION WITH THE ALLIED

15  PILOTS ASSOCIATION?

16  A.  CURRENTLY I'M ON THE NEGOTIATING COMMITTEE TO NEGOTIATE NEW

17  CONTRACT FOR THE PILOTS OF AMERICAN AIRLINES.

18  Q.  AND UP THROUGH APRIL WHAT WAS YOUR POSITION?

19  A.  I WAS CHAIRMAN OF MIAMI CONTRACT COMPLIANCE.

20  Q.  AND AS CHAIRMAN OF MIAMI CONTRACT COMPLIANCE, WHAT HAS YOUR

21  EXPERIENCE BEEN WITH SECTION 21 HEARINGS?

22  A.  SECTION 21 HEARINGS ARE DISCIPLINARY HEARINGS.  THEY BRING

23  YOU IN AND IF THEY FIND WHAT THEY BELIEVE IS CAUSE THEY

24  NORMALLY PUT YOU OFF THE PROPERTY THROUGH OTHER MEANS.

25  Q.  WHEN YOU SAY, PUT YOU OFF THE PROPERTY.

1  A.   IT MEANS LIKE TAKE YOU OFF OF FLYING STATUS, PUTS YOU ON

2  SICK.  WHEN YOUR SICK RUNS OUT YOU'RE OUT ON THE STREET

3  BASICALLY.  A LITTLE MORE INVOLVED THAN THAT BUT THAT'S

4  BASICALLY IT.

5  Q.  WHAT ANXIETY, IF ANY, DO YOU HAVE ABOUT THE SECTION 21

6  NOTICE THAT HAS BEEN GIVEN TO YOU CONCERNING MR. PATTERSON?

7  A.   THE ANXIETY IS THAT THEY'RE COMING AFTER ME TRYING TO

8  INTIMIDATE BECAUSE I'M LISTED AS A WITNESS.  I REPRESENTED

9  LIEUTENANT COLONEL PATTERSON THROUGH THE SECTION 21.  I ADVISED

10 HIM DURING THE 20 AS FAR AS WHAT THE PROCEDURES WERE IN THE

11 CONTRACT.

12 THEN IN THE ARTICLE SEVEN CHARGES THAT HE BROUGHT UP AGAINST

13 THE CAPTAIN IN QUESTION, CAPTAIN WHITEHOUSE, I REPRESENTED HIM

14 AT THE LOCAL LEVEL.  THEN IT WAS ADVANCED TO THE APPEALS BOARD

15 LEVEL, WHICH IS A THREE MEMBER BOARD, ONE OF WHICH IS A LAWYER.

16 THEY FOR TWO DAYS INVESTIGATED AND HEARD THE EVIDENCE THAT WE

17 PRESENTED, FOUND THE CAPTAIN DID HIS ACTIONS IN MALICE, ILL

18 WILL AND WITHOUT JUST CAUSE AND THEY FINED HIM $100 WHICH HE

19 APPEALED AND I'M CURRENTLY STILL REPRESENTING LIEUTENANT

20 COLONEL PATTERSON IN THAT PROCEEDING WHICH IS ARBITRATION OF

21 THE APPEALS BOARD WHICH IS AN INTERNAL UNION FUNCTION, AND THEY

22 USE AN OUTSIDE ARBITRATOR TO ARBITRATE THE APPEAL OF THE APPEAL

23 BOARD'S DECISION.

24 Q.  IN YOUR EXPERIENCE AS THE CONTRACTING COMPLIANCE CHAIR OF

25 MIAMI, WHEN AMERICAN ENCOUNTERS A WORK RULE VIOLATION BY A

1  PILOT, HOW LONG DOES IT TYPICALLY TAKE TO BRING THE SECTION 21

2  HEARING?

3  A.  USUALLY REAL FAST.  IT SAYS IN THE CONTRACT THEY HAVE TO DO

4  IT EXPEDITIOUSLY.  THEY HAVE TO PROVIDE ALL THE DATA AND

5  EVIDENCE AND PROVIDE WHAT -- BASICALLY WHAT RULES OR PROCEDURES

6  YOU VIOLATED.

7  Q.  ASSUMING THAT AMERICAN AIRLINES HAD A LAWYER -- HAD AN

8  IN-HOUSE LAWYER AT LIEUTENANT COLONEL PATTERSON'S DEPOSITION ON

9  MARCH 6TH, WHAT WOULD BE EXPEDITIOUS FOR BRINGING YOU TO A

10 SECTION 21 HEARING?

11        MR. HOLT:  OBJECTION, YOUR HONOR.

12        THIS NOW GETS INTO THE INTERPRETATION OF THE CONTRACT

13 WHICH IS BEYOND WHAT THE COURT CAN RULE ON UNDER THE RAILWAY

14 AND LABOR ACT.

15        MR. AMLONG:  I DON'T BELIEVE IT DOES, YOUR HONOR.

16        THE COURT:  WELL, WHAT BASIS DOES HE HAVE FOR DECIDING

