UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 1:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware Corporation,

    Defendant.
_____/

**AMERICAN AIRLINES, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO EXCLUDE OPINION TESTIMONY BY DR. CADDY**

Two years into this litigation and three months after the close of discovery, Plaintiff attaches never-before-disclosed documents to his opposition in a misguided attempt to oppose American's motion. In an alarming revelation, these documents confirm one of American's concerns—that Plaintiff is attempting to hide unfavorable information from American, this Court, and the Federal Aviation Administration ("FAA"). Specifically, when Plaintiff learned that Dr. Bercaw's assessment matched that of the independent neuropsychologist who found Plaintiff unfit for duty as a commercial pilot, Plaintiff withdrew his consent to share the report with the FAA and instructed Dr. Bercaw to send it only to his testifying expert, Dr. Caddy.

While that is troubling enough, two days after filing his opposition, Plaintiff produced additional documents that suggest that Plaintiff drafted some or all of Dr. Caddy's report by "putting it into copy so [Dr. Caddy] could copy and paste." These additional documents also suggest that Plaintiff potentially perjured himself more than once. Plaintiff's efforts to offer his own words as Dr. Caddy's "expert" testimony are a ruse. Flight safety is not a game. Nor are the requirements of candor to this Court.

This is the third time that Plaintiff has—well after the close of discovery—produced documents that are responsive on their face that Plaintiff should have produced long ago. Plaintiff's repeated, belated productions—that he only makes in an attempt to explain his other misrepresentations to American and this Court—beg the question of what other responsive documents he is withholding. While Plaintiff's opposition raises several new and independent reasons why this Court should exclude Dr. Caddy's opinions, it is also striking that Plaintiff fails substantively even to address the core point of American's opening brief—that an expert cannot simply ignore contrary data as Dr. Caddy has done.

1

For these reasons, Dr. Caddy's opinion testimony should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Down Pharmaceuticals, Inc.*—and also as a sanction for Plaintiff repeatedly withholding responsive documents until such time as he deems them helpful in attempting to explain away a change in his position.[1]

## I. Dr. Caddy's Opinion Testimony Should Be Excluded Because It Is Unreliable and Inadmissible Under *Daubert*.

As detailed in American's opening brief, cherry-picking data and ignoring contrary data as Dr. Caddy has done renders Dr. Caddy's opinion testimony unreliable and inadmissible under *Daubert*. *See, e.g.*, *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (where an expert considers only some "cherry-picked" data that support his opinion, the expert's methodology "fails to satisfy the scientific method and *Daubert*"); *E.E.O.C. v. Freeman*, 778 F.3d 463, 470–71 (4th Cir. 2015) (Agee, J., concurring) (collecting authority and explaining that omitting data, like cherry-picking, distorts the results and renders opinions inadmissible).

As this Court previously found, Dr. Caddy "considered but rejected, for purposes of his expert report and opinions, the testing of Plaintiff . . . that took place in the office of Edwin Bercaw, Ph.D." (*See* Order, ECF No. 80; *see also* Caddy Dep. 46:16–25, ECF No. 57-27 (Dr. Caddy admitting that he discussed the results of Dr. Bercaw's evaluation with Dr. Bercaw).) Plaintiff's attempt simply to ignore these facts (as Dr. Caddy did with Dr. Bercaw's evaluation) fails on its face. Accordingly, this Court should exclude Dr. Caddy's opinions on this basis.

---

[1] American may separately seek sanctions terminating this litigation given that Plaintiff and his counsel's misrepresentations and failure to comply with their basic discovery obligations have infected the entire proceedings.

