# GLENN ROSS CADDY, Ph.D., P.A.

·Clinical Psychology·Forensic Psychology·Neuropsychology·Behavioral Medicine·Corporate Coaching·
Fellow Academy of Clinical Psychology
Diplomate in Clinical Psychology, American Board of Professional Psychology
Diplomate and Fellow, American Board of Forensic Examiners in Psychology
Fellow, Professional Academy of Custody Examinations

Fellow American Psychological Association
Diplomate and Fellow, American Academy of Behavioral Psychology
Diplomate American Board of Sexology
Certified Parenting Coordinator

August 17, 2017

**Re: FO Rodney Scott Patterson, 576006, Executive Summary of Findings and Assessment**

In March 2016, by referral, I accepted this case to forensically exam the issues leading up to and including the report issued by Dr. John Knippa, Ph.D. the so-called Independent Medical Examiner for American Airlines, Inc. Further I was tasked with monitoring Mr. Patterson's status and as such a developed a report of findings.

As a result of my extensive work, I find myself in fundamental disagreement with the impressions and findings of Dr. Knippa. After more than ninety hours of review of all the record data in this case, a very comprehensive forensic level of examination and investigation of FO Patterson, including collateral investigations of a number of people who know Scott particularly well [including both friends, American Airlines senior Captains, several of Scott's Military colleagues [at significant rank] and his family and several friends I investigated many of the claims inferred from what I came to view as the unsupportable and inaccurate assertions of the various hearsay opinions seen in the document developed by an AA Captain, that was directed against FO Patterson. I also noted critical flaws in the interpretations and methodology, and therefore, inevitably, the findings of Dr. John Knippa. [Without going into detail on the multiple issues of failure here, let me just make the point that Dr. Knippa unwisely undertook a comprehensive neuropsychological examination of Scott Patterson when the examinee had not had any time to acclimatize [rebalance his circadian rhythm] after flying across three time zones to California to then undergo two strenuous days of testing, including neuropsychological testing. But the errors did not stop there for Dr. Knippa thereafter employed inappropriate norms in reaching his opinion of Scott Patterson being "Not Fit for Duty".

After consultation with FO Patterson's AME, I referred Scott to the extremely experienced and widely known Neuropsychologist, Gary G. Kay, Ph.D., for a third opinion regarding Scott Patterson. Dr. Kay was responsible for the development of the CogScreen-AE, the single most valid neuropsychological measure of neuropsychological impairment in the assessment of pilots. Dr. Kay has performed a vast number of AA Section 20 Medical Evaluations. He examined FO Patterson, within Scott's own time zone and concluded: "Based upon a review of the records, including evaluations by Dr. Caddy and Dr. Knippa, along with results from testing conducted on 6/29/2016 and a clinical interview. ***Mr. Patterson appears to be psychologically and neuropsychologically, FIT FOR DUTY, as an American Airlines Pilot.***

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

DEFENDANT'S EXHIBIT 3 17-cv-60533

AA-Patterson-0000197

FO Patterson was re-issued his *First Class Medical Certificate* by Dr. Joe Tordella, D.O. AME on July 1, 2016. Seven [7] medical professionals have opined affirmatively about Scott's medical present health and mental status. He does not have nor has he ever had any condition, medical, psychological or neuropsychological, which would preclude him from serving as an American Airlines pilot using the standard of a first class medical.

I served for more than fifteen years as the Consulting Psychologist for United Airlines at their crew base in Miami. I have more than 35 years' experience as an expert in the addictive behavioral and multiple other specialty fields. FO Patterson clearly has no substance abuse or addictive behaviors whatsoever. In fact, he simply does not use alcohol and has not done so for many years as he just does not enjoy doing so.

My research and work span many hours of contact with Patterson and with substantial additional time with collateral source reviews allowed me to get this issue right and establish a forensic level of proof thereto. I am in disagreement with Dr. Knippa for several reasons to include: AA flew Patterson 2,500 miles to a Neuropsychological exam in California and 3 hours out of sync with his circadian rhythm. Within 14 hours of him landing in California and with less than seven [7] hours sleep, Dr. Knippa performed some 16 hours of intensive testing on him. I have spoken with a number of AA pilots and have learned that AA places a great deal of emphasis on fatigue risk mitigation. In fact according to the Joint Collective Bargaining Agreement, pilots are limited to 4 hours of simulator training per day due to the intense cognitive environment. In this case the procedure appears foolishly loaded against FO Patterson from the outset. And yet the errors did not stop there.

Further when a mental health evaluation of an airman is requested, the quality of the report must be of the highest caliber; it must be accurate and meet standards that would be defensible in a court of law. A Montana judicial official ruled that Dr. Knippa's work was deficient in a Workman's Compensation case, since Knippa relied on hearsay and his opinion differed from all of the other medical professionals involved in the case. In the case of Scott, Knippa appears to have followed through with error and innuendo resulting in a faulty compromised determination.

