IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**FORT LAUDERDALE**
CASE NO. **17-CV-60533-JEM**

_____

RODNEY SCOTT PATTERSON,
                    Plaintiff

          vs.                          **September 28, 2018**

AMERICAN AIRLINES,
                    Defendant.

_____

**EVIDENTIARY HEARING**

BEFORE THE HONORABLE **ALICIA M. OTAZO-REYES**,

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

_____

**A P P E A R A N C E S**

FOR THE PLAINTIFF:      **WILLIAM R. AMLONG**, ESQ
RODNEY SCOTT PATTERSON **KAREN C. AMLONG**, ESQ
                        Amlong & Amlong
                        500 NE 4th Street, 2nd Floor
                        Fort Lauderdale, FL 33301
                        (954) 462-1983
                        Wramlong@theamlongfirm.com
                        Kamlong@theamlongfirm.com

FOR THE DEFENDANT:      **MICHAEL A. HOLT**, ESQ
AMERICAN AIRLINES       Fisher & Phillips LLP
                        450 East Las Olas Blvd, Suite 800
                        [!ADDRESS-B2]
                        Fort Lauderdale, FL 33301
                        (954) 847-4709
                        Mholt@fisherphillips.com

REPORTED BY:            **GIZELLA BAAN-PROULX**, RPR, FCRR
                        United States Court Reporter
                        400 North Miami Avenue, 8th Floor
                        Miami  FL  33128
                        (305) 523-5634
                        gizella_baan-proulx@flsd.uscourts.gov

Also present:
        Edwin Bercaw, PhD

1                          <u>I N D E X</u>

2    Witness              Direct     Cross    Redirect    Recross

3    DR. GLENN R.           5         33

4    CADDY

5

6

7

8

9

10              <u>P L A I N T I F F   E X H I B I T S</u>

11   Exhibit                         Received    Admitted

12   1                                  32

13   2                                  32

14   3                                  32

15   4                                  32

16

17

18               <u>D E F E N S E   E X H I B I T S</u>

19   Exhibit                         Received    Admitted

20   1                                  10          11

21   2                                  14          16

22   3                                  21          21

23   4                                  31          31

24

25

<u>P R O C E E D I N G S</u>

*(The following proceedings were held in open court.)*

**THE COURTROOM DEPUTY:** Rodney Patterson versus American Airlines, case number 17-60533-civil-Martinez. Counsel, state your appearances for the record please.

**MR. AMLONG:** William Amlong and Karen Amlong on behalf of Mr. Patterson who is also here.

**MR. HOLT:** Good morning, Your Honor. Michael Holt on behalf of American Airlines.

**THE COURT:** All right. Thank you very much. You may be seated. I understand that we have Dr. Kay I believe is his name on the telephone. Is that correct?

**MR. AMLONG:** We do. I was not going to call him necessarily, Your Honor.

**THE COURT:** Hold on, sir. Could you wait just a second. Just hold on. Do we have Dr. Kay on the phone?

**DR. KAY:** Yes, you do.

**THE COURT:** All right. Now, go ahead, sir.

**MR. AMLONG:** I was not necessarily going to call Dr. Kay, but Your Honor said to have all of the experts available. So I just arranged to have Dr. Kay available --

**THE COURT:** Yes. I am sorry that seems to be causing confusion among counsel. I -- generally, when I say relevant, it obviously means the experts who are being challenged. I don't think Dr. Kay is being challenged, so I don't see the

1  necessity for him to take his valuable time to be on standby on

2  the phone.  So I will excuse him.

3      **MR. AMLONG:**  Okay, Your Honor.  I just did this --

4      **THE COURT:**  I understand.  I had somebody else who had

10:08  5  the same confusion.  It was even the other side who thought

6  that they had to have their -- so I'm going to have to work on

7  my order and find a better word than relevant.

8      **MR. AMLONG:**  Okay.  Thank you.

9      **THE COURT:**  Thank you so much, Dr. Kay.  I am sorry

10:08  10  that you were taken up your time, but you are excused, sir.

11      **DR. KAY:**  Thank you, no problem.

12      THE COURT:  All righty.  So maybe I'll change it to

13  the challenged experts.  That might work.

14      **MR. AMLONG:**  And Dr. Caddy is here.

10:08  15      **THE COURT:**  Dr. Caddy is here.  Yes.  I assumed that.

16      All right.  So we're ready.  The way that I usually do

17  this is I allow the party who is challenging the expert to go

18  first, lay out the challenges, and then I allow the opposite

19  side to then come back and clarify and in some fashion try to

10:09  20  address those challenges.  So that's how we will proceed.

21      **MR. HOLT:**  Your Honor, would you like opening

22  statements before we begin?

23      **THE COURT:**  I don't need opening statements.  I have

24  read everything.

10:09  25      **MR. HOLT:**  Your Honor, as a procedural matter, though,

1  Dr. Caddy's opinions that apparently, according to plaintiff,

2  are going to be offered have changed many times.  In fact, they

3  changed during the briefing in this case.  So I think it might

4  be useful to get clarification of what exact opinions he

10:10  5  intends to offer and, frankly, I think that is set forth in

6  their briefing.  I just want to confirm that before we get

7  started because that could change the scope of this hearing

8  potentially.

9          THE COURT:  Well, you can ask him what he intends to

10:10  10  opine, right?

11          MR. HOLT:  Okay.

12          THE COURT:  All right.  Go ahead.  Let's have

13  Dr. Caddy come up, please.

14  Thereupon,

10:11  15                      DR. GLENN R. CADDY

16  having been duly sworn by the courtroom deputy, testified as

17  follows:

18  A.  **Yes, ma'am.**

19          THE COURTROOM DEPUTY:  You may be seated.  Please

10:11  20  state your full name for the record and spell your last name.

21  A.  **My name is Glenn Ross Caddy, C-A-D-D-Y.**

22

23                     _DIRECT EXAMINATION_

24  BY MR. HOLT:

10:11  25  Q.  Good morning, Dr. Caddy?

1  A.   Mr. Holt, hi.

2  Q.   Before we get started, if you could just briefly tell us

3  your general qualifications as a psychologist to testify as an

4  expert in this case?

10:11   5  A.   I am a clinical, forensic and health psychologist.  I was

6  first licensed in the United States in 1976, I believe it was,

7  or that's when I was board certified.  And then I was licensed

8  a year or two later.

9         I was educated in Australia, I held a Ph.D. from the

10:12  10  University of New South Wales.

11         THE COURT:  I'm sorry, sir, you need to speak up a

12  little bit more.

13  A.   Sorry, ma'am.

14         I was educated at the University of New South Wales.

10:12  15  I hold a Ph.D.  I have been a person who climbed the academic

16  ladder from coming to -- as a research scientist at UCLA at the

17  New Psychiatric Institute to ultimately being a full professor

18  and director of training at the university.

19         I've been at five different universities, I believe.

10:12  20  I left academic life about 20 years ago and have been in

21  private clinical and forensic and health psychology practice

22  since that date.

23         I've published a number of books, well over a hundred

24  manuscripts.  I have given lectures nationally and

10:13  25  internationally on a variety of topics.  And I have had a fair

bit of experience in dealing with aircraft or at least aircraft

personnel because for a time I worked as a consultant to United

Airlines when they had a base in Miami and when they had EAP

problems, it was quite common for me to be involved in dealing

10:13   with those issues.

So that's my general background.

Q.   Dr. Caddy, are you a neuropsychologist?

A.   **No.  I'm a clinical, forensic and health psychologist.**

Q.   Plaintiff has identified three opinions that you're going

10:13   to offer in this case, and I want to know if you're going to

offer any others.

A.   **Okay.**

Q.   One, an opinion regarding the psychological health of the

plaintiff.

10:14   Two, irregularities in the testing methods employed by

Dr. Knippa.  And three, the pro-American bias displayed in the

clinical psychology portion of Dr. Knippa's evaluation.

A.   **Could you say the third one, again, please?**

Q.   Is this a new opinion to you, Doctor?

10:14   A.   **No, I'm just wanting to clarify what -- I haven't heard the**

**words, that's all.**

Q.   The pro American bias --

A.   **Oh, okay.**

Q.   I'm reading directly from the brief.

10:14   A.   **Fine.  Okay.  I understand.  I understand the question.**

1  Q.   The pro American bias displayed in the clinical psychology

2  portion of Dr. Knippa's evaluation.   Are there any opinions

3  other than those three that you intend to offer in this case?

4  A.   **No.**

10:14  5  Q.   Since you're not a neuropsychologist, are you intending to

6  offer an opinion about neuropsychology in this case?

7  A.   **Only perhaps in the most general sense, but certainly not**

8  **an assessment of the neuropsychological functioning of the**

9  **plaintiff in this case.**

10:15  10  Q.   Specifically, what opinions regarding neuropsychology will

11  you be offering in this case?

12  A.   **Probably none.**

13  Q.   You've never met Dr. Knippa before, have you?

14  A.   **No.**

10:15  15  Q.   You've never met Dr. Bercaw before, have you?

16  A.   **No, I have not.**

17  Q.   Drs. Knippa and Bercaw are both neuropsychologists,

18  correct?

19  A.   **Yes.**

10:15  20  Q.   Dr. Kay, he's also a neuropsychologist, correct?

21  A.   **Yes.**

22  Q.   You never administered the CogScreen test to the plaintiff

23  in this case, did you?

24  A.   **No.**

10:15  25  Q.   You never administered any test to the plaintiff in this

1  case designed to test his attention, did you?

2  A.  **No.**

3  Q.  But Drs. Knippa, Bercaw and Kay all administered those

4  tests, didn't they?

10:16  5  A.  **Yes.**

6  Q.  You don't have any experience doing fitness for duty

7  evaluations for airline pilots, do you?

8  A.  **No.**

9  Q.  You're aware, as you sit here today, that Dr. Bercaw

10:16  10  performed a neuropsychological examination of the plaintiff,

11  correct?

12  A.  **Yes.**

13  Q.  And Dr. Bercaw sent Mr. Patterson, the plaintiff in this

14  case, an e-mail following that evaluation that described the

10:16  15  report, correct?

16  A.  **Yes.**

17  Q.  And you've seen that e-mail, haven't you?

18  A.  **Yes.**

19  Q.  And you've seen the report, haven't you?

10:16  20  A.  **Yes.  I don't know that I've seen the e-mail.  I've seen**

21  **the report.**

22  Q.  Okay, I'll be happy to show you the e-mail.

23          **MR. HOLT:**  Your Honor, may I approach the witness?

24          **THE COURT:**  Yes.

10:17  25          **MR. HOLT:**  May I approach the witness, Your Honor?

1          THE COURT:  Yes, of course.

2          MR. HOLT:  I also have a copy for the Court if you

3    would like.

4          THE COURT:  And you provided one to plaintiff's

10:17  5    counsel?

6          MR. AMLONG:  Yes.

7          MR. HOLT:  Yes, Your Honor.

8          THE COURT:  All right.  Thank you.

9       (Thereupon, the exhibit was marked for identification.)

10:17  10   BY MR. HOLT:

11   Q.  I've handed you what's been premarked as Defendant's

12   Exhibit 1.  Do you recognize this document?

13   A.  **I do.**

14          **Excuse me, I recognize that it's the document.  If**

10:18  15   **you're asking me do I have a memory of this document, the**

16   **answer is no.**

17   Q.  My question was do you recognize that this document is this

18   document, correct?

19   A.  **Yes, I do.**

10:18  20   Q.  You've seen this document before, haven't you?

21   A.  **I don't believe I have.**

22   Q.  Is this an e-mail from the plaintiff in this case to an

23   e-mail address EDB@MEDPSYCH.NET and copied to you?

24   A.  **Yes.**

10:18  25   Q.  And what's the date of this document?

1   A.   **April the 22nd, 2016.**

2        **MR. HOLT:**  Your Honor, I offer Exhibit 1 into

3   evidence.

4        **MR. AMLONG:**  No objection.

10:18   5        **THE COURT:**  All right.  Defendant's 1 is admitted.

6        (Thereupon, the exhibit was admitted into evidence.)

7   **BY MR. HOLT:**

8   Q.   If you look -- this is part of an e-mail chain, correct,

9   Doctor?

10:18  10   A.   **I presume it is, yes.**

11   Q.   And the first e-mail is an e-mail from Dr. Bercaw to

12   Mr. Patterson, correct?

13   A.   **Yes.**

14   Q.   And it indicates here that there was some type of report

10:19  15   done, correct?

16   A.   **Yes.**

17   Q.   And that a pdf of that report was created and it says that

18   it was attached, doesn't it?

19   A.   **It does.**

10:19  20   Q.   And plaintiff responds and says, no, there was no report

21   attached, correct?

22   A.   **Well --**

23   Q.   The very first line at the top, "The file was not

24   attached."

10:19  25   A.   **"Sorry for the delay in the report.  We did get the medical**

1  **records this week and wrapped up the report.  Pdf is attached,"**

2  **it says.**

3  Q.   In this report -- withdrawn.

4        In this e-mail that was sent to Mr. Patterson which

10:19  5  Mr. Patterson then included you on the response, it says here,

6  "Ultimately the recommendation is that this should go to review

7  by the FAA who has a few in-house neuropsychologist consultants

8  who render an opinion."  Do you see that?

9  A.   **Yes.**

10:20  10  Q.   Do you remember there being a recommendation that

11  Dr. Bercaw's report be sent to the FAA for future evaluation?

12  A.   **I don't remember this document.  And I don't remember**

13  **receiving it.  And I don't remember the issue about going to**

14  **other people.**

10:20  15  Q.   Do you dispute that you received this document, Doctor?

16  A.   **Just one second.  I want to look at something.**

17        **MR. HOLT:**  Your Honor, it appears the witness is

18  examining other records that probably haven't been provided to

19  American, given the production problems in this case.

10:20  20        **MR. AMLONG:**  Objection, Your Honor.

21        **THE COURT:**  Let's keep the level normal, please.

22  Okay.  All right.  We don't have a jury here.  All right.

23        Sir, what materials do you have next to you that

24  you're consulting?

10:21  25  A.   **What I was looking for was a billing record, Your Honor.**

And the reason that that's relevant is that I don't know
whether I was even hired at the date of this -- I need to know
when I was first hired in this case.

          THE COURT:  All right.  Sir, can you tell by looking
10:21  at the from, to, cc, et cetera, on this e-mail whether your
name appears on it or not?

A.  My name appears on it, Your Honor.

          THE COURT:  So, presumably, it either went to you or
to your junk mail?

10:21 A.  It obviously went somewhere in my system, yes, Your Honor.

          THE COURT:  And you have no recollection of this
e-mail?

A.  No.

          THE COURT:  When was the first time you saw it?

10:21 A.  The first time I saw it may have been today.

          THE COURT:  Today here and now, like when it was
handed to you?

A.  Here and now, yes.

          THE COURT:  All right.  You can follow up from there.

10:22 A.  It would be helpful, though, if I could find out when I was
hired.

          MR. AMLONG:  Your Honor, may I hand up a copy of his
billing records.

          MR. HOLT:  Your Honor, I'd like it see these records.
10:22 They're probably, again, documents that we haven't seen before

1  today.

2         Do they have a Bates number?  They do not.  These

3  appear to be new documents that are being produced now for the

4  first time, Your Honor.

10:22  5         THE COURT:  Sir, if you can remember when you were

6  hired, fine.  And if you can't, you can't.  And we'll move on.

7  A.  **I can look at --**

8         THE COURT:  No.

9  A.  **-- a document that will tell me.**

10:22  10        THE COURT:  No.

11  A.  **Okay, Your Honor.**

12         THE COURT:  Go on.

13  BY MR. HOLT:

14  Q.  Let me show you another e-mail.  Give me just one second

10:23  15  here.

16  A.  **I think I can add something to that, if I may.**

17         THE COURT:  All right.

18  A.  **I believe that at the time that Mr. -- I believe that at**

19  **the time that this examination was conducted, I was not yet**

10:23  20  **hired.  But I would have to check my records to be sure.**

21         THE COURT:  All right.  Thank you.

22         MR. HOLT:  I'd like to show you another document.  May

23  I approach, Your Honor?

24         THE COURT:  Yes.

10:24  25      (Thereupon, the exhibit was marked for identification.)

1   **BY MR. HOLT:**

2   Q.   I've handed you a document which has been premarked as

3   Defendant's Exhibit 2.  This appears to be an e-mail of the

4   same date, April 22nd, 2016, from the plaintiff also copied to

10:24   5   you.  Would you agree?

6   A.   **Yes.**

7   Q.   Have you ever seen this e-mail before?

8   A.   **I don't have any memory of seeing the e-mail, but I do have**

9   **a memory of some of the content, meaning I was aware that at**

10:24   10   **some point Scott Patterson placed some sort of restriction on**

11   **the release of his records.**

12   Q.   And you were aware of that as of April 22nd, correct?

13   A.   **I was, yes.**

14   Q.   And this e-mail was sent to you, was it not?

10:25   15   A.   **It was sent to me.**

16   Q.   Is it your usual practice for e-mails to come in and you

17   just disregard them?

18   A.   **If I think they're important to me, I will typically print**

19   **them out.  If they are not, I may disregard them and I may even**

10:25   20   **eliminate them.**

21   Q.   But in order to -- we'll come back to that.

22        In order to make that determination, you must have

23   read them first, correct?

24   A.   **Yes.**

10:25   25   Q.   So you would have read this e-mail on or around April 22nd,

1  of 2016, correct?

2  A.  **Well, I have no memory of doing so.  It's likely that I**

3  **did, yes.**

4  Q.  Do you have any reason to believe that you did not?

10:26  5  A.  **No, I have no reason to because the content is consistent**

6  **with my memory of other things that were taking place.**

7  **MR. HOLT:**  Your Honor, we offer Defendant's Exhibit 2

8  into evidence.

9  **MR. AMLONG:**  Objection to the relevancy, Your Honor.

