UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-60533-CIV-MARTINEZ/AOR

RODNEY SCOTT PATTERSON,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,
a Delaware corporation,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant American Airlines, Inc.'s ("Defendant" or "American") Motion to Exclude Opinion Testimony by Dr. Caddy (hereafter, *Daubert* Motion") [D.E. 132]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 137]. The undersigned held an evidentiary hearing on this matter on September 28, 2018, at which Dr. Glenn R. Caddy ("Dr. Caddy") testified [D.E. 143]. Having considered the parties' written submissions, having received Dr. Caddy's testimony, and having heard the argument of counsel, the undersigned respectfully recommends that Defendant's *Daubert* Motion be GRANTED IN PART AND DENIED IN PART, as more fully set forth below.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Rodney Scott Patterson ("Plaintiff" or "Patterson") works as a First Officer Pilot for American and is also a lieutenant colonel in the United States Army Reserve. See Compl. [D.E. 1]. He brings this action against American pursuant to the Uniform Services Employment

and Reemployment Rights Act ("USERRA"). Id. Patterson asserts two claims against American: one for substantive violation of the law; and one for retaliation. Id.

In March 2016, Patterson underwent a fitness-for-duty evaluation conducted by a neuropsychologist, Dr. John Knippa ("Dr. Knippa"), which resulted in a report that Patterson was not fit for duty as a pilot on the basis of impaired performances on cognitive assessment. See Dr. Knippa's NEUROPSYCHOLOGICAL AEROMEDICAL ASSESSMENT FITNESS FOR DUTY (FFD) REPORT [D.E. 57-6 at 13]. Patterson has remained off-duty with American.

On August 14, 2016, Dr. Caddy issued an expert report regarding Patterson's status [D.E. 57-28]. Defendant's *Daubert* Motion seeks to strike Dr. Caddy's report on the basis that Dr. Caddy's methodology is unreliable. See *Daubert* Motion [D.E. 132 at 11-14].[1] In opposition, Plaintiff limited the scope of Dr. Caddy's expert opinion to the following three areas: Patterson's psychological health; alleged irregularities in Dr. Knippa's testing methods; and Dr. Knippa's purported pro-American bias. See Plaintiff's Response [D.E. 136 at 2].

## ***DAUBERT* STANDARDS**

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A party who seeks to admit expert testimony bears the burden of laying the

---

[1] At the *Daubert* hearing, Defendant stated that it was also challenging Dr. Caddy's qualifications and the relevance of his expert report.

2

proper foundation for its admissibility by a preponderance of the evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Thus, before expert testimony may be admitted as evidence at trial pursuant to Rule 702 of the Federal Rules of Evidence, the district court must act as a gatekeeper and screen the proffered evidence. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596-97 (1993). In the Eleventh Circuit, this gatekeeping function must be performed as follows:

> [I]n determining the admissibility of expert testimony under Rule 702, [the court must] engage in a rigorous three-part inquiry [and] must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)). See also McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (The gatekeeping function requires the trial court "to conduct an exacting analysis of the proffered expert's methodology" to ensure it meets the standards of admissibility under Daubert.). However, "[a] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (citing Allison, 184 F.3d at 1311). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Allison, 184 F.3d at 1311.

## DR. CADDY'S TESTIMONY

During his direct testimony at the *Daubert* hearing, Dr. Caddy confirmed that his expert testimony would be limited to: Patterson's psychological health; alleged irregularities in Dr.

Knippa's testing methods; and Dr. Knippa's purported pro-American bias. He stated that he had no opinions to offer regarding neuropsychology and that he had no experience in conducting fitness-for-duty evaluations for airplane pilots. He also acknowledged that he has no expertise in bias and does not conduct research in that field. Dr. Caddy also stated that, in the course of his evaluation of Patterson, he did not interview any persons other than those identified to him by Patterson. Thus, persons who had negative comments regarding Patterson were not part of Dr. Caddy's report. Dr. Caddy explained this omission by stating that his practice is to look for people who know the subject of his examination well. Dr. Caddy also denied that he had incorporated into his report comments sent to him by Patterson via email.

On cross-examination, Dr. Caddy relied on his billing records to state that his engagement started on April 6, 2016. Also, despite Patterson's offer to Dr. Caddy to "cut and paste" Patterson's comments into Dr. Caddy's report, Dr. Caddy testified that he did not cut and paste anything that was offered by Patterson.

With regard to Patterson's psychological health, Dr. Caddy explained that he had spoken to eleven or twelve people that consisted of family, close friends, a lady from Patterson's homeowners' association, co-workers from American, and a couple of military people, one a sergeant and one a brigadier general. Dr. Caddy also explained that he conducted standard psychological testing of Patterson.

With regard to alleged irregularities in Dr. Knippa's psychological testing methods reflecting a purported pro-American bias, Dr. Caddy conflated his rationale for these opinions as follows: Dr. Knippa addresses some possible psychological condition of Patterson, discusses it at length, but then does not reach an ultimate opinion on the grounds that he lacks sufficient data. According to Dr. Caddy, Dr. Knippa sort of comes to the line and then retreats.

## DISCUSSION

At the *Daubert* hearing, the undersigned clarified that the only issues to be addressed in this Report and Recommendation would relate to the *Daubert* requirements. To the extent that Defendant seeks relief in connection with any alleged improper conduct on the part of Dr. Caddy, Patterson, or Plaintiff's counsel, it may present those issues in the context of a sanctions motion.

With regard to Patterson's psychological health, Dr. Caddy is qualified to opine on this issue based on his qualifications in the field of clinical psychology. Therefore, Dr. Caddy may offer his opinion regarding Patterson's psychological health, but only if this issue is presented to the jury by Dr. Knippa. Dr. Caddy may not express any opinions regarding neuropsychology or Patterson's fitness for duty based on cognitive assessment.

As to Dr. Caddy not having considered negative comments regarding Patterson, Dr. Caddy explained his standard practice of looking for people who know the subject of his examination well. Therefore, it will be up to the jury to weigh Dr. Caddy's opinion, taking the lack of negative comments in his report into account.

As to Dr. Caddy's finding irregularities in Dr. Knippa's psychological testing methods reflecting a pro-American bias, Dr. Caddy admitted that he has no expertise in the field of bias. Therefore, Dr. Caddy is not qualified to render these conflated opinions.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendant's *Daubert* Motion be GRANTED IN PART AND DENIED IN PART as follows: Dr. Caddy's expert opinion is limited to Patterson's psychological health, but may only be adduced if this issue is presented to the jury by Dr. Knippa. In presenting his

testimony, Dr. Caddy may not opine regarding alleged irregularities in Dr. Knippa's psychological testing methods that reflect a pro-American bias.

The parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 5th day of November, 2018.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Jose E. Martinez
    Counsel of Record