## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

CASE NO.: 0:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

      Defendant.

_____/

## AMERICAN AIRLINES, INC.'S MOTION FOR SANCTIONS

Plaintiff Rodney Scott Patterson should be sanctioned for lying to American and this Court and for flagrantly disregarding basic discovery rules and obligations in an attempt to hide evidence. Plaintiff sought to prevent American and this Court (as well as the Federal Aviation Administration) from learning of Dr. Edwin Bercaw's March 2016 neuropsychological examination of Plaintiff and Dr. Bercaw's subsequent report because it undermines the fundamental narrative that Plaintiff has presented in this litigation.

Four days after Dr. John Knippa—a credentialed neuropsychologist to whom American sent Plaintiff for a fitness for duty examination—conducted a two-day examination that resulted in a determination that Plaintiff was not fit for duty as a pilot, Plaintiff sought out Dr. Bercaw for a second opinion.  Plaintiff visited Dr. Bercaw in his Sarasota, Florida offices for extensive neuropsychological examination and testing.  He did so without the knowledge of his employer, American.  One month later, Dr. Bercaw sent Plaintiff his report, in which Dr. Bercaw raised concerns "potentially critical to flight performance" and recommended further review of Plaintiff

by the Federal Aviation Administration.  Dr. Bercaw's report echoed the nearly identical concerns that led Dr. Knippa to conclude that Plaintiff was not fit to fly.

Following Dr. Bercaw's examination and report:

- Plaintiff immediately wrote to Dr. Bercaw—copying his counsel (William Amlong) and testifying expert (Dr. Glenn Caddy)—as follows: "*I am rescinding any authorization for you to send my records to anywhere other than to Dr. Caddy, specifically those authorizations entitled Federal Aviation Administration or Aviation Medical Examiner are at this time rescinded*."

- Plaintiff sent the following message to Dr. Caddy: "*If Dr. Bercaw will play ball with you, fine. . . . If he won't play ball we will cut bait and go fish elsewhere*."

- Plaintiff failed to identify Dr. Bercaw in response to American's July 5, 2017 interrogatory asking Plaintiff to: "Identify any medical practitioner (including, without limitation, psychologists or neuropsychologists), by whom you have been evaluated or treated since January 1, 2014."

- Plaintiff failed to produce a copy of Dr. Bercaw's neuropsychological report and email communications with Dr. Bercaw in response to American's July 5, 2017 Request for Production, asking for: "All documents that reference or relate to any consultation, evaluation, or treatment from a medical practitioner (including, without limitation, psychologists or neurologists) that you have received since January 1, 2014."

- Plaintiff did not disclose Dr. Bercaw's neuropsychological examination in any of the three FAA medical certification forms (Form 8500-8) that Plaintiff submitted to the FAA in 2016 or 2017, despite an express requirement in each submission, under penalty of law, that Plaintiff identify all "Visits to Health Professional Within Last 3 Years."

- At his March 2018 deposition, Plaintiff testified that he did not know anyone named Dr. Bercaw.  Then, after counsel showed Plaintiff an email to Plaintiff from Dr. Bercaw, Plaintiff testified that his recollection was refreshed and conceded that that he was aware of Dr. Bercaw's findings, but maintained that he had never visited Dr. Bercaw.

After his deposition, American was forced to seek a court order compelling Plaintiff to produce Dr. Bercaw's report—that Plaintiff vigorously opposed for no valid reason.

In June 2018, Magistrate Judge Otazo-Reyes granted American's motion seeking a copy of the report and, in doing so, she found that Dr. Caddy had considered Dr. Bercaw's findings prior to preparing his own expert report for Plaintiff but that Dr. Caddy had failed to disclose Dr. Bercaw's findings in his report.

2

The saga concerning the Bercaw report, however, did not stop there.  At a September 2018 hearing (regarding American's *Daubert* motion to exclude Dr. Caddy's testimony), Judge Otazo-Reyes addressed American's allegations that Plaintiff, Plaintiff's counsel, and Dr. Caddy had withheld material information concerning Dr. Bercaw's report, concluding as follows: "I would suggest that you gather all that up and file it as a motion for sanctions."  At that same hearing, Plaintiff represented to Judge Otazo-Reyes that Dr. Gary Kay would be Plaintiff's sole witness regarding Plaintiff's neuropsychological fitness for duty at the time American withheld him from flying.  Based on that representation, and to determine if Plaintiff had also hid Dr. Bercaw's report from Dr. Kay, on November 28, 2018, American deposed Dr. Kay.

