# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No: 17-cv-60533-Martinez/Otazo-Reyes

RODNEY SCOTT PATTERSON,

     Plaintiff,

v.

AMERICAN AIRLINES, INC

     Defendant.

_____/

FILED BY_____ D.C.

MAY 0 2 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S AMENDED MOTION TO AMEND JUDGMENT
## UNDER RULE 59(e) AND INCORPORATED MEMORANDUM OF
## LAW

Plaintiff, Lt. Col Rodney S. Patterson, respectfully submits this Amended Motion to Amend pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, hereby moves this Court to Alter its Final Summary Judgment Order issued March 29, 2019.   Plaintiff filed his motion before the deadline imposed for filing of said motions and discovered he had posted his draft copy in lieu of the final copy which cites relevant law and exhibits are ordered properly by reference. Pursuant to Rule 59, the Court may on motion, grant a new trial on all or some of the issues-and to any party. The Court may upon motion open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment in the interest of equity, or the Court on its own, may open the case for any reason that would justify granting one on a party's motion.   Plaintiff seeks to alter judgment for reasons addressed herein and on new evidence which surfaced after the motion for summary judgment was fully briefed; evidence of Defendant's inconsistent approach to safety and disparate treatment contrary to its testimony.

## I.     INTRODUCTION

By this action, Plaintiff challenges AA's multiple unlawful violations of the Uniformed Services Employment Re-Employment Rights Act, 1994 ("USERRA") [38 U.S.C. §§ 4301 et seq] and denial of rights and benefits afforded to veterans under the act. The stated purpose by the U.S. Congress to encourage non-career service…, while protecting veteran's rights…to prohibit discrimination…, all of which benefits the Nation as a whole. This legislation is to be liberally construed for the benefit of those who left private life to serve their country. [1]

## II.    ARGUMENT

### A.   STANDARDS ON A RULE 59(e) MOTION FOR RECONSIDERATION

Rule 59(e) of the Federal Rules of Civil Procedure authorizes the Court, upon timely motion, to alter or amend a judgment. District courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. *Mackin v. City of Boston*, 969 F.2d 1273, 1279 (1st Cir. 1992); *Clark v. U.S. Postal Service*, No. 3:11–cv–899–J–32JBT, 2012 WL 2044812 at *1 (M.D. Fla. June 6, 2012).

> Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion. … There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary, to prevent manifest injustice…. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2002). *See Frantz v. Walled*, 513 Fed. Appx. 815, 822 (11th Cir. 2013) (district court may grant reconsideration under Rule 59(e) based on newly discovered evidence or a manifest error of law or fact).

In its March 29, 2019 Order Granting Defendant's Motion for Summary Judgment on Plaintiff's USERRRA Claims and Denying Plaintiff's Motion for Summary Judgment ("Summary Judgment Order") [ECF 169] in the above-styled case, the Court concludes that:

> AA had a legitimate non-discriminatory reason for placing LTC Patterson on leave with pay on September 24. the Sept 22 status change if true, is nonetheless

---

[1] See *Fishgold v. Sullivan Drydock and Repair Corp.,* 328 U.S. 275, 285 (1946), cited in *Alabama Power Co. v. Davis,* 431 U.S. 581, 584-85 (1977); *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221 n.9 (1991).

insufficient to establish a USERRA violation therefore, AA did not retaliate in exchange for a release of his USERRA claims. this is not retaliation but standard negotiation. Plaintiff's motion for summary judgment is denied and AA's motion for summary judgment is granted.

**B.     THIS COURT SHOULD GRANT PLAINTIFF'S MOTION TO AMEND JUDGMENT UNDER RULE 59(e)**

**1.     The Court relied on AA's multiple admissions of USERRA violations and manifest errors of law or fact and disregarded the Plaintiff's substantive rights under USERRA, which clearly infer a discriminatory motive and animus.**

In overlooking Veteran's rights under USERRA, the Court appears to have assumed erroneously that the strict compliance provisions of USERRA are violable, so long as the motive for violating those rights was justifiable, AA now has unbridled discretion to disregard USERRA entirely and do as it will.  AA exercised unbridled discretion in Sept. 2015 and continues to this day to disregard the provisions of USERRA, unduly harming the Plaintiff and denying him benefits of employment. AA's violations are palpable and on brilliant display discussed below and numbered as they appear in the Order's Background, for reference:

**1)**  American Airlines granted 122 pilots military leaves in Miami—USERRA is a statutory obligation, AA doesn't grant what the law obligates them to do (this is analogous to paying one's taxes, there is no credit for compliance with the law, but stiff penalties, for non-compliance. American often complies with their obligations, but not always, and the issue in this case is not whether American complied with respect to John Doe, but with respect to Lt Col Patterson.  For example, AA settled in 2009 with DoJ in the case of Woodall v American Airlines 3:06-cv-00072 ( N.D. Tex.) and agreed to comply with USERRA for three years.  Lt. Col Patterson was the APA military affairs committee in the Miami domicile during which time he helped numerous pilots defend against harassment by AA management over the frequency, timing or duration of their service to the nation, in reckless disregard for the law and implementing regulations. [20CFR 1002.104, references 32 CFR Section 104.6(b)(3)].

