UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

## The Amlong Firm's Response to
## American Airlines, Inc.'s Motion for Sanctions

### Introduction and Summary

The Amlong Firm, which has been fired by the plaintiff, Rodney Scott Patterson, <u>see</u> DE 174, at 1-2, but has been ordered by the Court, Hon. Jose Martinez, J., to continue representing Lt. Col. Patterson, DE 178, responds as follows on *its* behalf to American Airlines, Inc.'s Motion for Sanctions, DE 154.  Lt. Col. Patterson, who has been filing post-summary judgment papers <u>pro se</u>, notwithstanding Judge Martinez's denial of the motions of both The Amlong Firm and Noel Pace, Esquire, to withdraw, has instructed the undersigned that he would file his own response and that the undersigned could not do so.  The Amlong Firm, meanwhile, is today renewing its motion to withdraw—this time on grounds of conflict of interest.

The gist of The Amlong Firm's response is that no sanctionable conduct occurred (an argument that benefits both The Amlong Firm and Lt. Col.

Patterson), but that should the Court determine that any sanctionable conduct did occur, it was the doing of Lt. Col. Patterson—without the foreknowledge, approval or acquiescence of The Amlong Firm, which took steps to remedy what Lt. Col. Patterson had done on his own.

**Point 1:    The Amlong Firm (and perhaps the plaintiff as well) could not have withheld Dr. Bercaw's report:  it (and possibly the plaintiff as well) never had it until after the Court ordered it produced.**

The lynchpin of American's argument is its assertion that following a visit to Edwin Bercaw, Ph.D., a Sarasota neuropsychologist, for a second opinion that would contradict that of John Knippa, Ph.D., a Long Beach, California, neuropsychologist,

> One month later, Dr. Bercaw sent Plaintiff his report, in which Dr. Bercaw raised concerns "potentially critical to flight performance" and recommended further review of Plaintiff by the Federal Aviation Administration.  Dr. Bercaw's report echoed the nearly identical concerns that led Dr. Knippa to conclude that Plaintiff was not fit to fly.

DE 154, at 1-2.

The primary evidence that "Dr. Bercaw sent Plaintiff his report" is an April 22, 2016 e-mail string, disclosed during discovery by Isha Kochhar, Esquire, a former associate of The Amlong Firm, in which Dr. Bercaw said he was forwarding the report to Lt. Col. Patterson, but to which Lt. Col. Patterson responded with an e-mail stating to Dr. Bercaw that "[t]he file was not attached."[1]

---

[1] The e-mail string is appended as Attachment 1.  Defendant's motion incorrectly states that Dr. Bercaw sent the e-mail "to Plaintiff, Mr. Amlong and Dr. Caddy."  DE 154, at 7.  The e-mail was sent only to Lt. Col. Patterson, who forwarded it to Glenn R. Caddy, Ph.D., and the undersigned.

Lt. Col. Patterson testified at his deposition that he had never gotten a copy of the report.  The undersigned will testify at the hearing that The Amlong Firm never received the report via e-mail,[2] and that The Amlong Firm's staff made repeated inquiries of Comprehensive MedPsych Systems, Inc., Dr. Bercaw's former employer, in an unsuccessful attempt to locate any e-mails transmitting the report.[3]  Glenn R. Caddy, Ph.D., the plaintiff's testifying expert, stated in a deposition that he had never seen a copy up until the time of that deposition.  Caddy Depo,[4] at 6:23-7:2.  Kristie Caddy, Dr. Caddy's wife and office manager, will testify that she did not retrieve the telecopied report from her husband's office's digital telecopier system until August 31, 2018, when the undersigned—who had made repeated inquiries of both Dr. and Ms. Caddy concerning the whereabouts of the April 25, 2016 report, a copy of which is appended as Attachment 5—asked her (after

---

[2]The likelihood that The Amlong Firm would not have gotten a copy from Dr. Bercaw is enhanced by Lt. Col. Patterson's having instructed Dr. Bercaw, as the defendant's motion points out, DE 154, at 2, that he was "rescinding any authorization for you to send my records to anywhere other than to Dr. Caddy. . . ."  See April 22, 2016 e-mail, which plaintiff's counsel produced to defendant September 25, 2018.  DE 136-3, a copy of which is appended as Attachment 2.  That explicit directive by Lt. Col. Patterson to Dr. Bercaw about not sending any information to American (as his employer, as opposed to being a defendant in a USERRA suit that would not be filed March 14, 2017) or the Federal Aviation Administration is external to this litigation.

