```
                                                                    1

 1               UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2                 FORT LAUDERDALE DIVISION

 3        CASE NO:  1:17-cv-60533-MARTINEZ/OTAZO-REYES

 4

 5    RODNEY SCOTT PATTERSON,

 6          Plaintiff,

 7    vs.

 8    AMERICAN AIRLINES, INC., a
      Delaware  Corporation,
 9
            Defendant.
10    _____/

11

12                           SHOOK, HARDY & BACON, L.L.P.
                             201 S. BISCAYNE BOULEVARD
13                           SUITE 3200
                             MIAMI, FL 33131
14                           Tuesday, March 6, 2018
                             10:09 a.m. - 7:42 p.m.
15

16

17
          VIDEOTAPED DEPOSITION OF RODNEY SCOTT PATTERSON
18

19

20         Taken on behalf of the Defendant before

21    Elizabeth Cordoba, RMR, CRR, FPR, Notary Public in

22    and for the State of Florida at Large, pursuant to

23    Defendant's Notice of Taking Deposition in the above

24    cause.

25
```

# ATTACHMENT 11

341

13   Q.   Okay.  There's a reference in some of the
14   documents to a -- a Bercaw report, B-E-R-C-A-W.
15       Does that jog your memory?
16   A.   Dr. Bercaw does not.
17   Q.   You never -- you're not familiar with the
18   Bercaw report?
19   A.   Dr. Bercaw -- Dr. Bercaw was -- was consulted
20   to basically draw forth -- draw forth conclusions or
21   whatnot.  And Dr. Bercaw --
22   Q.   Consulted by you?
23   A.   Well, consulted by me.  And doctor -- Dr. Caddy
24   contacted Dr. Bercaw and doctor -- Dr. Bercaw had -- had
25   insinuated that this was going to go to a lawsuit and he

342

1    was not interested in -- in -- in pursuing the lawsuit.
2         Q.   Let me ask you one quick question.  Do any of
3    the names that we just talked about -- Abi-Rafeh, Kay,
4    Hastings, Caddy, Bercaw -- would any of those individuals
5    not appear on an FAA Form 8500 for you listing health
6    professionals you visited in the last three years?
7         A.   I think -- I think as a -- as a -- I think, in
8    reporting the individuals to -- Abi-Rafeh -- Abi-Rafeh did
9    not process me as a patient.  It was more of a personal
10   contact.  And Abi-Rafeh's opinion was "There's nothing
11   wrong with you.  This doctor has not opined that there's
12   anything wrong with you."
13        Q.   Is Abi-Rafeh a health professional?
14        A.   He is a medical doctor.
15        Q.   Okay.  And you've visited him in the last three
16   years?
17        A.   I saw -- I -- I spoke with him briefly and I
18   asked him to receive the report.
19        Q.   He is an expert you've designated in this case,
20   isn't he?
21        A.   He is.
22        Q.   Dr. Kay, would Dr. Kay appear on your FAA form?
23        A.   Dr. Kay did.
24        Q.   Dr. Hastings?
25        A.   Dr. Hastings did.

343

```
1     Q.    Dr. Caddy?
2     A.    Dr. Caddy.
3     Q.    Dr. Bercaw?
4     A.    He did not.
5     Q.    And why is that?
6     A.    Dr. Bercaw said that he didn't want to be
7  involved in the lawsuit.
8     Q.    Is Dr. Bercaw a health professional?
9     A.    He is.
10    Q.    Have you visited him in the last three years?
11    A.    Not in the last three years.  I've spoken with
12 him.
13    Q.    Did Dr. Bercaw prepare a report about your
14 medical history?
15    A.    Dr. Bercaw, basically, in -- in -- in speaking
16 with him, Dr. Bercaw didn't want to be involved with
17 American Airlines as far as the procedure.
18    Q.    Did Dr. Bercaw prepare a report about your
19 medical history?
20    A.    If he did, I didn't see it.
21    Q.    So there may or may not be a report that
22 Dr. Bercaw created about your medical history?
23    A.    I'm pretty familiar -- if -- if he created a
24 report, I -- I should have seen it, but I have not seen
25 it.  And Dr. Bercaw advised Dr. Caddy that -- that he
```

344

```
 1   didn't want to be involved in the lawsuit and, you know,
 2   wanted a lot of money to participate and come onboard as a
 3   witness.
 4       Q.   Are there other doctors here that are receiving
 5   money to come onboard as a witness?
 6       A.   Dr. Caddy has been compensated for his time.
 7   However, his opinion -- and he has been very clear -- his
 8   opinion is not for sale.
 9       Q.   Okay.  I would like you --
10       A.   Dr. Hastings, I compensated him for his time.
11   I have no influence over his opinion.
12       Q.   And are those compensation arrangements ongoing
13   or have you completed --
14       A.   I paid Dr. Hastings for his time and -- at the
15   conclusion of the report -- and Dr. Hastings told me
16   his -- his -- the visit with him was not a -- it -- it was
17   not as a medical doctor.  It was as a consultant to
18   review --
19       Q.   So you visited Dr. Hastings but not as a
20   medical doctor, but then you submitted --
21       A.   Dr. Hastings --
22       Q.   -- you submitted him as an expert regarding
23   your medical status in this case; is that correct?
24       A.   Dr. Hastings -- Dr. Hastings advised me that my
25   visit with him was not covered under my insurance.
```

345

1   Q.   Will Dr. Hastings testify regarding your
2   medical records and medical history?
3   A.   Absolutely.
4        MR. MORALES:  Okay.  I believe this is Exhibit
5   20.  Is that right?
6        THE REPORTER:  Exhibit 21.
7        MR. MORALES:  Exhibit 21.  I'm off one
8   document.
9           (Exhibit 21, E-mail, was marked for
10          Identification.)
11  BY MR. MORALES:
12  Q.   I'll have you look at this document,
13  Mr. Patterson.  Are you familiar with this document,
14  Colonel Patterson?
15  A.   Appears to be an e-mail.
16  Q.   Okay.  So is it -- is it accurate to say there
17  are two e-mails on document Exhibit 21, which is Bates
18  Patterson_00434?
19       Do you see an e-mail from Ed Bercaw --
20  A.   I do.
21  Q.   -- to A-A-7-3-7-D-R-V-R?
22  A.   Yes, I do.
23  Q.   Are you A-A-7-3-7- --
24  A.   I am.
25  Q.   -- D-R-V-R?

