**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
FORT LAUDERDALE DIVISION

CASE NO.: 17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

    Defendant.
_____/

**AMERICAN AIRLINES, INC.'S OMNIBUS
REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

In response to American's motion for sanctions, Plaintiff's counsel William Amlong repeatedly confirms that Plaintiff lied and attempted to hide the Bercaw report, stating:

- Plaintiff was "willing to lie about [the Bercaw report] at his deposition, to obstruct access to it by his lawyers and to conceal it from the leading neuropsychologist he retained [Dr. Gary Kay])." (Amlong Opposition ["Amlong Opp."] at 19.)

- "And, yes, Lt. Col. Patterson did lie—or, at least, attempted to lie—at his deposition concerning whether he had ever visited Dr. Bercaw." (*Id.* at 12.)

Plaintiff's counsel also confirms that Plaintiff did not simply forget about his visit to Bercaw—nor his subsequent email with Bercaw rescinding Bercaw's authority to share the report, his subsequent email with Dr. Caddy stating that Bercaw's report needed to be re-done, or his email stating they should cut bait and fish elsewhere if Bercaw would not play ball. Rather, Plaintiff's counsel confirms that Plaintiff actively attempted to hide this information, stating that, "Lt. Col. Patterson was vocal about having not wanted Dr. Bercaw disclosed after he already had been." (*Id.* at 6.)

Based on the opposition briefs filed by Plaintiff's counsel and Plaintiff (collectively the "Oppositions"), there is no disputing the central contention in American's motion: Plaintiff attempted to "prevent American and this Court (as well as the FAA) from learning of" Dr. Bercaw's report because "it undermines the fundamental narrative that Plaintiff has presented in this litigation." (Motion at 1.) Such "bad-faith litigation conduct" compels an award of sanctions. *See Sprint Solutions, Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290 (S.D. Fla. 2015).

I. **The Material Facts Concerning the Bercaw Report Are Undisputed**

Mirroring his conduct throughout this litigation, Plaintiff in his Opposition provides a shifting, inconsistent, and irreconcilable set of explanations for *why* he concealed the Bercaw report from his own neuropsychologist, the FAA, this Court, and American. But, the core

1

underlying facts concerning the Bercaw report and Plaintiff's conduct in attempting to conceal it are undisputed.

- In March 2016, four days after Dr. John Knippa—a credentialed neuropsychologist to whom American sent Plaintiff for a fitness for duty examination—conducted a two-day examination that resulted in a determination that Plaintiff was not fit for duty as a pilot, Plaintiff sought out a second opinion from Dr. Bercaw.  (ECF No. 59-1 at ¶ 37; ECF No. 87-1.)

- Dr. Bercaw conducted extensive neuropsychological testing of Plaintiff in his Sarasota, Florida offices.  (ECF No. 136 at 8.)  Plaintiff at the time resided in Broward County, Florida.  (ECF No. 1 at ¶ 4.)

- One month after this evaluation, on April 22, 2016, Dr. Bercaw sent Plaintiff an email with his findings including "the recommendation . . . that this should go to review by the FAA"; and the accompanying report detailed concerns "potentially critical to flight performance."  (ECF No. 53-1; ECF No. 87-1 at 6–7.)

- Once Plaintiff received this email with the results of Dr. Bercaw's evaluation, he immediately wrote to Dr. Bercaw, copying his counsel (William Amlong): "At the moment I am rescinding any authorization for you to send my records anywhere other than to Dr. Caddy, specifically those authorizations entitled Federal Aviation Administration or Aviation Medical Examiner are at this time rescinded."  (ECF No. 136-3.)

- On April 26, 2016, Plaintiff wrote to his expert, Dr. Caddy, stating, "Dr. Bercaw's report which is lacking and very weak needs to be re-done."  (ECF No. 139-1 at 3.)  Of course, it is not possible to conclude a report is lacking and needs to be re-done if you never received nor reviewed it as he continues to suggest to this Court.

- Plaintiff also sent the following message to Dr. Caddy: "If Dr. Bercaw will play ball with you, fine. . . . If he won't play ball we will cut bait and go fish elsewhere."  (ECF No. 79 at 2.)

