UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 17-60533-CIV-MARTINEZ-OTAZO-REYES

Lt. Col. RODNEY SCOTT PATTERSON,

      Plaintiff,

v.

AMERICAN AIRLINES, INC,

      Defendant.

_____/

FILED BY_____D.C.

JUL 09 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**<u>LT. COL. RODNEY S. PATTERSON'S MOTION FOR SANCTIONS AGAINST
AMERICAN AIRLINES AND ITS ATTORNEYS, STAY OF THE CASE PENDING
RESOLUTION OF THE MOTION AND REQUEST FOR ORAL
ARGUMENT/HEARING</u>**

### *1. Introduction and Background*

Plaintiff, Lt. Col Rodney S. Patterson, respectfully submits this motion for Sanctions against American Airlines and its Attorneys for failure to make disclosures or to cooperate in discovery under Rule 37 of the Federal Rules of Civil Procedure and has brought this action against American Airlines Group, Inc. and its wholly owned subsidiary, American Airlines, Inc. under the Uniform Services Employment and Reemployment Rights Act ("USERRA") 38 U.S.C. §§ 4301 et seq.  Patterson is an American Airlines pilot and a retired Lieutenant Colonel in the United States Army Reserve. He claims his substantive rights granted by USERRA were violated and that he was subjected to discrimination and retaliation as a direct result of his performing service in the uniformed services from September 22-25, 2015. That period of service was a motivating factor in American's alleged unlawful actions in the form of an investigation to attempt punishment and the subsequent use of derogatory allegations obtained from still unidentified individuals to provide a fig-leaf of justification for a mental health evaluation when punishment failed.

Patterson provided verbal notice of military service to his employer, which was acknowledged by his supervisor James Bonds.  Captain Bonds then demanded orders from Patterson [not required under USERRA per 20 C.F.R. 1002.87 and facially violates 38 U.S.C. 4302(b)] [1] as a prerequisite to his absence for military service during a critical four-day period. [2] Bonds further expressed displeasure at the prospect of Patterson's absence during this critical manning period. Bonds displeasure soon morphed into anger after another management pilot David Tatum sent Bonds an email that they [AA management] got "played". [3] Patterson was issued a leave and earnings statement (See Exhibit 1) of which he provided an extract to Bonds to document his service (See also attached Record of Performance, Exhibit 2) (note--this documentation is not required to be given to an employer per 20 C.F.R. 1002.121 for a four-day absence.  It is in evidence in this action for the court to consider, not for defendant AA to accept or reject).  Bonds demands to produce documentation in violation of 20 C.F.R. 1002.121 continued

---

[1] The legal maxim "expressio unius est exclusio alterius", clearly applies here. That maxim has been defined as follows: "Expression of one thing is the exclusion of another. ... Mention of one thing implies exclusion of another. ...When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred." Black's Law Dictionary, Revised Fourth Edition, page 692 (internal citations omitted).

[2] The words of USERRA must be construed liberally in favor of those in the uniformed services. Gordon, 388 F.2d at 81.  USERRA is defined by 38 U.S.C. §§ 4301, et seq and the implementing regulations under 20 C.F.R Part 1002.

[3] Military service is not a game, the language of USERRA is plain.  Patterson met the requirements under USERRA to assert his rights granted by Congress.

through late October, 2015. Bonds repeats a chain of lies in his deposition to cover up for his unlawful demands and harassment of Patterson, "if you can produce some umm orders". (See Exhibit 3) Bonds left an audio message which conveys the context supporting Patterson's harassment claims under USERRA. Bonds would have the court believe his unlawful demand was simply ignorance by stating I said "please". [at 82-8] However, ignorance was no excuse for violating the law and the act of demanding orders was unlawful regardless of whether he said please. The pilot's collective bargaining agreement is superseded by USERRA [20 CFR 1002.7]. Bonds in his mind, could request documentation, however under USERRA, Patterson was not obligated to comply with Bond's request for duty periods less than 30 days. When that request for documentation crossed the line of demanding under threat of disciplinary action, then that act was unlawful. (See Exhibit 4) Bonds further intends to deceive the court by stating that Patterson's response was tardy [ECF 127-1 @ 87-23]. An unlawful demand can in no way be considered tardy further misleading the Court that Patterson was involved in errant behavior regarding his military service. Bond's documentation demand under threat of punishment was unlawful. Even if the period of service was greater than 30 days, the employer is not permitted to demand documentation that does not exist or is not readily available and the employee is not liable for administrative delays in the issuance of military documents [38 USC § 4312 (f)(4)] [20 CFR § 1002.122]. This is clear evidence that American acts with reckless disregard for every provision of USERRA.

On or about September 24, 2015, Bonds notified Patterson that he was being placed on "paid withheld" (a paid administrative leave status where Patterson had reduced responsibilities, no ability to work overtime, among many reductions in the status he left with on September 22, 2015) pending an investigation into a Workplace Environment Harassment Complaint filed by a thoroughly discredited co-worker who had made almost identical complaints for months. (that complainant was Glenn Whitehouse, who regurgitated a March, 2015 complaint, resurrected to be used as a convenient weapon against Lt. Col. Patterson.

