UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 17-cv-60533-MARTINEZ/OTAZO-REYES

RODNEY SCOTT PATTERSON,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

**The Amlong Firm's Rule 11 Motion re:**
**American Airlines, Inc.'s Motion for Sanctions**

**Introduction and Summary**

Amlong & Amlong, P.A., d/b/a The Amlong Firm, moves pursuant to Federal Rules of Civil Procedure 11(b) and (c) for the imposition of sanctions against the defendant, American Airlines, Inc., and its counsel, Michael Holt, Esquire, of Fisher & Phillips, LLP, for having filed American Airlines, Inc.'s Motion for Sanctions, DE 154, against not only the plaintiff, Rodney Scott Patteson, but also against The Amlong Firm, and its constituent lawyers, notwithstanding that:

    *First*, it was brought for an improper purpose;

**Second**, its claims and other legal contentions are not warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law, and

**Third**, its factual contentions do not have evidentiary support.

### Statement of Facts

This is an action brought pursuant to the Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA") in which defendant, American Airlines, Inc., and its counsel, Michael Holt, Esquire, of Fisher & Phillips, L.L.P., have filed a motion for discovery sanctions against not only the plaintiff, Rodney Scott Patterson, but also his counsel.

Although American and Mr. Holt state in the opening paragraph of the motion that

> Plaintiff Rodney Scott Patterson should be sanctioned for lying to American and this Court and for flagrantly disregarding basic discovery rules and obligations in an attempt to hide evidence. Plaintiff sought to prevent American and this Court (as well as the Federal Aviation Administration) from learning of Dr. Edwin Bercaw's March 2016 neuropsychological examination of Plaintiff and Dr. Bercaw's subsequent report because it undermines the fundamental narrative that Plaintiff has presented in this litigation[,]

it states in the body of the motion that

> American further requests that this Court award monetary relief jointly against Plaintiff **and his counsel** to reimburse American for the needless attorneys' fees and costs it incurred because of Plaintiff's prevarications and discovery abuses, specifically for: (1) obtaining the Bercaw report and accompanying materials; (2) the deposition of Dr.

> Caddy and the Daubert motion to exclude Dr. Caddy's opinion
> testimony; and (3) the deposition of Dr. Kay. . . .

Id. at 4 (emphasis supplied).

The lynchpin of American's argument is its assertion that following a

visit to Edwin Bercaw, Ph.D., for a second opinion that would contradict that

of John Knippa, Ph.D., a Long Beach, California, neuropsychologist,

> One month later, Dr. Bercaw sent Plaintiff his report, in which Dr.
> Bercaw raised concerns "potentially critical to flight performance" and
> recommended further review of Plaintiff by the Federal Aviation
> Administration.  Dr. Bercaw's report echoed the nearly identical
> concerns that led Dr. Knippa to conclude that Plaintiff was not fit to
> fly.

DE 154, at 1-2.

The primary evidence that "Dr. Bercaw sent Plaintiff his report" is an

April 22, 2016 e-mail string, disclosed during discovery by Isha Kochhar,

Esquire, an associate of The Amlong Firm, in which Dr. Bercaw said he was

forwarding the report to Lt. Col. Patterson, but to which Lt. Col. Patterson

responded with an e-mail stating to Dr. Bercaw that "[t]he file was not

attached."[1]

Lt. Col. Patterson testified at his deposition that he had never gotten a

copy of the report.   Patterson Deposition, at 343:13-344:2, 345:19-348:1.

The Amlong Firm has been unable to find any evidence that Lt. Col.

---

[1]The e-mail string is appended as Attachment 1.  Defendant's motion
incorrectly states that Dr. Bercaw sent the e-mail "to Plaintiff, Mr. Amlong
and Dr. Caddy."  DE 154, at 7.  The e-mail was sent only to Lt. Col.
Patterson, who forwarded it to Glenn R. Caddy, Ph.D., and the undersigned.

Patterson ever actually saw the report until American obtained it from Dr.

Bercaw by subpoena and filed it with the Court DE 53-3.

