**Yasmin Harris**

---

| | |
|---|---|
| **From:** | Yasmin Harris <ypharris@theamlongfirm.com> |
| **Sent:** | Monday, July 09, 2018 3:40 PM |
| **To:** | 'William Amlong'; 'glenncaddy@gmail.com' |
| **Cc:** | 'jdaley@theamlongfirm.com'; 'kamlong@theamlongfirm.com'; 'Scott' |
| **Subject:** | 2219-00000 PATTERSON, SCOTT vs. American Airlines (WRA/KCA): Fax from Bercaw re PATTERSON, SCOTT vs. American Airlines |
| **Attachments:** | 180709 (PATTERSON) Fax from Bercaw's Office.pdf |

Here's the fax the records dept. sent me after my call I made asking for any correspondence.

**Yasmin P. Harris**
**Telephone 954.462.1983**
**Email: YPHarris@TheAmlongFirm.Com**
**Website: http://www.theamlongfirm.com**



500 Northeast Fourth Street, Fort Lauderdale, Fl 33301

**PLAINTIFF'S EXHIBIT 22**

Confidentiality Notice: This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

**From:** Yasmin Harris [mailto:ypharris@theamlongfirm.com]
**Sent:** Monday, July 09, 2018 2:54 PM
**To:** 'William Amlong'; 'glenncaddy@gmail.com'
**Cc:** 'jdaley@theamlongfirm.com'; 'kamlong@theamlongfirm.com'; 'Scott'
**Subject:** RE: Docs via FEDEX RE: Document from Bercaw re PATTERSON, SCOTT vs. American Airlines

Here's the federal express package we received via Dr. Caddy's office for Dr. Bercaw's records. We will process and forward copies to opposing counsel.

1

# Fax Transmission

**To:** Amlong & Amlong / Attn. Yasmin

**Fax:** 19544635008

**RE:** Rodney Scott Patterson

**From:** Comprehensive MedPsych Systems

**Date:** 7/9/2018 12:27:10 PM PDT

**Pages:** 11

### Comments:

Here is the previous fax sent to Dr. Caddy.

Lisa Golden / Comprehensive MedPsych Systems, Inc.
Medical Records Director
PH: 941/363-0878, ext. 2071
FX: 716/242-3360
Email: lisagolden@medpsych.net

NOTICE: The information contained in this transmission may be privileged and confidential, possibly including patient information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. Please contact the sender by reply email or telephone at (941) 363-0878 and destroy all copies of the original message. Nothing in this communication represents legal advice or opinion unless attributed to an attorney with his or her permission.

# - Fax Transmission

| | | | |
|---|---|---|---|
| **To:** | Glenn Caddy, Ph.D. | **From:** | CMPS - Medical Records |
| **Fax:** | 19547590020 | **Date:** | 4/25/2016 |
| **RE:** | Rodney Scott Patterson | **Pages:** | 9 |

**Comments:**

Please find attached the report requested for the above noted patient.

Lisa Golden / Comprehensive MedPsych Systems, Inc.
Medical Records Director
PH: 941/363-0878, ext. 2071
FX: 941/363-0527
Email: lisagolden@medpsych.net

NOTICE: The information contained in this transmission may be privileged and confidential, possibly including patient information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. Please contact the sender by reply email or telephone at (941) 363-0878 and destroy all copies of the original message. Nothing in this communication represents legal advice or opinion unless attributed to an attorney with his or her permission.

## Lisa Golden

**From:** Nextiva vFax [notifications@nextivafax.com]
**Sent:** Monday, April 25, 2016 3:56 PM
**To:** SRQ-Fax
**Subject:** Message Sent: 237640599 | 4/25/2016 12:47:25 PM PDT
**Attachments:** 237640599.PDF

**Delivery Information:**

| | |
|---|---|
| Message #: | 237640599 |
| Status: | Success |
| Sender Name: | CMPS |
| Sender Company: | CMPS |
| Sender Phone: | 941-363-0878 |
| Remote CSID: | 0 |
| Total Pages: | 9 |
| Start Time: | 4/25/2016 12:47:25 PM PDT |
| End Time: | 4/25/2016 12:55:33 PM PDT |
| Duration: | 7 min 35.549 sec |
| Delivery Count: | 1 |

**Recipient List:**
Glenn Caddy, Ph.D. - 19547590020

Click here to view this message online

Delivered by **Nextiva vFax**...                              *"When Every Fax Is Mission Critical"*

1

## GLENN R. CADDY, Ph.D., & Associates

One Financial Plaza, Suite 2010 – 100 Southeast Third Avenue
Fort Lauderdale, FL 33394 - Phone: 954-565-8850 • Fax: 954-759-0020

### AUTHORIZATION FOR RELEASE OF CONFIDENTIAL INFORMATION

The signature below authorizes the physician, hospital, psychologist or any other provider of medical or mental health related services or the provider of other specifically identified services to release the medical or health or other related records of myself or those of my minor child, or ward to Dr. Glenn Ross Caddy & Associates whose address is listed above.

