**Yasmin Harris**

| | |
|---|---|
| **From:** | William Amlong <wramlong@theamlongfirm.com> |
| **Sent:** | Wednesday, September 12, 2018 5:13 PM |
| **To:** | WINMail@aol.com |
| **Cc:** | 'Yasmin Harris'; 'Scott' |
| **Subject:** | 2219-00000 PATTERSON, SCOTT vs. American Airlines (WRA/KCA): |
| **Attachments:** | 180912 Kay-related pages from Deposition of Edwin Bercaw , Ph.D..pdf |

Dr. Kay –

Here are the portions of Dr. Bercaw's deposition where he discussed you your testing of Scott. I've marked the beginning and end of the Kay portions with yellow highlight.

Bill

William R. Amlong, Esquire



500 Northeast Fourth Street, Fort Lauderdale, Fl 33301

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail.  If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.



PLAINTIFF'S EXHIBIT 30

1

**Yasmin Harris**

| | |
|---|---|
| **From:** | William Amlong <wramlong@theamlongfirm.com> |
| **Sent:** | Wednesday, September 12, 2018 5:24 PM |
| **To:** | 'WNIMail@aol.com' |
| **Cc:** | 'Karen Coolman Amlong'; 'Yasmin Harris'; 'Scott' |
| **Subject:** | 2219-00000 PATTERSON, SCOTT vs. American Airlines (WRA/KCA): |
| **Attachments:** | 180912 Dr. Bercaw's file for Dr. Kay.pdf |

Dr. Kay –

Here are Dr. Bercaw's records.  I am separately sending an excerpt from his deposition where he compares his test results to yours.

Thanks,

Bill Amlong

William R. Amlong, Esquire



500 Northeast Fourth Street, Fort Lauderdale, Fl 33301

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail.  If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

**Yasmin Harris**

---

| | |
|---|---|
| **From:** | William Amlong <wramlong@theamlongfirm.com> |
| **Sent:** | Wednesday, September 12, 2018 5:26 PM |
| **To:** | WNIMail@aol.com |
| **Cc:** | 'Karen Coolman Amlong'; 'Yasmin Harris'; 'Scott' |
| **Subject:** | 2219-00000 PATTERSON, SCOTT vs. American Airlines (WRA/KCA): |
| **Attachments:** | 180912 Kay-related pages from Deposition of Edwin Bercaw , Ph.D..pdf |

Here is the Kay excerpt from the Bercaw deposition.

Bill

William R. Amlong, Esquire



500 Northeast Fourth Street, Fort Lauderdale, Fl 33301

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail.  If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

```
                                                                    109
 1              MR. HOLT:  Objection to the form.
 2   BY MR. AMLONG:
 3       Q   Did you find -- did you find anything about
 4   Lieutenant Colonel Patterson, in March 2016, that would
 5   make you question whether or not he should have a
 6   first-class airman's certificate?
 7              MR. HOLT:  Objection to the form.
 8              THE WITNESS:  Based on the CogScreen alone?
 9   BY MR. AMLONG:
10       Q   Based on the whole thing.
11       A   On the whole thing?  There were a few
12   concerns, yes.  As mentioned with the verbal learning
13   and memory, which I find may not be entirely reliable.
14   But the sustained attention and the executive, the
15   attribute identification part of it, that did raise a
16   concern.
17              As I said in my report, it wasn't enough to
18   completely dismiss his candidacy for it.  But it
19   required further investigation.
20       Q   Well, are you saying he was -- are you saying
21   definitively that he was not fit for duty in March 2016?
22       A   I didn't say that definitively.  When I can
23   make a definitive statement, I do.  But in this case, I
24   did not.
25       Q   You have a copy of Aeromedical Psychology in
```

[8/16/2018 1:30 PM]  Edwin Bercaw , Ph.D.

