UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:17-cv-60533-MARTINEZ-OTAZO-REYES

RODNEY SCOTT PATTERSON,
    Plaintiff,

vs.

AMERICAN AIRLINES, INC., a Delaware
Corporation,

    Defendant.
_____/

**RESPONSE IN OPPOSITION TO THE AMLONG FIRM'S RULE 11
MOTION REGARDING AMERICAN AIRLINES, INC.'S MOTION FOR SANCTIONS**

Defendant American Airlines, Inc. ("American") and its counsel of record respectfully submit this response in opposition to the Amlong Firm's Rule 11 Motion Regarding American Airlines, Inc.'s Motion for Sanctions, ECF No. 234 (the "Amlong Motion"). For the reasons detailed below, the Amlong Motion is frivolous and should be summarily denied.

**INTRODUCTION**

In the Amlong Motion, William Amlong and his law firm, The Amlong Firm (collectively, "Mr. Amlong") argue that American lacked a proper basis for seeking sanctions against Mr. Amlong as part of American's Motion for Sanctions (ECF No. 154). The evidence admitted at the August 26, 2019 hearing confirms what was already apparent at the time American filed its Motion for Sanctions: there is ample basis for seeking sanctions against Mr. Amlong. The Amlong Motion itself is frivolous and yet another example of Mr. Amlong's improper litigation tactics. In that regard, American should recover its fees and expenses in responding to the Amlong Motion.

The evidence presented at that hearing confirms that Mr. Amlong knowingly and repeatedly assisted Plaintiff in misleading American and the Court regarding Dr. Bercaw's evaluation for an extended time.

1. Mr. Amlong knew several months before filing this lawsuit that Dr. Bercaw evaluated Plaintiff and provided opinions that undermined Plaintiff's claims;

2. Mr. Amlong knew that Plaintiff testified falsely during his deposition;

3. Mr. Amlong knew or believed that Plaintiff altered documents in this case; and

4. Mr. Amlong failed to apprise American or the Court of the truth even after determining that he had an ethical and legal obligation to do so.

Rather than correcting this fraud on the Court and American, Mr. Amlong doubled-down on his knowing participation in Plaintiff Rodney Scott Patterson's strategy of subterfuge. His excuses and arguments changed throughout the evidentiary hearing and are belied by the plain record in this case and Mr. Amlong's own late-produced documents. Mr. Amlong even went so far as to offer false testimony at the evidentiary hearing, claiming he took Plaintiff into the hallway during Plaintiff's false deposition testimony and told Plaintiff to stop lying. But Mr. Amlong's testimony was untrue—as Mr. Amlong would soon admit—because there was no break during the relevant portion of Plaintiff's deposition. Mr. Amlong's story (much like the Amlong Motion) is yet another example of his attempt to avoid the consequences of his actions, resulting in further expense and attorneys' fees to American and unnecessarily extending these proceedings.

## ARGUMENT

There is no dispute that Plaintiff lied at his deposition and attempted to hide evidence from American and the Court to cover up his actions—as his own counsel now concedes. *See* Amlong Resp. to American's Mot. for Sanctions at 19, ECF No. 197 ("Lt. Col. Patterson may have wanted

to keep hidden from American the Bercaw/Fonseca report because he . . . thought it would harm his case. He was even willing to lie about it at his deposition, to obstruct access to it by his lawyers and to conceal it from the leading neuropsychologist he retained . . ."); *see also* Hr'g Tr. at 259:10–25 (When Plaintiff asked Mr. Amlong why he said that Plaintiff lied at his deposition, Mr. Amlong explained, "For you to say that you did not know who Ed Bercaw was made such little sense that it just jumps off the page and bites you. I don't see how you could have forgotten who Ed Bercaw was.").

Mr. Amlong, however, not only admits that Plaintiff lied to the Court, but also that he himself made untrue statements to the Court. *See* Amlong Hr'g Ex. 25 at p. 2 ("Scott, You lied to me about not having Bercaw's report or a copy of the letter to from Bercaw to Glenn Caddy. That caused me to say things to the Court that were not true, i.e., that we did not have them.").