17 HOW SOON AMERICAN SHOULD BRING THIS?

18        I ASKED YOU IF THERE WAS A TIME LIMITATION AND YOU

19 SAID NO.

20        MR. AMLONG:  YOU KNOW, I'M NOT THE CHAIR OF THE -- OF

21 THE CONTRACTING COMPLIANCE COMMITTEE.  HE IS.  HE'S MORE

22 FAMILIAR WITH IT --

23        THE COURT:  YOU MADE THAT REPRESENTATION TO ME AS AN

24 OFFICER OF THE COURT.  I ASKED YOU --

25        MR. AMLONG:  I DON'T SEE ANY TIME LIMIT IN THE --

1           THE COURT:  WELL --

2             MR. AMLONG:  -- CONTRACT.

3           THE COURT:  -- THEN YOU AS AN ATTORNEY ARE READING THE

4    CONTRACT.  NOW YOU WANT CAPTAIN SHELLHOUSE TO INTERPRET THE

5    CONTRACT DIFFERENT FROM YOU?

6           I'M SUSTAINING THE OBJECTION.

7           MR. HOLT:  THANK YOU, YOUR HONOR.

8    BY MR. AMLONG:

9    Q.  BASED ON YOUR EXPERIENCE, WOULD YOU HAVE EXPECTED THIS

10   SECTION 21 HEARING TO ARISE SOONER THAN SIX MONTHS LATER?

11          MR. HOLT:  OBJECTION, YOUR HONOR.

12          IT CALLS FOR A HYPOTHETICAL -- IT'S A HYPOTHETICAL

13   QUESTION.  IT CALLS FOR A HYPOTHETICAL RESPONSE.  BASED ON HIS

14   EXPERIENCE HE'S NOT QUALIFIED AS AN EXPERT.

15          THE COURT:  HAVE YOU BEEN INVOLVED IN OTHER SECTION 21

16   HEARINGS, SIR?

17          THE WITNESS:  YES, MA'AM.

18          THE COURT:  BESIDES THE ONE INVOLVING CAPTAIN

19   PATTERSON?

20          THE WITNESS:  YES, MA'AM.

21          THE COURT:  WHAT HAS BEEN YOUR EXPERIENCE IN TERMS OF,

22   IF YOU KNOW, AMERICAN DISCOVERING THE PRESUMED VIOLATION AND

23   SETTING THE HEARING?

24          IF YOU KNOW BECAUSE OBVIOUSLY YOU WOULD HAVE TO KNOW

25   WHEN AMERICAN DISCOVERED IT.

```
 1          THE WITNESS:  NORMALLY IT -- ONCE THEY ADVISE THE

 2  PILOT OF THE SECTION 21 HEARING AND DISCOVER THE VIOLATION IT

 3  WAS REAL QUICK AND REAL SHORT IT WOULD BE BROUGHT UP.

 4          THE COURT:  LISTEN TO MY QUESTION.

 5          THE WITNESS:  YES, MA'AM.

 6          THE COURT:  BECAUSE THE QUESTION IS DIFFERENT.

 7          THE WITNESS:  OKAY.

 8          THE COURT:  THE QUESTION IS, BETWEEN AMERICAN LEARNING

 9  OF THE PRESUMED VIOLATION AND SETTING THE HEARING WHAT IS THE

10  TIME FRAME THAT YOU HAVE EXPERIENCED, AND THAT ASSUMES THAT YOU

11  KNOW WHEN AMERICAN LEARNED OF THE VIOLATION?

12          THE WITNESS:  IN SOME CASES AS SHORT AS TWO WEEKS.

13          THE COURT:  AND YOU KNOW WHEN AMERICAN LEARNED OF THE

14  VIOLATION?

15          THE WITNESS:  THEY ADVISED ME IN THE DOCUMENTS THEY

16  PROVIDED FOR THAT SPECIFIC CASE --

17          THE COURT:  OKAY.

18          THE WITNESS:  -- YES.

19          THE COURT:  SO HOW MANY CASES ARE YOU BASING THAT

20  EXPERIENCE ON?

21          THE WITNESS:  I WOULD HAVE TO RESEARCH OVER ALL THE

22  YEARS.

23          THE COURT:  ROUGHLY.

24          THE WITNESS:  I WOULD ESTIMATE OVER 20.

25          THE COURT:  TWENTY CASES, TWO WEEKS.  THAT'S YOUR
```