## II. The Additional Documents Produced by Plaintiff Confirm That Dr. Caddy's Opinions Are Inadmissible.

The additional documents that Plaintiff produced <u>after</u> he filed his opposition brief (and more than three months after the close of discovery) contain admissions by Plaintiff that provide an additional basis to exclude Dr. Caddy's opinions. The new emails reveal that Plaintiff apparently drafted material for Dr. Caddy to "cut and paste" into his report, which explains the rambling and narrative nature of much of the report. (*See* Exhibit 1 at 3) ("I feel I have provided adequate information to complete an evaluation even putting it into copy so you could copy and paste.") Cutting and pasting information that a Plaintiff drafted into an expert report calls into question the entire report.[2]

Plaintiff is indisputably not an expert in neuropsychology and thus cannot offer his own opinions through the voice of an expert. Nor can Plaintiff use Dr. Caddy to introduce Plaintiff's out of court statements—whether fact or opinion. A "party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Mamani v. Berzain*, No. 07-cv-22459, 2018 WL 1010582, at *3 n.6 (S.D. Fla. Feb. 22, 2018) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)); *see also Royale Green Condo. Ass'n, Inc. v. Apsen Specialty Ins. Co.*, No. 07-cv-21404, 2009 WL 2208166, at *2 (S.D. Fla. July 24, 2009). If Dr. Caddy were permitted to testify consistent with a report drafted in whole or part by Plaintiff, the jury will be misled into believing that Plaintiff's

---

[2] The e-mails also reveal that Plaintiff does not personally believe Dr. Caddy is qualified to provide an opinion because the FAA requires HIMS training for neuropsychological evaluations. (Exhibit 1 at 5). This training requirement by the FAA ensures that doctors who evaluate pilots can assess pilots for substance- or alcohol-related conditions and other mental conditions that may impair a pilot's ability safely to operate an aircraft. *See* Medical Certification, FAA, https://www.faa.gov/medical_certificates/medical_certification.

3

non-expert opinions are actually those of Dr. Caddy. That risk is amplified by Plaintiff's untimely disclosure that he was an author of Dr. Caddy's report, which prevented American from conducting discovery to determine which opinions Plaintiff authored. This Court should thus also exclude Dr. Caddy's opinions for this reason.

### III. Under Plaintiff's New Theory Regarding the Scope of Dr. Caddy's Opinions as Set Forth in his Opposition, His Opinions Are Irrelevant and Inadmissible.

Dr. Knippa, an independent neuropsychologist, found Plaintiff not fit for duty based on cognitive testing. (*See* Neuropsychological Aeromedical Assessment 13, ECF No. 57-6) ("Mr. Patterson is opined to be identified by the current assessment as NOT FIT FOR DUTY as a [pilot], on the basis of impaired performances on cognitive assessment.") Until now, American has understood that Dr. Caddy would testify that Dr. Knippa somehow got it wrong and that Plaintiff is actually fit for duty. Indeed, that is the opinion offered by Dr. Caddy in his report. (*See* Caddy Report at 95, ECF No. 57-28) ("there is no evidence that FO Patterson is now experiencing any Medical or other condition, including any cognitive or related impairment, as inferred by Dr. Knippa"). Plaintiff has continuously argued to this Court that Dr. Caddy's testimony both establishes Plaintiff's fitness for duty and rebuts all evidence to the contrary, including neuropsychological testing. *See, e.g.,* Doc. 117 at 8 ("Drs. Hastings, Kay and Caddy respectively found Patterson fit-for-duty neurologically, neuropsychologically and psychologically.")

Because Dr. Caddy did not perform any cognitive testing (*see* Caddy Report at 90–92, ECF No. 57-28), the only way he could conceivably opine that Plaintiff is fit for duty would be to rely on cognitive testing performed by somebody else. Plaintiff, however, now takes the position that "Dr. Caddy, unlike Drs. Kay and Bercaw, is not a neuropsychologist and, therefore, is not competent to testify about [neuropsychological] test results." (Opp'n at 21.) Instead, Plaintiff states for the first time that Dr. Caddy will opine only on (a) purported "irregularities in testing

4

methods" by the independent neuropsychologist, Dr. Knippa; (b) the "psychological health" of Plaintiff; and (c) Dr. Knippa's alleged "pro-American bias." (*Id.* at 2.) None of these opinions is relevant or admissible.