Dr. Knippa was fully aware of the time, distance and travel involved with going to California to undergo Neuropsychological testing. He should not have permitted himself to be a party to such an arrangement, contrary to practice and even his ethical principles. The work of Dr. Knippa ends up with innuendo of maybe something wrong functionally [i.e. some possible inference of a personality matter] but with no clear indication, and yet persistent innuendo. Not good practice, in fact, blatantly inappropriate. Then the innuendo in Dr. Knippa's report moves to a possible ADHD inference but again Dr. Knippa cannot clearly establish a basis for this inference either, but he never gives up on it [he does not reject the inference]. Already here, the willingness to persist in this land of weak and invalid inference compromises Dr. Knippa substantially. He also does nothing to bring this inference to some conclusion and he cannot for he does no collateral review.

With this professional compromise not cleanly done away with Dr. Knippa then turns the neuropsychological realm and finally, he develops some very weak and very compromised data

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

2

AA-Patterson-0000198

[creating a rationale] for a recommendation to terminate FO Patterson. This is not right ethically, and in my opinion, it was more than just very poor science, it was sadly professionally compromising. In fact Dr. Knippa administered the test of sustained attention at a time of day [given Scott's circadian status] that appears to have been entirely inappropriate for such testing. Much later, Dr. Gary Kay advised FO Patterson during his testing session, that Dr. Knippa's examination appears not to have followed Dr. Kay's protocols for the CogScreen-AE and thus we have the faulty reporting by Dr. Knippa with compromised results.

In fact if any carrier uses this sort of protocol and uses neuropsychology or neuropsychologists in this manner, the entire protocol must be called into question and that too would be wrong. I do not mean that neuropsychology offers nothing here, of course it does. But neither the testing nor the terms of its application should be compromised to produce the sort of compromise and inferential chaos in the work life of a very experienced pilot with never a failure or the inference thereof in any aspect of his flight skills. This matter was all about an eleven-month vendetta by a Captain to damage FO Patterson. It involved no neuropsychological implications until someone in A.A. had the idea of sending Scott Patterson to do that two- day Aeromedical Psychological Assessment. Dr. Kay followed strict correct protocols during his testing which revealed quite different results than did the work of Dr. Knippa.

It is my opinion that a number of parties did a poor job in handling this entire matter. It appears there was essentially a non-existent [extremely superficial] investigation and then a Section 21 hearing and that did not result in anything beyond a slap on the wrist for FO Patterson, and somewhat of a rebuke for the Captain. Yet the Captain's submission, unscientific and toxic and damaging to FO Patterson's reputation as it was, persisted.

In reality what happened was nothing more initially than a minor conflict between these two men, but in an ineffective environment it became an uncontrolled "warlock hunt" by the Captain, that was apparently found tolerable and at some level even taken it up. This matter, had it been handled properly, could have been dealt with by the Wingman Program or APA Professional Standards. In fact, Captain Shellhouse advised me that the Miami flight office, intended to pull the issue back into the flight office and then have the matter dealt with by competent professional standards personnel. Apparently the outcome of the section 21 hearing was not enough, so they chose to send Patterson to a mental health exam. The Wingman Program and Professional Standards would very likely have produced a far different and more cost effective and rational result than the referral to a California neuropsychologist produced. In fact, I believe the real perpetrator here was the Captain, whose handling of the matter smacks of arrogance, or at least incredibly poor judgment, in that he set out to systematically collect rumor, innuendo, misinformation [even to the point of the absurd], and the occasional legitimate fact, against a co-worker, for reasons no doubt he understands, but his actions seem to have a strong payback component [for Scott Patterson bluntly telling him that he did not wish to fly with him again]. This entire matter would seem to be much more compromising to the Captain than it should have been to Scott Patterson, but perhaps politics being what they are at A.A., it did not.

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

3

AA-Patterson-0000199

Soon after Scott Patterson received the notice of him not being Fit For Duty status, Patterson contacted Ibrahim Abi-Rafeh M.D., a psychiatrist in Hollywood, Florida. Dr. Abi-Rafeh, a commercially rated pilot, saw Patterson for over five [5] hours, examined him, and reviewed the Dr. Knippa report. Dr. Abi-Rafeh has known Patterson for well over 10 years in the context of the Civil Air Patrol work they both do. I interviewed Dr. Abi-Rafeh and he told me that his professional opinion regarding Scott was that, "He was experiencing stress induced adjustment issues but that he was a very well adjusted and mentally strong person and that he *really did not need any therapeutic support or medication*".

Dr. Martin Dayton, D.O., Scott's physician has also examined him on a number of occasions prior to and subsequent to Dr. Knippa's evaluation. According to Dr. Dayton, Patterson was never prescribed any psychotropic medication nor is he currently undergoing any treatment that would impact his psychological or mental capability. *Patterson is fully capable of serving as a commercial airline pilot.*

In October 2015, Lt. Colonel Patterson was directed to undergo a complete pre-deployment physical for the US Army. He was found by the physician upon examination, fully capable and was classified as a PULHES of 1-1-1-1-1-1. The physical profile factor "1" [the picket fence of "1" is perfect health and he was seen as *"Fit for Deployment"*.