10:26  10  This hearing -- this motion is on the narrow issue of whether

11  Dr. Caddy's opinion should be kept out because he did not

12  include his contacts with Dr. Bercaw in his expert report.

13  **MR. HOLT:**  Your Honor, what --

14  **THE COURT:**  The objection is overruled.

10:26  15  **MR. HOLT:**  Thank you, Your Honor.

16  **THE COURT:**  Defendant's 2 is admitted.

17  (Thereupon, the exhibit was admitted into evidence.)

18  **BY MR. HOLT:**

19  Q.  Does this e-mail, which is marked Defendant's Exhibit 2,

10:27  20  say that Mr. Amlong has hired Dr. Glenn Caddy to undertake a

21  comprehensive examination of all the matters dealing with my

22  case?

23  **MR. AMLONG:**  Your Honor, the e-mail speaks for itself.

24  **MR. HOLT:**  Second paragraph.

10:27  25  **THE COURT:**  I'm sorry.  I can read it.  "Mr. Amlong

1  has hired Dr. Glenn Caddy to undertake a comprehensive

2  examination of all of the matters dealings with my case."

3  That's what the e-mail says.

4  A.  **Yes.**

10:27  5          THE COURT:  Do you have a question about it?

6          MR. HOLT:  Sure.

7  BY MR. HOLT:

8  Q.  You were aware of that at the time, correct, Doctor?

9  A.  **Yes.**

10:27 10  Q.  Thank you.  Does this refresh your recollection as to

11  whether you were hired as of August 22nd, 2016?

12  A.  **No.  It -- again, I will repeat.  I was hired around about**

13  **this time but in order to know the date of my hiring I would**

14  **have to look at my documents.  It's a very simple request.  I**

10:28 15  **can give you the answer.  What I'm saying is I don't know when**

16  **the contract hiring me came on board -- arrived.**

17  Q.  Do you have any reason to distrust what the plaintiff is

18  saying in this e-mail?

19  A.  **Before I was hired in this case, I did -- I was consulted**

10:28 20  **by phone.  I did not -- I don't believe, I saw the client.  I**

21  **believe that there were several communications with counsel,**

22  **but I wasn't hired and I didn't start billing for a period that**

23  **I believe that was three or four weeks after this.  And we can**

24  **solve the problem very easily by finding out the date of the**

10:29 25  **contract.**

1  Q.   Well, but if there's work that you did that you didn't

2  bill, that wouldn't be reflected in the contract, correct?

3  A.   **I don't believe I did hardly any work at all.  I think the**

4  **amount of time that I spent on the -- I don't think I met the**

10:29   5  **client by this time.  I don't think I met the client until my**

6  **first encounter with him when the documents were signed.**

7  Q.   But you had conversations with counsel, correct?  That was

8  your testimony 30 seconds ago, Doctor.

9  A.   **I'm not going to tell you I didn't have contact with**

10:29  10  **counsel.  There was discussions about me coming on board or**

11  **not.  And I believe that I knew that he was going to see**

12  **Dr. Bercaw, but I wasn't involved in any aspect of that at the**

13  **time.  I didn't know a Dr. Bercaw.**

14  Q.   But you're aware that he was going to see Dr. Bercaw,

10:30  15  correct?

16  A.   **I was aware that he was going to see Dr. Bercaw, yes.**

17  Q.   And you were aware that the purpose of him going to see

18  Dr. Bercaw was for a neuropsychologic evaluation, correct?

19  A.   **I was aware of that, yes.**

10:30  20  Q.   And you were aware that, in fact, he went to that

21  neuropsychological evaluation, correct?

22  A.   **I was aware of all of those, yes.**

23  Q.   And you were aware that a report had been prepared,

24  correct, by Dr. Bercaw?

10:30  25  A.   **Yes.**

Q.   And that this e-mail indicates that the plaintiff is

rescinding his authorization for the plaintiff to share that

information with anybody other than you and his counsel,

correct?

10:30    5          MR. AMLONG:  Objection, Your Honor, the e-mail speaks

for itself.

THE COURT:  Should I read it?  "At the moment I am

rescinding any authorization for you to send my records

anywhere other than to Dr. Caddy, specifically those

10:31   10   authorizations entitled "Federal Aviation Administration" or

"Aviation Medical Examiner" are, at this time, rescinded.  Do

you have a question about that?

BY MR. HOLT:

Q.   You were aware of that at the time, correct, Doctor?

10:31   15   A.   **Yes.**

Q.   Thank you.  At some point you had a call with Dr. Bercaw,

didn't you?

A.   **At some point, again, my records will specify the date,**

**yes.**

10:31   20   Q.   But you don't dispute that you had a phone call with

Dr. Bercaw?

A.   **No.  It was about 15 or 20 minutes.**

Q.   And during that call you discussed the results of

Dr. Bercaw's evaluation, didn't you?

10:31   25   A.   **I did.  We did.**

1  Q.   So you were aware of the results of his evaluation at the

2  time of that phone call, correct?

3  A.   **Yes.   Not in detail, in general in terms of the phone call,**

4  **yes.**

10:32  5  Q.   And you knew that Dr. Bercaw still had concerns, correct?

6  A.   **I think he had some minimal concerns, yes.**

7  Q.   And he thought that the FAA should have one of their

8  neuropsychologists take a further look at this, correct?

9  A.   **I don't remember that, but I've been told that to be true.**

10:32  10  **That is, I don't have a detailed memory of the call.   I just**

11  **know that he had some concerns, and I don't remember whether he**

12  **suggested that somebody else ought to take a look, but if**

13  **you're telling me he did, I certainly am not going to disagree**

14  **with it.**

10:32  15  Q.   And you never told the FAA about Dr. Bercaw's evaluation,

16  did you?

17          **MR. AMLONG:**   Objection, relevance.

18  A.   **I've never spoken to --**

19          **THE COURT:**   One moment, when there's an objection you

10:32  20  need to pause.

21  A.   **Oh, excuse me, Your Honor.**

22          **THE COURT:**   And you never told the FAA about

23  Dr. Bercaw's evaluation, and your objection is --

24          **MR. AMLONG:**   It's not relevant to this hearing.

10:33  25          **THE COURT:**   All right.   I'll allow it just for

context.

A.  **I have never spoken to anybody in the FAA about anything to do with this case.**

BY MR. HOLT:

10:33   Q.  You wrote a letter to American Airlines, didn't you?

A.  **You'll need to show to me, please.**

MR. HOLT:  I will do that.

(Thereupon, the exhibit was marked for identification.)

BY MR. HOLT:

10:34   Q.  Do you recognize the document that's been marked Defense 3?

A.  **I certainly do.**

Q.  Is this a letter that you wrote, Doctor?

A.  **Yes, it is.**

Q.  It's a true and correct copy of the letter that you wrote, correct?

10:34   A.  **It certainly looks like it.**

MR. HOLT:  Your Honor, I would offer Defense Exhibit 3 into evidence.

MR. AMLONG:  No objection.

10:34   THE COURT:  All right.  Three is admitted.

(Thereupon, the exhibit was admitted into evidence.)

BY MR. HOLT:

Q.  This is a letter that you wrote on August 17th, 2017, correct?

10:34   A.  **Yes.**

```
 1  Q.   And in this letter, which you knew it was going to -- let
 2  me back up.  You knew that this letter was going to be sent to
 3  American Airlines, didn't you, Doctor?
 4  A.   I'm trying to see who I sent it to.  But do I expect that
 5  it would end up at American Airlines, yes, I think I would have
 6  expected so.
 7  Q.   And though you knew about Dr. Bercaw's evaluation at the
 8  time and you know that he had concerns that you thought ought
 9  to be sent to the FAA, you didn't mention any of that to
10  American Airlines, did you, Doctor?
11          MR. AMLONG:  Objection, relevance.  This is -- this is
12  about Dr. Kay's testimony and his expert report.  It's not
13  about what he told American Airlines.
14          MR. HOLT:  Your Honor, Dr. Caddy has unfortunately
15  participated in this ruse to mislead American Airlines, to
16  mislead frankly the Court, to mislead the FAA into believing
17  that plaintiff was fit for duty when, in fact, he was not.
18          In this letter Dr. Caddy opines that plaintiff ought
19  to be returned to duty because he's fit.  Well, he's just
20  testified here today that he has no neuropsychological
21  background, so it's hard to understand how he's doing that
22  other than in order to offer essentially a paid for opinion
23  that has no scientific value whatsoever.
24          THE COURT:  Well, but your question, obviously, there
25  has been no objection to the letter being admitted but the
```

10:34  5
10:35 10
10:35 15
10:36 20
10:36 25

1  objection was to your question and let me see if I can find the

2  question.

3          All right, here is the question.  And though you knew

4  about Dr. Bercaw's evaluation at the time that he had concerns

10:37  5  you didn't mention it to American Airlines.  So basically you

6  are asking him if he included any mention of Dr. Bercaw in this

7  letter.

8          **MR. HOLT:**  That's correct, Your Honor.

9          **THE COURT:**  Correct.

10:37  10          **MR. HOLT:**  That's correct.

11          **THE COURT:**  Is there any mention of Dr. Bercaw in this

12  letter?

13  A.  **No, Your Honor.**

14          **THE COURT:**  Next question.

10:38  15  A.  **Can I make a correction of something, though?**

16          **THE COURT:**  A correction?  A correction to your

17  testimony or to the letter?

18  A.  **Well, to neither.  I was asked --**

19          **THE COURT:**  Sir, let me just tell you, I don't know if

10:38  20  you're used to these proceedings but you can't just

21  contemporaneously add things.  So you said you wanted to make a

22  correction.  I asked you a correction to your testimony or to

23  the letter?  Which is it?  Neither?

24  A.  **It is to the testimony regarding the letter.**

10:38  25          **THE COURT:**  The testimony you just gave?

1  A.   **Regarding the letter.**

2        **THE COURT:**  All right.  So it's a correction to your

3  testimony?

4  A.   **Yes.**

10:39  5        **THE COURT:**  So what is the correction?

6  A.   **The correction is I was asked the question did I know that**

7  **this was going to go to American Airlines or did I direct it**

8  **for American Airlines.  The answer is I did not.**

9  BY MR. HOLT:

10:39 10  Q.   The question was did you know it was going to go to

11  American Airlines?

12  A.   **No, I did not.**

13  Q.   You did not know?

14  A.   **No.**

10:39 15  Q.   Did you have reason to believe this would be sent to

16  American Airlines?

17  A.   **It was a summary of my findings that I sent to counsel, I**

18  **believe.  And I was not really thinking where it was going to**

19  **go beyond going to counsel.**

10:39 20  Q.   Are you saying that counsel sent this without your

21  permission?

22  A.   **No.  I didn't give it, but I wouldn't have had a problem**

23  **with them doing whatever they wanted to do with it.**

24        But your question was I knew that this was going to go

10:39 25  to American Airlines, and I want to correct it.  I did not know

 1   that it was going to.  I didn't necessarily have a problem if

 2   it did, but I did not know that it was going there.

 3          I didn't have control of where it went after it left

 4   my office, is my point.  I say that because you seem to be

10:40  5   suggesting that I was trying to mislead American Airlines.

 6          THE COURT:  Sir, I just gave you an instruction about

 7   your testimony and you seem to not understand it.

 8          Next question, please.

 9          MR. HOLT:  Yes, Your Honor.

10:40  10  BY MR. HOLT:

11   Q.   Did you ever discuss Dr. Bercaw's evaluation with Dr. Kay?

12   A.   I don't know.  I might have.

13   Q.   Who would know the answer to that?

14   A.   Dr. Kay if he has a memory of it.  I think my focus -- I

10:41  15  think my focus in talking to Dr. Kay was dealing with the work

16   that was done in California by Dr. Knippa.

17   Q.   And you have no recollection of ever talking to him about

18   Dr. Bercaw's work, correct?

19   A.   No.  But Dr. Kay would know the answer to that perhaps.

10:41  20  Q.   Dr. Caddy, do you consider yourself a social scientist?

21   A.   I consider myself a psychologist.

22   Q.   Is that one of the social sciences?

23   A.   It's not normally -- I normally don't think of myself as a

24   social scientist.  I think that psychology is a much more

10:41  25  restricted area than social science.

1  Q.   By the way, do you have any expertise in bias?

2  A.   **Not particularly.  It's not something that I study.  I**

3  **don't do research in bias, if that's the question you're asking**

4  **me.**

10:42  5  Q.   Thank you.  One of the things you considered when you were

6  arriving at your opinions in this case were interviews that you

7  conducted of people who know the plaintiff, correct?

8  A.   **Yes.**

9  Q.   And the people that you contacted for those interviews,

10:42  10  those were all people identified for you by the plaintiff

11  himself, weren't they?

12  A.   **Yes.**

13  Q.   You didn't contact anybody outside of those people that the

14  plaintiff identified, did you?

10:42  15        **MR. AMLONG:**  Objection, relevance to this inquiry.

16        **THE COURT:**  Doesn't it go to his opinion and the basis

17  for his opinion, what he did to formulate the opinion?

18        **MR. AMLONG:**  It doesn't go to the basis of the

19  opinions to which he is going to testify in this matter.

10:43  20        **MR. HOLT:**  Your Honor --

21        **MR. AMLONG:**  These are interviews of collateral

22  sources and the issue here is whether or not his opinion is

23  infirm because he did not include in his report that he had a

24  conversation with Dr. Bercaw.

10:43  25        **THE COURT:**  I don't think it's as restricted as you're

1    phrasing it, Mr. Amlong.  They are saying that -- let me see,

2    where did I find the three opinions that he said that he's

3    giving?

4           **MR. AMLONG:**  You found them in my response.

10:43  5           **THE COURT:**  In your response.

6           Let's see.

7           **MR. HOLT:**  They're also identified in our reply.

8           **THE COURT:**  That's where I thought I had seen it

9    but -- let me look for it in the response because I remember

10:44 10   putting 1, 2 and 3.

11          **MR. HOLT:**  It's in the response -- I do I have the

12   briefing right here.  It's in the response on the top of page

13   2, begins with that first line, "Who would only testify about."

14          **THE COURT:**  Right.  Psychological health of the

10:44 15   plaintiff, irregularities in testing methods employed by

16   Dr. Knippa, and the pro American bias displayed in the clinical

17   psychology portion of Dr. Knippa's evaluation, all of which was

18   covered in Dr. Caddy's expert report.

19          So his expert report covers this three areas and

10:44 20   you're saying that they are only challenging portions of the

21   report, not the report as a whole?  Is that your contention?

22          **MR. AMLONG:**  They are challenging Dr. Caddy's failure

23   to include any mention of his conversation with Dr. Bercaw, a

24   neuropsychologist.

10:45 25          **THE COURT:**  But they're challenging the methodology of

1  the report.  Isn't that -- I mean, that's what we do.  We

2  either challenge qualification, methodology or assistance to

3  the trier of fact.

4          So it seems to me that what he did to fashion his

10:45  5  report is relevant to this inquiry.  So the objection is

6  overruled.  Go ahead.

7          **MR. HOLT:**  And Your Honor, just for purposes of

8  clarity, we're challenging all three, the qualifications and

9  methodology, and the relevance, and that's because these

10:45  10  opinions, some of them are brand new to us.  And we have just

11  heard testimony that he has no expertise in bias, for example.

12  So we would challenge the qualifications on bias.

13          **THE COURT:**  Okay.

14          **MR. HOLT:**  Also relevance as well.

10:45  15          **THE COURT:**  Okay.

16          So try then to Taylor your questions to those

17  challenges because that's how we do it so then the other side

18  has an opportunity then to try to counter your challenges.

19          **MR. HOLT:**  Absolutely, Your Honor.

10:46  20  **BY MR. HOLT:**

21  Q.  I think my question was, and I apologize if you've already

22  answered this one, you didn't interview anybody other than

23  those people identified by plaintiff, did you?

24  A.  **No, I didn't have access to interview anybody other than**

10:46  25  **those people.**

1  Q.   But you were aware at the time that -- withdrawn.

2       And none of those people you interviewed had anything

3  bad to say about the plaintiff at all, did they?

4  A.   **No.**

10:46  5  Q.   But you were aware at the time that there were people who

6  had very different accounts of the plaintiff's behavior,

7  weren't you?

8  A.   **I was aware that there were a number of people who had made**

9  **statements who had something to say about the plaintiff.  I was**

10:47 10  **also aware that he didn't know a number of these people, and he**

11  **did know some of them, but he did not have meaningful**

12  **relationships with any of them.**

13  Q.   But you were aware that there are people who had something

14  -- had you previously described it at your deposition --

10:47 15  something negative to say about --

16  A.   **Something negative to say, yes.  Some of them had several**

17  **negative things.  Some of them had one negative thing.  But**

18  **everybody that the captain sought to bring in to the equation**

19  **had something negative to say, yes.**

10:47 20  Q.   And you did not interview a single one of those people, did

21  you?

22  A.   **No.  Didn't even know how to get in touch with them.**

23  Q.   And, in fact, you criticized American Airlines for

24  considering only the reports of the people who had something

10:48 25  negative to say, haven't you?

1   A.   **Yes.**

2   Q.   And you said a sampling error to scour through dozens of

3   people to find people that would say nice things, didn't you?

4   A.   **Nasty things, I think I said.**

10:48   5   Q.   But you would agree that a sampling error to scour through

6   tons of data points and select only the nasty things, correct?

7   A.   **Or only the nice things, yes.  But if it's the case --**

8   **okay.  Standard practice in my field when you are examining**

9   **somebody is to look to people who know him well or her well in**

10:48   10   **order to take their perspective on the person.  You don't go**

11   **searching for people who don't know them.**

12   Q.   Is it also standard practice in your field to disregard the

13   results of other trained psychological professionals?

14   A.   **No.**

10:49   15   Q.   Yet, you didn't give any weight to Dr. Bercaw's evaluation,

16   did you?