At his deposition, Dr. Kay testified that:

- Plaintiff did not inform Dr. Kay of Dr. Bercaw's April 2016 report until 2018, even though the Bercaw report was highly relevant to Dr. Kay's June 2016 examination;

- If Dr. Kay had known about Dr. Bercaw's report in June 2016 and Plaintiff had refused to share the report, Dr. Kay "wouldn't have actually performed my evaluation or written my report without it";

- Plaintiff had "done miserably" on cognitive tests administered by Dr. Bercaw, "so Dr. Bercaw was quite right" that FAA examiners likely would not issue a medical certificate based on those results;

- Because Plaintiff failed to disclose the Bercaw report in June 2016, Dr. Kay administered the exact same version of a key cognitive test that Dr. Bercaw had administered, rendering the test results unreliable based on the "practice effect"; and

- In light of the after-the-fact disclosure of the Bercaw report, which "would have led to a different opinion" from Dr. Kay, it would not be appropriate to rely on Dr. Kay's June 2016 report in analyzing Plaintiff's fitness for duty.

In response to a question regarding the significance of Plaintiff's decision to "withhold Dr. Bercaw's report from [Dr. Kay] in June 2016," Dr. Kay testified that: "I don't know what counsel he received that told him that he should do that or why he thought that was okay. . . .  I don't know why he didn't give it to me.  That was a mistake, a terrible mistake.  You know that's not what we want pilots to do.  And it certainly doesn't look good."

3

For the reasons detailed in this Motion, American now respectfully requests that this court, pursuant to its inherent powers, sanction Plaintiff for his conduct.  *See, e.g.*, *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1293–94 (S.D. Fla. 2007) ("Sanctions are imposed against [defendant] Hussain pursuant to this Court's inherent power to do so."); *Eldredge v. EDCare Mgmt. Inc.*, No. 13-cv-61373, 2015 WL 13666059, at *1 (S.D. Fla. July 30, 2015) (Scola, J.) (affirming sanctions against the Amlong Firm based on similar conduct).  Specifically, American respectfully requests that this Court find that the following fact is deemed established for all purposes, including for purposes of American's pending motion for summary judgment: **as of March 2016, Plaintiff Rodney Scott Patterson was "not fit for duty as a pilot on the basis of impaired performances on cognitive assessment"**—confirming the conclusion set forth in Dr. Knippa's March 21, 2016 report.  Further, if this case reaches trial, American respectfully requests that the jury be instructed of this fact and be informed by the Court of Plaintiff's deliberate withholding of Dr. Bercaw's report, a fact which the jury should consider in assessing Plaintiff's credibility.  American further requests that this Court award monetary relief jointly against Plaintiff and his counsel to reimburse American for the needless attorneys' fees and costs it incurred because of Plaintiff's prevarications and discovery abuses, specifically for: (1) obtaining the Bercaw report and accompanying materials; (2) the deposition of Dr. Caddy and the *Daubert* motion to exclude Dr. Caddy's opinion testimony; and (3) the deposition of Dr. Kay.  *See, e.g.*, *Bernal*, 479 F. Supp. 2d at 1293–94 (sanctions award included instructions to jury that two facts "are deemed established," instructions to jury on false evidence and spoliation, and monetary sanctions in case where "the clear picture is that [defendant's] plan was to frustrate the proceedings by evading discovery requests, hiding documents, and vilifying the Plaintiff and her counsel.")

4

## RELEVANT FACTS

In this USERRA action, Plaintiff claims that a "motivating factor" in American withholding him from duty as a First Officer of a 767 aircraft in September 2015, and continuing to withhold him from duty since that time, was a request by Plaintiff for time off to serve in the military.  (Compl. ¶ 29, ECF No. 1.)  As since established in discovery, however, Plaintiff now concedes that he was not on active duty during the relevant time on which he bases his USERRA claim and, instead, attended a ceremonial event at the White House with his wife.  (ECF No. 59-1 at ¶¶ 17–18.)  As demonstrated in American's summary judgment motion, American withheld Plaintiff from duty on September 24, 2015 after a long-time pilot filed a formal workplace harassment complaint on that day that raised serious concerns regarding Plaintiff.  (*See* ECF No. 59.)  Any reasonable employer would withhold an employee from duty (especially a pilot) and investigate after receiving a similar complaint.  Indeed, Plaintiff himself concedes that a reasonable person would expect a similar workplace harassment complaint to result in the employer terminating the employee.  (ECF No. 59-1 at ¶ 27.)

Following an investigation of the complaint against Plaintiff, in December 2015, American's HR Department in Miami prepared a written report.  (*Id.* at ¶¶ 32–33.)  In that report, American's HR Department observed that, "the majority of the employees interviewed described [Plaintiff] as a habitual liar/story teller" whose conduct led "multiple employees . . . to question his ability to operate the aircraft safely; it left them with an impression that 'he's not quite all there.'"  (*Id.*)  Following receipt of the report, the Miami flight office initiated a "Fitness for Duty Medical Examination, pursuant to Section 20 of the [American/Allied Pilots Association Collective Bargaining Agreement (the "CBA")] . . . based upon this office's concerns about FO Patterson's judgment and specifically, his mental and/or emotional stability."  (*Id.* at ¶ 35.)  The

Miami flight office thus sent notice to Plaintiff that, pursuant to Section 20 of the CBA, American was referring him to a fitness for duty examination by an independent neuropsychologist, Dr. John Knippa.  (*Id.* at ¶ 35.)