**2)**  APA Professional Standards (PS) never entered any formal findings or conclusions, or resolved the matter—APA PS does not keep written records or communicate with management, an email from Patrick Mc Ginn to Whitehouse (WH) concludes the matter in July 2015 and tells WH to "grow up and act like an adult". (See Exhibit 1, p2 (B)(1)(f), p3(C)(3), p3(B)(1), p4(C)(2), p5(F), p7(H)(1-5)) (ECF 100-4, p9 ¶2).

3

*3)* The APA Appeals board did enter formal findings against WH— his complaint was malicious, ill-willed and with no justifiable cause, intended to harm Plaintiff (animus). (See Exhibit 2, p5-8)

*4)* Corporate Security Report, Unfounded—Beach submitted WH complaint for inclusion—AA argues they don't have it and refused to produce it, yet argues the content. Beach advises "Unfounded" (ECF 57-19 at 78:6) Inferences can be drawn from this missing record, One, it exonerated the Plaintiff or Two, if it were unfavorable AA would have used it to terminate the Plaintiff. Three, AA's loss of Patterson's travel records and the Corporate Security Report, severely damage AA's credibility in anything they say to this Court. So, was the corporate security report never shared via email?

*5)* On September 21, LTC P called the Flight Office and asked for a chief pilot, was told none were available, he left a message as to why he was calling — This constitutes notice under USERRA. [20 CFR § 1002.5(g)] Bonds acknowledged the message in a later email.

*6)* Bonds reply message, "if you can produce some orders", I ''ll give you the leave— is an unlawful act, Additional unlawful prerequisites to the exercise of a right; employer asserted unlawful veto authority [38 U.S.C. 4302(b)] [2]

*7)* The parties dispute whether the Army Reserve issues written orders – [38 U.S.C. §4312(e)(A) & §4312 (a)(1)] Orders are not required to guarantee statutory protection of an absence for uniformed service; only notice is required. No documentation to an employer is required for a period of service less than 31 days. These are important anti-harassment provisions of USERRA.

*8)* Patterson wanted to be paid during his absence for uniformed service out of his accrued vacation bank—his right under 4316(d). AA misled the court that this constitutes a vacation request. AA clearly understood it was a uniformed service request. Are we to assume AA (Bonds) wanted "orders" to let an employee go on vacation? Orders from whom? This starts the myriad of inconsistent reasons proffered for AA's actions.

*9)* AA explains that the change in status was retroactive to 22 Sept.—Irrelevant, Changing the Plaintiff's status while on military leave is a violation of USERRA. Plaintiff

_____

[2] *See 70 Fed. Reg. 75,246, 75256 (Dec, 19, 2005), available at 70 FR 75246-01, at \*75256 (noting that "[i]mposing a prior consent requirement would improperly grant the employer veto authority over the employee's ability to perform service in the uniformed services by forcing the employee to choose between service and potential loss of his or her employment position, if consent were withheld")*

performed service from 22 Sept. thru 25 Sept., 2015. Informing a service member of a change in employment status while they are serving is reckless, dangerous and inexcusable. Such reckless behavior could lead to mission failure or worse.

*10)* Bonds investigated the veracity… that he had taken leave for military duty in October of 2015—Erroneous statement, duty performed in Sept. 2015 and although not required documented for Bonds. [38 U.S.C. § 4312 (f)] Plaintiff was not required to document his service to AA; even so, AA rejected (and still does) his documentation. The CBA cannot supersede USERRA. [4302(b)]

*11)* Capt. Bonds testified that he was "suspicious" of the timing – employers are not granted veto authority, or discretion over timing frequency and duration of leave [20 CFR § 1002.104]

*12)* So, in early October, Bonds requested a Leave and Earnings Statement (LES)— Although not required, Plaintiff produced as soon as it was available. [38 U.S.C. 4312 (f)(3)(A)]

*13)* Bonds pointed to the redactions in the LES—although not required, extracts of Pay documents were provided in sufficient detail to show the Plaintiff's military service [20 CFR § 1002.123]

*14)* Bonds smell[ed] a rat but needed to look and compare [his] last LES—Bonds demanded the US Army Reserve documentation match his dated Air National Guard documentation—a ridiculous and ignorant demand. This is another inconsistent reason proffered.

*15) Bonds* suggested that Lt. Col Patterson might hang himself on providing false information—The LES wasn't false and Bonds comments indicate a clear "animus" that he was out to get the Plaintiff for defying his unlawful directives.