[3]See September 26, 2017 e-mail string between Dr. Geoffrey Kanter, the president of MedPsych, and Karen Coolman Amlong, Attorney at Law, which is appended as Attachment 3.

[4]The cover page and relevant testimonial pages of the deposition of Glenn R. Caddy, Ph.D., are appended as Attachment 4.

learning from a subpoenaed copy of the report that it had been faxed) to check the generally untended telecopier.[5]

What Dr. Caddy did receive from Dr. Bercaw via e-mail was a May 6, 2016 letter[6] that characterized the examination of Lt. Col. Patterson by himself and a newly licensed resident psychologist who actually drafted the report,[7] as:

•       having "found no certain evidence of a disqualifying mental or neurological condition for first-class medical certification as defined by Federal Aviation Regulations Part 67.107 and 67.109";

•       documenting "findings in our evaluation [that] were generally positive, with a passing CogScreen (which is a validated battery of tests specifically designed to evaluate cognitive functioning in pilots)," and

_____

[5]The fax has a time legend of April 25, 2016.  There is no "cc" notation and no copy was e-mailed or telecopied to The Amlong Firm.  Lt. Col. Patterson states that he never received it, and the undersigned has been unable to prove otherwise, despite challenging him on the issue. However, Lt. Col. Patterson did forward the undersigned on April 26 an e-mail to Dr. Caddy that stated, in pertinent part,

> Dr. Bercaw's report which is lacking and very weak needs to be re-done, but he is HIMS certified. I didn't compensate him for a report and work to be done by a resident. Although we might succeed in Federal Court with the nature of your report which is the goal.

The e-mail, which is appended as Attachment 6, was provided to defendant as an attachment to Plaintiff's Supplemental Notice of Production of Documents dated September 25, 2018.

[6]See May 6, 2016 letter from Dr. Bercaw to Dr. Caddy, which is appended as Attachment 7.

[7]The licensing information on Francy Nathaly Fonseca, Psy.D., downloaded from Florida Department of Health License Verification website, https://appsmqa.doh.state.fl.us/MQASearchServices/HealthCareProviders/LicenseVerification?LicInd=8430&ProCde=2701&org=%20, last visited May 26, 2019, is appended as Attachment 8.

•    acknowledging as to some less-than-clearly-acceptable results, that "[t]he aeromedical significance of these findings was uncertain in the context of the larger evaluation and his professional and military history."

Although the undersigned's contemporaneous billing records show that on April 23, 2016 he "[r]eceived and reviewed correspondence from Ed Bercaw, Ph.D., re: he will send records, underlying data to WRA and Dr. Caddy," there is no billing entry concerning actual receipt or review of any such records,[8] although such entries are (and were) a routine practice.

Lt. Col. Patterson's <u>pro se</u> Plaintiff's Response to Defendants (sic) Motion for Sanctions and Request for Other Relief, DE 194, contains a bizarre and untrue (at least as to Lt. Col. Patterson's having been "billed for receiving that report") passage on Page 15:

> Plaintiff does recall seeing the email from Bercaw during the deposition.  Here again, American only provides the court part of the story. That same email said no file attached as a simple reply.  Neither American nor Bercaw have shown that the plaintiff received a copy. Plaintiff downloaded a copy of the report from Pacer which American had uploaded. Plaintiff also instructed Bercaw to forward a copy of the report to his attorney, William Amlong.  Plaintiff was billed for receiving that report and Bercaw was remiss in sending a copy of the report to Amlong.  Dr. Kay admitted in his deposition he had no information that Caddy, Amlong or the plaintiff had a copy of the report.