346

1  A. Yeah.  That's correct.
2  Q. And the e-mail shows Friday, April 22, 2016; is
3  that correct?
4  A. That's correct.
5  Q. And the subject is neuropsych evaluation?
6  A. It is.
7  Q. And it starts "Good morning, Mr. Patterson."
8  Do you see that?
9  A. That's correct.
10 Q. I'd just like to -- apologies for quoting at
11 length here, but I just want to see if I can jog your
12 memory on this Bercaw report.
13         It says [as read]:  Sorry for the delay on this
14 report.  We did get the medical records this week and
15 wrapped up the report just today.  A PDF is attached.  I
16 will be available to answer any questions you might have
17 after reviewing this.  I received this authorization to
18 send this to your attorney which I can do after you have
19 had a chance to read this.  Ultimately, the recommendation
20 is that this should go to review by the FAA, who has a
21 few, quote, "in-house," unquote, neuropsychologist
22 consultants who render opinions -- render an opinion.
23 They will have the data they need from us but we are
24 willing to do any follow-up or additional testing that may
25 be required later, which is sometimes the case.

[3/6/2018 10:00 AM] Patterson, Rodney   Scott - 180306

```
                                                               347

 1              Does this now jog your memory of an e-mail from
 2    Dr. Bercaw?
 3        A.    It does.
 4        Q.    Does it jog your memory of a report from
 5    Dr. Bercaw?
 6        A.    I had not seen the report from Dr. Cow --
 7    Bercaw.
 8        Q.    When you received this e-mail from Dr. Bercaw,
 9    did you not receive the PDF that was attached?
10        A.    I did not.
11        Q.    Did you -- did you respond to Dr. Bercaw asking
12    for the PDF report of your medical records that he had
13    just told you he was attaching?
14        A.    I asked Dr. Bercaw to consult with Dr. Caddy.
15    So doc --
16        Q.    Did you -- did you respond to this e-mail from
17    Dr. Bercaw?
18        A.    I did not respond to it.
19        Q.    Did you -- as far as the --
20        A.    I sent it to -- I sent it to Dr. Caddy, from my
21    best recollection.
22        Q.    Did Dr. Caddy or anyone else ask you to provide
23    the report?
24        A.    Dr. Caddy had conversations with Dr. Bercaw.
25        Q.    So have you ever seen a report from Dr. Bercaw?


               [3/6/2018 10:00 AM]  Patterson, Rodney  Scott - 180306
```

348

1	A.	I have not.
2	Q.	Have you ever discussed with Dr. Caddy a report
3	from Dr. Bercaw?
4	A.	I would have sent it to Dr. Caddy and Dr. Caddy
5	was basically reviewing all of the documentation or
6	anything that came in, and also coordinating with my AME.
7	Q.	Have you ever had a discussion with Dr. Caddy
8	about a report prepared by Dr. Bercaw?
9	A.	I have asked Dr. Caddy to professionally deal
10	with this issue.  And, you know, I can't go back and --
11	and say what's occurred three years ago.
12	Q.	As -- as -- as part -- August -- April 2016 is
13	the date of the e-mail.
14		As part of this -- this litigation, have you
15	search your records for a PDF of the report from
16	Dr. Bercaw?
17	A.	If I had it, I would have produced it for you,
18	sir.
19	Q.	Have you searched your records?
20	A.	I have.
21	Q.	Have you asked Dr. Caddy for the Bercaw report?
22	A.	I was unaware of this e-mail, so, you know,
23	I -- I didn't --
24	Q.	So when you say you were unaware of it, I
25	guess, just to note, you first received it from Dr. Bercaw

349

1    on April 22, 2016?
2        A.   That's correct.
3        Q.   You then forwarded the e-mail to four e-mail
4    addresses, including Dr. Caddy.  And then, presumably, you
5    prepared or presented this document for production in this
6    case; is that all correct?
7        A.   Well, obviously, I gave this to -- obviously,
8    this came from my attorney, so, correct.  Or it came from
9    Dr. Caddy.
10       Q.   Did you ever follow up with Dr. Bercaw about
11   his, quote [as read]:  Recommendation that this should go
12   to review by the FAA, who has a few in-house
13   neuropsychologist consultants who render an opinion?
14       A.   I actually went to Dr. Kay who is the -- who is
15   the FAA's resident expert.  This is who this is referring
16   to.
17       Q.   So did you -- did you consult with Dr. Bercaw
18   about his recommendation?
19       A.   I did not.
20       Q.   I would like to ask:  Obviously, if there's a
21   PDF of this report, either in your records or Dr. Caddy's,
22   that we be provided with that report.  Could we make that
23   request --
24       A.   If it's available, I'll be happy to provide it.
25       Q.   Would you agree to ask Dr. Caddy for that

```
                                                          350
1    report --
2         A.    We can.
3         Q.    -- without us filing a formal discovery
4    request?
5         A.    Sure.
```