- When Plaintiff visited Dr. Kay for a June 2016 examination, he concealed Dr. Bercaw's examination and report from Dr. Kay, a decision that had major implications for the tests Dr. Kay administered and the report he then issued.  (ECF No. 154-4 at 127–39.)

- After learning of the Bercaw report, Dr. Kay testified in November 2018 that Plaintiff had "done miserably" on Dr. Bercaw's testing and that Plaintiff's decision to conceal Dr. Bercaw's report was "a terrible mistake" and "certainly doesn't look good."  (*Id.* at 193–97.)  Dr. Kay also disavowed the conclusions he reached in his June 2016 examination of Plaintiff once he learned that Plaintiff had failed to disclose the Bercaw report, including because Dr. Kay would have repeated the same questions as Dr. Bercaw and thus Dr. Kay's conclusions were unreliable based on the "practice

2

effect." (*Id.* at 131–34.)  Dr. Kay also testified that Dr. Bercaw was "quite right" that the FAA likely would not have issued a medical certificate based on Dr. Bercaw's findings.  (*Id.* at 193.)

- Plaintiff did not disclose Dr. Bercaw's neuropsychological examination in any of the three FAA medical certification forms (Form 8500-8) that Plaintiff submitted to the FAA in 2016 or 2017, despite an express requirement in each submission, under penalty of law, that Plaintiff identify all "Visits to Health Professional Within Last 3 Years."  (*Id.* at 171–86; ECF No. 57-1 at 343:10–12.)

- Plaintiff did not identify Dr. Bercaw in response to American's Interrogatories, asking him to identify "any medical practitioner" visited since 2014, nor did he produce a copy of Dr. Bercaw's report in response to American's Requests for Production, asking him to provide any documents relating to "any consultation, evaluation, or treatment from a medical practitioner" since 2014.  (ECF No. 154-1; ECF No. 154-2.)

- At his March 2018 deposition, Plaintiff testified that he did not know anyone named Dr. Bercaw and then that he had never visited Dr. Bercaw for an evaluation.  After American's counsel showed Plaintiff the April 22, 2016 email to Plaintiff stating Dr. Bercaw's "recommendation . . . that this should go to the FAA," Plaintiff maintained that there had never been any report from Dr. Bercaw because Plaintiff would have reviewed any such report if it existed.  (ECF No. 57-1 at 341:13–16, 342:8–12, 343:10–12, 345:12–347:3.)

These undisputed facts demonstrate the scope of Plaintiff's efforts to conceal the Bercaw report—not just from American and this Court, but also from his own doctor and the FAA.

## II. **Plaintiff's Continuing Efforts to Mislead this Court Concerning the Bercaw Report Are Unavailing**

In his Opposition, Plaintiff simultaneously asserts each of the following in a post hoc attempt to rationalize his conduct:

1. Plaintiff "had no recollection of Dr. Bercaw" at the time of his March 2018 deposition. (Patterson Opp. at 10.)

2. Plaintiff was "under no obligation to notify American of consultation" with Dr. Bercaw, because Plaintiff engaged Dr. Bercaw "in anticipation of litigation." (*Id.* at 7–8.)

3. Plaintiff "was not seeking medical advice or treatment" when Dr. Bercaw conducted his neuropsychological examination of Plaintiff in March 2016.  (*Id.* at 8.)

3

4. Dr. Bercaw's neuropsychological findings provide "the smoking gun" evidence that "clearly supports the Plaintiff's narrative in this case" and "belies American's assertions regarding the Plaintiff's mental health." (*Id.* at 6–7.)

Each of these arguments fail on their own. Asserted together, they provide an irreconcilable narrative of events and in no way justify Plaintiff's conduct.[1]

### A. Plaintiff's Deposition Testimony Was Willful Not Forgetful

Plaintiff's argument that he forgot about the Bercaw report at his deposition is simply not credible. Plaintiff's testimony about Dr. Bercaw progressed in stages but at no point came close to the truth.

- Initially, Plaintiff testified that he did not know of anyone named Bercaw, even when American's counsel spelled the name. (*See* ECF No. 57-1 at 341:13-16: Q: "There's a reference in some of the documents to a Bercaw report, B-E-R-C-A-W. Does that jog your memory?" A: "Dr. Bercaw does not.")