Patterson completed his military service on September 25, 2015. Bonds later admitted lurking discriminatory motives in his deposition, that "he didn't like the way Patterson was performing his military service" and "he was trying to teach Patterson a lesson". Bonds also admitted that American didn't have the money to charge Patterson's military absence to his accrued vacation balance (another substantive right granted under USERRA) (38 U.S.C. 4316 (d)),

(likely Bonds was referring to how his bonus would be impacted as a result of Patterson's military service). [ECF 127-1] Patterson was a regular line holder in September, 2015 and American called on a reserve pilot to cover Patterson's military service. Bonds made a "CatsPaw" [4] of American's upper management, who is liable under USERRA for the actions of its supervisor James Bonds. [5]

The so-called investigation was not a search for objective truth. [6] It was neither thorough nor independent. [7] American management was merely looking for derogatory information (if this seems unbelievable, see the DOT OIG Report, July 10, 2018) [8] (See Exhibit 5) It was in Bond's own words that he [Bonds] "smelled a Rat" (demeaning the service of the veteran). American, using inductive reasoning and ignoring all evidence contrary to that conclusion, proceeded in bad faith to harm Lt. Col. Patterson (see emails between upper management discussing how to best harm Patterson)(AA Production). When the Section 21 process failed because of the due process considerations inherent in that process, American then dubiously turned to the Section 20 process

---

[4] In the fable *The Monkey and the Cat* by 17th-century poet Jean de La Fontaine, a wily monkey convinces an unwitting cat to pull chestnuts from a hot fire. As the cat scoops the chestnuts from the fire one by one, burning his paw as he does so, the monkey eagerly gobbles them up, leaving none for the cat. Today, the term "cat's paw" refers to someone who is used by another to accomplish the other person's purposes.
https://www.apa.org/monitor/2011/06/jn
[5] Staub v. Proctor Hospital, 562 U.S. 411 (2011). In Staub, the Court held that "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA. A jury found that Staub's "military status was a motivating factor in [Proctor's] decision to discharge him" and awarded Staub over $50,000 in damages. The Supreme Court reversed the Seventh Circuit and upheld the validity of the "cat's paw" theory.
[6] *Fisher v. Lufkin Indus., Inc.,* No. 15-40428, 2017 WL 562444 (5th Cir. 2017), the U.S. Court of Appeals for the Fifth Circuit applied the "Cat's Paw Theory" to revive an employee's retaliation claim, finding the employer violated federal law when it fired the employee for selling pornographic DVDs on company time. The employee was protected from unlawful retaliation for having complained a month prior that he was subjected to discrimination by a supervisor who called him "boy", and the DVD sales were uncovered during a sting operation hatched by a disgruntled co-worker and supervisor who were upset with the employee for complaining about discrimination. USERRA allows military personnel and former military personnel to sue employers and actual employers for discrimination and adverse employment actions based on their military status. In effect, it recognizes military service and status as a protected class and gives this class standing
[7] in *Staub,* (*See Id*), Justice Scalia noted the similarity between USERRA and Title VII, further emphasizing the importance for employers of conducting a thorough analysis of all allegations, ***rebuttals and defenses*** [emphasis added] presented during an investigation. Congress added "terms, conditions, and privileges" of employment to the definition of benefits of employment to USERRA in 2011 (and VEVRAA) was Congress' way to add those covered by the two laws under Title VII of Civil Rights Act.
[8] The FAA inspector assigned to investigate the complaint had conversations with the head of the AA flight test program about "problem pilots," a reference to pilots who filed complaints. Rather than objectively review the basis for their complaints, as called for in FAA guidance, the inspector requested and received information from American Airlines that could have been used to discredit the pilots who voiced concerns.

which had no due process rights in order to reach its end goal. The DOT OIG, a government finder of fact has established that American engaged the FAA in a similar pattern of misconduct and caused the FAA to proceed in a like manner to cover up safety violations in that case [USERRA violations in this case], to avoid its obligations which endangered the flying public.

As a pretext to teaching Patterson a lesson, Bonds likely enlisted the assistance of Glenn Whitehouse, an AA Captain in Miami, to resurrect part of a stale, highly-inflammatory complaint which was investigated by AA Corporate Security on or about March, 2015. Bonds, a former reservist, probably knew his "get even" actions would be found unlawful if subjected to any scrutiny. Even so, he and Captain Brian Beach (Bond's boss) were made aware on or about September 28, 2015 that their get even scheme against Patterson was probably unlawful by Captain Brian Vitale (a veteran's rights advocate and AA pilot)(See Exhibit 6).

The two men at the heart of the actions against Patterson, complainant Whitehouse and Supervisor Bonds can't even agree on when they actually spoke to one another. However, their confusing testimony is clarified/belied by an email Bonds sent to his supervisors on or about September 6, 2015, in which he states that Whitehouse "literally chased him down in the (Miami) terminal" on that date to tell more stories (about Whitehouse's obsession with Lt Col Patterson).