Miss Kochhar will testify at the hearing that she disclosed the April 22

e-mail, ***One***, based in what she understood as a firm policy of disclosing

everything, and, ***Two***, without discussing it with the undersigned.  The

undersigned will testify that The Amlong Firm never received the report via

e-mail,[2] and that The Amlong Firm's staff made repeated inquiries of

Comprehensive MedPsych Systems, Inc., Dr. Bercaw's former employer, in

an unsuccessful attempt to locate any e-mails transmitting the report.[3]

Glenn R. Caddy, Ph.D., the plaintiff's testifying expert, stated in a June 7,

2018 deposition that he had never seen a copy up until the time of that

deposition.  Caddy Depo,[4] at 6:23-7:2.  Kristie Caddy, Dr. Caddy's wife and

---

[2]The likelihood that The Amlong Firm would not have gotten a copy from Dr. Bercaw is enhanced by Lt. Col. Patterson's having instructed Dr. Bercaw, as the defendant's motion points out, DE 154, at 2, that he was "rescinding any authorization for you to send my records to anywhere other than to Dr. Caddy. . . ."  See April 22, 2016 e-mail, which plaintiff's counsel produced to defendant September 25, 2018.  DE 136-3, a copy of which is appended as Attachment 1 .  That explicit directive by Lt. Col. Patterson to Dr. Bercaw about not sending any information to American (as his employer, as opposed to being a defendant in a USERRA suit that would not be filed March 14, 2017) or the Federal Aviation Administration is external to this litigation.

[3]See September 26, 2017 e-mail string between Dr. Geoffrey Kanter, the president of MedPsych, and Karen Coolman Amlong, Attorney at Law, which is appended as Attachment 2 .

[4]The cover page and relevant testimonial pages of the deposition of Glenn R. Caddy, Ph.D., are appended as Attachment 4 .

office manager, will testify that she did not retrieve the telecopied report from her husband's office's digital telecopier system until August 31, 2018, when the undersigned—who had made repeated inquiries of both Dr. and Ms. Caddy concerning the whereabouts of the April 25, 2016 report, a copy of which is appended as Attachment 3—asked her (after learning from a subpoenaed copy of the report that it had been faxed) to check the generally untended telecopier.[5]

What Dr. Caddy did receive from Dr. Bercaw via e-mail was a May 6, 2016 letter[6] that characterized the examination of Lt. Col. Patterson by himself and a newly licensed resident psychologist who actually drafted the report,[7] as:

---

[5]The fax has a time legend of April 25, 2016.  There is no "cc" notation and no copy was e-mailed or telecopied to The Amlong Firm.  Lt. Col. Patterson states that he never received it, and the undersigned has been unable to prove otherwise, despite challenging him on the issue.  However, Lt. Col. Patterson did forward the undersigned on April 26 an e-mail to Dr. Caddy that stated, in pertinent part,

> Dr. Bercaw's report which is lacking and very weak needs to be re-done, but he is HIMS certified. I didn't compensate him for a report and work to be done by a resident.  Although we might succeed in Federal Court with the nature of your report which is the goal.

The e-mail, which is appended as Attachment 5 , was provided to defendant as an attachment to Plaintiff's Supplemental Notice of Production of Documents dated September 25, 2018.

[6]See May 6, 2016 letter from Dr. Bercaw to Dr. Caddy, which is appended as Attachment 6 .

[7]The licensing information on Francy Nathaly Fonseca, Psy.D.,
(continued...)

- having "found no certain evidence of a disqualifying mental or neurological condition for first-class medical certification as defined by Federal Aviation Regulations Part 67.107 and 67.109";

- documenting "findings in our evaluation [that] were generally positive, **with a passing CogScreen** (which is a validated battery of tests specifically designed to evaluate cognitive functioning in pilots)," (emphasis supplied) and

- acknowledging as to some less-than-clearly-acceptable results, that "[t]he aeromedical significance of these findings was uncertain in the context of the larger evaluation and his professional and military history."

Although the undersigned's contemporaneous billing records show that on April 23, 2016 he "[r]eceived and reviewed correspondence from Ed Bercaw, Ph.D., re: he will send records, underlying data to WRA and Dr. Caddy," there is no billing entry concerning actual receipt or review of any such records,[8] although such entries are (and were) a routine practice.

Lt. Col. Patterson's <u>pro se</u> Plaintiff's Response to Defendants (sic) Motion for Sanctions and Request for Other Relief, DE 194, contains a bizarre and untrue (at least as to Lt. Col. Patterson's having been "billed for receiving that report") passage on Page 15:

Plaintiff does recall seeing the email from Bercaw during the deposition.  Here again, American only provides the court part of the

---

[7](...continued)
downloaded from Florida Department of Health License Verification website,

https://appsmqa.doh.state.fl.us/MQASearchServices/HealthCareProviders/LicenseVerification?LicInd=8430&ProCde=2701&org=%20, last visited May 26, 2019, is appended as Attachment 7 .