PATIENT NAME: Rodney Scott Patterson  DOB: 11/8/67  SSN: _____

PROVIDER OR FACILITY NAME: Dr Edwin Barceew   DR Kaufor

PROVIDER ADDRESS: Sarasota, FL

PROVIDER/FACILITY PHONE: (941) 363-0878  FAX: (941) 363-0527 — 716-242-33

I understand that the above patient medical, mental health, school or other record may contain information concerning me or my child's or ward's psychiatric, psychological, drug or alcohol abuse, HIV/Acquired Immune Deficiency Syndrome and/or other related or unrelated conditions or information about school or other functioning. I further understand that with my explicit authorization this information may be further released upon request to any insurance company, health maintenance organization, preferred provider organization, the Federal Medicare, or any other health care payment agency. This information may also be released to any facility to which I am transferred if I so authorize. This authorization will automatically expire one (1) year from the date of my signature. I also may revoke this authorization at any time upon written notice to Glenn R. Caddy, Ph.D. and Associates Records Department. I acknowledge that such revocation will not be effective if Glenn R. Caddy Ph.D. and Associates has already acted in reliance upon this authorization. I hereby release Glenn R. Caddy, Ph.D. and Associates from any liability that may arise as a result of the use of the information released in accordance with this authorization.

DATA REQUESTED: X Entire File; ___ Intake & Discharge Summaries; ___ Testing/Raw Data
X Telephone Consult; ___ School Records; ___ Other (Specify):

Patient Signature: Rodney S Patter    Date: 4-20-2016    Guardian's Signature _____ Date _____

Witness Signature _____ Date _____    Released By _____ Date _____

TO RECEIVING AGENCY: This information has been disclosed to you from records whose confidentiality is protected. Any further re-disclosure is strictly prohibited. Florida Statutes, Chapter 455, Medical Practice Act, Section 455.241 Provides: "Any health care practitioner licensed pursuant to Chapter 458, 459, 460, 461, 462, 463, 464, 466, or 474 who makes a physical or mental examination of, or administers treatment to, any person shall, upon request of such person or his legal representative, furnish copies of all reports made of such examination or treatment ... The furnishing of such copies shall not be conditioned upon payment of a disputed fee for services rendered. Such records shall not be furnished to any person other than the patient or his legal representative, except upon written authorization of the patient. However, such records may be furnished without written authorization to any person, firm, or corporation which has procured or furnished such examination or treatment with the patient's consent or when compulsory physical examination is made pursuant to rule 1.360, Florida Rules of Civil Procedure, in which case copies of the medical records shall be furnished to both the defendant and the plaintiff."

# Comprehensive MedPsych Systems, Inc.



Geoffrey Kantor, Ph.D., ABN, ABPdN
*President*
American Board of Professional Neuropsychology
American Board of Pediatric Neuropsychology

Scott Kanter, MSA
*Chief Financial Officer*

Robert Stephenson, Psy.D.
*Chief Operating Officer*

John Meyers, Psy.D., ABN, ABPdN
*Clinical Director*
American Board of Professional Neuropsychology
American Board of Pediatric Neuropsychology

**FLORIDA- Sarasota**

*NEUROPSYCHOLOGY*

Nancy Parsons, Ph.D., ABPdN
American Board of Pediatric Neuropsychology
Paula Cooper, Ph.D., ABN
American Board of Professional Neuropsychology
Edwin L. Bercaw, Ph.D.
Kathy Baum, Ph.D.
Maryla Madura, Ph.D.
Jennifer Fleeman, Psy.D.
Hollie Dean Hill, Psy.D.
Nathaly Fonseca, Psy.D., Resident
Viviana Figueroa Bernier, Psy.D., Resident
Casey Dawson, Ph.D., Resident

*PSYCHIATRY* (Board Certified)

Diane Miller, M.D., ABPN
Steven Cohen, D.O., ABPN
Abdul Nadeem, M.D., ABPN
Kristine Vallrugo, M.D., ABPN
Jordana Hollen, M.D., ABPN
Mark Sylvester, M.D., ABPN, ABAM
Nicholas McKinnon, M.D., ABPN

*PSYCHOLOGY*

Wendy Sims, Ph.D.
Claudia Zsigmond, Psy.D.
Linda Brant, Ph.D.
Patricia Ryan, Ph.D.