110

1    your office, don't you?
2         A    Yes.  Uh-huh.
3         Q    Do you consider it authoritative?
4         A    Yes.
5         Q    Do you consider Dr. Kay to be an expert in the
6    field of CogScreen testing?
7         A    Yes.
8         Q    Because he wrote it?
9         A    Yeah.  He developed it over many years, put a
10   lot of work into it.  And he knows everything there is
11   to know about it.
12        Q    And you recommended that further review of
13   these data by an FAA -- let me read the whole thing.
14             [As read]:  With respect to the airman medical
15   certification, there's several positive cognitive and
16   psychological attributes identified by the testing as
17   indicated above.  His overall performance on the
18   CogScreen was within normal limits, which is favorable.
19   However, his scores evidenced mildly to moderately
20   impaired deductive reasoning in comparison to aviators.
21             [As read:]  The deductive reasoning finding
22   was later replicated with the WCST, a similar task.
23   These findings raise concern about how adaptable or
24   flexible he is to feedback about his performance.  This
25   quality is potentially critical to flight performance,

```
                                                              111

 1    particularly in non-routine situations.

 2            [As read:]  Therefore, further review of these

 3    data by an FAA neuropsychologist is recommended to

 4    determine the aeromedical significance to piloting

 5    skills.  A comparison of these results with his previous

 6    fitness for duty neuropsychological evaluation may also

 7    be helpful, as this is not available to us.

 8            Did I read that correctly?

 9       A    Yes.

10       Q    Are you aware that Lieutenant Colonel

11    Patterson visited in June --

12            MR. PATTERSON:  July.

13            MR. AMLONG:  Hmm?

14            MR. PATTERSON:  July 1st.

15    BY MR. AMLONG:

16       Q    July 1st of 2016 with Dr. Kay?

17       A    I'm aware of it, but I don't know any details.

18       Q    Okay.  Let me mark -- let me mark the report

19    as Defendant's 1 and the CogScreen table as

20    Defendant's 2.

21            MR. HOLT:  I don't think you should mark it as

22       Defendant's 1 and 2.

23            MR. AMLONG:  I'm sorry.

24            MR. HOLT:  But do you want to use 11 and 12 to

25       be consistent?
```

112

1           MR. AMLONG:  Sure.  Sure.
2           (Exhibit 11 was marked.)
3           (Exhibit 12 was marked.)
4           MR. HOLT:  So, you want the report and the
5      CogScreen as 11 and 12, respectively.
6  BY MR. AMLONG:
7      Q   Why don't you take a moment.  And we'll go off
8  in order to not have dead air.
9           THE WITNESS:  All right.  I would like to take
10     a break, then, before I review this.
11          MR. PATTERSON:  Yeah.  That's fine.
12          THE VIDEOGRAPHER:  At 5:17 p.m., we are going
13     off the record.
14          (A brief recess is had from 5:17 p.m. to 5:28
15  p.m.)
16          THE VIDEOGRAPHER:  We are on the record at
17     5:28 p.m.
18  BY MR. AMLONG:
19     Q   Dr. Bercaw, have you had a chance to review
20  the report and CogScreen-Aeromedical Edition Test
21  Results done by Dr. Gary Kay?
22     A   Yes.  I read the report.  I'm glancing through
23  this CogScreen right now, yes.
24     Q   Before we get to that, I just wanted to make
25  sure.  As far as your March -- based on your March 21st

[8/16/2018 1:30 PM] Edwin Bercaw , Ph.D.

```
 1    examination, you cannot say one way or the other whether
 2    or not Lieutenant Colonel Patterson was fit for duty as
 3    an American Airlines pilot; correct?
 4            MR. HOLT:  Object.  Objection to form.
 5            THE WITNESS:  That is correct.  I did not say
 6        one way or the other.
 7    BY MR. AMLONG:
 8        Q    And based on your review of the objective
 9    results in Dr. Knippa's report, can you say whether that
10    justifies one way or another a finding of his being not
11    fit for duty?
12            MR. HOLT:  Objection to form.
13            THE WITNESS:  I see that Dr. Knippa raised
14        some important concerns.  Whether that was
15        sufficient for determining that he was not fit for
16        duty, I don't know.  I think it's a little hard for
17        me to say, having not done the evaluation myself.
18        But, you know, he did raise some concerns.
19            I feel that his evaluation and mine shared
20        some consistencies there.  So, in looking at both
21        reports, I would say there are concerns that need
22        to be further evaluated.  I would have preferred
23        that these evaluations didn't take place so close
24        together.  And in Gary Kay's evaluation, I see that
25        he was not aware of my evaluation.  So, there was
```