Although Mr. Amlong argues that he is essentially an innocent bystander who was duped by his client, there is ample evidence—much of which Mr. Amlong revealed for the first time at the evidentiary hearing on American's Sanctions Motion—that Mr. Amlong played an active role in Patterson's ploy to deceive American and the Court.

### 1. Mr. Amlong has known of Dr. Bercaw's evaluation and results since April 2016 but has told a misleading story.

Plaintiff retained Mr. Amlong on April 12, 2016. Hr'g Tr. 206:14–16, ECF No. 247 ("Q. . . . [W]hen were you retained by Colonel Patterson? A. April 12, 2016). By no later than April 22, 2016 (just ten days into the representation), Mr. Amlong learned that Dr. Bercaw evaluated Plaintiff and recommended that the results be forwarded to the FAA for further review. *See* Def.'s Hr'g Ex. 3, ECF No. 244-2. Mr. Amlong also knew that as of April 22, 2016, Plaintiff wanted to hide the results of Dr. Bercaw's exam from American and the FAA, but instructed Dr. Bercaw to provide information to Mr. Amlong and Plaintiff's testifying expert, Dr. Caddy. *See id.* Although

3

Mr. Amlong argues he did not receive a copy of Dr. Bercaw's report, he cannot feign ignorance of the evaluation because Mr. Amlong emailed Dr. Bercaw directly on April 22, 2016, asking for a copy of the report and the underlying data. *See* Amlong Hr'g Ex. 2C.[1]

Even though Mr. Amlong knew that Dr. Bercaw evaluated Plaintiff and recommended further FAA review, Mr. Amlong filed Plaintiff's Complaint roughly 11 months later in March 2017. Since then, Mr. Amlong signed off on Plaintiff's interrogatory responses that omitted Dr. Bercaw altogether, Def.'s Hr'g Ex. 10, ECF No. 244-8, and amended interrogatory responses that mischaracterize Dr. Bercaw's involvement in the case, Def.'s Hr'g Ex. 12, ECF No. 244-10. Mr. Amlong has also continued to present a theory of the case in which Dr. Knippa was a lone outlier while every other doctor found Plaintiff fit for duty. But Mr. Amlong has always known that narrative to be false.

### 2. Mr. Amlong admits that Plaintiff lied at his deposition; but acts as though Plaintiff's lies are okay.

Plaintiff told several lies at his deposition about his interactions with Dr. Bercaw. *See* Patterson Dep. 341:12–350:5, ECF No. 57-1 First, he claimed not to know who Dr. Bercaw was. But as Mr. Amlong testified at the hearing: "For [Plaintiff] to say that [he] did not know who Ed Bercaw was made such little sense that it just jumps off the page and bites [him]. I don't see how [Plaintiff] could have forgotten who Ed Bercaw was." Hr'g Tr. at 259:10–25, ECF No. 247. Plaintiff then testified that he never visited Dr. Bercaw. But Plaintiff now concedes he did and Dr.

---

[1] That Mr. Amlong did not produce this email until the middle of the evidentiary hearing further evidences his improper tactics. Plainly, this email that was sent to Dr. Bercaw and Dr. Caddy was responsive to American's document requests and, at minimum, should have been turned over following this Court's discovery order. *See* ECF No. 80. The only conceivable reason Mr. Amlong did not produce this document is that it undermines his obviously false claim to have known nothing of Dr. Bercaw's evaluation.