14

1  EXPERIENCE.

2      THE WITNESS:  THE SHORTEST WAS TWO WEEKS, YES, MA'AM.

3  I THINK THE LONGEST WAS MAYBE 30 DAYS.

4      THE COURT:  ALL RIGHT.

5      GO ON.

6  BY MR. AMLONG:

7  Q.  HAVE YOU -- ARE THESE CASES IN WHICH YOU ACTUALLY

8  REPRESENTED THE PILOT?

9  A.  SOME WERE.  THE MAJORITY WERE.  ONE OR TWO I WAS THE --

10  BASICALLY THE INVESTIGATOR PROVIDING THE NOTES TO THE LEAD.

11  Q.  DURING THE TIME THAT YOU HAVE BEEN CHAIR OF CONTRACTING AND

12  COMPLIANCE, HAVE YOU EVER EXPERIENCED A SIX MONTH DELAY BETWEEN

13  AMERICAN'S BECOMING AWARE OF THE POTENTIAL VIOLATION AND THE

14  ISSUANCE OF SECTION 21 HEARING?

15  A.  NOT IN MY EXPERIENCE, NO, SIR.

16  Q.  WHAT IS YOUR -- WHAT, IF ANYTHING, HAVE YOU BEEN TOLD BY

17  AMERICAN ABOUT ITS ABILITY TO DETERMINE WHETHER OR NOT SOMEONE

18  HAS ACCESSED THE CREWS SCHEDULING DATABASE?

19      MR. HOLT:  OBJECTION, YOUR HONOR.  RELEVANCE.  IT'S

20  BEYOND WHAT THE COURT --

21      THE COURT:  IT'S BEYOND WHAT I SAID I WOULD ADDRESS,

22  SIR.

23      MR. AMLONG:  I'M SEEKING, YOUR HONOR, TO DETERMINE

24  WHETHER OR NOT AMERICAN HAD THE ABILITY TO DETERMINE WITHOUT

25  ISSUING THE SECTION 21 HEARING THAT CAPTAIN SHELLHOUSE DID OR

1  DID NOT ENTER THE CREW SCHEDULING DATABASE AND FIND OUT CAPTAIN

2  WHITEHOUSE'S SCHEDULE.

3          THE COURT:  I'M NOT GOING THERE.

4  BY MR. AMLONG:

5  Q.  DO YOU FEEL INTIMIDATED BY THE ISSUANCE OF THE SECTION 21

6  HEARING NOTICE WHEN IT WAS ISSUED?

7  A.  YES, SIR, I DO.

8  Q.  HOW MANY PEOPLE WHO WERE (UNINTELLIGIBLE) IN SECTION 21

9  HEARINGS KEEP THEIR JOBS?

10 A.  I DO NOT KNOW.  I CAN ONLY RELATE TO THE ONES THAT I DID.

11 Q.  AND?

12 A.  I WOULD SAY PROBABLY AROUND 1O PERCENT KEPT THEIR JOBS.

13 Q.  IS THE SECTION 21 HEARING MERELY A FACT FINDING HEARING?

14          MR. HOLT:  OBJECTION, YOUR HONOR.  IT CALLS FOR

15 INTERPRETATION OF THE CONTRACT.

16          MR. AMLONG:  IT CALLS FOR HIS EXPERIENCE REPRESENTING

17 PEOPLE.

18          MR. HOLT:  THE JOINT COLLECTIVE BARGAINING AGREEMENT,

19 YOUR HONOR, SPECIFIES THAT SECTION 21 IS THE MECHANISM BY WHICH

20 AMERICAN CAN INVESTIGATE ISSUES THAT ARE OF SERIOUS CONCERN TO

21 THE COMPANY WITH RESPECT TO PILOTS.

22          THERE IS NO OTHER FORMAL MECHANISM FOR AMERICAN TO DO

23 THAT.  AND FOR COUNSEL TO ASK THE QUESTION NOW, WHAT DOES

24 SECTION 21 ESSENTIALLY ALLOW IS ASKING FOR AN INTERPRETATION OF

25 THE JOINT COLLECTIVE BARGAINING AGREEMENT.

 1          MR. AMLONG:  AND USERRA UNDER SECTION 4302(B) TRUMPS

 2   THE COLLECTIVE BARGAINING AGREEMENT.

 3          THE COURT:  I'M SORRY.  HOW DOES IT TRUMP IT?  IT

 4   DISALLOWS THE SECTION 21 PROCEEDING?

 5          MR. AMLONG:  IT SAYS THAT USERRA -- I DON'T HAVE IT IN

 6   FRONT OF ME.  BUT MY BEST RECOLLECTION OF IT IS THAT IT SAYS

 7   USERRA SUPERSEDES ANY STATUTE, CONTRACT, POLICY, OR PRACTICE

 8   THAT IS CONTRARY TO IT AND IT PROTECTS THE RIGHTS GUARANTEED BY

 9   USERRA AND THE RIGHTS --

10          THE COURT:  SO YOU READ THAT TO SAY THAT USERRA

11   DISALLOWS SECTION 21 HEARINGS?

12          MR. AMLONG:  NO.

13          THE COURT:  THAT'S HOW YOU READ IT?

14          MR. AMLONG:  NO.  I'M SAYING THAT USERRA -- IF THERE