      A. <u>Plaintiff admits that Dr. Caddy is not qualified to challenge Dr. Knippa's neuropsychological testing.</u>

Plaintiff's statement that he will have Dr. Caddy testify about purported "irregularities in [Dr. Knippa's] testing methods" is irreconcilable with Plaintiff's present concession that neuropsychological testing is "outside Dr. Caddy's areas of expertise and, therefore, outside Dr. Caddy's permissible testimony or the legitimate scope of Dr. Caddy's expert report." (Opp'n at 2; *see also id.* at 21) ("Dr. Caddy, unlike Drs. Kay and Bercaw, is not a neuropsychologist and, therefore, is not competent to testify about such test results.") Thus, Plaintiff concedes that Dr. Caddy is not qualified to opine on Dr. Knippa's neuropsychological assessment.[3]

      B. <u>Any other testimony on Plaintiff's "psychological health" is not relevant.</u>

Any testimony from Dr. Caddy on Plaintiff's "psychological health," as distinct from Dr. Knippa's neuropsychological assessment, is irrelevant in this case because emotional damages are not compensable under USERRA. *See* Pattern Civ. Jury Instr. 11th Cir. 4.18 annot. & cmt. (citing *Dees v. Hyundai Motor Mfg. Ala., LLC*, 605 F. Supp. 2d 1220, 1229 (M.D. Ala. 2009), *aff'd*, 368 F. App'x 49 (11th Cir. 2010) (per curiam)). To ensure Plaintiff would not attempt improperly to

---

[3] Such opinion testimony is also irrelevant as detailed in American's Motion *In Limine* to Exclude Evidence of Subsequent Medical Reports (ECF No. 96). American could not have relied on or taken into consideration any information—like Dr. Caddy's opinions—that did not exist when American withheld Plaintiff from duty on September 24, 2015 and referred him for a neuropsychological evaluation on March 24, 2016. Under the collective bargaining agreement for American's pilots, once Dr. Knippa found Plaintiff not fit for duty, Plaintiff could only return to work only by obtaining clearance from Dr. Knippa or another comparable doctor approved in advance by American. *See id.*

5

inject issues of his psychological or emotional health into the trial, American sought an order *in limine* excluding evidence of any purported psychological injury. (ECF No. 97.) Plaintiff did not oppose that motion, rather he characterized it as "'unnecessary' because '[Plaintiff's Counsel is] not going to ask for emotional distress or punitive damages." (ECF No. 115 at 2.) Thus, Plaintiff has represented to the Court that he will not be offering evidence of Plaintiff's psychological injuries. He cannot now recant on his representation to the Court in an attempt to salvage some portion of Dr. Caddy's testimony.

### C. Dr. Caddy is not an expert on purported bias.

Finally, Plaintiff has not qualified (and cannot qualify) Dr. Caddy as an expert on bias. Dr. Caddy cannot offer expert opinions on areas outside his expertise. *See, e.g. Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005) (setting forth three-part test for expert testimony including requirement that the witness must be "qualified to testify competently regarding the matters he intends to address" and that the testimony will assist the trier of fact "through the application of scientific, technical, or specialized expertise").[4]

Accordingly, because none of the opinions Plaintiff now states in his opposition that Dr. Caddy will offer are relevant, the Court should exclude them for this reason as well. *See, e.g.*, Fed. R. Evid. 702; *Rink*, 400 F.3d at 1291–92; *DiCarlo*, 211 F.3d at 468.

---

[4] Nor is there any basis for allowing an expert to opine on the bias or credibility of another witness, which a jury can determine by itself. *See DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000) (determining bias and witness credibility "is the jury's province, whether the witness is lay or expert") (cited with approval by *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1332 (11th Cir. 2014)).

### IV. Plaintiff's Multiple Severely Delayed Document Productions Provide an Additional Independent Basis to Exclude Dr. Caddy's Opinions.