May 23, 2016, based on my recommendation [and that of Dr. Tordella], Scott flew to Tulsa, OK and saw Dr. John Hastings, an aviation neurologist. Hastings has been in practice for 37 years and the FAA recognizes him as a leader in Aviation Neurology. Hastings examined Scott and determined that *he was fully intact from a neurological viewpoint and that no further testing or studies were medically indicated or required. Scott poses no risk to aviation safety and is fit to fly from a neurological standpoint.*

Dr. Gary G. Kay is the leading aviation neuropsychologist and expert in his field. Scott saw him in a clinical setting on 6/29/2016. I believed the work of Knippa was inaccurate and sadly it was compromised. Hence, it was sensible for Scott to undergo an evaluation with the well-known Neuropsychologist Kay.

In the course of Dr. Kay's examination of FO Patterson he noted that Dr. Knippa had compared Scott on the CogScreen AE to Regional Airline Pilot norms rather than to the age-group norms available for pilots of the Major Airlines. In other words, Dr. Knippa erred, intentionally or otherwise, but the net effect was that the data was skewed and this produced a result [or interpretation] that was scientifically compromised. In the light of the previous assertions

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

4

AA-Patterson-0000200

regarding fatigue, and then the seemingly endless effort to find Scott Patterson to be somehow impaired, this appears to be one more cog in the wheel of developing a rationale to terminate Patterson, but all based on faulty psychological interpretations of the data examined. Clearly this error has further compromised Dr. Knippa's findings and the opinions related thereto. It is also asserted that during Dr. Kay's examination of Scott that Knippa appears to have further failed to properly administer the Cog Screen AE to Patterson according to standardized procedures which raises serious concerns.

Dr. Kay noted FO Patterson to be, as Dr. Knippa has presented him, and surely too as I saw him: he was prompt for his appointments, well-groomed and dressed, oriented and co-operative. He readily established good rapport, he was neither anxious nor depressed, and he sought to present himself in a favorable light. There were no signs of inattention or lack of concentration. His speech was normal in volume, rate and prosody.

On the CogScreen AE, Dr. Kay found Scott to be in the 60th percentile on measures of speed and at the 85th percentile on accuracy. *All the measures on this instrument were within the normal range for people in his field and age range.*

On a test of sustained attention, Scott was noted to show good reaction time, sensitivity to target stimuli and adaptability to inhibit responses to non-target. *There was no other evidence on this test of a deficiency in vigilance or attention.* Thus many of the meanderings of Knippa's report are further discarded as simply wrong.

Likewise, Scott's performance on the Trail Making Test A, B, C showed good performance and *was well within the range expected of pilots his age*.

With countless hours of contact, evaluation and testing of FO Patterson and seeking out multiple collateral contacts, including A.A. Captains who routinely fly with and know Scott Patterson well, and also military colleagues, I and a total of six other medical professionals have determined that Scott has no condition which would limit or impair his ability to act as a pilot under 14CFR Part 67. He does not require any further counseling or treatment to assist him with re-integrating back into the flight deck. It would be meaningless and abusively inappropriate to study or examine his background or anything else any further.

American has sent many pilots for Section 20 evaluations to Dr. Kay who is seen as an impartial and professional evaluator. Having spoken to a number of people who know Scott inside AA and outside the company, he is a well-respected person with good morals and values. A typical military officer, Scott would not have progressed through the military and at a significant rank while hiding some underlying personality or learning disorder. *Based on my professional opinion and those of other medical professionals, Patterson is fully capable of safely flying a commercial aircraft and he poses no risk to the flying public. Dr. Kay, Dr Tordella, Dr Hastings, Dr. Dayton and I fully agree, Mr. Patterson has no condition which would disqualify him from holding a First Class Medical. Had Dr. Knippa conducted his examination in accordance with stricter controls and adherence to established procedures, his results would have put Scott far more in line with all of the other pilots his age.*

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

5

AA-Patterson-0000201

There is no logical, scientific, medical or psychological reason to further withhold him from flight status or to penalize/discipline him based on the IME's faulty assertions or the innuendo of the Captain. FO Patterson should be returned to flight status immediately. I have recommended several takeaways and am in agreement with Dr. Kay. Namely, Scott should be trained in another aircraft to remove the potential of him possibly being in contact with the Captain or his cohorts.

Mr. Patterson has continuously held a First Class Medical Certificate and was re-issued on 1 July, 2016. I am of the firm belief that he does not require any further treatment. He does not wish to have contact with the Captain or his Cohorts and has remained faithfully diligent to return to work.

I am available and will gladly answer any questions you have regarding this matter and Mr. Patterson's fitness to fly as a pilot for American Airlines.

Respectfully submitted,

*[signature]*

Glenn Ross Caddy, Ph.D., A.B.P.P., F.A.A.C.P., F.I.A.B.M., F.A.P.A.
Board Certified in Clinical and Forensic Psychology and Behavioral Medicine

One Financial Plaza – Suite 2010 – 100 Southeast Third Avenue – Fort Lauderdale – Florida -33394
Office (954) 565-8850 – Worldwide GPhone (281) 845-3660 – Fax (954)

6

AA-Patterson-0000202