17   A.   **Not very much.**

18   Q.   In fact, none at all, correct?

19   A.   **No, none at all.**

10:49   20   Q.   Have you ever disclosed in your expert report anywhere what

21   weight you've given to Dr. Bercaw's evaluation?

22   A.   **No.**

23   Q.   Did you prepare your entire evaluation yourself?

24   A.   **Yes.**

10:49   25   Q.   You didn't copy and paste anything that the plaintiff gave

 1  you?

 2  A.  **No, despite some recent statements to the contrary.**

 3  Q.  By recent statements, when were those statements made?

 4  A.  **To me?  Yesterday.  Oh, excuse me, maybe the day before and**

10:50  5  **yesterday.**

 6      (Thereupon, the exhibit was marked for identification.)

 7  **BY MR. HOLT:**

 8  Q.  I've handed you what's been marked as Defense Exhibit 4.

 9  Do you recognize it?

10:51 10  A.  **I recognize it as Exhibit 4.  I don't remember seeing it**

11  **before, but I'm sure I did.**

12  Q.  So this is an e-mail from the plaintiff to you, correct?

13  A.  **Yes.**

14  Q.  Dated April 26th, 2016, correct?

10:51 15  A.  **Yes.**

16  Q.  And in this e-mail, the -- actually, let's do it this way.

17  Is this a true and correct copy of the e-mail you received from

18  plaintiff on April 26th, 2016?

19  A.  **I'm confident that it is.**

10:51 20      MR. HOLT:  Your Honor, we offer Exhibit 4 into

21  evidence.

22      MR. AMLONG:  No objection.

23      THE COURT:  All right, 4 is admitted.

24      (Thereupon, the exhibit was admitted into evidence.)

10:51 25  **BY MR. HOLT:**

1  Q.  Here the plaintiff says, "I've asked a couple of times when

2  the report was going to be complete and a couple more days was

3  the answer.  I feel that I've provided adequate information to

4  complete an evaluation even putting it into copy so you can

10:52  5  copy and paste."

6          Do you see that, Doctor?

7  A.  **I do see that.**

8  Q.  So the plaintiff is saying he gave you information that was

9  ready to be copied and pasted, correct?

10:52  10  A.  **He did.  That's what he said.**

11  Q.  And your testimony is you didn't copy and paste anything;

12  is that correct?

13  A.  **That's true.**

14  Q.  Did you ever write to the plaintiff and say, "I'm not going

10:52  15  to copy and paste anything"?

16  A.  **No.  Why I would?**

17          **MR. HOLT:**  Your Honor, nothing further.

18          **THE COURT:**  All right.

19          **MR. AMLONG:**  May I hand up to you Exhibit Number 1,

10:55  20  which is Dr. Kay's report.  Number 2 are Mr. Patterson's

21  suggestions for what should go in the report.  Number 3 is a

22  comparison -- I'm sorry, Number 2 is a comparison.  Number 3 is

23  Mr. Patterson's suggestions.  And Number 4 is Dr. Kay's billing

24  records.

10:55  25          (Thereupon, the exhibit was marked for identification.)

_**CROSS EXAMINATION**_

BY MR. AMLONG:

Q.   Dr. Kay, let's start with the last question that Mr. Holt

asked you first.  Do you recognize Exhibit Number 1 as being

the expert report that you did in this case?

     THE COURT:  Mr. Amlong, you might want to adjust the

mic.

     MR. AMLONG:  (Complies).

BY MR. AMLONG:

Q.   Dr. Kay, do you recognize Exhibit Number 1, the expert

report that you did in this case?

A.   **I do.**

Q.   Do you recognize Exhibit Number 3 as the comments that were

suggested by Mr. Patterson?

     MR. HOLT:  Objection, Your Honor, we received these

comments only last night at 9:00 p.m.  It's completely improper

to drop something like this on me months after the end of

discovery and only hours before a hearing like this, and then

expect to come in here and have the expert rely on it and

testify about it.

     THE COURT:  All right.  I will take that into

consideration.

BY MR. AMLONG:

Q.   Do you recognize that as Mr. Patterson's comments?

A.   **Yes.**

1  Q.   Look at Number 2.  Do you recognize this as a chart that

2  was prepared by my office comparing the two?

3        MR. HOLT:  Objection, Your Honor.  Same objection.

4        THE COURT:  Hang on.  Beyond that.  Is this something

10:58  5  that you prepared, sir -- Doctor?

6  A.   **This was something that I was involved in yesterday in**

7  **Mr. Amlong's office preparing.  Most of it was not prepared by**

8  **me, but I have reviewed it.**

9        THE COURT:  So you participated in the preparation of

10:58  10  this document?

11  A.   **Yes.  The issue --**

12        THE COURT:  Hang on, just answer my question.

13  A.   **Yes, sir.**

14        THE COURT:  You anticipated in the preparation of this

10:59  15  document.

16  A.   **Yes.**

17        THE COURT:  And from your view, point of view, it's

18  accurate?

19  A.   **Yes.**

10:59  20        THE COURT:  All right.  Go on.  Again, I will take

21  into consideration the same issue.

22        MR. HOLT:  Thank you, Your Honor.

23  **BY MR. AMLONG:**

24  Q.   And Number 4, do you recognize that as your billing records

10:59  25  in this case?

1          **MR. HOLT:**  Objection, Your Honor.  The billing records

2    have not been previously produced.  They don't have a Bates

3    number on them.

4          Again, it's improper for these things which should

10:59  5    have been produced back with -- certainly by the time of

6    Dr. Caddy's deposition, now make an appearance in the middle of

7    a hearing.  We didn't even get the courtesy of these last

8    night.

9          **THE COURT:**  So let's see.  Number 2, obviously, was

10:59 10    prepared.  Number 3 and Number 4 were never produced before,

11    yet you're relying on them at this hearing?

12          Mr. Amlong; is that correct.

13          **MR. AMLONG:**  I only got Dr. Kay's billing records

14    yesterday.  They were never requested.

11:00 15    **THE COURT:**  But if you were intending to rely on this,

16    don't you think it would have been appropriate to produce them

17    at least ahead of this hearing?

18          **MR. AMLONG:**  I did not get them until yesterday.

19          **THE COURT:**  And yesterday is before today, correct?

11:00 20    **MR. AMLONG:**  It is.  I should have produced them.

21          **THE COURT:**  So you did not even have the courtesy of

22    providing this to opposing counsel?

23          **MR. AMLONG:**  That was an oversight, Your Honor.

24          **THE COURT:**  Sir, do not interrupt me, please.  The

11:00 25    court reporter cannot write both of us at the same time.  You

1  are very well aware of that.

2          **MR. AMLONG:**  Yes.

3          **THE COURT:**  All right.  So the question that I'm

4  asking you is you received this last night.  You intended to

11:00  5  use it.  But you did not furnish it to opposing counsel.

6          **MR. AMLONG:**  That's why I furnished Numbers 1, 2 and

7  3.  Not furnishing Number 4 was an oversight.

8          **THE COURT:**  It was an oversight not to furnish it even

9  though you intended to use it today?  I find that hard to

11:01  10  believe.

11          **MR. AMLONG:**  I should have sent them the billing

12  records yesterday.

13          **THE COURT:**  All right.  Well, I will let you go

14  forward with your examination because in these kind of things,

11:01  15  I try to make as complete a record as I can, but there's a

16  really good chance that you have improperly withheld these

17  matters from opposing counsel.

18          So go ahead and complete your examination.

19  **BY MR. AMLONG:**

11:01  20  Q.  Dr. Caddy, did you receive the -- did you receive the

21  materials from Mr. Patterson, I believe the e-mail is dated

22  April 26th, saying that he had given you materials you could

23  copy and paste?

24  A.  **Yes.**

11:02  25  Q.  When did you undertake Mr. Patterson's -- when did you

1  undertake being the expert for Mr. Patterson?

2  A.   I was -- my first date on the job, as it were, is 4-6-16.

3  That was the date that the contract was signed and when I first

4  started seeing him.

11:02  5  Q.   Did you cut and paste anything from Mr. Patterson's report?

6  A.   No.  Well, it's his notes rather than the report, but the

7  answer is no.

8  Q.   Is Exhibit Number 2, a correct summary of the -- is how you

9  dealt with the information that Mr. Patterson supplied you in

11:03  10  exhibit Number 3?

11  A.   Excuse me.  Which is Exhibit Number 3, please?

12  Q.   That's the notes from Mr. Patterson?

13  A.   Oh.  And could you give me the question again then, please?

14  I'm sorry.

11:03  15  Q.   Is Exhibit Number 2 a correct representation of the overlay

16  of what Mr. Patterson gave you on your expert's report?

17  A.   Yes.

18  Q.   Which is Exhibit Number 1?

19  A.   Yes.

11:03  20  Q.   Did you cut and paste anything?

21  A.   Nothing.

22  Q.   Now, I've identified you in our response as testifying

23  about the psychological health of Mr. Patterson, irregularities

24  in testing methods employed by Dr. Knippa, and the bias

11:05  25  displayed by the clinical psychology portion of Dr. Knippa's

1  evaluation, correct?

2  A.  **Yes.**

3  Q.  What did you do as part of your engagement to determine the

4  clinical -- to clinically and psychologically determine the

11:05  5  psychological health or status of Mr. Patterson?

6           **MR. HOLT:**  Objection, Your Honor, relevance.  The way

7  this case is framed, the only issue that matters in terms of

8  the psychological experts here is Dr. Knippa's finding

9  plaintiff not fit for duty.

11:06  10          Dr. Caddy has already testified that he can't testify

11  regarding neuropsychology and whether plaintiff had some other

12  psychological disorder that wasn't the basis for that finding

13  by Dr. Knippa is simply not relevant.

14          So there's no need for Dr. Caddy to opine on that and

11:06  15  we would object to any testimony about it.

16          **THE COURT:**  Wait a moment.  You're challenging this

17  opinion?

18          **MR. HOLT:**  Yes, Your Honor.

19          **THE COURT:**  And you're challenging it on relevance

11:06  20  grounds only?

21          **MR. HOLT:**  On relevance grounds predominantly and I'll

22  tell you that comes, frankly, from the plaintiff's own filings

23  in this case.

24          We moved separately in limine to exclude evidence

11:07  25  relating to the plaintiff's psychological harms or health, and

the response that we got from them was, this is a silly motion,

you don't even need to file the thing because we're never going

to offer that evidence because we know that psychological harm,

psychological damage is not an element of damages that's

11:07  recoverable.

So based on that, we understood that psychological

health and harms are out of this case, and now we're hearing

something completely different after the briefing on motions in

limine has been done for quite some time.

11:07  So I think that not only is it irrelevant, but they

ought to also be estopped from changing their position halfway

through in a way that harms American.  We relied on that

representation.

THE COURT:  Are you offering this opinion, namely the

11:07  psychological health of the plaintiff, in support of a claim of

mental or emotional damages?

MR. AMLONG:  No.

THE COURT:  What are you offering this opinion for.

MR. AMLONG:  I'm offering it to show the invalidity of

11:08  the portion of Dr. Knippa's report that goes on at length about

the clinical psychological infirmities of Mr. Patterson.

THE COURT:  Okay.  So you're saying that Dr. Knippa's

report was not a -- what I thought had been given as a

neuropsychological report?

11:08  MR. AMLONG:  He starts -- it's divided into two parts.

1    He does neuropsychological testing and has opinions about that.

2    Dr. Kay will deal with that at trial.  He then goes off into a

3    substantial portion of his report, and we'll go through this

4    with Dr. Kay now and --

11:08   5         THE COURT:  No, we're not going to spend a lot of time

6    on something that is irrelevant (sic).

7         MR. AMLONG:  It's not irrelevant because his --

8    Dr. Knippa in his report includes a number of criticisms of

9    Mr. Patterson's mental health suggesting that he has a

11:09   10    personality disorder with immature and narcissistic features,

11    suggested that he has interpersonal and communication skills

12    deficits, suggesting that he is on the cusp of the autism

13    spectrum.

14         THE COURT:  Okay.  And are any of those things a basis

11:09   15    for Dr. Knippa's determination that he was not fit to fly?

16         MR. AMLONG:  Dr. Knippa does not give any grounds for

17    that.  He just goes to this report and he suggests that he

18    needs counseling.  He suggests that perhaps he has a learning

19    disability.  He raises all of these.  He raises all of these

11:10   20    speculations about his mental health which Dr. Caddy can

21    refute.  Dr. Caddy has never -- Dr. Caddy cannot say, other

22    than by channeling Dr. Kay, which he can't do, obviously, that

23    he is neuropsychologically fit for duty.  But he can testify

24    that those portions of Dr. Knippa's report dealing with the

11:10   25    clinical psychological aspects of Mr. Patterson are ill done

1   and misleading.

2          THE COURT:  So is Dr. Caddy being a rebuttal expert to

3   Dr. Knippa?

4          MR. AMLONG:  Yes.  I mean, you know, he's not going to

11:11  5   get up there and say Dr. Knippa -- unless Dr. Knippa's report

6   comes in, unless Dr. Knippa comes in, then this testimony

7   wouldn't be coming in.

8          THE COURT:  I thought he was your initial expert?

9          MR. AMLONG:  He is my initial expert to the point that

11:11  10  he and Dr. Kay and a neurologist all supplied -- their reports

11  were all supplied to American and American, nonetheless, said

12  that he's refused to even have Mr. Patterson examined by

13  anybody, other than Dr. Knippa.

14         At one point an offer was made to send these reports

11:11  15  to --

16         MR. HOLT:  Objection, Your Honor, if we're talking

17  about settlement --

18         THE COURT:  We're really going far afield.  I'm only

19  interested in a Daubert motion and a challenge to Dr. Caddy's

11:11  20  expert report.

21         MR. AMLONG:  Right.

22         THE COURT:  Now, the challenge I thought was on this

23  psychological health that it's irrelevant to the issues before

24  the Court because there is no claim of mental or emotional

11:12  25  harm.  You have confirmed that there's no claim of mental or

1    emotional harm.

2         **MR. AMLONG:**  Correct.

3         **THE COURT:**  But now you're saying that Dr. Caddy's

4    report is really a rebuttal to a portion of Dr. Knippa's

11:12  5    report, so I asked you is Dr. Knippa's opinion, which

6    apparently is the crux of this case, that the plaintiff is not

7    fit to fly and that's this whole USERRA thing, I asked you is

8    it based on the neuropsychological testing or on the -- or on

9    what you're saying is all this extra, my word, fluff.  And you

11:13 10   seem to say you can't tell from the report which is which.

11        **MR. AMLONG:**  He lumps it all in together.

12        **THE COURT:**  All right.  And hang on.  Defense counsel

13   is trying to catch my attention.

14        **MR. HOLT:**  Your Honor, his final recommendation

11:13 15   couldn't be more clear.  Mr. Patterson has opined to be

16   identified by the current assessment as not fit for duty as a

17   FO, first officer, on the basis of impaired performances on

18   cognitive assessment.  That's the basis for the opinion.  The

19   cognitive assessment.

11:13 20        That's not the other psychological stuff, that's his

21   cognitive abilities, what the neuropsychologist tested.  That's

22   what Dr. Knippa tested, Dr. Bercaw testified, Dr. Kay tested

23   it, not knowing that Dr. Bercaw had previously given the same

24   test.

11:13 25        **THE COURT:**  So that's the standard for deciding

whether a pilot can fly or cannot fly.  Do you all agree on

that?

        MR. AMLONG:  Then why did Dr. Knippa go on for several

pages rambling about his personality disorder, his

interpersonal skills, his communication skills, and his needing

counseling, which Dr. Atone (ph.) recommended?

        THE COURT:  All right.  Let me ask another question.

        Do you challenge Dr. Caddy's qualifications aside from

this case in general to testify about psychological health?

        MR. HOLT:  Generally speaking, if he employed -- his

qualifications, no.  His methodology here, of course.

        THE COURT:  His methodology here you're challenging.

So you're saying, Number 1) it's irrelevant; Number 2) the

methodology is inappropriate and the way that you were

challenging it I thought was --

        MR. HOLT:  (Nodding).

        THE COURT:  -- because he didn't talk to the negative

people?

        MR. HOLT:  That showed his selection bias, the very

same bias --

        THE COURT:  Tell me what your challenges are so I can

tell Mr. Amlong what to address because I'm not going to sit

here and listen to the whole story of how Dr. Caddy came up

with his very substantial, very lengthy, very long report.

        MR. HOLT:  Surely very long report.  We challenge it

1  because, first, he's got a selection bias here that he

2  testified --

3          THE COURT:  All right.  I challenge it on selection

4  bias, so you need to address who he talked to.

11:15   5          What else?

6          MR. HOLT:  We challenge it based on his general

7  exclusion of evidence and, frankly, Judge, we challenge it

8  based -- we think that all of it ought to also be excluded

9  because of the lies that have gone on under oath in this case.

11:15  10          THE COURT:  All right.  I said that I would take that,

11  you know, to the side.  So we're strictly on Daubert here.

12          MR. HOLT:  Correct, Your Honor.

13          THE COURT:  All right.  So you're challenging on him

14  not talking to the negatives and him not having -- and him

11:15  15  what?

16          MR. HOLT:  Generally, cherry-picking data.  We know he

17  did it with Dr. Bercaw, we know he did it by not talking to the

18  negatives, we don't know where else he might have

19  cherry-picked, but we know at least of those.

11:16  20          THE COURT:  But that data is about the

21  neuropsychology.

22          MR. HOLT:  That's correct, but --

23          THE COURT:  And he's not qualified to opine on

24  neuropsychology.

11:16  25          MR. HOLT:  Right.  And that's correct, Your Honor.

1          **THE COURT:**  All right.  So biased on who he took into

2   account in giving his psychological health opinion, you can

3   address that.

4          **MR. AMLONG:**  Okay.