On March 21, 2016, following a two-day examination, Dr. Knippa reported to American that Plaintiff is "NOT FIT FOR DUTY as a [pilot] on the basis of impaired performances on cognitive assessment."  (*Id.* at ¶ 37.)  Since that time, American has withheld Plaintiff from duty and informed him that it will continue to withhold him until he returns to Dr. Knippa (or a comparable examiner approved by American) for reevaluation in accordance with Section 20 of the CBA—the same process/protocol required and established in the CBA for any pilot found unfit for duty.  (*Id.* at ¶¶ 38–39.)

On March 14, 2017, Plaintiff filed his Complaint.  (ECF No. 1.)  In the Complaint, Plaintiff alleges that, "Dr. Knippa's findings of neurological deficit were contradicted by" multiple doctors, including Dr. Kay.  (*Id.* at ¶¶ 20–23.)  Plaintiff also alleges that American should have returned Plaintiff to flying based on Dr. Kay's June 2016 report.  (*Id.* at ¶¶ 23, 29.f, 40.f.)

For as long as this case has been pending, Plaintiff has contended that the findings of Dr. Knippa were wrong because other doctors came to contrary conclusions.[1]  On July 5, 2017, American issued its First Set of Interrogatories to Plaintiff, including an interrogatory requiring Plaintiff to:

> Identify any medical practitioner (including, without limitation, psychologists or neuropsychologists), by whom you have been evaluated or treated since January 1, 2014.

---

[1] The reality is that regardless of whether another doctor *later* concluded Plaintiff is fit for duty does not change the fact that American never took any action based on Plaintiff's military service and would have withheld from duty any pilot found not fit for duty regardless of the pilot's military service.  (*See* ECF No. 96.)

(Pl.'s Answers to 1st Interrogs., attached as Exhibit 1 at 4.)

On the same day, American issued its First Requests for Production, including a request

requiring Plaintiff to produce to American:

> All documents that reference or relate to any consultation,
> evaluation, or treatment from a medical practitioner (including,
> without limitation, psychologists or neurologists) that you have
> received since January 1, 2014.

(Pl.'s Responses to 1st Requests for Production, attached as Exhibit 2 at 4.)  Plaintiff did not

identify Dr. Bercaw in response to American's Interrogatories nor did he produce a copy of Dr.

Bercaw's report in response to American's Requests for Production.  (Exs. 1 at 4 & 2 at 4.)

Plaintiff did produce a single email dated April 22, 2016, sent by Dr. Bercaw to Plaintiff,

Mr. Amlong, and Dr. Caddy.  Dr. Bercaw's email stated:

> We did get the medical records this week and wrapped up the report
> just today. A PDF is attached. . . . Ultimately, the recommendation
> is that this should go to review by the FAA, who has a few "in
> house" neuropsychologist consultants who render an opinion. They
> will have the data they need from us, but we are willing to do any
> follow-up or additional testing that may be required later, which is
> sometimes the case.

(ECF No. 53-1.)

In a filing with this Court, Plaintiff expressly acknowledged that he intended to withhold

this email, stating that, "a former associate at plaintiff's counsel's firm accidentally provided a

copy of [this] e-mail from Dr. Bercaw to Lt. Col. Patterson, about which he was questioned at his

March 6, 2018 deposition."  (ECF No. 92 at 4.)  Plaintiff did not assert privilege over this email,

however, nor is there any privilege that would protect this email.  Thus, Plaintiff's statement

regarding the accidental production of this email demonstrates Plaintiff's intent to withhold

material information concerning Dr. Bercaw.  If the former associate at Plaintiff's counsel firm

had not "accidentally" produced this email (which is directly responsive to American's requests

for production), it is likely that American would have never learned about Plaintiff's examination by Dr. Bercaw, nor discovered Dr. Bercaw's report.