*16)* Bonds First message is clear, he demanded veto power over Plaintiff's service and established an unlawful prerequisite then issued a second unlawful directive, Demanding orders or an LES or be subjected to discipline – a reckless disregard for USERRA. [38 U.S.C. 4312(e)(A)]

*17)* On November 4, 2015, Bonds e-mailed… and to tell him he considered the matter "closed"—The matter is in fact "not closed" according to American's management. American has contradicted itself before the court—because American intends to pursue the matter further

by rejecting the Plaintiff's acceptable documentation of service.  (See also Duffer v. United, 3:13-cv-0318. [See Exhibit

*18)*    The interview involved nine AA employees, including WH – Whitehouse participation clearly taints the investigation and he likely had communicated his animus to unnamed witnesses.  None of the witnesses has a scintilla of legal credibility, yet AA and the Court rely heavily on this hearsay, character assassination, and personal animus as evidence viewed in the light most favorable to Plaintiff.

*19)* The report also stated that "multiple employees expressed their concern...-- This wasn't a personality contest complaint and relied on rumor and innuendo, which wasn't evaluated by or presented to this Court.  There is no way any pilot at AA can defend against this type of abuse.  AA began with a pre-determined conclusion as pretext for its USERRA violations well documented in the foregoing.  The Defendant has presented no evidence in the record of the credibility of the unnamed witnesses to assess a pilot, namely Lt. Col Patterson.

*20)*  AA responded to the Department of Labor Complaint in Feb, 2016 -- In doing so, American stated falsely that Patterson had discussed his upcoming flight with Bonds.  This was fabricated out of whole cloth to justify American's actions to DoL. American has never corrected this patently false statement to a federal investigator. (See Exhibit 4)

*21)* USERRA does not have a statute of limitations [20 CFR § 1002.311], however, Defendant was well aware of its USERRA violation when it occurred in Sept., 2015

*22)* On March 15, 2015 American scheduled Patterson to fly to Los Angeles, California a 5-hour flight across three time zones—American was requested to reschedule, Plaintiff to 1 of many doctors in the Eastern Time Zone and did not. Ahtone asserted privilege when questioned had he been requested to change the location.  Cognitive Testing requires a person to be well rested, obviously not so for the Plaintiff

*23)* The local driving distance in Los Angeles may be only several miles—however John Knippa advised that it would take him several hours when Plaintiff scheduled him for a deposition.   The drive from LAX to Long Beach took several hours in rush hour, when Patterson arrived at nearly (7 pm EST) setting up fatigue and sleep deprivation for sensitive testing to follow.

*24)*  Patterson underwent a second evaluation with Bercaw/Fonseca, not 4 days later and AA asserts the results were not favorable—This assertion is disputed by a May 6, 2016

letter to Dr. Glenn Caddy which says the results were generally good and Dr. Kay's Oct 2018 report mentions the Bercaw report and states that his exam provided reassurances.

*25)* The March 2016 Bercaw/Fonseca results would not have been accepted by the FAA either—Kay advised 4 days was too soon.

*26)* Dr. Ibrahim Abi Rafeh, M.D. received the Knippa report on 28 March, 2016 and opined that the Plaintiff was not cognitively impaired, but due to stress was likely sleep deprived and fatigued as reported. none the less the return flight generated the same sleep deprivation issues.

*27)* Plaintiff underwent a neurocognitive evaluation in July, 2014 with the U.S. Army for deployment—with no neuropsychological issues reported.

*28)* Plaintiff underwent another exam with Neurologist Dr. John Hastings in May, 2016—who reported Plaintiff was neurologically sound and not a risk to aviation safety, Hastings cognitive assessment reported no deficits (See Exhibit 5)

*29)* Plaintiff was examined by the U.S. Army in October, 2016 and there were no deficits physically or psychological.

*30)* Plaintiff is a Boeing 767 Captain and has an Airman Medical First Class. – Severely undermines the argument and speculation about cognitive deficiency (See Exhibit 6)

In Staub v. Proctor Hospital, (131 s.ct.1186) the U.S. Supreme Court held that an employer can be held liable for employment discrimination, under USERRA based on the discriminatory animus of a supervisor who expressed anti-military sentiments and then influenced a higher-level decision maker to make and adverse action. Bonds hostile attitude and sentiments toward the Plaintiff are on brilliant display and the court should infer that his actions influenced Michelle Montgomery and other management to take action which harmed Lt. Col Patterson and continues to this day. The actions of the Defendant were not independent of each other, but more likely than not, an orchestration to deny the Plaintiff his rights and excuse its unlawful acts. The Defendant has demonstrated repeatedly, that its actions were orchestrated by Michelle Montgomery in AA Labor (See Exhibit 7).