As is clear from the billing statement, Lt. Col. Patterson was not billed for The Amlong Firm's receipt of the Bercaw/Fonseca report.

**Point 2:      Although the Court concluded otherwise, The Amlong Firm was justified up until that point in treating Dr. Bercaw as nothing more than a consulting expert whose assessment of Lt. Col. Patterson was privileged.**

Although Ms. Kochhar will testify at the evidentiary hearing that she disclosed the April 22 e-mail because she understood the firm's policy to be

---

[8]<u>See</u> May 16, 2016 billing statement, appended as Attachment 9.

to turn over anything that might be relevant so that we would not later be precluded from using it because of non-disclosure, Lt. Col. Patterson was vocal about having not wanted Dr. Bercaw disclosed after he already had been.  Lt. Col. Patterson had never raised this with the undersigned before disclosure by Ms. Kochhar, however, so there had been no before-disclosure analysis of whether the existence of Dr. Bercaw's report (which the undersigned had never seen) should have been disclosed.  Indeed, there had been no discussion of whether Lt. Col. Patterson should have gone to visit a Sarasota neuropsychologist who was at the time not board-certified, Bercaw Depo,[9] at 98:16-18, rather than a higher-profile expert such as Dr. Gary G. Kay, the choice of whom would have been guided by his lawyer, or of whether Lt. Col. Patterson should jeopardize the confidentiality of a consulting expert by sidestepping his lawyer to put the consulting expert directly in touch with a testifying expert with a completely different sub-specialty.

Following Lt. Col. Patterson's deposition and American's request that the report be produced, the undersigned, who had never before had any need to use a consulting expert, researched the issue and concluded:

***One***, Dr. Bercaw—concerning the extent of whose examination, and the significance (or not) of whose findings the undersigned was ignorant, since the full report had not been provided to him—could qualify under Rule 26(b)(4)(D) as a consulting expert, whose work-product was non-discoverable;

---

[9] See Deposition of Edwin Bercaw, Ph.D., the cover page and relevant testimonial pages of which are appended as Attachment 10.

*Two*, even though a privilege log was not required concerning a consulting expert, see, e.g., Kendall Lakes Towers Condominium Association, Inc. v. Pacific Insurance Co., Ltd., Case No. 19024210-Civ-Graham/ Goodman, *3 (S.D. Fla. Nov. 8, 2011) ("Because Rule 26(b)(4)(D) is explicit that non-testifying experts' opinions are not ordinarily discoverable, it follows that no privilege log is required for information that they withhold"), it would be advisable to file one to disclose the testing that had been done in Sarasota—even though plaintiff's counsel still did not have the actual report, and

*Three*, to file an amended interrogatory answer, disclosing that Lt. Col. Patterson had visited Dr. Bercaw, and adding that Dr. Caddy had recommended Dr. Bercaw—a mistake growing out of the fact that the undersigned had reached out to Dr. Caddy for assistance near the beginning of the case, see Attachment 9, billing entries for April 2016; that Lt. Col. Patterson had testified at his deposition that "Dr. Caddy contacted Dr. Bercaw. . .," Patterson Depo,[10] at 341:17-342:1; that Lt. Col. Patterson did not correct the amended interrogatory answer when it was sent him, and that it was beyond the undersigned's imagination that a lay client who had engaged a lawyer, which lawyer had already steered him to an expert witness, would go off on his own to consult another expert his lawyer knew nothing about.

---

[10]The cover page and relevant testimonial pages of the deposition of Rodney Scott Patterson, are appended as Attachment 11.

The undersigned's belief that Dr. Caddy not only did not rely on Dr. Bercaw's testing or his report, but did not even consider it, was further bolstered by Dr. Caddy's repeatedly stating, as he testified at his deposition, that while he did recall communicating with Dr. Bercaw, Caddy Depo, at 6:23-7:2, their conversation had been not only brief, but dismissive:

Q.    What did you speak about with him regarding Mr. Patterson?

A.    About—in general, about his findings, or more to the point, I was told by Captain Whitehouse—excuse me, by Captain Patterson— that Dr. Bercaw, he went to see Dr. Bercaw very soon after he'd been to see Dr. Knippa, and he also indicated to me that the assessment that was done, was done not by Dr. Bercaw, but by a woman trainee. And I called Dr. Bercaw to ask him about that.