- Upon persistent questioning, Plaintiff acknowledged that he had "spoken" to Dr. Bercaw but flatly denied having ever visited Dr. Bercaw for an examination. (*Id.* at 342:8–12, 343:10–12.)

- Finally, Plaintiff was presented with Dr. Bercaw's April 22, 2016 email to Plaintiff— "Subject: Neuropsych Evaluation"—which provided the "recommendation . . . that this should go to review by the FAA." Plaintiff testified that he had never responded to this email and that there was no Bercaw report because Plaintiff would have seen the report if there was one. But, Plaintiff immediately responded to Dr. Bercaw's email on April 22, 2016 and rescinded authorization for Dr. Bercaw to share his findings, including to the FAA. Plaintiff also reviewed Dr. Bercaw's report by April 26, 2016: on that day, Plaintiff emailed Dr. Caddy: "Dr. Bercaw's report which is lacking and very weak needs to be re-done." (*Id.* at 345:12–347:3; ECF No. 53-1; ECF No. 139-1 at 3.)[2]

---

[1] The remainder of Plaintiff's opposition is simply irrelevant to the issue before the Court regarding sanctions and thus does not warrant a response. To the extent that it seeks to rehash prior arguments that the parties addressed in detail in their summary judgment briefing and that the Court addressed in its detailed Order, Plaintiff's opposition is frivolous. (*See* ECF No. 186.)

[2] In their opposition, Plaintiff's counsel asserts that American "did not question [Plaintiff] at the deposition about the [April 22, 2016 ]'rescinding email' only the [April 22, 2016] 'nothing-was-attached' email." The reason, of course, is that Plaintiff ***did not produce the "rescinding email" until September 17, 2018***, more than six months after Plaintiff's March 6, 2018 deposition—

4

Each component of Plaintiff's deposition testimony concerning the Bercaw report confirms what his counsel states expressly: Plaintiff was "willing to lie about it at his deposition." (Amlong Opp. at 19.)

Of course, even without his counsel's admission and even putting aside how his testimony unfolded, Plaintiff's claim that he simply forgot rings hollow given the undisputed evidence confirming that Plaintiff:

- Traveled to another city to visit Dr. Bercaw (Plaintiffs lives in Broward County, Florida and Dr. Bercaw's office at that time was in Sarasota, Florida); (ECF No. 87-1; ECF No. 136 at 8; ECF No. 1 at ¶ 4)

- Underwent a battery of tests over the course of a day; (ECF No. 87-1; ECF No. 136 at 8)

- Subsequently rescinded authorization for Dr. Bercaw to provide the report to anyone other than Dr. Caddy (including the FAA); (ECF No. 136-3) and

- Read the report and subsequently discussed it with Dr. Caddy and told him it "needs to be re-done." (ECF No. 139-1 at 3.)

B. No Privilege or Federal Rule Explains Plaintiff's Conduct

Plaintiff's argument that he withheld Dr. Bercaw's findings from American and the Court because he gathered them in anticipation of litigation is disingenuous and unavailing. (Pl. Opp. at 7–8.) His pattern of concealing Dr. Bercaw's findings has nothing to do with any privilege or federal rule.

At his deposition in March 2018, American repeatedly asked Plaintiff about Dr. Bercaw and the April 22, 2016 email from Dr. Bercaw to Plaintiff, with William and Karen Amlong in

---

despite American issuing document requests 14 months earlier that called for any such emails. (ECF No. 136-3; ECF No. 139).

5

attendance.[3]  Not once did Plaintiff or his counsel object or assert any privilege—rather, Plaintiff answered all such questions, albeit with false information.