Would Bonds deliberately fabricate an email to his bosses? Likely not, the two men met on more than one occasion. Whitehouse denied the meeting on Sept 6th, 2015 and lied in his deposition thus giving more credibility to improper underlying motives and an orchestrated effort by an angry manager to use the discredited and obsessed Whitehouse against Patterson in any way he could to cover up for his unlawful acts.

Bonds denies knowledge of the Whitehouse complaint until September 24, 2015, which is clearly false, and likely intended to deceive the plaintiff and this Court. Chief Pilots in the flight offices do not work in a vacuum, rely on clean records or operate ignorant of lurking discriminatory motives. In fact, Bonds sent an email (See Exhibit 7) to Captain Sammy Odeh, (APA professional standards) in October, 2015 in which he expresses direct knowledge of the Whitehouse complaint almost a year prior. Attached to the email was copied from flight attendant Bojedo relaying more information post facto. Bonds states to Odeh "More info for Patterson". Bonds clearly knew more

about Whitehouse than he falsely stated in his deposition. [9]  The email was sent to all chief pilots in the Miami flight office leaving Bonds assertions he knew nothing until September 2015 as baseless and pretextual.

Bond's trail of lies and deception also infected the American Airlines legal department who on February 29, 2016 sent a letter to Assistant Director/ Investigator for the U.S. Department of Labor Oscar G. Fuentes.  Lucretia Guia, Esq an attorney licensed by the North Carolina and Georgia Bar to practice law, lied to the investigator and these lies have not been corrected to this date. (See Exhibit 8)

LIE: "FO Patterson's complaint is specious; AA has not deprived him of any rights protected by   USERRA"

TRUTH: Bonds hadn't arrived at September 24, 2015 without committing a slew of unlawful acts under USERRA which violated Patterson's rights and speak directly to Patterson's harassment and discrimination claims under USERRA.

LIE: "Specifically on the day before a scheduled trip, FO Patterson contacted one of the chief pilots in MIA and asked for an "EO". "He told Captain Bonds that he wanted the EO because the captain on his trip…

TRUTH: This is an outright lie which was contradicted by Bonds later testimony (at 35-2) American has not provided any statement from the office staff in Miami to substantiate Bond's claims of what he heard. In fact, Bonds acknowledges in his voicemail that Patterson was requesting an "EO" (vacation) to cover his military leave.

Q.     And did you speak to Mr. Patterson that day?

A.     I did not. I called and left a voicemail with him.

LIE: Upon receipt of the Information, the Company took no further action relative to this military leave.  It took no disciplinary action and no reprisals related to this leave.

TRUTH:  American unlawfully threatened disciplinary action contrary to USERRA for Patterson not providing orders.  American has also taken further action when his now Chief Pilot sent Patterson a letter of investigation stating the USERRA matter was not over, and essentially American didn't care what the verdict of the Court was, American would proceed in a likewise fashion with reckless disregard for USERRA.

---

[9] Bonds deposition page 23, line 22 Bonds states he met Whitehouse one-time happenstance in the Atlanta Airport. Whitehouse alleges this meeting didn't occur until October, 2015 after he filed his complaint which is clearly contradicted by Bonds Sept. 6, 2015 email.  Whitehouse's regurgitated (March 2015) complaint was not happenstance it was well orchestrated.

LIE:  On or about September 24, 2015, however a pilot co-worker (Whitehouse, inserted for clarity) lodged a formal complaint regarding FO Patterson's conduct.

TRUTH:  Whitehouse lodged his formal complaint with AA in March, 2015 which was later considered, investigated and disregarded/unfounded by AA Corporate Security. Whitehouse's incoherent rant made its first appearance in March 2015 6 months later as Lucretia Guia wanted the Department of Labor to believe.  Brian Beach received the complaint from Whitehouse and forwarded it to Corporate Security.

That Corporate Security Investigation begun in approximately March, 2015 and culminated sometime after July, 2015 is the focus of this motion for Sanctions and other appropriate relief against American Airlines and its attorneys.  The Plaintiff respectfully requests this court grant leave to file this motion for sanctions in the interest of Justice and to fully vindicate veteran's rights. This matter isn't solely about the plaintiff.  It is about veteran's rights nationwide. If an employer, such as American, is allowed to withhold material evidence and make false statements with impunity to cover up USERRA violations it only promotes future unlawful acts and weakens our ability to serve and defend the nation.  It further relegates USERRA to a meaningless law for employers to scoff at. [10] Absent this protection reservists will cease to volunteer for military service.  The nation will be defended--albeit not with volunteers.  The significance of this issue to our service members warrants review of this issue as soon as practical. [11]

American Airlines deliberately concealed the existence of the March 2015, Corporate Security Investigation from Patterson and his union representatives in November, 2015. Ana Burke-Leon, AA HR likely knew of the investigation, yet intended to deceive Patterson and his representatives of its existence while seeking to rehash already unfounded allegations. Whitehouse's initial March 2015 complaint, an incoherent rant of some 12 pages of unsupported allegations (including multiple criminal allegations) which were later determined to be maliciously false, was submitted to Fred Rhonda [SIC] by Captain Brian Beach for inclusion in the ongoing