[8]<u>See</u> May 16, 2016 billing statement, appended as Attachment 8.

story. That same email said no file attached as a simple reply. Neither American nor Bercaw have shown that the plaintiff received a copy.  Plaintiff downloaded a copy of the report from Pacer which American had uploaded.  Plaintiff also instructed Bercaw to forward a copy of the report to his attorney, William Amlong.  Plaintiff was billed for receiving that report and Bercaw was remiss in sending a copy of the report to Amlong.  Dr. Kay admitted in his deposition he had no information that Caddy, Amlong or the plaintiff had a copy of the report.

As is clear from the billing statement, Lt. Col. Patterson was not billed for The Amlong Firm's receipt of the Bercaw/Fonseca report.

Although plaintiff did "testif[y] at his March 2018 deposition that he had never visited Dr. Bercaw, [which p]laintiff's counsel indisputably knew that to be false," DE 154, at 18, Patterson corrected his testimony during that same deposition to admit that he had consulted with Dr. Bercaw —obviating any need to plaintiff's counsel to correct him during the deposition.  See Deposition of Rodney Scott Patterson, at 341:17-21, the cover page and relevant testimonial pages of which are appended as Attachment 9  .  Because no one from The Amlong Firm had ever spoken to Dr. Bercaw, no one within the firm had any idea at the time about the truth or falsity of Patterson's representations about Dr. Bercaw's willingness to be involved in litigation.

Although Ms. Kochhar neither held back production of the e-mail that Lt. Col. Patterson forwarded to The Amlong Firm, nor conferred with the undersigned as to whether Dr. Bercaw's report would have been privileged under Fed.R.Civ.P 26(b)(4)(D), the undersigned had an objectively good

faith belief that the report was privileged based on Dr. Caddy's repeated representations that he had never seen it nor considered it in formulating his expert opinion.  Although the objection to producing the report was belated, that is because the undersigned, *One*, had never worked with Rule 26(b)(4)(D) consulting expert before; *Two*, had never worked with a neuropsychologist before; *Three*, had nothing to do with commissioning Dr. Bercaw's examination of Lt. Col. Patterson, and, *Four*, had no idea what the report said (beyond the generally positive two page letter that Dr. Bercaw had sent to Dr. Caddy) until American subpoenaed it from Dr. Bercaw.

Following Dr. Bercaw's deposition, it was the undersigned who, *First*, furnished Dr. Bercaw's report to Gary Kay, Ph.D., the leading neuropsychologist whom Lt. Col. Patterson had visited without disclosing that he had been examined and tested by Dr. Bercaw, and, *Second*, withdrew Dr. Kay's report based on his initial examination as an exhibit in opposition to American's motion for summary judgment following Dr. Kay's deposition.

## Governing Legal Principles

Mr. Holt brought American's sanctions motion pursuant to the inherent powers of the Court, <u>see</u> DE 154, at 4 ("For the reasons detailed in this Motion, American now respectfully requests that this court, pursuant to its inherent powers, sanction Plaintiff for his conduct"), under which "[c]ourts have the inherent power to police those appearing before them."

Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017), citing Chambers v. NASCO, Inc. , 501 U.S. 32, 46.  As the Purchasing Power court noted, "[t]his power 'must be exercised with restraint and discretion' . . . ." Id.

"A court may exercise this power 'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Id., quoting Marx v. Gen. Revenue Corp., 568 U.S. 371, 382 (2013) (citing Chambers, 501 U.S. at 45–46).  "The key to unlocking a court's inherent power is a finding of bad faith."  Id., citing Sciarretta v. Lincoln Nat'l Life Ins. Co., 778 F.3d 1205, 1212 (11th Cir. 2015).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1320 (11th Cir. 2002), quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).  This distinguishes the grounds for exercise of a court's inherent powers from "other mechanisms," e.g., Federal Rule of Civil Procedure 11, which "impose[] an objective standard of reasonable inquiry which does not mandate a finding of bad faith."  Chambers, 501 U.S. at 47 (footnote and citation omitted).

An "inherent powers" movant bears the burden of showing either "direct evidence of subjective bad faith," i.e., "an attorney's conduct [that] is so egregious that it could only be  be committed in bad faith, <u>Purchasing Power</u>, 851 F.3d at 1224, citing <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 766 (1980) as "stating that inherent powers require a finding that "counsel's conduct . . . constituted or was <u>tantamount to bad faith</u>" (emphasis added by <u>Purchase Power</u> court).  Not even recklessness alone, without frivolousness or particular egregiousness, unlocks the "inherent powers" remedy.