*PSYCHOTHERAPY*

Raymond Roltman, D.Psa, LCSW
Janet Carlson, LCSW
Kenton Kauffman, LCSW
Catherine Luckner, LMHC
Gerald Rivera, LCSW
Marlene Larose, LMFT
Jennifer Barmash, LCSW
Patricia Musselwhite-Weaver, LMHC
Alan Vieira, LCSW
Doug Linder, LMHC, CAP

Florida
  Sarasota
  Venice
  Lakewood Ranch
  Bradenton
  North Port
  Sun City Center
  Port Charlotte
  Tampa
  St. Petersburg
  St. Augustine
  Ft. Myers

Alabama
  Mobile
  Fairhope

Indiana
  Indianapolis

## Neuropsychological Evaluation

Name: **Rodney Scott Patterson**
Date of Birth (Age): 11/08/1967 (48)
PI# 2242312
APP ID# 1995161311
Date of Evaluation: 3/21/2016

## Reason for Referral

Rodney Scott Patterson is a 48-year-old, right-handed, Caucasian man self-referred for a second opinion neuropsychological evaluation after he was mandated by his employer, American Airlines, to undergo a fitness for duty evaluation with Dr. John Knippa. Background information and history of presenting problems were obtained from a clinical interview with Mr. Patterson, as well as a review of FAA medical records received directly from the Aerospace Medical Certification Division.

## History of Presenting Problems

Mr. Patterson is a first officer pilot for American Airlines where he has worked for 16 years. He also serves as a Lieutenant Colonel in the U.S. Army Reserve and has 28 years of military experience. In September 2015, he requested to be released from employment for a military obligation. Rather than simply releasing him as required by federal law, Mr. Patterson reported he was suspended from American on 9/22/15 and was placed on paid but withheld status on 9/25/15 due to work-related complaints.

There was a Section 21 disciplinary hearing on 11/23/15 after complaints about his behavior surfaced following the request for military leave. Mr. Patterson explained he was accused of using derogatory terms towards a coworker; however, this accusation was reportedly not corroborated by the other pilot. Mr. Patterson also reported a work-related incident in 2014 during a flight to Paraguay. He reported having a disagreement with one of the flight attendants regarding placement of his wife's luggage, which he finally placed in the cabinet himself. The captain ordered Mr. Patterson off the bus when they landed because of the altercation earlier, and he had to take a taxi. Mr. Patterson was later accused of taking a picture of the flight attendant. The flight attendant reportedly wrote a letter to his

1090 South Tamiami Trail, Sarasota, Florida 34236
941.363.0878 (office) • 941.363.0527 (fax)
*www.medpsych.net*

supervisor regarding these incidents and Mr. Patterson believed the captain allowed the flight attendant to complain. There were also allegations that Mr. Patterson had attempted to smuggle illegal items. In response to these allegations of misconduct, Mr. Patterson met with the captain of professional standards to discuss this issue and agreed to be on a "do not pair" list with that captain. There were reportedly no grounds for action against him in the Section 21 hearing.

In January 2016, there was a Section 20 interrogatory hearing. According to Mr. Patterson, despite there being no issues raised by the Section 21 hearing, he was ordered to have a mental health exam, which he recently completed with Dr. John Knippa on 3/15/16 and 3/16/16. Mr. Patterson denied experiencing any cognitive changes or psychological problems. With respect to his mood, he denied experiencing significant emotional distress; however, he identified his recent suspension from work as a source of stress. He also reported waking up at night with racing thoughts regarding his job and noted getting approximately seven hours of sleep. He denied appetite changes and described his energy level as appropriate. At this point, he would like to put this situation to rest and return to work.

Per FAA medical records, Dr. Martin Dayton found Mr. Patterson capable of flying as a commercial airline pilot on 1/12/16 and noted his medical treatment should in no way affect his mental or cognitive abilities. Per records, on 3/2/16, he was granted authorization for special issuance of a medical certificate, which expires 1/31/17.