114

1     some -- he didn't have all the information
2     available to him.
3 BY MR. AMLONG:
4     Q    Is there anything in Dr. Knippa's report that
5 would suggest to you that Lieutenant Colonel Patterson
6 was not fit for duty?
7     A    Well, he found that there were some problems
8 with sustained attention. He found that there were some
9 problems with the attribute identification. And he
10 didn't perform quite as well as expected on the category
11 test, which is another test of conceptual reasoning.
12     There was low performance on Trail Making B,
13 which suggests some difficulty with mental flexibility,
14 again. So, I think he did have some evidence that
15 should have raised concern, yes.
16     Q    The question was, is do you believe that,
17 quote, he classified him as being fit for duty.
18     MR. HOLT: Objection.
19 BY MR. AMLONG:
20     Q    You're aware of that; correct?
21     A    Who?
22     Q    Dr. Kay.
23     A    Dr. Kay did, yes. I see that, yes.
24     MR. HOLT: I'm sorry. Did you say classified
25     him as fit or not fit?

115

1       MR. AMLONG:  Fit.
2       THE WITNESS:  Yeah.  I thought we were talking
3    about Dr. Knippa's report.
4       MR. HOLT:  Oh, I'm sorry.
5       MR. AMLONG:  No, no, no.
6       MR. HOLT:  Me too.  I was on the wrong doctor.
7    I apologize.
8       MR. AMLONG:  Did I say -- did I say Knippa
9    before?
10      MR. HOLT:  You didn't.
11      MR. AMLONG:  Read that -- let's start over
12   again.
13 BY MR. AMLONG:
14   Q   Having read Dr. Gary Kay's report, do you see
15 anything in there that would indicate that Lieutenant
16 Colonel Patterson was, at the end of June, beginning of
17 July 2016, unfit for duty?
18   A   No.
19   Q   You said that you did not believe that
20 Lieutenant Colonel Patterson could perform the essential
21 functions of the job as an American Airlines pilot.
22       Do you recall that testimony?
23   A   Yes.
24   Q   How are you familiar with the essential
25 functions of the job of an American Airlines pilot?

[8/16/2018 1:30 PM] Edwin Bercaw , Ph.D.

                                                                116

1    A    I made that statement in regard to the
2    cognitive features that I saw in both my evaluation and
3    John Knippa's evaluation that are believed to be
4    important for pilot-relating skills.
5         I do not specifically know his job duties
6    as -- at American Airlines.  So I'm commenting more on
7    the neurocognitive pattern that we saw with the testing,
8    which could represent a potentially disqualifying
9    medical condition as stated by the Federal Aviation
10   Regulations.
11   Q    What could -- what could constitute?
12   A    The problems we noted with executive
13   functioning, sustained attention, and verbal memory.
14   Q    But Dr. Kay did not find those problems.
15   A    Well, Dr. Kay didn't do the same evaluation.
16   And by omission of my evaluation, he's done session
17   number two, which means that three months later, he got
18   the exact same items from that test.  So that would
19   strengthen the practice effect.
20        He also didn't do any tests of verbal memory.
21   So we don't know, again, how reliable that finding is.
22        He did do a test of sustained attention, which
23   did show some variability, seemed like it was better
24   than what we had before.  But he didn't do as many
25   tests.  But he does report that the attribute

[8/16/2018 1:30 PM]  Edwin Bercaw , Ph.D.

```
                                                              117
 1   identification, the deductive reasoning finding was
 2   normal in his case, when it wasn't in the previous
 3   evaluations.
 4       Q    Have you ever seen the -- and let's mark this
 5   as 13 --
 6            (Exhibit 13 was marked.)
 7   BY MR. AMLONG:
 8       Q    -- the job functions that American Airlines
 9   list?
10            MR. HOLT:  Counsel, I'm going make an
11       objection to the authenticity of this exhibit.  I
12       know nothing about it.  Never seen it before.  It
13       looks like it's not from any official source.  We
14       might withdraw that objection later.  I just have
15       to have the opportunity to compare it with an
16       official --
17            MR. AMLONG:  It's --
18            MR. PATTERSON:  AA pilot credentials.  It's a
19       public website.
20            MR. HOLT:  Well -- I mean, lots of things are
21       public websites.  The Onion has a public website.
22       We don't trust that for the truth of its assertions
23       either.
24            MR. PATTERSON:  It's published by American
25       Airlines.
```

[8/16/2018 1:30 PM] Edwin Bercaw , Ph.D.