Bercaw testified that he saw Plaintiff for a full day of evaluations in March 2016. Plaintiff also testified that he did not list Dr. Bercaw on his FAA form 8500-8s because Dr. Bercaw did not want to be involved in litigation. The evidence now shows it was Plaintiff who did not want Dr. Bercaw involved in this litigation because Dr. Bercaw refused to "play ball." *See* Def.'s Hr'g Ex. 8, ECF No. 244-6.[2]

Mr. Amlong's testimony regarding the seriousness of these lies is shocking. First, Mr. Amlong attempted to convince the Court that he took Plaintiff into the hallway in the middle of the false deposition testimony and demanded that Plaintiff tell the truth. But Mr. Amlong later recanted that testimony and admitted that there was no break in Plaintiff's deposition testimony about Dr. Bercaw. Hr'g Tr. at 215:1–217:1, ECF No. 247.[3] Next, Mr. Amlong tried to argue that Mr. Patterson "corrected" his lies during the deposition because he admitted consulting with Dr. Bercaw. But Plaintiff never corrected his lies about having visited Dr. Bercaw. In fact, Plaintiff continued to lie to American and the Court for months after the deposition claiming that Dr. Bercaw did not perform any of the testing. *See, e.g.*, Def.'s Hr'g Exs. 12 & 13, ECF Nos. 244-10 & 244-11. As Plaintiff now seems to concede and Dr. Bercaw testified, that simply was not true.

---

[2] Plaintiff's attempts to explain away the "play ball" emails lack any credibility. Plaintiff acknowledged having paid thousands of dollars for the evaluation, but now attempts to recast the "play ball" reference to suggest Plaintiff did not want to pay the additional fees to have Dr. Bercaw discuss the results with Dr. Caddy—even though Dr. Bercaw agreed in writing to discuss the results with Plaintiff for free. *See* Def.'s Hr'g Ex. 8, ECF No. 244-6. Mr. Amlong's willingness to help Plaintiff make this argument is another example of using smoke and mirrors when called to account for the gaping holes in his case.

[3] Ms. Amlong asked a similarly misleading line of questioning on Plaintiff's cross-examination. Hr'g Tr. at 150:19–21 ("Q. Okay. Do you remember Mr. Amlong taking you out in the hall and saying 'what are you doing Colonel Patterson'? A. I don't have any recollection of that conversation.")

>   **3.   Mr. Amlong apparently believed that Plaintiff fabricated documents but never disclosed this information to American or the Court. Alternatively, Mr. Amlong's testimony at the hearing was intentionally false.**

In yet another new revelation, Mr. Amlong announced during the hearing that Plaintiff had "Photoshopped" a version of Dr. Bercaw's report and then lied about the report having come from his union representative (apparently to explain how he had an unredacted copy of a document he testified he had never received or seen). Until the hearing, American did not know that Plaintiff "doctored" documents that were produced in this case—but Mr. Amlong has had this information for more than a year.

According to Mr. Amlong, Plaintiff convinced Mr. Amlong that Plaintiff downloaded a copy of Dr. Bercaw's report from PACER, "manipulated it to take off the ECF legends, to take out the redaction and to type the numbers back in there." Hr'g Tr. at 230:4–9, ECF No. 247. Mr. Amlong testified that Plaintiff did this because he "wanted to present [Dr. Bercaw's report and his May 6, 2016 letter] together for the optics of it." *Id.* Of course, even if that were true, it would in no way justify what he did and would still constitute evidence fabrication.

Plaintiff does not deny manipulating the document and Ms. Amlong's questioning revealed that Plaintiff then combined and misrepresented these materials as having come from Plaintiff's union representative.

>   Q.   Okay. Defendant's Exhibit Number 5. This is a copy of Dr. Bercaw's report that the Defendants filed on PACER in support of their summary judgment motion, correct?
>
>   A.   That's correct.
>
>   Q.   And you testified that you downloaded this document from PACER, correct?
>
>   A.   I did.
>
>   Q.   And after you downloaded it, you then basically Photoshopped it, removed the redactions and retyped in the