15   IS A CONFLICT BETWEEN SECTION 21 AND USERRA, USERRA WOULD TRUMP

16   IT.

17          THE COURT:  AND WHAT IS THE CONFLICT HERE?

18          MR. AMLONG:  THE CONFLICT HERE IS THAT I HAVE A

19   WITNESS WHO -- LET'S ASSUME -- I'M -- I'M NOT SAYING THAT HE

20   DID ACCESS THE CREW SCHEDULING DATABASE TO FIND OUT CAPTAIN

21   WHITEHOUSE'S WHEREABOUTS THAT EVENING.  AND HE WOULD TESTIFY

22   THAT HIS BEST RECOLLECTION IS THAT HE DID NOT.

23          BUT LET'S ASSUME THAT HE DID ARGUENDO, IF HE DID SO HE

24   DID SO TO ASSIST LIEUTENANT COLONEL PATTERSON IN PURSUING HIS

25   RIGHTS UNDER USERRA.

```
 1            THAT CONDUCT IS PROTECTED BY 4311(B).  4102(B) SAYS
 2   THAT THE STATUTE SUPERSEDES ANY CONTRACT THAT'S CONTRARY TO IT.
 3            SO EVEN ASSUMING THE WORST --
 4            THE COURT:  ALL RIGHT.  HANG ON JUST A SECOND.
 5            THE STATUTE SUPERSEDES THE CONTRACT.  SO YOU'RE SAYING
 6   USERRA SUPERSEDES THE CONFIDENTIALITY PROVISIONS UNDER WHICH
 7   AMERICAN MAINTAINS PRESUMABLY FOR SECURITY REASONS THE SCHEDULE
 8   OF ITS PILOTS?
 9            YOU'RE SAYING THAT THAT GETS SUPERSEDED BY USERRA.
10            MR. AMLONG:  THE -- I'M NOT SAYING THAT HE VIOLATED
11   THE -- ANY CONFIDENTIALITY PROVISIONS --
12            THE COURT:  BUT YOU'RE SAYING --
13            MR. AMLONG:  -- BUT IF HE WERE HE COULD DO SO --
14            THE COURT:  I'M SORRY.  MR. AMLONG, LISTEN TO ME.
15            YOU JUST SAID, ASSUMING THAT HE WENT INTO THE DATA
16   BASE HE DID IT TO HELP CAPTAIN PATTERSON, AND THEREFORE USERRA
17   TRUMPS THIS WHOLE THING.  SO BASICALLY YOU'RE ARGUMENT IS THAT
18   USERRA TRUMPS PRESUMABLY BY THE SAME ARGUMENT IT WOULD TRUMP
19   HIPAA WHEN PEOPLE GO IN AND GET CAPTAIN'S MEDICAL RECORDS IF
20   THEY ARE IN THERE?
21            THAT DOES NOT MAKE SENSE TO ME.  I AM SORRY BUT IT
22   JUST -- YOU'RE NOT REALLY GIVING ME ANY BASIS FOR INVOKING
23   INHERENT POWERS.
24            I THOUGHT THAT YOU WERE GOING TO PUT CAPTAIN
25   SHELLHOUSE TO SAY THAT HE HAD BEEN INTIMIDATED.  HE SAY HE'S
```

```
 1   BEEN INTIMIDATED BY THIS NOTICE, CORRECT?

 2          THE WITNESS:  YES, MA'AM.

 3          THE COURT:  AND YOU'RE AWARE THAT NOW THAT AMERICAN IS

 4   WILLING TO PUT THIS OFF UNTIL AFTER TRIAL.

 5          THE WITNESS:  I HAVE  -- I HAVE NOT SEEN THAT IN

 6   WRITING --

 7          THE COURT:  WELL --

 8          THE WITNESS:  -- BUT I HEARD THAT STATEMENT JUST NOW.

 9          THE COURT:  -- IT'S IN THE -- IT'S IN AMERICAN'S

10   RESPONSE TO THE MOTION.  I READ FROM IT DIRECTLY.

11          THE WITNESS:  OKAY.

12          THE COURT:  SO ARE YOU STILL INTIMIDATED?

13          THE WITNESS:  THERE IS STILL SOME INTIMIDATION AND --

14          THE COURT:  OKAY.

15          THE WITNESS:  -- FEAR FOR MY JOB.

16          THE COURT:  OKAY.

17          THE WITNESS:  BUT IF THEY'RE WILLING TO STALL IT

18   BEYOND THE TRIAL AND THE APPEAL OF THE TRIAL, OR WHATEVER THE

19   -- BECAUSE I'M SURE BOTH SIDES WOULD PROBABLY APPEAL.

20          THE COURT:  OKAY.  SO UNTIL THE LITIGATION IS

21   COMPLETED --

22          THE WITNESS:  YES, MA'AM.

23          THE COURT:  -- WITH ALL APPEALS, WHAT'S YOUR

24   INTIMIDATION INDEX THERE?

25          THE WITNESS:  I DON'T UNDERSTAND THE QUESTION, MA'AM.
```