Plaintiff has repeatedly withheld relevant, responsive, non-privileged documents only to produce them when Plaintiff thought doing so would somehow be advantageous to his position. Although the deadline for discovery came and went months ago (*see* ECF No. 49), Plaintiff continues to produce new documents in an attempt to explain away other misrepresentations—each of which casts further doubt on Dr. Caddy's opinions—and each of which represents yet another change in Plaintiff's position.

When American first sought to obtain Dr. Bercaw's report from Plaintiff, he claimed he did not have a copy in his possession, custody, or control. That statement is demonstrably false because Plaintiff now admits Dr. Caddy had a copy of the report in his office manager's email inbox, and indeed, Plaintiff produced an April 26, 2015 fax transmission from Dr. Bercaw's office to Dr. Caddy which "attached the report requested for the above noted patient (Plaintiff)." (*See* Opp'n at 14; Bercaw Dep. Ex. 5; Bercaw Dep. at 37-38.) This lie forced American to pursue discovery from Dr. Bercaw directly, which Plaintiff vigorously opposed. Then, the night before a May 25, 2018 hearing before this Court, Plaintiff provided amended interrogatory responses and a never-before-produced privilege log claiming that although Dr. Caddy referred Plaintiff to Dr. Bercaw, Dr. Caddy did not rely on Dr. Bercaw's testing because Dr. Fonseca (rather than Dr. Bercaw) performed the testing. (ECF 54-1.) American has now confirmed that this was also a lie because Dr. Bercaw's testimony and handwriting on the scoring sheets show that he did perform much of the testing—including one of the primary tests, the CogScreen. (*See* Bercaw Dep. 20:18–26:1, 89:11–91:1, ECF No. 132-1.) Following the May 25, 2018 hearing, the Court required American to take the deposition of Dr. Caddy to determine whether he considered Dr. Bercaw's findings. (*See* Order, ECF No. 56.)

7

Once American obtained testimony from Dr. Caddy confirming that he considered Dr. Bercaw's findings, but that his ordinary practice was to destroy evidence that he reviewed but did not intend to rely upon, American again sought to obtain discovery directly from Dr. Bercaw. This Court then scheduled another hearing on June 27, 2018. (ECF 70.) This time, Plaintiff waited until the middle of the actual hearing to provide never-before-disclosed information: the "play ball" emails in which Plaintiff and Dr. Caddy discuss their plan to "cut bait and fish elsewhere" if Dr. Bercaw would not cooperate. (*See* ECF No. 79.) After that hearing, and pursuant to this Court's Order, American was finally able to obtain copies of Dr. Bercaw's report, which contain findings very similar to those reported by Dr. Knippa—thus confirming why Plaintiff and his counsel would go to such lengths to attempt to conceal them. (ECF 80.)[5]

Now, Plaintiff has again produced never-before-disclosed documents that are responsive on their face and that have been in his possession (and his counsel's possession) for over two years. Plaintiff attached to his opposition an April 22, 2016 email from Plaintiff to Dr. Bercaw, copying Dr. Caddy and Plaintiff's counsel.[6] In this new email, Plaintiff reveals that although Plaintiff

---

[5] Dr. Bercaw found that Plaintiff has "mildly-to-moderately impaired deductive reasoning" and "severely impaired" results on tests of perseverative errors, as well as below average and mildly impaired scores on a continuous attention test. (Bercaw Report at 4–5, ECF No. 87-1.) Dr. Bercaw summarized the significance of these findings, explaining that, "[t]hese findings raise concern about how adaptable or flexible he is to feedback about his performance. This quality is potentially critical to flight performance, particularly in non-routine situations. Therefore, further review of these data by an FAA neuropsychologist is recommended to determine the aeromedical significance to piloting skills." (*Id.* at 6–7).

[6] Plaintiff does not—and cannot—offer any legitimate reason for not disclosing this email sooner. The email is not privileged because Dr. Bercaw and Dr. Fonseca are recipients. The email is also indisputably relevant because it includes facts disclosed to Plaintiff's testifying expert. In footnote 43 of Plaintiff's opposition, Plaintiff's counsel suggests that he did not receive this email until after American filed its *Daubert* motion. The email on its face, however, shows that Plaintiff's counsel received it more than two years ago. (*See* ECF No. 136-3 at 1) (listing "wramlong@theamlongfirm.com" as an original recipient of the email).