11:16   5          **THE COURT:**  And that's it on this issue.

6   BY MR. AMLONG:

7   Q.   So how long have you been practicing forensic psychology?

8   A.   **Nearly 40 years.**

9   Q.   And amongst forensic psychologists, how common is it to

11:16  10  survey, I believe it's called collateral sources?

11  A.   **Collateral sources, yes.**

12  Q.   And tell the Judge what a collateral source is, and why you

13  would consult with them?

14  A.   **A collateral source, Your Honor, is somebody who knows the**

11:17  15  **subject very well, and the purpose of undertaking collateral**

16  **source review is to gain further perspective outside of the**

17  **person about that person and about issues that might be**

18  **relevant to aspects of the case, so that talking to a wife,**

19  **talking to friends, talking to employment relationships, would**

11:17  20  **be standard practice.  Talking to people who I don't even know**

21  **and who he doesn't even know and arguing that I should have**

22  **somehow gone searching for them, is not something I could do.**

23          **THE COURT:**  Sir, I'm sorry.  Again, please try to

24  stick to answering the question.  You've defined collateral

11:17  25  source.

1  A.  **Source process.  Yes.**

2      **THE COURT:**  Next question.

3  BY MR. AMLONG:

4  Q.  Whom did you -- to whom were you pointed and to whom did

11:18  5  you speak in trying to assess Mr. Patterson?

6  A.  **Well, they're all in the report, but I think there are**

7  **about 11 or 12 people.  There were people who he works with,**

8  **there was a woman who is on the homeowners' association.  There**

9  **were close friends.  There was his wife.  And the totality was**

11:18  10  **I think about 11 people.**

11  Q.  How many military people did you speak to?

12  A.  **A couple.**

13  Q.  At what rank?

14  A.  **Quite senior rank.  Well, one -- I think there was -- one**

11:18  15  **was a sergeant, but others were -- I think that one was a**

16  **brigadier general.  I can pull it up but --**

17  Q.  And in addition to collateral sources, did you do

18  collateral interviews?

19  A.  **I did extensive clinical interviews, and also testing.**

11:19  20  Q.  How much testing did you do?

21  A.  **What would be standard, general battery, MMPI and a variety**

22  **of other protocols.**

23  Q.  And if we were going to assign a weight to the collateral

24  source input, would it be five percent, ten percent, what

11:19  25  impact did the collateral source data have on your formation of

1  opinion?

2  A.  **I had much more than that.  Certainly, it would have had**

3  **probably 40, 50 percent.**

4  Q.  And is collateral -- are collateral source interviews akin

11:20  5  to collecting reference letters?

6  A.  **No.  They're much more detailed than that.  On the other**

7  **hand, I asked for people who knew him very well.  And I got**

8  **people who knew him very well.  Several of them, for example,**

9  **were co-workers for American.**

11:20  10  Q.  How widespread or where did you learn to do collateral

11  source interviews as part of forensic psychology?

12  A.  **It's a standard protocol.  You would never conduct an**

13  **examination, a forensic examination without taking substantial**

14  **collateral source review.**

11:21  15  Q.  And how many times have you testified?

16  A.  **Over two thousand times.**

17  Q.  And how many of those two thousand cases have you used a

18  similar approach to collateral sources?

19  A.  **Any time when it would be appropriate to use collateral**

11:21  20  **sources I've used them.**

21        MR. AMLONG:  If collateral source is the only thing

22  with which you're concerned, I think I've covered that.

23        THE COURT:  That seems to be a challenge made by

24  defense counsel other than this business of whether he omitted

11:22  25  things which, as I said, that's not a straight Daubert issue.

```
    1    So that's it.  What else?  What are your other challenges?  You

    2    challenged his bias opinion because he has no background in

    3    bias.

    4           Do you want to address that?

11:22    5           MR. AMLONG:  Yes.

    6    BY MR. AMLONG:

    7    Q.  Now, when you -- while you're not a neuropsychologist, you

    8    are familiar with psychological testing or psychometrics,

    9    correct?

11:23   10    A.  Yes.  I also do some neuropsychological testing.

   11    Q.  And what is psychometrics?

   12           THE COURT:  Wait.  Hold on, we're talking about bias.

   13           MR. AMLONG:  Yes.  I'm getting there.

   14           THE COURT:  Bias of Dr. Knippa in favor of American.

11:23   15           MR. AMLONG:  Yes.

   16           THE COURT:  What does psychometrics have to do with

   17    that?

   18    BY MR. AMLONG:

   19    Q.  Did you review Dr. Knippa's treatment of the testing

11:23   20    results?

   21    A.  Yes.

   22    Q.  Did you find the testing results and his presentation of

   23    them to not give you grounds to tell the jury I think he's

   24    biased, but to tell the jury that the presentation of them was

11:24   25    irregular and --
```

```
 1              THE COURT:  I'm sorry.  Mr. Amlong, there's three
 2    issues.  There's irregularity in testing and there's bias.
 3    You're addressing bias, bias for American.
 4              MR. AMLONG:  Yes.
11:24  5         THE COURT:  That's what you're addressing?
 6              MR. AMLONG:  Yes.
 7              THE COURT:  Okay.  So how are you going about doing
 8    that?
 9    BY MR. AMLONG:
11:24 10   Q.   Did you infer from Dr. Knippa's presentation of the
 11   clinical psychological portions of Mr. Patterson's examination
 12   that there was a bias there?
 13             MR. HOLT:  Objection, Your Honor, relevance.  Whether
 14   a particular witness has a bias is a matter for the jury to
11:24 15   consider, not for one expert to opine on another.  I would
 16   suggest that none of us have ever seen an expert in here saying
 17   that other expert is lying because it's improper.
 18             MR. AMLONG:  I'm not -- if I could finish my
 19   questioning, I will --
11:25 20        THE COURT:  I thought you were finished with the
 21   question.
 22             MR. AMLONG:  No, I'm not.
 23             THE COURT:  Why don't you try to phrase it in a more
 24   direct way, so we can move along?
11:25 25   BY MR. AMLONG:
```

```
 1  Q.  Did you find --

 2          THE COURT:  Will you let me ask him?  What's the basis

 3  for your opinion that Dr. Knippa is biased is in favor of

 4  American?  Can you give me a straight answer to that?

 5  A.  Certainly, Your Honor.

 6          THE COURT:  Okay, go ahead.

 7  A.  In each of the testing that is -- each of the various tests

 8  that he does --

 9          THE COURT:  Are you including both neuropsychological

10  testing and the tests that you do?

11  A.  No.  I'm going to focus on the clinical testing.

12          THE COURT:  The ones that you know about?

13  A.  Yep.

14          THE COURT:  Okay.  Telling me about how he reported

15  those tests, right?

16  A.  He -- not just the test, but the integration between the

17  tests and his clinical assessment is what's relevant.  And in

18  that presentation, he keeps on -- he'll tackle one particular

19  area like, for example, some psychological --possible

20  psychological condition, and he'll go all the way up to the

21  line and talk about it but then say, "but it doesn't quite

22  reach."  He can't -- he doesn't have enough data to make an

23  ultimate opinion there so he backs away, and he keeps on doing

24  that throughout the sequence.

25          THE COURT:  And you interpret that as bias in favor of
```

11:25  5
11:25  10
11:25  15
11:26  20
11:26  25

1  American?

2  A.  **I am saying that -- yes.**

3         THE COURT:  Okay.  Got it.  All right.  I got it.

4         Next question.

11:26  5         MR. AMLONG:  I'm not going to ask him if he thinks

6  it's bias, I'm going to ask him to describe the way that

7  Dr. Knippa presented this and the jury can infer.  It's up to

8  the jury to decide Dr. Knippa's credibility.

9         THE COURT:  And opinion seems to be pro American bias

11:27 10  displayed by Dr. Knippa.  Is this coming from your response?

11         MR. AMLONG:  It is, and I'm going to introduce

12  evidence --

13         THE COURT:  So he's placing that bias on the way that

14  Dr. Knippa comes up to the line and then retreats.  That's how

11:27 15  you interpret it.  Right?

16  A.  **Correct, Your Honor.**

17         THE COURT:  All right.  So I think I've heard enough

18  about the bias issue.  What about the irregularities in testing

19  methods?  Are you an expert in neuropsychological testing?

11:27 20  A.  **No, Your Honor.**

21         THE COURT:  How can you opine about irregularities in

22  neuropsychological testing methods.

23  A.  **I wasn't planning on it, Your Honor.**

24         THE COURT:  All right.  So this is a misstatement in

11:27 25  the submission to the Court that says that you will testify

1  about irregularities in testing methods employed by John

2  Knippa, Ph.D.?  That is not accurate?

3  A.  **No, I'm quite happy to opine on those testing methods.  But**

4  **I'm opining on the testing methods dealing with clinical**

11:28  5  **psychology, not the neuropsychological component.**

6        **THE COURT:**  All right.  So it's limited to -- and

7  limited to the tests that you know about.

8  A.  **The tests that he did that I know about, yes.**

9        **THE COURT:**  All right.  So that's your other opinion

11:28  10  that there were irregularities.  Is that sort of like along the

11  lines of coming up to the line and retreating back, so that

12  same thing?

13  A.  **That's exactly what I meant, Your Honor.  Yes.**

14        **THE COURT:**  All right.  I got it.  You can follow up

11:28  15  anything else, but I think I understand Dr. Caddy's position.

16  **BY MR. AMLONG:**

17  Q.  Did you and -- when Dr. Bercaw telephoned you --

18  A.  **Yes.**

19  Q.  -- was part of your discussion concerning who actually

11:29  20  performed the test?

21  A.  **I don't remember whether that came up on the discussion on**

22  **the phone.  I had information that it was partly Dr. Bercaw and**

23  **partly an assistant.  I don't remember whether I asked**

24  **Dr. Bercaw about that.  I think the focus was on his**

11:29  25  **impressions of the examinee.**

1          THE COURT:  Do you have anything else to address in

2   terms of the Daubert?

3          MR. AMLONG:  I want to refresh his recollection by

4   asking him a question about his deposition.

11:30  5          THE COURT:  Regarding the Daubert requirements?

6          MR. AMLONG:  Regarding his conversation with

7   Dr. Bercaw.

8          THE COURT:  Does that have to do with his methodology?

9          MR. AMLONG:  No.

11:30 10          THE COURT:  What does it have to do with?

11          MR. AMLONG:  With whether or not Dr. Bercaw confirmed

12   to him that Dr. Fonseca had done a substantial part of the

13   testing.

14          THE COURT:  All right.  And what issue in Daubert does

11:30 15   that go to?

16   A.  **Well, if you are not concerned with his excluding**

17   **Dr. Bercaw, a neuropsychologist from his report or his opinion,**

18   **it doesn't matter.**

19          THE COURT:  That goes to -- you're saying that that

11:30 20   goes to his methodology?

21          MR. HOLT:  It does, and, frankly, Your Honor, this

22   is -- in the response brief that we got from the plaintiff it

23   was the first time we heard that Dr. Caddy was not going to

24   opine that the plaintiff has always been fit for duty.  I mean,

11:31 25   that was our understanding for the entirety of this litigation

1  that he was going to take the stand at trial and say the

2  plaintiff was always fit for duty.  And so for him to make that

3  statement, his disregard of Dr. Bercaw's report is critical.

4         **THE COURT:**  But he's not making that statement.

11:31  5      **MR. HOLT:**  But now he's changed his mind about what

6  he's going to testify about and not make that statement.

7         **THE COURT:**  So he didn't have to take into account any

8  neuropsychological testing because he's only opining about

9  psychological health.

11:31  10       **MR. HOLT:**  We still believe, Your Honor, that the fact

11  that he was so willing to disregard that and offer an opinion

12  to American and offer opinions throughout this case reflect his

13  general bias.

14         **THE COURT:**  All right.  So I think I have enough now.

11:31  15       What I wanted to address to defense counsel is you

16  seem to be saying in your motion and in your reply that there

17  are additional reasons to exclude Dr. Caddy because of all this

18  back and forth, he didn't disclose Dr. Bercaw, all of that.

19         I would suggest that you gather all that up and file

11:32  20  it as a motion for sanctions, which is what you are saying,

21  forecasting that you will do, and that we keep this motion

22  strictly as a Daubert motion because there is no basis under

23  Daubert other than maybe by inference methodology and proper

24  and all of that, but I think it would be really mixing apples

11:32  25  and oranges for us to go that route.

1       So whatever you want to pursue by way of improper

2  conduct, whether it's the expert, the counsel, the plaintiff,

3  or whoever else is involved, you can address that in that

4  fashion.  And I'm not sure if there's any kind of deadline for

11:32  5  motions, but I will allow the filing of that motion.

6       **MR. HOLT:**  Thank you, Your Honor.

7       **THE COURT:**  All right?  So we are down then in terms

8  of Daubert to his qualifications and his methodology for the

9  opinion about the bias.  You're saying he's not qualified to

11:33  10  opine on bias.  He explained to me how he came up with the idea

11  of the challenging irregularity and testing methods limited to

12  psychological testing, and the limitation on his psychological

13  health, not for damages, but as a rebuttal to Dr. Knippa's --

14  the portion of Dr. Knippa's report that addresses psychological

11:34  15  issues, even though the bottom line conclusion of Dr. Knippa is

16  wholly based, from what you read, on his cognitive --

17       **MR. AMLONG:**  That's correct.

18       **THE COURT:**  -- status.  So with that in mind, I will

19  evaluate whether Dr. Caddy should or should not testify as to

11:34  20  any of these things at trial in compliance with Daubert.

21       Anything else from either side.

22       **MR. AMLONG:**  And, Your Honor, Dr. Caddy is not going

23  to get up and say, I think Dr. Knippa is biased.  He's simply

24  going to lay out as he did for you --

11:34  25       **THE COURT:**  Came up to the line and retreated.  I got

1  that.

2          MR. AMLONG:  Over and over again.

3          THE COURT:  I got that.  I understood that.

4          MR. HOLT:  Frankly, it sounds like he's about to do

11:34  5  the same thing with his bias opinion that he criticizes

6  Dr. Knippa for doing, which is coming up to the line and not

7  saying it.  Saying there's an issue here, but I'm not going say

8  he's biased and, Your Honor, I mean, there's got to be a goose

9  and gander.

11:35 10          Rule number one of trials is the sauce for the goose

11  is the sauce for the gander.  So I don't see how he can do that

12  that unless he's going to opine that Dr. Knippa was biased.

13          THE COURT:  All right.

14          MR. AMLONG:  Well, he can't opine that Dr. Knippa --

11:35 15  he can't opine.

16          THE COURT:  I've heard enough.  Thank you very much.

17          Thank you, Dr. Caddy, for coming in.  You're excused,

18  sir.

19          THE COURTROOM DEPUTY:  Court's adjourned.

20           (Thereupon, the above hearing was concluded.)

21

22                    *          *          *

23

24

25

1               **C E R T I F I C A T E**

2

3         I hereby certify that the foregoing is an accurate

4 transcription of the proceedings in the above-entitled

5 matter.

6

8    10/03/2018

9 DATE COMPLETED        GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## 1

**1** [12] - 2:12, 2:20, 10:12, 11:2, 11:5, 27:10, 32:19, 33:4, 33:10, 36:6, 37:18, 43:13
**10** [1] - 2:20
**10/03/2018** [1] - 57:8
**11** [3] - 2:20, 46:7, 46:10
**12** [1] - 46:7
**14** [1] - 2:21
**15** [1] - 19:22
**16** [1] - 2:21
**17-60533-civil-Martinez** [1] - 3:4
**17-CV-60533-JEM** [1] - 1:2
**17th** [1] - 21:23
**1976** [1] - 6:6

## 2

**2** [16] - 2:13, 2:21, 15:3, 16:7, 16:16, 16:19, 27:10, 27:13, 32:20, 32:22, 34:1, 35:9, 36:6, 37:8, 37:15, 43:13
**20** [2] - 6:20, 19:22
**2016** [6] - 11:1, 15:4, 16:1, 17:11, 31:14, 31:18
**2017** [1] - 21:23
**2018** [1] - 1:5
**21** [2] - 2:22
**22nd** [5] - 11:1, 15:4, 15:12, 15:25, 17:11
**26th** [3] - 31:14, 31:18, 36:22
**28** [1] - 1:5
**2nd** [1] - 1:14

## 3

**3** [12] - 2:14, 2:22, 21:10, 21:17, 27:10, 32:21, 32:22, 33:13, 35:10, 36:7, 37:10, 37:11
**30** [1] - 18:8
**305** [1] - 1:23
**31** [2] - 2:23
**32** [4] - 2:12, 2:13, 2:14, 2:15
**33** [1] - 2:3
**33128** [1] - 1:23
**33301** [2] - 1:14, 1:19

## 4

**4** [10] - 2:15, 2:23, 31:8, 31:10, 31:20, 31:23, 32:23, 34:24, 35:10, 36:7
**4-6-16** [1] - 37:2
**40** [2] - 45:8, 47:3
**400** [1] - 1:22
**450** [1] - 1:18
**462-1983** [1] - 1:15