In March 2018, American deposed Plaintiff and questioned him about Dr. Bercaw, noting the reference to a report by Dr. Bercaw in that email.  Plaintiff first testified that he did not know Dr. Bercaw, and that even the name "Bercaw" did not jog his memory.  (Patterson Dep. 341:13–16, ECF No. 57-1) (Q: "There's a reference in some of the documents to a Bercaw report, B-E-R-C-A-W.  Does that jog your memory?"  A: "Dr. Bercaw does not.")  Counsel for American then showed Plaintiff the April 22, 2016 email from Dr. Bercaw.  (*Id.* at 345:12–347:3.)  Plaintiff testified that this email refreshed his recollection and that he did in fact know of Dr. Bercaw's neuropsychological findings.  (*Id.*)  Plaintiff, however, expressly testified that he had not visited Dr. Bercaw for an examination.  (*Id.* at 343:10–12) (Q "Have you visited [Dr. Bercaw] in the last three years?" A: "Not in the last three years. I've spoken with him.")  Plaintiff also expressly acknowledged that FAA Form 8500-8 required him to disclose all "visits to health professionals" within the last three years, but he testified had that he had not disclosed Dr. Bercaw on any of his Form 8500s as of March 2018, because he had made no such visits to Dr. Bercaw.  (*See Id.* at 342:2–343:12.)  Subsequent discovery has demonstrated that this was simply not true.  After showing Plaintiff the email from Dr. Bercaw, counsel for American also asked him if he ever responded to that email.  Plaintiff testified that he had not responded. (*Id.* at 347:16–17.)  As detailed below, subsequent discovery has likewise demonstrated that this response was also untruthful.

Subsequently, at a June 27, 2018 hearing, Plaintiff produced a never-before-disclosed May 2016 email—that is also directly responsive to American's requests for production—which not only demonstrates that Plaintiff engaged in doctor shopping in an attempt to manipulate

American's fitness for duty process, but also that Plaintiff made a conscious decision to bury the harmful Bercaw report.  Plaintiff gave Dr. Caddy the written instruction that, if Dr. Bercaw "won't play ball with you . . . we will cut bait and go fish elsewhere."  (ECF No. 79 at 2.)

Dr. Caddy followed suit with Plaintiff's efforts to conceal Dr. Bercaw's report.  At the same June 2018 hearing, "Magistrate Judge Otazo-Reyes found that Plaintiff violated Fed. R. Civ. P. 26(a)(2)(B)(ii) when Dr. Caddy failed to include in his expert report all facts or data he considered in rendering his opinion—Dr. Bercaw's report."  (ECF No. 108 at 3.)  Remarkably, not once in his 96-page report in this case did Dr. Caddy even mention Dr. Bercaw or Dr. Bercaw's findings.  (*See id.*)  Judge Otazo-Reyes ordered Plaintiff to produce Dr. Bercaw's report and any communications between Drs. Bercaw and Caddy by July 9, 2018, and authorized American to obtain copies of this information directly from Dr. Bercaw.  (ECF No. 80.)

On June 29, 2018, approximately a year and three months into this litigation, American obtained a copy of Dr. Bercaw's report from Dr. Bercaw's office.  In that report, Dr. Bercaw sets forth his findings that Plaintiff has "mildly-to-moderately impaired deductive reasoning" and "severely impaired" results on tests of perseverative errors, as well as below average and mildly impaired scores on a continuous attention test.  (ECF No. 87-1 at 4–5.)  Dr. Bercaw also explained that, "[t]hese findings raise concern about how adaptable or flexible he is to feedback about his performance.  This quality is potentially critical to flight performance, particularly in non-routine situations. Therefore, further review of these data by an FAA neuropsychologist is recommended to determine the aeromedical significance to piloting skills."  (*Id.* at 6–7.)  Dr. Bercaw's conclusion confirms the similar findings by Dr. Knippa.  (*See* ECF No. 57-6 at 12) ("Through the course of testing, there were multiple examples of impulsive-appearing or over-confident behavior that can

compromise performance.  The overall profile of neuropsychological assessment was discrepant from that expected for Major Airline pilots of similar age.")

On July 30, 2018, this Court granted American's motion for leave to take follow-up depositions outside of the discovery deadline to explore Dr. Bercaw's report and Dr. Caddy's methodology.  (ECF No. 108 at 2.)  This Court recognized that this Motion was prompted by an "untimely production" by Plaintiff—specifically, on "July 9, 2018, more than a month after the close of discovery, Plaintiff produced additional documents reflecting that Dr. Caddy received Dr. Bercaw's report and discussed the report and findings before providing his own expert report." (*Id*.)

On August 30, 2018, American filed a *Daubert* Motion to Exclude Opinion Testimony by Dr. Caddy.  (ECF No. 132.)  In response to this *Daubert* Motion, Plaintiff confirmed in a September 17, 2018 filing with this Court that he visited Dr. Bercaw on March 21, 2016, at Dr. Bercaw's office in Sarasota, Florida.  (*See* ECF No. 136 at 8.) ("On the same day as Dr. Knippa issued his fitness-for-duty report, March 21, 2016, Lt. Col. Patterson visited Edwin Bercaw, Ph.D. . . ."). Plaintiff admitted these facts more than six months after he had first testified that he did not even know Bercaw, and then testified that he had had only spoken with Dr. Bercaw but never visited him. (Patterson Dep. at 341:13–343:12, ECF No. 57-1.) Spending a day at a doctor's office in another city is not something that Plaintiff would simply forget or that he can explain away as a mistake in his testimony—particularly when that doctor raised serious concerns about his ability to work as a pilot and recommended further evaluation by the FAA.  Indeed, there can be no doubt that Plaintiff intended to bury Dr. Bercaw's report from the outset unless he issued a favorable finding based on his email to his paid expert, Dr. Caddy, in April 2016.  (ECF No. 79 at 2) ("If [Dr. Bercaw] won't play ball with you . . . we will cut bait and go fish elsewhere.")