## 2. Discriminatory Motive & Inferences Outlining a Motivating Factor:

Discrimination is seldom open or notorious. [3] The Court refers to discriminatory inferences. The Plaintiff was placed on Paid Withheld (PW) (administrative leave) in the midst of his military service.  The Defendant erred by its actions, and again violated USERRA not even one week after the initial violation of Bonds denying Lt. Col Patterson proper notice of absence. [4] *The proximity in time is irrefutable.*  Placing the Plaintiff on administrative leave during military service was an adverse action. See also Petty V Metro (6th Circuit, No. 07-5649).  The defendant has *proffered a number of reasons which are inconsistent with its stated actions* for placing the Plaintiff on Administrative Leave.  AA has argued in numerous filings that the Plaintiff was not performing service in the uniformed services because he wasn't on active duty. AA has offered that the Plaintiff was at a commercial venture with his wife at the Whitehouse, although the Plaintiff was in fact performing military service (a protected activity none the less).  Defendant argued that the Plaintiff was on vacation because he asserted his rights requesting vacation accrual.  All of these actions are demeaning to the service of the veteran, not well taken and are direct evidence of AA's multiple USERRA violations.  even going as far as to question the motive of the Plaintiff for his military duty is demeaning and unlawful.

### 3. American's Unlawful Actions in 2015 Constitutes Workplace Harassment and a Hostile Work Environment Thereby Violates USERRA

---

[3] "[D]iscrimination is seldom open or notorious," *Sheehan*, 240 F.3d at 1014, and "employers rarely concede an improper motivation for their employment actions," *McMillan v. Dep't of Justice*, 812 F.3d 1364, 1372 (Fed. Cir. 2016). Rather, discrimination tends to be "inferred" from evidence of "hostility" or "disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan*, 240 F.3d at 1014.
[3] 20 CFR 1002.123(a)

[4] [4] "While according a returning servicemember lower status than she or he had before leaving for military service can be a denial of a benefit of employment violative of § 4311 of USERRA [see e.g., *Reed v. City of Charleston*, D.S.C. 2012, inference of denial of benefit of employment raised by allegations that upon his return from military leave, city never restored veteran's former duties but instead placed him under internal affairs investigation, never reissued his service weapon or badge, and confiscated his identification cards.] [emphasis added], such reduced status may also constitute a failure to reemploy the servicemember in a reemployment position required under § 4313 of USERRA.""Unlike § 4311, neither § 4313 nor § 4316(c) require any showing of discriminatory intent to establish a violation."

The Plaintiff has been subjected to the defendant's continuous pattern of harassment in which the defendant has repeatedly chided and derided the Plaintiff for his military service through the use of discriminatory actions or comments regarding that service and military leave obligations. Even American's attorney has derided the Plaintiff's military service with comments such as "On Vacation". This wide-ranging pattern of harassment not only violates USERRA but shows AA's company-wide policies of discrimination that are not limited to the acts of a few employees acting on their own and that shows that the defendants USERRA violations are intentional. This harassment establishes that the Plaintiff's service in the reserve is a motivating factor

In its Fiscal Year 2010 report to Congress (published in July 2011), the Department of Labor clarified its interpretation, that a benefit of employment included a freedom from work place harassment and/or a hostile work environment.[5]

Harassing comments by the Defendant have been directed at the Plaintiff and include:   "I'll give you leave if you can produce some orders", "Let's see if he hangs himself", "Smelled a rat" Even WH in his complaint derides the Plaintiff's military service, "in the military he is a king",

Bonds continued to chide/deride the Plaintiff's service in 2017. "and talk to him about officership and say this is not the way that officers do" (referring to the Plaintiff's lawful assertion of his rights). The Defendant's lead counsel has also derided the Plaintiff's military service

The Court should be aware that Congress amended USERRA and added to the definition of benefits of employment, "terms, conditions and privileges", which is the broadest protection congress can provide to veterans. Thus, the Plaintiff is a member of a protected class and the Court is requested to take judicial notice of this.

### 4. The Veracity of the Whitehouse Complaint did not give American Reasonable Grounds to Order a Fitness for Duty Exam.