Q.    And what did he say?

A.    He said that was true, that she did do the work. And so I pretty much said thank you, and I contacted Captain Patterson and I said, in essence, you just wasted a couple thousand dollars.

Q.    What were the findings from Dr. Bercaw's office regarding Mr. Patterson?

A.    I don't know. I don't know the details.

Q.    Well, you said that you called to discuss the findings?

A.    Well, yeah, but when I found out that—when I found out that he actually didn't do the testing, it didn't really matter to me what the findings were going to be because she wouldn't have been qualified to administer the instruments. And he went to see Dr. Bercaw, not this lady who was in training.

Q.    What instruments were administered?

A.    I don't know.

Id. at 35:5-36:7.

**Point 3**:    **American's assessment of Lt. Col. Patterson's conduct is hyperbolic and histrionic.**

•    **American's overall thrust**

American seeks to characterize Lt. Col. Patterson's motivation to shield the results of a neuropsychological assessment  done by Drs. Bercaw and Fonseca as being that the report "undermines the fundamental narrative that Plaintiff has presented in this litigation."  DE 154, at 1.

However, the Bercaw/Fonseca's report **is consistent** with plaintiff's counsel's "fundamental narrative," id., i.e., that the "credentialed neuropsychologist to whom American sent Plaintiff for a fitness for duty examination," id., three time zones away from his home, produced a made-to-order report based on data that even American's Corporate Medical Director, Jeral Ahtone, M.D., characterized as not "point[ing] to any neuropsychological deficits" or "any psychopathology" on the part of First Officer Patterson."  Ahtone Depo,[11] at 53:11-15.  What Dr. Knippa's not-fit-for-duty report did, rather than give a definitive answer as to Lt. Col. Patterson's cognitive and psychological health, was to "indicate[] that [Dr. Knippa] doesn't have a complete answer at this time. . . ."  Id. at 54:2-55:1.

Dr. Ahtone's characterization of Dr. Knippa's findings has the same import as Dr. Bercaw's description of his findings in his May 6, 2016 letter to Dr. Caddy, i.e.,

> **The findings in our evaluation were generally positive, with a passing CogScreen (which is a validated battery of tests**

---

[11]The cover page and relevant testimonial pages of the deposition of Jeral Ahtone, M.D., are appended as Attachment 12.

***specifically designed to evaluate cognitive functioning in pilots)***. He also exhibited high average intellectual functioning, and his attention, processing speed, language, visual-spatial, visual memory, and motor scores were generally consistent with expectations.  However, ***there were two particular areas of concern that do not necessarily disqualify him*** but warrant further review and possibly retesting.  Specifically, his verbal learning and memory was below expectations and there was an indication of impairment in an aspect of executive functioning.  ***The aeromedical significance of these findings was uncertain in the context of the larger evaluation and his professional and military history***. . . .

Again, it would be inappropriately speculative to infer a cause for the findings at this time, as there is no known psychiatric or neurological condition identified as of now.

Attachment 7, at 1-2.

Dr. Bercaw acknowledged in his deposition that nothing in the report drafted by Dr. Fonseca, Bercaw Depo, at 18:15-19:20, gave rise to a definitive conclusion that Lt. Col. Patterson was not fit for duty.  Id. at 109:20-24.  Additionally, Gary G. Kay, Ph.D., the author of the CogScreen instrument endorsed by the Federal Aviation Administration and Lt. Col. Patterson's "treating expert," stated in his deposition that his concerns about the validity of his positive evaluation of Lt. Col. Patterson June 2016—given how soon it was after Drs. Bercaw and Fonseca's testing, and Lt. Col. Patterson's neglecting to mention the prior testing to Dr. Kay during the initial visit—did not translate into a conclusion that Lt. Col. Patterson was unfit for duty in June 2016.  Kay Depo,[12] at 215:10-216:8.