It was not until American sought to compel production of Dr. Bercaw's report in May 2018 (ECF No. 53), that Plaintiff asserted that Dr. Bercaw's report is protected as the opinion of a non-testifying expert and prepared an accompanying privilege log with documents related to Dr. Bercaw.  (ECF No. 54.)  American then sought and obtained leave of this Court to depose Plaintiff's testifying expert, Dr. Caddy.  This Court ultimately held that Dr. Caddy considered "for purposes of his expert report and opinions, the testing of [Plaintiff] that took place in the office of Edwin Bercaw, Ph.D."  (ECF No. 80.)  Accordingly, this Court ordered Plaintiff to produce the Bercaw report and accompanying communications, including "the two-page letter dated May 6, 2016 from Dr. Bercaw to Dr. Caddy discussing the March test results."  (*Id.* at 2.) This Court effectively deemed irrelevant Plaintiff's newfound argument that Dr. Bercaw was a non-testifying expert for Plaintiff, because Plaintiff's testifying expert had considered Dr. Bercaw's opinions in formulating his own expert report, and Dr. Bercaw's opinions were therefore discoverable.  (*Id* at 1.)

In its Opposition, the Amlong Firm attempts to take credit for disclosure of the Bercaw report, stating, "Patterson was prevented from keeping the Bercaw/Fonseca report secret, however, by an associate of The Amlong Firm who had furnished the report during initial disclosures in this case."  (Amlong Opp. at 19.)  This assertion is not accurate because American

---

[3] Notably, Mr. Amlong was a recipient of Plaintiff's April 22, 2016 response email to Dr. Bercaw, rescinding Dr. Bercaw's authorization to share his findings.  (ECF No. 136-3.)  Mr. Amlong was thus well aware of Dr. Bercaw when Plaintiff testified, without any privilege objection and with false information, about Dr. Bercaw at his March 2018 deposition.  Only months after the March 2018 deposition did Plaintiff (and the Amlong Firm) first assert that Dr. Bercaw was a non-testifying expert.  (Opp. at 6.)

6

did not receive Bercaw's report until this Court ordered production of it in June 2018 following motion practice.[4]

Third, Plaintiff concealed the Bercaw report from Dr. Kay—the neuropsychologist he retained. (Amlong Opp. at 19.) Dr. Bercaw's examination and findings were directly relevant to Dr. Kay's examination and findings in June 2016, but Plaintiff withheld all information about Dr. Bercaw from Dr. Kay until 2018. (ECF No. 154 at 13–15.) Once Dr. Kay learned of Dr. Bercaw's report in 2018, he disavowed his own 2016 neuropsychological evaluation of Plaintiff, and testified that Plaintiff had made "a terrible mistake" and "certainly doesn't look good." One basis for Dr. Kay disavowing his report is the "practice effect": because Dr. Kay was not aware of Dr. Bercaw's March 2016 examination, Dr. Kay administered questions to Plaintiff that Dr. Bercaw previously administered, which distorted Plaintiff's performance on Dr. Kay's examination. (ECF No. 154-4 at 131–34.) Plaintiff does not assert, nor could he, that he withheld the Bercaw report from Dr. Kay in anticipation of litigation.

Finally, Plaintiff concealed the Bercaw report from the FAA. Plaintiff did not disclose Dr. Bercaw on any of the three Form 8500-8s that he submitted to the FAA in 2016 and 2017, even though Item 19 expressly required Plaintiff to list all visits to health professionals within the last three years. (*Id.* at 171–86; ECF No. 57-1 at 343:10–12.) Dr. Kay testified that Plaintiff was "required by law to indicate that he was evaluated by Ed Bercaw" on his FAA Form 8500-8. (ECF No. 154-4 at 146.) Plaintiff likewise does not assert, nor could he, that he withheld the Bercaw report from the FAA in anticipation of litigation.[5]

---

[4] The Amlong Opposition is hardly a paragon of clarity on this point because the Amlongs argue that Dr. Bercaw was a non-testifying expert (Amlong Opp. at 6–7, 20), even as they attempt to take credit for releasing the Bercaw report against Plaintiff's wishes.