---

[10] Arroyo v Volvo, (7th Circuit, 2015), Hickle v American Multi-Cinema (6th Circuit, 2019)

[11] On March 22, 2011, the U.S. Court of Appeals for the Fifth Circuit issued a decision in *Carder v. Continental Airlines*, which held that USERRA, unlike Title VII, did not provide for a hostile work environment claim because the statute did not include the phrase "the terms, conditions, or privileges of employment" in its definition of benefits of employment. Less than nine months later, Congress amended USERRA, adding the same language used in Title VII, expressing its disagreement with what the Fifth Circuit did in the *Carder* case

March, 2015 investigation. (See Exhibit 9) The fact remains, the Whitehouse complaint was provided to corporate security, considered and obviously determined to be unfounded.

Whitehouse's complaint was investigated by Captain Danny Shellhouse. Captain Shellhouse determined Whitehouse fabricated almost all of his complaint. Shellhouse points out, for example, that Whitehouse alleges he has "super powers and can see through a steel jet bridge." Whitehouse went to great lengths to avoid being served for a deposition and after being legally served at his place of work, he complained to AA wondering why he wasn't somehow protected from process service while at work! (See Exhibit 10) American later falsely alleged that Shellhouse or Patterson violated company security policies for pilots looking up one another's schedules in an attempt to evade scrutiny of the Court. Is American stipulating to this Court that either Patterson or Shellhouse were not employees with legitimate access to other pilot's schedules? [12] Todd Jewett's declaration is patently false and cites no specific regulation or company policy, which would be superseded by USERRA at any rate. Pilots at American are able to see one another's schedule and this ability is inherent in the bargaining agreement to ensure fairness and that a junior pilot is not given preferential treatment over a more senior pilot. Even Whitehouse concedes that other pilots have access to his home address and flight schedule information through the APA website. (See Exhibit 11)(In this case Patterson needed Whitehouse's home address to serve him with judicial process and with the Article 7 Union Charges).

The Allied Pilot's Association Appeals Board later affirmed that Whitehouse's complaint was malicious, ill-willed (he intended to see Patterson harmed) and with no just cause. (See Exhibit 12) The Appeals board further pointed out that American was remiss in applying its own HR Policies. AA couldn't apply fair HR processes because the allegations made by Whitehouse were clearly and grossly false and inflammatory. Yet, later in 2015 AA proceeded in cat's paw fashion at the urging of the angry, vindictive Bonds, with reckless disregard for the truth and in bad faith as a pretext for its treatment of Patterson during and after his objectionable (to Bonds and AA) military service. A reasonable jury could read the March 2015 complaint and the subsequent Corporate Security Investigation and Report(s) and infer that Whitehouse's September 24, 2015

---

[12] Whitehouse was dodging service of process, Shellhouse was advised by numerous pilots who thought it odd that Whitehouse was changing out of uniform to avoid process servers outside US Customs when he returned to Miami. Whitehouse even appeared before a Notary Public some 150 miles north of his surgery center which he asserted to excuse him from being deposed.

complaint was ridiculous on its face and that American's subsequent actions were not objective, thorough, independent, but rather wholly invalid and pretextual.

### 2. *American Airlines Corporate Security Investigations/ Reports*

So, what is an AA Corporate Security Report/(investigation)?  American would have this Court believe it is a piece of paper in which all of the findings and conclusions are written, much like an offense report written by a local police department.  That simply is not the case.  American does use former police officers and investigators in its corporate security department to conduct investigations.  Corporate Security investigations are used to address a number of issues with employees and/ or customers of the airline including discrimination complaints.  Kathy Emery, a retired American pilot provided a statement (See Exhibit 14), which intonates far more involvement by management and employees than just a piece of paper in which American has suddenly developed corporate amnesia over its production.  Corporate Security Investigations/reports generate a far greater digital and electronic foot print than American would have this Court understand.  There are emails and other electronic data stored by American airlines which are crucial to the prosecution of this matter before the Court.  There would be travel records for the investigator and for possibly witnesses who make statement in such investigations.  A former Corporate Security Officer whom Patterson knows from his military experiences informed him that Corporate Security is a global organization and will fly to any location for its investigations.  In reality, there is more to this "Iceberg" of the Corporate Security Investigation than American is letting on or has provided the Court from which a reasonable jury could draw conclusions.

### 3. *Captain Brian Beach's Email and Deposition*

Brian Beach transmitted a copy of Whitehouse's (WH) complaint, (which he (WH) would later regurgitate for Bonds in September 2015) to Corporate Security in March of 2015.  Beach advised Corporate Security he was giving them the whole picture of Patterson.  This clearly states from Ricardo Garcia that Corporate Security was looking into the Whitehouse complaint.  One thing for sure, the investigator did see the Whitehouse complaint and therefore corporate security considered it as part of his investigation.  When questioned at his deposition about the investigation Beach replied it was "unfounded".