Federal Rule of Civil Procedure 11(b), under which The Amlong Firm is moving, however, deems any attorney who "present[s] to the court a pleading, written motion, or other paper" to be "certif[ying] that to the best of the person's knowledge, information, and belief, formed after an inquiry, reasonable under the circumstances" that

> (1) it is not being presented for any improper purpose ...;
>
> (2) the claims ... and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[, and]
>
> (3) the factual contentions have evidentiary support . . . .

<u>Id</u>.

Although generally, "[i]f . . . the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the

violation," Rule 11(c)(1), there is a safe-harbor provision that renders the offense a nullity "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Rule 11(c)(2).

Rule 11 sanctions may also be imposed against a party "if she knew or should have known that the allegations in the complaint were frivolous." Byrne v. Nezhat, 261 F.3d 1075, 1117 (11th Cir. 2001), citing Worldwide Primates, Inc. v. McGreal, 26 F.3d 1089, 1093 (11th Cir. 1994).

Sanctions under the rule "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

"Improper purpose" can include a lawyer or a party's putting forth fanciful claims "to shake down his opponent and, given the expense of defending [any federal civil litigation], to extort a settlement."  Pelletier v. Zweifel, 921 F.2d 1465, 1522 (11th Cir. 1991) (referring to the expense of defending actions brought pursuant to the Racketeering Influenced Corrupt Organization Act).

### Applying the Law to the Facts in the Case at Bar

Although Lt. Col. Patterson did lie at his deposition, his lies were not sanctioned by his counsel, who would have had the duty (and had the

intention to) correct the untruths if Lt. Col. Patterson had not done so himself.

Regardless of what the Federal Aviation Administration requirements are, Lt. Col. Patterson had the right under Rule 26(b)(4)(D) to seek out a consulting expert (even if he did so without telling his lawyer in advance), whose report could have remained confidential.  Lt. Col. Patterson, once again without input from his counsel, chose to infect the expert report of Dr. Caddy, a clinical psychologist with no expertise in neuropsychology, by having Dr. Bercaw send Dr. Caddy a copy of the report in 2016—even though Dr. Caddy did not actually see the actual report until his deposition in 2018 and did not retrieve from his telecopier until August of 2018.  This Court held that Dr. Bercaw's report was discoverable, at which time The Amlong Firm ceased any resistance to American's obtaining it.  Up until that time, however, The Amlong Firm had an objectively reasonable, good faith belief that the report was protected by Rule 26(b)(4)(D), based on Dr. Caddy's representation that he did not consider it.

The Amlong Firm had nothing to do with Lt. Col. Patterson's contacting Dr. Kay (although it was supportive of his having done so once it found out), or failing to reveal Dr. Bercaw's testing of him to Dr. Kay.  It was The Amlong Firm that sent Dr. Kay the Bercaw report, and which withdrew Dr. Kay's earlier report as a summary-judgment exhibit.

None of The Amlong Firm's behavior can qualify as being in subjective bad faith, or so reckless **and** frivolous, as to qualify as sanctionable under the Court's inherent powers.

As it relates to The Amlong Firm:

**One**, Mr. Holt's motion on behalf of American is for the improper purpose of harassing Lt. Col. Patterson's lawyers;

**Two**, it does not comport with either current 11th Circuit law concerning a court's exercise of its "inherent powers," and

**Three**, there is no evidentiary basis for arguing that The Amlong Firm or any of its lawyers have operated in subjective bad faith, or in such a way that their behavior has been tantamount to bad faith.

## Conclusion

Based on the evidence proffered, the authorities cited and the arguments presented, The Amlong Firm and its constituent lawyers respectfully requests that this Court grant him an evidentiary hearing into this matter and, following such a hearing, award sanctions (i.e., the fees and costs that the have been expended to defend against this motion, jointly and severally against American Airlines, Inc., Michael A. Holt, Esquire, and Fisher & Phillips, LLP.

Respectfully Submitted,

/s/ William R. Amlong
WILLIAM R. AMLONG

Florida Bar No: 470228
WRAmlong@TheAmlongFirm.com
AMLONG & AMLONG, P.A.

Attorneys for Defendant
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida  33301-1154
(954) 462-1983

### Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by Electronic Delivery this 2nd  day of August, 2019, to all counsel of record and via U.S.Mail to Scott Patterson, 1092 NW 139th Terrace, Pembroke Pines, Florida 33028.

/s/ William R. Amlong
WILLIAM R. AMLONG

\\amlong3\cpshare\CPWin\HISTORY\190708_0001\1538.2B3