## Background Information

**Medical History**: He reported relatively good health. He had a previous diagnosis of sarcoma for which he underwent surgery in February 2015. Following this surgery he participated in alternative care for a couple of weeks in Mexico. His cancer is currently in remission. He also had a foot fracture in 2015 that healed normally. There is no known history of brain injury, stroke, or seizure disorder.

**Medications**: He is prescribed melatonin, which he takes as needed.

**Psychiatric & Substance Abuse History**: He denied history of psychiatric treatment or psychotherapy. He reported that given his involvement with the military he has undergone several psychological evaluations, all of which have been unremarkable. He endorsed only minimal alcohol use currently. He noted that following his cancer diagnosis he became more conscientious of his diet and refrains from alcohol consumption. History of substance abuse or drug use was denied.

**Developmental, Educational & Vocational History**: Mr. Patterson was born and raised in Charleston, North Carolina. He was mainly raised by his mother, until the age of nine, when she remarried. He then moved in with his maternal grandmother and lived there until he left for college. He denied history of developmental delays or learning disabilities. His school performance was described as average to above average according to the subject area. He earned a bachelor's degree with a double major in business administration and psychology and a master's degree in strategic studies. He joined the Army in 1987 and initially worked in artillery and as a paratrooper and later became a Lieutenant Colonel. He was in active duty for six years and has been in the Army Reserve since then. He worked as a police officer for three years

2

immediately after college. Subsequently, he trained as a pilot and worked at Mesa Airlines (1997-2000) where he was the director of pilot recruiting. He has worked for American Airlines for 16 years. Mr. Patterson denied any work-related infractions or issues in the military.

**Social & Family History**: Mr. Patterson has been married for 26 years and has two children. He reported good support consisting of family and friends. Familial medical history was unremarkable.

## Behavioral Observations

Mr. Patterson arrived 45 minutes late to the appointment. He flew himself into a local airport with his two children. He was apologetic and explained there was a delay in landing at the airport. Grooming, dress, and overall appearance were appropriate. He had a pleasant demeanor and was cooperative. There were no abnormalities of gait observed. His vision was adequate with prescription glasses and his hearing was also appropriate. He was fully oriented and his general mental status appeared normal. His speech was fluent and normal in rate, tone, and prosody. Comprehension was intact. He was alert and his thought processes were clear, without any evidence of disorganized or delusional thinking, and reflective of normal judgment, insight, and recall of personal history. His affect was euthymic and congruent with reported mood. He appeared to put forth good effort. He denied pain or discomfort; however, he reported mild fatigue towards the end of day.

## Procedures Administered
*indicates pilot norms were used from Kay, 2002

Clinical Interview
CogScreen-Aeromedical Edition
Integrated Visual and Auditory Continuous Performance Test (IVA+)
Wechsler Adult Intelligence Scale-IV (WAIS-IV)
Meyers Neuropsychological Battery (MNB) Selected Tests
    Taylor Complex Figure Test, Animal Naming, Controlled Oral Word Association Test,
    Auditory Verbal Learning Test, Finger Tapping Test*, Trail Making Test (TMT)*
Wisconsin Card Sorting test (WCST)*
Grooved Pegboard Test (Heaton et al., 2004 norms)
Paced Auditory Serial Addition Test-100 (PASAT)*
Stroop Color and Word Test (Golden, 1978)
Minnesota Multiphasic Personality Inventory-2 (MMPI-2)

## Assessment Results

*T-Scores are reported using the following descriptors, with the exception of WAIS-IV Index scores where conventional Wechsler ranges are used and capitalized (e.g., 90-109: Average).*

| | |
|---|---|
| *55 or higher: above average* | *30-34: mildly-to-moderately impaired* |
| *45-54: average* | *25-29: moderately impaired* |
| *40-44: below average* | *20-24: moderately-to-severely impaired* |
| *35-39: mildly impaired* | *19 or lower: severely impaired* |

3

**Effort & Validity**: Embedded validity checks within the test battery were passed, consistent with full effort on cognitive tests. However, his performance on the verbal memory domain may have been affected by fatigue, such as he noted feeling tired towards the end of the day. Additionally, it should be noted that Mr. Patterson completed a similar neuropsychological evaluation within a week of this evaluation; hence, there is the possibility of practice effects on some of the tests administered. However, alternate forms were used when possible (e.g., AVLT Form B, Taylor Figure, and CogScreen Session 2). There were no indications of overreporting; however, there was evidence of moderate defensiveness of personal shortcomings on the MMPI-2. Results were considered interpretable with caution.