6

> material that was under the redacted portions and produced it as a document that had been in the possession of a union representative by the name of Danny Shellhouse. Correct?
>
> A. I don't recall the specific sequence of events, Karen, but I had access to the PI number and the application ID number.
>
> Q. And you modified the document that you downloaded from PACER and you represented that that document had been in the possession of your union representative along with the letter that Dr. Bercaw wrote, and that those documents had been obtained from Danny Shellhouse; is that correct?
>
> A. I don't recall -- I don't recall that Shellhouse had a copy of this neuropsychological examination, I don't.
>
> Q. But you don't deny that that's how you represented it to our office.
>
> A. I sent that to -- I do recall sending the document that I corrected in there because I had the PI number and the application ID number, and I do recall sending that to Yasmin.
>
> Q. Okay. Let's -- and representing it as something that had been in the possession of your union representative, correct?
>
> A. I'm not sure how that was represented.
>
> Q. And Mr. Amlong went, quote, apeshit when he found out about it, didn't he?
>
> A. I know that Mr. Amlong asked me to explain how I got the information off the document and it comes off of my -- it comes off of my special instrument certificate with the FAA.
>
> Q. And subsequently, Mr. Amlong modified and filed an amended disclosure withdrawing basically the representation that this had been obtained from Danny Shellhouse, correct?
>
> A. That's correct.

Hr'g Tr. At 155:20–157:6. Mr. Amlong then misrepresented to American that these materials were obtained from Plaintiff's union representative. *See id.* at 231:21–232:17.

7

Mr. Amlong's September 18, 2018 "Amended Notice of Production of Documents" did nothing to cure the misrepresentation because it contained additional deceptive statements. In that notice, Mr. Amlong never mentioned that any document had been altered and attempted to explain the issue away by claiming the documents were "mistakenly selected by [Mr. Amlong's] associate and assistant when he told them, remotely, to 'Attach the documents from Danny Shellhouse.'" *See* Amlong's Hr'g Ex. 36. That statement was untrue and was an attempt to cover up Plaintiff's obstructionist ploy.[4]

Even more shocking, the other documents disclosed for the first time at the hearing show that Mr. Amlong likely did not believe his own testimony at the evidentiary hearing. In a September 18, 2018, email to Plaintiff, Mr. Amlong explained that he did not believe Plaintiff simply doctored documents for "optics" reasons—he believed Plaintiff lied about having them all along.

> You never responded to my September 8 e-mail, which I have pasted below, as to how you could white-out redactions and the district court's ECF filing stamps on the letter, and reinsert your personal FAA identification numbers. Karen and I both electronically whited-out the redacted portions of the report that Mike Holt filed as an attachment to his summary judgment reply, and using 12 point Times New Roman (just as you said you had done) inserted the missing FAA personal identification numbers, but the appearance

---

[4] This is not the first time in these sanction proceedings that Mr. Amlong has attempted to blame an associate or his assistant for what he likes to call a "mistake." Mr. Amlong has repeatedly argued that his associate "inadvertently" produced one of the Bercaw emails in response to American's request for production. Hr'g Tr. at 214:4–12, ECF No. 247. The evidence shows that Ms. Amlong also produced the document after carefully analyzing the alleged privilege issues. *See id.* at 251:17–252:16; *see also* Def.'s Hr'g Ex. 23, ECF No. 244-21. Thus, it was not produced by some mistake made by an errant associate. And, Mr. Amlong's emails confirm that the production of the Bercaw email was proper—and not inadvertent as he has argued before. Amlong Hr'g Ex. 31 at p. 2 (admitting that the associate "should have [turned over the document], rather than it being 'inadvertent,' as [Amlong] later argued, thinking that Dr. Bercaw was merely a non-testifying expert." Ultimately, were it not for the associate's "inadvertent" production (which Ms. Amlong repeated), Plaintiff's grand scheme to mislead American and the Court may have gone undetected.

> was drastically different. <u>The report that you emailed to Yasmin, however, looks just like the one that we got September 9 from Comprehensive MedPsych Systems. The most obvious answer to this puzzle is that the reason the one you scanned and sent to Yasmin looked like the real deal is because it was the real deal, which you have had all along—going back to April 26, 2016 when you were criticizing the report as "very weak."</u>

Amlong Hr'g Ex. 31 at p. 2 (emphasis added, errors in original). It thus appears that Mr. Amlong either hid the fact that Plaintiff "Photoshopped" documents in this case or he falsely testified that Plaintiff "Photoshopped" documents to hide another of Plaintiff's lies. Either way, Mr. Amlong should be sanctioned.