1              THE COURT:  LEVEL OF INTIMIDATION IF THAT HAPPENS.

2              THE WITNESS:  IF THAT HAPPENS THERE WOULD BE STILL

3    SOME RISK OF A LITTLE INTIMIDATION BUT IT WOULD BE A WHOLE LOT

4    LESS.

5              THE COURT:  OKAY.

6              ALL RIGHT.  YOU CAN FOLLOW UP ON THOSE QUESTIONS.

7    BY MR. AMLONG:

8    Q.  IS THE THREAT STILL HANGING OVER YOU THAT IF YOU DON'T

9    TESTIFY AS AMERICAN WANTS THAT --

10             THE COURT:  I'M SORRY.

11             MR. HOLT:  OBJECTION.

12             THE COURT:  WHERE IS THE BASIS FOR SAYING IF HE

13   DOESN'T TESTIFY AS AMERICAN WANTS?  ARE YOU NOW ACCUSING

14   AMERICAN OF WITNESS TAMPERING SIR?

15             MR. AMLONG:  I AM ACCUSING AMERICAN OF FILING A

16   DISCIPLINARY ACTION AGAINST ONE OF MY WITNESSES --

17             THE COURT:  AND YOU'RE EQUATING THAT TO WITNESS

18   TAMPERING, WHICH IS A CRIMINAL --

19             MR. AMLONG:  NO, IT'S NOT CRIMINAL --

20             THE COURT:  -- OFFENSE?

21             MR. AMLONG:  -- IT'S CIVIL.

22             THE COURT:  WITNESS TAMPERING IS A CRIMINAL OFFENSE.

23             MR. AMLONG:  I AM SAYING THAT I BELIEVE THAT THEY ARE

24   ATTEMPTING TO INTIMIDATING MY WITNESS.  AND I'M SAYING THEY ARE

25   ATTEMPTING --

1    THE COURT:  SO WOULD YOU LIKE TO REPHRASE YOUR

2  QUESTION THAT WHERE YOU ASKED IF HE DOESN'T TESTIFY AS AMERICAN

3  WANTS HIM TO?

4  BY MR. AMLONG:

5  Q.  DO YOU BELIEVE -- WITH THE CHARGES STILL OUTSTANDING DO YOU

6  FEEL THAT AMERICAN WOULD TAKE REPRISAL AGAINST YOU FOR YOUR

7  PARTICIPATION IN THIS TRIAL?

8  A.  YES, I DO FEEL LIKE THEY WOULD PROBABLY TAKE SOME FORM OF

9  PRESSURE ON ME TO STEP ASIDE AND NOT REPRESENT LIEUTENANT

10  COLONEL PATTERSON.  NOT ONLY IN AS A WITNESS BUT ALSO

11  REPRESENTING IN THE ARTICLE SEVEN OF THE UNION MATTER THAT'S

12  BEFORE AN ARBITRATOR OUTSIDE OF AMERICAN.

13  Q.  HOW MANY PILOTS ARE IN THE APA?

14  A.  FIFTEEN THOUSAND APPROXIMATELY.

15  Q.  HOW MANY ARE ON THE NEGOTIATING COMMITTEE?

16  A.  FIVE.

17  Q.  HOW DO YOU PERCEIVE YOUR STATUS WITHIN THE ALLIED PILOTS

18  ASSOCIATION?

19    MR. HOLT:  OBJECTION, YOUR HONOR.  RELEVANCE.

20    THE COURT:  I'LL ALLOW THAT QUESTION.

21    THE WITNESS:  MY STATUS IS -- CAN YOU REPHRASE THE

22  QUESTION?