8

previously agreed Dr. Bercaw could release information to the FAA, he rescinded that consent as soon as he found out that the results of Dr. Bercaw's evaluation were not helpful to him. (*See* ECF No. 136-3.) This email further confirms American's concern that Plaintiff was "doctor-shopping" and actively tried to hide from American and the FAA (and ultimately from this Court as well) the fact that even his handpicked doctor had serious concerns about Plaintiff's fitness for duty.[7]

Unbelievably, however, it gets worse. Plaintiff produced additional emails two days <u>after</u> filing his opposition that show Plaintiff—not Dr. Caddy—was likely the actual author of all or some of Dr. Caddy's expert report and that Plaintiff himself questions Dr. Caddy's qualifications. (*See* Ex. 1.) Had American known of this before the depositions of Plaintiff and Dr. Caddy (which it would have if Plaintiff has complied with the rules of discovery), these topics would have been explored in detail. Instead, Plaintiff withheld this information until after the close of discovery, and after the parties completed briefing on summary judgment motions and motions *in limine*.

Throughout this litigation, Plaintiff and his counsel have made intentional or reckless misrepresentations to American and the Court, including the one admitted to, but not rectified, in footnote 23 of Plaintiff's response brief.[8] Plaintiff's lack of candor and failure to comply with the

---

[7] The potential for doctor shopping is one of the primary reasons that, pursuant to the established process in the governing collective bargaining agreement, once a pilot is found unfit for duty, the pilot must return to the same doctor, or another doctor with comparable expertise approved by American, before the pilot can be returned to duty. (*See* ECF No. 59 at 9.)

[8] In that footnote, Plaintiff's counsel claims that he inaccurately represented to the Court that Dr. Caddy selected Dr. Bercaw to perform the neuropsychological evaluation of Plaintiff—which Plaintiff's counsel then attributes to Plaintiff not telling the truth in discovery. Plaintiff stated that Dr. Caddy selected Dr. Bercaw in a sworn interrogatory response that has been the subject of at least two hearings—both of which Plaintiff himself attended. (*See* ECF Nos. 54-1.) If the interrogatory answer was incorrect as Plaintiff's counsel now claims, Plaintiff and his counsel should have advised American and the Court months ago.

9

basic discovery rules and obligations have infected the entire proceedings in this case and serve as an additional basis—under the Court's inherent powers—to grant this motion.

No less severe remedy will cure the prejudice to American because discovery is already closed and even if this Court were to reopen it, American should not have to bear the cost of conducting additional discovery because Plaintiff is dishonest. Additionally, the court should order Plaintiff and his counsel to pay American's expenses because of their misconduct. *See Edlredge v. EDCare Mgmt. Inc.*, No. 13-cv-61373, 2015 WL 13666059, at *1 (S.D. Fla. July 30, 2015) (Scola, J.) (affirming sanctions against the Amlong Firm based on similar conduct).[9]

## CONCLUSION

For these reasons, the Court should grant the motion and exclude the opinion testimony of Dr. Caddy, reserve on the amount of costs and fees to awarded to American, and grant such further relief as the Court deems just and proper in light of Plaintiff's egregious conduct.

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@fisherphillips.com
Florida Bar No.: 91156
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709
Facsimile: (954) 525-8739

---

[9] On September 26, 2018, American sent Plaintiff a letter detailing deposition testimony from Plaintiff that the newly produced documents confirm to be false. A copy is attached as Exhibit 2. As of the time of this filing, Plaintiff's counsel has not yet advised whether Plaintiff will continue to oppose American's motion to exclude Dr. Caddy's testimony. American may file a separate motion seeking termination of this litigation based on Plaintiff and his counsel's conduct throughout this litigation.

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for American Airlines, Inc.*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2018, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
     MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice)*
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@fisherphillips.com
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709
Facsimile: (954) 525-8739

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*