**4th** [1] - 1:14

## 5

**5** [1] - 2:3
**50** [1] - 47:3
**500** [1] - 1:14
**523-5634** [1] - 1:23

## 8

**800** [1] - 1:18
**847-4709** [1] - 1:19
**8th** [1] - 1:22

## 9

**954** [2] - 1:15, 1:19
**9:00** [1] - 33:16

## A

**abilities** [1] - 42:21
**above-entitled** [1] - 57:4
**absolutely** [1] - 28:19
**academic** [2] - 6:15, 6:20
**access** [1] - 28:24
**according** [1] - 5:1
**account** [2] - 45:2, 54:7
**accounts** [1] - 29:6
**accurate** [3] - 34:18, 52:2, 57:3
**add** [2] - 14:16, 23:21
**addition** [1] - 46:17
**additional** [1] - 54:17
**address** [9] - 4:20, 10:23, 43:22, 44:4, 45:3, 48:4, 53:1, 54:15, 55:3
**ADDRESS** [1] - 1:18
**ADDRESS-B2** [1] - 1:18
**addresses** [1] - 55:14
**addressing** [2] - 49:3, 49:5
**adequate** [1] - 32:3
**adjourned** [1] - 56:19
**adjust** [1] - 33:6
**administered** [3] - 8:22, 8:25, 9:3
**Administration** [1] - 19:10
**Admitted** [2] - 2:11, 2:19
**admitted** [9] - 11:5, 11:6, 16:16, 16:17, 21:20, 21:21, 22:25, 31:23, 31:24
**afield** [1] - 41:18
**ago** [2] - 6:20, 18:8
**agree** [3] - 15:5, 30:5, 43:1
**ahead** [6] - 3:18, 5:12, 28:6, 35:17, 36:18, 50:6
**aircraft** [1] - 7:1
**airline** [1] - 9:7
**Airlines** [17] - 3:4, 3:9, 7:3, 21:5, 22:3, 22:5, 22:10,

22:13, 22:15, 23:5, 24:7, 24:8, 24:11, 24:16, 24:25, 25:5, 29:23
**AIRLINES** [2] - 1:6, 1:17
**akin** [1] - 47:4
**ALICIA** [1] - 1:9
**allow** [4] - 4:17, 4:18, 20:25, 55:5
**American** [31] - 3:4, 3:9, 7:16, 7:22, 8:1, 12:19, 21:5, 22:3, 22:5, 22:10, 22:13, 22:15, 23:5, 24:7, 24:8, 24:11, 24:16, 24:25, 25:5, 27:16, 29:23, 39:12, 41:11, 47:9, 48:14, 49:3, 50:4, 51:1, 51:9, 54:12
**AMERICAN** [2] - 1:6, 1:17
**AMLONG** [76] - 1:12, 1:13, 3:6, 3:13, 3:19, 4:3, 4:8, 4:14, 10:6, 11:4, 12:20, 13:22, 16:9, 16:23, 19:5, 20:17, 20:24, 21:19, 22:11, 26:15, 26:18, 26:21, 27:4, 27:22, 31:22, 32:19, 33:2, 33:8, 33:9, 33:23, 34:23, 35:13, 35:18, 35:20, 35:23, 36:2, 36:6, 36:11, 36:19, 39:17, 39:19, 39:25, 40:7, 40:16, 41:4, 41:9, 41:21, 42:2, 42:11, 43:3, 45:4, 45:6, 46:3, 47:21, 48:5, 48:6, 48:13, 48:15, 48:18, 49:4, 49:6, 49:9, 49:18, 49:22, 49:25, 51:5, 51:11, 52:16, 53:3, 53:6, 53:9, 53:11, 55:17, 55:22, 56:2, 56:14
**Amlong** [11] - 1:13, 3:6, 16:20, 16:25, 27:1, 33:6, 35:12, 43:22, 49:1
**amlong's** [1] - 34:7
**amount** [1] - 18:4
**answer** [9] - 10:16, 17:15, 24:8, 25:13, 25:19, 32:3, 34:12, 37:7, 50:4
**answered** [1] - 28:22
**answering** [1] - 45:24
**anticipated** [1] - 34:14
**apologize** [1] - 28:21
**appear** [1] - 14:3
**appearance** [1] - 35:6
**appearances** [1] - 3:5
**apples** [1] - 54:24
**approach** [4] - 9:23, 9:25, 14:23, 47:18
**appropriate** [2] - 35:16, 47:19
**April** [7] - 11:1, 15:4, 15:12, 15:25, 31:14, 31:18, 36:22
**area** [2] - 25:25, 50:19

**areas** [1] - 27:19
**arguing** [1] - 45:21
**arranged** [1] - 3:21
**arrived** [1] - 17:16
**arriving** [1] - 26:6
**aside** [1] - 43:8
**aspect** [1] - 18:12
**aspects** [2] - 40:25, 45:18
**assess** [1] - 46:5
**assessment** [5] - 8:8, 42:16, 42:18, 42:19, 50:17
**assign** [1] - 46:23
**assistance** [1] - 28:2
**assistant** [1] - 52:23
**association** [1] - 46:8
**assumed** [1] - 4:15
**Atone** [1] - 43:6
**attached** [4] - 11:18, 11:21, 11:24, 12:1
**attention** [2] - 9:1, 42:13
**August** [2] - 17:11, 21:23
**Australia** [1] - 6:9
**authorization** [2] - 19:2, 19:8
**authorizations** [1] - 19:10
**autism** [1] - 40:12
**available** [2] - 3:21
**Avenue** [1] - 1:22
**Aviation** [2] - 19:10, 19:11
**aware** [19] - 9:9, 15:9, 15:12, 17:8, 18:14, 18:16, 18:17, 18:19, 18:20, 18:22, 18:23, 19:14, 20:1, 29:1, 29:5, 29:8, 29:10, 29:13, 36:1

## B

**B2** [1] - 1:18
**BAAN** [2] - 1:21, 57:9
**BAAN-PROULX** [2] - 1:21, 57:9
**background** [3] - 7:6, 22:21, 48:2
**backs** [1] - 50:23
**bad** [1] - 29:3
**base** [1] - 7:3
**based** [5] - 39:6, 42:8, 44:6, 44:8, 55:16
**basis** [8] - 26:16, 26:18, 38:12, 40:14, 42:17, 42:18, 50:2, 54:22
**Bates** [2] - 14:2, 35:2
**battery** [1] - 46:21
**BEFORE** [1] - 1:9
**begin** [1] - 4:22
**begins** [1] - 27:13
**behalf** [2] - 3:6, 3:9
**behavior** [1] - 29:6
**Bercaw** [1] - 1:25, 8:15, 8:17, 9:3, 9:9, 9:13, 11:11, 16:12, 18:12, 18:13, 18:14,

18:16, 18:18, 18:24, 19:16, 19:21, 20:5, 23:6, 23:11, 26:24, 27:23, 42:22, 42:23, 44:17, 52:17, 52:22, 52:24, 53:7, 53:11, 53:17, 54:18
**Bercaw's** [11] - 12:11, 19:24, 20:15, 20:23, 22:7, 23:4, 25:11, 25:18, 30:15, 30:21, 54:3
**better** [1] - 4:7
**between** [1] - 50:16
**beyond** [2] - 24:19, 34:4
**bias** [31] - 7:16, 7:22, 8:1, 26:1, 26:3, 27:16, 28:11, 28:12, 37:24, 43:19, 43:20, 44:1, 44:4, 48:2, 48:3, 48:12, 48:14, 49:2, 49:3, 49:12, 49:14, 50:25, 51:6, 51:9, 51:13, 51:18, 54:13, 55:9, 55:10, 56:5
**biased** [6] - 45:1, 48:24, 50:3, 55:23, 56:8, 56:12
**bill** [1] - 18:2
**billing** [8] - 12:25, 13:23, 17:22, 32:23, 34:24, 35:1, 35:13, 36:11
**bit** [2] - 6:12, 7:1
**Blvd** [1] - 1:18
**board** [3] - 6:7, 17:16, 18:10
**books** [1] - 6:23
**bottom** [1] - 55:15
**brand** [1] - 28:10
**brief** [1] - 7:24, 53:22
**briefing** [4] - 5:3, 5:6, 27:12, 39:8
**briefly** [1] - 6:2
**brigadier** [1] - 46:16
**bring** [1] - 29:18
**business** [1] - 47:24
**BY** [29] - 1:21, 5:24, 10:10, 11:7, 14:13, 15:1, 16:18, 17:7, 19:13, 21:4, 21:9, 21:22, 24:9, 25:10, 28:20, 31:7, 31:25, 33:2, 33:9, 33:23, 34:23, 36:19, 45:6, 46:3, 48:6, 48:18, 49:9, 49:25, 52:16

**C**

**C-A-D-D-Y** [1] - 5:21
**CADDY** [2] - 2:4, 5:15
**Caddy** [25] - 4:14, 4:15, 5:13, 5:21, 5:25, 7:7, 16:20, 17:1, 19:9, 22:14, 22:18, 25:20, 36:20, 38:10, 38:14, 40:20, 40:21, 41:2, 43:23, 53:23, 54:17, 55:19, 55:22, 56:17
**Caddy's** [9] - 5:1, 16:11,

27:18, 27:22, 35:6, 41:19, 42:3, 43:8, 52:15
**California** [1] - 25:16
**cannot** [3] - 35:25, 40:21, 43:1
**captain** [1] - 29:18
**CASE** [1] - 1:2
**case** [31] - 3:4, 5:3, 6:4, 7:10, 8:3, 8:6, 8:9, 8:11, 8:23, 9:1, 9:14, 10:22, 12:19, 13:3, 16:22, 17:2, 17:19, 21:3, 26:6, 30:7, 33:5, 33:11, 34:25, 38:7, 38:23, 39:7, 42:6, 43:9, 44:9, 45:18, 54:12
**cases** [1] - 47:17
**catch** [1] - 42:13
**causing** [1] - 3:22
**cc** [1] - 13:5
**certainly** [7] - 8:7, 20:13, 21:11, 21:16, 35:5, 47:2, 50:5
**certified** [1] - 6:7
**certify** [1] - 57:3
**cetera** [1] - 13:5
**chain** [1] - 11:8
**challenge** [10] - 28:2, 28:12, 41:19, 41:22, 43:8, 43:25, 44:3, 44:6, 44:7, 47:23
**challenged** [4] - 3:24, 3:25, 4:13, 48:2
**challenges** [6] - 4:18, 4:20, 28:17, 28:18, 43:21, 48:1
**challenging** [11] - 4:17, 27:20, 27:22, 27:25, 28:8, 38:16, 38:19, 43:12, 43:15, 44:13, 55:11
**chance** [1] - 36:16
**change** [2] - 4:12, 5:7
**changed** [3] - 5:2, 5:3, 54:5
**changing** [1] - 39:11
**channeling** [1] - 40:22
**chart** [1] - 34:1
**check** [1] - 14:20
**cherry** [2] - 44:16, 44:19
**cherry-picked** [1] - 44:19
**cherry-picking** [1] - 44:16
**claim** [3] - 39:15, 41:24, 41:25
**clarification** [1] - 5:4
**clarify** [2] - 4:19, 7:20
**clarity** [1] - 28:8
**clear** [1] - 42:15
**client** [3] - 17:20, 18:5
**climbed** [1] - 6:15
**clinical** [15] - 6:5, 6:21, 7:8, 7:17, 8:1, 27:16, 37:25, 38:4, 39:21, 40:25, 46:19, 49:11, 50:11, 50:17, 52:4
**clinically** [1] - 38:4

**close** [1] - 46:9
**co** [1] - 47:9
**co-workers** [1] - 47:9
**cognitive** [4] - 42:18, 42:19, 42:21, 55:16
**CogScreen** [1] - 8:22
**collateral** [18] - 26:21, 45:10, 45:11, 45:12, 45:14, 45:15, 45:24, 46:17, 46:18, 46:23, 46:25, 47:4, 47:10, 47:14, 47:18, 47:19, 47:21
**collecting** [1] - 47:5
**coming** [7] - 6:16, 18:10, 41:7, 51:10, 52:11, 56:6, 56:17
**comments** [3] - 33:13, 33:16, 33:24
**common** [2] - 7:4, 45:9
**communication** [2] - 40:11, 43:5
**communications** [1] - 17:21
**comparing** [1] - 34:2
**comparison** [2] - 32:22
**complete** [4] - 32:2, 32:4, 36:15, 36:18
**COMPLETED** [1] - 57:9
**completely** [2] - 33:16, 39:8
**compliance** [1] - 55:20
**complies** [1] - 33:8
**component** [1] - 52:5
**comprehensive** [2] - 16:21, 17:1
**concerned** [2] - 47:22, 53:16
**concerning** [1] - 52:19
**concerns** [5] - 20:5, 20:6, 20:11, 22:8, 23:4
**concluded** [1] - 56:20
**conclusion** [1] - 55:15
**condition** [1] - 50:20
**conduct** [2] - 47:12, 55:2
**conducted** [2] - 14:19, 26:7
**confident** [1] - 31:19
**confirm** [1] - 5:6
**confirmed** [2] - 41:25, 53:11
**confusion** [2] - 3:23, 4:5
**consider** [3] - 25:20, 25:21, 49:15
**consideration** [2] - 33:22, 34:21
**considered** [1] - 26:5
**considering** [1] - 29:24
**consistent** [1] - 16:5
**consult** [1] - 45:13
**consultant** [1] - 7:2
**consultants** [1] - 12:7
**consulted** [1] - 17:19
**consulting** [1] - 12:24
**contact** [2] - 18:9, 26:13
**contacted** [1] - 26:9

**contacts** [1] - 16:12
**contemporaneously** [1] - 23:21
**content** [2] - 15:9, 16:5
**contention** [1] - 27:21
**context** [1] - 21:1
**contract** [4] - 17:16, 17:25, 18:2, 37:3
**contrary** [1] - 31:2
**control** [1] - 25:3
**conversation** [3] - 26:24, 27:23, 53:6
**conversations** [1] - 18:7
**copied** [3] - 10:23, 15:4, 32:9
**copy** [10] - 10:2, 13:22, 21:14, 30:25, 31:17, 32:4, 32:5, 32:11, 32:15, 36:23
**correct** [53] - 3:12, 8:18, 8:20, 9:11, 9:15, 10:18, 11:8, 11:12, 11:15, 11:21, 15:12, 15:23, 16:1, 17:8, 18:2, 18:7, 18:15, 18:18, 18:21, 18:24, 19:4, 19:14, 20:2, 20:5, 20:8, 21:14, 21:15, 21:24, 23:8, 23:9, 23:10, 24:25, 25:18, 26:7, 30:6, 30:18, 31:12, 31:14, 31:17, 32:9, 32:12, 35:12, 35:19, 37:8, 37:15, 38:1, 42:2, 44:12, 44:22, 44:25, 48:9, 51:16, 55:17
**correction** [8] - 23:15, 23:16, 23:22, 24:2, 24:5, 24:6
**Counsel** [1] - 3:5
**counsel** [16] - 3:23, 10:5, 17:21, 18:7, 18:10, 19:3, 24:17, 24:19, 24:20, 35:22, 36:5, 36:17, 42:12, 47:24, 54:15, 55:2
**counseling** [2] - 40:18, 43:6
**counter** [1] - 28:18
**couple** [3] - 32:1, 32:2, 46:12
**course** [2] - 10:1, 43:11
**COURT** [144] - 1:1, 1:10, 3:10, 3:15, 3:18, 3:22, 4:4, 4:9, 4:12, 4:15, 4:23, 5:9, 5:12, 6:11, 9:24, 10:1, 10:4, 10:8, 11:5, 12:21, 13:4, 13:8, 13:11, 13:14, 13:16, 13:19, 14:5, 14:8, 14:10, 14:12, 14:17, 14:21, 14:24, 16:14, 16:16, 16:25, 17:5, 19:7, 20:19, 20:22, 20:25, 21:20, 22:24, 23:9, 23:11, 23:14, 23:16, 23:19, 23:25, 24:2, 24:5, 25:6, 26:16, 26:25, 27:5, 27:8, 27:14, 27:25, 28:13, 28:15, 31:23, 32:18, 33:6, 33:21, 34:4, 34:9, 34:12, 34:14,

34:17, 34:20, 35:9, 35:15,
35:19, 35:21, 35:24, 36:3,
36:8, 36:13, 38:16, 38:19,
39:14, 39:18, 39:22, 40:5,
40:14, 41:2, 41:8, 41:18,
41:22, 42:3, 42:12, 42:25,
43:7, 43:12, 43:17, 43:21,
44:3, 44:10, 44:13, 44:20,
44:23, 45:1, 45:5, 45:23,
46:2, 47:23, 48:12, 48:14,
48:16, 49:1, 49:5, 49:7,
49:20, 49:23, 50:2, 50:6,
50:9, 50:12, 50:14, 50:25,
51:3, 51:9, 51:13, 51:17,
51:21, 51:24, 52:6, 52:9,
52:14, 53:1, 53:5, 53:8,
53:10, 53:14, 53:19, 54:4,
54:7, 54:14, 55:7, 55:18,
55:25, 56:3, 56:13, 56:16
**court** [2] - 3:2, 35:25
**Court** [5] - 1:22, 10:2, 22:16,
41:24, 51:25
**court's** [1] - 56:19
**courtesy** [2] - 35:7, 35:21
**courtroom** [1] - 5:16
**COURTROOM** [3] - 3:3, 5:19,
56:19
**covered** [2] - 27:18, 47:22
**covers** [1] - 27:19
**created** [1] - 11:17
**credibility** [1] - 51:8
**critical** [1] - 54:3
**criticisms** [1] - 40:8
**criticized** [1] - 29:23
**criticizes** [1] - 56:5
**CROSS** [1] - 33:1
**cross** [1] - 2:2
**crux** [1] - 42:6
**current** [1] - 42:16
**cusp** [1] - 40:12
**cut** [2] - 37:5, 37:20

**D**

**damage** [1] - 39:4
**damages** [3] - 39:4, 39:16,
55:13
**data** [5] - 30:6, 44:16, 44:20,
46:25, 50:22
**date** [9] - 6:22, 10:25, 13:2,
15:4, 17:13, 17:24, 19:18,
37:2, 37:3
**DATE** [1] - 57:9
**dated** [2] - 31:14, 36:21
**Daubert** [10] - 41:19, 44:11,
47:25, 53:2, 53:5, 53:14,
54:22, 54:23, 55:8, 55:20
**days** [1] - 32:2
**deadline** [1] - 55:4
**deal** [1] - 40:2