10

In the same September 2018 filing, Plaintiff's counsel expressly confirmed that Plaintiff had made misrepresentations to this Court regarding Dr. Bercaw, stating in a footnote that: "[t]he undersigned mistakenly represented to the Court that Dr. Caddy had sent [Plaintiff] to Dr. Bercaw, based on how the undersigned had understood [Plaintiff's] deposition testimony . . . and [Plaintiff] having signed an amended interrogatory answer. . . . Dr Caddy did not actually see [Plaintiff] until April 6, 2016."   (ECF No. 136 at 8, n. 23.)   Here, Plaintiff's counsel concedes that misrepresentations were made to the Court, but appears inexplicably to suggest that the misrepresentations should be excused as mistakes, because the source of the misrepresentation was false testimony and a false interrogatory answer by Plaintiff himself.  This remarkable footnote only serves to confirm Plaintiff's culpability.

As part of this same filing, Plaintiff also produced two significant new documents—also previously withheld despite also being directly responsive to American's discovery requests.  First, Plaintiff produced an email showing that Plaintiff had responded almost immediately to Dr. Bercaw's April 22, 2016 email concerning his report.  (ECF No. 136-3.)  Plaintiff had testified at his March 2018 deposition that he never responded to this email.  (Patterson Dep. 347:16–18, ECF No. 57-1) ("Q: Did you respond to this email from Dr. Bercaw? A: I did not respond to it.")  The document produced as an attachment to Plaintiff's September 17, 2018 filing is Plaintiff's reply email to Dr. Bercaw on April 22, 2016—with copy to Mr. Amlong and Dr. Caddy.  (ECF No. 136-3.) Specifically, once Plaintiff learned of the negative results, he immediately took action to ensure that Dr. Bercaw's report would not be discovered by American or the FAA, by directing Dr. Bercaw:  "I am rescinding any authorization for you to send my records anywhere other than to Dr. Caddy, specifically those authorizations entitled Federal Aviation Administration or Aviation

Medical Examiner are at this time rescinded." (*Id.*)  This email, of course, further belies any claim by Plaintiff he somehow just forgot about his visit to Dr. Bercaw.

Second, as part of the September 17, 2018 filing, Plaintiff also produced another email demonstrating that Dr. Caddy assisted Plaintiff in his effort to bury Dr. Bercaw's report.  The newly-produced letter, dated May 6, 2016, states that Drs. Bercaw and Caddy had discussed Dr. Bercaw's report "in our telephone consultation this morning."  (ECF No. 136-1.)  Dr. Caddy's August 2016 report, however, made absolutely no mention of Dr. Bercaw or his report.  (ECF No. 57-28.)

At the September 28, 2018 hearing before Judge Otazo-Reyes, American's counsel questioned Dr. Caddy about this May 2016 letter because Dr. Caddy had previously testified that he never received the Bercaw report, even though fax and email records provided contrary evidence.  (E.g., ECF No. 136 at 13–14; ECF No. 136-1; Bercaw Dep. Ex. 5, attached as Exhibit 3.)  In response, Dr. Caddy began reviewing billing records he brought with him to the hearing, asserting that these records might show that he was not yet working with Plaintiff at the time of Dr. Bercaw's report.  (ECF No. 148 at 34:24–36:17.)  The billing records did not support Dr. Caddy's point, nor had Plaintiff ever produced to American the billing records that Dr. Caddy was reviewing (even though they were also responsive to American Request for Production Number 12).  (*See* Ex. 2 at 4.)[2]

---

[2] When American objected at the hearing to Plaintiff's failure to previously produce these billing records, Judge Otazo-Reyes told Plaintiff's counsel that she found it "hard to believe" that a mere oversight explained his failure to produce those materials.  (ECF No. 148 at 34:24–36:17.)  She further commented: "there's a really good chance that you have improperly withheld these matters from opposing counsel."  (*Id.*)  Following the hearing, Judge Otazo-Reyes issued a Report and Recommendation that Dr. Caddy only testify at trial if American first presents the issue of Plaintiff's psychological (not neuropsychological) health to the jury through testimony from Dr. Knippa.  (ECF No. 149.)  Plaintiff's objections to that Report have been briefed and are currently pending before this Court.  (ECF Nos. 150, 151, 152, & 153.)