---

[5] **The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations." Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.**

The WH complaint is about a personality conflict between two pilots. The resolution of which hinges on shopping Professional Standards. A genuine fact, the Plaintiff had no contact with WH until his deposition in 2018 after the October 2014 flight to Paraguay. The complaint does not constitute reliable truthful facts which American can use to support its pretextual notions about the Plaintiff's mental condition and then order a fitness for duty exam. Summary judgment for the Defendant was not appropriate because there are genuine disputes as to the material facts asserted by American regarding WH complaint. Fed. R Civ. P. 56(a) An employer's belief has to be based on facts, not stereotypes or assumptions about the employee's condition. WH complaint supplies little fact and more hearsay and conjecture, which are not admissible. The Plaintiff was injured on duty in Oct. 2014 and did not return until Jan, 2015. Additionally, the Plaintiff underwent a surgical procedure in Feb 2015 and returned to work in June, 2015. Whitehouse alleged that in February he was screened by Bolivian Customs on two occasions and that the "Spanish speaking", (paranoid and somewhat racist comment), Plaintiff must have been the cause for that [ECF 61-9, 7]. He provided no evidence other than the Plaintiff had to be there before him. In another claim he alleges that Patterson rode by in a hotel van pointing his finger at him. *See id at 4.* Whitehouse claims he didn't see it but his co-pilot did. The above facts were noted by APA Appeals board as constituting harassment if true. He submitted no evidence to support his false claim and for which there was no basis for AA to rely on it. Whitehouse' complaint includes a preposterous allegation that Patterson was smuggling guns and ammunition to the Bolivian Counter Narcotics Police and using his status as an FFDO to accomplish this. *See id at 6.* He claimed he heard this tale from a mechanic, "Pepe", in Bolivia. American has provided no proof of this allegation, nor has American supplied any proof of the FFDO allegation. American knows these allegations are patently false, and they know relying on someone who has made such allegations destroys the credibility of their (inconsistent) reasons proffered for every action in this case. U.S. Immigration and Customs Enforcement (ICE) did issue a letter in response to a Plaintiff's FOIA request. Three inferences can be drawn from this letter. 1) The Plaintiff was not involved in any illegal acts as alleged by WH  2). Had the Plaintiff been involved then there would be a record of it or a redaction on the part of Homeland Security. 3) AA would certainly have a record of such offense if it were true. (See Exhibit 8) In fact, at the time, Bolivian Flights departed in the late evening at approximately 11:00 P.M. At earlier times, the

Plaintiff could use the Known Crewmember line, however that line closed at approximately 9:30 P.M. which required the Plaintiff to use passenger screening lanes. American's records would show the Plaintiff signing in for work at approximately 10:00 P.M. long after KCM closing. WH statement is less probative and when scrutinized gives rise to the notion that something might be wrong with Whitehouse. Whitehouse displays a certain paranoia which is evident from a statement, regarding Patterson on the same flight. *See id at 11.* Patterson appearing on the standby list… but was a no show do not indicate intimidation or the necessity for tin foil. In fact, Captain Mark Modrich was on the same stand-by flight to Chicago and called the Plaintiff to inform him the WH was also on the flight. Plaintiff wanting no contact with WH took another flight (See Exhibit 9). Several days later, the Plaintiff would be searched by U.S. Customs in Miami while boarding a flight to Bolivia in response to WH complaint which was potentially a violation of Federal Law and a waste of government resources. American knew allegations were previously investigated in March, 2015 and determined to be unfounded. Additionally, the Section 21 hearing dealt with the regurgitated allegations from March and no disciplinary action was warranted because the allegations were found to be baseless. The APA Appeals board noted in its findings that WH actions were malicious, ill-willed and with no just cause. The board further noted that American was remiss in applying its own HR policies regarding two of the allegations which were later shown to be false. Whitehouse complaint was based on speculation and conjecture, did not create a genuine issue of fact; instead, created a false issue, the demolition of which is the primary goal of summary judgment. *Cordoba v. Dillard's, Inc., 419 Fed 1169, 1181 (11th Cir. 2005) (emphasis in original).* The facts of Whitehouse complaint would lead a rational fact-finder to determine the complaint was false, stripping American of its rationale to proceed. The falsehood of the WH complaint is a genuine issue of fact in favor of the Plaintiff. The Defendant cannot show the complaint is "genuine". Given the fact the WH complaint is false on its face, Lt. Col Patterson submits to the Court that a reasonable jury could return a verdict for the non-moving party. Wright, 455 F.3d at 706 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). We "view all evidence in the light most favorable to the nonmoving party."

### 5. AA's Lengthy History of Supporting Servicemembers does not Preclude a USERRA Violation and has no Probative Value.

American's obligations under USERRA are statutory obligations, guaranteed by Congress for the benefit of the servicemember. American supports veterans to the extent that they don't cost the company money. Bonds advised they were short of pilots and they didn't have the money to give Lt. Col Patterson an "EO" and release him for military service. [ECF 57-7 *at* 63:3] Yet AA purports Bonds to be knowledgeable of the Reserve System despite his multiple unlawful USERRA violations. Bonds was an angry manager as demonstrated by his comments to the Plaintiff and other management. American's lengthy history is tainted by several cases now proceeding through Federal Court, which the Plaintiff is also a member of the class in those suits. [6]   In Scanlan v American Airlines, Group, INC(2:18-cv-04040), American admitted that it views USERRA compliance as a debatable option strategic policy makers. (See Exhibit 8, pg 13) Mark Cronin, the managing director of line operations for AA, affirms American's attitude that USERRA is set of guidelines we adhere too (not a law requiring strict compliance) …beyond that he doesn't know how it affects our pilots. [ECF 101-6, 5 at 7] These statements affirm how cavalier American is about its obligations under the law.