---

[12]The cover page and relevant testimonial pages of the deposition of Gary G. Kay, Ph.D., are appended as Attachment 13.

While the Bercaw/Fonseca report may not have been the A-plus rating that Lt. Col. Patterson was looking for, and while the trial story would obviously have been smoother without it, the Bercaw/Fonseca report did not, in plaintiff's counsel's mind, present any insurmountable hurdle to litigation. This is particularly so when one overlays, ***One***, the passing rating given to Lt. Col. Patterson in October 2018 by Dr. Kay; ***Two***, Dr. Kay's practice of bringing back in six weeks for retesting any pilot who might fail the tests on which Dr. Knippa said Lt. Col. Patterson did badly March 16 and 17, <u>see</u> Kay Depo, at 227:17-229:18, and, ***Three***, Lt. Col. Patterson's actual visit to Dr. Kay June 29, 2016, <u>id</u>. at 7:12-17, for an otherwise positive test that Lt. Col. Patterson, not his counsel, rendered a litigation train-wreck by self-deciding to not inform Dr. Kay about the Bercaw/Fonseca evaluation. That, of course, would have required Lt. Col. Patterson to permit his lawyers to actually plan and execute litigation strategy rather than doing it himself.

Further, given that there is ***no evidence*** that plaintiff's counsel had seen, or were even aware of, the contents of the Bercaw/Fonseca report beyond the benign synopsis of it contained in Dr. Bercaw's April 6, 2016 letter to Dr. Caddy, it is nonsensical to posit that Lt. Col. Patterson's counsel would seek to build their "fundamental narrative" around concealing something that had so little potential to prejudice Lt. Col. Patterson's case.

- **'Playing ball' and 'cutting bait'**

Yes, indeed, Lt. Col. Patterson did say in an e-mail to Dr. Caddy, "[i]f Dr. Bercaw will play ball with you, fine. . . . If he won't play ball we will cut

bait and go fish elsewhere," DE 154, at 2[13]—after Dr. Bercaw demanded an additional fee to discuss with Dr. Caddy his testing of Lt. Col. Patterson, which is the context in which Dr. Bercaw understood the remark to have been made.

It is especially disingenuous for American to suggest that this statement betrays that Lt. Col. Patterson was looking for bought-and-paid-for expert testimony because it was defendant's lawyer who asked Dr. Bercaw the following question and got the following answer at deposition:

> Q.    This one looks like an email from plaintiff to Dr. Caddy saying [as read]:  If Dr. Bercaw will play ball with you, fine.  I have no issues with spending the money.
>
> Do you have any understanding as to what that means?
>
> A.    This is in reference to the fee that was required by my company to have a phone consultation.

Bercaw Depo, at 39:6-13.

- **Lt. Col. Patterson's attempted denial of Dr. Bercaw**

And, yes, Lt. Col. Patterson did lie—or, at least, attempted to lie—at his deposition concerning whether he had ever visited Dr. Bercaw.  See Patterson Depo, at 341:13-342:1 (mention of "Bercaw report" did not jar his memory;  Dr. Bercaw did not want to be involved in a lawsuit);  343:3-7 (same);  343:8-12 (he had not seen Dr. Bercaw in previous three years);

---

[13]American characterizes the "play ball" e-mail as "a never-before-disclosed May 2016 email" that was produced "at a June 27, 2018 hearing," which was the hearing into whether any of the Dr. Bercaw material would be discoverable, as opposed to being treated as pertaining purely to a consulting expert and thus being confidential.

343:13-344:3 (Dr. Bercaw did not want to be involved in law suit and to Lt. Col. Patterson's knowledge, had not prepared a report).