[5] Although Plaintiff jarringly and dismissively states in his opposition that, "defendant has droned ad nauseum about the FAA Form 8500," (Pl. Opp. at 11), as Dr. Kay testified, a pilot's

7

C. The Bercaw Report Contradicted the Fundamental Narrative of the Complaint

In his Opposition, Plaintiff also advances the mutually exclusive arguments that Dr. Bercaw did not provide "medical advice or treatment" and that Dr. Bercaw's findings provide "the smoking gun" neuropsychological evidence that "belies American's assertions regarding the Plaintiff's mental health." (Pl. Opp. at 6–7.) Neither assertion is accurate. Dr. Bercaw conducted a comprehensive neuropsychological examination of Plaintiff in March 2016 to determine his fitness for duty as a pilot. Plaintiff performed "miserably" on those tests—an assessment delivered by Dr. Kay in November 2018, once he was finally able to review Dr. Bercaw's report. (ECF No. 154 at 193–97.) According to Dr. Kay, Dr. Bercaw's findings presented "significant concerns" about Plaintiff and "Dr. Bercaw was quite right" that FAA examiners likely would not issue a medical certificate based on Plaintiff's results during Dr. Bercaw's evaluation. (*Id.*)[6] Indeed, Dr. Kay testified that, in light of the after-the-fact disclosure of the Bercaw report, which "would have led to a different opinion" from Dr. Kay, it would not be appropriate to rely on Dr. Kay's June 2016 report in analyzing Plaintiff's fitness for duty. (*Id.*)

If Dr. Bercaw had been willing to "play ball" by providing the fitness-for-duty certification that Plaintiff was seeking, Plaintiff would have had "no issues with spending the money" on Dr. Bercaw's report. But, when Dr. Bercaw stood by his conclusion that Plaintiff's March 2016 neuropsychological results raised concerns "potentially critical to flight

---

failure to report accurate information on the Form 8500-8 "undermines the safety of national air space." (ECF No. 154-4 at 156.)

[6] Their assertion that the Bercaw report "*is consistent* with plaintiff's counsel's ''fundamental narrative'" of the case, (Amlong Opp. at 9 [emphasis in original]), belies the Amlong Firm's suggestion that it is Plaintiff alone that is willing to mislead this Court concerning Dr. Bercaw's findings.

performance"—and his recommendation that this "go to review by the FAA"—Plaintiff decided to "cut bait and go fish elsewhere." (ECF No. 79.)[7]

Plaintiff concealed the Bercaw report because it contradicted the fundamental narrative of his Complaint that Dr. Knippa was an outlier in concluding in March 2016 that Plaintiff was not fit for duty as an American pilot.

### III. The Pace and Amlong Oppositions Do Not Rebut American's Motion

The Pace Opposition and the Amlong Opposition primarily address the allocation of responsibility for sanctionable conduct between Plaintiff and his counsel. Neither Opposition rebuts American's central premise that sanctions are warranted.

The primary argument in the Pace Opposition is that Mr. Pace "had no knowledge of or any participation in the alleged actions," including because he "filed nothing substantive" and did not have access to case files. (Pace Opp. at 2, 4.) This argument only goes to allocation of responsibility.

The Amlong Opposition actually confirms the essential points of American's motion for sanctions. According to Mr. Amlong, Plaintiff's lead counsel from the time this case was filed in May 2017 until after American's motion for summary judgment was granted in March 2019, Plaintiff engaged in the "litigation train-wreck" of withholding the Bercaw report because he "thought it would harm his case." (Amlong Opp. at 11.) The Amlong Opposition confirms to the Court that, in order to conceal the Bercaw report; Plaintiff "was even willing to lie about it at his deposition, to obstruct access to it by his lawyers and to conceal it from the leading

---

[7] Plaintiff's April 29, 2016 email to Dr. Caddy states: "If Dr. Bercaw will play ball with you, fine. I have no issues with spending the money. I personally feel he took my money and then when I showed up had the intern do the work which is not what I paid for. If he won't play ball we will cut bait and go fish elsewhere." (ECF No. 79.)

9

neuropsychologist he retained)." Although Mr. Amlong asserts that Plaintiff should bear sole responsibility for sanctionable conduct concerning the Bercaw report, the Amlong Opposition leaves no doubt that American's motion for sanctions should be granted.

Dated: June 5, 2019                                  Respectfully submitted,


By: /s/ Michael A. Holt

Michael A. Holt
mholt@fisherphillips.com
Florida Bar No.: 91156
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

Tristan Morales (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2019, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
     MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983

Noel C. Pace, Esq.
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@fisherphillips.com
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709

Mark W. Robertson, Esq.
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

Tristan Morales, Esq.
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
(Service via CM/ECF)

*Counsel for American Airlines, Inc.*