### *4. Ulterior Motives*

Whitehouse was useful to American Airlines in the context of a cover for Bond's desire to teach Patterson a lesson after not heeding Bond's attempt to veto a period of military service. Despite Corporate Security's unfounded findings according to Beach, American has proceeded in bad faith and to Patterson's detriment to suppress the testimony of the individuals involved, the documentation, the characterization of Whitehouse by Corporate Security (that clearly cannot be flattering). One management pilot, Mark Cronin, in an email put it this way…USERRA matters can get very sticky. American was aware of this and appears to have suppressed evidence necessary for a fair legal process. Any reasonable person, investigator or juror who reads the Whitehouse complaint and then objectively investigates that complaint would readily see it as an incoherent rant. The APA Appeals board, an independent administrative review certainly saw it that way and concluded that Whitehouse complaint was malicious, ill-willed and with no just cause. In fact, the appeals board sanctioned Whitehouse for his conduct. It was an independent and fair process because the APA represents both Patterson and Whitehouse. This was search for objective truth in stark contrast to American Airlines, who was only interested in derogatory information on Patterson. American must produce everything concerning that investigation in the interest of justice absent production, an adverse inference must be drawn that the information was not favorable to American Airlines.

### *5. Memorandum of Law and Supporting Facts*

The Plaintiff believes and asserts that the defendant American Airlines has engaged in a deceptive and unlawful pattern of subterfuge in direct violation of Rule 26 and Rule 37 of the Federal Rules of Civil Procedure and that the plaintiff has been substantively harmed by that conduct. Patterson in preparing his response and defense of American's motion for sanctions requested American to once again produce the Corporate Security (Report)/Investigation. American's lead attorney scoffed at this request and replied "there is no basis." Perhaps no basis for American to provide this information, as it would thoroughly undermine American's already weak answer for violating the substantive rights of Lt. Col. Patterson. Using American's own words, "Colonel Patterson is not expected to grope around in the dark in the hopes of stumbling onto the information" in the Corporate Security Report/Investigation, the information that

corporate security considered in formulating their findings (even if they considered and rejected that information or determined as false) Patterson has an absolute right to that information and when viewed in the light of American withholding that information from the Plaintiff it is hypocritical and sanctionable given the allegations that American has levied against the Plaintiff.

### (a) *Duty to Preserve, FRCP 37(e)*

A party must preserve documents and electronically stored information (ESI) when it reasonably anticipates litigation.

American Airlines has staff attorneys who advise management employees and by nature are well versed on litigation and should be on USERRA compliance. A Corporate Security Investigation/Report is hardly a document or data (ESI) that one would consider trivial. The results of said investigations may result in the termination or prosecution of individuals. Obviously two events which would certainly result in court proceedings. Therefore, a duty to preserve said information exists. The Corporate Security Investigation culminated approximately sometime after July, 2015. Patterson's union attorney notified American shortly after the September 24, 2015 administrative change in status. Patterson retained outside counsel who notified American there was pending litigation in September, 2015. American had ample notice it should reasonably anticipate the matter was going to litigation.

### (b) *Have the documents/ESI been lost? FRCP 37 (e)*

American Airlines according to its 30 B (6) representative Michelle Montgomery states:

Did you communicate with corporate security in 10:52:16
15 preparation for today's deposition? 10:52:19
16 A. Yes. 10:52:21
17 Q. With whom in corporate security did you 10:52:26
18 communicate in connection with today's deposition? 10:52:30
19 A. With Larry McLaughlin, the director of global 10:52:32
20 investigations. 10:52:39
21 Q. And what, if anything, did Mr. McLaughlin tell 10:52:40
22 you about the investigation? 10:52:50
23 A. He told me that because Mr. Garcia has passed 10:52:51
24 away, we don't have any records of that investigation in 10:52:59
25 detail. And he had no knowledge of anything more than what I already knew.

According to American Airlines representative information regarding the Corporate Security Report/Investigation have been lost (destroyed).

### (c) *Did American fail to take reasonable steps to preserve said data?*

This answer to this question is quite logical. Yes! And this wouldn't be the last time that American will develop Corporate Amnesia and lose its business records. American reports that it has lost the travel records of Patterson and his wife travelling to Washington, D.C. So, did Richard Garcia ever email a copy of that report or his findings to his boss or the chief pilot? The investigation continued through July, 2015 and the Whitehouse complaint resurfaced in September, 2015. American's corporate memory span is less than two months and files were not retained.

### (d) *Can the lost information be restored or replaced?*

Given that American has destroyed other records which support Lt. Col Patterson and his wife for travelling to Washington, D.C. in a blatant attempt to smear his military service on the Should we assume that American Airlines now buries the results of its Corporate Security investigations with the unfortunate and sad occurrence of its recently deceased employees? American has refused to produce this information provided a host of excuses which would not survive the scrutiny of a reasonable jury.

### (e) *Was there a specific intent to deprive the Plaintiff of the Corporate Security Report?*

American has motive to deny that information to the Plaintiff. Given that American clearly violated numerous sections of USERRA (well documented in the record for the Court) through its supervisor James Bonds in September, 2015 and American has subsequently committed further unlawful acts in violation of USERRA, therein lies substantial monetary motive both for Bond's and for the Corporation. The court may require the employer to pay the individual an amount equal to the amount of lost wages and benefits as liquidated damages. [20 CFR § 1002.312] Currently this amount could place American liable in the millions of dollars category.