**CogScreen**: The LRPV (Logistic Regression Estimated Probability of Brain Dysfunction) was 0.0432. This classifies him as having a low probability of brain dysfunction.

In comparison to a major U.S. carrier pilot group (ages 45-49), his speed of performance appeared average with three scores falling at or below the 15th percentile and two scores falling at or below the 5th percentile.

In terms of accuracy, his performance was average, with two scores falling at or below the 15th percentile. There were no scores falling at or below the 5th percentile.

Thruput scores (i.e., balance of speed and accuracy) appeared average with three scores falling at or below the 15th percentile and one score at or below the 5th percentile. Process scores were also average with two scores falling at or below the 15th percentile and one score falling at or below the 5th percentile.

Individual scores showed a weakness in math speed (but with above average accuracy), letter sequencing speed (but above average accuracy), visual attention and working memory, deductive reasoning, and mental flexibility.

The Taylor Aviation Factor Scores represent CogScreen factors identified as relevant to pilot-related tasks and validated with simulator performance. Mr. Patterson showed mildly-to-moderately impaired deductive reasoning, but above average motor coordination and visual learning and recall. Visual and psychomotor tracking accuracy was average. Cognitive speed and working memory, the most powerful predictor of overall flight performance, was average.

| Factor | T-Score |
|---|---|
| Attribute Identification | 33.02 |
| Motor Coordination | 55.69 |
| Visual Association Memory | 58.92 |
| Speed/Working Memory | 48.44 |
| Tracking | 53.84 |

**Global Cognitive Functioning**: Performance across all conventional neuropsychological tests (i.e., excluding CogScreen) was in the average range overall (Overall Test Battery Mean= 49), which is below his expected level based on his estimated premorbid level of functioning.

**Intellectual Functioning**: Intellectual aptitude as assessed by the WAIS-IV was in the High Average range (FSIQ = 116). There were no differences between his verbal comprehension,

4

perceptual reasoning, working memory, or processing speed, all of which were in the High Average range.

**Attention & Working Memory**: Performance in the domain of attention and working memory was in the average range (Domain T= 51). Performance on measures of working memory was High Average (WAIS-IV Working Memory Index= 117).

Maximum digit span was within expectations (8 digits). Initial recall of a 15-item word list was average (6 words). Focused attention in generating words that belong to a category (i.e., animals) was average. Sequencing of digits in forward, backward, and numerical sequence was above average. WAIS-IV mental arithmetic was also above average. Working memory on a paced serial addition task was above average.

Sustained attention on the IVA+ continuous performance test was below average for auditory attention to auditory targets and mildly impaired for visual targets. He displayed difficulty with sustained attention particularly to auditory stimuli and distractibility for both visual and auditory modalities. His response control throughout the test was mildly impaired for auditory targets and average for visual targets. In addition to variable reaction times, he also exhibited mildly impulsive responding to auditory foils.

**Processing Speed & Cognitive Flexibility**: The domain of processing speed and cognitive flexibility was significantly variable (Domain T= 46). The WAIS-IV Processing Speed Index was High Average (PSI= 111).

Information processing speed on a digit-symbol substitution task was in the average range. Symbol search was in the above average range. Resistance to the effects of interference on the Stroop task was above average. Visual scanning and sequencing on a visual-motor task (TMT Part A) was in the above average range. Cognitive flexibility in shifting between two sequences on TMT Part B (i.e., numbers and letters) was also above average in time to completion. In contrast to these normal range scores, the number of perseverative responses made during the WCST was severely impaired compared to pilot norms.

**Language & Verbal Reasoning**: The domain of language and verbal reasoning was average (Domain T= 52). The WAIS-IV Verbal Comprehension Index was High Average (VCI= 110).

Naming of visual objects on the Boston Naming Test was average. Fluency on a test of generating words beginning with a certain letter (i.e., F-A-S) was below average. Vocabulary was found to be average. His fund of general declarative knowledge was above average. Verbal reasoning on the Similarities test was average.

**Visual Reasoning**: Visual reasoning was average (Domain T= 52). The WAIS-IV Perceptual Reasoning Index was High Average (PRI= 115).

Construction of match-to-sample block designs was above average. Nonverbal logical reasoning of patterns on Matrix Reasoning was average. Visual synthesis and mental rotation on the Visual Puzzles test was above average. Copy of a complex figure was average. Total errors made during the WCST was mildly-to-moderately impaired, though he completed all 6 categories.