### 4. Mr. Amlong failed to apprise American or the Court of the truth even after determining that he had an ethical and legal obligation to do so.

While Mr. Amlong has offered a litany of excuses for hiding Dr. Bercaw's involvement in this case, the real reason is simple. In Mr. Amlong's own words, he and Plaintiff were hoping they would "be able to keep the Bercaw materials away from American." Amlong Hr'g Ex. 7. Plaintiff echoed this sentiment when he explained his bottom line: Whatever Dr. Bercaw's report actually said, the "bottom line" was that Plaintiff knew he "had to shut the whole thing down" because Dr. Bercaw's results would not be favorable. *See* Amlong Hr'g Ex. 27. And, although Mr. Amlong now suggests that he did everything in his power to set the record straight, Mr. Amlong's emails paint a very different picture.

A year ago, Mr. Amlong sent an email to Plaintiff that makes precisely the points American has raised in its sanctions motion.

> If you [(Plaintiff)] (as you have testified) never had a copy of the report, and if you had not seen the May 6 letter (written 10 days *after* sending th[e] email), how could you *possibly* know that Dr. Bercaw's *report* was "lacking and very weak" and "needs to be re-done" unless [he] received a copy?

Amlong Hr'g Ex. 31 at p. 1.

9

> If you never had a copy of the report, how could you have mailed to Yasmin [(Mr. Amlong's office manager)] . . . the package of the May 6 letter and the April report that Yasmin and Jennifer attached to the notice of production? . . . Best case scenario is that Jennifer and Yasmin unknowingly submitted during discovery (over my signature) a document that you concocted and presented to them, who then presented it to American, as if it were something else.

*Id.* at pp. 1–2.

> At this point, the evidence that I have uncovered . . . has convinced me that you received Dr. Bercaw's report in April 2016, but in your desire to manage the litigation, decided not to share it with me, concealed it from Dr. Kay . . ., lied about it at your deposition and are continuing to be untruthful to the Court, to American's lawyers and, most stupidly of all, to your own lawyers.

*Id.* at p. 3.

In light of these lies, Mr. Amlong explained how critical it was for Plaintiff to correct his false testimony—belying Mr. Amlong's argument at the hearing that there was nothing further to correct—and accurately predicted that American would seek sanctions.

> Scott, you do not seem to realize that you are playing with fire here. The logical questions for American's lawyers to be asking now is, if Patterson's lawyers are saying that the documents attached to the September production were not obtained from Danny Shellhouse, where did they get the copy of the report that they have just so convincingly argued that Dr. Caddy never received? All we could say is, Scott Patterson gave them to us. And then they are going to ask, but how could he have the report if he testified under oath that he had never seen it. And you are going to have no credible answer to that question. <u>If they ask you that question on the witness stand at trial, that would be devastating before any jury—assuming that American does not bring to the Court's attention that there is some pretty obvious monkey business going on here, and get the Court to strike your pleading and order you to pay all of American's fees for having committed a fraud upon the court.</u>

*Id.* at p. 3 (emphasis added).

Mr. Amlong went on to correctly identify the steps that should be taken to correct the record. He explained that he and Ms. Amlong could no longer continue to represent Plaintiff unless Plaintiff would "come clean" and "admit that [he] lied in [his] deposition and [has] concealed information from the beginning of this litigation that [Plaintiff] visited Dr. Bercaw and . . . got a less-than-favorable result." *Id.* at p. 4. Mr. Amlong then proposed two options.