23  BY MR. AMLONG:

24  Q.  HOW WELL REGARDED ARE YOU WITHIN THE ALLIED PILOTS

25  ASSOCIATION?

 1  A.  I'M HIGHLY REGARDED.  I'M A VERY SENIOR CAPTAIN AND I'VE

 2  DONE A LOT OF VOLUNTEER WORK FOR THE UNION OVER THE YEARS

 3  REPRESENTING PILOTS.

 4  Q.  IS THE PENDENCY OF THE SECTION 21 HEARING KNOWN TO THE

 5  UNION?

 6  A.  YES, IT IS.

 7  Q.  DO YOU KNOW IF IT'S KNOWN TO ANYBODY OUTSIDE THE UNION

 8  LEADERSHIP?

 9  A.  IT'S KNOWN TO ALL THE PILOTS.

10  Q.  HOW?

11  A.  IT'S PART OF THE CONTRACT AND THEY'VE EITHER KNOW SOMEONE

12  THAT'S BEEN THROUGH IT OR THEY'VE BEEN THROUGH IT THEMSELVES.

13  Q.  I'M TALKING ABOUT THE PROCEEDINGS AGAINST YOU.

14  A.  OH.  THE PROCEEDINGS AGAINST?  I WOULD IMAGE IT'S PRETTY

15  WELL KNOWN BECAUSE I'M A HIGH PROFILE INDIVIDUAL OF THE UNION.

16  Q.  AND WHAT IMPACT YOU THINK THIS IS GOING TO HAVE ON OTHER

17  PILOTS WILLINGNESS TO COME FORWARD AND TESTIFY?

18        MR. HOLT:  OBJECTION, YOUR HONOR.  SPECULATION.

19        THE COURT:  DO YOU HAVE ANY BASIS FOR ANSWERING THAT

20  QUESTION, CAPTAIN SHELLHOUSE?

21        THE WITNESS:  WHEN YOU SAY, BASIS, YOU MEAN DO I HAVE

22  ANY BELIEF OR --

23        THE COURT:  NO.  NOT A BELIEF.

24        THE WITNESS:  WHAT EVIDENCE --

25        THE COURT:  SOME TANGIBLE EVIDENCE THAT WOULD SAY THAT

 1  IT'S NOT JUST PIE IN THE SKY SPECULATION BUT YOU REALLY KNOW

 2  BASED ON PAST EXPERIENCE, BASED ON YOUR KNOWLEDGE THAT OTHER

 3  PILOTS WOULD BE INTIMIDATED FROM TESTIFYING BASED ON THIS

 4  SECTION 21 --

 5          THE WITNESS:  I UNDERSTAND --

 6          THE COURT:  -- PROCEDURE THAT HAS BEEN FILED UNDER THE

 7  RULES --

 8          THE WITNESS:  I  UNDERSTAND --

 9          THE COURT:  FOR YOU?

10          THE WITNESS -- WHAT YOU'RE SAYING.

11          YES, FROM PAST PRACTICE I WOULD SAY THAT THE JUNIOR

12  PILOTS WOULD BE VERY INTIMIDATED BECAUSE THEY HAVE MUCH LONGER

13  AND MUCH LARGER MONETARY LOSS TO PUT AT RISK.  I ONLY HAVE 53

14  MORE MONTHS AND --

15  BY MR. AMLONG:

16  Q.  HOW MUCH --

17  A.  EVEN --

18  Q.  -- MONEY DO YOU HAVE AT RISK DURING THE 53 MONTHS?

19  A.  APPROXIMATELY 1.8 MILLION DOLLARS.

20          THE COURT:  MR. AMLONG, WRAP IT UP, PLEASE.

21          MR. AMLONG:  I WOULD LIKE TO READ TO YOU, YOUR HONOR,

22  4302.