**dealing** [6] - 7:1, 7:4, 16:21,
25:15, 40:24, 52:4
**dealings** [1] - 17:2
**dealt** [1] - 37:9
**decide** [1] - 51:8
**deciding** [1] - 42:25
**defendant** [1] - 1:6
**DEFENDANT** [1] - 1:17
**Defendant's** [4] - 10:11,
15:3, 16:7, 16:19
**defendant's** [2] - 11:5, 16:16
**Defense** [3] - 21:10, 21:17,
31:8
**defense** [3] - 42:12, 47:24,
54:15
**deficits** [1] - 40:12
**defined** [1] - 45:24
**delay** [1] - 11:25
**deposition** [3] - 29:14, 35:6,
53:4
**DEPUTY** [3] - 3:3, 5:19,
56:19
**deputy** [1] - 5:16
**describe** [1] - 51:6
**described** [2] - 9:14, 29:14
**designed** [1] - 9:1
**despite** [1] - 31:2
**detail** [1] - 20:3
**detailed** [2] - 20:10, 47:6
**determination** [2] - 15:22,
40:15
**determine** [2] - 38:3, 38:4
**different** [3] - 6:19, 29:6,
39:8
**direct** [3] - 2:2, 24:7, 49:24
**DIRECT** [1] - 5:23
**directly** [1] - 7:24
**director** [1] - 6:18
**disability** [1] - 40:19
**disagree** [1] - 20:13
**disclose** [1] - 54:18
**disclosed** [1] - 30:20
**discovery** [1] - 33:18
**discuss** [1] - 25:11
**discussed** [1] - 19:23
**discussion** [2] - 52:19, 52:21
**discussions** [1] - 18:10
**disorder** [3] - 38:12, 40:10,
43:4
**displayed** [5] - 7:16, 8:1,
27:16, 37:25, 51:10
**dispute** [2] - 12:15, 19:20
**disregard** [5] - 15:17, 15:19,
30:12, 54:3, 54:11
**DISTRICT** [3] - 1:1, 1:1, 1:10
**distrust** [1] - 17:17
**divided** [1] - 39:25
**Doctor** [11] - 7:19, 11:9,
12:15, 17:8, 18:8, 19:14,

21:12, 22:3, 22:10, 32:6,
34:5
**document** [5] - 10:12,
10:14, 10:15, 10:17, 10:18,
10:20, 10:25, 12:12, 12:15,
14:9, 14:22, 15:2, 21:10,
34:10, 34:15
**documents** [4] - 13:25, 14:3,
17:14, 18:6
**done** [5] - 11:15, 25:16, 39:9,
40:25, 53:12
**down** [1] - 55:7
**dozens** [1] - 30:2
**Dr** [137] - 3:11, 3:16, 3:20,
3:21, 3:25, 4:9, 4:14, 4:15,
5:1, 5:13, 5:25, 7:7, 7:16,
7:17, 8:2, 8:13, 8:15, 8:20,
9:9, 9:13, 11:11, 12:11,
16:11, 16:12, 16:20, 17:1,
18:12, 18:13, 18:14, 18:16,
18:18, 18:24, 19:9, 19:16,
19:21, 19:24, 20:5, 20:15,
20:23, 22:7, 22:12, 22:14,
22:18, 23:4, 23:6, 23:11,
25:11, 25:14, 25:15, 25:16,
25:18, 25:19, 25:20, 26:24,
27:16, 27:17, 27:18, 27:22,
27:23, 30:15, 30:21, 32:20,
32:23, 33:3, 33:10, 35:6,
35:13, 36:20, 37:24, 37:25,
38:8, 38:10, 38:13, 38:14,
39:20, 39:22, 40:2, 40:4,
40:8, 40:15, 40:16, 40:20,
40:21, 40:22, 40:24, 41:2,
41:3, 41:5, 41:6, 41:10,
41:13, 41:19, 42:3, 42:4,
42:5, 42:22, 42:23, 43:3,
43:6, 43:8, 43:23, 44:17,
48:14, 48:19, 49:10, 50:3,
51:7, 51:8, 51:10, 51:14,
52:15, 52:17, 52:22, 52:24,
53:7, 53:11, 53:12, 53:17,
53:23, 54:3, 54:17, 54:18,
55:13, 55:14, 55:15, 55:19,
55:22, 55:23, 56:6, 56:12,
56:14, 56:17
**DR** [4] - 2:3, 3:17, 4:11, 5:15
**drop** [1] - 33:17
**drs** [1] - 8:17
**Drs** [1] - 9:3
**duly** [1] - 5:16
**during** [2] - 5:3, 19:23
**duty** [8] - 9:6, 22:17, 22:19,
38:9, 40:23, 42:16, 53:24,
54:2

**E**

**e-mail** [28] - 9:14, 9:17, 9:20,
9:22, 10:22, 10:23, 11:8,
11:11, 12:4, 13:5, 13:12,

14:14, 15:3, 15:7, 15:8,
15:14, 15:25, 16:19, 16:23,
17:3, 17:18, 19:1, 19:5,
31:12, 31:16, 31:17, 36:21
**e-mails** [1] - 15:16
**EAP** [1] - 7:3
**easily** [1] - 17:24
**East** [1] - 1:18
**EDB@MEDPSYCH.NET** [1] -
10:23
**educated** [2] - 6:9, 6:14
**Edwin** [1] - 1:25
**either** [3] - 13:8, 28:2, 55:21
**element** [1] - 39:4
**eliminate** [1] - 15:20
**emotional** [3] - 39:16, 41:24,
42:1
**employed** [5] - 7:15, 27:15,
37:24, 43:10, 52:1
**employment** [1] - 45:19
**encounter** [1] - 18:6
**end** [2] - 22:5, 33:17
**engagement** [1] - 38:3
**entire** [1] - 30:23
**entirety** [1] - 53:25
**entitled** [2] - 19:10, 57:4
**equation** [1] - 29:18
**error** [2] - 30:2, 30:5
**ESQ** [3] - 1:12, 1:13, 1:17
**essentially** [1] - 22:22
**estopped** [1] - 39:11
**et** [1] - 13:5
**evaluate** [1] - 55:19
**evaluation** [19] - 7:17, 8:2,
9:14, 12:11, 18:18, 18:21,
19:24, 20:1, 20:15, 20:23,
22:7, 23:4, 25:11, 27:17,
30:15, 30:21, 30:23, 32:4,
38:1
**evaluations** [1] - 9:7
**evidence** [12] - 11:3, 11:6,
16:8, 16:17, 21:18, 21:21,
31:21, 31:24, 38:24, 39:3,
44:7, 51:12
**EVIDENTIARY** [1] - 1:8
**exact** [1] - 5:4
**exactly** [1] - 52:13
**EXAMINATION** [2] - 5:23,
33:1
**examination** [9] - 9:10,
14:19, 16:21, 17:2, 36:14,
36:18, 47:13, 49:11
**examined** [1] - 41:12
**examinee** [1] - 52:25
**Examiner** [1] - 19:11
**examining** [2] - 12:18, 30:8
**example** [3] - 28:11, 47:8,
50:19
**exclude** [2] - 38:24, 54:17

**excluded** [1] - 44:8
**excluding** [1] - 53:16
**exclusion** [1] - 44:7
**excuse** [5] - 4:2, 10:14, 20:21, 31:4, 37:11
**excused** [2] - 4:10, 56:17
**exhibit** [10] - 10:9, 11:6, 14:25, 16:17, 21:8, 21:21, 31:6, 31:24, 32:25, 37:10
**Exhibit** [19] - 2:11, 2:19, 10:12, 11:2, 15:3, 16:7, 16:19, 21:17, 31:8, 31:10, 31:20, 32:19, 33:4, 33:10, 33:13, 37:8, 37:11, 37:15, 37:18
**expect** [2] - 22:4, 33:19
**expected** [1] - 22:6
**experience** [2] - 7:1, 9:6
**expert** [20] - 4:17, 6:4, 16:12, 22:12, 27:18, 27:19, 30:20, 33:5, 33:10, 33:19, 37:1, 41:2, 41:8, 41:9, 41:20, 49:15, 49:16, 49:17, 51:19, 55:2
**expert's** [1] - 37:16
**expertise** [2] - 26:1, 28:11
**experts** [4] - 3:20, 3:24, 4:13, 38:8
**explained** [1] - 55:10
**extensive** [1] - 46:19
**extra** [1] - 42:9

## F

**FAA** [8] - 12:7, 12:11, 20:7, 20:15, 20:22, 21:2, 22:9, 22:16
**fact** [7] - 5:2, 18:20, 22:17, 28:3, 29:23, 30:18, 54:10
**failure** [1] - 27:22
**fair** [1] - 6:25
**familiar** [1] - 48:8
**far** [1] - 41:18
**fashion** [3] - 4:19, 28:4, 55:4
**favor** [3] - 48:14, 50:3, 50:25
**FCRR** [2] - 1:21, 57:9
**features** [1] - 40:10
**Federal** [1] - 19:10
**few** [1] - 12:7
**field** [2] - 30:8, 30:12
**file** [3] - 11:23, 39:2, 54:19
**filing** [1] - 55:5
**filings** [1] - 38:22
**final** [1] - 42:14
**findings** [1] - 24:17
**fine** [2] - 7:25, 14:6
**finish** [1] - 49:18
**finished** [1] - 49:20
**first** [17] - 4:18, 6:6, 11:11, 11:23, 13:3, 13:14, 13:15,

14:4, 15:23, 18:6, 27:13, 33:4, 37:2, 37:3, 42:17, 44:1, 53:23
**Fisher** [1] - 1:17
**fit** [9] - 22:17, 22:19, 38:9, 40:15, 40:23, 42:7, 42:16, 53:24, 54:2
**fitness** [1] - 9:6
**five** [2] - 6:19, 46:24
**FL** [3] - 1:14, 1:19, 1:23
**Floor** [2] - 1:14, 1:22
**FLORIDA** [1] - 1:1
**fluff** [1] - 42:9
**fly** [4] - 40:15, 42:7, 43:1
**FO** [1] - 42:17
**focus** [3] - 25:14, 25:15, 50:11, 52:24
**follow** [2] - 13:19, 52:14
**following** [2] - 3:2, 9:14
**follows** [1] - 5:17
**Fonseca** [1] - 53:12
**FOR** [2] - 1:12, 1:17
**forecasting** [1] - 54:21
**foregoing** [1] - 57:3
**forensic** [7] - 6:5, 6:21, 7:8, 45:7, 45:9, 47:11, 47:13
**formation** [1] - 46:25
**formulate** [1] - 26:17
**FORT** [1] - 1:2
**Fort** [2] - 1:14, 1:19
**forth** [2] - 5:5, 54:18
**forward** [1] - 36:14
**four** [1] - 17:23
**framed** [1] - 38:7
**frankly** [6] - 5:5, 22:16, 38:22, 44:7, 53:21, 56:4
**friends** [2] - 45:19, 46:9
**full** [2] - 5:20, 6:17
**functioning** [1] - 8:8
**furnish** [2] - 36:5, 36:8
**furnished** [1] - 36:6
**furnishing** [1] - 36:7
**future** [1] - 12:11

## G

**gain** [1] - 45:16
**gander** [2] - 56:9, 56:11
**gather** [1] - 54:19
**general** [9] - 6:3, 7:6, 8:7, 20:3, 43:9, 44:6, 46:16, 46:21, 54:13
**generally** [3] - 3:23, 43:10, 44:16
**given** [6] - 6:24, 12:19, 30:21, 36:22, 39:23, 42:23
**GIZELLA** [2] - 1:21, 57:9
**gizella_baan** [1] - 1:24
**gizella_baan-proulx@flsd.
   uscourts.gov** [1] - 1:24

**Glenn** [5] - 5:21, 16:20, 17:1
**GLENN** [2] - 2:3, 5:15
**goose** [2] - 56:8, 56:10
**grounds** [4] - 38:20, 38:21, 40:16, 48:23

## H

**halfway** [1] - 39:11
**hand** [3] - 13:22, 32:19, 47:7
**handed** [4] - 10:11, 13:17, 15:2, 31:8
**hang** [3] - 34:4, 34:12, 42:12
**happy** [2] - 9:22, 52:3
**hard** [2] - 22:21, 36:9
**hardly** [1] - 18:3
**harm** [3] - 39:3, 41:25, 42:1
**harms** [3] - 38:25, 39:7, 39:12
**health** [12] - 6:5, 6:21, 7:8, 7:13, 27:14, 37:23, 38:5, 38:25, 39:7, 39:15, 40:9, 40:20, 41:23, 43:9, 45:2, 54:9, 55:13
**heard** [5] - 7:20, 28:11, 51:17, 53:23, 56:16
**HEARING** [1] - 1:8
**hearing** [9] - 5:7, 16:10, 20:24, 33:18, 35:7, 35:11, 35:17, 39:7, 56:20
**held** [2] - 3:2, 6:9
**helpful** [1] - 13:20
**hereby** [1] - 57:3
**hi** [1] - 6:1
**himself** [1] - 26:11
**hired** [11] - 13:2, 13:3, 13:21, 14:6, 14:20, 16:20, 17:1, 17:11, 17:12, 17:19, 17:22
**hiring** [2] - 17:13, 17:16
**hold** [4] - 3:15, 3:16, 6:15, 48:12
**HOLT** [72] - 1:17, 3:8, 4:21, 4:25, 5:11, 5:24, 9:23, 9:25, 10:2, 10:7, 10:10, 11:2, 11:7, 12:17, 13:24, 14:13, 14:22, 15:1, 16:7, 16:13, 16:15, 16:18, 16:24, 17:6, 17:7, 17:9, 21:4, 21:7, 21:9, 21:17, 21:22, 22:14, 23:8, 23:10, 24:9, 25:9, 25:10, 26:20, 27:7, 27:11, 28:7, 28:14, 28:19, 28:20, 31:7, 31:20, 31:25, 32:17, 33:15, 34:3, 34:22, 35:1, 38:6, 38:18, 38:21, 41:16, 42:14, 43:10, 43:16, 43:19, 43:25, 44:6, 44:12, 44:16, 44:22, 44:25, 49:13, 53:21, 54:5, 54:10, 55:6, 56:4

**Holt** [3] - 3:8, 6:1, 33:3
**homeowners'** [1] - 46:8
**Honor** [60] - 3:8, 3:14, 3:20, 4:3, 4:21, 4:25, 9:23, 9:25, 10:7, 11:2, 12:17, 12:20, 12:25, 13:7, 13:10, 13:22, 13:24, 14:4, 14:11, 14:23, 16:7, 16:9, 16:13, 16:15, 16:23, 19:5, 20:21, 21:17, 22:14, 23:8, 23:13, 25:9, 26:20, 28:7, 28:19, 31:20, 32:17, 33:15, 34:3, 34:22, 35:1, 35:23, 38:6, 38:18, 41:16, 42:14, 44:12, 44:25, 45:14, 49:13, 50:5, 51:16, 51:20, 51:23, 52:13, 53:21, 54:10, 55:6, 55:22, 56:8
**HONORABLE** [1] - 1:9
**hours** [1] - 33:18
**house** [1] - 12:7
**hundred** [1] - 6:23

## I

**idea** [1] - 55:10
**identification** [5] - 10:9, 14:25, 21:8, 31:6, 32:25
**identified** [7] - 7:9, 26:10, 26:14, 27:7, 28:23, 37:22, 42:16
**ill** [1] - 40:25
**immature** [1] - 40:10
**impact** [1] - 46:25
**impaired** [1] - 42:17
**important** [1] - 15:18
**impressions** [1] - 52:25
**improper** [4] - 33:16, 35:4, 49:17, 55:1
**improperly** [1] - 36:16
**in-house** [1] - 12:7
**inappropriate** [1] - 43:14
**include** [3] - 16:12, 26:23, 27:23
**included** [2] - 12:5, 23:6
**includes** [1] - 40:8
**including** [1] - 50:9
**indicates** [2] - 11:14, 19:1
**infer** [2] - 49:10, 51:7
**inference** [1] - 54:23
**infirm** [1] - 26:23
**infirmities** [1] - 39:21
**information** [5] - 19:3, 32:3, 32:8, 37:9, 52:22
**initial** [2] - 41:8, 41:9
**input** [1] - 46:24
**inquiry** [2] - 26:15, 28:5
**Institute** [1] - 6:17
**instruction** [1] - 25:6
**integration** [1] - 50:16
**intend** [1] - 8:3

**intended** [2] - 36:4, 36:9
**intending** [2] - 8:5, 35:15
**intends** [2] - 5:5, 5:9
**interested** [1] - 41:19
**internationally** [1] - 6:25
**interpersonal** [2] - 40:11, 43:5
**interpret** [1] - 50:25, 51:15
**interrupt** [1] - 35:24
**interview** [3] - 28:22, 28:24, 29:20
**interviewed** [1] - 29:2
**interviews** [7] - 26:6, 26:9, 26:21, 46:18, 46:19, 47:4, 47:11
**introduce** [1] - 51:11
**invalidity** [1] - 39:19
**involved** [4] - 7:4, 18:12, 34:6, 55:3
**irregular** [1] - 48:25
**irregularities** [7] - 7:15, 27:15, 37:23, 51:18, 51:21, 52:1, 52:10
**irregularity** [2] - 49:2, 55:11
**irrelevant** [5] - 39:10, 40:6, 40:7, 41:23, 43:13
**issue** [11] - 12:13, 16:10, 26:22, 34:11, 34:21, 38:7, 45:5, 47:25, 51:18, 53:14, 56:7
**issues** [5] - 7:5, 41:23, 45:17, 49:2, 55:15
**itself** [2] - 16:23, 19:6

**J**

**job** [1] - 37:2
**John** [1] - 52:1
**JUDGE** [1] - 1:10
**Judge** [2] - 44:7, 45:12
**junk** [1] - 13:9
**jury** [6] - 12:22, 48:23, 48:24, 49:14, 51:7, 51:8