At the September 28, 2018 hearing, Plaintiff represented that Dr. Kay would be Plaintiff's sole witness regarding his neuropsychological fitness for duty.  (ECF No. 148 at 40:1–2.)  On November 28, 2018, American deposed Dr. Kay.[3]  That deposition further confirmed Plaintiff's intention to bury the Bercaw report and inappropriately interfere with American's fitness for duty process.  Dr. Kay testified that Plaintiff did not inform him of Dr. Bercaw's April 2016 report until 2018.  (Ex. 4, Kay Dep. at 127:8–129:2, 133:9–135:5.)  That is, when Plaintiff consulted with Dr. Kay and when Dr. Kay examined Plaintiff in June 2016, Plaintiff hid his examination by Dr. Bercaw from Dr. Kay.  (*Id.*)  Dr. Kay did not reference the Bercaw report in his June 2016 report because he "didn't know it existed," even though it was highly relevant to his own June 2016 examination.  (*Id.* at 128:2–6.)  According to Dr. Kay, Dr. Bercaw's "Neuropsychological Evaluation . . . completely applies to how . . . the person is performing on neuropsychological testing."  (*Id.* at 128:12–21.)  If Dr. Kay had known about Dr. Bercaw's report in June 2016 and Plaintiff had refused to share the report, Dr. Kay "wouldn't have actually performed my evaluation or written my report without it."  (*Id.* at 138:17–139:2.)

Plaintiff's failure to disclose the Bercaw report also had a significant practical impact on Dr. Kay's examination and subsequent report and conclusions.  The CogScreen test that Dr. Kay created, and that Dr. Dr. Knippa, Dr. Bercaw and Dr. Kay each administered, has different "Sessions" that can be given to pilots in order to ensure that pilots do not repeat the same questions and cannot simply learn how to perform better on the test—known as the "practice effect."  (*Id.* at 131:21–134:2.)  Dr. Bercaw administered Session 2 of CogScreen to Plaintiff.  (*Id.* at 133:1–5.)

---

[3] At his deposition, Dr. Kay testified that he was not even aware that Plaintiff had designated him as an expert witness in this case.  (Kay Dep. at 11:20–12:1, attached as Exhibit 4.)  Dr. Kay also testified that he had never seen the expert disclosures that Plaintiff submitted for his testimony in November 2017.  (*Id.* at 11:12–19.)

FPDOCS 35002770.1

But, because Plaintiff did not tell Dr. Kay about Dr. Bercaw's examination, Dr. Kay also administered the same Session 2 test to Plaintiff.  (*Id.* at 133:1–134:2.)

After finally having the opportunity to review the Bercaw report, Dr. Kay characterized Plaintiff as having "done miserably" on the tests administered by Dr. Bercaw.  (*Id.* at 192:22–195:12.)  For example, according to Dr. Kay, Plaintiff "had done very poorly when tested by Dr. Bercaw on memory . . . [a]nd we would not grant an airman a certificate who had performed that poorly on memory testing."  (*Id.*)  Dr. Kay testified that, "there were areas in Dr. Bercaw's evaluation that would raise concern about Mr. Patterson's fitness, his suitability for an aeromedical certificate, [and] areas of neuropsychological testing that I had not done in my evaluation."  (*Id.* at 190:3–12.)  According to Dr. Kay, "Dr. Bercaw was quite right that, in fact, if it was reviewed by one of the FAA neuropsychology consultants we probably would not issue" a medical certificate.  (*Id.* at 192:22–195:12.)[4]

Dr. Kay testified that if he had known of the Bercaw report in June 2016, it "would have led to a different opinion." (*Id.*)  According to Dr. Kay, Plaintiff's failure to disclose the Bercaw report means that it would not be appropriate to rely on Dr. Kay's June 2016 report "in analyzing Mr. Patterson's fitness for duty."  (*Id.* at 140:1–4.)  With respect to Plaintiff's decision to "withhold[] Dr. Bercaw's report from you in June 2016," Dr. Kay testified this was a "terrible mistake" that "certainly doesn't look good."  (Ex. A at 196:1–197:4.)

---

[4] Dr. Kay recently re-examined Plaintiff and concluded that he was fit to fly as of October 2018. (*Id.* at 195:17–22, 216:2–5.)  To the extent Plaintiff seeks to return to work, however, the same doctor (Dr. Knippa) or a comparable examiner approved by American in accordance with the governing CBA must reevaluate him.  (ECF No. 59-1 at ¶ 39.)  In that regard, Dr. Kay testified that Dr. Knippa is "well recognized as being a good neuropsychologist."  (Ex. 4, Kay Dep. at 104:20–105:1.)