### 6. Changing a Veteran's Status While on Military Leave Constitutes An Adverse Action and Retaliation under USERRA Whether it was Sept 22, 2015 or Sept. 24, 2015

The timing of a USERRA violation and the complaint filing is irrelevant, as USERRA has no statute of limitations. [20 CFR § 1002,311]. However, it is not required to file a complaint with the Dept. of Labor before taking action under USERRA. [20 CFR § 1002.288]. In the Plaintiff's case, Allied Pilot's Association Attorney Trisha Kennedy on Oct. 13, 2015 advised AA's corporate general counsel Lucretia Guia, that Bonds had threatened Lt. Col Patterson with disciplinary action for not producing documentation of his military service another violation of USERRA. "Such an unreasonable demand fuels our concerns about the

---

[6]   Harwood III v. American Airlines, Inc., (1:2017cv00484)
  Hoefert v. American Airlines Incorporated, (4:18-cv-00466-A)
  Scanlan *v.* American Airlines Group, INC. (2:18-cv-04040)

entire situation" (*See Exhibit 9*) AA has asserted or inferred numerous times in this matter, the collective bargaining agreement overrides USERRA and it does not. [20 CFR § 1002.7]  An individual must show one or more of the following to prove that the employer discriminated or retaliated against him or her. [20 CFR § 1002.23]

**(1)** Membership or application for membership in a uniformed service;
**(2)** Performance of service, application for service, or obligation for service in a uniformed service;
**(3)** Action taken to enforce a protection afforded any person under USERRA;
**(4)** Testimony or statement made in or in connection with a USERRA proceeding;
**(5)** Assistance or participation in a USERRA investigation; or,
**(6)** Exercise of a right provided for by USERRA.

Lt. Col Patterson exercised his rights and took action to enforce the protections afforded him under USERRA and that angered Bonds, which is clear from the record.  Bonds wanted the Plaintiff to fly on 22 Sept. 2015 and he admits that.  He did not want Patterson to fly after 24 Sept. However, the Court acknowledges Lt. Col Patterson's status change, which has been clearly shown to be an adverse action and the Courts have ruled in that manner. The Plaintiff has been denied promotion and considerable pay for at least 3 years.  The Plaintiff cannot choose his work hours, location or work overtime. The Plaintiff lost rank and responsibility which meets the element of status. Finally, Plaintiff was subjected to a hostile work environment because of that military service.  AA has not shown that the Whitehouse complaint was factual and there is not one scintilla of evidence presented by Whitehouse that rises to a business necessity requiring a fitness for duty examination.  In fact, WH complaint should have caused AA concern and sent him to the same fitness for duty evaluation. [ECF 61-9 at 12] AA did not because WH was useful in the context of the USERRA matter.

### 7. American made two settlement offers one with the Plaintiff and one with the Allied Pilot's Association following a hearing with Mark Cronin in on or about Oct 2016.

In August, 2016, Lt. Col Patterson emailed Captain Brian Beach asking him for the published return to work policy for pilots.  Beach never provided that policy. And ironically, AA does not have a published return to work policy for AA pilots, in the Return to work forms section of (NewJetnet.aa.com) which lists the essential job functions for each position. (See Exhibit 12) The Plaintiff declined the offer of settlement because it was a final and binding resolution on the opinion of one doctor which is ridiculous. The idea of no appeal and no due

process is unamerican and violates constitutional premises of due process. It was made clear to AA, at an October 2016 hearing by Patterson's APA attorney that Dr. Knippa was not an option. Def. SUF ¶ 38 is factually incorrect with this regard. 20 CFR 1002 Veteran's asserting their rights should not have to relinquish those rights to retain or return to a status they enjoyed. This is demeaning to the veteran's service and such smart negotiations promote continued violations of the law. Why comply if you are not held to a standard?

### 8. Newfound Evidence after Summary Judgment was Fully Briefed Contradict American's Testimony Regarding Safety Concerns

While American explains, it has a duty to protect the public and had to ensure Lt. Col Patterson was fit to fly. It was at the same time according to a U.S. Department of Transportation, Office of the Inspector General Report, July 10, 2018 giving FAA inspectors derogatory information about pilot whistleblowers in an effort to coerce and silence these complaining pilots rather than address their safety concerns. (See Exhibit, 13 pg. 3, ¶3) The APA raised serious concerns to the FAA regarding the unsafe operation and testing of American Airlines aircraft. The OIG is government a finder of fact, and the facts are indisputable.