Had Lt. Col. Patterson not have changed his testimony when confronted with the April 22, 2016 e-mail string that Ms. Kochhar had produced, id. at 345:4-347:2, plaintiff's counsel would have had to get him to correct the record.[14]  By acknowledging the e-mail, see, e.g., id. at 347:1-3 ("Q.  Does this now jog your memory of an e-mail from Dr. Bercaw? A.  It does."), however, Lt. Col. Patterson acknowledged his April 2016 examination by Dr. Bercaw, and there was nothing else of which plaintiff's counsel were conscious at the time as needing to be corrected.

After the Court ruled that Dr. Bercaw was not a consulting expert, with whom Lt. Col. Patterson's interactions would have been confidential, plaintiff's counsel forwarded all documents concerning Dr. Bercaw.

---

[14]Although Lt. Col. Patterson states in his pro se response that

> Plaintiffs failure to recall Dr. Bercaw's name or the details surrounding his activities was not the result of any attempt to be fraudulent, but rather was simply his inability to remember, having been told that if he did not remember clearly, he should, since he was under oath, say "I don't know" or words similar, which is exactly what he did since a the time he had no recollection of Dr. Bercaw[,]

DE 194, at 10-11, he was not told by the undersigned to say "I don't know." Rather, he would have been told—as have scores of witnesses over the years during deposition preparation by the undersigned—not to give a precise answer from memory unless one is sure of the answer, but instead to tell the questioner that the deponent is aware that there is a written record of whatever happened, and that if he or she could see that record, it would help refresh his or her memory.

As to Lt. Col. Patterson's testimony that he never saw a report from Dr. Bercaw until the Court ordered its production, id. at 347:4-349:2, plaintiff's counsel's knowledge is limited to what is discussed in Point 1. See, e.g., Attachment 6.

- **Did Lt. Col. Patterson lie about whether he 'respond[ed]'?**

American suggests that Lt. Col. Patterson lied during his deposition when he denied "responding" to Dr. Bercaw's April 22 11:38 a.m. e-mail. DE 154, at 8.  It bases this accusation on a 12:49 p.m. e-mail from Lt. Col. Patterson to Dr. Bercaw, "rescinding any authorization for you to send my records anywhere other than to Dr. Caddy," and "specif[ying that] those authorizations entitled (sic) Federal Aviation Administration or Aviation Medical Examiner are at this time rescinded," which e-mail plaintiff's counsel supplementally disclosed September 25, 2018 after the Court held that Dr. Bercaw was not to be treated as a confidential consulting expert.  See Attachment 2.  The "rescinding" email was not a response to Dr. Bercaw's email intending to, but not, transmitting a copy of his report to Lt. Col. Patterson.  Rather, it was—typical of Lt. Col. Patterson—an off-in-another-direction afterthought by Lt. Col. Patterson.

Lt. Col. Patterson identified and authenticated the email he wrote 10 minutes later, i.e., at 12:59,Attachment 1, telling Dr. Bercaw nothing was attached to his email.  The questions and answers at the deposition, which contradict his identification and authentication of the "nothing-was-attached" email, raise questions whether Lt. Col. Patterson misunderstood the question or had a different definition in mind of the word "respond."  But what *is* clear

is that American Airlines did not question Lt. Col. Patterson at the deposition

about the "rescinding" email, only the "nothing-was-attached" email:

> Q.      When you received this e-mail from Dr. Bercaw,
> did you not receive the PDF that was attached?
>
> A.      I did not.
>
> Q.      Did you—did you respond to Dr. Bercaw asking for the PDF
> report of your medical records that he had just told you he was
> attaching?
>
> A.      I asked Dr. Bercaw to consult with Dr. Caddy.  So doc—
>
> Q.      Did you—did you respond to this e-mail from Dr. Bercaw?
>
> A.      I did not respond to it.
>
> Q.      Did you—as far as the—
>
> A.      I sent it to—I sent it to Dr. Caddy, from my best
> recollection.
>
> Q.      Did Dr. Caddy or anyone else ask you to provide the
> report?
>
> A.      Dr. Caddy had conversations with Dr. Bercaw.
>
> Q.      So have you ever seen a report from Dr. Bercaw?
>
> A.      I have not.

Attachment 11, at 347:8-348:1.