### (f) *The Court should presume the information loss was "unfavorable",*

Given the foregoing reasons the Court has good cause to find, since the 30 (b)(6) corporate representative has asserted it was "unfounded" and no doubt unfavorable and unflattering to the complainant Whitehouse.

**(g) The Court may issue mandatory or permissive adverse instruction; or**

**(h)  Enter dismissal or default**

There is monumental financial motive for American to avoid producing the data and American has acted with reckless disregard for the law as demonstrated by Bonds and his supervisors. According to Captain Mark Cronin, the then number 2 pilot at American, "Well, USERRA is a set of guidelines that we try to adhere to." Cronin is unaware that USERRA is a law which demands strict compliance by employers. Do American's supervisors actually view USERRA more as guidelines than actual laws? Do American's attorneys view USERRA and FRCP as mere guidelines than actual laws? Cronin then states he recalls the September 6, 2015 email from James Bonds, regarding Whitehouse chasing him down in the (Miami) terminal. Bonds obviously did not fabricate his encounter with Whitehouse in the Miami terminal that date, but he did fabricate his happenstance meeting with Whitehouse being only once. Here again, clear motive and orchestration exists. American is reported to have over $800 million dollars per year in Federal government contracts. Under VEVRA these contracts stipulate certain obligations to veterans. Lt. Col Patterson is clearly a qualified veteran under the act. Avoiding its obligations to veterans appears to be American's stock in trade as AA has run afoul of this law when it attempted to toss Lt. Col. Patterson out on the street following its egregious USERRA violations. [13] American at every step of its process to cover-up its egregious USERRA violations has in fact avoided every obligation under Title 38 USC §§ 4301, *et seq* as amended and the September 24, 2013 implementing regulations [41 CFR § 60-300].

American has an obligation to preserve any and all information related to the Corporate Security Investigation. After being requested to do so refused on multiple occasions to produce

---

[13] The Vietnam Era Veterans' Readjustment Assistance Act prohibits federal contractors and subcontractors from discriminating in employment against protected veterans, and requires these employers to take affirmative action to recruit, hire, promote, and retain these veterans. As revised, the regulations strengthen the affirmative action provisions of the regulations to aid contractors in their efforts to recruit and hire protected veterans and improve job opportunities for protected veterans.

the information.  The defendant now alleges that the investigator is unfortunately deceased and took no reasonable steps to preserve that information, which cannot be restored or replaced through additional discovery and that the defendant's agents acted with the intent to deprive the plaintiff of the use of that deleted information. [14]  The far ranging scope of the investigation makes it more likely than not, American intended for Patterson to never have access to this information and went so far as to discard it in violation of its obligation to preserve.  When it comes to document filing, storage & retrieval, American Airlines is either woefully inapt, has poor procedures for the same or dare it be a corporate policy to hide or destroy evidence which it feels would be helpful to the plaintiff.

### 6.  *Additional Sanctionable Conduct and Retaliation by American Airlines*

On or about the eve of oral arguments for summary judgment, American's lawyers and senior American management officials sent two letters that repeated a series of threats of retaliation.  In fact, with one letter signed by American's Counsel Michael Holt is now accusing Lt. Col. Patterson of massive fraud on the Court for fraudulently performing military service or obtaining military leave and demands Patterson dismiss his USERRA lawsuit.  American Airlines now asserts that it has no (apparently never had) business records that demonstrate/show that Lt. Col. Patterson or his wife traveled to Washington, D.C. on its aircraft to complete his military duty as he attested to in his deposition and previous filings.  However, this new allegation is suspect and just another indication that American Airlines has "corporate amnesia" when it comes to securing and locating discoverable business records that would show Lt. Col. Patterson and his military service in any favorable light. (See Exhibit 15).  Hopefully the Court calls into question how American Airlines, the world's largest airline, cannot find its own discoverable corporate security report (or any evidence that it was ever viewed, discussed, or sent to anyone within the company, except by a now dead agent), and now, more recently, how American Airlines cannot find any records showing Lt. Col. Patterson or his wife traveling to/from Washington, D C. on multiple aircraft for him to perform his military duty.  Luckily, in the 21st Century, there are other reliable sources of evidence other than American Airline's now pattern of suspect record keeping.  For example, attached the Court will find a receipt for Lt. Col.