5

**Verbal Memory**: Verbal memory performance was mildly-to-moderately impaired (Domain T= 33).

Acquisition of a 15-item word list across five trials was mildly-to-moderately impaired in total number of words recalled. He recalled 6, 6, 6, 7, and 7 words each trial. His recall of the list after a brief delay with interference was also mildly-to-moderately impaired (5 words recalled). Recall after a 30-minute delay was moderately impaired (4 words recalled). Discrimination of list words from non-list words on the recognition trial was below average (13 words correctly recognized; 5 false positive errors).

**Visual Memory**: Visual memory performance was above average (Domain T= 61).

Free recall of the complex figure was above average after a short delay. His reproduction of the figure after a 30-minute delay was also in the above average range. Recognition performance was average (21/24 correct).

**Motor**: Manual motor skills were within normal limits (Dominant Hand T= 53; Non-Dominant T= 50), with no lateralized differences.

Finger tapping speed was in the average range using both his dominant (right) and nondominant hand. Manual motor speed and dexterity on the Grooved Pegboard Test was average, bilaterally.

**Executive Functions**: Performance was average on measures within the battery tapping executive functions (Domain T= 49). He exhibited above average visual-spatial reasoning and mental flexibility and average verbal reasoning, visual response control, and visuoconstructional planning/organization. However, he demonstrated impaired problem-solving in response to feedback and inconsistent response times on the continuous performance task.

**Psychological Assessment**: Mr. Patterson completed the MMPI-2, an objective measure of psychological and personality functioning. He responded consistently to item content and there was no evidence of exaggeration of problems. There was however, an indication of an overly positive self-presentation and moderate defensiveness of personal shortcomings, such as he may have minimized psychological and behavioral difficulties. There was no denial of moral flaws and the pattern of validity scales did not provide strong evidence of response bias given the context of the evaluation. The resulting MMPI-2 profile was deemed interpretable, but with caution, as potential difficulties may be underestimated or go undetected.

On the MMPI-2, his response pattern indicated he is sociable and extroverted. He appears to be psychologically well adjusted and capable of coping with problems. There were no indications of personality disorder, mood disorder, or substance abuse problems.

## Interpretation & Recommendations

Mr. Patterson's neuropsychological profile indicates high average intellectual functioning but with overall performance within the average range. He scored well on the CogScreen and produced a low LRPV (consistent with a low likelihood of brain dysfunction). Although his cognitive profile was predominantly within normal limits, there were a few areas of lower than

6

expected performance that may be of aeromedical significance, in the areas of deductive reasoning and sustained attention. His scores also suggested insufficient learning and poor recall of information presented verbally. It is possible that he is experiencing difficulties with verbal memory; however, his scores may have also been affected by fatigue. He specifically noted feeling tired when this test was administered towards the end of the long evaluation day.

The findings are not necessarily clinically significant at this time, in the context of his otherwise average to above average performance on tests of visual memory, auditory attention, working memory, language, psychomotor processing speed, motor functioning, and visual-spatial reasoning. The clinical recommendation is that he have neuropsychological testing in six months to help determine the reliability and significance of the aforementioned findings.

Assessment of his psychological functioning indicated he is not reporting emotional distress or other indications of psychopathology. He appears well adjusted and to have high self-efficacy. He was motivated to present himself favorably. This is not unexpected given the employment context prompting this self-referral. There was nothing in his medical records to indicate the presence of a disqualifying mental condition, and no records of formal complaints about his behavior were included for review.

With respect to his airman medical certification, there are several positive cognitive and psychological attributes identified by the testing, as indicated above. His overall performance on the CogScreen was within normal limits, which is favorable; however, his scores evidenced mildly-to-moderately impaired deductive reasoning in comparison to aviators. The deductive reasoning finding was later replicated with the WCST, a similar task. These findings raise concern about how adaptable or flexible he is to feedback about his performance. This quality is potentially critical to flight performance, particularly in non-routine situations. Therefore, further review of these data by an FAA neuropsychologist is recommended to determine the aeromedical significance to piloting skills. A comparison of these results with his previous fitness-for-duty neuropsychological evaluation may also be helpful, as this was not available to us.

It has been a pleasure to provide this evaluation for Mr. Patterson. We may be reached at (941) 363-0878 for further consultation on this case.

_____
Edwin L. Bercaw, Ph.D.
Licensed Psychologist/Neuropsychologist
FL License Number: PY 7991
CogScreen Provider & HIMS Trained

_____
Nathaly Fonseca, Psy.D.
Post-Doctoral Neuropsychology Resident
FL License Number: PY 9471

7