> By 5 p.m. [September 19, 2018], Karen and I . . . are going to do one of two things:
>
> ***One,*** start working on a full disclosure that sets the record straight and provides the Court with an explanation of why you acted as you did to try to salvage this lawsuit, or
>
> ***Two,*** unilaterally disclose to American and to the Court that you did not testify truthfully at your deposition and that you have possessed the Bercaw report ever since it was originally issued, and move to withdraw on the ground that we can no longer represent you.
>
> Your choice.

*Id.* at p. 4. To date, Mr. Amlong has done neither. Instead, he has repeatedly attempted to cover his tracks by presenting an ever-changing story, and needlessly and improperly extending these proceedings and causing American to incur attorneys' fees and expenses.

## CONCLUSION

Mr. Amlong's conduct is not accidental. Nor is he an innocent victim of Plaintiff's lies. Mr. Amlong has been a willing participant at every step. He has known since April 2016 that Dr. Bercaw evaluated Plaintiff and reached concerning findings. Mr. Amlong has known that Plaintiff lied at his deposition and would do anything in his power to hide Dr. Bercaw's existence from American and the Court. And Mr. Amlong either knew that Plaintiff fabricated documents or lied at the evidentiary hearing. Either way, Mr. Amlong cannot sit idly by and make a mockery of the rules of this Court. He had an obligation to correct the record—which he recognized last year. Despite knowing exactly what needed to happen a year ago, Mr. Amlong has done nothing to cure

11

the prejudice. Instead, he has offered explanations and excuses that have turned out to be mostly untrue.

It appears that this is not the first instance in which Mr. Amlong has engaged in improper tactics in this court. In *Eldredge v. EDCare Mgmt., Inc.*, 766 F. App'x 901, 905 (11th Cir. 2019), the Eleventh Circuit affirmed this Court's award of sanction against Mr. Amlong and noted that Mr. Amlong's testimony was contrived and appeared to be "an effort to rewrite history." Indeed, as this Court noted, Mr. Amlong used "smoke and mirrors each time [he and his associate] were called to account, even to the point of failing to render credible testimony at the final evidentiary hearing." *Id.*

American not only had a reasonable basis to include Mr. Amlong in its sanction motions, but the evidence confirms Mr. Amlong should be sanctioned along with Plaintiff, and that the Amlong Motion itself is frivolous. The Court should thus not only deny the Amlong Motion and grant American's motion for sanctions, but should award American its attorneys' fees incurred in responding to the Amlong Motion.

Respectfully submitted,

By: /s/ Michael A. Holt

Michael A. Holt
mholt@fisherphillips.com
Florida Bar No.: 91156
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709

Mark W. Robertson (*Pro Hac Vice*)
mrobertson@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower, 7 Times Square
New York, New York 10036

Telephone: (212) 326-2000

Tristan Morales (*Pro Hac Vice*)
tmorales@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of September, 2019, the foregoing document was filed with the Clerk of the Court using the CM/ECF system and a true and correct copy was served on the counsel or parties of record listed below.

By: /s/ Michael A. Holt
     MICHAEL A. HOLT

## SERVICE LIST

William R. Amlong, Esq.
WRAmlong@TheAmlongFirm.com
Karen Coolman Amlong, Esq.
KAmlong@TheAmlongFirm.com
**AMLONG & AMLONG, P.A.**
500 Northeast Fourth Street
Fort Lauderdale, FL 33301
Telephone: (954) 462-1983
Facsimile: (954) 523-3192

Noel C. Pace, Esq.
(*Pro Hac Vice)*
noel.c.pace.esq@gmail.com
206 N.W. 91 Street
El Portal, Florida 33150
Telephone: (305) 710-3713

(Service via CM/ECF)

*Counsel for Plaintiff*

Michael A. Holt, Esq.
mholt@fisherphillips.com
**FISHER & PHILLIPS LLP**
450 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 847-4709
Facsimile: (954) 525-8739

Mark W. Robertson, Esq.
mrobertson@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Tristan Morales, Esq.
tmorales@omm.com
(*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, Northwest
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

(Service via CM/ECF)

*Counsel for American Airlines, Inc.*