23          THIS CHAPTER SUPERSEDES ANY STATE LAW, PAREN,

24  INCLUDING ANY LOCAL LAW OR ORDINANCE, CLOSE PAREN, COMMA,

25  CONTRACT, COMMA, AGREEMENT, COMMA, POLICY, COMMA, PLAN, COMMA,

1 PRACTICE OR OTHER MATTER THAT REDUCES LIMITS OR ELIMINATES IN

2 ANY MANNER ANY RIGHT OR BENEFIT PROVIDED BY THIS CHAPTER

3 INCLUDING THE ESTABLISHMENT OF ADDITIONAL PREREQUISITES THE

4 EXERCISE OF ANY SUCH RIGHT OR THE RECEIPT OF ANY SUCH BENEFIT.

5          AND I GUESS THE FINAL QUESTION IS;

6 BY MR. AMLONG:

7 Q.  TO THE BEST OF YOUR RECOLLECTION, CAPTAIN SHELLHOUSE, DID

8 YOU ON THE NIGHT THAT CAPTAIN WHITEHOUSE WAS SERVED ACCESS THE

9 DATABASE?

10          MR. HOLT:  OBJECTION, YOUR HONOR.

11          THE COURT:  NO, SIR.

12          HOW MANY TIMES HAVE I SAID THAT I'M NOT GOING THERE,

13 SIR?

14          MR. AMLONG:  THANK YOU.

15          THE COURT:  ALL RIGHT.

16          GO AHEAD, MR. HOLT.

17          MR. HOLT:  YOUR HONOR, I'LL BE VERY BRIEF.

18          THE COURT:  THANK YOU.

19                    CROSS EXAMINATION

20 BY MR. HOLT:

21 Q.  CAPTAIN SHELLHOUSE, WERE YOU ADVISED BY AMERICAN THAT THE

22 SECTION 21 HEARING AGAINST YOU HAS BEEN CANCELED?

23 A.  NO, I HAVE NOT.

24 Q.  YOU WERE NOT ADVISED -- LET ME BACK UP.

25          WHAT DATE WAS YOUR SECTION 21 HEARING ORIGINALLY

1  SCHEDULED?

2  A.  I DON'T KNOW THE DATE BUT IT WAS I THINK LAST WEDNESDAY.

3  Q.  OKAY.  DID THAT HEARING OCCUR LAST WEDNESDAY, CAPTAIN?

4  A.  NO BECAUSE OF OTHER ISSUES GOING ON AND REPRESENTING

5  GRIEVANCES THAT I WAS ALREADY SCHEDULED FOR IT GOT MOVED TO

6  THURSDAY, THIS THURSDAY.

7  Q.  DO YOU HAVE A NOTICE OF THAT HEARING FOR THURSDAY, FOR THIS

8  THURSDAY, SIR?

9  A.  NOT WITH ME.

10 Q.  ARE THERE SECTION 21 HEARINGS THAT YOU'VE ATTENDED, SIR,

11 WHERE NO DISCIPLINE RESULTED?

12 A.  YES.

13         MR. HOLT:  NOTHING FURTHER, YOUR HONOR.

14         THE COURT:  ALL RIGHT.  REDIRECT?

15 BY MR. AMLONG:

16 Q.  WHAT PERCENTAGE OF THE SECTION 21 HEARINGS HAVE YOU

17 ATTENDED WHERE THERE WAS NO DISCIPLINE?

18 A.  AS I'VE STATED BEFORE APPROXIMATELY 1O PERCENT.

19 Q.  ARE YOU ANXIOUS BECAUSE OF THE SECTION 21 NOTICE?

20 A.  A LITTLE, YES, SIR..

21 Q.  DO YOU FEEL INTIMIDATED?

22         MR. HOLT:  OBJECTION, YOUR HONOR.  ASKED AND ANSWERED.

23         THE COURT:  THAT'S ALREADY COVERED ON DIRECT AND IT

24 WASN'T COVERED ON CROSS.

25         MR. AMLONG:  THANK YOU.

1    THE COURT:  THANK YOU VERY MUCH, SIR.  YOU MAY STEP

2  DOWN.

3    THE WITNESS:  THANK YOU, MA'AM.

4    THE COURT:  ANY OTHER EVIDENCE, MR. AMLONG?

5    MR. AMLONG:  NO, YOUR HONOR.

6    THE COURT:  ALL RIGHT.  ANYTHING FROM DEFENDANT?

7    MR. HOLT:  YOUR HONOR, IN TERMS OF EVIDENCE, IF THE

8  COURT -- IF WE HAD KNOWN THE COURT WERE PLANNING TO TAKE

9  EVIDENCE TODAY WE WOULD HAVE CALLED LIVE WITNESSES.

10    I BELIEVE THE COURT HAS ENOUGH BASED ON JUST THE

11  PAPERS ALREADY TO DENY THE MOTION, BUT WE WOULD RESERVE THAT --

12  IF THE COURT BELIEVES OTHERWISE WE WOULD STILL LIKE TO CALL

13  LIVE WITNESSES AT A LATTER DATE AND TIME.

14    THE COURT:  OKAY.  WHAT IS AMERICAN'S POSITION IN

15  TERMS OF WHAT THEIR WILLING TO DO?  ARE THEY WILLING TO

16  POSTPONE THIS MATTER UNTIL THE CASE OF PATTERSON VERSUS

17  AMERICAN AIRLINES IS COMPLETED THROUGH APPEALS?

18    MR. HOLT:  YOUR HONOR, AMERICAN IS WILLING TO DO THAT