**K**

**kamlong@theamlongfirm. com** [1] - 1:16
**Karen** [1] - 3:6
**KAREN** [1] - 1:13
**Kay** [19] - 3:11, 3:16, 3:20, 3:21, 3:25, 4:9, 8:20, 9:3, 25:11, 25:14, 25:15, 25:19, 33:3, 33:10, 40:2, 40:4, 40:22, 41:10, 42:22
**KAY** [2] - 3:17, 4:11
**Kay's** [4] - 22:12, 32:20, 32:23, 35:13
**keep** [2] - 12:21, 54:21
**keeps** [2] - 50:18, 50:23
**kept** [1] - 16:11

**kind** [2] - 36:14, 55:4
**Knippa** [27] - 7:16, 8:13, 8:17, 9:3, 25:16, 27:16, 37:24, 38:13, 40:8, 40:16, 41:3, 41:5, 41:6, 41:13, 42:22, 43:3, 48:14, 50:3, 51:7, 51:10, 51:14, 52:2, 55:15, 55:23, 56:6, 56:12, 56:14
**Knippa's** [17] - 7:17, 8:2, 27:17, 37:25, 38:8, 39:20, 39:22, 40:15, 40:24, 41:5, 42:4, 42:5, 48:19, 49:10, 51:8, 55:13, 55:14
**knowing** [1] - 42:23
**knows** [1] - 45:14

**L**

**ladder** [1] - 6:16
**Las** [1] - 1:18
**last** [5] - 5:20, 33:3, 33:16, 35:7, 36:4
**LAUDERDALE** [1] - 1:2
**Lauderdale** [2] - 1:14, 1:19
**lay** [2] - 4:18, 55:24
**learn** [1] - 47:10
**learning** [1] - 40:18
**least** [3] - 7:1, 35:17, 44:19
**lectures** [1] - 6:24
**left** [2] - 6:20, 25:3
**length** [1] - 39:20
**lengthy** [1] - 43:24
**letter** [14] - 21:5, 21:12, 21:14, 21:23, 22:1, 22:2, 22:18, 22:25, 23:7, 23:12, 23:17, 23:23, 23:24, 24:1
**letters** [1] - 47:5
**level** [1] - 12:21
**licensed** [2] - 6:6, 6:7
**lies** [1] - 44:9
**life** [1] - 6:20
**likely** [1] - 16:2
**limine** [2] - 38:24, 39:9
**limitation** [1] - 55:12
**limited** [3] - 52:6, 52:7, 55:11
**line** [8] - 11:23, 27:13, 50:21, 51:14, 52:11, 55:15, 55:25, 56:6
**lines** [1] - 52:11
**listen** [1] - 43:23
**litigation** [1] - 53:25
**LLP** [1] - 1:17
**look** [6] - 11:8, 12:16, 14:7, 17:14, 20:8, 20:12, 27:9, 30:9, 34:1
**looking** [2] - 12:25, 13:4
**looks** [1] - 21:16
**lumps** [1] - 42:11
**lying** [1] - 49:17

**M**

**ma'am** [2] - 5:18, 6:13
**MAGISTRATE** [1] - 1:10
**mail** [29] - 9:14, 9:17, 9:20, 9:22, 10:22, 10:23, 11:8, 11:11, 12:4, 13:5, 13:9, 13:12, 14:14, 15:3, 15:7, 15:8, 15:14, 15:25, 16:19, 16:23, 17:3, 17:18, 19:1, 19:5, 31:12, 31:16, 31:17, 36:21
**mails** [1] - 15:16
**manuscripts** [1] - 6:24
**marked** [8] - 10:9, 14:25, 16:19, 21:8, 21:10, 31:6, 31:8, 32:25
**materials** [3] - 12:23, 36:21, 36:22
**matter** [4] - 4:25, 26:19, 49:14, 53:18, 57:5
**matters** [4] - 16:21, 17:2, 36:17, 38:7
**mean** [4] - 28:1, 41:4, 53:24, 56:8
**meaning** [1] - 15:9
**meaningful** [1] - 29:11
**means** [1] - 3:24
**meant** [1] - 52:13
**medical** [1] - 11:25
**Medical** [1] - 19:11
**memory** [7] - 10:15, 15:8, 15:9, 16:2, 16:6, 20:10, 25:14
**mental** [5] - 39:16, 40:9, 40:20, 41:24, 41:25
**mention** [5] - 22:9, 23:5, 23:6, 23:11, 27:23
**met** [4] - 8:13, 8:15, 18:4, 18:5
**methodology** [10] - 27:25, 28:2, 28:9, 43:11, 43:12, 43:14, 53:8, 53:20, 54:23, 55:8
**methods** [9] - 7:15, 27:15, 37:24, 51:19, 51:22, 52:1, 52:3, 52:4, 55:11
**mholt@fisherphillips.com** [1] - 1:20
**Miami** [3] - 1:22, 1:23, 7:3
**mic** [1] - 33:7
**MICHAEL** [1] - 1:17
**Michael** [1] - 3:8
**middle** [1] - 35:6
**might** [6] - 4:13, 5:3, 25:12, 33:6, 44:18, 45:17
**military** [1] - 46:11
**mind** [2] - 54:5, 55:18
**minimal** [1] - 20:6
**minutes** [1] - 19:22

**mislead** [4] - 22:15, 22:16, 25:5
**misleading** [1] - 41:1
**misstatement** [1] - 51:24
**mixing** [1] - 54:24
**MMPI** [1] - 46:21
**moment** [3] - 19:7, 20:19, 38:16
**months** [1] - 33:17
**morning** [2] - 3:8, 5:25
**most** [2] - 8:7, 34:7
**motion** [8] - 16:10, 39:1, 41:19, 54:16, 54:20, 54:21, 54:22, 55:5
**motions** [2] - 39:8, 55:5
**move** [2] - 14:6, 49:24
**moved** [1] - 38:24
**MR** [145] - 3:6, 3:8, 3:13, 3:19, 4:3, 4:8, 4:14, 4:21, 4:25, 5:11, 5:24, 9:23, 9:25, 10:2, 10:6, 10:7, 10:10, 11:2, 11:4, 11:7, 12:17, 12:20, 13:22, 13:24, 14:13, 14:22, 15:1, 16:7, 16:9, 16:13, 16:15, 16:18, 16:23, 16:24, 17:6, 17:7, 19:5, 19:13, 20:17, 20:24, 21:4, 21:7, 21:9, 21:17, 21:19, 21:22, 22:11, 22:14, 23:8, 23:10, 24:9, 25:9, 25:10, 26:15, 26:18, 26:20, 26:21, 27:4, 27:7, 27:11, 27:22, 28:7, 28:14, 28:19, 28:20, 31:7, 31:20, 31:22, 31:25, 32:17, 32:19, 33:2, 33:8, 33:9, 33:15, 33:23, 34:3, 34:22, 34:23, 35:1, 35:13, 35:18, 35:20, 35:23, 36:2, 36:6, 36:11, 36:19, 38:6, 38:18, 38:21, 39:17, 39:19, 39:25, 40:7, 40:16, 41:4, 41:9, 41:16, 41:21, 42:2, 42:11, 42:14, 43:3, 43:10, 43:16, 43:19, 43:25, 44:6, 44:12, 44:16, 44:22, 44:25, 45:4, 45:6, 46:3, 47:21, 48:5, 48:6, 48:13, 48:15, 48:18, 49:4, 49:6, 49:9, 49:13, 49:18, 49:22, 49:25, 51:5, 51:11, 52:16, 53:3, 53:6, 53:9, 53:11, 53:21, 54:5, 54:10, 55:6, 55:17, 55:22, 56:2, 56:4, 56:14
**must** [1] - 15:22

**N**

**name** [6] - 3:12, 5:20, 5:21, 13:6, 13:7
**namely** [1] - 39:14

**narcissistic** [1] - 40:10
**narrow** [1] - 16:10
**nasty** [2] - 30:4, 30:6
**nationally** [1] - 6:24
**NE** [1] - 1:14
**nearly** [1] - 45:8
**necessarily** [3] - 3:14, 3:19, 25:1
**necessity** [1] - 4:1
**need** [8] - 4:23, 6:11, 13:2, 20:20, 21:6, 38:14, 39:2, 44:4
**needing** [1] - 43:5
**needs** [1] - 40:18
**negative** [7] - 29:15, 29:16, 29:17, 29:19, 29:25, 43:17
**negatives** [2] - 44:14, 44:18
**neurologist** [1] - 41:10
**neuropsychologic** [1] - 18:18
**neuropsychological** [13] - 8:8, 9:10, 18:21, 22:20, 39:24, 40:1, 42:8, 48:10, 50:9, 51:19, 51:22, 52:5, 54:8
**neuropsychologically** [1] - 40:23
**neuropsychologist** [8] - 7:7, 8:5, 8:20, 12:7, 27:24, 42:21, 48:7, 53:17
**neuropsychologists** [2] - 8:17, 20:8
**neuropsychology** [5] - 8:6, 8:10, 38:11, 44:21, 44:24
**never** [13] - 8:13, 8:15, 8:22, 8:25, 20:15, 20:18, 20:22, 21:2, 35:10, 35:14, 39:2, 40:21, 47:12
**New** [3] - 6:10, 6:14, 6:17
**new** [3] - 7:19, 14:3, 28:10
**next** [5] - 12:23, 23:14, 25:8, 46:2, 51:4
**nice** [2] - 30:3, 30:7
**night** [3] - 33:16, 35:8, 36:4
**NO** [1] - 1:2
**Nodding** [1] - 43:16
**none** [5] - 8:12, 29:2, 30:18, 30:19, 49:16
**nonetheless** [1] - 41:11
**normal** [1] - 12:21
**normally** [2] - 25:23
**North** [1] - 1:22
**notes** [2] - 37:6, 37:12
**nothing** [2] - 32:17, 37:21
**number** [8] - 3:4, 6:23, 14:2, 29:8, 29:10, 35:3, 40:8, 56:10
**Number** [22] - 32:19, 32:20, 32:21, 32:22, 32:23, 33:4, 33:10, 33:13, 34:1, 34:24,

35:9, 35:10, 36:7, 37:8, 37:10, 37:11, 37:15, 37:18, 43:13
**Numbers** [1] - 36:6

# O

**oath** [1] - 44:9
**object** [1] - 38:15
**objection** [22] - 11:4, 12:20, 16:9, 16:14, 19:5, 20:17, 20:19, 20:23, 21:19, 22:11, 22:25, 23:1, 26:15, 28:5, 31:22, 33:15, 34:3, 35:1, 38:6, 41:16, 49:13
**obviously** [5] - 3:24, 13:10, 22:24, 35:9, 40:22
**OF** [1] - 1:1
**offer** [14] - 5:5, 7:10, 7:11, 8:3, 8:6, 11:2, 16:7, 21:17, 22:22, 31:20, 39:3, 41:14, 54:11, 54:12
**offered** [1] - 5:2
**offering** [4] - 8:11, 39:14, 39:18, 39:19
**office** [3] - 25:4, 34:2, 34:7
**officer** [1] - 42:17
**Olas** [1] - 1:18
**omitted** [1] - 47:24
**one** [19] - 7:13, 7:18, 10:4, 12:16, 14:14, 20:7, 20:19, 25:22, 26:5, 28:22, 29:17, 29:20, 41:14, 46:14, 46:15, 49:15, 50:18, 56:10
**ones** [1] - 50:12
**open** [1] - 3:2
**opening** [2] - 4:21, 4:23
**opine** [11] - 5:10, 38:14, 44:23, 49:15, 51:21, 52:3, 53:24, 55:10, 56:12, 56:14, 56:15
**opined** [1] - 42:15
**opines** [1] - 22:18
**opining** [2] - 52:4, 54:8
**opinion** [26] - 7:13, 7:19, 8:6, 12:8, 16:11, 22:22, 26:16, 26:17, 26:22, 38:17, 39:14, 39:18, 42:5, 42:18, 45:2, 47:1, 48:2, 50:3, 50:23, 51:9, 52:9, 53:17, 54:11, 55:9, 56:5
**opinions** [11] - 5:1, 5:4, 7:9, 8:2, 8:10, 26:6, 26:19, 27:2, 28:10, 40:1, 54:12
**opportunity** [1] - 28:18
**opposing** [3] - 35:22, 36:5, 36:17
**opposite** [1] - 4:18
**oranges** [1] - 54:25
**order** [6] - 4:7, 15:21, 15:22,

17:13, 22:22, 30:10
**OTAZO** [1] - 1:9
**OTAZO-REYES** [1] - 1:9
**ought** [5] - 20:12, 22:8, 22:18, 39:11, 44:8
**outside** [2] - 26:13, 45:16
**overlay** [1] - 37:15
**overruled** [2] - 16:14, 28:6
**oversight** [3] - 35:23, 36:7, 36:8
**own** [1] - 38:22

# P

**p.m** [1] - 33:16
**page** [1] - 27:12
**pages** [1] - 43:4
**paid** [1] - 22:22
**paragraph** [1] - 16:24
**part** [5] - 11:8, 38:3, 47:11, 52:19, 53:12
**participated** [2] - 22:15, 34:9
**particular** [2] - 49:14, 50:18
**particularly** [1] - 26:2
**partly** [2] - 52:22, 52:23
**parts** [1] - 39:25
**party** [1] - 4:17
**paste** [7] - 30:25, 32:5, 32:11, 32:15, 36:23, 37:5, 37:20
**pasted** [1] - 32:9
**PATTERSON** [2] - 1:4, 1:13
**Patterson** [20] - 3:3, 3:7, 9:13, 11:12, 12:4, 12:5, 15:10, 33:14, 36:21, 37:1, 37:9, 37:12, 37:16, 37:23, 38:5, 39:21, 40:25, 41:12, 42:15, 46:5
**Patterson's** [7] - 32:20, 32:23, 33:24, 36:25, 37:5, 40:9, 49:11
**pause** [1] - 20:20
**pdf** [2] - 11:17, 12:1
**people** [26] - 12:14, 26:7, 26:9, 26:10, 26:13, 28:23, 28:25, 29:2, 29:5, 29:8, 29:10, 29:13, 29:20, 29:24, 30:3, 30:9, 31:4, 43:18, 45:20, 46:7, 46:10, 46:11, 47:7, 47:8
**percent** [3] - 46:24, 47:3
**performances** [1] - 42:17
**performed** [2] - 9:10, 52:20
**perhaps** [3] - 8:7, 25:19, 40:18
**period** [1] - 17:22
**permission** [1] - 24:21
**person** [4] - 6:15, 30:10, 45:17
**personality** [2] - 40:10, 43:4

**personnel** [1] - 7:2
**perspective** [2] - 30:10, 45:16
**ph** [1] - 43:6
**Ph.D** [3] - 6:9, 6:15, 52:2
**PhD** [1] - 1:25
**Phillips** [1] - 1:17
**phone** [7] - 3:16, 4:2, 17:20, 19:20, 20:2, 20:3, 52:22
**phrase** [1] - 49:23
**phrasing** [1] - 27:1
**picked** [1] - 44:19
**picking** [1] - 44:16
**pilot** [1] - 43:1
**pilots** [1] - 9:7
**place** [1] - 16:6
**placed** [1] - 15:10
**placing** [1] - 51:13
**plaintiff** [38] - 1:4, 5:1, 7:9, 7:14, 8:9, 8:22, 8:25, 9:10, 9:13, 10:22, 11:20, 15:4, 17:17, 19:1, 19:2, 22:17, 22:18, 26:7, 26:10, 26:14, 27:15, 28:23, 29:3, 29:9, 30:25, 31:12, 31:18, 32:1, 32:8, 32:14, 38:9, 38:11, 39:15, 42:6, 53:22, 53:24, 54:2, 55:2
**PLAINTIFF** [1] - 1:12
**plaintiff's** [4] - 10:4, 29:6, 38:22, 38:25
**planning** [1] - 51:23
**point** [7] - 15:10, 19:16, 19:18, 25:4, 34:17, 41:9, 41:14
**pointed** [1] - 46:4
**points** [1] - 30:6
**portion** [8] - 7:17, 8:2, 27:17, 37:25, 39:20, 40:3, 42:4, 55:14
**portions** [3] - 27:20, 40:24, 49:11
**position** [2] - 39:11, 52:15
**possible** [1] - 50:19
**potentially** [1] - 5:8
**practice** [5] - 6:21, 15:16, 30:8, 30:12, 45:20
**practicing** [1] - 45:7
**predominantly** [1] - 38:21
**premarked** [2] - 10:11, 15:2
**preparation** [2] - 34:9, 34:14
**prepare** [1] - 30:23
**prepared** [5] - 18:23, 34:2, 34:5, 34:7, 35:10
**preparing** [1] - 34:7
**present** [1] - 1:25
**presentation** [4] - 48:22, 48:24, 49:10, 50:18
**presented** [1] - 51:7
**presumably** [1] - 13:8

**presume** [1] - 11:10
**previously** [3] - 29:14, 35:2, 42:23
**print** [1] - 15:18
**private** [1] - 6:21
**pro** [5] - 7:16, 7:22, 8:1, 27:16, 51:9
**pro-American** [1] - 7:16
**problem** [4] - 4:11, 17:24, 24:22, 25:1
**problems** [2] - 7:4, 12:19
**procedural** [1] - 4:25
**proceed** [1] - 4:20
**proceedings** [3] - 3:2, 23:20, 57:4
**process** [1] - 46:1
**produce** [1] - 35:16
**produced** [5] - 14:3, 35:2, 35:5, 35:10, 35:20
**production** [1] - 12:19
**professionals** [1] - 30:13
**professor** [1] - 6:17
**proper** [1] - 54:23
**protocol** [1] - 47:12
**protocols** [1] - 46:22
**PROULX** [2] - 1:21, 57:9
**proulx@flsd.uscourts.gov** [1] - 1:24
**provided** [3] - 10:4, 12:18, 32:3
**providing** [1] - 35:22
**Psychiatric** [1] - 6:17
**psychological** [26] - 7:13, 27:14, 30:13, 37:23, 38:5, 38:8, 38:12, 38:25, 39:3, 39:4, 39:6, 39:15, 39:21, 40:25, 41:23, 42:20, 43:9, 45:2, 48:8, 49:11, 50:19, 50:20, 54:9, 55:12, 55:14
**psychologically** [1] - 38:4
**psychologist** [4] - 6:3, 6:5, 7:8, 25:21
**psychologists** [1] - 45:9
**psychology** [9] - 6:21, 7:17, 8:1, 25:24, 27:17, 37:25, 45:7, 47:11, 52:5
**psychometrics** [3] - 48:8, 48:11, 48:16
**published** [1] - 6:23
**pull** [1] - 46:16
**purpose** [2] - 18:17, 45:15
**purposes** [1] - 28:7
**pursue** [1] - 55:1
**putting** [2] - 27:10, 32:4