14

Dr. Kay testified that Plaintiff was "required by law to indicate that he was evaluated by Ed Bercaw" on his FAA Form 8500-8. (*Id.* at 145:17–147:5.) At his deposition, Dr. Kay reviewed three Form 8500-8s that Plaintiff submitted to the FAA in 2016 and 2017, after Dr. Bercaw examined Plaintiff. (*Id.* at 171:15–186:4.) Dr. Kay confirmed that Plaintiff had not disclosed Dr. Bercaw to the FAA on a single one of these forms, even though Item 19 expressly required Plaintiff to list all visits to health professionals within the last three years. (*Id.* at 168:3–11, 181:12–182:1, 185:19–186:4.) According to Dr. Kay, there is no basis for Plaintiff's repeated failures to identify Dr. Bercaw on his Form 8500-8s. (*Id.* at 174:5–8.) Dr. Kay also testified that a pilot's failure to report accurate information on the Form 8500-8 "undermines the safety of national air space." (*Id.* at 155:6–156:14.)

## LEGAL STANDARD

"A federal district court possesses the inherent authority to regulate the progress of actions before it. Within this authority is the power to sanction litigants for bad-faith litigation conduct." *Sprint Solutions, Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290 (S.D. Fla. 2015) (citations omitted). "Bad faith exists when the court finds that a fraud has been practiced upon it." *Id.* at 1295 (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005.); *see also Eldredge*, 2015 WL 13666059 at *1 (affirming sanctions award against Amlong Firm pursuant to inherent authority of Magistrate Judge Otazo-Reyes).[5]

---

[5] In *Elderedge*, the district court affirmed Judge Otazo-Reyes's sanctions award pursuant to the Court's inherent powers but the district court also would have affirmed her award almost entirely under 28 U.S.C. § 1927. 2015 WL 13666059, at *2. The standard for imposing sanctions against an attorney is "essentially the same" under these two sources of authority—Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Edlredge v. EDCare Mgmt. Inc.*, No. 13-cv-61373, ECF No. 188 at 2 (S.D. Fla. July 30, 2015) (Otazo-Reyes, M.J.) (Magistrate Judge Otazo-Reyes' award against Amlong Firm.) The Eleventh Circuit has "consistently held that an attorney

Sanctions under the Court's inherent authority may include monetary penalties, adverse inferences, and the striking of claims or defenses. *Sprint*, 83 F. Supp. 3d at 1295 (compiling cases).

## **ARGUMENT**

Throughout this litigation, Plaintiff has engaged in intentional misrepresentations to American and the Court. The pattern of misrepresentations made with respect to Dr. Bercaw's 2016 "Neuropsychological Examination" of Plaintiff is clear and overwhelming—it compels a finding of bad faith by this Court. The defining narrative advanced by Plaintiff from the outset of this litigation is that American was unjustified in relying on the March 2016 neuropsychological report from Dr. Knippa—a report that concluded that Plaintiff was not fit for duty—because Dr. Knippa was allegedly a lone voice whose findings were contradicted by every other doctor that examined Plaintiff in 2016. Indeed, in written submissions to this Court, Plaintiff asserted that Dr. Knippa conducted a "highly irregulat (sic) fitness-for-duty examination, the inconclusive results of which [American] then used to keep [Plaintiff] grounded" and that Dr. Knippa's "findings concerning Patterson have been contradicted by . . . four practitioners [including Dr. Kay and Dr. Caddy]." (ECF No. 46 at 1; ECF 73 at ¶ 39.)

In an effort to preserve this ill-founded narrative at any cost and simultaneously circumvent American's fitness for duty process, Plaintiff actively concealed from American and this Court (as well as Dr. Kay) the fact that the first neuropsychologist Plaintiff sought out following Dr. Knippa's examination—Dr. Bercaw—echoed the very conclusion and concerns as Dr. Knippa. This alone warrants sanctions. *See, e.g.*, *Eldredge*, 2015 WL 13666059, at *1.

---

multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

Of course, this was not a one-time misrepresentation—rather, Plaintiff repeated this misrepresentation at every stage of the litigation.  Plaintiff did not identify Dr. Bercaw or provide his report in response to American's July 2017 discovery requests to which they are directly responsive.  Then, at his deposition, Plaintiff lied under oath by initially denying even knowing the name Dr. Bercaw.  When American's counsel presented Plaintiff with an email from Dr. Bercaw about his report (which American would have never known about if a former associate at the Amlong firm had not "accidentally" produced such email), Plaintiff lied under oath again. (Patterson Dep. 341:13–347:17, ECF No. 57-1) (testifying that, while he had spoken with Dr. Bercaw, he had never visited him nor ever written him back in response to Dr. Bercaw's email). If American had taken Plaintiff at his word, based on Plaintiff's discovery responses and deposition testimony, American and this Court would have never learned of Dr. Bercaw's March 2016 examination or his April 2016 report.  Dr. Kay (Plaintiff's own expert) and American would also have been deprived of this information, even though it is critical to assessing Plaintiff's fitness to fly commercial aircraft and withholding it undermines American's fitness for duty process.