More recently, on February 6, 2019, the TWU, which represents AA mechanics, sent a stern rebuke to Doug Parker, CEO regarding *retaliation over safety and maintenance concerns*. An FAA report determined: American Airlines "pressured [mechanics] to not record discrepancies, take shortcuts with maintenance activities, or improperly sign-off on *work which was not actually completed*". (See Exhibit 12)   The irony of these disclosures, including a bombshell CBS report, (See Exhibit), is that at the very same time that American was by every objective measure taking shortcuts to programs required to keep the flying public safe, they were at the same time subjecting some pilots, like the Plaintiff to constructive termination on an invalid claim they posed a safety "risk". Two U.S. Senators voiced their concern to the FAA administrator demanding answers over these serious safety allegations. (See Exhibit 13). In April 2019 the APA Safety Committee sent a letter to all pilots regarding management direction/pressure to void their aircraft maintenance log entries of hail damage on aircraft after a recent storm in Dallas to save time/money on maintenance inspections of damaged aircraft. (See Exhibit 14) Hail Damaged aircraft are extremely dangerous and put the public and flight crews at risk.

14

Karlene Petitt, PhD. a Delta Airlines pilot was subjected to similar disparate treatment after participating in protected activity at Delta Airlines. Pettit authored a book, The Weaponization of Mental Health which details similar behavior at American Airlines. The unspoken truth of how airlines remove pilots for reporting safety, calling in fatigued, using too much sick leave, or suggesting improvements for safer operations. Calling a pilot crazy is easier than firing them (and less costly). (See Exhibit 15)

9. **Plaintiffs Subsequent Evaluations Reveal no Diagnosis of a Disqualifying Condition for an Airman Medical Certificate First Class.**

The veracity of the WH complaint severely undermines American's rationale for sending the Plaintiff to a Mental Health Exam. Multiple witnesses who were never identified, coming forward at the behest of WH don't constitute a genuine concern for safety. An Employer with genuine concerns would document those concerns. AA has never produced any evidence of the complaint or the witnesses' qualifications to make such statements. For example, finding a 21-year-old flight attendant to opine on a pilot's proficiency is not proper. AA reports it interviewed nine witnesses in response to the WH complaint, Plaintiff's union representative was not given the opportunity to cross examine any of the witnesses in the Section 21 hearing. AA presents this as a personality contest with the pilot receiving the most votes being declared the winner. Except that AA is only counting the votes for one candidate. American provided a 1 paragraph letter to Dr. John Knippa, PhD. and flew the Plaintiff to California across three time zones. Knippa examined the Plaintiff at around 12:45 P.M. EST each day. Dr. Gary G. Kay, PhD. later advised that such sensitive testing should be conducted in the morning to preclude false positives. Knippa diagnosed no personality disorder, no psychopathology or any condition which would disqualify him from an Airman Medical Certificate First Class. The Plaintiff spoke to Dr. Jeffrey Kanter, PhD on numerous occasions by phone before seeing Knippa. Kanter, not a HIMS qualified doctor referred Plaintiff to another Doctor in his practice. Plaintiff took a second evaluation within 4 days after Knippa, after flying back across three time zones, the results of which were "generally favorable" and no condition which would disqualify him was identified. [ECF 136-1]. Dr Ibrahim Abi Rafeh and Dr. Kay have both raised the issue of fatigue and not a physical condition as the cause of low scoring. The Plaintiff was neuropsychologically evaluated in 2014 by the Army and was

cleared for deployment.  In October, 2106 the Plaintiff was further examined by the U.S. Army, who found no evidence of a physical or psychological condition.  Dr. Kay admits that the Plaintiff had no physical conditions in 2016 or now which would contribute to cognitive deficiencies.  Dr. Kay in his Oct 2018 report was well aware of the testing at Dr. Kanter's office and in fact had that report to review well before he tested the Plaintiff.  In his report Kay advises:

> Follow-up neuropsychological assessment provides reassuring information regarding Mr. Patterson's neurocognitive functioning. He performed well on neuropsychological screening.
> CogScreen results suggest against the likelihood of acquired cerebral dysfunction. His performance on CogScreen measures of response speed and accuracy are largely consistent with the favorable results obtained in 2016. Aviation factor scores, validated predictors of flight performance, were all in the expected range. Additional testing of vigilance, memory, and executive functions also show intact neurocognitive functioning. Mr. Patterson performed at or above average compared to pilot norms on measures of verbal learning and memory.
> Performance on three measures of executive functioning demonstrate intact planning, abstract reasoning, impulse control, and novel problem-solving ability
>
> Based upon these findings Mr. Patterson would be considered to have no aeromedically significant neurocognitive deficits and would be recommended for a Class 1 FAA airman medical certificate.