> •   **The matter of Dr. Kay**

Once again operating on his own, Lt. Col. Patterson engaged Dr. Kay

in June 2016 to do yet another neuropsychological assessment of him,

concerning which plaintiff's counsel only later learned when Lt. Col.

Patterson reported that Dr. Kay had found him fit for duty.

Although Ms. Kochhar disclosed Dr. Kay November 1, 2017 as a treating expert pursuant to Rule 26(a)(2)(C), a copy of which is appended as Attachment 14, and the undersigned included Dr. Kay's report as part of his summary judgment evidence—listing Dr. Kay as one of five healthcare providers whose positive reports Lt. Col. Patterson had unilaterally submitted to American in an effort to be restored to duty, plaintiff's counsel later withdrew Dr. Kay's initial report, see DE 160, Attachment 15, because plaintiff had failed to reveal to Dr. Kay at the time of the testing:

*One*, that Dr. Bercaw had administered to him the same version of the neuropsychological testing package as Dr. Kay was about to administer, possibly skewing the results because of a "practice effect," see Kay Depo, at 74:6-77:18, and

*Two*, that Drs. Bercaw and Fonseca had made the findings that they had in the April 2016 report, which Dr. Kay did not consider in the 2016 analysis, but should have.  See id. at 139:17-140:11.

No one from The Amlong Firm had any part in the engagement of Dr. Kay (although the undersigned almost certainly recommended him because of his preeminence in the field) or in failing to brief Dr. Kay about the Bercaw/Fonseca findings prior to the administration of the June 2016 tests.

Following Dr. Bercaw's deposition, however, at which the undersigned learned about the "practice effect" impact, as well as about the concerns that Dr. Bercaw had expressed in the report, the undersigned contacted Dr. Kay, furnished him a copy of Dr. Bercaw's report, determined that the June

2016 test results were invalid and instructed Lt. Col. Patterson to return to Dr. Kay to be retested.  See Kay Depo, at 187:6-192:21.

## Governing Legal Principles

American has moved for sanctions against both the plaintiff and his counsel pursuant to the Court's "inherent power to police those appearing before them."  Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017), citing Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).  "This power 'must be exercised with restraint and discretion' and used 'to fashion an appropriate sanction for conduct which abuses the judicial process.'"  Id., quoting Chambers at 501 U.S. 44–45.

Although actions based on a court's inherent powers are reviewed for abuse of discretion, see, e.g., Chambers, 501 U.S. at 55, citing Link v. Wabash Railroad Co., 370 U.S. 626, 633 (1962), "[a]n abuse of discretion occurs when the district court applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner . . . or ignores or misunderstands the relevant evidence."  Purchasing Power, 851 F.3d at 1222-23, quoting Sciarretta v. Lincoln Nat'l Life Ins., 778 F.3d 1205, 1212 (11th Cir. 2015).

"There are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980). Two of those three circumstances that would apply to discovery disputes were catalogued in Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975), i.e., ("court may assess attorneys' fees for the 'willful

disobedience of a court order . . . as part of the fine to be levied on the defendant[,] . . .' ; or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'") (citations omitted).

In the Eleventh Circuit, subjective bad faith, with a narrow exception for conduct tantamount to bad faith, is the sine qua non of conduct sanctionable under the court's inherent powers.  Purchasing Power, 851 F.3d at 1223 (distinguishing inherent-power standard and that used under 28 U.S.C. § 1927).

Such bad faith must be shown by evidence, and not merely either by the argument of lawyers, U.S. v. Lopez, 649 F.3d 1222, 1237 (11th Cir. 2011) and United States v. Smith, 918 F.2d 1551, 1562 (11th Circuit 1990) ("statements and arguments of counsel are not evidence") or by the fact-finder's disbelief of the accused.  Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it.  Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion").[15]

---

[15]While Bose was a defamation case decided as a matter of federal constitutional law, other appellate courts, including the Eleventh Circuit, have applied the rule that discredited testimony is not a sufficient basis for drawing a contrary conclusion in other contexts.  See  Smith v. Metro. Sec. Servs., Inc., No. 12-12711, 537 Fed. Appx. 864, at *11 (11th Cir. 2013)(affirming grant of defendant's Rule 50(b) motion in a Title VII retaliation case over fired plaintiff's arguments that jury determining a witness's testimony is false can conclude the opposite of the testimony, because record contained no affirmative evidence of who made the termination decision); see also Lapre v. City of Chi., No. 17-3024 (7th Cir.
(continued...)