---

[14] First Financial Security, Inc. v. Freedom Equity Group N.D. Cal October 7, 2016

Patterson's purchase and use of American Airline's GoGo in-flight internet service, which can only be used, activated, and charged for to the customer, when the aircraft is flying above 10,000 feet. (See Exhibit 16). In addition, there is a receipt for a purchase at a convenience store kiosk (Say Si Bon) made by Lt. Colonel Patterson at the American Airlines gate (beyond the TSA security point) in the Washington-Reagan Airport, on a day that American Airlines now says it has "no record" of Lt. Colonel Patterson or his wife flying on.  As everyone knows, these are restricted areas and only employees of American or its contractors or passengers can be on aircraft or at the aircraft gates.  Access to these areas are obtained by boarding passes, scans of identification cards, etc. that are kept in multiple databases, but now American Airlines has no record of. (See Exhibit 17)  However, the use of these services and receipts places Lt. Colonel Patterson on-board an actual American Airlines aircraft and at an American Airlines aircraft gate on the date that now American Airlines states (in its threatening letters) that they have no business record of him flying on, where he is committing fraud on this Court. The "no record" statement now has two possible explanations for the Court's consideration:

   (1) AA destroyed the records in order to smear a decorated officer, defraud the court, intimidate a witness, and avoid scrutiny of their unlawful actions

   (2) AA's recordkeeping is so bad, and their management inept, the court cannot trust anything they say.  AA acts with "reckless disregard" for the truth, and in reckless disregard for veterans' rights.

This begs the question, if the Court does not step in and sanction American for losing discoverable business records in this case that may be favorable to the Plaintiff (the corporate security report and flight records), when would it?

What follows is a discussion of USERRA provisions regarding military service to inform the Court of the protections granted and the standing Patterson and all veterans enjoy from the law. 1). Patterson provided advance notice 38 USC Section 4312 (a) (1) / 20 CFR 1002.85, Notice may be either written or oral   2).  Patterson's service in this instance was for four days and did not exceed 5 years. Section 4312 (c) / 20 CFR 1002.99 - .103   3).  Service categories include Active Duty, Active Duty for Training, and Inactive Duty Training.  38 U.S.C. Section 4303, 13 & 16. Patterson's service to the nation was characterized as honorable.  Section 4304 / 20 CFR 1002.134

14

- .135 (There are four disqualifying conditions and none apply for re-employment rights  4).  The service member following a period of less than 31 days must report to his or her employer by the beginning of the first regularly scheduled work period that begins on the next calendar day following completion of service, after allowance for safe travel home from the military duty location and an 8-hour rest period.  Lt. Col. Patterson returned to work at American albeit to a reduced status, which American has admitted to this Court and this Court has stipulated as a violation of USERRA.  Bagnall v Sunrise, S.D. FL (Aug, 2011)  5).  Employers have the right to request that a person who is absent for a period of service of 31 days or more provide documentation.  Section 4312 (f) / 20 CFR 1002.121. 6).  If a person does not provide satisfactory documentation or it is not readily available or does not exist, the employer still must promptly reemploy the person (in the proper position, status and where ever the escalator may have taken the veteran).  "Anti-military animus" is a commonly misunderstood term.  It can mean someone outright hates the military as in the Vietnam Era protests, however a more subtle parlance is any attitude or action which interferes with a member's right to serve.  As in this case Bond's unlawful demands and veto attempts are clear anti-military animus.  Lt. Col. Patterson has thoroughly documented that he was entitled to re-employment in the proper position and status and has presented that evidence to American who continues to unlawfully reject that proof of service in furtherance of its own unlawful actions.

Now comes Captain Jeffrey Price, the Miami Director of Flight who sent a letter of investigation to Lt. Col. Patterson which was orchestrated my Michelle Montgomery, American's 30 (b) (6) deponent.  (See Exhibit 18) According to Bond's testimony the issue was closed on or about November, 2015 when Patterson met his unlawful demands to produce documentation. The February, 2016 to the Department of Labor states American closed the issue when Patterson sent Bonds an extract of his LES.

American now insinuates in its Section 21 letter to Patterson, it doesn't care what the decision of this court is or what USERRA dictates.  USERRA is a set of guidelines and not a law enforced by the Federal Courts, American intends to pursue its unlawful actions outside the Court. USERRA.  This letter is clearly a threat to Lt. Col. Patterson and further demonstrates that American is acting with reckless disregard for veteran's rights.  Such conduct is sanctionable and the Plaintiff respectfully request the court exercise its equity powers to enjoin American against

*15*

future acts of retaliation and to call into account these current acts which have occurred since filing of Patterson's original claims.

### 7. Conclusion and Relief Requested

American has demonstrated time and again through out this case that it will lie (Bonds/Whitehouse) to cover up its unlawful acts. Retaliation and "digging up dirt" are trademarks evident in this case and in the FAA DOT OIG report. American has demeaned the service of Lt. Col. Patterson by discrediting the nature of that service. If an employer is permitted to characterize the service of a veteran, it will promote further scoffing at the law and future unlawful acts. [15] The Plaintiff respectfully urges the Court to consider that, but not for American's bad faith actions to conceal the "Corporate Security Investigation" from the plaintiff, American's ever shifting excuses for violating USERRA are baseless, without merit. American had ample opportunity to correct its unlawful acts and comply with the strict language of USERRA. American improperly reemployed the Plaintiff by changing his status while the Plaintiff was absent for military service and this Court in agreement with a host of others has established precedent that doing so is a violation of USERRA. American knew that litigation was imminent and the actions of Lt. Col Patterson following the unlawful status change in Sept, 2015 were in anticipation of pending litigation with American Airlines over the USERRA matter.