19  SO LONG AS WE GET THE COMMITMENT FROM CAPTAIN SHELLHOUSE WE

20  DON'T NEED ANYTHING SUPER FORMAL HERE, JUST A COMMITMENT THAT

21  HE'S NOT GOING TO USE THE COMPANY'S DATA, WHICH AS THE COURT

22  HAS ALREADY RECOGNIZED.

23  YOU KNOW, THE REASON WE HAVE TO PROTECT THAT IS BECAUSE WE'VE

24  GOT PILOTS WHO COME INTO FLY --

25    THE COURT:  I'M SORRY.  YOU DON'T NEED TO GO --

1          MR. HOLT:  SURE.

2          THE COURT:  -- INTO THE CURRENT STATUS.

3          MR. HOLT:  OKAY.

4          THE COURT:  -- THAT WE LIVE IN.  WE ARE ALL AWARE.  I

5   AM AS A JUDGE I'M AWARE OF IT.

6          MR. HOLT:  PERFECT, YOUR HONOR.

7          YES, WE ARE WILLING TO POSTPONE THE SECTION 21

8   PROCEEDINGS UNTIL THE CONCLUSION OF THIS CASE PROVIDED THAT

9   CAPTAIN SHELLHOUSE AGREES THAT HE WON'T SHARE AMERICAN'S

10  CONFIDENTIAL INFORMATION FOR ANY PURPOSES OTHER THAN DOING HIS

11  JOB BETWEEN NOW AND WHEN THAT SECTION 21 INVESTIGATION CAN

12  HAPPEN LATER DOWN THE ROAD.

13         THE COURT:  SO YOU WANT CAPTAIN SHELLHOUSE'S

14  COMMITMENT THAT HE WILL ABIDE BY HIS OBLIGATIONS AS AN AMERICAN

15  AIRLINE PILOT?

16         MR. HOLT:  CORRECT, YOUR HONOR.

17         THE COURT:  WELL, I DON'T KNOW THAT I NEED TO MAKE HIM

18  DO THAT.

19         CAPTAIN SHELLHOUSE, HOW LONG HAVE YOU BEEN AN AMERICAN

20  AIRLINES PILOT, SIR?

21         CAPTAIN SHELLHOUSE:  APPROXIMATELY 32 YEARS, MA'AM.

22         THE COURT:  THIRTY-TWO YEARS.

23         CAPTAIN SHELLHOUSE:  YES, MA'AM.

24         THE COURT:  AND YOU'RE VERY SENIOR, RIGHT?

25         CAPTAIN SHELLHOUSE:  YES, I AM.

1              THE COURT:  YOU KNOW WHAT THE RULES OF THE GAME ARE.

2              CAPTAIN SHELLHOUSE:  YES, MA'AM.

3              THE COURT:  ALL RIGHT?  SO I HAVE TO ASSUME THAT HE

4    WILL.

5              MR. HOLT:  AND BASED ON THAT, YOUR HONOR, WE ARE

6    PERFECTLY WILLING TO POSTPONE THE SECTION 21 HEARING UNTIL THE

7    CONCLUSION OF THE PATTERSON VERSUS AMERICAN AIRLINES CASE.

8              THE COURT:  THROUGH APPEALS.

9              MR. HOLT:  YES, YOUR HONOR.

10             THE COURT:  ALL RIGHT.

11             SO THAT WILL BE MY RULING AND THEN THE EMERGENCY

12   MOTION WILL BE DENIED AS MOOT.

13             MR. HOLT:  THANK YOU, YOUR HONOR.

14             THE COURT:  THANK YOU VERY MUCH.

15             YOU WILL GET A WRITTEN ORDER.

16             ALL RIGHT.  THANK YOU.

17             THE CLERK:  ALL RISE.

18             THE COURT IS IN RECESS.

19                          - - -

20

21

22

23

24

25

1

2

3                        C E R T I F I C A T E

4

5

6    UNITED STATES OF AMERICA

7    SOUTHERN DISTRICT OF FLORIDA

8

9

10         I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11   STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12   HEREBY CERTIFY THAT THE FOREGOING 27 PAGES CONSTITUTE A TRUE

13   TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14   THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.

15         IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS

16   16TH DAY OF AUGUST 2018.

17

18                              /S/CARL SCHANZLEH
                               CARL SCHANZLEH, RPR-CM
19                             CERTIFIED COURT REPORTER
                               9960 SW 4TH STREET
20                             PLANTATION, FL 33324
                               TELEPHONE 954 424-6723
21

22

23

24

25