## Q

**qualification** [1] - 28:2
**qualifications** [6] - 6:3, 28:8, 28:12, 43:8, 43:11, 55:8

**qualified** [2] - 44:23, 55:9
**questioning** [1] - 49:19
**questions** [1] - 28:16
**quite** [5] - 7:4, 39:9, 46:14, 50:21, 52:3

## R

**raises** [2] - 40:19
**rambling** [1] - 43:4
**rank** [2] - 46:13, 46:14
**rather** [1] - 37:6
**reach** [1] - 50:22
**read** [6] - 4:24, 15:23, 15:25, 16:25, 19:7, 55:16
**reading** [1] - 7:24
**ready** [2] - 4:16, 32:9
**really** [5] - 24:18, 36:16, 41:18, 42:4, 54:24
**reason** [5] - 13:1, 16:4, 16:5, 17:17, 24:15
**reasons** [1] - 54:17
**rebuttal** [3] - 41:2, 42:4, 55:13
**receive** [1] - 36:20
**Received** [2] - 2:11, 2:19
**received** [4] - 12:15, 31:17, 33:15, 36:4
**receiving** [1] - 12:13
**recent** [2] - 31:2, 31:3
**recognize** [12] - 10:12, 10:14, 10:17, 21:10, 31:9, 31:10, 33:4, 33:10, 33:13, 33:24, 34:1, 34:24
**recollection** [4] - 13:11, 17:10, 25:17, 53:3
**recommendation** [3] - 12:6, 12:10, 42:14
**recommended** [1] - 43:6
**record** [4] - 3:5, 5:20, 12:25, 36:15
**records** [13] - 12:1, 12:18, 13:23, 13:24, 14:20, 15:11, 19:8, 19:18, 32:24, 34:24, 35:1, 35:13, 36:12
**recoverable** [1] - 39:5
**Recross** [1] - 2:2
**redirect** [1] - 2:2
**reference** [1] - 47:5
**reflect** [1] - 54:12
**reflected** [1] - 18:2
**refresh** [2] - 17:10, 53:3
**refused** [1] - 41:12
**refute** [1] - 40:21
**regarding** [7] - 7:13, 8:10, 23:24, 24:1, 38:11, 53:5, 53:6
**relating** [1] - 38:25
**relationships** [2] - 29:12, 45:19

**release** [1] - 15:11
**relevance** [9] - 20:17, 22:11, 26:15, 28:9, 28:14, 38:6, 38:19, 38:21, 49:13
**relevancy** [1] - 16:9
**relevant** [8] - 3:23, 4:7, 13:1, 20:24, 28:5, 38:13, 45:18, 50:17
**relied** [1] - 39:12
**rely** [2] - 33:19, 35:15
**relying** [1] - 35:11
**remember** [11] - 12:10, 12:12, 12:13, 14:5, 20:9, 20:11, 27:9, 31:10, 52:21, 52:23
**render** [1] - 12:8
**repeat** [1] - 17:12
**reply** [2] - 27:7, 54:16
**report** [47] - 9:15, 9:19, 9:21, 11:14, 11:17, 11:20, 11:25, 12:1, 12:3, 12:11, 16:12, 18:23, 22:12, 26:23, 27:18, 27:19, 27:21, 28:1, 28:5, 30:20, 32:2, 32:20, 32:21, 33:5, 33:11, 37:5, 37:6, 37:16, 39:20, 39:23, 39:24, 40:3, 40:8, 40:17, 40:24, 41:5, 41:20, 42:4, 42:5, 42:10, 43:24, 43:25, 46:6, 53:17, 54:3, 55:14
**REPORTED** [1] - 1:21
**reported** [1] - 50:14
**reporter** [1] - 35:25
**Reporter** [1] - 1:22
**reports** [3] - 29:24, 41:10, 41:14
**representation** [2] - 37:15, 39:13
**request** [1] - 17:14
**requested** [1] - 35:14
**requirements** [1] - 53:5
**rescinded** [1] - 19:11
**rescinding** [2] - 19:2, 19:8
**research** [2] - 6:16, 26:3
**responds** [1] - 11:20
**response** [10] - 12:5, 27:4, 27:5, 27:9, 27:11, 27:12, 37:22, 39:1, 51:10, 53:22
**restricted** [2] - 25:25, 26:25
**restriction** [1] - 15:10
**results** [5] - 19:23, 20:1, 30:13, 48:20, 48:22
**retreated** [1] - 55:25
**retreating** [1] - 52:11
**retreats** [1] - 51:14
**returned** [1] - 22:19
**review** [4] - 12:6, 45:16, 47:14, 48:19
**reviewed** [1] - 34:8
**REYES** [1] - 1:9

**righty** [1] - 4:12
**RODNEY** [2] - 1:4, 1:13
**Rodney** [1] - 3:3
**Ross** [1] - 5:21
**route** [1] - 54:25
**RPR** [2] - 1:21, 57:9
**rule** [1] - 56:10
**ruse** [1] - 22:15

## S

**sampling** [2] - 30:2, 30:5
**sanctions** [1] - 54:20
**sauce** [2] - 56:10, 56:11
**saw** [3] - 13:14, 13:15, 17:20
**science** [1] - 25:25
**sciences** [1] - 25:22
**scientific** [1] - 22:23
**scientist** [3] - 6:16, 25:20, 25:24
**scope** [1] - 5:7
**SCOTT** [2] - 1:4, 1:13
**Scott** [1] - 15:10
**scour** [2] - 30:2, 30:5
**searching** [2] - 30:11, 45:22
**seated** [2] - 3:11, 5:19
**second** [4] - 3:16, 12:16, 14:14, 16:24
**seconds** [1] - 18:8
**see** [15] - 3:25, 12:8, 13:24, 18:11, 18:14, 18:16, 18:17, 22:4, 23:1, 27:1, 27:6, 32:6, 32:7, 35:9, 56:11
**seeing** [3] - 15:8, 31:10, 37:4
**seem** [5] - 25:4, 25:7, 42:10, 54:16
**select** [1] - 30:6
**selection** [3] - 43:19, 44:1, 44:3
**send** [2] - 19:8, 41:14
**senior** [1] - 46:14
**sense** [1] - 8:7
**sent** [12] - 9:13, 12:4, 12:11, 15:14, 15:15, 22:2, 22:4, 22:9, 24:15, 24:17, 24:20, 36:11
**separately** [1] - 38:24
**September** [1] - 1:5
**sequence** [1] - 50:24
**sergeant** [1] - 46:15
**set** [1] - 5:5
**settlement** [1] - 41:17
**several** [4] - 17:21, 29:16, 43:3, 47:8
**share** [1] - 19:2
**show** [5] - 9:22, 14:14, 14:22, 21:6, 39:19
**showed** [1] - 43:19
**sic)** [1] - 40:6
**side** [5] - 4:5, 4:19, 28:17,

44:11, 55:21
**signed** [2] - 18:6, 37:3
**silly** [1] - 39:1
**similar** [1] - 47:18
**simple** [1] - 17:14
**simply** [2] - 38:13, 55:23
**single** [1] - 29:20
**sit** [2] - 9:9, 43:22
**skills** [3] - 40:11, 43:5
**social** [4] - 25:20, 25:22, 25:24, 25:25
**solve** [1] - 17:24
**somewhere** [1] - 13:10
**sorry** [10] - 3:22, 4:9, 6:11, 6:13, 11:25, 16:25, 32:22, 37:14, 45:23, 49:1
**sort** [2] - 15:10, 52:10
**sought** [1] - 29:18
**sounds** [1] - 56:4
**source** [11] - 45:12, 45:14, 45:16, 45:25, 46:1, 46:24, 46:25, 47:4, 47:11, 47:14, 47:21
**sources** [6] - 26:22, 45:10, 45:11, 46:17, 47:18, 47:20
**South** [2] - 6:10, 6:14
**SOUTHERN** [1] - 1:1
**speaking** [1] - 43:10
**speaks** [2] - 16:23, 19:5
**specifically** [2] - 8:10, 19:9
**specify** [1] - 19:18
**spectrum** [1] - 40:13
**speculations** [1] - 40:20
**spell** [1] - 5:20
**spend** [1] - 40:5
**spent** [1] - 18:4
**spoken** [2] - 20:18, 21:2
**stand** [1] - 54:1
**standard** [6] - 30:8, 30:12, 42:25, 45:20, 46:21, 47:12
**standby** [1] - 4:1
**start** [2] - 17:22, 33:3
**started** [3] - 5:7, 6:2, 37:4
**starts** [1] - 39:25
**state** [2] - 3:5, 5:20
**statement** [3] - 54:3, 54:4, 54:6
**statements** [6] - 4:22, 4:23, 29:9, 31:2, 31:3
**STATES** [2] - 1:1, 1:10
**States** [2] - 1:22, 6:6
**status** [2] - 38:5, 55:18
**stick** [1] - 45:24
**still** [2] - 20:5, 54:10
**story** [1] - 43:23
**straight** [2] - 47:25, 50:4
**Street** [1] - 1:14
**strictly** [1] - 44:11, 54:22
**study** [1] - 26:2

**stuff** [1] - 42:20
**subject** [1] - 45:15
**submission** [1] - 51:25
**substantial** [4] - 40:3, 43:24, 47:13, 53:12
**suggest** [2] - 49:16, 54:19
**suggested** [2] - 20:12, 33:14, 40:11
**suggesting** [3] - 25:5, 40:9, 40:12
**suggestions** [2] - 32:21, 32:23
**suggests** [2] - 40:17, 40:18
**Suite** [1] - 1:18
**summary** [2] - 24:17, 37:8
**supplied** [2] - 37:9, 41:10, 41:11
**support** [1] - 39:15
**surely** [1] - 43:25
**survey** [1] - 45:10
**sworn** [1] - 5:16
**system** [1] - 13:10

**T**

**tackle** [1] - 50:18
**Taylor** [1] - 28:16
**telephone** [1] - 3:12
**telephoned** [1] - 52:17
**ten** [1] - 46:24
**terms** [4] - 20:3, 38:7, 53:2, 55:7
**test** [6] - 8:22, 8:25, 9:1, 42:24, 50:16, 52:20
**tested** [3] - 42:21, 42:22
**testified** [6] - 5:16, 22:20, 38:10, 42:22, 44:2, 47:15
**testify** [10] - 6:3, 26:19, 27:13, 33:20, 38:10, 40:23, 43:9, 51:25, 54:6, 55:19
**testifying** [1] - 37:22
**testimony** [12] - 18:8, 22:12, 23:17, 23:22, 23:24, 23:25, 24:3, 25:7, 28:11, 32:11, 38:15, 41:6
**testing** [25] - 7:15, 27:15, 37:24, 40:1, 42:8, 46:19, 46:20, 48:8, 48:10, 48:19, 48:22, 49:2, 50:7, 50:10, 50:11, 51:18, 51:19, 51:22, 52:1, 52:3, 52:4, 53:13, 54:8, 55:11, 55:12
**tests** [7] - 9:4, 50:7, 50:10, 50:15, 50:17, 52:7, 52:8
**THE** [149] - 1:1, 1:9, 1:12, 1:17, 3:3, 3:10, 3:15, 3:18, 3:22, 4:4, 4:9, 4:12, 4:15, 4:23, 5:9, 5:12, 5:19, 6:11, 9:24, 10:1, 10:4, 10:8, 11:5, 12:21, 13:4, 13:8,

13:11, 13:14, 13:16, 13:19, 14:5, 14:8, 14:10, 14:12, 14:17, 14:21, 14:24, 16:14, 16:16, 16:25, 17:5, 19:7, 20:19, 20:22, 20:25, 21:20, 22:24, 23:9, 23:11, 23:14, 23:16, 23:19, 23:25, 24:2, 24:5, 25:6, 26:16, 26:25, 27:5, 27:8, 27:14, 27:25, 28:13, 28:15, 31:23, 32:18, 33:6, 33:21, 34:4, 34:9, 34:12, 34:14, 34:17, 34:20, 35:9, 35:15, 35:19, 35:21, 35:24, 36:3, 36:8, 36:13, 38:16, 38:19, 39:14, 39:18, 39:22, 40:5, 40:14, 41:2, 41:8, 41:18, 41:22, 42:3, 42:12, 42:25, 43:7, 43:12, 43:17, 43:21, 44:3, 44:10, 44:13, 44:20, 44:23, 45:1, 45:5, 45:23, 46:2, 47:23, 48:12, 48:14, 48:16, 49:1, 49:5, 49:7, 49:20, 49:23, 50:2, 50:6, 50:9, 50:12, 50:14, 50:25, 51:3, 51:9, 51:13, 51:17, 51:21, 51:24, 52:6, 52:9, 52:14, 53:1, 53:5, 53:8, 53:10, 53:14, 53:19, 54:4, 54:7, 54:14, 55:7, 55:18, 55:25, 56:3, 56:13, 56:16, 56:19
**Thereupon** [11] - 5:14, 10:9, 11:6, 14:25, 16:17, 21:8, 21:21, 31:6, 31:24, 32:25, 56:20
**thinking** [1] - 24:18
**thinks** [1] - 51:5
**third** [1] - 7:18
**thousand** [2] - 47:16, 47:17
**Three** [1] - 21:20
**three** [8] - 7:9, 7:16, 8:3, 17:23, 27:2, 27:19, 28:8, 49:1
**throughout** [2] - 50:24, 54:12
**today** [7] - 9:9, 13:15, 13:16, 14:1, 22:20, 35:19, 36:9
**together** [1] - 42:11
**tons** [1] - 30:6
**took** [1] - 45:1
**top** [2] - 11:23, 27:12
**topics** [1] - 6:25
**totality** [1] - 46:9
**touch** [1] - 29:22
**trained** [1] - 30:13
**training** [1] - 6:18
**transcription** [1] - 57:4
**treatment** [1] - 48:19
**trial** [3] - 40:2, 54:1, 55:20
**trials** [1] - 56:10

**trier** [1] - 28:3
**true** [4] - 20:9, 21:14, 31:17, 32:13
**try** [6] - 4:19, 28:16, 28:18, 36:15, 45:23, 49:23
**trying** [4] - 22:4, 25:5, 42:13, 46:5
**two** [6] - 6:8, 7:15, 34:2, 39:25, 47:16, 47:17
**type** [1] - 11:14
**typically** [1] - 15:18

**U**

**UCLA** [1] - 6:16
**ultimate** [1] - 50:23
**Ultimately** [1] - 12:6
**ultimately** [1] - 6:17
**under** [2] - 44:9, 54:22
**understood** [2] - 39:6, 56:3
**undertake** [4] - 16:20, 17:1, 36:25, 37:1
**undertaking** [1] - 45:15
**unfortunately** [1] - 22:14
**UNITED** [2] - 1:1, 1:10
**United** [3] - 1:22, 6:6, 7:2
**universities** [1] - 6:19
**University** [2] - 6:10, 6:14
**university** [1] - 6:18
**unless** [3] - 41:5, 41:6, 56:12
**up** [23] - 4:10, 5:13, 6:11, 12:1, 13:19, 13:22, 22:2, 22:5, 32:19, 41:5, 43:23, 46:16, 50:20, 51:7, 51:14, 52:11, 52:14, 52:21, 54:19, 55:10, 55:23, 55:25, 56:6
**useful** [1] - 5:4
**USERRA** [1] - 42:7
**usual** [1] - 15:16

**V**

**valuable** [1] - 4:1
**value** [1] - 22:23
**variety** [2] - 6:25, 46:21
**various** [1] - 50:7
**versus** [1] - 3:3
**view** [2] - 34:17
**vs** [1] - 1:5

**W**

**wait** [3] - 3:15, 38:16, 48:12
**Wales** [2] - 6:10, 6:14
**week** [1] - 12:1
**weeks** [1] - 17:23
**weight** [3] - 30:15, 30:21, 46:23
**whatsoever** [1] - 22:23
**whole** [3] - 27:21, 42:7, 43:23

**wholly** [1] - 55:16
**widespread** [1] - 47:10
**wife** [2] - 45:18, 46:9
**William** [1] - 3:6
**WILLIAM** [1] - 1:12
**willing** [1] - 54:11
**withdrawn** [2] - 12:3, 29:1
**withheld** [1] - 36:16
**Witness** [1] - 2:2
**witness** [4] - 9:23, 9:25,
   12:17, 49:14
**woman** [1] - 46:8
**word** [2] - 4:7, 42:9
**words** [1] - 7:21
**workers** [1] - 47:9
**works** [1] - 46:7
**wramlong@theamlongfirm**
   **.com** [1] - 1:15
**wrapped** [1] - 12:1
**write** [2] - 32:14, 35:25
**wrote** [4] - 21:5, 21:12,
   21:14, 21:23

## Y

**year** [1] - 6:8
**years** [2] - 6:20, 45:8
**yesterday** [7] - 31:4, 31:5,
   34:6, 35:14, 35:18, 35:19,
   36:12
**yourself** [2] - 25:20, 30:23