Instead, Plaintiff forced American to come to the Court twice to obtain such critical information: first, with a motion to compel production of the Bercaw report and second, with a motion to allow discovery related to the Bercaw report beyond the scheduled close of discovery. Both of American's motions were granted; the first one by Magistrate Judge Otazo-Reyes (ECF No. 80) and the second by this Court (ECF No. 128).  There is simply no reason why American or this Court should have been required to incur this time and expense to expose Plaintiff's lies and attempts to hide clearly responsive documents.

The now undisputed facts that have emerged since the Court compelled this discovery provide additional evidence of bad faith conduct by Plaintiff, assisted by his counsel, on matters

17

that are highly material to this litigation.  For example, in his September 17, 2018 filing, Plaintiff expressly confirmed that he had made misrepresentations to this Court regarding Dr. Bercaw: "The undersigned mistakenly represented to the Court that Dr. Caddy had sent Lt. Col. Patterson to Dr. Bercaw, based on how the undersigned had understood Lt. Col. Patterson's deposition testimony . . . and on Lt. Col. Patterson's having singed an amended interrogatory answer."  (ECF No. 136 at 8, n. 23.)   Here, Plaintiff's counsel appears to suggest that only Plaintiff made knowing misrepresentations and that counsel's misrepresentations were simply mistakes.  Of course, any apparent mistakes of fact might have been clarified if Plaintiff had truthfully testified about Dr. Bercaw at his March 2018 deposition, instead of denying that he had ever heard of Dr. Bercaw or ever visited him.

Plaintiff's efforts to conceal Dr. Bercaw's report were aided by his counsel, a fact demonstrated by an email produced on September 17, 2018—14 months after American issued its discovery requests.  That email shows that on April 22, 2016, one hour after Dr. Bercaw emailed Plaintiff regarding his completed report and his "recommendation [] that this should go to review by the FAA," Plaintiff responded by email, *with copy to Plaintiff's counsel William Amlong*, revoking consent for Dr. Bercaw to share his report with the FAA or anyone other Dr. Caddy. (ECF No. 136-3.)  Thus, when Plaintiff testified at his March 2018 deposition that he had never visited Dr. Bercaw, Plaintiff's counsel indisputably knew that to be false.  And yet, but for two Court orders compelling the production of information concerning Dr. Bercaw's examination and report, neither American nor this Court would have known these facts.

In this entire process, perhaps the one fact which unquestionably confirms Plaintiff's scheme to manipulate an otherwise objective fitness for duty process and then perpetuate a fraud on American and this Court is the discovery that Dr. Kay—the expert who Plaintiff has represented

18

is the lone witness who would testify at trial regarding Plaintiff's neuropsychological fitness for duty—was apparently kept in the dark about Dr. Bercaw for more than two years, both before and after his own June 2016 examination.  It finally came to light in November 2018 at Dr. Kay's deposition.  At that deposition, Dr. Kay testified that he considered Dr. Bercaw's report so relevant and consequential that he disavowed his own June 2016 report—the report on which Plaintiff specifically relies in his Complaint to support his allegation that American should have reinstated him to flying in 2016.  Dr Kay's testimony encapsulates the case for a finding of bad faith and accompanying award of sanctions against Plaintiff.  *See, e.g., Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1287 (11th Cir. 2010).

## CONCLUSION

American respectfully urges this Court to exercise its discretion to sanction Plaintiff. Specifically, American asks for a determination that the following fact is deemed established: as of March 2016, Plaintiff was "not fit for duty as a pilot on the basis of impaired performances on cognitive assessment"—confirming the conclusion set forth in Dr. Knippa's March 21, 2016 report.  If this case reaches trial, and it should not based on American's summary judgment motion, American respectfully asks that the jury be instructed of this fact and that the Court also instruct the jury as to plaintiff's withholding of Dr. Bercaw's report, which the jury should consider in assessing Plaintiff's credibility.  American also requests, to be assessed jointly against Plaintiff and his counsel, monetary relief to American, including its attorneys' fees and costs for: (1) obtaining the Bercaw report and accompanying materials; (2) the deposition of Dr. Caddy and the Daubert motion to exclude Dr. Caddy's opinion testimony; and (3) the deposition of Dr. Kay. Finally, American requests any additional sanctions against Plaintiff and his counsel that this Court deems appropriate.

Dated: February 11, 2019

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@fisherphillips.com
Florida Bar No.: 91156
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida  33301
Telephone: (954) 847-4709

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

Tristan Morales (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of February, 2019, the foregoing document

was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was

served on the counsel or parties of record listed below.

By: /s/  Michael A. Holt
MICHAEL A. HOLT

## **SERVICE LIST**

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983

Noel C. Pace, Esq.
(*Pro Hac Vice*)
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713
(Service via CM/ECF)
*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@fisherphillips.com
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
(Service via CM/ECF)

*Counsel for American Airlines, Inc.*

FPDOCS 35002770.1