According to Dr. Abi-Rafeh, he found no reason for the Plaintiff to seek mental health treatment, and found no evidence that he would pose a risk to aviation safety. He concurs with Dr. Kay that jet lag related fatigue was the likely cause and not acquired brain dysfunction. (See Exhibit's 18 & 19)

## 10. Conclusion

Lt. Col. Patterson had no physical or psychological condition in 2014 and to this day as demonstrated by multiple medical evaluations and multiple FAA proficiency checks. He serves as a Boeing 767 captain for an airline based in Miami.  The events surrounding the USERRA violations are not logically independent or happenstance, but rather well orchestrated, by American's labor relations for a desired effect.  AA refuses to this day to accept the fact that the Plaintiff performed military service despite the Plaintiff having provided it.  The Defendant continues to deride and chide Lt. Col Patterson regarding his military service and did so by sending the Plaintiff two derogatory letters and characterizing the Plaintiff's service as fraudulent.

The Plaintiff is not of the Catholic faith and attending a state sponsored reception is in no way an endorsement.   Congress passed USERRA to prevent Veteran's from being subjected to unlawful discrimination and harassment,  the very behavior that demeans Patterson's service.

Until a competent authority compels American's strict compliance with the law, these actions will be perpetuated against other veterans.  This notion harms the National Defense of the United States, due to the reliance on a strong reserve force in lieu of a large standing Army.

WHEREFORE, Plaintiff respectfully urges the Court to reconsider its earlier ruling, based on a manifest error of law or fact, newly discovered evidence, manifest injustice for Veteran's rights and enter summary judgment for Plaintiff and deny summary judgment to Defendant.

Dated this 1st[th] day of May 2019

Rodney S. Patterson, Pro Se
1092 N.W. 139th Terrace
Pembroke Pines, FL 33028
(704) 231-0909
Scottpatterson247@gmail.com

## NOTICE OF APPEARANCE

Lt. Col Rodney S. Patterson, hereby files this notice of appearance on behalf of himself to act as his own counsel.

Signed and dated this 1st day of April, 2014 by Lt. Col Rodney S. Patterson

Rodney S. Patterson
1092 NW 139th Terrace
Pembroke Pines, FL  33028

## VERIFICATION

I, Lt. Col. Rodney S. Patterson, declare as follows;

I am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of Florida that the foregoing is true and correct.

Date: May 2, 2019

Rodney S. Patterson, Pro Se
1092 N.W. 139th Terrace
Pembroke Pines, FL 33028
(704) 231-0909
Scottpatterson247@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 2nd day of May, 2019, the foregoing document was served by U.S. Mail and E-mail on all counsel or parties of record on the Service List below.

Rodney S. Patterson, Pro Se
1092 N.W. 139th Terrace
Pembroke Pines, FL 33028
(704) 231-0909
Scottpatterson247@gmail.com

## SERVICE LIST

Michael A. Holt
mholt@fisherphillips.com
Florida Bar No.: 91156
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

Tristan Morales (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300

*Attorneys for American Airlines, Inc.*

**Exhibits List:**

1. Allied Pilots Association, Professional Standards Manual, April, 1999

2. Allied Pilots Association, Appeal Board Decision, August, 2017

3. American Airlines Letter, 7 March, 2019, Price and 4 March, 2019, Holt

4. Lucretia Guia letter to Department of Labor Investigator, 28 Feb. 2016 Excerpt James Bonds Deposition.  15 March, 2017

5. Independent Aeromedical Neurological Evaluation, 28 May, 2016, John R. Hastings, MD.

6. Pilot Proficiency Checks for Lt. Col Rodney S. Patterson (various dates)

7. Emails from Michelle Montgomery, 9 July, 2018, 7 March, 2019 &

24 March, 2016

8. FOIA Request US Immigration and Customs Enforcement, 28 October, 2015

9. Declaration of Captain Mark Modrich,  25 April, 2019

10. Defendants Memorandum of Law In Support of Their Motion …, Scanlan v American Airlines; 2:18-cv-04040-HB

11. Email to Lucretia Guia, 13 Oct. 2015 from counsel regarding Bonds unlawful demands

12. American Airlines return to work form for Non-Pilots and Pilot Qualifications.

13. Department of Transportation, Inspector General Report, July 10, 2018

14. TWU letter to Doug Parker, CEO, AA, 6 Feb. 2019

15. U.S. Senate letter to FAA Administrator, Daniel K. Ewell, 12 Feb. 2019

16. Allied Pilot's Association Email, regarding Hail Damage at DFW and voiding entries in the AML, 17 Apr. 2019.

17. Weaponization of Mental Health, Karlene K. Petitt, PhD. Feb. 2019

18. Declaration of Ibrahim Abi-Rafeh, MD

19. Report of Follow-Up Neuropsych Assessment, Dr. Gary G. Kay, PhD., 10 Oct. 2018