**Applying the Law to the Facts in the Case at Bar**

Lt. Col. Patterson may have wanted to keep hidden from American the Bercaw/Fonseca report because he—although neither a lawyer nor a neuropsychologist—thought it would harm his case.  He was even willing to lie about it at his deposition, to obstruct access to it by his lawyers and to conceal it from the leading neuropsychologist he retained, who quite possibly could have debunked the not-fit-for-duty examination by American's neuropsychologist by as early as June 2016 if Lt. Col. Patterson would only have revealed the Bercaw/Fonseca report to Dr. Kay prior to Dr. Kay's neuropsychological assessment of him.

Lt. Col. Patterson was prevented from keeping the Bercaw/Fonseca report secret, however, by an associate of The Amlong Firm who had furnished the report during initial disclosures in this case.  When Lt. Col. Patterson found out what Ms. Kochhar had done, he complained about its disclosure, which he insisted never should have happened.

Research showed that consulting expert's reports do not have to be disclosed.  Regardless of what the FAA regulations and American's internal policies might provide, the Bercaw/Fonseca report likely would have remained confidential under Rule 26(b)(4)(D) if Lt. Col. Patterson had not decided, in a strategy devised solely by himself, to have Dr. Bercaw share the report with Dr. Caddy (a clinical psychologist to whom Dr. Bercaw's neuropsychology report would have been useless, even if Dr. Caddy had not rejected it because he understood it to have been prepared by a resident)

---

[15](...continued)
Dec. 17, 2018)(42 U.S.C. § 1983 case); Walker v. City of Elizabeth, 638 Fed. Appx. 29, *3 (2d Cir. 2016)(42 U.S.C. § 1983 case).

and thereby provide the Court with grounds to order its production and the other attendant discovery.

Prior to the Court's ruling that the Bercaw/Fonseca materials were discoverable, The Amlong Firm held back from production everything about Drs. Bercaw and Fonseca—but did a privilege log to show what it had concerning the report.  Once the Court ruled, The Amlong Firm began supplementing discovery responses with other Bercaw/Fonseca material.

Nothing that any personnel of The Amlong Firm did, **One**, constituted willful disobedience of a court order, or, **Two**, was done in bad faith, vexatiously, wantonly, or for oppressive reasons.  It was simply the use of the Federal Rules to avoid disclosure of the opinion of a non-testifying expert, which avoidance ceased once the Court ruled that the materials were discoverable.

There is nothing in the record, other than the accusations of American's lawyers, which actually are aimed more at Lt. Col. Patterson than at his lawyers, suggesting The Amlong Firm wilfully violated any court orders, or acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  In other words, there was no subjective bad faith on the part of The Amlong Firm.  To impose any sanctions against it would be an abuse of discretion.

## Conclusion

Based on the facts marshaled, the authorities cited and the arguments presented, William R. Amlong, Karen Cooolman Amlong, Jennifer Daley, Isha Kochhar and Amlong & Amlong, P.A., d/b/a The Amlong Firm, request this Court to deny American Airlines, Inc.'s Motion for Sanctions as to each and all of them.

Respectfully Submitted,


*/s/ William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com
JENNIFER DALEY
Florida Bar No.:  856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 462-1983
Facsimile: (954) 463-5008

### Certificate of Service

**I HEREBY CERTIFY** that this motion has been filed using the ECF system of the Southern District of Florida this and thereby served on all counsel or parties of record and by electronic mail upon the plaintiff, Rodney Scott Patterson.

*/s/    William R. Amlong*
WILLIAM R. AMLONG

\\amlong3\cpshare\CPWin\HISTORY\190508_0001\1538.295