The Plaintiff in good faith submits to the Court and believes that American Airlines has intentionally and with malice withheld pertinent and exculpatory evidence (the Corporate Security Report/investigation) from the Plaintiff to prevent its use in litigation, while pursuing sanctions against the Plaintiff and his attorneys. The USERRA violations remain to this date and have not been corrected. The timing of personal meetings and conversations are critical to this matter and establish the orchestration. There are a series of clearly false statements made by multiple deponents for American Airlines. The ensuing conduct by American and its attorneys following Bond's unlawful acts are reprehensible and sanctionable. Rather than correct the unlawful actions,

---

[15] Maxfield v. Cintas Corp. (8th Circuit, June 2007, No 06-2626) In Maxfield, attempting to discredit the nature of a veteran's service, as AA is doing in the Patterson case, actually helps to support the discriminatory motive on the part of the employer. Also Maxfield's use of Vacation time was addressed by the Court. The matter was remanded for trial.

16

American doubled down with a deception and cover up as well as attacks on the individual whose rights they had violated.

The plaintiff has been hindered by his former attorney in the production of records. After nearly 45 days, the Plaintiff's former attorney advised him they were reviewing the record and needed more time to ensure no other client files were comingled with his.

The Plaintiff reserves the right and requests the Court grant him forbearance to supplement this motion as that information becomes available.

The Plaintiff respectfully requests the following relief for American's egregious discovery violations and for pursuing what is akin to malicious prosecution and retaliation against the Plaintiff for asserting his substantive rights under USERRA.

1.  Dismiss American's Motion for Sanctions [ECF 154] and strike any associated responses in the record.

2.  Vacate the award of Summary Judgment in favor of American and order a trial by jury.

3.  Instruct the jury that loss or concealment of the Corporate Security Investigation was willful and deliberate.

4.  Instruct the jury that it must presume the lost information was unfavorable to American Airlines.

5.  Instruct the jury that the Corporate Security Investigation did consider Glenn Whitehouse's March, 2015 complaint by virtue of it being presented to Corporate Security for investigation.

6.  Order American to produce all information concerning the investigation and subsequent report(s) to Lt Col Patterson.

7.  Issue a bar preventing American from using any part of the Whitehouse Complaint or Corporate Security Investigation or fruits of a poisonous tree obtained following its unlawful acts at trial.

8.  Issue Sanctions as appropriate against American Airlines and its attorneys.

9.   Permanently enjoin American Airlines, its employees or agents from conducting any retaliatory behavior from protected activity under [38 U.S.C. § 4311] against Lt. Col. Patterson or his representatives for asserting his substantive USERRA rights. 38   USC   § 4323 (e). [16]

10.   Require American to pay the reasonable costs of Plaintiff's attorneys or former attorneys and deposition costs for deposing James Bonds, Brian Beach, Mark Cronin, Michelle Montgomery, and Glenn Whitehouse.

Dated July 5, 2019

Rodney S. Patterson, Lt. Col., Pro Se
1092 NW 139th Terrace
Pembroke Pines, FL  33028-2340
Scottpatterson247@gmail.com
(704) 231-0909 Cell

### *Certificate of Conferral*

The undersigned is the Pro Se Plaintiff in this matter before the court and is familiar with the foregoing document.  The plaintiff has in good faith attempted to confer with the defendant's

---

[16] American disregarded this provision of the law when it was improperly excused for targeting Patterson's union representative, Captain Danny Shellhouse who was assisting him with the prosecution of his case and entitled to the same protections under USERRA as a service member.

18

lead counsel, regarding disclosure or discovery of the Corporate Security Investigation initiated on or about March, 2015.  The defendant and its counsel failed to act (over 30 days) in an effort to obtain the answer or response to the plaintiff's request without court action.


Rodney S. Patterson, Lt. Col, Pro Se

### *Certificate of Service*

I Lt. Col Rodney S. Patterson, Pro Se Appellant hereby certify, that a true and correct copy of the foregoing was served by U.S. Mail on June 6, 2019 on all counsel or parties of record on the Service List Below.


Signature of Filer


### Service List

Michael A. Holt
mholt@fisherphillips.com
Florida Bar No.: 91156
FISHER & PHILLIPS LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
O'MELVENY & MYERS LLP
Time Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000


Tristan Morales (*Pro Hac Vice*)
tmorales@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300

*Attorneys for American Airlines, Inc.*

Karen Coolman Amlong
Florida Bar No: 275565
kamlong@TheAmlongFirm.com
AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida 33301-1154
Phone: (954) 462-1983
Fax: (954) 523-3102

William R. Amlong
WRamlong@TheAmlongFirm.com
AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida 33301-1154
Phone: (954) 462-1983
Fax: (954) 523-3102


Counsel for Amlong & Amlong, P.A.


Noel Christian Pace, Esq.
206 NW 91ST STREET
EL PORTAL, FL 33150-2259
Noel.c.pace.esq@gmail.com
(305) 219-1191